IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THE SHANE GROUP, INC. et al.<br><br>Plaintiffs, on behalf of themselves and all others similarly situated,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF MICHIGAN,<br><br>Defendant. | Case No. 2:10-cv-14360-DPH-MKM<br><br>**Judge Denise Page Hood**<br>**Magistrate Judge Mona K. Majzoub** |

## BLUE CROSS BLUE SHIELD OF MICHIGAN'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Joseph A. Fink (P13428)
Thomas G. McNeill (P36895)
Michelle L. Alamo (P60684)
Michelle R. Heikka (P66122)
Patrick B. Green (P68759)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
313-223-3500
jfink@dickinsonwright.com

Alan N. Harris (P56324)
G. Christopher Bernard (P57939)
Jason R. Gourley (P69065)
Rebecca D. O'Reilly (P70645)
Carl Rashid (P66064)
BODMAN PLC
201 South Division St.
Suite 400
Ann Arbor, MI 48104
734-930-2482
aharris@bodmanlaw.com

Todd M. Stenerson (P51953)
D. Bruce Hoffman (Adm. E.D. MI, DC Bar 495385)
Neil K. Gilman (Adm. E.D. MI, DC Bar 449226)
David A. Higbee (Adm. E.D. MI, DC Bar 500605)
Ashley Cummings (Adm. E.D. MI, GA Bar 186005)
Jonathan H. Lasken (Adm. E.D. MI, DC Bar 997251)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
202-955-1500
tstenerson@hunton.com

Robert A. Phillips (P58496)
BLUE CROSS BLUE SHIELD OF MICHIGAN
600 Lafayette East, MC 1925
Detroit, MI 48226
313-225-0536
rphillips@bcbsm.com

-2-

Defendant Blue Cross Blue Shield of Michigan ("Blue Cross"), by its undersigned counsel of record, submits this Motion to Dismiss Plaintiffs' Consolidated Amended Complaint. In support of this motion, Blue Cross relies upon the authorities and arguments set forth in the incorporated brief, as well as any attachments.

As required by Local Rule, 7.1(a)(2)(A), Blue Cross's counsel held conferences with attorneys for plaintiffs entitled to be heard on the motion in which Blue Cross explained the nature of the motion and its legal basis and requested, but did not obtain, concurrence in the relief sought.

Dated:  July 20, 2012

Respectfully submitted,

/s/ Todd M.  Stenerson
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C.  20037
202-955-1500
tstenerson@hunton.com
P51953

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| THE SHANE GROUP, INC. et al.<br><br>Plaintiffs, on behalf of themselves and all others similarly situated,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF MICHIGAN,<br><br>Defendant. | Case No. 2:10-cv-14360-DPH-MKM<br><br>Judge Denise Page Hood<br>Magistrate Judge Mona K. Majzoub |

**MEMORANDUM OF LAW IN SUPPORT OF
BLUE CROSS BLUE SHIELD OF MICHIGAN'S MOTION TO
DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**

Joseph A. Fink (P13428)
Thomas G. McNeill (P36895)
Michelle L. Alamo (P60684)
Michelle R. Heikka (P66122)
Patrick B. Green (P68759)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
313-223-3500
jfink@dickinsonwright.com

Todd M. Stenerson (P51953)
D. Bruce Hoffman (Adm. E.D. MI, DC Bar 495385)
Neil K. Gilman (Adm. E.D. MI, DC Bar 449226)
David A. Higbee (Adm. E.D. MI, DC Bar 500605)
Ashley Cummings (Adm. E.D. MI, GA Bar 186005)
Jonathan H. Lasken (Adm. E.D. MI, DC Bar 997251)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
202-955-1500
tstenerson@hunton.com

Alan N. Harris (P56324)
G. Christopher Bernard (P57939)
Jason R. Gourley (P69065)
Rebecca D. O'Reilly (P70645)
Carl Rashid (P66064)
BODMAN PLC
201 South Division St.
Suite 400
Ann Arbor, MI 48104
734-930-2482
aharris@bodmanlaw.com

Robert A. Phillips (P58496)
BLUE CROSS BLUE SHIELD OF MICHIGAN
600 Lafayette East, MC 1925
Detroit, MI 48226
313-225-0536
rphillips@bcbsm.com

## TABLE OF CONTENTS

STATEMENT OF ISSUE PRESENTED ................................................................................... ii

CONTROLLING OR APPROPRIATE AUTHORITY FOR RELIEF SOUGHT ...................... iii

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 2

    A. Plaintiffs' Theories of Competitive Harm and Injury ..…………………………..2

    B. Allegations Regarding the Putative Class ………………………………………4

III. ARGUMENT ................................................................................................................... 5

    A. Specific Facts, not Conclusions, Are Required to Establish
       Injury ..……………………………………………………………………..……5

    B. Plaintiffs Fail to Plead Easily Available Facts That, If They Exist,
       Would Be Required Under Their Own Theory of Injury ..………………..……6

IV. CONCLUSION ............................................................................................................. 10

## STATEMENT OF ISSUE PRESENTED

1. Should the Court dismiss plaintiffs' Consolidated Amended Complaint because not one of the six named plaintiffs has alleged facts to show that—under their own theory of injury—they were in fact injured?

-iii-

## CONTROLLING OR APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

### Federal Authority

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)

*Ctr. for Cmty. Justice & Advocacy v. RBS Citizens, N.A.*,
    776 F. Supp. 2d 460 (E.D. Mich. 2011)

*DirecTV, Inc. v. Treesh*,
    487 F.3d 471 (6th Cir. 2007)

*Crosby v. Bowater Inc. Retirement Plan*,
    382 F.3d 587 (6th Cir. 2004)

*In re Packaged Ice Antitrust Litig.*,
    779 F. Supp. 2d 642 (E.D. Mich. 2011)

*Tam Travel, Inc. v. Delta Airlines, Inc.* (*In re Travel Agent Comm'n Antitrust Litig.*),
    583 F.3d 896 (6th Cir. 2009)

*Jones v. City of Cincinnati*,
    521 F.3d 555 (6th Cir. 2008)

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007)

*Rosen v. Tenn. Comm'r. of Finance & Admin.*,
    288 F.3d 918 (6th Cir. 2002)

Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(6)

## INTRODUCTION

The Complaint does not allege—*even in boilerplate*—that the named plaintiffs suffered injury, as defined under the requirements of their own proposed class definition. Moreover, boilerplate aside, the Complaint does not allege a single *fact* about any named plaintiffs' purported injury (facts that are wholly and uniquely within their knowledge) that would actually demonstrate they suffered such an injury.

Specifically, under plaintiffs' theory of injury, a person or entity must have "directly" paid for hospital services at a rate that increased because of an MFN.[1] **But not one of the six named plaintiffs pleads any individual facts that meet requirement.** Instead, each of the six named plaintiffs pleads only that it "directly paid a hospital in Michigan that had an MFN Agreement with BCBSM for Hospital Healthcare Services at the price contained in the Applicable Provider Agreement."[2] None pleads facts indicating which hospital or hospitals they paid, when, at what rate, and how much of any alleged increase was the result of an MFN. In other words, plaintiffs plead no facts to establish that any of the six named plaintiffs meet their own definition of injury.

This is a fatal pleading flaw because the six named plaintiffs may commence a putative class action (and later attempt to certify a class) only if they have valid individual claims in their own right. This is not a matter for discovery. Every one knows when and why they go to a hospital. Thus, the facts demonstrating that each of the named plaintiffs suffered the injury they allege—such as identifying what hospital they "directly" paid, and when—are known and must be pleaded to state a claim. Plaintiffs' failure to do so requires dismissal of their Complaint.

---

[1] Consolidated Amended Complaint ("Compl.") ¶ 26 (Doc. 72).

[2] *Id.* ¶ 19.

-1-

## BACKGROUND

A.   **Plaintiffs' Theories of Competitive Harm and Injury**

To state a claim that Blue Cross's MFNs violate the antitrust laws, plaintiffs must plead an injury to competition.[3] Plaintiffs' theory is that the MFNs allegedly harm competition in the alleged markets for commercial insurance by handicapping Blue Cross's commercial insurance competitors.

More specifically, plaintiffs claim that Blue Cross has "market power" in the "downstream" markets for commercial insurance—power that enables Blue Cross to "profitably raise[] prices for its commercial health insurance substantially above competitive levels."[4] Plaintiffs do not, however, challenge Blue Cross's market power or prices directly, nor could they—as the Supreme Court has repeatedly held, it is not unlawful to have or exercise market power.[5] Rather, plaintiffs allege that Blue Cross has engaged in improper conduct to *maintain* its downstream market power.

That is, plaintiffs contend that Blue Cross, by virtue of its size, historically received "substantially better discounts in the purchase of hospital services than other commercial insurers."[6] According to plaintiffs, in about 2007, Blue Cross was concerned that competition from commercial insurers was growing. To address this concern, Blue Cross allegedly stopped

---

[3] *E.g., Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 432 (6th Cir. 2008) (affirming dismissal of putative antitrust class action and stating that "most antitrust claims are analyzed under a 'rule of reason,' according to which the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition.").

[4] Compl. ¶ 62.

[5] *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko*, LLP, 540 U.S. 398, 407 (2004); *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 14 (1984), limited on other grounds by *Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28 (2006).

[6] Compl. ¶ 73.

seeking the best available prices and, instead, began to use its market power to induce hospitals to raise the prices they charged commercial insurers.[7] To do this, Blue Cross allegedly agreed to pay about half of Michigan's hospitals *more* than it otherwise would have so that, in exchange, the hospitals would agree to MFNs that would result in commercial insurers being charged the same rates as Blue Cross, or higher rates.[8] This, in turn, allegedly prevented commercial insurers from competing effectively with Blue Cross in the "downstream" health insurance markets, cementing Blue Cross's alleged market power there.[9]

In other words, plaintiffs' theory of antitrust injury is that—although the Blue Cross contracts that include an MFN do not expressly "exclude" any competitors from contracting with the hospitals—the contracts allegedly increase competitors' rates at those hospitals, thereby allegedly preventing those competitors from offering lower prices to consumers, which in turn allegedly allows Blue Cross to keep winning those consumers' business and thus maintain its market share.[10]

The injury to competition alleged here is not the increase in the cost of hospital services. Rather, the injury to competition is the purported loss of competition in the market for

---

[7] *Id.* ¶ 62.

[8] Compl. ¶¶ 4, 6, 70, 71.  As plaintiffs appear to concede, if Blue Cross did not pay more in order to induce hospitals to include the MFNs in their contracts, there would be no antitrust claim.  *See id.* ¶ 26 (stating that putative class must be limited to, among other things, purchases of hospital services after a rate *increase* due to Blue Cross MFN clause).

[9] Compl. ¶¶ 4, 6-7, 72, 82, 119.

[10] Compl. ¶ 119.  This theory necessarily assumes that these nominal rate increases actually result in increased payments; that they can't be avoided (such as by contracting with or steering members to hospitals without MFNs); that they can't be offset (such as by simply accepting a lower profit margin); and that they actually result in increased premiums, which in turn cause commercial insurers to lose business to Blue Cross that they otherwise would have gained.

commercial health insurance.[11]  But plaintiffs do not seek compensation for any alleged increase or inflation of health insurance premiums.[12]  Instead, they seek to recover amounts they supposedly "directly" overpaid the hospitals, such as co-pays or hospital charges under Administrative Services Only ("ASO") agreements, where the MFNs allegedly caused an increase in a hospital's rates.[13]

*Even if* the antitrust laws allowed recovery of this kind of damages—incidental by-products of the challenged conduct, not losses flowing from the conduct's alleged anticompetitive effects—plaintiffs have failed to plead the critical facts necessary to establish their standing to seek them.[14]

### B. Allegations Regarding the Putative Class

In their proposed class definition, plaintiffs spell out how to identify a person or entity that, under their theory, was injured.  By focusing on prices paid directly to hospitals, the Complaint purports to represent a host of unrelated parties that at one time or another may have paid a hospital for services, including all persons or entities (for example, commercial insurers) who, either alone or with a co-payor, "directly paid" a Michigan hospital, which hospital was subject to a contract with Blue Cross that included an MFN clause.[15]  Then, plaintiffs narrow the

---

[11] Compl. ¶¶ 44-48, 51, 53.

[12] This is likely because any such claim would be barred under, among other things, the indirect purchaser doctrine.  *Cf. New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1052 (6th Cir. 2011) (affirming motion to dismiss based on indirect purchaser doctrine).

[13] Compl. ¶¶ 10, 26, 27, 30.

[14] Additionally, the incidental nature of plaintiffs' alleged damages may well be another independent reason to dismiss the Complaint.  But, without the critical facts being pled, Blue Cross cannot fully assess the argument at this time.

[15] Specifically, the Complaint defines the class to include "[a]ll persons and entities that during the Class Period, alone or with a co-payor, directly paid a hospital in Michigan that had a MFN Agreement with BCBSM for Hospital Healthcare Services at the price contained in the

-4-

class definition, adding these requirements for the "purchases" at issue:

(1) "purchases" of hospital services made by a Blue Cross insured after the hospital entered a contract with Blue Cross that includes an MFN agreement with Blue Cross; or

(2) "purchases" of hospital services made by a non-Blue Cross insured after the hospital entered a contract with Blue Cross that includes an MFN agreement with Blue Cross *and* there was a subsequent price increase in the applicable contract governing the putative class member's purchase; and

(3) "co-payments" by an insured for hospital services must have been set as a percentage of hospital charges.[16]

Thus, plaintiffs' class definition recognizes that a person or entity that falls within the general description of the class (because they directly paid for hospital care during the defined class period, at a Michigan hospital with a Blue Cross MFN), nevertheless could have paid a price that was wholly unaffected by the MFN and thus was not injured. The failure to plead facts to establish whether, under their own definition, a named plaintiff was injured is the very issue that dooms their Complaint.

## ARGUMENT

It is axiomatic that a plaintiff cannot bring a lawsuit unless that plaintiff has been injured by the challenged conduct. Injury is an explicit requirement for an antitrust claim, as well as a threshold requirement for entry into Federal court. The six named plaintiffs cannot proceed with this suit (much less represent the putative class) because they have not pleaded, either generically or specifically, the very injury that they say the putative class members must have suffered.

---

Applicable Provider Agreement." Compl. ¶ 26. Elsewhere, the Class Period is defined as "the period from January 1, 2007 to the present." *Id.* ¶ 16.c.

[16] The Consolidated Amended Complaint describes the class limitations as follows: "Excluded from the class are: (1) purchases of Hospital Healthcare Services made by BCBSM insureds before the hospital had an MFN Agreement with BCBSM; (2) purchases of Hospital Healthcare Services made by non-BCBSM insureds before the hospital both executed an MFN Agreement and had a subsequent increase in the Applicable Provider Agreement's reimbursement rates; (3) insureds' co-payments for Hospital Healthcare Services not set as a

### A. Specific Facts, not Conclusions, Are Required to Establish Injury

As with every other element of a claim, a complaint alleging injury "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[17] "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"[18] Although the factual allegations in the complaint are accepted as true, the Court need "'not accept as true legal conclusions or unwarranted factual inferences.'"[19] Likewise, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice."[20] A proper application of these principles is critical in antitrust cases, in which "the federal courts have been 'reasonably aggressive' in weeding out meritless antitrust claims at the pleading stage."[21]

### B. Plaintiffs Fail to Plead Easily Available Facts That, If They Exist, Would Be Required Under Their Own Theory of Injury

Perhaps the most basic element of any claim is an injury caused by the defendant's unlawful conduct. A run-of-the-mill tort claim requires a showing that the plaintiff suffered injury that was caused by the defendant's negligence.[22] Antitrust law is no different, requiring

---

percentage of the hospital's charges; and (4) BCBSM, its officers and directors, and its present and former parents, predecessors, subsidiaries and affiliates." Compl. ¶ 26.

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[18] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[19] *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008) (quoting *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)); *see also Tam Travel, Inc. v. Delta Airlines, Inc.* (*In re Travel Agent Comm'n Antitrust Litig.*), 583 F.3d 896, 903 (6th Cir. 2009).

[20] *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *see also In re Travel Agent*, 583 F.3d at 902-03.

[21] *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (internal quotation marks omitted).

[22] *Nichols v. Clare Cmty. Hosp.*, 190 Mich. App. 679, 684, 476 N.W.2d 493, 496 (1991).

the plaintiff to show "antitrust injury" caused by the defendant's competition-reducing behavior.[23] And lest there be any doubt, the United States Constitution provides that federal jurisdiction does not exist except where a plaintiff can demonstrate "standing" by showing that the plaintiff has been injured by the defendant's conduct.[24]

None of these rules changes in a putative class action.[25] Indeed, before class certification, the class action is just that—putative. The named plaintiffs, like any plaintiff, must plead an individual claim before they can proceed.[26] In other words, the focus at this stage is on the individual claims of the putative class representatives alone. Whether the governing legal principles are derived from the common law, antitrust law, or the Constitution, the result is the same: a complaint that does not allege facts establishing that a plaintiff was injured by the defendant's unlawful conduct must be dismissed.[27]

---

[23] *NicSand*, 507 F.3d at 449-50 (6th Cir. 2007).

[24] *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 653 (E.D. Mich. 2011) (A plaintiff's standing under Article III of the Constitution "is a threshold question in every federal case and determin[es] the power of the court to entertain the suit.") (alteration in original and internal quotation marks omitted).

[25] *Id.* (noting that the fact that plaintiffs "seek to proceed with their claims on a class basis does not change the fundamental requirement of standing.").

[26] *Id.* (holding that "'even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong'" (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). *See also Courtney v. Smith*, 297 F.3d 455, 467 (6th Cir. 2002) (same).

[27] *Bray v. State*, 69 Mich. App. 172, 176-77, 244 N.W.2d 619, 622 (1976) (common law); *NicSand, Inc.*, 507 F.3d at 449-50 (antitrust law); *Stalley v. Methodist Healthcare*, 517 F.3d 911, 919 (6th Cir. 2008) (Constitutional standing). Blue Cross makes a facial attack of subject matter jurisdiction due to standing. "A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Thus, "[a]lthough dismissal for lack of subject matter jurisdiction is properly brought under Fed. R. Civ. P. 12(b)(1), dismissal for lack of standing is properly brought under either Rule 12(b)(1) or Rule 12(b)(6)." *Ctr. for Cmty. Justice & Advocacy v. RBS Citizens, N.A.*, 776 F. Supp. 2d 460, 467 n.4 (E.D. Mich. 2011) (citing *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 530–31 (6th Cir. 2002)).

Plaintiffs allege how a putative class member may be injured, but no named plaintiff even draws the generic conclusion—let alone facts to allege—that it was, in fact, injured. Recognizing in their own class definition that the facts and circumstances surrounding any purchase of hospital services vary widely, plaintiffs do not seek to represent a class of all purchasers of hospital services. Rather, under plaintiffs' proposed class definition, an injured plaintiff would have to plead that:

- During the class period, the plaintiff paid for services at a hospital that was subject to a Blue Cross MFN;
- And the plaintiff paid for those services
    - after Blue Cross and the specific hospital at issue for that plaintiff agreed to the MFN, or
    - after the MFN allegedly caused that specific hospital's price to increase; and
    - any co-payment was set based on a percentage of the hospital's charges.[28]

The only allegations about alleged injury to any of these named plaintiffs, repeated verbatim for each of the six, is the generic assertion that the person or entity "directly paid a hospital in Michigan that had an MFN Agreement with BCBSM for Hospital Healthcare Services at the price contained in the Applicable Provider Agreement."[29] But the Complaint does not allege any facts (much less even a bald conclusion) to show that any of the six named plaintiffs actually meets their own class definition.

Because the Complaint fails to allege that these conditions are met as to any of the six named plaintiffs, it fails to demonstrate that *any* named plaintiff possesses standing by virtue of having suffered *any* injury as a result of Blue Cross's conduct. Indeed, not a single named plaintiff alleges

---

[28] Compl. ¶ 26.

[29] *See* Compl. ¶ 19-24.

- Where it paid for hospital services (i.e., what hospital);

- When it paid for hospital services (i.e., whether it paid before or after the MFN)

- Whether the purchase occurred after a subsequent price increase in the applicable contract governing the purchase;

- What services the hospital provided;

- The amount paid, much less, any allegation of how much of any alleged price increase post-MFN is attributable to the MFN; or

- Whether it seeks recovery of an insured individual's co-pay, or a commercial insurer's payment to the hospital, or both (and, if both, whether the recovery sought contemplates what the commercial insurer did with its premiums to address any alleged overpayment);

- Whether it paid for hospital services through an insurance plan, ASO or directly;

- Whether the named plaintiffs' co-payments for hospital care were set as a percentage of hospital charges;

- How much harm it suffered.

Because none of the named plaintiffs has pleaded any such facts, the Complaint offers no factual basis for any allegation that any of the named plaintiffs actually suffered the very injury for which plaintiffs seek to recover. And no discovery is needed to flesh out these facts; if anyone knows at which hospital each plaintiff paid "directly" for services, what service was provided, when it made the payment, and through what entity it made the payment, it is plaintiffs themselves.

A named plaintiff's standing must be established at the time the suit is filed through facts alleged in the Complaint.[30] When the court determines that a plaintiff does not have standing

---

[30] *Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great N. Paper Inc.*, 382 F.3d 587, 597 (6th Cir. 2004) ("If the class action is to be maintained, . . . there must be 'a named plaintiff who has such a case or controversy at the time the complaint is filed . . . .'") (quoting *Sosna v. Iowa*, 419 U.S. 393, 402 (1975)); *Rosen v. Tenn. Comm'r. of Fin. & Admin.*, 288 F.3d 918, 928 (6th Cir. 2002) ("It is well settled that, at the outset of litigation, class representatives without personal standing cannot predicate standing on injuries suffered by members of the class but which they themselves have not or will not suffer.") (citing *Warth v.*

-9-

because he failed to allege that the defendant's conduct injured him personally, the court need not decide whether the complaint states a claim upon which relief may be granted.[31] Plaintiffs must state the facts that are available to them. The "naked" and "conclusory" assertion that each named plaintiff paid some unnamed hospital is not sufficient to plead injury.[32] Without specific factual allegations, the case may not proceed.[33]

## CONCLUSION

Plaintiffs' Consolidated Amended Complaint should be dismissed because not one of the six named plaintiffs has alleged facts to show that—under their own theory of injury— they were in fact injured.

Respectfully Submitted,

/s/ Todd M. Stenerson
Todd M. Stenerson (P51953)
Hunton & Williams LLP
2200 Pennsylvania Ave., N.W.
Washington, DC 20037
Phone:  202-955-1500
Fax:     202-778-2201
tstenerson@hunton.com

Attorney for Defendant Blue
Cross Blue Shield of Michigan

Dated:  July 20, 2012

---

*Seldin*, 422 U.S. 490, 501 (1975) ("[T]he plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.")).

[31] *Stalley*, 517 F.3d at 919 (granting motion to dismiss upon finding that plaintiff lacked standing).

[32] *See Twombly*, 550 U.S. at 556-57 (finding that specific facts are required and "naked" or "conclusory" assertions are not enough).

[33] *See In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2011 WL 2623317, *2 (E.D. Mich. June 13, 2011) (finding that where antitrust injury would exist only on direct purchase of product at issue, and where plaintiffs had not specified in pleading whether they had purchased product directly or indirectly, plaintiffs had not properly pleaded their standing to sue).

**CERTIFICATE OF SERVICE**

The undersigned certifies under penalty of perjury that on July 20, 2012 he caused to be served a copy of the foregoing BLUE CROSS BLUE SHIELD OF MICHIGAN'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT on all counsel of record in accordance with this Court's policies and procedures for service of electronically filed documents.

| | |
|---|---|
| Mary Jane Fait: | fait@whafh.com |
| John Tangren: | tangren@whafh.com |
| Beth Landes | landes@whafh.com |
| Daniel Small: | DSmall@cohenmilstein.com |
| Meghan Boone | mboone@cohenmilstein.com |
| Dan Gustafson: | DGustafson@gustafsongluek.com |
| Dan Hedlund: | DHedlund@gustafsongluek.com |
| Ellen Ahrens: | eahrens@gustafsongluek.com |
| E. Powell Miller: | epm@millerlawpc.com |
| Jennifer Frushour: | jef@millerlawpc.com |
| Casey Fry: | caf@millerlawpc.com |

/s/ Todd M. Stenerson
HUNTON & WILLIAMS LLP
2200 Pennsylvania Ave., N.W.
Washington, DC 20037
tstenerson@hunton.com
P51953