# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THE SHANE GROUP, INC., et al.,

    Plaintiffs,

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN,

    Defendant.
_____/

Case No. 10-14360
**[MAIN DOCKET NUMBER]**

[Proposed Class Action]

## OPINION AND ORDER DENYING MOTION TO DISMISS

### I.   BACKGROUND/FACTS

This matter is before the Court on Defendant Blue Cross Blue Shield of Michigan's ("Blue Cross") Motion to Dismiss the Consolidated Amended Complaint. Plaintiffs The Shane Group, Inc., Bradley A. Veneberg, Michigan Regional Council of Carpenters Employee Benefits Fund, Abatement Workers National Health and Welfare Fund, Monroe Plumbers & Pipefitter Local 671 Welfare Fund, and Scott Steele ("Class Plaintiffs"), filed a response. A reply was filed.

On June 22, 2012, the Class Plaintiffs filed a Consolidated Amended Complaint alleging: Unlawful Agreement in Violation of § 1 of the Sherman Act under the Rule of Reason (Count I); Unlawful Agreements in Violation of Section 2 of the Michigan Antitrust Reform Act, M.C.L. § 445.772 (Count II). The class action seeks to recover overcharges paid by purchasers of Hospital Healthcare Services directly to hospitals in Michigan that resulted from the anticompetitive acts of Blue Cross. (Am. Comp., ¶ 1) Blue Cross is a Michigan nonprofit healthcare corporation headquartered in Detroit, Michigan. (Am. Comp., ¶ 18) Blue Cross provides, directly and through its subsidiaries, health insurance and administrative services, including preferred provider organization ("PPO") health insurance products and health maintenance organization ("HMO")

health insurance products. (Am. Comp., ¶ 18)

The Class Plaintiffs allege that Blue Cross, the dominant health insurance company in Michigan, engaged in an anticompetitive scheme involving at least 70 Michigan hospitals, including the execution and enforcement of "Most Favored Nation" ("MFN") agreements with the hospitals. (Am. Comp., ¶ 2) The MFN agreements require the agreeing hospitals either to charge other commercial insurers for Hospital Healthcare Services at least as much as they charge Blue Cross, known as "equal-to MFN" agreements, or to charge other commercial insurers more than they charge Blue Cross, usually by some fixed percentage, known as "MFN-plus" agreements. (Am. Comp., ¶ 3) In exchange for the MFNs, Blue Cross agreed to pay higher hospital charges to many hospitals throughout Michigan. (Am. Comp., ¶ 4) Instead of using its market position as Michigan's largest commercial health insurer to negotiate against a hospital's proposed price increases, Blue Cross accepted these increases as a means to secure the MFN provisions. (Am. Comp., ¶ 4) Blue Cross benefitted from this scheme, even though this scheme resulted in Blue Cross' costs going up, because it raised its rival insurers' costs even more, affording Blue Cross a cost advantage vis-a-vis its competitors. (Am. Comp., ¶ 4) The MFN agreements impaired Blue Cross' rivals and maintained and enhanced its position as the dominant commercial health insurer in Michigan. (Am. Comp., ¶ 4) As a result of this anticompetitive scheme, prices for Hospital Healthcare Services in Michigan rose, and members of the Class of direct purchasers including individual insureds, self-insureds, health insurers, and managed care organizations, paid artificially inflated prices. (Am. Comp., ¶ 4)

There are six Class Plaintiffs representatives: The Shane Group, Veneberg (an individual), Michigan Regional Council, Abatement Workers, Monroe Plumbers and Steele (an individual). The

Shane Group directly paid a hospital in Michigan that had an MFN Agreement with Blue Cross for Hospital Healthcare Services at the price contained in the Applicable Provider Agreement. (Am. Comp., ¶ 19) The Shane Group paid artificially inflated prices for these services and was injured in its business or property by reason of the antitrust violations alleged in the Amended Complaint. (Am. Comp., ¶ 19)

Veneberg is a resident of Munising, Michigan and a member of the Class. Veneberg directly paid a hospital in Michigan that had an MFN Agreement with Blue Cross for Hospital Healthcare Services at the price contained in the Applicable Provider Agreement. (Am. Comp., ¶ 20) Veneberg paid artificially inflated prices for Hospital Healthcare Services and was injured in his business or property by reason of the antitrust violations alleged in the Amended Complaint. (Am. Comp., ¶ 20)

The Michigan Regional Council is a trust fund established pursuant to Section 302 of the Labor Management Relations Act ("LMRA") and Section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), located in Troy, Michigan. (Am. Comp., ¶ 21) The Michigan Regional Council directly paid a hospital in Michigan that had an MFN Agreement with Blue Cross for Hospital Healthcare Services at the price contained in the Applicable Provider Agreement. Michigan Regional Council paid artificially inflated prices for Hospital Healthcare Services and was injured in its business or property by reason of the antitrust violations alleged in the Amended Complaint. (Am. Comp., ¶ 21)

Abatement Workers, a trust fund under the LMRA and ERISA, directly paid a hospital in Michigan that had an MFN Agreement with Blue Cross for Hospital Healthcare Services at the price contained in the Applicable Provider Agreement. Abatement Workers paid artificially inflated

prices for Hospital Healthcare Services and was injured in its business or property by reason of the antitrust violations alleged in the Amended Complaint. (Am. Comp., ¶ 22)

Monroe Plumbers, a trust fund under the LMRA and ERISA, directly paid a hospital in Michigan that had an MFN Agreement with Blue Cross for Hospital Healthcare Services at the price contained in the Applicable Provider Agreement. Abatement Workers paid artificially inflated prices for Hospital Healthcare Services and was injured in its business or property by reason of the antitrust violations alleged in the Amended Complaint. (Am. Comp., ¶ 23)

Steele, a resident of West Bloomfield, Michigan, directly paid a hospital in Michigan that had an MFN Agreement with Blue Cross for Hospital Healthcare Services at the price contained in the Applicable Provider Agreement. Steele paid artificially inflated prices for Hospital Healthcare Services and was injured in its business or property by reason of the antitrust violations alleged in the Amended Complaint. (Am. Comp., ¶ 24)

In Michigan, individuals who are not eligible for Medicare or Medicaid typically obtain health insurance from commercial health insurance companies. In 2008, approximately 53% of Michigan residents obtained employer-provided or other group health insurance. (Am. Comp., ¶ 35. About 7% obtained individual health insurance directly from commercial insurance companies, including Blue Cross. (Am. Comp., ¶ 35) Commercial health insurers compete to be chosen by employers, employees, self-insured plans and others based on the quality and breadth of their healthcare provider networks, the level of benefits, price, customer service, reputation and other factors. (Am. Comp., ¶ 37) Employers and unions provide group health insurance on either a fully insured or self-insured or self-funded basis. (Am. Comp., ¶ 38) The insurer bears the risk that healthcare claims will exceed anticipated losses. (Am. Comp., ¶ 38) Employers and unions usually

contract with a managed care company to obtain administrative services, subject to negotiated fee schedules, utilization management tools and programs and other services, including claims processing and payment. (Am. Comp., ¶ 39) Blue Cross is the largest provider of administrative services in Michigan and it earned more than $750 million in fees in 2009. (Am. Comp., ¶ 40)

Blue Cross' Motion to Dismiss raises the sole argument that not one of the six named plaintiffs plead individual facts to allege injury. For the reasons set forth below, Blue Cross' motion is denied.

## II.   ANALYSIS

### A.   Motion to Dismiss Standard of Review

Rule 8(a)(2) provides a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the issue is not whether a plaintiff will ultimately prevail on a claim, but whether his complaint is sufficient to cross the federal court's threshold to allege a claim. *Skinner v. Switzer,* 131 S.Ct. 1289, 1296 (2011). A complaint need not pin a plaintiff's claim for relief to a precise legal theory, but generally requires only a plausible "short and plain" statement of the claim, not an exposition of the legal argument. *Id.*

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted). Although not overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an

5

incomplete negative gloss on an accepted pleading standard." *Id.* at 563. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation. *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

      **B.**    **Antitrust Standing**

Antitrust standing is not the same as standing to bring suit required in Article III of the United States Constitution. *NicSand, Inc. v. 3M Co.,* 507 F.3d 442, 449 (6th Cir. 2007). Antitrust standing is a threshold, pleading-stage inquiry. *Id.* at 450. A condition for antitrust standing is antitrust injury where a claimant must show more than a mere "injury causally linked" to a competitive practice; it must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful. *Id.* (citing, *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977)). The Sixth

Circuit set forth a two-prong inquiry an antitrust plaintiff must show to establish antitrust standing: 1) that the alleged violation tends to reduce competition in some market and 2) that the plaintiff's injury would result from a decrease in that competition rather than from some other consequence of the defendant's actions. *Tennessean Truckstop, Inc. v. NTS, Inc.,* 875 F.2d 86, 88 (1989). The Antitrust laws were enacted for the "protection of competition, not competitors." *Id.*

### C. Injury

Blue Cross does not raise any arguments as to the first prong. Blue Cross argues that the six named Plaintiffs have not met the second prong–that they have not alleged sufficient facts, either generically or specifically, the very injury that they say the putative class members must have suffered. The Class Plaintiffs respond they have properly alleged sufficient facts to meet the second prong. They argue that Blue Cross does not point to any case that requires the level of factual detail it demands.

A review of the Amended Complaint shows that the Class Plaintiffs have stated sufficient facts to allege injury. After the *Twombly* and *Iqbal* cases were decided, the Supreme Court in *Skinner, supra,* noted that under Rule 8, a complaint need not pin a plaintiff's claim for relief to a precise legal theory, but generally requires only a plausible "short and plain" statement of the claim, not an exposition of his legal argument. *Switzer,* 131 S.Ct. at 296. In a Sherman Act case, the Sixth Circuit noted that whether a complaint raises a right to relief above the speculative level "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008)(quoting in part *Twombly*); *Williams v. Duke Energy Int'l, Inc.,* 681 F.3d 788, 799 (6th Cir. 2012). Based on the these cases, the Court finds that the detailed and specific facts Blue Cross

7

claims must be alleged in a complaint is not required to plausibly allege injury. The Class Plaintiffs, individually, allege that they purchased hospital healthcare services directly from MFN hospitals in Michigan and that by doing so they were injured. (Am. Comp., ¶¶ 19-24).

The Shane Group directly paid a hospital in Michigan that had an MFN Agreement with Blue Cross for Hospital Healthcare Services at the price contained in the Applicable Provider Agreement. (Am. Comp., ¶ 19) The Shane Group paid artificially inflated prices for these services and was injured in its business or property by reason of the antitrust violations alleged in the Amended Complaint. (Am. Comp., ¶ 19) Veneberg directly paid a hospital in Michigan that had an MFN Agreement with Blue Cross for Hospital Healthcare Services at the price contained in the Applicable Provider Agreement. (Am. Comp., ¶ 20) Veneberg paid artificially inflated prices for Hospital Healthcare Services and was injured in his business or property by reason of the antitrust violations alleged in the Amended Complaint. (Am. Comp., ¶ 20) The Michigan Regional Council directly paid a hospital in Michigan that had an MFN Agreement with Blue Cross for Hospital Healthcare Services at the price contained in the Applicable Provider Agreement. Michigan Regional Council paid artificially inflated prices for Hospital Healthcare Services and was injured in its business or property by reason of the antitrust violations alleged in the Amended Complaint. (Am. Comp., ¶ 21) Abatement Workers directly paid a hospital in Michigan that had an MFN Agreement with Blue Cross for Hospital Healthcare Services at the price contained in the Applicable Provider Agreement. Abatement Workers paid artificially inflated prices for Hospital Healthcare Services and was injured in its business or property by reason of the antitrust violations alleged in the Amended Complaint. (Am. Comp., ¶ 22) Monroe Plumbers directly paid a hospital in Michigan that had an MFN Agreement with Blue Cross for Hospital Healthcare Services at the price contained in the Applicable

Provider Agreement. Abatement Workers paid artificially inflated prices for Hospital Healthcare Services and was injured in its business or property by reason of the antitrust violations alleged in the Amended Complaint. (Am. Comp., ¶ 23) Steele directly paid a hospital in Michigan that had an MFN Agreement with Blue Cross for Hospital Healthcare Services at the price contained in the Applicable Provider Agreement. Steele paid artificially inflated prices for Hospital Healthcare Services and was injured in its business or property by reason of the antitrust violations alleged in the Amended Complaint. (Am. Comp., ¶ 24)

The Court finds that based on these allegations, Blue Cross has been given fair notice of the nature of the Class Plaintiffs' claims, individually, and the grounds upon which the claims rest. The Class Plaintiffs have stated sufficient facts to allege plausible claims of injury under an antitrust case. Blue Cross' Motion to Dismiss for failure to allege sufficient facts regarding individual injury is denied.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Blue Cross' Motion to Dismiss (#80) is DENIED.

                    S/Denise Page Hood
                    Denise Page Hood
                    United States District Judge

Dated: November 30, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 30, 2012, by electronic and/or ordinary mail.

                    S/LaShawn R. Saulsberry
                    Case Manager