## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SHANE GROUP, INC. *ET AL.*, <br><br> Plaintiffs, on behalf of themselves and all others similarly situated, <br><br> vs. <br><br> BLUE CROSS BLUE SHIELD OF MICHIGAN, <br><br> Defendant. | Civil Action No. 2:10-cv-14360-DPH-MKM <br><br> Judge Denise Page Hood <br> Magistrate Judge Mona K. Majzoub |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND RELATED RELIEF

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs Michigan Regional Council of Carpenters Employee Benefits Fund, The Shane Group, Inc., Bradley A. Veneberg, Abatement Workers National Health and Welfare Fund, Monroe Plumbers & Pipefitter Local 671 Welfare Fund, and Scott Steele and Proposed Plaintiffs Patrice Noah and Susan Baynard respectfully move this Court to (i) grant preliminary approval of the proposed Settlement Agreement (attached to Plaintiffs' memorandum in support hereof as Exhibit 1); (ii) name Patrice Noah and Susan Baynard as additional class representatives; (iii) certify the proposed Settlement Class as defined at p. 13 of the accompanying memorandum; (iv) approve the form and manner of giving notice of the proposed Settlement to the

Class; (v) set a hearing date for final approval thereof (the "Fairness Hearing");

and (vi) grant such other relief as is requested on pp. 2-3 of the accompanying

memorandum. In support of this motion, Plaintiffs rely upon the authorities and

arguments set forth in the accompanying memorandum.

　　　　Defendant do not oppose the requested relief.

June 23, 2014                           Respectfully submitted,


　　　　　　　　　　　　　　　　　　　/s/ Daniel A. Small
Daniel E. Gustafson                     Daniel A. Small
Daniel C. Hedlund                       Brent W. Johnson
**Gustafson Gluek PLLC**                **Cohen Milstein Sellers & Toll PLLC**
Canadian Pacific Plaza                  1100 New York Ave. NW
120 South Sixth Street, Suite 2600      Suite 500, West Tower
Minneapolis, MN 55402                   Washington, DC 20005
Telephone:  (612) 333-8844              Telephone:  (202) 408-4600
dgustafson@gustafsongluek.com           bjohnson@cohenmilstein.com
dhedlund@gustafsongluek.com             dsmall@cohenmilstein.com


E. Powell Miller                        Fred Isquith
**The Miller Law Firm, P.C.**           **Wolf Haldesnstein Adler Freeman**
950 West University Drive, Suite 300     **& Herz LLC**
Rochester, Michigan  48307              270 Madison Avenue
Telephone: (248) 841-2200               New York, New York 10016
epm@millerlawpc.com                     Telephone:  (212) 545-4600
　　　　　　　　　　　　　　　　　　　isquith@whafh.com


*Interim Co-Lead Counsel for the Settlement Class*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SHANE GROUP, INC. *ET AL.*, <br><br> Plaintiffs, on behalf of themselves and all others similarly situated, <br><br> vs. <br><br> BLUE CROSS BLUE SHIELD OF MICHIGAN, <br><br> Defendant. | Civil Action No. 2:10-cv-14360-DPH-MKM <br><br><br> Judge Denise Page Hood <br> Magistrate Judge Mona K. Majzoub |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND RELATED RELIEF

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................1

II.     PROCEDURAL HISTORY ...........................................................3

III.    THE PROPOSED SETTLEMENT ..................................................5

IV.     THE COURT SHOULD APPROVE THE PROPOSED
        SETTLEMENT..................................................................................8
        A.    The Settlement Is Well Within the Range of Possible Approval
              as Being Fair, Reasonable and Adequate ..............................9
        B.    The Settlement Is the Result of Arm's-Length Negotiations..............11

V.      NOAH AND BAYNARD SHOULD BE ADDED AS ADDITIONAL
        NAMED  PLAINTIFFS ..................................................................12

VI.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED AND
        CLASS  COUNSEL APPOINTED .............................................13
        A.    The Settlement Class Satisfies the Numerosity Requirement.............14
        B.    The Settlement Class Satisfies the Commonality Requirement .........14
        C.    The Settlement Class Satisfies the Typicality Requirement ..............15
        D.    The Settlement Class Satisfies the Adequacy Requirement ..............15
        E.    Questions of Law and Fact Predominate Over Any Questions
              Affecting Individual Members of the Settlement Class.....................17

VII.    THE CLASS NOTICES AND THE NOTICE PLAN SHOULD BE
        APPROVED ...................................................................................20

VIII.   THIS COURT SHOULD PRELIMINARILY APPROVE THE PLAN
        OF ALLOCATION AND APPROVE THE CLAIM FORM .....................22

IX.     CONCLUSION................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) .................................................................15

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).................................................................13, 17

*Beattie v. CenturyTel, Inc.*,
  234 F.R.D. 160 (E.D. Mich. 2006) ...................................................15

*In re Carbon Black Antitrust Litig.*,
  Civ. No. 03-10191-DPW, 2005 U.S. Dist. LEXIS 660 (D. Mass. Jan. 18,
  2005) .................................................................................................19

*In re Cardizem CD Antitrust Litig.*,
  200 F.R.D. 326 (E.D. Mich. 2001) ...................................................20

*In re Cincinnati Policing*,
  209 F.R.D. 395 (S.D. Ohio 2002).......................................................11

*Daffin v. Ford Motor Co.*,
  458 F.3d 549 (6th Cir. 2006) .............................................................14

*Dallas v. Alcatel-Lucent USA, Inc.*,
  No. 09-cv-14596, 2013 WL 2197624 (E.D. Mich. May 20, 2013).....................8

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)...........................................................................21

*In re F&M Distribs., Inc. Sec. Litig.*,
  No. 95-cv-71778, 1999 U.S. Dist. LEXIS 11090 (E.D. Mich. June 29,
  1999) .................................................................................................12

*In re Foundry Resins Antitrust Litig.*,
  242 F.R.D. 393 (S.D. Ohio 2007)......................................................17

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ......................................................10

i

*Hicks v. Morgan Stanley & Co.*,
    No. 01-cv-10071, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19,
    2005) ...........................................................................................................25

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
    204 F.R.D. 359 (N.D. Ohio 2001) .......................................................8

*IUE-CWA v. General Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) ......................................8, 10, 13

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*,
    571 F.3d 672 (7th Cir. 2009) .............................................................19

*In re Lease Oil Antitrust Litig.*,
    186 F.R.D. 403 (S.D. Tex. 1999)......................................................21

*In re Linerboard Antitrust Litig.*,
    No. MDL 1261, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004).............9

*Lonardo v. Travelers Indem. Co.*,
    706 F. Supp. 2d 766 (N.D. Ohio 2010) ...........................................9

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
    838 F. Supp. 729 (S.D.N.Y. 1993) ..................................................10

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) .............................................................19

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427 (E.D. Mich. Dec.
    13, 2011) .....................................................................................................8

*Powers v. Hamilton Cnty. Pub. Defender Comm'n*,
    501 F.3d 592 (6th Cir. 2007) .............................................................15

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    No. 03-md-1556, 2007 U.S. Dist. LEXIS 85466 (M.D. Pa. Nov. 19,
    2007) ...........................................................................................................18

*Stout v. J.D. Byrider*,
    228 F.3d 709 (6th Cir. 2000) .............................................................15

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) (en banc) .............................................................17

*Taft v. Ackermans*,
   No. 02-cv-7951, 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007)..........25

*In re Top Tankers, Inc. Sec. Litig.*,
   No. 06-cv-13761, 2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31,
   2008) ...................................................................................................................24

*UAW v. GMC*,
   No. 05-cv-73991, 2006 U.S. Dist. LEXIS 14890 (E.D. Mich. Mar. 31,
   2006) ...................................................................................................................11

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) .............................................................................14

## STATUTES AND RULES

Fed. R. Civ. P. 21 ....................................................................................................2, 12

Fed. R. Civ. P. 23 .................................................................................................*passim*

Section 1 of the Sherman Act .......................................................................................4

Section 2 of the Michigan Antitrust Reform Act..........................................................4

## OTHER AUTHORITIES

A. Conte & H. Newberg, *Newberg on Class Actions*, § 8.20-.21 at 228-32
   (4th ed. 2002) ......................................................................................................20

## I.    INTRODUCTION

Following three-and-a-half years of contentious litigation, including full fact discovery on merits and class certification issues and nearly complete briefing and expert discovery on class certification, Plaintiffs have reached a fair and reasonable settlement of their antitrust claims against Blue Cross Blue Shield of Michigan ("Blue Cross" or "BCBSM"). This settlement requires BCBSM to pay a proposed settlement class of direct purchasers of hospital healthcare services in Michigan ("Settlement Class")[1] the sum of $29,990,000 in exchange for a full release of all claims that the settlement class has against BCBSM in connection with the allegedly anticompetitive most favored nation clauses ("MFNs") in Blue Cross's contracts with Michigan General Acute Care Hospitals during the period 2006 to

---

[1] The Settlement Class is defined in the Settlement Agreement as follows:

> "Settlement Class" means "all Direct Purchasers of healthcare services from a Michigan General Acute Care Hospital from January 1, 2006 until June 23, 2014. Excluded from the Settlement Class are all Released Parties." For purposes of this class definition, "Direct Purchasers" includes without limitation individuals who paid Michigan General Acute Care Hospitals in the form of co-pays, co-insurance or otherwise; insurers that paid Michigan General Acute Care Hospitals for their insureds; and self-insured entities whose health plan participants received healthcare services at Michigan General Acute Care Hospitals.

¶ 30. Unless otherwise stated, all paragraph references are to the Settlement Agreement dated June 23, 2014, attached hereto as Exhibit 1. All capitalized terms herein have the same meaning they have in the Settlement Agreement.

June 23, 2014 (the date of the Settlement Agreement).

The settlement provides an excellent recovery for the Settlement Class, especially in light of the risks, burdens and uncertainties involved in this complex, expensive, and hard-fought litigation.

Plaintiffs request that this Court enter an order substantially in the form attached to the Settlement Agreement as Exhibit H:

1.   granting preliminary approval to the Settlement Agreement, including the Plan of Allocation attached to the Settlement Agreement as Exhibit F;

2.   joining Patrice Noah and Susan Baynard as additional named plaintiffs under Fed. R. Civ. P. 21;

3.   certifying the Settlement Class under Fed. R. Civ. P. 23(a) and (b)(3);

4.   appointing each of the six existing named Plaintiffs and Proposed Plaintiffs Noah and Baynard as representatives of the Settlement Class;

5.   appointing those firms currently serving as interim Co-Lead Counsel, namely, The Miller Law Firm, P.C., Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), Gustafson Gluek, PLLC, and Wolf, Haldenstein, Adler, Freeman & Herz LLC ("Wolf Haldenstein"), as Class Counsel under Fed. R. Civ. P. 23(g) to represent the Settlement Class;

6.   appointing Epiq Systems as the Settlement Administrator to administer the Settlement under the supervision of Class Counsel;

7.   appointing Eagle Bank to hold the Settlement Fund in an escrow account and to disburse funds from that account according to the orders of this Court;

8.   approving the form of the Notices attached to the Settlement Agreement as Exhibits B, C and D, and approving the Notice Plan (attached to the Settlement Agreement as Exhibit A), for disseminating these notices to the Settlement Class Members;

9.   approving the Claim Form attached to the Settlement Agreement as Exhibit E;

10.  authorizing payment from the Settlement Fund of certain expenses of settlement administration;

2

11. setting deadlines for: (a) objecting to the settlement or requesting exclusion from the Settlement Class; (b) filing a motion for final approval of the settlement; and (c) petitioning the Court for attorneys' fees, expenses and plaintiff incentive awards;

12. setting a date for a fairness hearing to consider final approval of the settlement and Plaintiffs' forthcoming request for attorneys' fees, reimbursement of expenses, and plaintiff incentive awards; and

13. staying all proceedings in this Action except those provided for or required by the Settlement Agreement.

This motion and all of the foregoing sought relief is unopposed by BCBSM.

## II. PROCEDURAL HISTORY

The first class action complaint in this litigation was filed on October 29, 2010. Three other class action complaints were filed shortly thereafter, although one of them, filed by City of Pontiac, was dismissed with prejudice by this Court on March 30, 2012. Dkt. No. 172 (No. 11-cv-10276). No appeal was taken. On May 29, 2012, the Court appointed The Miller Law Firm, Cohen Milstein, Gustafson Gluek and Wolf Haldenstein as interim class counsel pursuant to Rule 23(g). Dkt. No. 69.[2] On June 12, 2012, Plaintiffs filed a Consolidated Amended Complaint (CAC). Dkt. No. 72. The Court denied BCBSM's motion to dismiss the CAC on November 30, 2012. Dkt. No. 102.

In the CAC, Plaintiffs allege that beginning in the mid-2000s, Blue Cross entered into multiple contracts that harmed its rivals' ability to compete in the Michigan health insurance market by inserting MFN provisions in more than half

---

[2] Unless otherwise stated, all docket references are to the electronic docket in this case.

3

of its contracts with Michigan General Acute Care Hospitals. CAC ¶¶ 2-4. The CAC alleges that this was designed to entrench Blue Cross's dominant position in Michigan by raising its rivals' costs of providing health insurance. CAC ¶ 4.  The CAC further alleges that the higher hospital charges resulting from the MFN provisions not only raised rivals' costs, but also inflated the charges paid by the other purchasers of hospital care, namely, individual insureds and self-insured entities who, along with Blue Cross's rivals, comprise the Settlement Class. Plaintiffs bring their claims under Section 1 of the Sherman Act and Section 2 of the Michigan Antitrust Reform Act.

The parties engaged in extensive fact discovery, in coordination with the discovery occurring in the parallel cases brought against Blue Cross by the United States and the State of Michigan[3] and by Aetna.[4] They exchanged millions of pages of documents, procured millions of pages of documents from third parties, responded to voluminous interrogatories, and took 169 depositions, including many of third-party insurers and hospitals. In addition to documents, the voluminous data produced and analyzed in this case – data reflecting payment terms and numerous other relevant factors for the large majority of healthcare procedures occurring in Michigan General Acute Care Hospitals over a period of

---

[3] *United States v. Blue Cross Blue Shield of Mich.*, No. 10-cv-14155 (E.D. Mich.).

[4] *Aetna Inc. v. Blue Cross Blue Shield of Mich.*, No. 11-cv-15346 (E.D. Mich.).

about seven years – is almost unprecedented in antitrust litigation.

On June 17, 2013, Plaintiffs filed a motion to drop the claims of certain Plaintiffs and to add Patrice Noah and Susan Baynard as additional plaintiffs to represent the proposed class. Dkt. No. 124. On October 21, 2013, Plaintiffs filed their motion for class certification, Dkt. No. 133, supported by the expert report of economist Dr. Jeffrey J. Leitzinger. Defendants opposed the motion on February 3, 2014, Dkt. No. 139, accompanied by, *inter alia*, the expert report of economist Dr. David S. Sibley. Drs. Leitzinger and Sibley were deposed. Before the deadline for Plaintiffs to file their reply, and before the Court had ruled on the motion to add and drop Plaintiffs, the parties informed the Court of their settlement and the Court entered an Order Adjourning All Deadlines on March 27, 2014, Dkt. No. 146.

## III.    THE PROPOSED SETTLEMENT

Plaintiffs and Blue Cross conducted settlement negotiations on and off for over a year, with discussions intensifying in mid-March of this year, an agreement in principle reached in late-March, and a written agreement signed in June. This settlement was reached only after prolonged, difficult and arm's-length negotiations between the Parties.

The Settlement Agreement provides that Blue Cross will deposit $29,990,000 in an interest-bearing escrow account for the benefit of the Settlement Class.  ¶¶ 35-37.  The payment will be made in two installments.  The first

installment will be paid within 15 days of preliminary approval of the settlement, and the remainder will be paid within 5 days of Final Approval (including any appeals). *Id*. The escrow account will be maintained at Eagle Bank, a Maryland State Chartered Bank which has served as an escrow agent for settlement funds on several occasions. ¶¶ 6 & 38. Any interest accrued on the Settlement Amount will become part of the Settlement Fund. ¶¶ 32, 38, & 68. No disbursements from the escrow account will be made without prior Court approval. ¶¶ 66-70 .[5]

Upon Court approval, the Settlement Agreement binds Blue Cross, Plaintiffs, and the Settlement Class, which includes "all Direct Purchasers of healthcare services from a Michigan General Acute Care Hospital for healthcare services from January 1, 2006 until June 23, 2014" and that do not timely and validly exclude themselves from the Settlement Class. ¶¶ 24-25, 30, & 93.[6]

When it becomes final, the Settlement Agreement releases Blue Cross (and certain related entities and individuals) from all claims by Settlement Class Members who do not opt out (and by certain related entities and individuals) "arising out of or in any way relating to [BCBSM's] Most Favored Nation Clauses, or any matter or event occurring up to the execution of this Agreement arising out

---

[5] The Settlement Agreement provides that – with Court approval, which Plaintiffs seek in this motion – certain costs to administer the settlement may be paid from the Settlement Fund as they are incurred. *See* ¶ 70.

[6] Blue Cross and related persons and entities are excluded from the Settlement Class. ¶ 24.

of the dispute which is the subject of this action." ¶ 58.

The Parties may rescind the Agreement if the Court declines to approve it or any material part of it or if such approval is materially modified or set aside on appeal. ¶ 73. Blue Cross may also rescind the Agreement if it determines in good faith that the dollar amount of Relevant Purchases by Settlement Class Members who request exclusion (other than Aetna, Inc.) materially undermines the value of the Settlement to BCBSM. ¶ 74.

The Settlement Agreement includes a Plan of Allocation by which Plaintiffs propose to distribute the Net Settlement Fund[7] to Settlement Class Members who submit timely and valid Claim Forms.[8] The plan provides for pro rata distribution of the Net Settlement Fund, based on the dollar amount of Claimants' relevant purchases of hospital services. The distribution is subject to minimum and maximum amounts per claimant and weighting of relevant purchases according to Plaintiffs' assessment of the relative strength of the damages claim associated with the different categories of purchases.

Other than the Settlement Agreement, no agreements requiring disclosure were "made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).

---

[7] The Net Settlement Fund is the Settlement Amount plus accrued interest minus any amounts awarded by the Court for attorneys' fees, expenses and plaintiff incentive awards. *See* ¶ 13.

[8] Plaintiffs' motion for final approval of the Settlement will include a request for approval of the Plan of Allocation and the Claim Form.

## IV.   THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT

Courts in the Sixth Circuit have often noted that the law favors the settlement of class action lawsuits. *See In re Packaged Ice Antitrust Litig.,* No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *42 (E.D. Mich. Dec. 13, 2011); *IUE-CWA v. General Motors Corp.,* 238 F.R.D. 583, 593 (E.D. Mich. 2006). At the preliminary approval stage, the role of the district court is limited to determining that the settlement (i) "appears to fall within the range of possible approval," and (ii) "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys." *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-cv-14596, 2013 WL 2197624, at *8 (E.D. Mich. May 20, 2013) (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001)).

This settlement easily meets this standard. This settlement recovers approximately $30 million in cash on behalf of the Settlement Class, a substantial sum of money, especially in light of the real risks faced by Plaintiffs on class certification, summary judgment and in proving their case to the satisfaction of a jury, and given the inevitable delay and risk in obtaining a recovery through trial and appeal. The settlement presents no "obvious deficiencies" or any "grounds to doubt its fairness." Rather, this is a straightforward cash deal for a straightforward

8

release. The settlement money will be distributed to the Settlement Class, its counsel and the class representatives only in the manner and in the amounts approved by this Court as fair and reasonable.

    A.    <u>The Settlement Is Well Within the Range of Possible Approval as Being Fair, Reasonable and Adequate</u>

The Settlement Agreement provides the Settlement Class with a substantial recovery – just shy of 30 million dollars. This amount represents over 25% of the overcharges that Dr. Leitzinger preliminarily estimated had been paid by members of the litigation class that Plaintiffs sought to certify.[9] This is an excellent recovery for the Settlement Class especially in this complex case, and compares favorably to other class action antitrust settlements. *See In re Linerboard Antitrust Litig.,* No. MDL 1261, 2004 U.S. Dist. LEXIS 10532, at *15 (E.D. Pa. June 2, 2004) (collecting cases in which courts have approved settlements of 5.35% to 28% of

---

[9] To be sure, the Settlement Class is significantly broader than the proposed litigation class: the Settlement Class covers a broader time period and broader set of Michigan hospitals. But it is not unusual to settle a class action for a broader class given the defendant's desire for total peace. *See Lonardo v. Travelers Indem. Co.,* 706 F. Supp. 2d 766, 772 n.5 (N.D. Ohio 2010). Moreover, as discussed *infra* Part VIII, Plaintiffs' proposed plan of allocation allocates the large majority of the settlement money to the members of the proposed litigation class, in recognition of the greater strength of their damages claims, as revealed by Plaintiffs' Counsel's analysis of the extensive factual record and Dr. Leitzinger's impact and damages analysis. Thus, even though the Settlement Class adds additional persons, entities and purchases to this case – which was a condition of settlement – the broader class will not unreasonably or unfairly dilute the claims of the members of the proposed litigation class. Further, BCBSM's desire to settle with the broader class acknowledges that it faces some risk, however small, from at least the expense and distraction of litigating additional claims.

estimated damages in complex antitrust actions).

The fairness of the settlement is underscored by the substantial risks and certain delays associated with continuing the litigation.  Were the litigation against Blue Cross to continue, Blue Cross has made it clear that it would continue to vigorously defend itself against the Plaintiffs' claims. Blue Cross has argued strenuously that the challenged MFN agreements are procompetitive, that they did not cause reimbursement rates to increase, that any increases in reimbursement rates were too small to affect competition among sellers of commercial health insurance, and that Plaintiffs cannot prove impact and damages *at all*, let alone with class-wide evidence. While Plaintiffs believe they can counter these arguments, they face real risk that the Court or a jury would disagree. *See IUE-CWA*, 238 F.R.D. at 594 (recognizing "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.") (quoting *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 186 (W.D.N.Y. 2005)). Even if Plaintiffs were to prevail on all liability issues, there is no guarantee that a jury would award them substantial damages. *See In re McDonnell Douglas Equip. Leasing Sec. Litig.,* 838 F. Supp. 729, 741 (S.D.N.Y. 1993). In order to avoid these substantial risks and this uncertainty, as well as the "long, arduous [trial] requiring great expenditures of time and money on behalf of both the parties and the court," the Parties have determined that

settlement is in their own best interests. *In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002).

B.   <u>The Settlement Is the Result of Arm's-Length Negotiations</u>

There is a presumption that parties act in good faith during settlement negotiations. *UAW v. GMC*, No. 05-cv-73991, 2006 U.S. Dist. LEXIS 14890, at *63 (E.D. Mich. Mar. 31, 2006) ("Courts presume the absence of fraud or collusion [in settlement negotiations] unless there is evidence to the contrary."). There is no reason to challenge that presumption here, as the settlement negotiations have been conducted at arm's-length, with each side zealously advocating for the interests of its client(s) and wholeheartedly pursuing litigation throughout the process. Further, both parties are represented by highly competent counsel, who are experienced in antitrust class action cases like this one.

Additionally, the Settlement Agreement does not reflect any preferential treatment for the class representatives or provide for excessive compensation for the attorneys. Indeed, the settlement provides for no particular award of attorneys' fees, but requires Plaintiffs to petition the Court to approve their requested fees, and the Court will only approve such a request to the extent it is reasonable. The class representatives do not receive any special treatment under the settlement. While Plaintiffs intend to petition the Court for incentive awards for the Plaintiffs, these are well-recognized in the law as an appropriate means of compensating the

11

Plaintiffs for the services they provided and the risks they took on behalf of the class. *See In re F&M Distribs., Inc. Sec. Litig.*, No. 95-cv-71778, 1999 U.S. Dist. LEXIS 11090, at *20-21 (E.D. Mich. June 29, 1999) (noting that "[incentive] awards are common in class actions where common funds have been created" and finding that awards were "reasonable and justified due to the discovery and other burdens to which [class representatives] were subjected, including having to give depositions and produce their records of securities transactions.").

Because the Settlement Agreement provides for reasonable compensation, contains no unfair provisions, and was reached through good faith negotiations, Plaintiffs request that this Court grant preliminary approval.

## V.   NOAH AND BAYNARD SHOULD BE ADDED AS ADDITIONAL NAMED   PLAINTIFFS

Plaintiffs request that the Court join Patrice Noah and Susan Baynard as additional named plaintiffs in this Action pursuant to Rule 21 of the Federal Rules of Civil Procedure. Both individuals desire to serve as class representatives in this case, and in fact produced documents and then appeared for deposition in January 2014 in anticipation of being added to the case. Their addition would bolster the adequacy of representation of the Settlement Class. Plaintiffs moved to add them as additional plaintiffs last year, and the motion was pending when the case settled. For the reasons stated in that motion, Plaintiffs now request that Noah and Baynard be joined as additional named plaintiffs to represent the Settlement Class. *See* Dkt.

No. 124, at 9-12.

## VI.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED AND CLASS COUNSEL APPOINTED

Plaintiffs request that the Court certify, for settlement purposes only, a

Settlement Class comprised of:

> All Direct Purchasers of healthcare services from a Michigan General Acute Care Hospital from January 1, 2006 until June 23, 2014. Excluded from the Settlement Class are all Released Parties. For purposes of this class definition, "Direct Purchasers" includes without limitation individuals who paid Michigan General Acute Care Hospitals in the form of co-pays, co-insurance or otherwise; insurers that paid Michigan General Acute Care Hospitals for their insureds; and self-insured entities whose health plan participants received healthcare services at Michigan General Acute Care Hospitals.

Plaintiffs further request that the Court appoint, for settlement purposes

only, each current Plaintiff and Proposed Plaintiffs Patrice Noah and Susan

Baynard as Settlement Class representatives, and interim Co-Lead Class Counsel

as Class Counsel to the Settlement Class.

To determine whether a proposed settlement class should be approved, a

Court must determine whether the class satisfies the requirements of Rule 23(a)

and 23(b). *See IUE-CWA*, 238 F.R.D. at 591. It is appropriate for the Court to do

so, however, with the knowledge that a settlement class does not present issues

identical to those of a litigation class destined for trial. *See Amchem Prods., Inc. v.

Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only

class certification, a district court need not inquire whether the case, if tried, would

13

present intractable management problems . . . ”). As explained below, the Settlement Class meets the applicable Rule 23 requirements.

A.   The Settlement Class Satisfies the Numerosity Requirement

The numerosity requirement is met when “joinder of all members is impracticable.” Fed. R. Civ. P. 23(a)(1). “While no strict numerical test exists to define numerosity under Rule 23(a)(1), ‘substantial’ numbers of affected consumers are sufficient to satisfy this requirement.” *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013) (quoting *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). The litigation class Plaintiffs sought to certify consisted of many thousands of members. *See* Expert Rep. of Jeffrey Leitzinger, Ph.D. in Support of Pls.’ Mot. for Class Cert. (“Leitzinger Rpt.”) (Oct. 21, 2013), Dkt. No. 133 Ex. A, at ¶ 25. The Settlement Class is broader – consisting of all insurers, self-insured entities and individual insureds who purchased healthcare services from a Michigan General Acute Care Hospital during a more than eight-year period – and thus easily satisfies the numerosity requirement.

B.   The Settlement Class Satisfies the Commonality Requirement

The Settlement Class satisfies the commonality requirement, *see* Fed. R. Civ. P. 23(a)(2), as there are several factual and legal issues that are common to the class members. Such common issues include whether the MFN agreements were

anticompetitive, whether BCBSM's actions injured the class members, and the appropriate measure of damages. Common questions such as these are often found to be sufficient to satisfy the commonality requirement, and do so here. *See Young*, 693 F.3d at 543.

C.     The Settlement Class Satisfies the Typicality Requirement

The claims of Plaintiffs and Proposed Plaintiffs Patrice Noah and Susan Baynard are typical of the claims of the Settlement Class because the class representatives' claims and the class's claims all arise from the same course of conduct – BCBSM's MFN agreements. Moreover, all seek recovery on the theory that the MFN agreements were anticompetitive and caused prices for healthcare at Michigan General Acute Care Hospitals to be inflated. *See* Fed. R. Civ. P. 23(a)(3); *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007) ("[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).

D.     The Settlement Class Satisfies the Adequacy Requirement

Rule 23(a)(4)'s adequacy requirement raises two questions: "(1) whether the class counsel are qualified, experienced and generally able to conduct the litigation and (2) whether the class members have interests that are antagonistic to the other

class members." *Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 169 (E.D. Mich. 2006) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)). Here, both factors are satisfied.

The Court previously concluded that The Miller Law Firm, Cohen Milstein, Gustafson Gluek, and Wolf Haldenstein have the experience, knowledge and resources to adequately represent a class in this case, in appointing them interim class counsel under Federal Rule of Civil Procedure 23(g). *See* Dkt. No. 69. Since that appointment, these four firms (together with their co-counsel) have vigorously and effectively litigated this case for nearly two years, defeating BCBSM's motion to dismiss, participating in extensive fact and expert discovery, working with Dr. Leitzinger to prepare class certification expert reports, filing a motion for class certification, and virtually completing a class certification reply brief (before the case settled). Interim class counsel's work in this case demonstrates that, in addition to having the experience, knowledge and resources to adequately represent the Settlement Class, they have in fact capably represented, and devoted a substantial amount of resources to, a proposed class in this case for an extended period of time.

Plaintiffs and Proposed Plaintiffs have likewise shown their dedication to advancing the interests of a class throughout the course of the litigation – working with their counsel, producing documents in discovery and sitting for depositions.

16

No conflicts between Plaintiffs, Proposed Plaintiffs and the litigation class have arisen during this case. Further, the proposed class representatives' interests are aligned with the Settlement Class's interests in this case because they, like all other class members, have been injured by the same alleged conduct and they, like the other class members, "have the same interest in establishing liability, and . . . they all seek damages for overpayment." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 407 (S.D. Ohio 2007). They are thus adequate representatives of the Settlement Class.

E.     Questions of Law and Fact Predominate Over Any Questions Affecting Individual Members of the Settlement Class

Finally, Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Antitrust cases are ideally suited for class action treatment because common issues routinely predominate. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."). Importantly, in *Amchem*, the Supreme Court recognized that the fact of a "settlement is relevant to a class certification," and specifically instructed that the portion of the predominance analysis that typically focuses on the management of the trial becomes unnecessary and irrelevant when a class is being certified in light

17

of settlement. *Id*. at 619-20. *See also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 305-06 (3d Cir. 2011) (en banc) (court need not "consider the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove the disputed element at trial") (quotation omitted). Here, the focus is on Defendant's conduct and its overall effect on the market as a whole, *not* on matters pertaining to individual Settlement Class Members. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, No. 03-md-1556, 2007 U.S. Dist. LEXIS 85466, at *41 (M.D. Pa. Nov. 19, 2007) ("Common issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members") (citation and quotation marks omitted).

Common issues predominate here because, to recover, each and every member of the Settlement Class would need to prove: (1) the existence of the MFN agreements between Blue Cross and certain hospitals in Michigan, (2) how these agreements affected competition in the sale of commercial health insurance, including whether the MFN hospitals were located in geographic areas that would cause competition to be suppressed, and (3) Blue Cross's market power. Each of these issues is a component of the liability case and thus is common to all class members.

In addition, Dr. Leitzinger has devised a single formula and compiled a single database that allow him to opine on which hospitals negotiated inflated

reimbursement rates with Priority, HAP, Aetna and Blue Cross (the insurers from which plaintiffs obtained the necessary data) as a result of the MFN agreements, and to estimate how much the rate was inflated. These class-wide elements are central to Dr. Leitzinger's analysis and are more than sufficient to make his analysis common evidence.[10] Indeed, the Seventh Circuit held that the same or similar  methodology used in another case also involving overcharges on hospital services was common evidence, even if the methodology needed to be applied to determine impact and damages on a *medical-procedure-by-medical-procedure* basis. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 819 (7th Cir. 2012).

Not only do common issues exist as to the claims of the Settlement Class, they outweigh any individual issues. *See* Dkt. No. 133, at 32-48. Accordingly, the class action device would be far superior to any alternative procedure for resolving the factual and legal issues presented here. *See In re Carbon Black Antitrust Litig.*, Civ. No. 03-10191-DPW, 2005 U.S. Dist. LEXIS 660, *82-83 (D. Mass. Jan. 18, 2005) (courts generally find superiority requirement satisfied when common issues

---

[10] While the data Dr. Leitzinger used was to show impact and damages for the narrower litigation class, his methodology is equally applicable to the Settlement Class, although it may be the case that, as discussed in Section VIII below, Plaintiffs would have substantially greater difficulty proving impact and damages for some members of the Settlement Class. But what matters for class certification is that a common methodology and database can be used to determine who was harmed and the extent of their damages. *See Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 679 (7th Cir. 2009).

predominate). A single class-wide adjudication is more efficient than thousands of individual actions litigating the same issues with the same proof, and more fair than the more likely alternative – few or no individual suits at all. *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 350-51 (E.D. Mich. 2001).

Because the requirements of Rule 23 are satisfied, especially in light of settlement, Plaintiffs ask that the Court certify the Settlement Class.

## VII.   THE CLASS NOTICES AND THE NOTICE PLAN SHOULD BE APPROVED

Plaintiffs request approval of the forms of class notice attached to the Settlement Agreement as Exhibits B (Postcard Notice), C (Publication Notice) and D (Long Form Notice), and the proposed Notice Plan, attached to the Settlement Agreement as Exhibit A, for disseminating these notices to Settlement Class Members. Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* A. Conte & H. Newberg, *Newberg on Class Actions*, § 8.20-.21 at 228-32 (4th ed. 2002).

As detailed in the Notice Plan, Plaintiffs propose to provide the following notice to the Settlement Class:

- Mail the Postcard Notice to all Settlement Class Members whose names and addresses are available from the data produced in this litigation by Blue Cross, Priority, and Aetna, as well as to all other

commercial insurers in the class. Plaintiffs are seeking contact information for customers of HAP and additional customers of Aetna. Plaintiffs estimate that postcards will be mailed to more than 2 million class members.

- Publish the Publication Notice in 12 local newspapers, two newspaper supplements, and *People* magazine in Michigan.

- Place a banner advertisement on websites that are part of the Xaxis Network.

- Post the Long Form Notice, the Settlement Agreement, the Claim Form, and other information about the settlement on a website that the Settlement Administrator[11] will create and maintain. The Publication Notice and Postcard Notice will prominently display the website address.

- The Long Form Notice will identify the website address and provide both an email address that will be staffed by the Settlement Administrator and a toll-free telephone number to allow Settlement Class Members to request a Notice or Claim Form be mailed to them or listen to answers to frequently asked questions.

The contents of the class notices and the proposed method of their dissemination comport with Federal Rules of Civil Procedure 23(c)(2) and 23(e), as well as due process. *See generally* Declaration of Shannon R. Wheatman, Ph.D. on Adequacy of Notice Plan ("Wheatman Decl."), dated June ___, 2014 (Attached hereto as Exhibit 2); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-77 (1974) (due process is satisfied by mailed notice to all class members who reasonably can be identified); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 429

---

[11] Epiq Systems has over 40 years of experience in notice and administration in class action cases. *See* "Epiq Overview," attached hereto as Exhibit 3. Epiq Systems was selected by Class Counsel through a competitive bidding process.

(S.D. Tex. 1999) (mailed notice to all class members whose address was known, and publication notice, satisfied Due Process and Rule 23). Plaintiffs therefore request that the Court approve the form of the class notices and the Notice Plan.

## VIII. THIS COURT SHOULD PRELIMINARILY APPROVE THE PLAN OF ALLOCATION AND APPROVE THE CLAIM FORM

Plaintiffs propose to distribute the Net Settlement Fund[12] to Settlement Class Members who submit timely and valid Claim Forms. Plaintiffs will disseminate a Claim Form, substantially in the form attached to the Settlement Agreement as Exhibit E, to Settlement Class Members. The Claim Form will be available on the settlement website and upon request. The class notices will advise class members of how they can obtain the Claim Form and the deadline for submitting a completed form. Completed forms may be mailed to the Settlement Administrator or submitted online, via the settlement website.

Plaintiffs propose to allocate the Net Settlement Fund as provided in the Plan of Allocation attached to the Settlement Agreement as Exhibit F. The plan identifies three categories of relevant purchases. Class members may claim their purchases in any or all categories.

Category 1 purchases are those that define the litigation class that Plaintiffs had moved to certify. These purchases occurred at thirteen Michigan General

---

[12] The Net Settlement Fund is the Settlement Amount plus accrued interest minus any amounts awarded by the Court for attorneys' fees, expenses and plaintiff incentive awards. *See* ¶ 13.

Acute Care Hospitals and involved insurance coverage provided by four insurers: BCBSM, HAP, Priority, and Aetna (at a single Michigan hospital). These are the purchases for which Plaintiffs had the best evidence of impact and for which Dr. Leitzinger had (preliminarily) measured damages. Accordingly, the plan allocates the large majority (78 percent) of the Net Settlement Fund to compensate class members for Category 1 purchases. Category 2 purchases are those made at Michigan General Acute Care Hospitals when an MFN agreement between BCBSM and the hospital was in effect, excluding Category 1 purchases. Plaintiffs had weaker or no evidence of impact for Category 2 purchases (the majority of Michigan hospitals with MFN contracts), and, for class certification purposes, did not seek to prove damages for these purchases. Thus, the plan allocates 20 percent of the Net Settlement Fund to these purchases. Category 3 purchases are all purchases of healthcare services at Michigan General Acute Care Hospitals from January 1, 2006 through June 23, 2014 other than Category 1 and 2 purchases. In Plaintiffs' view, claims based on these purchases – when the hospital had no MFN agreement – would be very difficult if not impossible to prove, and thus the plan allocates only two percent of the Net Settlement Fund to these purchases.

Settlement funds would be allocated pro rata based on the claimant's purchases within a category as a percentage of the total purchases of all claimants within the same category. However, a distribution will be made to claimants for

Category 3 purchases only under certain conditions designed to avoid mailing checks where the cost to review the supporting documentation, to calculate the amount of the distribution, and to process and mail the check exceeds the amount of the check. Any Category 3 funds not distributed to claimants because of these conditions would be distributed cy pres to Free Clinics of Michigan, as determined by the Court.

There is a minimum distribution per claimant of $25 for Category 1 purchases and $15 for Category 2 purchases (subject to reduction in unlikely circumstances). These minimums will encourage claimants with small purchases to share in the recovery, will minimize their burden of filing a claim, and will facilitate efficient administration of the settlement. There is also a per-claimant cap for Category 1 and 2 purchases. The cap for Category 1 is 3.5% of the claimants' total purchases of healthcare services at Michigan General Acute Care Hospitals between January 1, 2006 and June 23, 2014. The cap for Category 2 is 1% of such purchases. These caps were the subject of intense negotiations between the Parties and were part of the give and take that led to this settlement.

This carefully crafted plan of allocation reflects (1) Plaintiffs' reasonable judgment about the relative value of the different claims being settled, (2) a desire for an efficient and fair claims process, and (3) the arm's-length negotiations between the Parties. As such, the plan is within the range of possible approval as

24

being fair, reasonable and adequate, and should be granted preliminary approval.
*See In re Top Tankers, Inc. Sec. Litig.*, No. 06-cv-13761, 2008 U.S. Dist. LEXIS
58106, at *34 (S.D.N.Y. July 31, 2008) (plan of allocation should be approved if it
is "fair and adequate"); *Taft v. Ackermans*, No. 02-cv-7951, 2007 U.S. Dist. LEXIS
9144, at *27 (S.D.N.Y. Jan. 31, 2007) (if plan of allocation is "formulated by
'competent and experienced counsel, an allocation plan need only have a
'reasonable, rational basis'") (quoting *Hicks v. Morgan Stanley & Co.*, No. 01-cv-
10071, 2005 U.S. Dist. LEXIS 24890, at *19-20 (S.D.N.Y. Oct. 19, 2005).

Plaintiffs also request that the Court approve the Claim Form attached to the
Settlement Agreement as Exhibit E. It is designed to clearly and efficiently elicit
the information necessary to implement the Plan of Allocation.

## IX. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter
the proposed preliminary approval order attached to the Settlement Agreement as
Exhibit H.

June 23, 2014

Respectfully submitted,


/s/ Daniel A. Small
_____

Daniel E. Gustafson

Daniel A. Small

Daniel C. Hedlund

Brent W. Johnson

Dan Nordin

**COHEN MILSTEIN SELLERS**

**GUSTAFSON GLUEK PLLC**

**& TOLL PLLC**

Canadian Pacific Plaza

1100 New York Ave. NW

120 South Sixth Street, Suite 2600

Suite 500, West Tower

Minneapolis, MN 55402

Washington, DC 20005

Telephone: (612) 333-8844

Telephone:  (202) 408-4600

dgustafson@gustafsongluek.com

bjohnson@cohenmilstein.com

dhedlund@gustafsongluek.com

dsmall@cohenmilstein.com

dnordin@gustafsongluek.com


Fred Isquith

E. Powell Miller (P39487)

Theodore B. Bell (P47987)

**THE MILLER LAW FIRM, P.C.**

**WOLF HALDENSTEIN ADLER**

950 West University Drive, Suite 300

**FREEMAN & HERZ LLC**

Rochester, Michigan 48307

55 West Monroe Street, Suite 1111

Tel: (248) 841-2200

Chicago, Illinois 60603

epm@millerlawpc.com

Tel: (312) 984-0000

isquith@whafh.com

tbell@whafh.com

26

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2014, I electronically filed the *Plaintiffs'*
*Unopposed Motion for Preliminary Approval of Settlement, Certification of*
*Settlement Class, and Related Relief* with the Clerk of the Court using ECF, who in
turn sent notice to all counsel of record.


Dated:   June 23, 2014                      /s/ Daniel A. Small
                                            Daniel A. Small