# EXHIBIT 1

**UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| THE SHANE GROUP, INC., et al., Plaintiffs, on behalf of themselves and all others similarly situated, | ) ) ) ) Case No. 2:10-cv-14360-DPH-MKM |
| Plaintiffs, | ) ) Honorable Denise Page Hood |
| v. | ) ) |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, | ) ) ) |
| Defendant. | ) ) |

**CLASS ACTION SETTLEMENT AGREEMENT**

This Class Action Settlement Agreement (the "Agreement") is made and entered into as of this twenty-third day of June, 2014, by and between Defendant Blue Cross Blue Shield of Michigan ("BCBSM"), and Plaintiffs Michigan Regional Council of Carpenters Employee Benefits Fund, The Shane Group, Inc., Bradley A. Veneberg, Abatement Workers National Health and Welfare Fund, Monroe Plumbers & Pipefitter Local 671 Welfare Fund, and Scott Steele and Proposed Plaintiffs Patrice Noah and Susan Baynard, on behalf of themselves and all Settlement Class Members, each of the foregoing Parties acting by and through their respective counsel. By this Agreement, subject to Court approval, BCBSM and Plaintiffs intend to fully, finally, and forever compromise, release, resolve, discharge, and settle the released claims subject to the terms and conditions set forth in this Agreement.

WHEREAS, Plaintiffs are litigating the above-captioned action against BCBSM on their own behalf and on behalf of a proposed class;

WHEREAS, Plaintiffs have alleged in their Consolidated Amended Complaint (doc #78) ("CAC") that BCBSM engaged in certain conduct in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 2 of the Michigan Antitrust Reform Act, MCL § 445.772, which caused damages to the Plaintiffs and Settlement Class Members, and for which Plaintiffs and Settlement Class Members seek an award of money damages and injunctive relief;

WHEREAS, BCBSM denies each and every one of Plaintiffs' allegations of unlawful conduct, specifically denies all liability to Plaintiffs and the other Settlement Class Members, has not conceded or admitted any liability, has asserted affirmative and other defenses to each of Plaintiffs' claims, and intends to continue with a vigorous defense of this Action in the event this Agreement is not approved by the Court;

WHEREAS, BCBSM, through its counsel, and Plaintiffs, through their counsel and on behalf of themselves and the other Settlement Class Members, have engaged in vigorous, arms'-length negotiations that led to this Agreement, which embodies all of the terms and conditions of the Settlement among the Parties, subject to approval of this Agreement by the Court;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding their claims and have concluded, after carefully considering the facts and circumstances of their claims and the applicable law, that a settlement with BCBSM according to the terms and conditions set forth below is in the best interest of Plaintiffs and the Settlement Class;

WHEREAS, BCBSM, despite its belief that it is not liable for the claims asserted and that it has meritorious defenses to the claims alleged, has nevertheless concluded that it will enter into this Agreement solely to avoid the further expense, inconvenience and burden of protracted

2

litigation, and the distraction and diversion of its personnel and resources, and thereby to put to rest this controversy, and to avoid the risks inherent in uncertain, complex litigation;

WHEREAS, Plaintiffs and BCBSM agree that this Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by BCBSM or of the truth of any of the claims or allegations in the CAC or any prior complaint;

WHEREAS, Plaintiffs' motion to add Patrice Noah and Susan Baynard as additional named plaintiffs (Doc # 124) is pending in this Action;

WHEREAS, the Court entered an Order Adjourning all Deadlines (Doc # 146) on March 27, 2014;

WHEREAS, Plaintiffs will request that the Court add Patrice Noah and Susan Baynard as additional named plaintiffs and representatives of the Settlement Class;

WHEREAS, this Agreement, which is subject to the approval of the Court, sets forth all of the terms and conditions of the agreement between BCBSM and Plaintiffs and Proposed Plaintiffs, on behalf of themselves and the Settlement Class;

NOW, THEREFORE, in consideration of the covenants, agreements and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned, on behalf of BCBSM and on behalf of Plaintiffs, Proposed Plaintiffs and the Settlement Class, that the claims of Plaintiffs, Proposed Plaintiffs and the Settlement Class against BCBSM be settled, compromised and dismissed on the merits and with prejudice, without costs as to Plaintiffs, Proposed Plaintiffs, the Settlement Class, or BCBSM, subject to the approval of the Court, on the following terms and conditions:

A.    **Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.      "Action" means the above-captioned matter.

2.      "BCBSM" means Blue Cross Blue Shield of Michigan.

3.      "Claimants" means Settlement Class Members who do not timely and validly exclude themselves from the Settlement Class and who submit timely and valid claim forms to share in the Net Settlement Fund.

4.      "Class Counsel" means The Miller Law Firm, P.C., 950 West University Drive, Suite 300, Rochester, MI, Cohen Milstein Sellers & Toll PLLC, 1100 New York Avenue, NW, Suite 500, Washington, DC; Gustafson Gluek, PLLC, Canadian Pacific Plaza, 120 South Sixth Street, #2600, Minneapolis, MN; and Wolf, Haldenstein, Adler, Freeman & Herz, LLC, 55 West Monroe Street, Suite 1111, Chicago, IL.

5.      "Court" means the United States District Court for the Eastern District of Michigan, Southern Division.

6.      "Escrow Agent" means Eagle Bank, a Maryland State Chartered Bank with offices located in the District of Columbia, including at 2001 K Street, NW, Washington, DC.

7.      "Escrow Account" means the account maintained by the Escrow Agent in which the Settlement Fund shall be held.

8.      "Execution Date" means June 23, 2014.

9.      "Fairness Hearing" means the hearing held by the Court at which the Court will consider evidence and argument for the purposes of determining whether the Settlement encompassed by this Agreement and its exhibits should be finally approved, whether all claims

against BCBSM should be dismissed with prejudice, and whether a Final Judgment should be entered.

10.    "Final Approval" of this Agreement means the last date by which all of the following have occurred:

(a)    The Court has issued an order substantially in the form of Exhibit I attached hereto, without any modification objected to by Plaintiffs or BCBSM, finally approving the Settlement and dismissing with prejudice all claims against BCBSM (the "Final Approval Order");

(b)    The Court has entered a Final Judgment; and

(c)    Expiration of the time for appeal or to seek permission to appeal from the entry of the Final Judgment or, if an appeal from the Final Judgment is taken, the affirmance of such Final Judgment in its entirety, without substantial modification, by the court of last resort to which an appeal of such Final Judgment may be taken, or by a lower appellate court and the time for seeking any further review has expired.

11.    "Final Judgment" means an order granting final approval of this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure together with entry of a final judgment sufficient under Rule 58 of the Federal Rules of Civil Procedure dismissing the Action and all claims therein on the merits with prejudice as to all Settlement Class Members who do not timely and validly exclude themselves.  Notwithstanding the foregoing, the Parties agree that the Court's determination of the amount of any attorneys' fee, expenses and incentive awards to be awarded to Plaintiffs or Plaintiffs' Counsel, or the individual payments made to Settlement Class Members who submit claims pursuant to the terms of the Settlement, or any modification of such

attorneys' fees, expenses, incentive awards, or amounts of individual payments shall not affect whether a judgment or other order is deemed a final judgment.

12.     "Michigan General Acute Care Hospital" means each of the hospitals in Michigan during the period January 1, 2006 through the Execution Date that BCBSM contemporaneously identified in its classification system as a Peer Group 1, 2, 3, 4, or 5 hospital.  Each such hospital is listed in Exhibit G to this Agreement.

13.     "Net Settlement Fund" means the Settlement Fund less any amounts for attorneys' fees, litigation expenses, settlement administration expenses (including Taxes and Tax Expenses), or plaintiff incentive awards.

14.     "Notice" means the notices of Settlement to the Settlement Class Members described in the Notice Plan, attached hereto as Exhibit A, including notices substantially in the form of Exhibits B, C and D hereto.

15.     "Notice Plan" means the plan for disseminating the Notice to Settlement Class Members, attached as Exhibit A hereto.

16.     "Parties" means the parties to this Agreement: BCBSM, Plaintiffs and Proposed Plaintiffs.

17.     "Plaintiffs" means Michigan Regional Council of Carpenters Employee Benefits Fund, The Shane Group, Inc., Bradley A. Veneberg, Abatement Workers National Health and Welfare Fund, Monroe Plumbers & Pipefitter Local 671 Welfare Fund, and Scott Steele.

18.     "Plaintiffs' Counsel" means all counsel of record in this Action for the Plaintiffs.

19.     "Plan of Allocation" means the plan by which the Net Settlement Fund shall be allocated to Settlement Class Members as described in Exhibit F hereto.

20.     "Preliminary Approval" means the issuance of an order preliminarily approving the Settlement, substantially in the form of Exhibit H hereto, authorizing the distribution of the Notice, and setting a date for the Fairness Hearing.

21.     "Proposed Plaintiffs" means Patrice Noah and Susan Baynard.

22.     "Release" means the agreement to release claims described in Section H, below.

23.     "Released Claims" means any and all claims or other matters described in Paragraphs 58-59, below.

24.     "Released Parties" means BCBSM, as well as all of BCBSM's past and present parents, predecessors, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of them.

25.     "Releasors" shall refer jointly and severally, individually and collectively to Plaintiffs, the Proposed Plaintiffs, the Settlement Class Members who do not timely and validly exclude themselves, and the predecessors, successors, heirs, executors, administrators, and assigns of the foregoing.

26.     "Settlement" means the agreement to settle this Action, as evidenced by this Agreement.

27.     "Settlement Administration Expenses" means those expenses reasonably incurred to administer the Settlement.

28.     "Settlement Administrator" means the entity approved by the Court to administer the Settlement according to its terms under the supervision of Class Counsel.

29.     "Settlement Amount" means $29,990,000.00 USD.

7

30.     "Settlement Class" means "all Direct Purchasers of healthcare services from a
Michigan General Acute Care Hospital from January 1, 2006 until June 23, 2014.  Excluded
from the Settlement Class are all Released Parties."  For purposes of this class definition, "Direct
Purchasers" includes without limitation individuals who paid Michigan General Acute Hospitals
in the form of co-pays, co-insurance or otherwise; insurers that paid Michigan General Acute
Care Hospitals for their insureds; and self-insured entities whose health plan participants
received healthcare services at Michigan General Acute Care Hospitals.

31.     "Settlement Class Members" means the members of the Settlement Class.

32.     "Settlement Fund" means the Settlement Amount plus any interest earned on that
amount after it is paid by BCBSM.  The Settlement Fund will be funded by two separate
payments as described in Section B, below.

33.     "Taxes" means any sums due to be paid to governmental taxing authorities from
the Settlement Fund, including taxes, estimated taxes, interest and penalties.

34.     "Tax Expenses" means any and all reasonable fees and costs due to be paid to tax
preparers, tax consultants or others for determining the tax liability of the Settlement Fund.

**B.      Payment**

35.     No more than fifteen (15) days after Preliminary Approval, BCBSM shall pay, or
cause to be paid, by wire transfer, one million U.S. Dollars into the Escrow Account. The
purpose of this payment is to pay Settlement Administration Expenses in the period before Final
Approval.

36.     In the event that Final Approval does not occur for whatever reason, the payment
described in Paragraph 35, plus any accrued interest, shall be returned to BCBSM, minus any
Settlement Administration expenses incurred.

8

37.     No more than five (5) days after Final Approval, BCBSM shall pay twenty-eight million, nine hundred and ninety thousand U.S. Dollars ($28,990,000) into the Escrow Account.

38.     Class Counsel shall instruct Eagle Bank to invest the Settlement Fund in instruments insured or guaranteed by the full faith and credit of the United States.  All interest earned on the Settlement Amount shall become part of the Settlement Fund.

39.     The only payments BCBSM is required to make under this Settlement are those in Paragraphs 35 and 37, and under no circumstances shall this Agreement be construed to require BCBSM to make any other payments.

**C.     Settlement Class Certification**

40.     In their motion for preliminary approval of this Settlement, Plaintiffs shall seek certification of the Settlement Class for the purposes of this Agreement only, and appointment of Class Counsel as co-lead class counsel under Federal Rule of Civil Procedure 23(g) for the Settlement Class.  In addition, the motion for preliminary approval shall request that Proposed Plaintiffs Patrice Noah and Susan Baynard be added to the Action as additional named plaintiffs and class representatives.

41.     BCBSM agrees not to oppose certification of a Settlement Class for settlement purposes only.  BCBSM further agrees not to oppose (a) appointment of the law firms identified as Class Counsel in Paragraph 4 herein as co-lead class counsel for the Settlement Class; (b) Proposed Plaintiffs being added to the Action as additional named plaintiffs and class representatives; and (c) appointment of the Plaintiffs and Proposed Plaintiffs as representatives of the Settlement Class.

42.     Plaintiffs, on behalf of themselves and the other Settlement Class Members, by and through counsel, acknowledge and agree that, in the event the Settlement is not given

Preliminary Approval and Final Approval, BCBSM has not waived, and has expressly reserved, the right to oppose class certification and seek an appeal under Fed. R. Civ. P. 23(f) of any litigation class certified in this Action.  Nothing in this Agreement may be used in any judicial or administrative proceedings respecting the propriety of class certification other than for purposes of effectuating this Settlement.  The Court's certification of the Settlement Class is not and shall not be deemed to be the adjudication of any fact or issue for any purpose other than the accomplishment of the provisions of this Agreement, and shall not be considered as law of the case, *res judicata,* or collateral estoppel in this or any other proceeding unless the Final Approval Order approving the terms of this Agreement is entered and the Agreement receives Final Approval.  In no circumstance is this Agreement, any documents, affidavits or submissions in support of this Agreement, or any Court order or action in this Action to be deemed an admission by BCBSM as to the propriety of class certification for any purpose other than this Agreement. In the event the Agreement is not given Final Approval for any reason, is materially modified in any fashion by the Court (including material revisions to the Exhibits hereto, unless Plaintiffs and BCBSM agree to such modification), or is otherwise terminated for any reason, or if any objection to a material term of this Agreement by a Settlement Class Member is sustained, then unless Plaintiffs and BCBSM otherwise thereafter agree:  (1) this Agreement becomes null and void; (2) any Preliminary Approval Order shall be null and void and shall be vacated and thereafter no class will remain certified; and (3) this Action shall revert to its status held prior to the signing of the Agreement.

### D.      **Effectuation, Approval, and Finality of this Agreement**

43.      The Parties shall use their best efforts to effectuate this Agreement, and Plaintiffs, in consultation with BCBSM, shall timely seek to obtain the Court's preliminary and final

approval of this Settlement. Plaintiffs shall use their best efforts to secure the prompt, complete and final dismissal with prejudice of the Action.

44. Within a reasonable time after the Execution Date, the Parties shall submit to the Court a motion requesting that the Court enter a Preliminary Approval Order substantially in the form of Exhibit H hereto. That motion shall request that the Court:

      (a)     preliminarily approve this Agreement;

      (b)     certify the Settlement Class for settlement purposes only;

      (c)     permit the addition of the Proposed Plaintiffs as additional named plaintiffs in this Action, appoint Plaintiffs and Proposed Plaintiffs as representatives of the Settlement Class, and appoint Class Counsel as co-lead class counsel for the Settlement Class under Federal Rule of Civil Procedure 23(g);

      (d)     appoint the Settlement Administrator to administer the Settlement under the supervision of Class Counsel;

      (e)     appoint Eagle Bank to hold the Settlement Fund in the Escrow Account;

      (f)     approve the form and content of the notices attached hereto as Exhibits B, C, and D, approve the Notice Plan attached hereto as Exhibit A, and direct that the Notice be provided to the Settlement Class Members in accordance with the Notice Plan;

      (g)     authorize payment from the Settlement Fund of the expenses specified in Paragraph 70 herein as they are incurred;

      (h)     set the date for a Fairness Hearing; and

      (i)     stay all proceedings in the Action except those proceedings provided for or required by this Agreement.

45.     Within ten (10) days of this Agreement's filing with the Court, BCBSM shall cause notice of the proposed Settlement that meets the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, to be served on the appropriate federal and state officials within the time period required by CAFA.  BCBSM shall file with the Court a certification stating the date(s) on which the CAFA notices were sent.

46.     Plaintiffs, in consultation with BCBSM, shall timely submit a motion for final approval of this Agreement to the Court, along with a proposed Final Approval Order substantially in the form of Exhibit I hereto.  The proposed Final Approval Order shall comply with Fed. R. Civ. P. 23(c)(3), including by identifying all members of the Settlement Class who timely submitted valid requests for exclusion. The Final Approval Order shall request that the Court: :

(a)     approve finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(b)     direct that the Action against BCBSM be dismissed with prejudice and that all claims therein against BCBSM be dismissed with prejudice, and, except as provided for in this Agreement, without costs;

(c)     reserve exclusive jurisdiction over the Settlement and this Agreement, including the administration and consummation of this Settlement; and

(d)     find that all persons and entities that timely and validly excluded themselves from the Settlement Class are not bound by the Settlement.

47.     If this Agreement is finally approved by the Court in its current form, or in a form not materially different therefrom, the Parties agree not to take any appeal from entry of the Final Judgment.

### E.     Class Notice

48.     Plaintiffs will propose that the Court direct them to disseminate the Notice to the Settlement Class as described in the Notice Plan.  That Notice Plan is designed to comply with the requirements of Federal Rule of Civil Procedure 23 and the Due Process Clause of the United States Constitution.

49.     BCBSM shall have no liability with respect to the giving of any notice provided for in this Agreement.

### F.     Settlement Administration, Claims Process and Plan of Allocation

50.     The Settlement Administrator shall administer the Settlement under the direction of Class Counsel.  Class Counsel will consult with BCBSM's Counsel concerning the administration of the Settlement.

51.     All costs, fees and expenses related to the administration of the Settlement, including the costs of notice, shall be paid from the Settlement Fund.  Neither Plaintiffs nor the Settlement Class nor BCBSM, nor their respective counsel, shall have any responsibility for any such settlement administration payments.

52.     The Net Settlement Fund will be allocated among the Claimants according to the Plan of Allocation.

53.     All Settlement Class Members who seek payment from the Settlement Fund will be required to submit Claim Forms substantially in the form of either Exhibit E-1 or Exhibit E-2 hereto, subject to Court approval.

54.    The Settlement Fund shall not revert, in part or in whole, to BCBSM as a result of the existence of undistributed portions of the Settlement Fund.  BCBSM represents that it will make no claim for such a reversion.

**G.    Requests for Exclusion**

55.    The Settlement Administrator shall forward each request for exclusion from the Settlement Class to counsel for BCBSM and Class Counsel.

56.    Each member of the Settlement Class who does not file a timely written request for exclusion in accordance with the procedures set forth in the Notice shall be bound upon Final Approval by all of the terms of this Agreement, including the Release set out in Section H herein and by all proceedings, orders and judgments in this Action, even if any of the Settlement Class Members has pending, or subsequently initiates, litigation, arbitration or any other action against BCBSM relating to the Released Claims.

57.    No Party to this Agreement will make any effort, directly or through a third party, to influence any individual or entity to request exclusion from the Settlement Class.

**H.    Release and Discharge**

58.    In exchange for the relief included in this Agreement, upon Final Approval of the Agreement, and except as to such rights or claims as may be created by this Agreement, Releasors, jointly and severally, shall, and hereby do, fully release and discharge BCBSM and Released Parties from any and all claims, judgments, liens, losses, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, indemnities, actions, causes of action, and obligations of every kind and nature in law, equity or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, contingent or accrued, arising out of or in any way relating to Most Favored Nation Clauses, or any matter or event occurring up to

14

the execution of this Agreement arising out of the dispute which is the subject of this Action, whether in contract, tort, local law, or violation of any state or federal statute, rule or regulation, including without limitation, claims under the Sherman Act, Clayton Act or any Michigan antitrust statute, from January 1, 2006, through the Execution Date ("Released Claims"). Released Claims include any unknown claims that Settlement Class Members do not know or suspect to exist in their favor, which if known by them, might have affected this Agreement with BCBSM and the release of Released Parties.

59. As used in Paragraph 58, "Most Favored Nation Clauses" means all agreements and arrangements between BCBSM and general acute care hospitals in Michigan that (a) Plaintiffs have alleged or contended in this Action are most favored nation clauses, (b) are within the definition of a most favored nation clause contained in Section 3405a(4) of 1956 PA 218, or (c) have the same purpose or effect as the agreements and arrangements described in clauses (a) and (b) of this Paragraph.

60. The Release described in Paragraph 58 is not intended to, and shall not, release any claims for medical malpractice, insurance coverage, product liability, personal injury, or similar claims.

61. The Parties intend that the Agreement shall be binding on all Settlement Class Members who do not timely and validly request exclusion, whether or not they actually receive a payment pursuant to the Agreement. This Agreement shall constitute, and may be pleaded as, a complete and total defense to any Released Claims if raised in any other action.

62. The failure of any Settlement Class Member to claim or obtain any relief made available under this Agreement shall not affect the validity, scope, or enforceability of the Release, herein, and all Settlement Class Members who do not timely and validly request

15

exclusion shall remain bound by said releases. BCBSM shall not be required to remit any additional consideration to any Settlement Class Members following or on account of such forfeiture by any Settlement Class Member.

63.    As part and parcel of this Agreement, all Settlement Class Members who do not timely and validly exclude themselves will be permanently barred and enjoined from filing, commencing, prosecuting, intervening in, participating in as class members or otherwise, or receiving any benefits or other relief from any other lawsuit in any state, territorial or federal court, or any arbitration or administrative or regulatory or other proceeding in any jurisdiction that asserts any of the Released Claims.

64.    With respect to all Released Claims, Plaintiffs, on behalf of themselves and each of the other Settlement Class Members who do not validly request exclusion from this Settlement, agree that they are expressly waiving and relinquishing to the fullest extent permitted by law:

(a)    the provisions, rights and benefits conferred by Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor; and

(b)    any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, that is similar, comparable or equivalent to Section 1542 of the California Civil Code.

16

65.     BCBSM and Plaintiffs, on behalf of themselves and the other Settlement Class Members, hereby expressly agree that all provisions of this Section H together and separately constitute essential and material terms of this Agreement.

**I.     The Settlement Fund**

66.     The Settlement Fund shall be paid and distributed in accordance with the orders of the Court and this Agreement, including the Plan of Allocation. BCBSM shall have no obligation, responsibility or liability with respect to the investment, management, allocation, administration or distribution of the Settlement Fund.

67.     The Parties to this Agreement and their counsel shall treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1 for all periods after the date of initial funding of the Settlement Fund. The Parties and their counsel agree to take no action inconsistent with the treatment of the Settlement Fund in such manner. As required, the Parties shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

68.     All interest earned by the Settlement Amount shall become and remain part of the Settlement Fund.

69.     Each member of the Settlement Class who does not timely and validly request exclusion shall look solely to the Settlement Fund for compensation under this Agreement. Any Settlement Class Member who fails to file a claim, or whose claim is denied by the Settlement

Administrator for any reason, shall remain bound by the Settlement and subject to the Release, unless the Settlement Class Member has timely submitted a valid request for exclusion.  Except as provided by order of the Court, no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof.

70.     Upon Court approval, the Settlement Fund may be distributed to pay the following expenses as they are incurred in administering the Settlement:  Taxes, Tax Expenses, charges of Eagle Bank, charges of the Settlement Administrator, and the cost of implementing the Notice Plan.

### J.     Attorneys' Fees

71.     Plaintiffs, Proposed Plaintiffs and Plaintiffs' Counsel shall be paid and reimbursed solely out of the Settlement Fund for all attorneys' fees, expenses, and plaintiff incentive awards.  BCBSM shall not be liable for any fees, expenses, or incentive awards of any of the Plaintiffs,  Proposed Plaintiffs, or Plaintiffs' attorneys, experts, advisors, agents, or representatives, and all such fees, expenses,  and incentive awards as approved by the Court shall be paid out of the Settlement Fund.  BCBSM agrees not to oppose a request by Class Counsel for: (a) attorneys' fees to be paid out of the Settlement Fund of up to one-third of the Settlement Fund; and (b) reimbursement of all reasonable expenses incurred in connection with this Action. BCBSM further agrees not to oppose a request for incentive awards to the Plaintiffs and Proposed Plaintiffs not to exceed $50,000 for an entity or $10,000 for an individual.

72.     In no event shall BCBSM be obligated to pay anything in addition to the Settlement Amount, including without limitation, class notice costs, attorneys' fees, litigation expenses, plaintiff incentive awards, settlement administration costs, escrow costs, Taxes, Tax Expenses or any other expense arising from or to be paid as part of this Agreement, all of which

18

shall be paid from the Settlement Fund. Plaintiffs, Proposed Plaintiffs and Plaintiffs' Counsel will be paid and reimbursed solely out of the Settlement Fund.

### K.   **Rescission**

73.     BCBSM and Class Counsel shall each, in their respective sole discretion, have the option to rescind this Agreement in its entirety if the Court declines to approve this Agreement or any material part hereof, or if such approval is materially modified or set aside on appeal, or if the Court does not enter the Final Judgment, or if the Court enters the Final Judgment and appellate review is sought and, on such review, such Final Judgment is not affirmed or is materially modified.

74.     Any Party wishing to rescind pursuant to Paragraph 73 must provide written notice of rescission to the other Party or Parties no later than twenty-one (21) calendar days after the event giving rise to the option to rescind.

75.     BCBSM, in its sole discretion, shall have the option to rescind this Agreement in its entirety if BCBSM determines in good faith that the total dollar amount of Relevant Purchases (as defined in the Plan of Allocation) by Settlement Class Members who validly request exclusion materially undermines the value of the Settlement to BCBSM. In the event that Aetna Inc. requests exclusion, BCBSM agrees that it will not include the Relevant Purchases of Aetna Inc. in determining whether the total dollar amount of Relevant Purchases by Settlement Class Members who validly request exclusion materially undermines the value of the Settlement to BCBSM.

76.     If BCBSM wishes to rescind pursuant to Paragraph 75, it must:

(a)     no later than twenty-one (21) calendar days after BCBSM has received from the Settlement Administrator all timely requests for exclusion, provide Plaintiffs in writing: (i) a

reasonable basis for concluding that those requesting exclusion are Settlement Class Members, (ii) the estimated dollar amount of the Relevant Purchases of each Settlement Class Member requesting exclusion, and  (iii) a reasonable basis for the estimate; and

(b)      no later than twenty-eight (28) days after BCBSM has received from the Settlement Administrator all timely requests for exclusion, provide final written notice of rescission to Plaintiffs.

77.      If the Agreement is rescinded pursuant to this Section K, BCBSM shall be reimbursed the Settlement Fund, including any accrued interest, less any funds disbursed pursuant to this Agreement.

78.      A modification or reversal on appeal of any amount awarded or approved by the Court from the Settlement Fund for (a) Plaintiffs' Counsel's fees and expenses, (b) Plaintiff incentive awards, or (c) distribution to Claimants shall not be deemed a modification of this Agreement or the Final Judgment for purposes of this Section K and neither Party shall have the right to terminate the Agreement based on such a modification or reversal.

79.      In the event that the Agreement is rescinded pursuant to this Section K, then:

(a)      the terms and provisions of this Agreement, with the exception of this Section K (which shall continue in full force and effect), shall be null and void and shall have no force or effect; and

(b)      neither the existence nor the terms of this Agreement, nor any negotiations preceding this Agreement, nor any acts performed pursuant to, or in furtherance of, this Agreement, shall be used or offered in evidence in any action or proceeding for any purpose (other than to enforce the terms remaining in effect).

L.    **Taxes**

80.    Class Counsel shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund and shall be solely responsible for taking out of the Settlement Fund, as and when legally required, funds to pay Taxes.  All Taxes due with respect to the income earned by the Settlement Fund shall be paid, when due, from the Settlement Fund; Class Counsel shall direct Eagle Bank to do so in writing.  BCBSM shall have no responsibility to make any tax filings relating to the Settlement Fund and will have no responsibility to pay Taxes, unless the Settlement is not consummated and the Settlement Fund is returned to BCBSM.  In the event the Settlement is not consummated, BCBSM shall be responsible for the payment of any Taxes.

81.    As set out in Paragraph 67 herein, the Parties to this Agreement and their counsel shall treat, and shall cause the Settlement Administrator and Eagle Bank to treat, the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B 1.

M.    **Use of this Agreement**

82.    This Agreement and the Settlement, including all negotiations and discussions leading up to the Settlement, shall not constitute any admission of liability or other evidence of any violation of any statute or law or of any liability or wrongdoing by BCBSM or of the truth of any of the claims or allegations Plaintiffs and Proposed Plaintiffs have asserted against BCBSM in this Action.

83.    Notwithstanding the foregoing, this Agreement may be used or offered in evidence in order to enforce the terms of this Agreement, or filed in any action in support of any

21

defense asserted by BCBSM or other Releasees based upon *res judicata*, collateral estoppel, release, waiver, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

**N.    Reservation of Claims**

84.    This Agreement does not settle or compromise any claims by Plaintiffs, Proposed Plaintiffs or the other Settlement Class Members against any person or entity other than the Released Parties.  All rights of any Settlement Class Member against any person or entity other than BCBSM and Released Parties are specifically reserved by Plaintiffs, Proposed Plaintiffs and the other Settlement Class Members.

**O.    Miscellaneous**

85.    This Agreement, including the Exhibits, constitutes the entire agreement among Plaintiffs, Proposed Plaintiffs and BCBSM pertaining to the Settlement of the Action and supersedes any and all prior and contemporaneous undertakings of the Parties in connection therewith.  No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any Party hereto to any other person or entity concerning the subject matter hereof.  This is an integrated agreement.  This Agreement may be modified or amended only by a writing executed by Class Counsel and BCBSM and approved by the Court.

86.    This Agreement and any orders by the Court implementing this Agreement are not and shall not be a concession or admission of wrongdoing or liability by any Party hereto and shall not be cited to or otherwise used or construed as an admission of any fault, omission, liability, or wrongdoing on the part of any Party hereto, except in a proceeding to enforce or interpret this Agreement.

87.    The Parties agree that they will not issue any press release or press statement, or otherwise initiate media coverage, concerning the Action, the events underlying the Action, or this Settlement.  However, the Parties may summarize the litigation and settlement publicly for a professional purpose only, such as on their counsel's law firm websites and in class counsel applications, and consistent with their agreement not to initiate media coverage.  If the Parties receive media inquiries, they will respond by making the following statement or a substantively equivalent statement: "Blue Cross Blue Shield of Michigan and the Class Plaintiffs are pleased to announce that they have reached an amicable resolution of the Plaintiffs' lawsuit about most favored nation clauses in Blue Cross's contracts with Michigan hospitals.  This settlement, the parties agree, is an amicable resolution reached before the court or the jury had decided the merits of either party's legal position."

88.    All terms of this Agreement shall be governed by and interpreted according to the substantive laws of Michigan without regard to its choice of law or conflict of law principles.

89.    The headings used in this Agreement are for the purposes of convenience and do not constitute part of the Agreement, and no heading shall be used to help construe the meaning of the Agreement.

90.    The United States District Court for the Eastern District of Michigan, Southern Division, shall retain exclusive jurisdiction over all matters relating to the implementation and enforcement of this Agreement.

91.    Neither BCBSM or its counsel nor Plaintiffs, Proposed Plaintiffs or their counsel shall be considered to be the drafter of this Agreement, or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

23

92.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Plaintiffs, Proposed Plaintiffs, the other Settlement Class Members, and BCBSM any right or remedy under or by reason of this Agreement.

93.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs, Proposed Plaintiffs, the other Settlement Class Members who do not timely and validly exclude themselves, and BCBSM.

94.     Where this Agreement requires any Party to provide notice or any other communication or document to any other Party, such notice, communication, or document shall be provided by email, facsimile or letter by overnight delivery at the address reflected on the signature pages, with notice to be considered received on the day of receipt; provided, however, that any notice of non-delivery shall cause such notice to be invalid.

95.     This Agreement may be executed in counterparts by Class Counsel and BCBSM, and a facsimile or electronic image of a signature shall be deemed an original signature for purposes of executing this Agreement.

96.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, by and on behalf of his or her respective clients.

IN   WITNESS   WHEREOF,   the   Parties   hereto,   through   their   fully   authorized representatives, have agreed to this Agreement as of the date first herein written above.

By: _____
    Todd M. Stenerson
    D. Bruce Hoffman
    **HUNTON & WILLIAMS LLP**
    2200 Pennsylvania Avenue, NW
    Washington, D.C. 20037
    Telephone:  (202)-955-1500
    tstenerson@hunton.com
    bhoffman@hunton.com

*Counsel for Blue Cross Blue Shield of Michigan*

By: _____
    Daniel A. Small
    Brent W. Johnson
    **COHEN MILSTEIN SELLERS & TOLL PLLC**
    1100 New York Avenue, NW, Suite 500
    Washington, DC 20005
    Telephone:  (202) 408-4600
    bjohnson@cohenmilstein.com
    dsmall@cohenmilstein.com
    mboone@cohenmilstein.com

By: _____
    Daniel E. Gustafson
    Daniel C. Hedlund
    GUSTAFSON GLUEK PLLC
    Canadian Pacific Plaza
    120 South Sixth Street, Suite 2600
    Minneapolis, MN 55402
    Telephone:  (612) 333-8844
    dgustafson@gustafsongluek.com
    dhedlund@gustafsongluek.com

By: _____
    Fred Isquith
    **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
    270 Madison Avenue
    New York, New York 10016
    Telephone:  (212) 545-4600
    isquith@whafh.com

By: _____
    E. Powell Miller
    **THE MILLER LAW FIRM, P.C.**
    950 West University Drive, Suite 300
    Rochester, Michigan  48307
    Telephone: (248) 841-2200
    epm@millerlawpc.com

*Interim Co-Lead Counsel for the Settlement Class*

D. Bruce Hoffman
**HUNTON & WILLIAMS LLP**
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037
Telephone: (202)-955-1500
tstenerson@hunton.com
bhoffman@hunton.com

*Counsel for Blue Cross Blue Shield of*
*Michigan*


By: _____
    Daniel A. Small
    Brent W. Johnson
    **COHEN MILSTEIN SELLERS**
    **& TOLL PLLC**
    1100 New York Avenue, NW, Suite 500
    Washington, DC 20005
    Telephone: (202) 408-4600
    bjohnson@cohenmilstein.com
    dsmall@cohenmilstein.com
    mboone@cohenmilstein.com

By: _____
    Fred Isquith
    **WOLF HALDENSTEIN ADLER**
    **FREEMAN & HERZ LLC**
    270 Madison Avenue
    New York, New York 10016
    Telephone: (212) 545-4600
    isquith@whafh.com

By: _____
    Daniel E. Gustafson
    Daniel C. Hedlund
    GUSTAFSON GLUEK PLLC
    Canadian Pacific Plaza
    120 South Sixth Street, Suite 2600
    Minneapolis, MN 55402
    Telephone: (612) 333-8844
    dgustafson@gustafsongluek.com
    dhedlund@gustafsongluek.com

By: _____
    E. Powell Miller
    **THE MILLER LAW FIRM, P.C.**
    950 West University Drive, Suite 300
    Rochester, Michigan 48307
    Telephone: (248) 841-2200
    epm@millerlawpc.com

*Interim Co-Lead Counsel for the*
*Settlement Class*

By: _____
    Todd M. Stenerson
    D. Bruce Hoffman
    **HUNTON & WILLIAMS LLP**
    2200 Pennsylvania Avenue, NW
    Washington, D.C. 20037
    Telephone:  (202)-955-1500
    tstenerson@hunton.com
    bhoffman@hunton.com

*Counsel for Blue Cross Blue Shield of Michigan*

By: _____
    Daniel A. Small
    Brent W. Johnson
    **COHEN MILSTEIN SELLERS & TOLL PLLC**
    1100 New York Avenue, NW, Suite 500
    Washington, DC 20005
    Telephone:  (202) 408-4600
    bjohnson@cohenmilstein.com
    dsmall@cohenmilstein.com
    mboone@cohenmilstein.com

By: _____
    Daniel E. Gustafson
    Daniel C. Hedlund
    GUSTAFSON GLUEK PLLC
    Canadian Pacific Plaza
    120 South Sixth Street, Suite 2600
    Minneapolis, MN 55402
    Telephone:  (612) 333-8844
    dgustafson@gustafsongluek.com
    dhedlund@gustafsongluek.com

By: _____
    Fred Isquith
    **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
    270 Madison Avenue
    New York, New York 10016
    Telephone:  (212) 545-4600
    isquith@whafh.com

By: _____
    E. Powell Miller
    **THE MILLER LAW FIRM, P.C.**
    950 West University Drive, Suite 300
    Rochester, Michigan  48307
    Telephone: (248) 841-2200
    epm@millerlawpc.com

*Interim Co-Lead Counsel for the Settlement Class*

By: _____
    Todd M. Stenerson
    D. Bruce Hoffman
    **HUNTON & WILLIAMS LLP**
    2200 Pennsylvania Avenue, NW
    Washington, D.C. 20037
    Telephone:  (202)-955-1500
    tstenerson@hunton.com
    bhoffman@hunton.com

*Counsel for Blue Cross Blue Shield of Michigan*

By: _____
    Daniel A. Small
    Brent W. Johnson
    **COHEN MILSTEIN SELLERS**
    **& TOLL PLLC**
    1100 New York Avenue, NW, Suite 500
    Washington, DC 20005
    Telephone:  (202) 408-4600
    bjohnson@cohenmilstein.com
    dsmall@cohenmilstein.com
    mboone@cohenmilstein.com

By: _____
    Daniel E. Gustafson
    Daniel C. Hedlund
    GUSTAFSON GLUEK PLLC
    Canadian Pacific Plaza
    120 South Sixth Street, Suite 2600
    Minneapolis, MN 55402
    Telephone:  (612) 333-8844
    dgustafson@gustafsongluek.com
    dhedlund@gustafsongluek.com

By: _____
    Fred Isquith
    **WOLF HALDENSTEIN ADLER**
    **FREEMAN & HERZ LLC**
    270 Madison Avenue
    New York, New York 10016
    Telephone:  (212) 545-4600
    isquith@whafh.com

By: _____
    E. Powell Miller
    **THE MILLER LAW FIRM, P.C.**
    950 West University Drive, Suite 300
    Rochester, Michigan  48307
    Telephone: (248) 841-2200
    epm@millerlawpc.com

*Interim Co-Lead Counsel for the Settlement Class*

By: _____
    Todd M. Stenerson
    D. Bruce Hoffman
    **HUNTON & WILLIAMS LLP**
    2200 Pennsylvania Avenue, NW
    Washington, D.C. 20037
    Telephone:  (202)-955-1500
    tstenerson@hunton.com
    bhoffman@hunton.com

*Counsel for Blue Cross Blue Shield of Michigan*

By: _____
    Daniel A. Small
    Brent W. Johnson
    **COHEN MILSTEIN SELLERS & TOLL PLLC**
    1100 New York Avenue, NW, Suite 500
    Washington, DC 20005
    Telephone:  (202) 408-4600
    bjohnson@cohenmilstein.com
    dsmall@cohenmilstein.com
    mboone@cohenmilstein.com

By: _____
    Daniel E. Gustafson
    Daniel C. Hedlund
    GUSTAFSON GLUEK PLLC
    Canadian Pacific Plaza
    120 South Sixth Street, Suite 2600
    Minneapolis, MN 55402
    Telephone:  (612) 333-8844
    dgustafson@gustafsongluek.com
    dhedlund@gustafsongluek.com

By: _____
    Fred Isquith
    **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
    270 Madison Avenue
    New York, New York 10016
    Telephone: (212) 545-4600
    isquith@whafh.com

By _____
    E. Powell Miller
    **THE MILLER LAW FIRM, P.C.**
    950 West University Drive, Suite 300
    Rochester, Michigan  48307
    Telephone: (248) 841-2200
    epm@millerlawpc.com

*Interim Co-Lead Counsel for the Settlement Class*

# EXHIBIT A

# Notice Plan

Notice to potential Settlement Class Members will be made by mail; by advertisements in newspapers, a magazine, and newspaper supplements, and on the Internet; and on the settlement website. The details of each form of notice are as follows:

### *Notice by Mail*

Mailed notice will be provided to those Settlement Class Members for whom Plaintiffs possess contact information. The following contact information is currently available:

a. The names and addresses of Blue Cross Blue Shield of Michigan ("BCBSM") customers and members, produced as part of BCBSM's production of its claims database in this litigation.

b. The names and addresses for Aetna's self-insured customers, produced by Aetna during the litigation. Plaintiffs do not currently possess names and addresses for Aetna's insured individuals.

Plaintiffs are in the process of seeking additional contact information, as follows:

c. Plaintiffs have requested that Priority Health ("Priority") provide full name and address information for its members, which was not produced by Priority during the litigation.  Priority has agreed to do so.

d. Plaintiffs have requested that Health Alliance Plan ("HAP") provide full name and address information for its members, which was not produced by HAP during the litigation. To date, HAP has not agreed to do so.

e. Plaintiffs will request that Aetna provide names and address for Aetna's members after filing their motion for preliminary approval.

2.  In total, Plaintiffs currently have names and addresses for 2,394,079 BCBSM members;

1,134 BCBSM self-insured groups; 179 Aetna self-insured groups; and 99 commercial health insurers.  In early July, Plaintiffs expect to receive names and addresses for 604,488 Priority insured individuals and 99 Priority self-funded groups.  Until the Settlement Administrator "de-duplicates" the lists across insurers, the number of Settlement Class Members to whom individual notice will be mailed is not known but it is certain that the number will be in the millions.

3.   The Settlement Administrator will send Notice via mail to all Settlement Class Members for whom contact information is obtained before the deadline for mailing notice.

4.   The mailed Notice will consist of a Postcard Notice (attached to the Settlement Agreement as Exhibit B), which will provide Class Members with opportunities to see, read, and understand their rights, and act if they so choose.  The Postcard Notice will provide a toll-free number and will direct Settlement Class Members to the Settlement Administrator's website, which will have detailed information about the Settlement, including the Settlement Agreement, Long Form Notice, and Claim Forms.

5.   Prior to mailing, the Settlement Administrator will check all addresses against the National Change of Address database maintained by the United States Postal Service ("USPS").  In order to ensure the most accurate mailings possible, the administrator will also certify addresses via the Coding Accuracy Support System and verify them through Delivery Point Validation.

6.   For any Postcard Notices that are returned as non-deliverable, the Settlement Administrator will re-mail them to any address indicated by the USPS in the case of an expired automatic forwarding order.  For Notices returned as non-deliverable, but for which a new address is not indicated by the USPS, the Settlement Administrator will further search through another vendor to obtain a more current address.  If any such address is found, the Settlement Administrator will re-mail the Notice.

## *Paid Media*

7. To supplement the Individual Notice and to reach those Settlement Class Members for whom the Parties lack contact information, notice will be placed in various paid media outlets.

8. The Publication Notice will appear in the following newspapers:

a.   A one fourth-page ad (4.949" x 10.5") in the daily edition of *Alpena News* with an estimated circulation of 7,616.

b.   A one fourth-page ad (5.387" x 10.5") in the weekday edition of *Bay City Times* with an estimated circulation of 16,549.

c.   A one fourth-page ad (5.387" x 10.5") in the Sunday edition of *Bay City Times* with an estimated circulation of 26,619.

d.   A one fourth-page ad (5.75" x 11") in the daily edition of *Detroit Free Press* with an estimated circulation of 219,032.

e.   A one fourth-page ad (5.75" x 11") in the daily edition of *Detroit News* with an estimated circulation of 118,325.

f.   A one fourth-page ad (5.387" x 10.5") in the weekday edition of *Flint Journal* with an estimated circulation of 39,900.

g.   A one fourth-page ad (5.387" x 10.5") in the Sunday edition of *Flint Journal* with an estimated circulation of 54,181.

h.   A one fourth-page ad (5.387" x 10.5") in the weekday edition of *Grand Rapids Press* with an estimated circulation of 62,973.

i.      A one fourth-page ad (5.387" x 10.5") in the Sunday edition of *Grand Rapids Press* with an estimated circulation of 135,592.

j.      A one fourth-page ad (5.387" x 10.5") in the weekday edition of *Jackson Citizen Patriot* with an estimated circulation of 16,874.

k.      A one fourth-page ad (5.387" x 10.5") in the Sunday edition of *Jackson Citizen Patriot* with an estimated circulation of 22,689.

l.      A one fourth-page ad (5.387" x 10.5") in the weekday edition of *Kalamazoo Gazette* with an estimated circulation of 26,968.

m.     A one fourth-page ad (5.387" x 10.5") in the Sunday edition of *Kalamazoo Gazette* with an estimated circulation of 43,309.

n.      A one fourth-page ad (4.918" x 10.5") in the weekday edition of *Lansing State Journal* with an estimated circulation of 37,965.

o.      A one fourth-page ad (4.918" x 10.5") in the Sunday edition of *Lansing State Journal* with an estimated circulation of 52,398.

p.      A one fourth-page ad (4.95" x 10.5") in the weekday edition of *Marquette Mining Journal* with an estimated circulation of 10,268.

q.      A one fourth-page ad (4.95" x 10.5") in the Sunday edition of *Marquette Mining Journal* with an estimated circulation of 12,345.

r.      A one fourth-page ad (5.387" x 10.5") in the weekday edition of *Saginaw News* with an estimated circulation of 19,880.

s.     A one fourth-page ad (5.387" x 10.5") in the Sunday edition of *Saginaw News* with an estimated circulation of 29,879.

t.     A one fourth-page ad (5.44" x 10.5") in the weekday edition of *Traverse City Record-Eagle* with an estimated circulation of 17,383.

u.     A one fourth-page ad (5.44" x 10.5") in the Sunday edition of *Traverse City Record-Eagle* with an estimated circulation of 22,585

9. The Publication Notice will appear in the following newspaper supplements:

a.   An M-page ad (6.25" x 9") in *Parade* – Michigan state edition with an estimated circulation of 960,938.

b.   An M-page ad (6.25" x 9") in *USA Weekend* – Michigan state edition with an estimated circulation of 540,835.

10. The Publication Notice will also appear as a full-page ad (7" x 10") in *People* – Michigan state edition with an estimated circulation of 131,600.

11. Finally, the Notice Plan incorporates Internet advertising to reach Settlement Class Members from out of state or who moved out of state.

12. Internet advertising will consist of banner advertisements measuring 728 x 90, 300 x 250, and 160 x 600 pixels, which will appear on a rotating basis on websites that are part of the *Xaxis*[1] Network.  Impressions will be delivered both nationally and to Michigan-specific IP addresses.

---

[1] *Xaxis* is a network that represents over 5,000 websites.

### ***Settlement Website, Toll-Free Phone Number, and Mailing Address***

13. The Settlement Administrator, Epiq Systems, will establish a website to enable Settlement Class Members to get information on the Settlement, including the Long Form Notice and the Settlement Agreement.

14. The Settlement Administrator will establish a toll-free phone number to allow Settlement Class Members to call and request that a Long Form Notice be mailed to them or listen to answers to frequently asked questions.

15. The Settlement Administrator will establish a post office box and email address to allow Settlement Class Members to contact the Settlement Administrator and Class Counsel with any specific requests or questions.

# EXHIBIT B

*Court-Ordered Legal Notice*

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID

SETTLEMENT CLAIMS ADMINISTRATOR
PO BOX 0000
CITY, ST  00000

**If You Paid For
Medical Services at a
Michigan Hospital
from January 1, 2006
through June 23, 2014,**

**You Could Get Money
from a Class Action
Settlement**

NAME
ADDRESS
CITY STATE ZIP CODE

A Settlement has been reached in a class action lawsuit against Blue Cross Blue Shield of Michigan ("BCBSM"). Plaintiffs claim that certain clauses in contracts between BCBSM and some hospitals in Michigan violate federal and state laws and inflated prices for medical care at certain Michigan hospitals. BCBSM denies all wrongdoing and liability, but has concluded that it is in its best interests to settle to avoid the expense, inconvenience, and interference with ongoing business operations.

**Are you included?** Records show that you are either an individual who paid for healthcare services at a general acute care hospital in Michigan between January 1, 2006 and June 23, 2014, an insurer who paid for such services for your insureds, or a self-insured entity whose health plan participants received such services. You do not need to be a BCBSM customer to be eligible.

**What does the Settlement provide?** A $29,990,000 Settlement Fund will be established to make payments to Class Members who submit valid claims. There are minimum payments of up to $40 for small hospital healthcare purchases and much higher payments for large relevant hospital healthcare purchases. The Settlement Fund will also be used to pay Court-approved attorneys' fees and expenses, costs of notice and claims administration, plaintiff incentive awards, and potentially a small payment to Free Clinics of Michigan.

**How do you ask for a payment?** To receive a payment, you must submit a Claim Form by **Month 00, 2014**. You can file a claim online or by mail. Claim Forms are available at the website and toll-free number listed below.

**Your other options**. If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement by **Month 00, 2014**. If you do not exclude yourself, you will not be able to sue, or continue to sue, BCBSM about its conduct challenged in this case or related conduct. The full release is included in the Settlement Agreement, which is available at the website and toll-free number listed below. If you exclude yourself, you cannot get a payment from the Settlement. If you do not exclude yourself, you may object to the Settlement and the upcoming request for attorneys' fees, expenses, and plaintiff incentive awards by **Month 00, 2014**. A detailed Notice, available at the website or toll-free number listed below, explains how to exclude yourself or object and has more information about the Settlement.

The Court will hold a hearing on **Month 00, 2014**, to consider whether to approve the Settlement, and a request by Plaintiffs' Counsel for attorneys' fees up to one-third of the Settlement Fund, litigation expenses up to $3,500,000, and plaintiff incentive awards up to $150,000. You or your own lawyer, if you have one, may ask to appear and speak at the hearing at your own cost.

**www.MichiganHospitalPaymentsLitigation.com**          **Toll-Free Number**

# EXHIBIT C

# If You Paid For Medical Services at a Michigan Hospital

### *from January 1, 2006, through June 23, 2014,*

## You Could Get Money from a Class Action Settlement

A Settlement has been reached in a class action lawsuit against Blue Cross Blue Shield of Michigan ("BCBSM"). Plaintiffs claim that certain clauses in contracts between BCBSM and some hospitals in Michigan violate federal and state laws and inflated prices for medical care at certain Michigan hospitals. BCBSM denies all wrongdoing and liability, but has concluded that it is in its best interests to settle to avoid expense, inconvenience, and interference with ongoing business operations.

### Who is included?

The Class includes all:

- Individuals who paid for health care services at a general acute care hospital in Michigan between January 1, 2006 and June 23, 2014;
- Insurers who paid for such services for their insureds; and
- Self-insured entities whose health plan participants received such services.

Class Members do not need to be BCBSM customers to be eligible.

### What Does the Settlement Provide?

A $29,990,000 Settlement Fund will be established to make payments to Class Members who submit valid claims. There are minimum payments of up to $40 for small hospital healthcare purchases and much higher payments for large relevant hospital healthcare purchases. The Settlement Fund will also be used to pay Court-approved attorneys' fees and expenses, costs of notice and claims administration, plaintiff incentive awards, and potentially a small payment to Free Clinics of Michigan.

### How Do You Ask For a Payment?

To receive a payment, you must submit a Claim Form by Month 00, 2014. You can file a claim online or by mail. Claim Forms are available at the website and toll-free number listed below.

### Your Other Options

If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement by Month 00, 2014. If you do not exclude yourself, you will not be able to sue, or continue to sue, BCBSM about its conduct challenged in this case or related conduct. The full release is included in the Settlement Agreement, which is available at the website and toll-free number listed below. If you exclude yourself, you cannot get a payment from the Settlement. If you do not exclude yourself, you may object to the Settlement and the upcoming request for attorneys' fees, expenses, and plaintiff incentive awards by Month 00, 2014. A detailed Notice, available at the website or toll-free number listed below, explains how to exclude yourself or object and has more information about the Settlement.

### Court Hearing

The Court will hold a hearing on Month 00, 2014, to consider whether to approve the Settlement, and a request by Plaintiffs' Counsel for attorneys' fees up to one-third of the Settlement Fund, litigation expenses up to $3,500,000, and plaintiff incentive awards up to $150,000. You or your own lawyer, if you have one, may ask to appear and speak at the hearing at your own cost**.**

---

## www.MichiganHospitalPaymentsLitigation.com
### [TOLL-FREE NUMBER]

# EXHIBIT D

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

# You Could Get Money from a Class Action Settlement if You Paid For Medical Services at a Michigan Hospital from 2006 to June 23, 2014

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- There is a Settlement with Blue Cross Blue Shield of Michigan ("BCBSM") concerning its contracts with general acute care hospitals in Michigan.  **Your legal rights are affected whether you act or do not act.  Read this notice carefully**.

- The lawsuit alleges that BCBSM had clauses in its contracts with some Michigan general acute care hospitals that violated federal and state antitrust laws and inflated prices for medical care at certain Michigan hospitals.  BCBSM denies all wrongdoing and liability but has concluded that it is in its best interests to settle the litigation to avoid the expense, inconvenience, and interference with ongoing business operations.

- Under the Settlement, BCBSM will pay $29,990,000 into a Settlement Fund that will be used to make payments to individuals and entities that paid Michigan general acute care hospitals for healthcare services from January 1, 2006 to June 23, 2014.

- You do not need to be a BCBSM customer to be eligible.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| SUBMIT A CLAIM FORM | The only way to receive a cash payment from the Settlement. |
| EXCLUDE YOURSELF | Receive no benefits from the Settlement, but keep your rights to start or remain part of any other lawsuit against BCBSM about its conduct challenged in this case or related conduct. |
| OBJECT | Submit a written statement to the Court about why you don't like the Settlement. |
| GO TO FAIRNESS HEARING | Ask to speak in Court about the fairness of the Settlement |
| DO NOTHING | You will receive no payment from the Settlement and will give up your rights to start or remain part of any lawsuit against BCBSM about its conduct challenged in this case or related conduct. |

**\*\*These rights – and the deadlines to exercise them – are explained in this notice. \*\***

- The Court in charge of this case still has to decide whether to approve the Settlement.  If it does, and after any appeals are resolved, money will be distributed to those who qualify.  <u>Please be patient</u>.

**Habla Espanol? Visite la página web: www.MichiganHospitalPaymentsLitigation.com**

| WHAT THIS NOTICE CONTAINS |
| --- |

**BASIC INFORMATION**……………………………………………………………………  **3**

    1.  Why is this notice being provided?
    2.  What is this lawsuit about?
    3.  Why is this a Class Action?
    4.  Why is there a Settlement?

**WHO IS INCLUDED IN THE SETTLEMENT**………………………………….......................  **4**

    5.  How do I know if I am part of the Settlement?

**THE SETTLEMENT – WHAT YOU GET AND GIVE UP IF YOU QUALIFY**………………………  **4**

    6.  What does the Settlement provide?
    7.  How will payments be calculated?
    8.  When will Settlement money be distributed to Claimants?
    9.  What do I give up if the Settlement is given Final Approval?

**SUBMITTING A CLAIM FORM**…………………………………………………………  **5**

    10.  How can I get a payment?
    11.  What do I do if I have questions about the Claim Form?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**…………………………………………  **6**

    12.  If I exclude myself, can I get anything from this Settlement?
    13.  If I do not exclude myself, can I sue later?
    14.  How do I exclude myself from the Settlement?

**OBJECTING TO THE SETTLEMENT**……………………………………………………  **6**

    15.  How can I tell the Court I don't like the Settlement?
    16.  What is the difference between objecting and asking to be excluded?
    17.  What happens if I object and the Settlement is approved?

**THE LAWYERS WHO REPRESENT YOU**……………………………………………….....  **7**

    18.  Do I have a lawyer in the case?
    19.  How will the lawyers in the case be paid?

**THE COURT'S FAIRNESS HEARING**……………………………………………………  **8**

    20.  How will the Court decide whether to approve the Settlement?
    21.  When and where will the Court decide whether to approve the Settlement?
    22.  Do I need to come to the hearing?
    23.  May I speak at the hearing?

**OTHER INFORMATION**…………………………………………………………………  **8**

    24.  What happens if I do nothing?
    25.  How do I get more information?

# BASIC INFORMATION

| **1.    Why is this notice being provided?** |
| --- |

Judge Denise Page Hood of the United States District Court for the Eastern District of Michigan authorized this notice to inform you about a proposed Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to approve the Settlement.  This notice explains the lawsuit, the Settlement, your legal rights, what money is available, who is eligible to share in this money, and how to get your share if you are eligible.

The persons and entities who started the lawsuit are the "Plaintiffs."  The company they sued, Blue Cross Blue Shield of Michigan ("BCBSM"), is the "Defendant."  The case is known as *The Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, Case No. 2:10-cv-14360.  This notice summarizes the Settlement, but you can view the complete Settlement Agreement at www.MichiganHospitalPaymentsLitigation.com.

| **2.    What is this lawsuit about?** |
| --- |

Plaintiffs allege that BCBSM violated federal and state laws by using most favored nation clauses in contracts with 70 general acute care hospitals in Michigan.  Plaintiffs claim that these clauses inflated prices for healthcare services at several Michigan hospitals.  BCBSM denies Plaintiffs' allegations, denies any wrongdoing, and contends that its actions caused lower, not higher, hospital prices.

| **3.    Why is this a Class Action?** |
| --- |

In a Class Action, one or more people (in this case, Michigan Regional Council of Carpenters Employee Benefits Fund, The Shane Group, Inc., Bradley A. Veneberg, Abatement Workers National Health and Welfare Fund, Monroe Plumbers & Pipefitter Local 671 Welfare Fund, Scott Steele, Patrice Noah, and Susan Baynard) sue on behalf of businesses, other organizations, and people who have similar claims.  If allowed by a court, all of these organizations and people become part of a "Class" or "Class Members."  One lawsuit resolves the claims of all Class Members, except for any who exclude themselves from the class.

| **4.    Why is there a Settlement?** |
| --- |

The Court did not decide in favor of Plaintiffs or BCBSM.  Instead, both sides agreed to settle this case to avoid the burden, cost, and risk of further litigation.  The Settlement does not mean that any law was broken or that BCBSM did anything wrong.  By settling, BCBSM is not admitting any wrongdoing or liability.  BCBSM continues to deny all legal claims in this case.  The Plaintiffs and their lawyers think the Settlement is best for all Class Members.

## WHO IS INCLUDED IN THE SETTLEMENT

To see if you will be affected by this Settlement and if you are eligible to get money from it, you first have to determine if you are a Class Member.

| 5. How do I know if I am part of the Settlement? |
|---|

The Settlement includes all direct purchasers of healthcare services from a Michigan General Acute Care Hospital between January 1, 2006 and June 23, 2014.  The Class includes:

- Individuals who paid Michigan General Acute Care Hospitals in the form of co-pays, co-insurance, or otherwise;
- Insurers that paid Michigan General Acute Care Hospitals for their insureds; and
- Self-insured entities whose health plan participants received healthcare services at Michigan General Acute Care Hospitals.

There are over 130 general acute care hospitals in Michigan.  A list of these hospitals is available at www.MichiganHospitalPaymentsLitigation.com.  The Class does not include BCBSM and related individuals and entities.

If you received a postcard notice in the mail, you have been identified as a potential Class Member based on insurance records.  If you did not receive a postcard notice in the mail, you still may be a Class Member if you paid a Michigan general acute care hospital during the relevant time period.  If you are not sure whether you are included in the Settlement, visit www.MichiganHospitalPaymentsLitigation.com for more information.  You may also send an email to [EMAIL ADDRESS], call [TOLL FREE NUMBER], or write to: [CLAIMS ADMINISTRATOR ADDRESS].

## THE SETTLEMENT – WHAT YOU GET AND GIVE UP IF YOU QUALIFY

| 6. What does the Settlement provide? |
|---|

BCBSM will pay $29,990,000 into a Settlement Fund.  This money, plus interest, will be paid to:
- The lawyers representing the Class for their work and to reimburse the expenses they paid, in an amount approved by the Court.
- An incentive award for the Plaintiffs for their services on behalf of the Class, if approved by the Court.
- Expenses incurred in administering the Settlement, such as sending this notice and the cost to process claims submitted by Class Members.
- Class Members who submit valid claim forms.
- The non-profit organization Free Clinics of Michigan, in certain circumstances.

| 7. How will payments be calculated? |
|---|

Class Members with small purchases of hospital healthcare services may be eligible for minimum payments of up to $40.  Class Members with large purchases may be eligible for much higher payments, with the size of their payment depending on the factors described below.  The maximum possible payment is 3.5% of the Class Member's total purchases of healthcare services from Michigan general acute care hospitals from January 1, 2006 through June 23, 2014.

The size of the payment will be determined by:

- Which general acute care hospital(s) in Michigan the Class Member paid;
- The amounts paid to the hospital(s) from January 1, 2006 through June 23, 2014; and
- Which insurer paid the hospital, provided the insurance coverage, or administered the self-insured plan.

The Settlement Administrator will review each Claimant's reported purchases to determine how much money, if any, they will receive. For specifics on how payments will be determined, please contact the Settlement Administrator or see the Plan of Allocation available at www.MichiganHospitalPaymentsLitigation.com.

| **8.   When will Settlement money be distributed to Claimants?** |
|---|

Settlement money will be mailed to Claimants after the Court approves the Settlement and after any appeals are resolved. It is uncertain when any appeals taken will be resolved, and resolving them can take time. Please be patient. Updates will be posted at www.MichiganHospitalPaymentsLitigation.com.

| **9.   What do I give up if the Settlement is given Final Approval?** |
|---|

If the Settlement is given Final Approval, you and all other Class Members will release certain claims defined in the Settlement as "Released Claims." In general terms, Class Members who do not validly request to be excluded from the Settlement will each release all of their claims against BCBSM and its affiliated persons and entities arising out of - or in any way relating to - BCBSM's most favored nation clauses with Michigan General Acute Hospitals, or any matter or event arising out of the dispute being resolved in this Settlement. If the Settlement is given Final Approval, the claims that were asserted against BCBSM in the lawsuit will be dismissed, with prejudice. A complete copy of the Release is attached as Appendix A to this Notice.

## SUBMITTING A CLAIM FORM

| **10.  How can I get a payment?** |
|---|

To ask for a payment you must submit a Claim Form. Claim Forms are available at the Settlement website, upon request from the Settlement Administrator, or by calling the toll free number.

After carefully reading the Claim Form instructions, fill out the Claim Form, attach the required documentation, sign it, and mail it postmarked no later than [DATE] to:
[CLAIMS ADMINISTRATOR ADDRESS]

| **11.  What do I do if I have questions about the Claim Form?** |
|---|

If you have questions about how to file a claim, call the toll-free number ([TOLL FREE NUMBER]) or send an email to [EMAIL ADDRESS] or a letter to [MAILING ADDRESS].

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to participate in this Settlement, and you want to keep the right to sue BCBSM about the dispute in this case, then you must take steps to get out of the Settlement. This is called asking to be excluded from - or sometimes called "opting out" of - the Settlement.

### 12. If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself, you may not submit a claim for a payment from the Settlement, and you cannot object to the Settlement. However, if you ask to be excluded, you may sue BCBSM based on the dispute in this case.

### 13. If I do not exclude myself, can I sue later?

No. Unless you exclude yourself, you give up the right to sue BCBSM for any of the claims that this Settlement resolves. You must exclude yourself from the Class to start your own lawsuit, continue with a lawsuit, or be part of any other lawsuit against BCBSM relating to the "Released Claims" described in Section H of the Settlement Agreement.

### 14. How do I exclude myself from the Settlement?

To exclude yourself from the Settlement with BCBSM, you must send a letter by mail clearly stating that you want to be excluded from the Settlement in *The Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, Case No. 2:10-cv-14360. Include your name, your business name (if applicable), address, telephone number, signature, and date. If applicable, your letter must also describe the position that authorizes you to request exclusion on behalf of your company.

You must mail your request for exclusion postmarked by **[DATE]** to:

[CLAIMS ADMINISTRATOR ADDRESS]

You cannot ask to be excluded on the phone, by email, or at the website.


## OBJECTING TO THE SETTLEMENT

### 15. How can I tell the Court I don't like the Settlement?

You can object to the Settlement if you do not like some part or all of it. You must give reasons why you think the Court should not approve the Settlement. You may also object to Plaintiffs' Counsel's request for attorneys' fees, reimbursement of expenses, and Plaintiff incentive awards. To object, send a letter to the two addresses below, saying that you object to the Settlement in *The Shane Group, Inc., v. Blue Cross Blue Shield of Michigan*, Case No. 2:10-cv-14360, and file your objection with the Court. Be sure to include any papers or briefs that support your objections.

You must file your objection with the Court no later than [**DATE**] and mail your objection to these two addresses postmarked no later than [**DATE**]:

| PLAINTIFFS' COUNSEL | COUNSEL FOR BCBSM |
|---|---|
| COHEN MILSTEIN SELLERS & TOLL PLLC<br>Daniel A. Small<br>Brent W. Johnson<br>1100 New York Avenue, NW<br>Suite 500<br>Washington, DC 20005 | HUNTON & WILLIAMS LLP<br>Todd M. Stenerson<br>D. Bruce Hoffman<br>2200 Pennsylvania Ave NW<br>Washington, DC 20037 |

### 16.  What is the difference between objecting and asking to be excluded?

Objecting is telling the Court that you do not like something about the Settlement.  You can object only if you stay in the Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement.  If you exclude yourself, you cannot object to the Settlement because the Settlement no longer affects you.

### 17.  What happens if I object and the Settlement is approved?

If the Settlement is finally approved and you did not request to be excluded from the Settlement, you will remain a Class Member regardless of whether you objected.  You will remain bound by the terms of the Settlement and will not be able to sue BCBSM about the claims in this case.

## THE LAWYERS WHO REPRESENT YOU

### 18.  Do I have a lawyer in this case?

The Court appointed four law firms to represent the class: The Miller Law Firm, P.C.; Cohen Milstein Sellers & Toll PLLC; Gustafson Gluek PLLC; and Wolf, Haldenstein, Adler, Freeman & Herz LLC. These four law firms, together with other law firms that have assisted them, are called "Plaintiffs' Counsel."  You will not be charged for these lawyers.  If you want to be represented by your own lawyer in this case, you may hire one at your own expense.

### 19.  How will the lawyers in the case be paid?

Plaintiffs' Counsel will ask the Court for attorneys' fees of no more than one-third of the Settlement Fund and reimbursement of the expenses they had in this case of approximately $3,500,000.   Plaintiffs' Counsel will also ask the Court to reimburse the costs of administering this Settlement.  Plaintiffs' Counsel's application for attorneys' fees and expenses will be filed with the Court by [DATE] and posted on the Settlement website.  Plaintiffs' Counsel will also ask for incentive awards of up to $50,000 for each Plaintiff organization and up to $10,000 for each Plaintiff individual, for their services on behalf of the class.

The Court may award less than the amounts requested by Plaintiffs' Counsel.  Payments approved by the Court will be made from the Settlement Fund.

# THE COURT'S FAIRNESS HEARING

**20. How will the Court decide whether to approve the Settlement?**

At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider Plaintiffs' Counsel's request for attorney fees and expenses and Plaintiff incentive awards. If there are objections, the Court will consider them. After the Fairness Hearing, the Court will decide whether to approve the Settlement and how much to award for fees, expenses, and incentive awards.

**21. When and where will the Court decide whether to approve the Settlement?**

The Court will hold the Fairness Hearing at [TIME], on [DATE], at the United States Courthouse, Theodore Levin U.S. Courthouse, 231 W. Lafayette Boulevard, Detroit, Michigan, 48226. A motion for final approval of the Settlement will be filed by Plaintiffs' Counsel by [DATE]. The motion will also be posted on the Settlement website.

The Fairness Hearing may be moved to a different date or time without additional notice, so it is recommended that you periodically check www.MichiganHospitalPaymentsLitigation.com for updated information.

**22. Do I need to come to the hearing?**

No. Plaintiffs' Counsel will answer any questions the Court may have. However, you are welcome to attend the hearing at your own expense. If you send in a written objection, you do not have to come to the Fairness Hearing to talk about it. As long as you mailed your written objection on time, the Court will consider it. You also may pay your own lawyer to attend the Fairness Hearing, but his or her attendance is not necessary.

**23. May I speak at the hearing?**

You may speak at the Fairness Hearing if you submitted an objection as described in the answer to question 15 and stated in your objection that you wish to be heard at the Fairness Hearing. You cannot speak at the hearing if you exclude yourself from the Settlement.

If you choose to appear in person at the Fairness Hearing, you can appear yourself or by retaining an attorney at your own expense to appear on your behalf. If the attorney is appearing on behalf of more than one Class Member, he or she must identify each of those Class Members.

# OTHER INFORMATION

**24. What happens if I do nothing?**

If you are a Class Member and do nothing, you will not get a payment from this Settlement. And, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against BCBSM relating to claims being resolved by this Settlement, ever again.

**25.  How do I get more information?**

This notice summarizes the Settlement.  More details are in the Settlement Agreement available at www.MichiganHospitalPaymentsLitigation.com.   If you still have questions, call the Settlement Administrator at [TOLL FREE NUMBER], send an email to [EMAIL], or write to [MAILING ADDRESS].

**Please do not contact BCBSM, its counsel, the Court, or the Clerk's office.**

9

# EXHIBIT E-1

### *The Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*
### No. 2:10-cv-14360
### <u>U.S. District Court for the Eastern District of Michigan</u>

### CONSUMER CLAIM FORM

If you are an individual who paid a general acute care hospital in Michigan for healthcare services at any time between January 1, 2006 and June 23, 2014, you are a member of the Settlement Class in a lawsuit against Blue Cross Blue Shield Michigan ("BCBSM") and are entitled to submit a claim to share in the settlement money. You do not need to be a BCBSM customer to be eligible. A list of the relevant hospitals is attached to this form.

If you wish to submit a claim, complete this form and mail it, postmarked on or before **[DATE]**, to the address below. You may also complete the Claim Form electronically at www.MichiganHospitalPaymentsLitigation.com on or before **[DATE]**.

Your claim will be reviewed to determine whether or not you are entitled to payment and the amount of any payment. More information, including details on how payments are determined, is available at www.MichiganHospitalPaymentsLitigation.com or by writing, emailing, or calling the Settlement Administrator. Inquiries regarding your claim can be made by contacting the Settlement Administrator by writing to the address below, emailing [Claims Administrator Email Address], or calling [Toll-Free Number].

You may not share in the settlement fund if you exclude yourself from the Settlement. BCBSM, related corporate entities, and BCBSM's officers, directors, employees, agents, and attorneys are not eligible to share in the Settlement money and are excluded from the Settlement Class.

<u>Please mail your claim to:</u> **[Claims Administrator Mailing Address]**

## SECTION A: CLAIMANT INFORMATION

**Claimant Name:** _____
(Please write the Claimant Name as you would like it to appear on the check, if eligible for payment)
**Street Address**: _____
**City**: _____
**State**:_____ **Zip Code**: _____
**Country** (if other than US)**:** _____
**Daytime Telephone Number:** _____
**Evening Telephone Number:** _____
**Email Address:** _____

**Questions?**
**Call Toll-Free ### ###-### or Visit www.MichiganHospitalPaymentsLitigation.com**
**Habla Espanol? Visite la página web: www.MichiganHospitalPaymentsLitigation.com**

(By providing an email address, you are authorizing the Settlement Administrator to provide you with information relevant to your claim via email).

The Settlement Administrator will use this information for all communications relevant to this Claim (including the check, if eligible for payment). If your contact information changes, you **MUST** notify the Settlement Administrator in writing at the mailing or email address above.

## SECTION B: REPRESENTATIVE CONTACT INFORMATION

Please indicate whether you are filing on your own behalf as a Class Member or as the authorized representative of someone else who is a Class Member:

__    I am the Class Member named in Section A above.
      (If so, you may skip the rest of this section)

__    I am filing on behalf of the Class Member named in Section A above.

If you are filing on behalf of a Class Member, state your relationship to the Class Member (e.g., family member, attorney, etc.):
_____

**Representative Name:** _____
**Street Address**: _____
**City**: _____
**State**:_____ **Zip Code:** _____
**Country** (if other than US)**:** _____
**Daytime Telephone Number:** _____
**Evening Telephone Number:** _____
**Email Address:** _____
      (By providing an email address, you are authorizing the Settlement Administrator to provide you with information relevant to your claim via email).

## SECTION C: YOUR HOSPITAL HEALTHCARE PAYMENTS

To make a claim, you must provide two things: (1) a completed and signed copy of this form, stating all eligible hospital healthcare payments that you wish to be included in your claim; and (2) a copy of records documenting the hospital charges that you paid.

### C-1: Claim Table

On the Claim Table, please list each hospital from the attached list which you paid for healthcare services, the date(s) the hospital provided the services, and the amount(s) you paid to the hospital. You may include only payments for hospital healthcare services provided between January 1, 2006 and June 23, 2014. You may include co-payments, co-insurance

payments, and deductible payments you paid to the hospital. You may include amounts you paid to the hospital even if an insurer or self-insured entity reimbursed you.

Do not include the following:

•   Purchases from a hospital pharmacy

•   Payments that you made to your insurer or any entity other than a hospital

•   Payments that your insurer or any other entity made to the hospital

If you are submitting your claim online, you can either fill out the Claim Table on the website or attach a spreadsheet or other file containing the information required by the Claim Table.

If you are submitting your claim by mail and need additional room, you may attach additional pages. Please number all additional pages to ensure review.

## C-2: Copy of Purchase Records

You must also submit a copy of hospital bill(s) or other record(s) for all payments that you wish to include in your claim. The records must show (a) the hospital providing the services, (b) the amount charged, and (c) the date(s) the services were provided. If you did not pay the hospital the full amount of the charges (because somebody else, such as your insurer, paid part, or for any other reason), the record must show the portion you paid. If you do not have these records, you may be able to obtain them from the relevant hospital or your insurer.

If you submit by mail, please submit <u>copies</u> of your records, not the original records. If you are claiming a large number of payments, you can submit your supporting documentation on a CD or flash drive containing electronic or scanned copies of your records. If you submit online, you can submit electronic or scanned copies of your records as attachments to your claim.

If you are unable to locate or obtain your complete records, you should still submit the records that you do have. Even small payments for healthcare services at Michigan hospitals may entitle you to a minimum payment of up to $40.

## CLAIM TABLE

| Hospital | Date(s) of Hospital Services (mm/dd/yyyy) | Amount You Paid to the Hospital (in dollars) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4

## Section D:  YOUR SHARE OF THE SETTLEMENT MONEY, IF ANY

Your share of the settlement money, if any, will depend on the hospital(s) you paid, the date(s) the hospital provided the services, the amount of your payment(s), and the number of others who submit a valid Claim Form and the amount of their hospital payments. For more information, please review the Plan of Allocation, which is located on the website www.MichiganHealthcarePaymentsLitigation.com as an exhibit to the Settlement Agreement, or contact the Settlement Administrator at:

[CLAIMS ADMINISTRATOR MAILING ADDRESS]

[CLAIMS ADMINISTRATOR EMAIL ADDRESS]

Toll-Free Number: [TOLL-FREE NUMBER]

## Section E: CONFIDENTIALITY

All information you submit will be kept confidential by the Settlement Administrator and Class Counsel. It will not be used for any purpose other than administering your claim and determining the amount, if any, of your payment.  It will not be disclosed to BCBSM, the Plaintiffs, or any entity other than the Settlement Administrator and Class Counsel, and potentially the Court, under seal, if the Court needs to resolve a dispute concerning your claim. All documents you provide will be destroyed after all claims are finally resolved.

## Section F: RELEASE

If you are a Settlement Class Member and do not timely and validly request to be excluded from the Settlement, and the Settlement receives Final Approval, you will release and discharge forever all Released Claims against BCBSM and related entities and individuals, whether or not you submit a Claim Form. For more information, see Paragraphs 58-59 of the Settlement Agreement, available at www.MichiganHospitalPaymentsLitigation.com.

## Section G: CLAIMANT CERTIFICATION AND SIGNATURE

**I hereby certify under penalty of perjury that:**
1. The information in this Claim Form is true and accurate to the best of my knowledge, information, and belief.
2. I am a member of the Settlement Class and did not request to be excluded from the Settlement; or, I have been authorized by the

Claimant to file a claim on his or her behalf, and the Claimant is a member of the Settlement Class and did not request exclusion.

**3.** I have read and agree to the Release in Paragraphs 58-59 of the Settlement Agreement.

**4.** I understand that I may be asked to provide additional information to validate my claim, and that my claim may be denied if I am unable to provide the requested information.

**5.** I have not assigned or transferred (or purported to assign or transfer) or submitted any other claim for the same hospital payments and have not authorized any other person or entity to do so and know of no other person or entity having done so on the Claimant's behalf.

**6.** In the event that the Claimant later claims that I did not have the authority to claim or receive payments from the Settlement Fund on its behalf, I and/or my employer will indemnify and hold the parties, their counsel, and the Settlement Administrator harmless with respect to such claims.

Signature: _____ Date:_____

Type/Print name:  _____

Claimant name (if different than above): _____

**ACCURATE PROCESSING OF CLAIMS MAY TAKE SIGNIFICANT TIME.
THANK YOU IN ADVANCE FOR YOUR PATIENCE.**

# EXHIBIT E-2

***The Shane Group, Inc. v. Blue Cross Blue Shield of Michigan***
### No. 2:10-cv-14360
<u>U.S. District Court for the Eastern District of Michigan</u>

**CLAIM FORM FOR INSURERS OR SELF-INSURED ENTITIES**

If you are an insurer that paid a general acute care hospital in Michigan for your insureds' health care services or a self-insured entity whose health plan participants received healthcare services at a general acute care hospital in Michigan between January 1, 2006 and June 23, 2014, you are a member of the Settlement Class in a lawsuit against Blue Cross Blue Shield Michigan ("BCBSM") and are entitled to submit a claim to share in the settlement money. A list of the relevant hospitals is attached to this form.

If you wish to submit a claim, complete this form and mail it, postmarked on or before **[DATE]**, to the address below. You may also complete the Claim Form electronically at www.MichiganHospitalPaymentsLitigation.com on or before **[DATE]**.

Your claim will be reviewed to determine whether or not you are entitled to payment and the amount of any payment. More information, including details on how payments are determined, is available at www.MichiganHospitalPaymentsLitigation.com or by writing, emailing, or calling the Settlement Administrator. Inquiries regarding your claim can be made by contacting the Settlement Administrator by writing to the address below, emailing [Claims Administrator Email Address], or calling [Toll-Free Number].

You may not share in the settlement fund if you exclude yourself from the Settlement. BCBSM, related corporate entities, and BCBSM's officers, directors, employees, agents, and attorneys are not eligible to share in the Settlement money and are excluded from the Settlement Class.

<u>Please mail your claim to:</u> **[Claims Administrator Mailing Address]**

## SECTION A: CLAIMANT INFORMATION

**Claimant's Name:**_____
(Please write the Claimant Name as you would like it to appear on the check, if eligible for payment)
**Claimant's Contact Person:** _____
**Claimant's Tax Identification Number:** _____
**Street Address:** _____
**City:**_____
**State:**_____ **Zip Code:** _____
**Country** (if other than US): _____

**Questions?**
**Call Toll-Free ### ###-### or Visit www.MichiganHospitalPaymentsLitigation.com**
**Habla Espanol? Visite la página web: www.MichiganHospitalPaymentsLitigation.com**

**Telephone Number:** _____
**Email Address:**_____
(By providing an email address, you are authorizing the Settlement<br>Administrator to provide you with information relevant to your claim via email).

The Settlement Administrator will use this information for all communications relevant to this Claim (including the check, if eligible for payment). If your contact information changes, you **MUST** notify the Settlement Administrator in writing at the mailing or email address above.

## SECTION B: AUTHORIZED AGENT INFORMATION

Please indicate whether you are filing on your own behalf as a Class Member or as the authorized agent of a Class Member.

__    I am the Class Member named in Section A above.
      (If so, you may skip the rest of this section)

__    I am filing on behalf of the Class Member named in Section A above.

If you are filing on behalf of a Class Member, state your relationship to the Class Member (e.g., third party administrator, attorney, etc.):
_____

**Agent's Contact Name:** _____
**Agent's Business Name:** _____
**Agent's Tax Identification Number:** _____
**Street Address:** _____
**City:**_____
**State:**_____ **Zip Code:** _____
**Country (if other than US):** _____
**Telephone Number:** _____
**Email Address:**_____
(By providing an email address, you are authorizing the Settlement<br>Administrator to provide you with information relevant to your claim via email).

## SECTION C: YOUR HOSPITAL HEALTHCARE PAYMENTS

To make a claim, you must provide two things: (1) a completed and signed copy of this form, stating all eligible hospital healthcare payments that you wish to be included in your claim; and (2) a copy of records documenting the hospital charges that you paid. YOU ARE NOT ELIGIBLE TO FILE A CLAIM FOR CHARGES PAID BY YOUR INSURED; YOU MAY ONLY FILE A CLAIM FOR CHARGES YOU ACTUALLY PAID.

**C-1: Claim Table**

On the Claim Table, please list each hospital from the attached list which you paid for healthcare services, the date(s) the hospital provided the services, and the amount(s) you paid to the hospital. You may include only payments for hospital healthcare services provided between January 1, 2006 and June 23, 2014. Purchases from a hospital pharmacy are **not** included in the settlement, and may not be included in your claim.

If you are a self-insured entity, you may include amounts paid to the hospital for services received by your health plan participants, even if your health plan participants reimbursed you. You may **not** include amounts paid to the hospital by the plan participants themselves, even if you reimbursed the participant.

If you are an insurer, you may include amounts you paid to the hospital for services received by your insureds, even if your health plan participants reimbursed you. You may **not** include amounts paid to the hospital by your insureds, even if you reimbursed the insured.

If you are submitting your claim online, you can either fill out the Claim Table on the website or attach a spreadsheet or other file containing the information required by the Claim Table.

If you are submitting your claim by mail and need additional room, you may attach additional pages or recreate the Claim Table in a spreadsheet. Please number all additional pages to ensure review.

## C-2: Copy of Purchase Records

You must also submit a copy of hospital bill(s) or other record(s) for all of your payments to the hospital that you wish to include in your claim. The records must show (a) the hospital providing the services, (b) the amount charged, and (c) the date(s) the services were provided. If you did not pay the hospital the full amount of the charges (because somebody else, such as your insured, paid part or for any other reason), the record must show the portion you paid. If you do not have these records, you may be able to obtain them from the relevant hospital.

If you submit by mail, please submit copies of your records, not the original records. If you are claiming a large number of payments, you can submit your supporting documentation and Claim Table on a CD or flash drive containing electronic or scanned copies of your records. If you submit online, you can submit electronic or scanned copies of your records as attachments to your claim.

If you are unable to locate or obtain your complete records, you should still submit the records that you do have. Even small payments for healthcare services at Michigan hospitals may entitle you to a minimum payment of up to $40.

## CLAIM TABLE

| <u>Hospital</u> | <u>Date(s) of Hospital Services</u><br>(mm/dd/yyyy) | <u>Amount You Paid to the Hospital</u><br>(in dollars) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

## Section D:  YOUR SHARE OF THE SETTLEMENT MONEY, IF ANY

Your share of the settlement money, if any, will depend on the hospital(s) you paid, the date(s) the hospital provided the services, the amount of your payment(s), and the number of others who submit a valid Claim Form and the amount of their hospital payments. For more information, please review the Plan of Allocation, which is located on the website www.MichiganHealthcarePaymentsLitigation.com as an exhibit to the Settlement Agreement, or contact the Settlement Administrator at:

[CLAIMS ADMINISTRATOR MAILING ADDRESS]

[CLAIMS ADMINISTRATOR EMAIL ADDRESS]

Toll-Free Number: [TOLL-FREE NUMBER]

## Section E: HIPAA SAFE HARBOR

The records you submit may contain information identifying the recipients of services or other personal health information. If so, you will fall within the safe harbor of the Health Insurance Portability and Accountability Act ("HIPAA") for court-ordered production of personal health information, 45 C.F.R. § 164.512(e)(1)(i), and have no liability under HIPAA or any state confidentiality statute, regulation, or other requirement, for supplying such member information to the Claims Administrator.

## Section F: CONFIDENTIALITY

All information you submit will be kept confidential by the Settlement Administrator and Class Counsel. It will not be used for any purpose other than administering your claim and determining the amount, if any, of your payment.  It will not be disclosed to BCBSM, the Plaintiffs, or any entity other than the Settlement Administrator and Class Counsel, and potentially the Court, under seal, if the Court needs to resolve a dispute concerning your claim. All documents you provide will be destroyed after all claims are finally resolved.

## Section G: RELEASE

If you are a Settlement Class Member and do not timely and validly request to be excluded from the Settlement, and the Settlement receives Final Approval, you will release and discharge forever all Released Claims against BCBSM and related entities and individuals, whether or not you submit a

Claim Form. For more information, see Paragraphs 58-59 of the Settlement Agreement, available at www.MichiganHospitalPaymentsLitigation.com.

## Section H: CLAIMANT CERTIFICATION AND SIGNATURE

**I hereby certify under penalty of perjury that:**
1. I have been authorized by the Claimant to file a claim on its behalf and to receive on behalf of the Claimant any and all amounts that may be allocated to it from the Settlement Fund.
2. The information in this Claim Form is true and accurate to the best of my knowledge, information, and belief.
3. The Claimant is a member of the Settlement Class and did not request to be excluded from the Settlement.
4. I have read and agree to the Release in Paragraphs 58-59 of the Settlement Agreement.
5. I understand that I may be asked to provide additional information to validate this claim, and that the claim may be denied if I am unable to provide the requested information.
6. Neither I nor the Claimant have assigned or transferred (or purported to assign or transfer) or submitted any other claim for the same hospital payments and have not authorized any other person or entity to do so and know of no other person or entity having done so on the Claimant's behalf.
7. In the event that the Claimant later claims that I did not have the authority to claim or receive payments from the Settlement Fund on its behalf, I and/or my employer will indemnify and hold the parties, their counsel, and the Settlement Administrator harmless with respect to such claims.


Signature: _____ Date:_____

Type/Print name: _____

Company Name: _____

Title of Signatory:

Claimant name (if different than above):_____


**ACCURATE PROCESSING OF CLAIMS MAY TAKE SIGNIFICANT TIME.**
**THANK YOU IN ADVANCE FOR YOUR PATIENCE.**

# EXHIBIT F

PLAINTIFFS' PROPOSED PLAN OF ALLOCATION

The Net Settlement Fund[1] will be divided into three amounts corresponding to three categories of purchases by Claimants.  Within each category, the allocated Settlement money will be distributed pro rata based on the amount of each Claimant's purchases, relative to the total amount of the other Claimants' purchases, within that category.  This pro rata distribution is subject to certain minimum distribution amounts, per-Claimant caps, roll-over of any undistributed funds, and a possible cy pres distribution.  Claimants may receive funds from any or all of the three categories for which they qualify.

Any portion of a pro rata share that is not distributed to a Claimant because of the per-Claimant cap in Category 1 will roll over to Category 2, and vice versa.  After the roll-over, any amount still not distributed to Claimants because of the cap will roll over to Category 3.

For purposes of this Plan of Allocation, "Relevant Purchases" are the Claimant's total purchases of hospital healthcare services from all Michigan General Acute Care Hospitals during the period January 1, 2006 through June 23, 2014.

Following are the specific parameters, category by category, of the allocation of the Net Settlement Fund.

Category 1

Purchases within Category 1 are those by Settlement Class Members at the Affected Combinations (as defined in the expert report of Plaintiffs' economist) during the relevant time periods.  The list of Category 1 combinations is attached as Exhibit A to this Plan of Allocation.

Seventy-eight percent (78%) of the Net Settlement Fund will be allocated for pro rata distribution based on Category 1 purchases.  Specifically, the funds allocated to Category 1 will be allocated among Claimants under the following formula: total dollars spent on Category 1 purchases for each Claimant divided by total dollars spent by all Claimants on Category 1 purchases combined.

However, this pro rata distribution is subject to a per-claimant cap.  No Claimant will receive a distribution of money allocated for Category 1 purchases of greater than 3.5% of the dollar amount of the Claimant's total Relevant Purchases.

The pro rata distribution of the money allocated to Category 1 is also subject to a minimum distribution amount of $25 per Claimant for the Claimant's purchases in Category 1. Any amount of Category 1 purchases entitles the Claimant to the $25 minimum amount. However, if the payments of the $25 per-Claimant minimum would total more than 25% of the money allocated to Category 1, then this minimum will be reduced to an amount such that the total payments of the (lowered) minimum amount equal 25% of the Category 1 money.

---

[1] Capitalized terms herein have the same meaning they have in the Settlement Agreement.

Category 2

Purchases within Category 2 are those by Settlement Class Members at Michigan General Acute Care Hospitals when a Most Favored Nation Clause between BCBSM and the hospital was in effect, excluding Category 1 purchases.  Category 2 comprises purchases from all hospital-date combinations listed in Exhibit B to this Plan of Allocation, excluding Category 1 purchases.

Twenty percent (20%) of the Net Settlement Fund will be allocated for pro rata distribution based on Category 2 purchases.  Specifically, the funds allocated to Category 2 will be allocated among Claimants under the following formula: total dollars spent on Category 2 purchases for each Claimant divided by total dollars spent by all Claimants on Category 2 purchases combined.

However, this pro rata distribution is subject to a per-Claimant cap.  No Claimant will receive a distribution of money allocated for Category 2 purchases of greater than 1% of the dollar amount of the Claimant's total Relevant Purchases.

The pro rata distribution of the money allocated to Category 2 is also subject to a minimum distribution amount of $15 per Claimant for the Claimant's purchases in Category 2. Any amount of Category 2 purchases entitles the Claimant to the $15 minimum amount. However, if the payments of the $15 per-Claimant minimum would total more than 25% of the money allocated to Category 2, then this minimum will be reduced to an amount such that the total payments of the (lowered) minimum amount equal 25% of the Category 2 money.

Category 3

Purchases within Category 3 are those by Settlement Class Members at Michigan General Acute Care Hospitals during the period January 1, 2006 through June 23, 2014, excluding Category 1 and 2 purchases.

Two percent (2%) of the Net Settlement Fund will be allocated for pro rata distribution based on Category 3 purchases.  Specifically, the funds allocated to Category 3 will be allocated among Claimants under the following formula: total dollars spent on Category 3 purchases for each Claimant divided by total dollars spent by all Claimants on Category 3 purchases combined.

However, no distribution will be made to a Claimant for Category 3 purchases unless at least one of the following conditions applies: (1) the Claimant also has Category 1 or 2 purchases; (2) the Claimant's pro rata share of Category 3 funds is $10 or more; or (3) the Claimant does not satisfy condition (1) or (2) but the total number of Category 3 Claimants that do not satisfy condition (1) or (2) is fewer than 100.

Cy Pres

Any Category 3 funds not distributed to Claimants because of these restrictions will be distributed cy pres to Free Clinics of Michigana, as determined by the Court.

## Plan of Allocation Exhibit A

| Affected Combinations | | |
|---|---|---|
| **Provider Agreement** | **Hospital** | **Dates of Affected Purchases** |
| Aetna PPO Agreement | Bronson LakeView Hospital<br>Three Rivers Health | 01/01/08 – 05/18/12<br>01/01/10 – 05/24/12 |
| BCBSM Non-HMO Agreement (inpatient claims only) | Beaumont Hospital - Gross Pointe<br>Beaumont Hospital - Royal Oak<br>Beaumont Hospital - Troy<br>Providence Park Hospital<br>St. John Hospital and Medical Center | 01/01/09 – 01/01/12<br>02/07/06 – 01/01/12<br>02/07/06 – 01/01/12<br>07/01/07 – 07/01/10<br>07/01/07 – 07/01/10 |
| HAP HMO Agreement (inpatient claims only) | Beaumont Hospital - Royal Oak | 07/15/06 – 01/18/13 |
| HAP PPO Agreement | Beaumont Hospital - Gross Pointe<br>Beaumont Hospital - Royal Oak<br>Beaumont Hospital – Troy | 01/01/10 – 01/09/13<br>05/01/08 – 02/01/13<br>05/01/08 – 01/15/13 |
| Priority PPO Agreement | Allegan General Hospital<br>Charlevoix Area Hospital Kalkaska<br>Memorial Health Center Mercy Health<br>Partners - Lakeshore Paul Oliver<br>Memorial Hospital | 01/01/09 – 10/04/12<br>01/01/09 – 10/07/12<br>07/01/09 – 10/05/12<br>01/01/09 – 10/02/12<br>07/01/09 – 10/04/12 |
| Priority HMO Agreement | Allegan General Hospital<br>Mercy Health Partners - Lakeshore Paul<br>Oliver Memorial Hospital Sparrow Ionia<br>Hospital | 01/01/09 – 10/05/12<br>01/01/09 – 10/04/12<br>07/01/09 – 10/04/12<br>12/01/08 – 10/02/12 |

## Plan of Allocation Exhibit B

| Michigan Acute Care Hospitals with MFNs | | |
|---|---|---|
| **Hospital Name** | **MFN Effective Date** | **MFN Expiration Date** |
| Allegan General Hospital | 2010.01.01 | 2013.02.01 |
| Allegiance Health | 2009.07.01 | 2012.06.30 |
| Alpena Regional Medical Center | 2010.01.01 | 2013.02.01 |
| Ascension Borgess Lee Memorial Hospital | 2009.07.01 | 2013.02.01 |
| Ascension Borgess Medical Center | 2008.07.01 | 2013.02.01 |
| Ascension Borgess Pipp Hospital | 2008.07.01 | 2013.02.01 |
| Ascension Genesys Regional Medical Center | 2008.07.01 | 2013.02.01 |
| Ascension Providence Hospital and Medical Centers | 2008.07.01 | 2013.02.01 |
| Ascension Providence Park Hospital Novi | 2008.07.01 | 2013.02.01 |
| Ascension St. John Hospital and Medical Center | 2008.07.01 | 2013.02.01 |
| Ascension St. John Macomb Oakland Hospital - Macomb Center | 2008.07.01 | 2013.02.01 |
| Ascension St. John North Shores Hospital | 2008.07.01 | 2013.02.01 |
| Ascension St. John River District Hospital | 2008.07.01 | 2013.02.01 |
| Ascension St. Mary's of Michigan Medical Center (Saginaw) | 2008.07.01 | 2013.02.01 |
| Ascension St. Mary's of Michigan Medical Center (Standish) | 2009.07.01 | 2013.02.01 |
| Ascension Tawas St. Joseph Hospital | 2008.07.01 | 2013.02.01 |
| Aspirus Grand View Hospital | 2010.01.01 | 2013.02.01 |
| Aspirus Keweenaw Hospital | 2009.07.01 | 2013.02.01 |
| Aspirus Ontonagon Hospital | 2009.07.01 | 2013.02.01 |
| Baraga County Memorial Hospital | 2009.10.01 | 2013.02.01 |
| Bell Memorial Hospital | 2009.07.01 | 2013.02.01 |
| Botsford Hospital | 2008.01.01 | 2012.12.31 |
| Bronson Lakeview Hospital | 2010.01.01 | 2013.02.01 |
| Bronson Vicksburg Hospital | 2010.01.01 | 2013.02.01 |
| Caro Community Hospital | 2010.01.01 | 2013.02.01 |
| Charlevoix Area Hospital | 2009.07.01 | 2013.02.01 |
| Cheboygan Memorial Hospital | 2008.04.01 | 2011.03.31 |
| Community Health Center of Branch County | 2006.01.01 | 2006.12.31 |
| Community Hospital - Watervliet | 2009.10.01 | 2013.02.01 |
| Covenant Medical Center | 2009.07.01 | 2012.06.30 |
| Deckerville Community Hospital | 2009.07.01 | 2013.02.01 |
| Dickinson County Memorial Hospital | 2008.01.01 | 2010.12.31 |
| Eaton Rapids Medical Center | 2009.07.01 | 2013.02.01 |
| Harbor Beach Community Hospital | 2010.01.01 | 2013.02.01 |
| Hayes Green Beach Memorial Hospital | 2010.04.01 | 2013.02.01 |
| Helen Newberry Joy Hospital | 2010.01.01 | 2013.02.01 |
| Hills & Dales General Hospital | 2009.10.01 | 2013.02.01 |
| Huron Medical Center | 2009.10.01 | 2013.02.01 |
| Kalkaska Memorial Health Center (Munson) | 2009.07.01 | 2013.02.01 |
| Mackinac Straits Hospital and Health Center | 2010.04.01 | 2013.02.01 |
| Marlette Regional Hospital | 2009.07.01 | 2013.02.01 |
| Marquette General Health System | 2008.07.01 | 2012.06.30 |
| McKenzie Memorial Hospital | 2009.10.01 | 2013.02.01 |
| Memorial Medical Center of West Michigan | 2006.01.01 | 2006.09.30 |
| Metro Health Hospital | 2008.07.01 | 2012.06.30 |
| MidMichigan Medical Center - Clare | 2009.07.01 | 2011.06.30 |
| MidMichigan Medical Center - Gladwin | 2009.07.01 | 2011.06.30 |

| Michigan Acute Care Hospitals with MFNs | | |
|---|---|---|
| Hospital Name | MFN Effective Date | MFN Expiration Date |
| MidMichigan Medical Center - Gratiot | 2006.01.01 | 2006.06.30 |
| MidMichigan Medical Center - Gratiot | 2008.07.01 | 2011.06.30 |
| MidMichigan Medical Center - Midland | 2008.07.01 | 2011.06.30 |
| Munising Memorial Hospital | 2010.04.01 | 2013.02.01 |
| Munson Medical Center | 2009.07.01 | 2012.06.30 |
| Northstar Health System | 2010.01.01 | 2013.02.01 |
| Otsego Memorial Hospital | 2009.08.01 | 2013.02.01 |
| Paul Oliver Memorial Hospital (Munson) | 2009.07.01 | 2013.02.01 |
| Pennock Hospital | 2006.01.01 | 2006.09.30 |
| Portage Health Hospital | 2009.07.01 | 2013.02.01 |
| ProMedica -- Herrick Medical Center | 2010.01.01 | 2013.02.01 |
| Scheurer Hospital | 2009.07.01 | 2013.02.01 |
| Schoolcraft Memorial Hospital | 2009.01.01 | 2013.02.01 |
| Sheridan Community Hospital | 2010.04.01 | 2013.02.01 |
| South Haven Community Hospital | 2009.07.01 | 2013.02.01 |
| Sparrow Clinton Hospital | 2010.01.01 | 2013.02.01 |
| Sparrow Hospital | 2008.01.01 | 2013.02.01 |
| Sparrow Ionia Hospital | 2009.07.01 | 2013.02.01 |
| Spectrum Health Kelsey Hospital | 2009.07.01 | 2010.07.01 |
| Spectrum Health Reed City Hospital | 2009.07.01 | 2010.07.01 |
| Three Rivers Health | 2010.01.01 | 2013.02.01 |
| Trinity MHP Mercy Lakeshore Campus | 2010.07.01 | 2013.02.01 |
| West Shore Medical Center | 2009.07.01 | 2013.02.01 |
| William Beaumont Hospital Grosse Pointe | 2009.01.01 | 2011.12.31 |
| William Beaumont Hospital Royal Oak | 2006.02.07 | 2011.12.31 |
| William Beaumont Hospital Troy | 2006.02.07 | 2011.12.31 |

# EXHIBIT G

| Michigan Acute Care Hospitals |
|---|
| Allegan General Hospital |
| Allegiance Health |
| Alpena Regional Medical Center |
| Ascension Borgess Lee Memorial Hospital |
| Ascension Borgess Medical Center |
| Ascension Borgess Pipp Hospital |
| Ascension Genesys Regional Medical Center |
| Ascension Providence Hospital and Medical Centers |
| Ascension Providence Park Hospital Novi |
| Ascension St. John Hospital and Medical Center |
| Ascension St. John Macomb Oakland Hospital - Macomb Center |
| Ascension St. John North Shores Hospital |
| Ascension St. John River District Hospital |
| Ascension St. Mary's of Michigan Medical Center (Saginaw) |
| Ascension St. Mary's of Michigan Medical Center (Standish) |
| Ascension Tawas St. Joseph Hospital |
| Aspirus Grand View Hospital |
| Aspirus Keweenaw Hospital |
| Aspirus Ontonagon Hospital |
| Baraga County Memorial Hospital |
| Bell Memorial Hospital |
| Botsford Hospital |
| Bronson Battle Creek |
| Bronson Lakeview Hospital |
| Bronson Methodist Hospital |
| Bronson Vicksburg Hospital |
| Caro Community Hospital |
| Charlevoix Area Hospital |
| Cheboygan Memorial Hospital |
| Chippewa County War Memorial Hospital |
| Community Health Center of Branch County |
| Community Hospital - Watervliet |
| Covenant Medical Center |
| Crittenton Hospital |
| Deckerville Community Hospital |
| Dickinson County Memorial Hospital |
| DMC -- Children's Hospital of Michigan |
| DMC -- Detroit Receiving Hospital And University Health Center |
| DMC -- Harper University Hospital & Hutzel Women's Hospital |
| DMC -- Huron Valley Sinai Hospital |
| DMC -- Sinai-Grace Hospital |
| Doctors' Hospital of Michigan |
| Eaton Rapids Medical Center |
| Forest Health Medical Center |
| Garden City Hospital |
| Harbor Beach Community Hospital |
| Hayes Green Beach Memorial Hospital |
| Helen Newberry Joy Hospital |

| |
|---|
| Henry Ford Hospital |
| Henry Ford Cottage Hospital |
| Henry Ford Macomb Hospital |
| Henry Ford Macomb Hospital Warren Campus |
| Henry Ford West Bloomfield Hospital |
| Henry Ford Wyandotte Hospital |
| Hills & Dales General Hospital |
| Hillsdale Community Health Center |
| Holland Hospital |
| Hurley Medical Center |
| Huron Medical Center |
| Kalkaska Memorial Health Center (Munson) |
| Karmanos Cancer Center |
| Lakeland Hospitals at Niles and St. Joseph |
| Mackinac Straits Hospital and Health Center |
| Marlette Regional Hospital |
| Marquette General Health System |
| McKenzie Memorial Hospital |
| McLaren Bay Regional Medical Center |
| McLaren Central Michigan Community Hospital |
| McLaren Ingham Regional Medical Center (Greater Lansing) |
| McLaren Lapeer Regional Medical Center |
| McLaren Mount Clemens Regional Medical Center |
| McLaren Northern Michigan Regional Hospital |
| McLaren POH Regional Medical Center |
| McLaren Regional Medical Center |
| Mecosta County Medical Center |
| Memorial Healthcare (Owosso) |
| Memorial Medical Center of West Michigan |
| Mercy Memorial Hospital System |
| Metro Health Hospital |
| MidMichigan Medical Center - Clare |
| MidMichigan Medical Center - Gladwin |
| MidMichigan Medical Center - Gratiot |
| MidMichigan Medical Center - Midland |
| Munising Memorial Hospital |
| Munson Medical Center |
| North Ottawa Community Hospital |
| Northstar Health System |
| Oakland Regional Hospital |
| Oaklawn Hospital |
| Oakwood Annapolis Hospital |
| Oakwood Heritage Hospital |
| Oakwood Hospital & Medical Center Dearborn |
| Oakwood Southshore Medical Center |
| OSF St. Francis Hospital |
| Otsego Memorial Hospital |
| Paul Oliver Memorial Hospital (Munson) |
| Pennock Hospital |

| |
|---|
| Port Huron Hospital |
| Portage Health Hospital |
| ProMedica -- Bixby Medical Center |
| ProMedica -- Herrick Medical Center |
| Scheurer Hospital |
| Schoolcraft Memorial Hospital |
| Sheridan Community Hospital |
| South Haven Community Hospital |
| Southeast Michigan Surgical Hospital |
| Sparrow Carson City Hospital |
| Sparrow Clinton Hospital |
| Sparrow Hospital |
| Sparrow Ionia Hospital |
| Spectrum Health Butterworth |
| Spectrum Health Gerber Memorial |
| Spectrum Health Kelsey Hospital |
| Spectrum Health Reed City Hospital |
| Spectrum Health United Hospital |
| Spectrum Zeeland Community Hospital |
| Straith Hospital for Special Surgery |
| Sturgis Hospital |
| Three Rivers Health |
| Trinity Chelsea Community Hospital |
| Trinity Mercy Hospital - Cadillac |
| Trinity Mercy Hospital - Grayling |
| Trinity MHP Hackley Campus |
| Trinity MHP Mercy Campus |
| Trinity MHP Mercy Lakeshore Campus |
| Trinity St. Joseph Mercy Ann Arbor |
| Trinity St. Joseph Mercy Livingston |
| Trinity St. Joseph Mercy Oakland |
| Trinity St. Joseph Mercy Port Huron |
| Trinity St. Joseph Mercy Saline |
| Trinity St. Mary Mercy Livonia |
| Trinity St. Mary's Health Care Grand Rapids |
| University of Michigan Health System |
| VA -- Aleda E Lutz Medical Center |
| VA -- Ann Arbor Healthcare System |
| VA -- Battle Creek Medical Center |
| VA -- Iron Mountain Medical Center |
| VA -- John D Dingell Medical Center |
| West Branch Regional Medical Center |
| West Shore Medical Center |
| William Beaumont Hospital Grosse Pointe |
| William Beaumont Hospital Royal Oak |
| William Beaumont Hospital Troy |

# EXHIBIT H

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SHANE GROUP, INC. *ET AL.*, <br><br> Plaintiffs, on behalf of themselves and all others similarly situated, <br><br> vs. <br><br> BLUE CROSS BLUE SHIELD OF MICHIGAN, <br><br> Defendant. | Civil Action No. 2:10-cv-14360-DPH-MKM <br><br><br><br> Judge Denise Page Hood <br><br> Magistrate Judge Mona K. Majzoub |

## [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL
## TO PROPOSED CLASS SETTLEMENT

The Plaintiffs in the above-captioned matter have filed a Motion for entry of an Order determining certain matters in connection with the proposed Settlement of this class action, pursuant to the terms of the Settlement Agreement reached by the parties and presented to the Court for approval (hereinafter, the "Settlement Agreement"). After consideration of the Settlement Agreement and the exhibits annexed thereto, and after due deliberation and consideration of the totality of the circumstances and the record, and for good cause shown, it is hereby

**ORDERED, ADJUDGED, and DECREED** as follows:

1.      **Defined Terms**:  This Court adopts the defined terms set forth in Section A (Definitions) of the Settlement Agreement for purposes of this Order, unless otherwise specified herein.

2.      **Additional Named Plaintiffs**:  Pursuant to Federal Rule of Civil Procedure 21, Patrice Noah and Susan Baynard are hereby joined as additional named plaintiffs and class representatives.  Hereinafter, references to "Plaintiffs" include Patrice Noah and Susan Baynard.

3.      **Preliminary Approval of Settlement**:  The terms of the Settlement Agreement, including the Plan of Allocation attached thereto as Exhibit F, are **preliminarily approved,** subject to further consideration at the Fairness Hearing provided for below.   The Court concludes that the proposed Settlement is sufficiently within the range of reasonableness to warrant the scheduling of the Fairness Hearing, and the circulation of the Notice to the Settlement Class, each as provided for in this Order.

4.      **Certification for Settlement Purposes**:  For purposes of Settlement only, pursuant to Federal Rule of Civil Procedure 23, the Settlement Class is certified as follows:

> All Direct Purchasers of healthcare services from a Michigan General Acute Care Hospital from January 1, 2006 until the Execution Date. Excluded from the Settlement Class are all Released Persons. For purposes of this class definition, "Direct Purchasers" includes

-2-

without limitation individuals who paid Michigan General Acute Hospitals in the form of co-pays, co-insurance or otherwise; insurers that paid Michigan General Acute Care Hospitals for their insureds; and self-insured entities whose health plan participants received healthcare services at Michigan General Acute Care Hospitals.

The Michigan Regional Council of Carpenters Employee Benefits Fund, The Shane Group, Inc., Bradley A. Veneberg, Abatement Workers National Health and Welfare Fund, Monroe Plumbers & Pipefitter Local 671 Welfare Fund, Scott Steele, Patrice Noah and Susan Baynard are appointed as representatives of the Settlement Class defined above, and The Miller Law Firm, P.C., Cohen Millstein Sellers & Toll PLLC, Gustafson Gluek PLLC, and Wolf, Haldenstein, Adler, Freeman & Herz LLC are appointed as Class Counsel.  This certification of the Settlement Class and the appointment of class representatives and Class Counsel are solely for purposes of effectuating the proposed Settlement. If the Settlement Agreement is rescinded or does not receive Final Approval for any reason, the foregoing certification of the Settlement Class and appointment of the class representatives shall be void and of no further effect, and the parties to the proposed Settlement shall be returned to the status each occupied before entry of this Order, without prejudice to any legal argument that any of the parties to the Settlement Agreement might have asserted but for the Settlement Agreement.

Based on the Court's review of the Motion and supporting materials, the Court finds that the proposed Settlement Class satisfies Rule 23 of the Federal Rules of Civil Procedure in that:

a.     The Settlement Class, which consists of millions of individuals and entities, is so numerous that joinder of all persons who fall within the Settlement Class definition is impracticable;

b.     The commonality requirement is satisfied where members of the Settlement Class share at least one common legal or factual issue.  Here, there are questions of law and fact common to the Settlement Class, including questions relating to Blue Cross Blue Shield of Michigan's ("BCBSM") use of Most Favored Nation Clauses;

c.     The claims of the class representatives are typical of the claims of the Settlement Class; and

d.     The class representatives and Class Counsel will fairly and adequately protect the interests of the Settlement Class.

The Court further finds that the proposed Settlement Class satisfies Rule 23(b)(3) of the Federal Rules of Civil Procedure, which requires that common issues predominate and that a class action be superior to other available methods for the fair and efficient resolution of this controversy.  The Court notes that because the litigation is being settled, rather than litigated, it need not consider the

-4-

manageability issues that would be presented by this litigation. <u>Amchem Prods. Inc. v. Windsor</u>, 117 S. Ct. 2231, 2240 (1997).

5. **<u>Fairness Hearing</u>**: A Fairness Hearing shall take place before the undersigned, the Honorable Denise Page Hood, at _____, on _____ to determine:

      a. whether the proposed Settlement, on the terms and conditions provided for in the Settlement Agreement, should be finally approved by the Court as fair, reasonable, and adequate;

      b. whether this Action and all claims asserted therein should be dismissed on the merits and with prejudice;

      c. whether the application for attorneys' fees, expenses and plaintiff incentive awards filed by Class Counsel should be approved; and

      d. such other matters as the Court may deem necessary or appropriate.

The Fairness Hearing may be continued without further notice to the Settlement Class.

6. **<u>Approval with Modifications</u>**: The Court may finally approve the proposed Settlement Agreement at or after the Fairness Hearing with any modifications agreed to by BCBSM and the class representatives and without further notice to the Settlement Class.

7.     **Right to Appear and Object**:  Any Settlement Class Member who has not timely and properly requested exclusion from the proposed Settlement in the manner set forth below may appear at the Fairness Hearing in person or by counsel and be heard, to the extent allowed by the Court, either in support of or in opposition to the matter to be considered at the hearing, provided, however, that no Settlement Class Member who has requested exclusion from the Settlement shall be entitled to object; and provided further that no person shall be heard, and no papers, briefs, or other submissions shall be considered by the Court in connection with its consideration of those matters, unless such person complies with the following:

a.     Any objection must be submitted in writing and must be filed with the Court no later than ninety (90) days after Preliminary Approval.

b.     Settlement Class Members may object either on their own or through an attorney hired at their own expense.  If a Settlement Class Member hires an attorney to represent him or her at the Fairness Hearing, he or she must do so at his or her own expense.  No Settlement Class Member represented by an attorney shall be deemed to have objected to the Settlement Agreement unless an objection signed by the Settlement Class Member is also served as provided herein.

c.     Any objection regarding or related to the Settlement

Agreement or Settlement: (1) shall identify itself as an objection to the Settlement and/or Class Counsel's application for attorneys' fees, expenses and plaintiff incentive awards; (2) shall contain information sufficient to identify the objecting Settlement Class Member, including the objecting Settlement Class Member's name, address, and telephone number, and the contact information for any attorney retained by the Settlement Class Member in connection with the objection; and (3) shall contain a statement of whether the objecting Settlement Class Member intends to appear, either in person or through counsel, at the Fairness Hearing.

d.    Any Settlement Class Member who objects to the Settlement shall still be entitled to submit a Claim Form in accordance with this Order and the Claim Form instructions.

**8**.    **Notice**:  The forms of Notice attached to the Settlement Agreement as Exhibits B (Postcard Notice), C (Publication Notice) and D (Long Form Notice) are hereby approved.  The Notice Plan described in Exhibit A to the Settlement Agreement is hereby approved and shall be implemented according to its terms.  The Long Form Notice, Publication Notice and Postcard Notice shall be disseminated in accordance with the Notice Plan substantially in the form approved.  Plaintiffs shall cause the Settlement Administrator to send the Postcard Notice by first-class mail, postmarked no later than 40 days after entry of this

Order, to the Settlement Class Members who can be identified from the names and addresses produced to Plaintiffs by BCBSM, Priority Health and Aetna Inc. Plaintiffs shall cause all forms of publication notice provided for in the Notice Plan to be completed no later than 45 days after entry of this Order. Plaintiffs shall cause the Settlement Administrator to activate the Settlement website and the mailing address, email address and toll free number by which Settlement Class Members can communicate with the Settlement Administrator no later than the date Notice is first mailed or published.

The Court finds that the form and method of providing notice described in the Notice Plan is the best practicable under the circumstances and, if carried out, shall constitute due and sufficient notice of the Settlement Agreement under Federal Rule of Civil Procedure 23 and the Due Process Clause of the United States Constitution.

**9.** **Settlement Administrator**: The Court approves the retention of Epiq Class Action & Mass Tort Solutions, Inc. to administer the Settlement Agreement pursuant to its terms under the supervision of Class Counsel.

**10.** **Escrow Agent**: The Court approves of Eagle Bank, a Maryland State Chartered Bank, as the Escrow Agent to maintain the Escrow Account in which the Settlement Fund shall be held and to disburse funds from the Escrow Account in accordance with the orders of this Court. No money shall be

disbursed from the Escrow Account except as provided by an order of this Court.

11.   **Ability of Settlement Class Members to Request Exclusion**:   All Settlement Class Members who wish to exclude themselves from the Settlement must do so by sending a written request for exclusion to the Settlement Administrator by first-class mail as provided in the Notice, signed by the Settlement Class Member.  To be considered timely, and thereby exclude a person from the Settlement, the envelope delivering a request for exclusion must be postmarked no later 90 days after Preliminary Approval.  Plaintiffs shall attach to their motion for final approval a final list of all requests for exclusion, identifying any requests that Plaintiffs believe not to be valid and the basis for their belief.

Any Settlement Class Member who does not properly and timely request exclusion from the Settlement Class shall be included in such Settlement Class and, if the proposed Settlement receives Final Approval, shall be bound by all the terms and provisions of the Settlement Agreement, including but not limited to the releases and waivers described therein, whether or not such person has objected to the Settlement or submitted a Claim Form.

12.   **Claim Forms**:   The Claim Forms, attached to the Settlement Agreement as Exhibits E-1 and E-2, are hereby approved.  Plaintiffs shall cause the Settlement Administrator to disseminate the Claim Forms substantially in the form of Exhibits E-1 and E-2 to the Settlement Agreement.   Specifically,

Plaintiffs shall cause the Settlement Administrator to post the Claim Forms on the Settlement website no later than the date the Notice is first mailed or published, and, upon request of a Settlement Class Member made to the Settlement Administrator on or before November 14, 2014, to promptly send a Claim Form to the class member by first-class mail or email.  To be considered timely and valid, a Claim Form must be completed in accordance with its instructions and sent to the Settlement Administrator by first-class mail, postmarked no later than November 14, 2014.

**13.    CAFA Notice**:  No later than 30 days after the entry of this Order, BCBSM shall file with the Court and serve a certificate stating its compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715.

**14.    Attorneys' Fees, Expenses, Incentive Awards**:  Class Counsel shall file with the Court and serve their application for attorneys' fees, reimbursement of expenses and plaintiff incentive awards no later than 30 days after the entry of this Order.

**15.    Notice Declaration**:  No later than 75 days after the entry of this Order, Plaintiffs shall file with the Court and serve a declaration of the person(s) under whose general direction the Notice was disseminated showing that the Notice Plan was effectuated according to its terms and this Order.

**16.**   **Final Approval Motion**:   Plaintiffs shall file with the Court and serve their motion for final approval of the Settlement within 120 days after the entry of this Order.

**17.**   **Appearance by Settlement Class Member**:   Any Settlement Class Member may enter an appearance in this litigation, at his, her or its own expense, pro se or through counsel of his, her or its own choice.   Any Settlement Class Member who does not enter an appearance will be represented by Class Counsel.

**18.**   **Settlement Administration Expenses**:   Class Counsel are authorized to disburse up to $1 million from the Settlement Fund to pay the following costs of administering the Settlement, as they are incurred:  Taxes, Tax Expenses, charges of Eagle Bank, charges of the Settlement Administrator, and the cost of implanting the Notice Plan.   To the extent these costs exceed $1 million, Class Counsel may request in their application for attorneys' fees, reimbursement of expenses and incentive awards that amounts above $1 million be paid or reimbursed from the Settlement Fund.

**19**.   **Discovery and Other Litigation Activity**:  All discovery and other litigation activity in this Action is hereby stayed pending a decision on Final Approval of the Settlement Agreement.

**20**.   **No Admission**:  Neither the Settlement nor the Settlement Agreement shall constitute an admission, concession, or indication of the validity

of any claims or defenses in the Action, or of any wrongdoing, liability or

violation by BCBSM, which vigorously denies all of the claims and allegations

raised in the Action.


       **SO ORDERED** this _____ day of _____ 2012.


                                         _____

                                         HONORABLE DENISE PAGE
                                         HOOD
                                         UNITED STATES DISTRICT
                                         JUDGE


Copies provided to:
Counsel of record

# EXHIBIT I

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SHANE GROUP, INC. *ET AL.*,<br><br>Plaintiffs, on behalf of themselves and all others similarly situated,<br><br>vs.<br><br>BLUE CROSS BLUE SHIELD OF MICHIGAN,<br><br>Defendant. | Civil Action No. 2:10-cv-14360-DPH-MKM<br><br>Judge Denise Page Hood<br>Magistrate Judge Mona K. Majzoub |

## [PROPOSED] ORDER APPROVING SETTLEMENT

The Court has (1) reviewed and considered the terms and conditions of the proposed Settlement as set forth in the Settlement Agreement dated June 23, 2014; (2) held a Fairness Hearing after being satisfied that notice to the Settlement Class has been provided in accordance with the Court's Order Granting Preliminary Approval to Proposed Class Settlement entered on June __, 2014 (the "Preliminary Approval Order"); (3) taken into account any objections submitted prior to the Fairness Hearing in accordance with the Preliminary Approval Order, and the presentations and other proceedings at the Fairness Hearing; and (4) considered the Settlement in the context of all prior proceedings had in this litigation. Accordingly, the Court enters the following **FINDINGS and CONCLUSIONS**:

A.    Capitalized terms used in this Order that are not otherwise defined herein shall have the meaning assigned to them in the Settlement Agreement.

B.     The Court has subject matter jurisdiction over this Action.

C.     The notice to Settlement Class Members consisted of postcard notices to millions of potential class members, as well as advertisements in newspapers and newspaper supplements, in *People* magazine, and on the Internet.   The Settlement Administrator also created a website where Settlement Class Members could obtain the Settlement Agreement, the Long Form Notice, the Claim Forms, the list of Michigan General Acute Care Hospitals, and the list of Affected Combinations (as defined in Plaintiffs' motion for class certification).   The Court finds that this notice (i) constitutes the best notice practicable under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, and of their right to object and to appear at the Fairness Hearing or to exclude themselves from the Settlement; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice; and (iv) fully complied with due process principles and Federal Rule of Civil Procedure 23.

D.     By providing notice of the proposed Settlement to the relevant state and federal authorities within 10 days of the filing of the proposed Settlement with this Court, Defendant has complied with the requirements of 28 U.S.C. § 1715.

E.    The Court held a Fairness Hearing to consider the fairness, reasonableness, and adequacy of the Settlement and has [BEEN ADVISED THAT NO OBJECTIONS TO THE SETTLEMENT HAVE BEEN FILED/CONSIDERED ALL SUCH OBJECTIONS].

F.    The Settlement is the product of good faith, arm's length negotiations between the Plaintiffs and Class Counsel, on the one hand, and BCBSM and its counsel, on the other hand.

G.    The Settlement, as provided for in the Settlement Agreement and exhibits, is in all respects fair, reasonable, adequate, and proper, and in the best interest of the Settlement Class. In reaching this conclusion, the Court considered a number of factors, including: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the risks, expense, and delay of further litigation; (3) the judgment of experienced counsel who have competently evaluated the strength of their proofs; (4) the amount of discovery completed and the character of the evidence uncovered; (5) whether the settlement is fair to the unnamed class members; (6) objections raised by class members; (7) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and (8) whether the settlement is consistent with the public interest.  See, e.g., In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 522 (E.D. Mich. 2003).

3

H.    A list of those Settlement Class Members who have timely and validly requested exclusion from the Settlement and the Settlement Class, and who are therefore not bound by the Settlement, the provisions of the Settlement Agreement, this Order, or the Final Judgment to be entered by the Clerk of the Court hereon, has been submitted to the Court in the Declaration of the Settlement Administrator (attached as Exhibit A to Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Settlement, hereinafter "___ Decl."), filed in advance of the Fairness Hearing. All Settlement Class Members shall be subject to all of the provisions of the Settlement, the Settlement Agreement, this Order, and Final Judgment to be entered by the Clerk of the Court.

On the basis of the foregoing findings and conclusions, as well as the submissions and proceedings referred to above, **NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

<u>Approval of Settlement</u>

1.    The Settlement and the Settlement Agreement, including the Plan of Allocation attached to the Settlement Agreement as Exhibit F, are hereby approved as fair, reasonable, adequate, and in the best interests of the Settlement Class, and the requirements of due process and Federal Rule of Civil Procedure 23 have been satisfied. The parties are ordered and directed to comply with the terms and provisions of the Settlement Agreement.

4

2.      The Settlement Class Members identified on the list submitted to the Court as having timely and properly requested exclusion from the Settlement and the Settlement Class are hereby excluded from the Settlement Class and shall not be entitled to any of the benefits afforded to the Settlement Class Members under the Settlement Agreement.

3.      If this Order is reversed on appeal or the Settlement Agreement is rescinded or does not receive Final Approval for any reason, the certification of the Settlement Class and appointment of the Class Representatives shall be void and of no further effect, and the parties to the proposed Settlement shall be returned to the status each occupied before entry of this Order without prejudice to any legal argument that any of the parties to the Settlement Agreement might have asserted but for the Settlement Agreement.

<u>Release and Injunctions Against Released Claims</u>

4.      Plaintiffs and each of the other Settlement Class Members, jointly and severally, shall, and hereby do, fully release and discharge BCBSM and Released Parties from any and all claims, judgments, liens, losses, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, indemnities, actions, causes of action, and obligations of every kind and nature in law, equity or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, contingent or accrued, arising out of or in any way

5

relating to Most Favored Nation Clauses, or any matter or event occurring up to the execution of this Agreement arising out of the dispute which is the subject of this Action, whether in contract, tort, local law, or violation of any state or federal statute, rule or regulation, including without limitation, claims under the Sherman Act, Clayton Act or any Michigan antitrust statute, from January 1, 2006, through the Execution Date ("Released Claims").  Released Claims include any unknown claims that Settlement Class Members do not know or suspect to exist in their favor, which if known by them, might have affected this Agreement with BCBSM and the release of Released Parties.

5.     As used in Paragraph 4 herein, "Most Favored Nation Clauses" means all agreements and arrangements between BCBSM and general acute care hospitals in Michigan that (a) Plaintiffs have alleged or contended in this Action are most favored nation clauses, (b) are within the definition of a most favored nation clause contained in Section 3405a(4) of 1956 PA 218, or (c) have the same purpose or effect as the agreements and arrangements described in clauses (a) and (b) of this Paragraph.

6.     The Release described in Paragraph 4 herein is not intended to, and shall not, release any claims for medical malpractice, insurance coverage, product liability, personal injury, or similar claims.

6

7.     The Settlement Class Members are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in as class members or otherwise, or receiving any benefits or other relief from, any other lawsuit in any state, territorial or federal court, or any arbitration or administrative or regulatory or other proceeding in any jurisdiction, which asserts Released Claims. In addition, Settlement Class Members are enjoined from asserting as a defense, including as a set-off or for any other purpose, any argument that if raised as an independent claim would be a Released Claim.

## Other Provisions

8.     Neither the Settlement Agreement nor any provision therein, nor any negotiations, statements, submissions, or proceedings in connection therewith shall be construed as, or be deemed to be evidence of, an admission or concession on the part of the Plaintiffs, any Settlement Class Member, BCBSM, or any other person of any liability or wrongdoing by them, or that the claims and defenses that have been, or could have been, asserted in the Action are or are not meritorious, and neither this Order nor the Settlement Agreement, nor any statements or submissions in connection therewith shall be offered or received in evidence in any action or proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing of any nature or that Plaintiffs, any Settlement Class Member, or any other person has suffered any damage; *provided,*

*however*, that the Settlement Agreement, this Order, and the Final Judgment to be entered thereon may be filed in any action by BCBSM or Settlement Class Members seeking to enforce the Settlement Agreement or the Final Judgment by injunctive or other relief, or to assert defenses including, but not limited to, *res judicata*, collateral estoppel, release, good faith settlement, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim. The Settlement Agreement's terms shall be forever binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings, as to Released Claims or other prohibitions set forth in this Order, that are maintained by, or on behalf of, the Settlement Class Members or any other person subject to the provisions of this Order.

9.     In the event the Settlement Agreement does not receive Final Approval or is rescinded in accordance with the terms and provisions of the Settlement Agreement, then this Order and the Final Judgment shall be rendered null and void and be vacated and all orders entered in connection therewith by this Court shall be rendered null and void.

10.     Without affecting the finality of this Order in any way, this Court hereby retains continuing jurisdiction for the purposes of implementing and enforcing the Agreement, and adjudicating any disputes that arise pursuant to the Agreement.

<u>Entry of Judgment</u>

11.    The Clerk of the Court is directed to enter the Final Judgment in the form attached to this Order dismissing this Action, and all claims asserted therein, with prejudice as to BCBSM.

**SO ORDERED** this _____ day of _____ 2014.


_____
HONORABLE DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

9

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SHANE GROUP, INC. *ET AL.*, <br><br> Plaintiffs, on behalf of themselves and all others similarly situated, <br><br> vs. <br><br> BLUE CROSS BLUE SHIELD OF MICHIGAN, <br><br> Defendant. | Civil Action No. 2:10-cv-14360-DPH-MKM <br><br><br> Judge Denise Page Hood <br> Magistrate Judge Mona K. Majzoub |

## [Proposed] FINAL JUDGMENT

The Court has entered the Final Approval Order as to the parties' Settlement. Accordingly, Plaintiffs' and the Settlement Class's claims against Blue Cross Blue Shield of Michigan are hereby **DISMISSED WITH PREJUDICE**, and this Final Judgment shall issue consistent with Federal Rule of Civil Procedure 58.

**SO ORDERED** this _____ day of _____ 2014.

_____
HONORABLE DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

10