# EXHIBIT 2

UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE SHANE GROUP, INC., BRADLEY A. VENEBERG, MICHIGAN REGIONAL COUNCIL OF CARPENTERS EMPLOYEE BENEFITS FUND, ABATEMENT WORKERS NATIONAL HEALTH AND WELFARE FUND, MONROE PLUMBERS & PIPEFITTER LOCAL 671 WELFARE FUND, and SCOTT STEELE, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:10-cv-14360-DPH-MKM |
| v. | ) ) ) | |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, | ) ) ) | |
| Defendant. | ) ) ) | |

**DECLARATION OF SHANNON R. WHEATMAN, PH.D.**

**ON ADEQUACY OF NOTICE PLAN**

I, Shannon R. Wheatman, being duly sworn, hereby declare as follows:

1.   I am a Senior Vice President of Kinsella Media, LLC ("KM"), an advertising and notification firm in Washington, D.C. specializing in the design and implementation of class action and bankruptcy notification programs.  My business address is 2120 L Street NW, Suite 860, Washington, D.C. 20037.  My telephone number is (202) 686-4111.

2.   This declaration will describe my experience in designing and implementing notices and notice plans, as well as my credentials to opine on the overall adequacy of the notice effort.  It will also describe the notices (the "Notice" or "Notices") proposed here for *The Shane Group v.*

*Blue Cross Blue Shield of Michigan*, including how they were developed and why I believe they will be effective.

## RELEVANT EXPERIENCE

3.   I have served as a qualified class action notice expert in many major class actions.  State and federal courts have accepted my analyses and expert testimony on whether information is effectively communicated to people.  My curriculum vitae is attached as **Exhibit 1**.

4.   I have testified in court as an expert in *Scharfstein v. BP West Coast Products, LLC*, No. 1112-17046 (Cir. Ct. Ore.); *Spillman v. RPM Pizza, Inc.*, No. 10-349 (M.D. La.); *PRC Holdings LLC v. East Resources, Inc.*, No. 06-C-81 (Cir. Ct. W. Va.); *Guidry v. American Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct., Calcasieu Parish); *Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark); and *Beasley v. The Reliable Life Insurance Co.*, No. CV-2005-58-1 (Cir. Ct. Ark).  I have been deposed as an expert in *Hale v. CNX Gas Company, LLC*, No. 10-CV-59 (W.D. Va.) and *Thomas v. A. Wilbert Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish).

5.   I have been involved in some of the largest and most complex national notification programs in the country, including: *In re Toyota Motor Corp. Unintended Acceleration Mkt'g, Sales Practs. & Products Liability Litig.*, No. No. 8:10ML2151, (C.D. Cal.) (defective product case involving millions of consumers); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.) (involving millions of indirect purchasers); *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL No. 2179 (E.D. La.); *Kramer v. B2Mobile, LLC*, No. 10-cv-02722 (N.D. Cal.) (text messaging case involving tens of millions of consumers); *In re Enfamil LIPIL Mkt'g & Sales Pract. Litig.*, No. 11-MD-02222 (S.D. Fla.) (consumer fraud settlement involving millions of infant formula purchasers); *Fogel v. Farmers Group, Inc.*, No. BC300142 (Cal. Super. Ct., LA County) ($455 million settlement involving tens of millions of insureds); *In re Katrina Canal Breaches Consolidated Litig.*, No.

05-4182 (E.D. La.) (settlement obtained for Hurricane Katrina and Rita survivors); *Lockwood v. Certegy Check Services, Inc.*, No. 8:07-CV-1434 (M.D. Fla.) (data theft settlement involving over 37 million consumers); *Grays Harbor Adventist Christian School v. Carrier Corp.*, No. 05-05437 (W.D. Wash.) (defective product settlement involving high efficiency furnaces); and many others.

6.  Courts have admitted my expert testimony on quantitative and qualitative evaluations of the effectiveness of notice programs and several courts have commented favorably, on the record, regarding the effectiveness of notice plans I have done.  Selected judicial comments are included in the attached curriculum vitae.

7.  My qualifications include expertise in the form and content of notice.  For example, while serving with the Federal Judicial Center ("FJC"), I played an integral part in the development of the illustrative, "model" forms of notice designed to satisfy the plain language requirements of Federal Rule of Civil Procedure 23(c)(2).  This research formed the basis for my doctoral dissertation, *The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices* (2001) (Ph.D. dissertation, University of Georgia).  To assist judges and attorneys, both in state and federal courts, the FJC posted the notices at www.fjc.gov.

8.  I have authored and co-authored articles on notice and due process.  I believe notice and due process depend upon clear communication with the people affected.  *See, e.g.,* Shannon R. Wheatman & Terri R. LeClercq, *Majority of Class Action Publication Notices Fail to Satisfy Rule 23 Requirements*, 30 REV. LITIG. 53 (2011); Katherine Kinsella & Shannon R. Wheatman, *Class Notice and Claims Administration*, in The International Private Enforcement of Competition Law 264–274 (Albert A. Foer & Jonathan W. Cuneo eds., 2010); Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do you really want me to know my rights? The ethics behind due process in class action notice is more than just plain language:  A desire to actually inform*, 18 GEO. J. LEGAL ETHICS 1359 (2005); Todd B. Hilsee, Gina M. Intrepido &

Shannon R. Wheatman, *Hurricanes, Mobility and Due Process:    The "Desire-to-Inform"
Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV.
1771 (2006).

## NOTICE PLAN

9.  KM was retained in this litigation to design the Notice Plan and implement the paid
media portion, under the supervision of Class Counsel.   The Settlement Administrator will
implement the remainder of the Notice Plan, namely, individual notice and the case website, also
under the supervision of Class Counsel.

10. Although each case is unique, the methods and tools used in developing the Notice Plan
for this Settlement have been employed in many other court-approved notice plans.

11. In this case, the proposed Notice Plan was designed to reach the greatest practicable
number of Settlement Class Members and ensure that they will be exposed to, see, review, and
understand the Notice.

12.  I have been involved in drafting the various forms of Notice described below.   Each
form is noticeable, clear, concise, and written in plain, easily understood language.

13.  In developing the Notice Plan, KM determined in consultation with Class Counsel that
the most practicable way to reach Settlement Class Members is through the use of direct notice,
paid media, and an informational website.

14.  As detailed below, in my opinion, the Notice Program represents the best notice
practicable under the circumstances.

### *Individual Notice*

15. In developing the Notice Program, KM determined that a list of Class Members could be

created, and it would be reasonable to implement an individual notification effort to reach them.

16. Based on information provided by Class Counsel, I understand that Plaintiffs have the following Settlement Class Member name and address information. Blue Cross Blue Shield of Michigan ("BCBSM") produced names and addresses of its customers as part of the production of its claims database in this litigation. In addition, the claims data produced by Aetna in the litigation included names and addresses for its self-insured customers but not for their insured individuals. Health Alliance Plan ("HAP") and Priority Health ("Priority") also produced their claims databases in this litigation, but neither included full name and address information. In connection with the Settlement, Class Counsel requested that HAP and Priority supplement their data productions to provide the missing name and address information. Priority has agreed, but HAP has not. Class Counsel will make the same request to Aetna once the motion for Preliminary Approval has been filed. To date, Counsel has names and addresses for 2,394,079 BCBSM insured individuals; 1,134 BCBSM self-insured groups; 179 Aetna self-insured groups; and 99 commercial health insurers. In early July, Counsel expects to receive names and addresses for 604,488 Priority insured individuals and 99 Priority self-funded groups. Until the Settlement Administrator "de-duplicates" the lists across insurers, the number of Settlement Class Members to whom individual notice will be mailed is not known.

17. The Settlement Administrator will send Notice via mail to identified Settlement Class Members. Any additional individuals (or groups) that are identified by these insurers sufficiently ahead of the deadline for mailing individual notice will also be mailed a Notice.

18. Individual Notice consisting of a mailed Postcard Notice will provide Class Members with opportunities to see, read, and understand their rights, and act if they so choose.

19. Prior to mailing, the Settlement Administrator will check all addresses against the National Change of Address[1] database, which is maintained by the United States Postal Service ("USPS"). In order to ensure the most accurate mailings possible, the administrator will also certify addresses via the Coding Accuracy Support System, and verify them through Delivery Point Validation.[2]

20. For any Postcard Notices that are returned as non-deliverable, the Settlement Administrator will re-mail them to any address indicated by the USPS in the case of an expired automatic forwarding order. For Notices returned as non-deliverable, but for which a new address is not indicated by the USPS, the Settlement Administrator will further search through another vendor to obtain a more current address. If any such address is found, the Settlement Administrator will re-mail the Notice.

21. After determining that individual notification of Class Members was reasonable, KM determined that notification should consist of summary notices. Research has shown that a summary notice is more likely to be read by recipients than a longer form notice.

    a.    The FJC believes that summary notices should be mailed in many class action cases.

        i.    The Class Action Subcommittee of the Civil Rules Advisory Committee asked the FJC to draft model notices in plain language to support the then pending changes to Rule 23(c), which now requires notices to "concisely and clearly state

---

[1] The NCOA database contains records of all permanent changes of address submissions received by the USPS for the last four years.

[2] CASS is a certification system used by the USPS to ensure the quality of ZIP + 4 coding systems. Records that are properly coded are then sent through Delivery Point validation to verify the address is correct. If they are incorrect, DPV will report exactly what is wrong with the address.

in plain, easily understood language" the information a class member needs to know.   The FJC conducted research to determine the best way to write class action notices to allow people to easily understand all of their rights and options.[3]

ii.     While I was employed with the FJC we conducted four focus groups to gather feedback on our draft plain language notices.   During the focus group process, we explored recipients' willingness to open and read a class action notice.   Many focus group participants complained that it would take too much time out of their busy schedules to read a detailed notice, which in turn would cause them to skim the notice or throw it away.

iii.     We went on to empirically test the overall effectiveness of the FJC's model securities notice.   We collected responses from 229 volunteer participants who were members of 27 investment clubs across the country.   Only 2% of participants reported that they would carefully read a long form notice; 59% would glance at it; 12% would file it away; and 27% would throw it away without reading it.   However, 43% of participants reported they would carefully read a summary notice; 36% would glance at it; 6% would file it away; and 15% would throw it away.

iv.     Given these findings, the FJC believes that when the case does not involve a serious health or emotional issue, mailing a summary notice will most likely increase the chances it will be read.

---

[3] The research conducted by the FJC is discussed in Shannon R. Wheatman, *The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices* (2001) (unpublished Ph.D. dissertation, University of Georgia) (on file with the University of Georgia Library).

b. USPS research shows that many people scan their mail.[4]

    i.   The USPS conducts and publishes the results of an annual study (*Household Diary Study*) examining how mail recipients interact with different types of mail.  The survey has three main purposes: (a) to measure the mail sent and received by U.S. households, (b) to provide a means to track household mail trends over time, and (c) to make comparisons of mail use between different types of households.  The survey collects household information on attitudes toward mail and advertising.

    ii.   The study examines mail by type, including: correspondence, transactions, advertising, periodicals, packages, and unclassified mail.  Advertising mail, which can take many forms – "letters, postcards, catalogs, and free samples" – is the category for promotional, advertising, or sales material.  There is no category for legal notices.

    iii.   In 2012, 79% of recipients either "read" or "scanned" the advertising mail sent to their households.  In order to decide to read or throw away advertising mail, the recipient must look at the envelope or mailer.

c. Based on the FJC and the USPS studies, Postcard Notice is the recommended form for direct notice in this case.

### *Paid Media*

22. To supplement the Individual Notice, KM designed a paid media program to reach

---

[4] U.S.P.S., *Household Diary Study: Mail Use & Attitudes in FY2012*, available at http://about.usps.com/current-initiatives/studying-americans-mail-use.htm (last visited June 6, 2014).

Settlement Class Members who do not receive a Postcard Notice via mail.

23.  Given the broad range of demographics that encompass Settlement Class Members, KM selected Michigan adults 18 years of age or older ("Michigan Adults 18+") as the primary target audience.

24.  To effectively reach this class, KM recommends a broad-based notice program that utilizes magazine, local newspaper, newspaper supplement, and Internet advertising to meet due process standards and provide the best notice practicable under the circumstances.

25.  The Publication Notice will appear in the following consumer magazine:

   a.  A full-page ad (7" x 10") in *People* – Michigan state edition with an estimated circulation of 131,600.

26.  KM chose the specific newspapers listed below because they represent the highest circulating newspapers within seven selected Michigan DMAs.[5] The Publication Notice will appear in the following newspapers:

   a.  A one fourth-page ad (4.949" x 10.5") in the daily edition of *Alpena News* with an estimated circulation of 7,616.

   b.  A one fourth-page ad (5.387" x 10.5") in the weekday edition of *Bay City Times* with an estimated circulation of 16,549.

   c.  A one fourth-page ad (5.387" x 10.5") in the Sunday edition of *Bay City Times* with an estimated circulation of 26,619.

---

[5] A Designated Market Area ("DMA") is a group of counties that form an exclusive geographic area in which the home market television stations hold a dominant share of total hours viewed.  DMA is a trademark of The Nielsen Company and is used for planning, buying, and evaluating media audiences across various markets.  The DMAs that will be used in this case include: Detroit, Grand Rapids-Kalamazoo-Battle Creek, Flint-Saginaw-Bay City, Lansing, Traverse City-Cadillac, Marquette, and Alpena.

d.   A one fourth-page ad (5.75" x 11") in the daily edition of *Detroit Free Press* with an estimated circulation of 219,032.

e.   A one fourth-page ad (5.75" x 11") in the daily edition of *Detroit News* with an estimated circulation of 118,325.

f.   A one fourth-page ad (5.387" x 10.5") in the weekday edition of *Flint Journal* with an estimated circulation of 39,900.

g.   A one fourth-page ad (5.387" x 10.5") in the Sunday edition of *Flint Journal* with an estimated circulation of 54,181.

h.   A one fourth-page ad (5.387" x 10.5") in the weekday edition of *Grand Rapids Press* with an estimated circulation of 62,973.

i.   A one fourth-page ad (5.387" x 10.5") in the Sunday edition of *Grand Rapids Press* with an estimated circulation of 135,592.

j.   A one fourth-page ad (5.387" x 10.5") in the weekday edition of *Jackson Citizen Patriot* with an estimated circulation of 16,874.

k.   A one fourth-page ad (5.387" x 10.5") in the Sunday edition of *Jackson Citizen Patriot* with an estimated circulation of 22,689.

l.   A one fourth-page ad (5.387" x 10.5") in the weekday edition of *Kalamazoo Gazette* with an estimated circulation of 26,968.

m.   A one fourth-page ad (5.387" x 10.5") in the Sunday edition of *Kalamazoo Gazette* with an estimated circulation of 43,309.

n.   A one fourth-page ad (4.918" x 10.5") in the weekday edition of *Lansing State Journal* with an estimated circulation of 37,965.

o.  A one fourth-page ad (4.918" x 10.5") in the Sunday edition of *Lansing State Journal* with an estimated circulation of 52,398.

p.  A one fourth-page ad (4.95" x 10.5") in the weekday edition of *Marquette Mining Journal* with an estimated circulation of 10,268.

q.  A one fourth-page ad (4.95" x 10.5") in the Sunday edition of *Marquette Mining Journal* with an estimated circulation of 12,345.

r.  A one fourth-page ad (5.387" x 10.5") in the weekday edition of *Saginaw News* with an estimated circulation of 19,880.

s.  A one fourth-page ad (5.387" x 10.5") in the Sunday edition of *Saginaw News* with an estimated circulation of 29,879.

t.  A one fourth-page ad (5.44" x 10.5") in the weekday edition of *Traverse City Record-Eagle* with an estimated circulation of 17,383.

u.  A one fourth-page ad (5.44" x 10.5") in the Sunday edition of *Traverse City Record-Eagle* with an estimated circulation of 22,585.

27. The Publication Notice will appear in the following newspaper supplements:

a.  An M-page ad (6.25" x 9") in *Parade*-Michigan state edition with an estimated circulation of 960,938.

b.  An M-page ad (6.25" x 9") in *USA Weekend*-Michigan state edition with an estimated circulation of 540,835.

28.  KM recommends incorporating Internet advertising into the Notice Plan to provide Settlement Class Members with additional notice opportunities beyond the print placements. National Internet advertising will be included to reach those who moved out of state.  Internet

advertising delivers an immediate message and allows the viewer of an advertisement to instantly click through to the Settlement website for further information.

29. Internet advertising will include the following placements:

    a.  Banner advertisements measuring 728 x 90, 300 x 250, and 160 x 600 pixels will appear, on a rotating basis, on websites that are part of the *Xaxis*[6] network.

    b.  Impressions will be delivered both nationally and to Michigan-specific IP addresses.

### *Effectiveness of Notice Plan*

30. The *reach*[7] and *frequency*[8] of the Notice Plan was measured against the target audience to evaluate the strength and efficiency of the paid media (magazine, local newspaper, newspaper supplement, and Internet advertising). The Notice Plan will deliver an estimated reach of 80.0% with an average frequency of 2.2 times against Michigan Adults 18+.

### *Other*

31. The Settlement Administrator will establish a website to enable Settlement Class Members to get information on the Settlement, including the Long Form Notice and the Settlement Agreement.

32. The Settlement Administrator will establish a toll-free phone number to allow Settlement Class Members to call and request that a Notice be mailed to them or listen to answers to frequently asked questions.

---

[6] *Xaxis* is a network that represents over 5,000 websites.
[7] Reach is the estimated number of different people exposed to a specific vehicle or combination of vehicles. It can be expressed as whole number or percentage of the total population.
[8] Frequency is the estimated average number of opportunities an audience member has to see the notice.

33.  The Settlement Administrator will establish a post office box to allow Settlement Class Members to contact Class Counsel by mail with any specific requests or questions.

### NOTICE FORM AND CONTENT

34.  Attached to the Settlement Agreement as **Exhibits B**, **C**, and **D** are copies of the Postcard Notice, Publication Notice, and Long Form Notice.

35.  The Notices effectively communicate information about the Settlement.

36.  Rule 23(c)(2) of the Federal Rules of Civil Procedure requires class action notices to be written in "plain, easily understood language."  KM applies the plain language requirement in drafting notices in federal and state class actions.  The firm maintains a strong commitment to adhering to the plain language requirement, while drawing on its experience and expertise to draft notices that effectively convey the necessary information to Class Members.

37.  The Summary Notices (Postcard and Publication Notices) are designed to capture the Class Member's attention with clear, concise, plain language.  They direct readers to the Settlement website or toll-free number for more information.  The plain language text provides important information regarding the subject of the litigation, the Settlement Class definition, and the legal rights available to Settlement Class Members.  No important or required information is missing or omitted.  In fact, these Notices state all required information without omitting significant facts that Settlement Class Members need to understand their rights.

38.  The Long Form Notice will be available at the website, by calling the toll-free number, or by mailing or emailing a request to the Settlement Administrator.  The Long Form Notice provides substantial information, including all specific instructions Settlement Class Members need to follow to properly exercise their rights, and background on the issues in the case.  It is designed to encourage readership and understanding, in a well-organized and reader-friendly format.

## CONCLUSION

39.  It is my opinion that the reach of the target audience, number of exposure opportunities to the notice information, and content of the Notices are adequate and reasonable under the circumstances.  It is consistent with the standards employed by KM in notification programs designed to reach class members.  The Notice Plan, as designed, is fully compliant with Rule 23 of the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct.   Executed in Washington, D.C. this 23th day of June 2014.

_____

Shannon R. Wheatman

14

# EXHIBIT 1



# Shannon R. Wheatman, Ph.D.

Senior Vice President
Kinsella Media, LLC
2120 L Street NW, Suite 860
Washington, DC 20037
2010 – Present

Dr. Wheatman specializes in designing, developing, analyzing, and implementing large-scale legal notification plans. She is a court-recognized expert who provides testimony on the best notice practicable. Dr. Wheatman began her class action career in 2000 at the Federal Judicial Center where she was instrumental in the development of model notices to satisfy the plain language amendment to Rule 23. Her plain language expertise was advanced by her education, including her doctoral dissertation on plain language drafting of class action notice and her master's thesis on comprehension of jury instructions. Dr. Wheatman has been involved in over 300 class actions. Her selected case experience includes:

### Antitrust

*Allen v. Dairy Farmers of America, Inc.*, No. 5:09-CV-00230-CR (D. Vt.).

*Blessing v. Sirius XM Radio Inc.*, No. 09-CV-10035 HB (S.D.N.Y.).

*Brookshire Bros. v. Chiquita*, No. 05-CIV-21962 (S.D. Fla.).

*Cipro Cases I and II*, Nos. 4154 and 4220 (Super. Ct. Cal.).

*In re: Dynamic Random Memory (DRAM) Antitrust Litig.*, MDL No. 1486 (N.D. Cal.).

*In re Flonase Antitrust Litigation*, No. 08-CV-3301 (E.D. Pa.).

*In re: Metoprolol Succinate End-Payor Antitrust Litig.*, No. 06-cv-71 (D. De.).

*In re: Online DVD Rental Antitrust Litig.*, MDL No. 2029 (N.D. Cal.).

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.).

*Sweetwater Valley Farm, Inc. v. Dean Foods*, No. 2:07-CV-208 (E.D. Tenn.).

### Consumer and Product Liability

*Beringer v. Certegy Check Servs., Inc.*, No. 8:07-cv-1434-T-23TGW (M.D. Fla.) (data breach).

*CSS Inc. v. FiberNet, L.L.C.*, No. 07-C-401 (Cir. Ct. W. Va.) (telecommunications).

*Donovan v. Philip Morris USA, Inc.,* No. 06-12234 NG (D. Mass.) (medical monitoring).

*FIA Card Services, N.A. v. Camastro*, No. 09-C-233 (Cir. Ct. W. Va.) (credit card arbitration).

*Glazer v. Whirlpool Corp.*, No. 1:08-WP-65001 (N.D. Ohio)(defective product).

*Grays Harbor v. Carrier Corp.*, No. 05-CIV-21962 (W.D. Wash.) (defective product).

*In Re: Checking Account Overdraft Litig.*, MDL No. 2036 (S.D. Fla.) (JP Morgan, U.S. Bank, BOA settlements; overdraft fees).

*In Re: Enfamil LIPIL Mktg. & Sales Practs. Litig.*, No. 11-MD-02222 (S.D. Fla.) (false advertising).

*In re: M3Power Razor System Marketing & Sales Practs. Litig.*, MDL 1704 (D. Mass.) (false advertising).

*In re Netflix Privacy Litig.*, No. 5:11-cv-00379 (N.D. Cal.) (privacy).

*In re: Pharmaceutical Industry Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.) (pharmaceutical).

*In re: SCBA Liquidation, Inc., f/k/a Second Chance Body Armor, Inc.,* No. 04-12515 (Bankr. W.D. Mich.) (defective product).

*In re Vioxx Products Liability Litig.*, No. 05-md-01657 (E.D. La) (pharmaceutical).

*In re: Toyota Motor Corp. Unintended Acceleration Mktg, Sales Practs, & Prods Litig.,* No. 8:10ML2151 (C.D. Cal.) (unintended acceleration).

*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Mktg & Sales Practs. Litig.*, No. M:09-CV-2015 (N.D. Cal.) (negative amortization).

*Keilholtz v. Lennox Hearth Prods.*, No. 08-CV-00836 (N.D. Cal.) (defective product).

*Kramer v. B2Mobile, LLC*, No. 10-cv-02722 (N.D. Cal.) (TCPA).

*Lee v. Carter Reed Co., L.L.C.*, No. UNN-L-39690-04 (N.J. Super. Ct.) (false advertising).

*Palace v. DaimlerChrysler*, No. 01-CH-13168 (Cir. Ct. Ill.) (defective product).

*Rowe v. UniCare Life & Health Ins. Co.*, No. 09-cv-02286 (N.D. Ill.) (data breach).

*Spillman v. Domino's Pizza*, No. 10-349 (M.D. La.) (robo-call).

*Trammell v. Barbara's Bakery, Inc.*, No. 3:12-cv-02664 (N.D. Cal.) (false advertising).

*Wolph v. Acer*, No. 09-cv-01314 (N.D. Cal.) (false advertising).



### Environmental/Property

*Allen v. Monsanto Co.*, No. 041465 and *Carter v. Monsanto Co.*, No. 00-C-300 (Cir. Ct. W. Va.) (dioxin release).

*Angel v. U.S. Tire Recovery*, No. 06-C-855 (Cir. Ct. W.Va.) (tire fire).

*Ed Broome Inc. v. XTO Energy, Inc.,* No. 1:09-CV-147 (N.D. W. Va.) (oil & gas rights).

*Cather v. Seneca-Upshur Petroleum Inc.*, No. 1:09-cv-00139 (N.D. W. Va.) (oil & gas rights).

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL No. 2179 (E.D. La.) (BP oil spill).

*In Re Katrina Canal Breaches Litig.*, No. 05-4182 (E.D. La.) (Hurricanes Katrina and Rita).

*Jones v. Dominion Transmission Inc.*, No. 2.06-cv-00671 (S.D. W. Va.)  (oil & gas rights).

*Thomas v. A. Wilbert Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish) (vinyl chloride water contamination).

### Government

Countrywide Mortgage Settlement, Department of Justice.

Iovate Settlement, Federal Trade Commission.

*Cobell v. Salazar*, No. 1:96cv01285 (D. D.C.), Depts. of Interior and Treasury.

National Mortgage Settlement, Attorneys General.

Walgreens Settlement, Federal Trade Commission.

### Insurance

*Beasley v. Hartford Ins. Co. of the Midwest*, No. CV-2005-58-1 (Cir. Ct. Ark.) (homeowners insurance).

*Bond v. Am. Family Ins. Co.*, No. CV06-01249 (D. Ariz) (property insurance).

*Burgess v. Farmers Ins. Co.*, No. 2001-292 (Dist. Ct. Okla.) (homeowners insurance).

*Campbell v. First Am. Title Ins. Co.*, No. 2:08-cv-311-GZS (D. Me.) (title insurance).

*DesPortes v. ERJ Ins. Co.,* No. SU2004CV-3564 (Ga. Super. Ct.) (credit premium insurance).

*Fogel v. Farmers Group, Inc.*, No. BC300142 (Super. Ct. Cal.)(management exchange fees).

*Guidry v. Am. Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct.) (cancer insurance).

*Gunderson v. F.A. Richard & Associates, Inc.*, No. 2004-2417-D. (14th Jud. D. Ct. La.) (PPO).

*Johnson v. Progressive Casualty Ins., Co.*, No. CV-2003-513 (Cir. Ct. Ark.) (automobile insurance).

*McFadden v. Progressive Preferred*, No. 09CV002886 (Ct. C.P. Ohio) (UM/UIM).



*Orrill v. Louisiana Citizens Fair Plan*, No. 05-11720 (Civ. Dist. Ct., Orleans Parish) (Hurricane Katrina property insurance).

*Purdy v. MGA Ins. Co.*, No. D412-CV-2012-298 (4th Jud. Ct. N. Mex.) (UM/UIM).

*Press v. Louisiana Citizens Fair Plan Prop. Ins. Co.*, No. 06-5530 (Civ. Dist. Ct., Orleans Parish) (Hurricane Katrina property insurance).

*Shaffer v. Continental Casualty Co.*, No. 06-2235 (C.D. Cal.) (long term care insurance).

*Sherrill v. Progressive Northwestern Ins. Co.*, No. DV-03-220 (18th D. Ct. Mont.) (automotive premiums).

*Soto v. Progressive Mountain Ins. Co.*, No. 2002CV47 (Dist. Ct. Mont.) (personal injury insurance).

*Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark) (bodily injury claims).

### Securities

*In re Municipal Derivatives Antitrust Litig.*, MDL No. 1950 (S.D.N.Y.).

*In re Mutual Funds Investment Litig.*, MDL No. 1586 (Allianz Sub-Track, D. Md.).

### Canada

*Donnelly v. United Technologies Corp.*, No. 06-CV-320045 CP (Ont. S.C.J.) (defective product).

*Wener v. United Technologies Corp.*, 2008 QCCS 6605 (Québec) (defective product).

*Dolmage v. Province of Ontario*, No. CV-09-376927CP00 (Ont. S.C.J.) (personal injury).

*Clarke v. Province of Ontario*, No. CV-10-411911 (Ont. S.C.J.) (personal injury).

*Bechard v. Province of Ontario*, No. CV- 10-417343 (Ont. S.C.J.) (personal injury).

*Hall v. Gillette Canada Co.*, No. 47521CP (Ont. S.C.J.) (false advertising).

## Articles and Presentations

Shannon R. Wheatman, Webinar Speaker, *Crafting Class Settlement Notice Programs: Due Process, Reach, Claims Rates, and More*, Strafford Publications (Feb. 2014).

Shannon R. Wheatman, *Cutting Through the Clutter: Eight Tips for Creatively Engaging Class Members and Increasing Response*, CLASS ACTION LITIGATION REPORT, 15 CLASS 88 (Jan. 24, 2014).

Shannon Wheatman & Michelle Ghiselli, *Privacy Policies: How To Communicate Effectively with Consumers*, International Association of Privacy Professionals (2014).



Shannon R. Wheatman, Speaker, *Report on Model Jury Instructions in Civil Antitrust Cases, Presentation*, American Antitrust Institute's 7th Annual Private Antitrust Enforcement Conference, Washington, DC (Dec. 2013).

Shannon R. Wheatman, Speaker, Class Action Notice, Reach & Administration, CLE INTERNATIONAL'S 9TH ANNUAL CLASS ACTION CONFERENCE, Washington, DC (Oct. 2013).

Shannon R. Wheatman, *Ensuring Procedural Fairness Through Effective Notice, in* NATIONAL CONFERENCE ON CLASS ACTIONS:  RECENT DEVELOPMENTS IN QUÉBEC, IN CANADA AND IN THE UNITED STATES 83-99 (Yvon Blais ed., 2013).

Shannon R. Wheatman, Speaker, *Class Action Developments and Settlements*, 18th Annual Consumer Financial Services Institute, New York, New York (Apr. 2013).

Shannon R. Wheatman, Speaker, *Recent Trends in Class Actions in the United States*, National Conference on Class Actions:  Recent Developments in Québec, in Canada and in the United States, Montreal, Canada (Mar. 2013).

Shannon R. Wheatman, Speaker, *Report on Model Jury Instructions in Civil Antitrust Cases, Presentation*, American Antitrust Institute's 6th Annual Private Antitrust Enforcement Conference, Washington, DC (Dec. 2012).

Shannon R. Wheatman & Katherine M. Kinsella, *International Class Action Notice, in* WORLD CLASS ACTION: A GUIDE TO GROUP AND REPRESENTATIVE ACTIONS AROUND THE GLOBE 673-686 (Paul Karlsgodt ed., 2012).

Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration, in* PRIVATE ENFORCEMENT OF ANTITRUST LAW IN THE UNITED STATES: A HANDBOOK 338–348  (Albert A. Foer & Randy M. Stutz eds., 2012).

Shannon R. Wheatman, Webinar Speaker, *Class Action Notice Requirements:  Challenges for Plaintiffs and Defendants*, Strafford Publications (July 2012).

Shannon R. Wheatman, Webinar Speaker, *How to Craft Plain Language Privacy Notices*, Int'l Assoc. of Privacy Professionals (Oct. 2011).

Shannon R. Wheatman, Speaker, *Improving Take-Up Rates in Class Actions*, The Canadian Institute's 12th Annual National Forum on Class Actions, Ontario, Canada (Sept. 2011).



Shannon R. Wheatman & Terri R. LeClercq, *Majority of Publication Class Action Notices Fail to Satisfy Rule 23 Requirements*, 30 REV. LITIG. 53 (2011).

Shannon R. Wheatman & Terri R. LeClercq, *Majority of Publication Class Action Notices Fail to Satisfy Rule 23 Requirements*, CLASS ACTION LITIGATION REPORT, 12 CLASS 560, (June 24, 2011).

Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration*, *in* THE INTERNATIONAL PRIVATE ENFORCEMENT OF COMPETITION LAW 264–274   (Albert A. Foer & Jonathan W. Cuneo eds., 2010).

Shannon R. Wheatman, Speaker, *Majority of Publication Class Action Notices Fail to Satisfy Plain Language Requirements*, Clarity International Conference, Lisbon, Portugal (Oct. 2010).

Shannon R. Wheatman, Webinar Speaker, *Class Action Notification With Electronic Media: Emerging Legal Issues*, Stratford Publications (Sept. 2010).

Shannon R. Wheatman & Thomas E. Willging, *Does Attorney Choice of Forum in Class Action Litigation Really Make a Difference?* 17 CLASS ACTIONS & DERIVATIVES SUITS 1 (2007).

Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006).

Thomas E. Willging & Shannon R. Wheatman, *Attorney Choice of Forum in Class Action Litigation: What Difference Does it Make?* NOTRE DAME L. REV., 81 (2), 101, 161 (2006).

Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do you really want me to know my rights? The ethics behind due process in class action notice is more than just plain language: A desire to actually inform*. GEO. J. LEGAL ETHICS, 18 (4), 1359-1382 (2005).

Thomas E. Willging & Shannon R. Wheatman, *An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation*. FEDERAL JUDICIAL CENTER (2005).

Elizabeth C. Wiggins & Shannon R. Wheatman, *So what's a concerned psychologist to do? Translating the research on interrogations, confessions, and entrapment into policy*, *in* INTERROGATIONS, CONFESSIONS AND ENTRAPMENT 265–280 (G. Daniel Lassiter ed., 2004).

Thomas E. Willging & Shannon R. Wheatman, *Attorneys' Experiences and Perceptions of Class Action Litigation in Federal and State Courts. A Report to the Advisory Committee on Civil Rules Regarding a*



*Case Based Survey*.  FEDERAL JUDICIAL CENTER (2003).

Shannon R. Wheatman, *Survey of Bankruptcy Judges on Effectiveness of Case-Weights*.  FEDERAL JUDICIAL CENTER (2003).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Judicial Evaluation of Bankruptcy Judges*.  FEDERAL JUDICIAL CENTER (2003).

Robert Niemic, Thomas Willging, & Shannon Wheatman, *Effects of Amchem/Ortiz on Filing of Federal Class Actions: Report to the Advisory Committee on Civil Rules*. FEDERAL JUDICIAL CENTER (2002).

Shannon Wheatman, Robert Niemic & Thomas Willging, *Report to the Advisory Committee on Civil Rules: Class Action Notices*.  FEDERAL JUDICIAL CENTER (2002).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Implementation of Selected Amendments to Federal Rule of Civil Procedure 26 by United States Bankruptcy Courts*.  FEDERAL JUDICIAL CENTER (2001).

Shannon R. Wheatman & David R. Shaffer, *On finding for defendants who plead insanity: The crucial impact of dispositional instructions and opportunity to deliberate*. LAW & HUM. BEH., 25(2), 165, 181(2001).

Shannon R. Wheatman, *Distance Learning in the Courts*. FEDERAL JUDICIAL CENTER (2000).

David R. Shaffer & Shannon R. Wheatman, *Does personality influence the effectiveness of judicial instructions?*  PSYCHOL. PUB. POL'Y & L., 6, 655, 676 (2000).

## Court Testimony

*Scharfstein v. BP West Coast Products, LLC.*, No. 1112-17046 (Cir. Ct. Ore.).

*Spillman v. Domino's Pizza*, No. 10-349 (M.D. La.)

*PRC Holdings LLC v. East Resources, Inc.*, No. 06-C-81 (Cir. Ct. W. Va.).

*Guidry v. American Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct., Calcasieu Parish).

*Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark).

*Beasley v. The Reliable Life Insurance Co.*, No. CV-2005-58-1 (Cir. Ct. Ark).

## Depositions

*Hale v. CNX Gas Company, LLC*, No. 10-CV-59 (W.D. Va.).



*Thomas v. A. Wilbert Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish).

## Judicial Comments

*Trammell v. Barbara's Bakery, Inc.*, No. 3:12-cv-02664 (N.D. Cal.)

"The Class Notice, the Summary Settlement Notice, the website, the toll-free telephone number, all other notices in the Settlement Agreement, the Declaration of the Notice Administrator, and the notice methodology implemented pursuant to the Settlement Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the settlement, and their rights under the settlement, including, but not limited to, their right to object to or exclude themselves from the proposed settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 28 U.S.C. §1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices." – Hon. Charles R. Breyer (2013).

*Spillman v. Dominos Pizza, LLC.*, No. 10-349 (M.D. La.)

"At the fairness hearing notice expert Wheatman gave extensive testimony about the design and drafting of the notice plan and its implementation, the primary goal of which was to satisfy due process under the applicable legal standards...Wheatman, who has extensive experience developing plain-language jury instructions, class action notices and rules of procedure, testified that the notice was composed at a ninth grade reading level because many adults read below a high school level." – Hon. Stephen C. Riedlinger (2013).

*In Re: Metoprolol Succinate End-Payor Antitrust Litig.*, No. 06-cv-71 (D. Del.)

"In accordance with the Preliminary Approval Order, notice of the proposed Settlement and Plan of Allocation has been provided to the Class in the manner directed by the Court. See Wheatman Dec. Such notice to members of the Class is hereby determined to be fully in compliance with requirements of Fed. R. Civ. P. 23(e) and due process of law and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all persons and entities entitled thereto." – Hon. Mary Pat Thynge (2013).

*PRC Holdings, LLC v. East Resources, Inc.,* No. 06-C-81(E) (W.Va. Cir. Ct., Roane County).

"Notice was uniquely effective in this action because East's records of their leases allowed the Claims Administrator to provide individual notice by mail to most Class Members." - Hon. Thomas C. Evans,



III (2012).

*Kramer v. B2Mobile, LLC*, No. 10-cv-02722 (N.D. Cal.).
"The Court approved Notice Plan to the Settlement Classes . . . was the best notice practicable under the circumstances, including comprehensive nationwide newspaper and magazine publication, website publication, and extensive online advertising. The Notice Plan has been successfully implemented and satisfies the requirements of Federal Rule of Civil Procedure 23 and Due Process." - Hon. Claudia A. Wilken (2012).

*Cather v. Seneca-Upshur Petroleum, Inc.,* No. 1:09-CV-00139 (N.D. W. Va.).
"The Court finds that Class Members have been accorded the best notice as is practical under the circumstances, and have had the opportunity to receive and/or access information relating to this Settlement by reading the comprehensive written notice mailed to them . . . or by reading the published Notice in the local newspapers . . . The Court further finds that the Notice provided to the members of the Settlement Class had been effective and has afforded such class members a reasonable opportunity to be heard at the Final Fairness Hearing and to opt-out of the subject settlement should anyone so desire." – Hon. Irene M. Keeley (2012).

*In re: Checking Account Overdraft Fee Litig.*, No. 1:09-md-2036-JLK (S.D. Fla.)   (JP Morgan Settlement)
"The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15). This Settlement with Chase was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so." - Hon. James Lawrence King (2012).

*In re Netflix Privacy Litig.*, No. 5:11-cv-00379 (N.D. Cal.)
"The Notice Plan and the intent of the forms of Notice to the Settlement Class as set forth in the Settlement Agreement and Exhibits B through E to the Wheatman Declaration are approved pursuant to subsections (c)(2)(B) and (ed) of Federal Rule of Civil Procedure 23." - Hon. Edward J. Davila (2012)

*Purdy v. MGA Ins. Co.,* No. D412-CV-2012-298 (N.M. 4th Jud. Dist. Ct.)
"Notice of the Settlement Class was constitutionally adequate, both in terms of it substance and the manner in which it was disseminated.  The Notice contained the essential elements necessary to satisfy due process . . . [T]he Notice also contained a clear and concise Claim Form, and a described a clear deadline and procedure for filing of Claims.  Notice was directly mailed to all Class Members whose current whereabouts could be identified by reasonable effort.  Notice reached a large majority of the



Class Members. The Court finds that such notice constitutes the best notice practicable." – Hon. Eugenio Mathis (2012).

*Blessing v. Sirius XM Radio Inc*., No 09-CV-10035 HB (S.D.N.Y.).
 "The Court finds that the distribution of the Notice and the publication of the Publication Notice . . . constituted the best notice reasonably practicable under the circumstances . . . was reasonably calculated . . . constituted due, adequate, and sufficient notice to all Class members who could be identified with reasonable efforts; and . . . satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, R 23.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, and all other applicable law and rules." - Honorable Harold Baer, Jr. (2011).

*Fogel v. Farmers Group, Inc.*, No. BC300142 (Super. Ct. Cal.).
"The Court further finds and confirms that the Individual Notice (including the Proof of Claim), the Summary Notice, the reminder postcard, and the notice methodology: (a) constituted the best practicable notice . . . ; (b) constituted noticed that was reasonably calculated under the circumstances to apprise potential Class Members . . .; (c) were reasonable and constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice, and (d) met all applicable requirements of California law . . . ." - Hon. Laura Evans (2011).

*In Re: Enfamil LIPIL Mktg. & Sales Practs. Litig.*, No. 11-MD-02222 (S.D. Fla.)
"The Court finds that the Class Notice provided to Class Members, in the form and manner of distribution described above, constitutes the best notice practicable under the circumstances, and fully satisfies the requirements of Federal Rules of Civil Procedure, Rule 23, the requirements of due process, and any other applicable law. The declarations filed with the Court demonstrate that the Parties have fully complied with the Court's Preliminary Approval Order (as amended by Order dated April 1, 201 1) and that the best notice practicable under the circumstances was in fact given to Class Members." - Hon. James I. Cohn (2011).

*Keilholtz v. Lennox Hearth Prods.*, No. 08-CV-00836 (N.D. Cal.)
"Notice has been provided to the Settlement Class of the pendency of the Actions, the conditional certification of the Settlement Class for purposes of this Settlement, and the preliminary approval of the Settlement Agreement and the Settlement contemplated thereby. The Court finds that said notice and the related Notice Plan provided for the best notice practicable under the circumstances to all Persons entitled to such notice and fully satisfied the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure and the requirements of due process." - Hon. Claudia Wilken (2011).



*Rowe v. UniCare Life and Health Ins. Co.*, No. 09-CV-02286 (N.D.Ill.)
"The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process." – Hon. William J. Hibbler (2011).

*Thomas v. A. Wilbert & Sons, LLC*, 55,127 (La. 18th Jud. Dist. Ct., Iberville Parish).
"[N]otices complied with all requirements of the federal and state constitutions, including the due process clauses, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Thomas Subclass." – Hon. Jerome M. Winsberg (2011).

*In re: M3Power Razor System Mktg. & Sales Pract. Litig.*, MDL 1704 (D. Mass).
"The form, content, and method of dissemination of the notice given to the Settlement Class was adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Amended Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process." - Hon. Douglas P. Woodlock (2011).

*Soto v. Progressive Mountain Ins. Co*., No. 2002CV47 (Dist. Ct. Colo.).
"Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The Notice contained the essential elements necessary to satisfy due process . . . Finally, the Notice also contained a clear and concise Claim Form, and described a clear deadline and procedure for filing of claims. . . . Notice reached a large majority of the Class Members. The Court finds that such notice constitutes the best notice practicable." - Hon. J. Steven Patrick (2010).

*Press v. Louisiana Citizens Fair Plan Prop. Ins. Co.*, No. 06-5530 (Civ. Dist. Ct., Orleans Parish).
"This notice methodology . . . constitutes reasonable and best practicable notice . . . constitutes due, adequate and sufficient notice to all persons entitled to receive notice; and . . . meets the requirements of the United States Constitution, Louisiana law, the Federal Rules of Civil Procedure and any other applicable rules of the Court . . ." - Hon. Sidney H. Cates, IV (2010).

*In Re Katrina Canal Breaches*, No. 05-4182 (E.D. La.).
"The notice here was crafted by Shannon Wheatman, Ph.D., whose affidavit was received as evidence . . . . The entire notice was drafted in plain, comprehensible language . . . The Court finds this notice



adequately reached the potential class." - Hon. Stanwood R. DuVal, Jr. (2009).

*Jones v. Dominion Transmission Inc.*, No. 2.06-cv-00671 (S.D. W. Va.)

"The Parties' notice expert Shannon R. Wheatman, Ph.D. . . testified that in this case . . . that the mailed notices reached approximately 95.4 percent of the potential class . . . I HOLD that personal jurisdiction exists over the Class Members because notice was reasonable and afforded the Settlement Class an opportunity to be heard and to opt out." - Hon. Joseph R. Goodwin (2009).

*Guidry v. American Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct.).

"The facts show that the notice plan . . . as adequate to design and implementation . . . Dr. Shannon R. Wheatman, a notice expert, also testified at the fairness hearing as to the sufficiency of the notice plan. Dr. Wheatman testified that the notice form, content, and dissemination was adequate and reasonable, and was the best notice practicable." - Hon. G. Michael Canaday (2008).

*Webb v. Liberty Mutual Ins. Co.*, (March 3, 2008) No. CV-2007-418-3 (Cir. Ct. Ark).

"Ms. Wheatman's presentation today was very concise and straight to the point . . . that's the way the notices were . . . So, I appreciate that . . . Having admitted and reviewed the Affidavit of Shannon Wheatman and her testimony concerning the success of the notice campaign, including the fact that written notice reached 92.5% of the potential Class members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class members who had an earlier opportunity to request exclusion but failed to do so . . . The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members." - Hon. Kirk D. Johnson (2008).

*Sherrill v. Progressive Northwestern Ins. Co.*, No. DV-03-220 (18th D. Ct. Mont.).

"Dr. Wheatman's affidavit was very informative, and very educational, and very complete and thorough about the process that was undertaken here. . .  So I have reviewed all of these documents and the affidavit of Dr. Wheatman and based upon the information that is provided . . . and the significant number of persons who are contacted here, 90 percent, the Court will issue the order." - Hon. Mike Salvagni (2008).

*Shaffer v. Continental Casualty Co.*, No. 06-2235 (C.D. Cal.).

"The Class Notice and the notice methodology implemented pursuant to the Settlement Agreement, as described in part in the Declarations of . . . Shannon Wheatman . . . constituted the best practicable notice. . . was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law." - Hon. Philip S. Gutierrez (2008).



*Gray's Harbor v. Carrier Corp.*, No. 05-05437(W.D. Wash.).
"The Court finds that this notice was the best notice practicable under the circumstances, that it provided due and adequate notice of the proceedings and of the matters set forth therein, and that it fully satisfied all applicable requirements of law and due process." - Hon. Ronald B. Leighton (2008).

*Beringer v. Certegy Check Servs., Inc.*, No. 8.07-cv-1434-T-23TGW (M.D. Fla.).
"The proposed form of notice and plan for publishing are reasonable and designed to advise members of the Settlement class of their rights . . . A nationally recognized notice specialist, Hilsoft Notifications, has developed the comprehensive Notice Plan. Here, Notice is reasonably calculated to reach the maximum number of potential Settlement Class Members and, thus, qualifies as the best notice practicable. The Notice Plan here is designed to reach the maximum number of Class Members, and it is Plaintiffs' goal to reach at least 80% of the Class—an extraordinary result in consumer class action litigation." - Hon. Steven D. Merryday (2008).

*Palace v. DaimlerChrysler Corp.*, No. 01-CH-13168 (Cir. Ct. Ill.).
"The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings, to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process . . ." – Hon. Mary Anne Mason (2008).

*Johnson v. Progressive Casualty Ins., Co.*, No. CV-2003-513 (Cir. Ct. Ark.).
"Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated . . . Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice reached a large majority of the Class members. The Court finds that such notice constitutes the best notice practicable . . . The forms of Notice and Notice Plan satisfy all of the requirements of Arkansas law and due process." - Hon. Carol Crafton Anthony (2007).

*Beasley v. The Reliable Life Insurance Co.*, No. CV-2005-58-1 (Cir. Ct. Ark).
"[T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process. They are fair, reasonable, and adequate. I think the method of notification certainly meets the requirements of due process . . . So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter." - Hon. Joe Griffin (2007).



## Education and Experience

*Education*

Ph.D., Social Psychology, 2001; The University of Georgia, Athens, GA
Dissertation Title: *The effects of plain language drafting on layperson's comprehension of class action notices.*

M.S., Social Psychology, 1999; The University of Georgia, Athens, GA
Thesis Title: *Effects of verdict choice, dispositional instructions, opportunity to deliberate, and locus of control on juror decisions in an insanity case.*

M.L.S., Legal Studies, 1996; The University of Nebraska-Lincoln, Lincoln, NE

B.A., Psychology, 1993; Millersville University of Pennsylvania, Millersville, PA
Honor's Thesis Title: *The effects of inadmissible evidence and judicial admonishment in individual versus group decisions in a mock jury simulation.*

*Related Experience*

Hilsoft Notifications
Souderton, PA
2004-2009

Dr. Wheatman was the Vice President (2006-2009) and Notice Director (2004-2009) at Hilsoft Notifications, a legal notification firm.

Federal Judicial Center
Washington, DC
2000-2004

Dr. Wheatman was a Research Associate at the Federal Judicial Center.  The Federal Judicial Center is the education and research agency for the Federal Courts. The Research Division performs empirical and explanatory research on federal judicial processes and court management. Dr. Wheatman worked with the Civil Rules Advisory Committee on a number of class action studies and with the Bankruptcy Administration Committee on judicial evaluations.



*Supplementary Background*

Dr. Wheatman has a strong statistical background, having completed nine graduate level courses as well as teaching undergraduate statistics at the University of Georgia.  She is also a member of several plain language organizations, including the Center for Plain Language, Clarity, and Scribes.

