## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SHANE GROUP, INC. *et al.*, <br><br> Plaintiffs, on behalf of themselves and all others similarly situated <br><br> vs. <br><br> BLUE CROSS BLUE SHIELD OF MICHIGAN, <br><br> Defendant. | Civil Action No. 2:10-cv-14360-DPH-MKM <br><br><br> Judge Denise Page Hood <br> Magistrate Judge Mona K. Majzoub |

## CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PAYMENT OF INCENTIVE AWARDS TO CLASS REPRESENTATIVES

For the reasons set forth in the attached Brief in Support of this Motion, Class

Counsel for the Settlement Class and Counsel for Plaintiffs The Shane Group, Inc.,

Bradley A. Veneberg, Michigan Regional Council of Carpenters Employee Benefits Fund,

Abatement Workers National Health and Welfare Fund, Monroe Plumbers & Pipefitter

Local 671 Welfare Fund, Scott Steele, Anne Patrice Noah, and Susan Baynard

("Plaintiffs"), submit this Motion for Award of Attorneys' Fees, Reimbursement of

Expenses, and Payment of Incentive Awards to Class Representatives.


Dated:  July 24, 2014

                                                Respectfully submitted,

                                                /s/ Daniel E. Gustafson
                                                Daniel E. Gustafson
                                                Daniel C. Hedlund
                                                **GUSTAFSON GLUEK PLLC**
                                                Canadian Pacific Plaza
                                                120 South Sixth Street, Suite 2600
                                                Minneapolis, MN 55402
                                                Telephone:  (612) 333-8844
                                                dgustafson@gustafsongluek.com
                                                dhedlund@gustafsongluek.com

                                                Daniel A. Small
                                                Brent W. Johnson
                                                Jeffrey B. Dubner
                                                **COHEN MILSTEIN SELLERS
                                                & TOLL PLLC**
                                                1100 New York Avenue, NW, Suite 500
                                                Washington, DC 20005
                                                Telephone: (202) 408-4600
                                                dsmall@cohenmilstein.com
                                                bjohnson@cohenmilstein.com
                                                jdubner@cohenmilstein.com

E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan  48307
Telephone: (248) 841-2200
epm@millerlawpc.com

Fred T. Isquith
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
270 Madison Avenue
New York, New York, 10016
Telephone: (212) 545-4690
isquith@whafh.com

Theodore B. Bell
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Telephone: (312) 984-0000
tbell@whafh.com

*Interim Class Counsel*

David H. Fink (P28235)
Darryl Bressack (P67820)
**FINK + ASSOCIATES LAW**
100 West Long Lake Rd, Suite 111
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkandassociateslaw.com

*Interim Liaison Counsel*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| THE SHANE GROUP, INC. *et al.*, | |
| Plaintiffs, on behalf of themselves and all others similarly situated | Civil Action No. 2:10-cv-14360-DPH-MKM |
| vs. | |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, Defendant. | Judge Denise Page Hood Magistrate Judge Mona K. Majzoub |

**<u>BRIEF IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PAYMENT OF
INCENTIVE AWARDS TO CLASS REPRESENTATIVES</u>**

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Should the Court grant Class Counsel's request for award of attorneys' fees?

   Class Counsel's answer: Yes.

2. Should the Court grant Class Counsel's request for reimbursement of expenses?

   Class Counsel's answer: Yes.

3. Should the Court grant Class Counsel's request for incentive awards to the class representatives?

   Class Counsel's answer: Yes.

## CONTROLLING OR APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

### Federal Authority

*Blum v. Stenson*
      465 U.S. 886 (1984)

*Boeing Co. v. Van Gemert*
      444 U.S. 472 (1980)

*In re Cardizem CD Antitrust Litig.*
      218 F.R.D. 508 (E.D. Mich. 2003)

*Hensley v. Eckerhart*
      461 U.S. 424 (1983)

*Moulton v. U.S. Steel Corp.*
      581 F.3d 344 (6th Cir. 2009)

*Rawlings v. Prudential-Bach Props., Inc.*
      9 F.3d 513 (6th Cir. 1993)

*Trs. v. Greenough*
      105 U.S. 527 (1881)

Fed. R. Civ. P. 23

I.      **INTRODUCTION**

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2) and the Court's
June 26, 2014, Order Granting Preliminary Approval to Proposed Class Settlement, Class
Counsel respectfully submit this brief in support of their request for an award of attorney
fees of one-third of the Settlement Fund, or $9,996,667 plus interest, and their litigation
expenses of $3,499,893.02.  The substantial recovery in this case, $29.99 million, was
secured only through the focused and diligent advocacy and substantial investment of
Plaintiffs' Counsel.  Plaintiffs' Counsel have worked on behalf of Plaintiffs and the class
for almost six years without compensation of any kind, and with the understanding that
their fee would be entirely contingent upon the result they achieved for Plaintiffs and the
class.

The requested fee is well within the range awarded in similar complex antitrust
class actions.  The amount requested is especially warranted in light of the substantial
recovery secured for the Settlement Class, the efforts of Plaintiffs' Counsel in obtaining
this result, and the significant risks in bringing and pursuing the litigation.  Absent this
settlement, there was a significant risk that the Settlement Class would ultimately recover
a lesser sum, or nothing at all.  The litigation could have continued for years through
appeals, which would have resulted in compounding expense, all the while risking the
potential of no recovery for the Settlement Class.

As with other complex antitrust class actions, the prosecution and settlement of
this litigation required great skill and extensive efforts by Plaintiffs' Counsel.  This
settlement was only achieved after significant efforts in prosecuting this action, including,

1

but not limited to: (1) extensive work preparing the initial Complaints and the subsequent

Consolidated Amended Complaint; (2) briefing and prevailing against Defendant's

Motion to Dismiss; (3) extensive consultation and analysis with experts on antitrust

issues; (4) participating in over 150 depositions; (5) briefing Plaintiffs' Motion for Class

Certification; and (6) exhaustive, extensive, and protracted hard-fought settlement

negotiations.

As discussed in greater detail in Plaintiffs' Motion for Preliminary Approval of

Settlement, continued litigation posed considerable risks.  In the absence of a settlement,

Defendant would continue to deny any wrongdoing or any harm from its challenged

conduct and, at trial, offer testimony and expert analysis to support its contentions.  Jury

trials impose an inherent degree of uncertainty regarding the outcome of any case.  Class

Counsel believe that this settlement reflects an excellent outcome for the Settlement Class

and is the result of creative and diligent efforts.  In light of these factors, the percentage

fee award requested is fair and reasonable.

In accordance with the Court's preliminary approval order, Class Counsel retained

Epiq Systems and Kinsella Media to provide notice to the Settlement Class.  Also in

accordance with this Order, the Notice will inform the Settlement Class that Class

Counsel will make an application for attorneys' fees not to exceed one-third of the

Settlement Fund, reimbursement of litigation expenses of approximately $3.5 million,

plus settlement expenses, and incentive awards for the named Plaintiffs.

For the reasons set forth herein, Class Counsel respectfully submit that the

attorney fees and expenses requested are fair and reasonable under the applicable legal

2

standards and in light of the contingent risk undertaken, the diligent efforts of counsel, and the substantial monetary benefits obtained.  This settlement, and the attendant benefits to the Settlement Class, would not have been possible without the considerable contributions of the named Plaintiffs.  Thus, Class Counsel respectfully request that the Court award such fees and expenses to Plaintiffs' Counsel, and grant incentive awards to the class representatives.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In late 2010, multiple plaintiffs commenced suit against Blue Cross Blue Shield of Michigan ("BCBSM," "Blue Cross," or "Defendant").  On May 29, 2012, the Court appointed Cohen Milstein Sellers & Toll PLLC, Gustafson Gluek PLLC, The Miller Law Firm, P.C., and Wolf Haldenstein Adler Freeman & Herz LLC as Interim Class Counsel pursuant to Federal Rule of Civil Procedure 23(g).  Dkt. No. 69.

Plaintiffs filed a Consolidated Amended Complaint ("CAC") on June 12, 2012. Dkt. No. 72.  In the CAC, Plaintiffs allege that, beginning in the mid-2000s, Blue Cross harmed its rivals' ability to compete in the Michigan health insurance market by inserting MFN provisions in many of its contracts with Michigan General Acute Care Hospitals. CAC ¶¶ 2–4.  The CAC alleges that this was designed to entrench Blue Cross's dominant position in Michigan by raising its rivals' costs of providing health insurance.  *Id.* ¶ 4. The CAC further alleges that the higher hospital charges resulting from the MFN provisions not only raised rivals' costs, but also inflated the charges paid by the other purchasers of hospital care; namely, individual insureds and self-insured entities who, along with Blue Cross's rivals, comprise the Settlement Class.  Plaintiffs brought their

3

claims under Section 1 of the Sherman Act and Section 2 of the Michigan Antitrust

Reform Act.  On July 20, 2012, Blue Cross filed a Motion to Dismiss the CAC.  Dkt. No.

80.  Plaintiffs opposed this motion, and the Court denied the motion on November 30,

2012.  Dkt. No. 102.

The parties engaged in extensive fact discovery, in coordination with the discovery

occurring in the parallel cases brought against Blue Cross by the United States and the

State of Michigan[1] and by Aetna.[2]  This included the exchange of millions of pages of

documents with Blue Cross, procuring millions of pages of documents from third parties,

and responding to voluminous interrogatories.  In addition to documents, the amount of

data produced and analyzed in this case—data reflecting payment terms and numerous

other relevant factors for the large majority of healthcare procedures occurring in

Michigan General Acute Care Hospitals over a period of about seven years—was

voluminous even in the context of complex antitrust litigation.  Aside from written

discovery and data analysis, Plaintiffs' Counsel also participated in 169 depositions,

including many of third-party insurers and hospitals that took place all across, and even

outside, the State of Michigan.

On October 21, 2013, Plaintiffs filed their Motion for Class Certification,

supported by the expert report of economist Dr. Jeffrey J. Leitzinger.  Dkt. No. 133.

Defendant filed its opposition to Plaintiffs' motion on February 3, 2014, citing as support,

---

[1] *United States v. Blue Cross Blue Shield of Mich.*, No. 10-cv-14155 (E.D. Mich.).
[2] *Aetna Inc. v. Blue Cross Blue Shield of Mich.*, No. 11-cv-15346 (E.D. Mich.).

4

*inter alia*, the expert report of economist Dr. David S. Sibley.  Dkt. No. 139.  Blue Cross deposed Dr. Leitzinger, and Plaintiffs' Counsel deposed Dr. Sibley.

Plaintiffs and Blue Cross conducted settlement negotiations on and off for over a year, with discussions intensifying in March 2014.  Later that month, the parties reached an agreement in principle and the parties informed the Court of this agreement.  The Court entered an Order Adjourning All Deadlines on March 27, 2014.  Dkt. No. 146. Finally, after further prolonged and difficult negotiations, the parties finalized a written settlement agreement on June 23, 2014.  Under the terms of the Settlement, Blue Cross will deposit $29.99 million in a Settlement Fund for the benefit of the Settlement Class. Once the Settlement Agreement becomes final, Blue Cross will be released from all claims by Settlement Class Members who do not opt out "arising out of or in any way relating to [Blue Cross's] Most Favored Nation Clauses, or any matter or event occurring up to the execution of this Agreement arising out of the dispute which is the subject of this action."  Settlement Agreement ¶¶ 58-59, Dkt. No. 148-1.

On June 23, 2014, Plaintiffs moved the Court for preliminary approval of the settlement, certification of the Settlement Class, approval of the notice plan, appointment of Class Counsel, and joinder of Anne Patrice Noah and Susan Baynard as additional named plaintiffs and class representatives.  (Plaintiffs' previous motion to add Noah and Baynard as class representatives had not yet been ruled upon by the Court.  Dkt. No. 148.)  The Court granted Plaintiffs' Motion on June 26, 2014.  Dkt. No. 151.

III.    **ARGUMENT**

A.    **Plaintiffs' Counsel Should Be Awarded a Fee from the Settlement Fund**

The Supreme Court has long recognized the "common fund" exception to the general rule that a litigant bears his or her own attorneys' fees. *Trs. v. Greenough*, 105 U.S. 527, 532–33 (1881). The rationale for the common fund principle was explained in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), as follows:

> [T]his Court has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionally among those benefitted by the suit.

The common fund doctrine both prevents unjust enrichment and encourages counsel to protect the rights of those who have relatively small claims. Federal courts, therefore, have long recognized that fee awards in successful cases promote private enforcement of, and compliance with, important areas of federal and state law, including the federal antitrust laws.

In complex antitrust class actions such as this, where there are numerous purchasers of products with allegedly inflated prices, competent counsel for plaintiffs are frequently retained on a contingent basis. If fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the risks undertaken, and the delay before any compensation is received, a large segment of the public would be denied a remedy for antitrust violations.

6

**1.    The Court Should Award Attorney Fees Using the Percentage of the Fund Approach**

Plaintiffs' Counsel's long and extensive efforts have resulted in the creation of a Settlement Fund of $29.99 million.  Courts generally favor awarding fees from a common fund based upon the percentage-of-the-fund method.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165–66 (1939); *Greenough*, 105 U.S. at 532.

In the Sixth Circuit, there has been a clear "trend towards adoption of a percentage of the fund method in [common fund] cases." *Rawlings v. Prudential-Bach Props., Inc.*, 9 F.3d 513, 515 (6th Cir. 1993).  This trend holds true for courts in this District, which almost universally utilize the percentage-of-the-fund approach in common fund cases. *See, e.g., In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *17 (E.D. Mich. Dec. 13, 2011) (stating that the Sixth Circuit has recognized numerous advantages of the percentage of the fund method); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531–32 (E.D. Mich. 2003).

A percentage of the fund approach fosters judicial economy by eliminating a detailed and time-consuming lodestar analysis. *Rawlings*, 9 F.3d at 516–17.  This is an important feature because "the lodestar method is too cumbersome and time-consuming for the resources of the Court." *In re Cardizem CD*, 218 F.R.D. at 532 (quoting *In re F & M Distribs., Inc. Sec. Litig.*, No. 95-CV-71778, 1999 U.S. Dist. LEXIS 11090, at *8 (E.D. Mich. 1999)).  The lodestar approach burdens a court with the task of reviewing

extensive time records over the course of numerous years, reflecting thousands of hours of attorney time. *Rawlings*, 9 F.3d at 516–17. On the other hand, the percentage of the fund approach is "easy to calculate" and it "establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery." *Id.* at 516. More importantly, "the percentage of the fund method more accurately reflects the results achieved." *Id.*

### 2. The Requested Percentage Is Appropriate When Compared to the Range of Percentage-of-Fund Awards

The Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). If this were a private contingent non-class matter, the customary fee arrangement would be a percentage in the range of 33.33% to 40% of the recovery. *See Blum*, 465 U.S. at 902 n.19 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."). Here, Class Counsel's request of one-third of the Settlement Fund for fees is at the low end of the customary private contingent fee arrangement.

Moreover, one-third is well within the range of common fund percentage awards made by courts in this District. *See Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2012 WL 424878, at *12 (E.D. Mich. May 20, 2013) (preliminarily approving attorneys' fees of one-third of the settlement amount); *In re Packaged Ice*, 2011 WL 6209188, at *19 (noting that an award of "close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions").

8

A one-third award is also consistent with awards generally provided in other antitrust class actions.  *See, e.g., In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 WL 2155387, at *9 (E.D. Tenn. May 17, 2013) (awarding 33.33% of $158 million settlement); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB, 2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) (awarding fee of 33.33% of $18.5 million settlement fund); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, at *1 (E.D. PA. Jan. 3, 2008) (awarding 32% of $66 million settlement with three of five defendants, and awarding an additional 1/3 of a $39 million settlement with the remaining two defendants); *In re Remeron Direct Purchaser Antitrust Litig.*, No. CIV. 03-0085, 2005 WL 3008808, at *15 (D.N.J. Nov. 9, 2005) (noting that a 1/3 fee has been "typical" in common fund litigation); *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *1 (E.D. Pa. June 4, 2004) (awarding 30% of a $203 million settlement).[3]

### 3.   Consideration of the Relevant Factors Justifies an Award of One-Third in this Case

Courts in the Sixth Circuit evaluate the reasonableness of a requested fee percentage award using six factors: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

---

[3] Courts in this District also generally award a fee as a percentage of the gross settlement amount before litigation expenses and settlement administration expenses are deducted.  *See In re Packaged Ice*, 2011 WL 6209188, at *17; *In re Cardizem CD*, 218 F.R.D. at 531–35.

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 533.  A court is tasked with ensuring that counsel are fairly compensated for the work performed and the result achieved. *Rawlings*, 9 F.3d at 516.

As discussed below, consideration of these factors demonstrates that a one-third fee award is fair, reasonable, and justified in this case.

### a.      The Value of the Benefit Achieved

Class Counsel have secured a settlement that provides for a substantial and certain cash payment of $29.99 million for the benefit of the Settlement Class Members.  Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that the "most critical factor is the degree of success obtained"); *Rawlings*, 9 F.3d at 516 (stating that a percentage of the fund will compensate counsel for the result achieved); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

Here, the $29.99 million Settlement Fund represents an excellent result for the Settlement Class.  This recovery represents over 25% of the overcharges that Plaintiffs' expert preliminarily estimated had been paid by members of the litigation class that Plaintiffs sought to certify  *See* Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Certification of Settlement Class, and Related Relief at 9, Dkt. No. 148.  This recovery compares favorably to other class action antitrust settlements.  *See, e.g.*, *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 U.S. Dist. LEXIS 10532, at *15 (E.D. Pa. June 2, 2004) (collecting cases in which courts have approved settlements of 5.35% to 28% of estimated damages in complex antitrust

10

actions).  As a result of this settlement, the Settlement Class Members will receive compensation for a portion of their losses and avoid the very real risk of no recovery posed by the absence of a settlement.  This is a significant recovery for the Settlement Class and represents a tremendous value to Settlement Class Members.

### b. The Risks of Litigation and the Contingent nature of the Fee

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, Economic Analysis of Law §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

Plaintiff's Counsel prosecuted this action on a wholly contingent basis.  There have been and will always be numerous contingent fee cases where plaintiffs' counsel receive no compensation, even after the expenditure of thousands of hours of work. Plaintiffs' Counsel are well aware that for any number of reasons, including the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, this and similar complex antitrust cases can result in no fee.  Even plaintiffs who prevail at trial may find their judgment overturned on appeal.

11

In the present case, Plaintiffs' Counsel overcame numerous difficulties, always assuming the risk of receiving no payment for their efforts. Moreover, as with any antitrust case, prosecution of this matter involved complex issues that necessitated significant and costly expert consultation. Plaintiffs' Counsel undertook these expert expenses, and the substantial expenses necessitated by a very large discovery program, with the risk that there may never be a recovery from which to recoup these expenses. Given the nature of the contingent fee arrangement and the high risk this case presented, a one-third fee is reasonable.

c. <strong>Public Policy Considerations</strong>

Except for the largest of purchasers, class members in complex antitrust class actions are invariably represented by class counsel who are retained on a contingent basis, largely due to the significant commitment of time and expense required. The typical class representative is unlikely to be able to pursue long and protracted litigation at his or her own expense, particularly with the knowledge that others similarly situated will be able to "free-ride" on these efforts at no cost or risk to themselves. This is especially true where, as here, the claims are extremely complex, requiring expert testimony, and where the amount of individual damages may be far less than the investment of time and expense required to prosecute the action. The significant expenses, combined with the high degree of uncertainty of ultimate success, make contingent fees a virtual necessity for such cases.

Compensation in an amount appropriate to encourage attorneys to assume the risk of litigation is in the public interest. Without adequate compensation for plaintiffs'

12

counsel, victims of antitrust violations would be essentially precluded from vindicating their rights. Thus, "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others" is an important factor. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996); *Smillie*, 710 F.2d at 275. "Society's stake in rewarding attorneys who can produce such benefits in complex litigation such as in the case at bar counsels in favor of a generous fee . . . ." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 534 (quoting *F & M Distribs., Inc. Sec. Litig.*, No. 95-CV-71778, 1999 U.S. Dist. LEXIS 11090, at *18 (E.D. Mich. 1999)). "Society also benefits from the prosecution and settlement of private antitrust litigation." *Id.* "Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this case benefits society." *Id.* Without the willingness of Plaintiffs' Counsel to assume the risks inherent in this case (or in other cases of similar magnitude and complexity), Settlement Class Members would not have recovered anything, let alone the substantial recovery secured here.

### d.   The Value of Services on an Hourly Basis

Plaintiffs' Counsel expended considerable effort to obtain the settlement for the benefit of the Settlement Class. Courts commonly use counsel lodestar as a "cross-check" to confirm the reasonableness of a percentage award. This analysis is not a precise science, but rather a tool for rough comparison among cases. "Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of

13

hours reportedly expended was reasonable." *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009).

Class Counsel, together with other Plaintiffs' Counsel, spent over 34,000 hours of time litigating and securing the successful recovery in this case. At current hourly rates, this results in a lodestar of $15,497,960.25. Declaration of Daniel C. Hedlund in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards to the Class Representatives ("Hedlund Decl.") ¶ 4. This lodestar represents time spent not only by Class Counsel, but also by law firms that worked at the direction and under the supervision of Class Counsel. *Id.* ¶ 5. The work performed by these other firms included essential communications with class representatives, assistance with briefing, reviewing documents, performing research, and participating in depositions. *Id.*

Pursuant to the Order for Appointment of Interim Class and Liaison Counsel, Dkt. No. 69, it is the responsibility of Interim Class Counsel to make work assignments, collect time and expense reports on a periodic basis, and to allocate any fees awarded by the Court. Class Counsel have acted as gatekeepers on behalf of the Court and the Settlement Class in making work assignments, coordinating work between firms, and avoiding duplication of effort. Except as noted below, Class Counsel have generally not included in the aggregate lodestar time for work that was not performed at the direction of Class Counsel,[4] time that was insufficiently described to determine whether it provided

---

[4] Before Class Counsel were appointed by the Court, they could not and did not authorize their co-counsel's work. Such pre-appointment time is therefore included in the time reported to the

a benefit to the Settlement Class, duplicative time, and time spent on internal firm administrative tasks.  *Id.* ¶ 6.  Class Counsel also excluded time spent in the preparation of this Motion for Attorney Fees.  *Id.* ¶ 7.

Although courts in this Circuit generally use a percentage of the fund approach in cases of this type, they also recognize that, if a lodestar method were employed, it may be appropriate to use a "multiplier" or enhancement.  The multiplier is the ratio of the awarded fee to counsel's lodestar.  Where used, "multipliers should compensate counsel for the risk they incurred in bringing a case in which their compensation was contingent on their success, should recognize any extraordinary performance by particular counsel and should encourage the filing of meritorious class actions."  *In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 131 (N.D. Ill. 1990).

Here, a one-third fee, or $9,996,667, is reasonable as it reflects a lodestar multiplier of only 0.645—which is actually a reduction of Plaintiffs' Counsel's total lodestar rather than an enhancement.  Courts in this District and elsewhere routinely approve awards that represent a substantial *increase* of counsel's actual lodestar.  *See, e.g., In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767–68 (S.D. Ohio 2007) (awarding a multiplier of 6 and noting that "[m]ost courts agree that the typical lodestar multiplier . . . ranges from 1.3 to 4.5"); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503–04 (E.D. Mich. 2000) (approving an effective multiplier of 2.21).

---

Court, unless it was deficient in some other respect.  Class Counsel's audit of Plaintiffs' Counsel's lodestar has been to identify and exclude time clearly not eligible for any compensation.  If the Court awards attorney fees, Class Counsel will consider how each firm's entire lodestar contributed to the result in allocating the award among the different firms.  *See* Order for Appointment of Interim Class and Liaison Counsel ¶ 2(l), Dkt. No. 69.

Accordingly, the requested fee of one-third of the Settlement Fund is abundantly reasonable in light of the value of Plaintiffs' Counsel's time on an hourly basis, especially considering that it represents a reduction of Plaintiffs' Counsel's actual lodestar.

### e.      The Complexity of the Litigation

Prosecution of any complex class action presents inherently intricate and novel issues.  However, "an antitrust class action is arguably the most complex action to prosecute.  The legal and factual issues involved are always numerous and uncertain in outcome."  *In re Packaged Ice*, 2011 WL 6209188, at *19; *see also In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003).  "This antitrust litigation, like all litigation of its species, promises to be extremely complex and time intensive and there is no question that if settlement fails, the Defendants will mount a strong defense." *In re Packaged Ice*, 2011 WL 6209188, at *19.  The Sixth Circuit has held that the specific characteristics of a class action case can govern the appropriateness of a fee award.  *Rawlings*, 9 F.3d at 516 (finding that the district court can determine the appropriate method for calculating attorneys' fees in the light of the "unique characteristics of class actions").  This factor supports awarding the requested fee.  The legal and factual issues surrounding this case were extremely complex, as set forth more fully in Class Counsel's Brief in Support of Preliminary Approval.  This factor strongly favors a fee award of  one-third of the Settlement Fund.

16

### f.      The Quality of the Representation

Class Counsel are known leaders in the fields of antitrust litigation, class actions, and complex litigation.  The quality of their representation here is demonstrated by the substantial benefit achieved for the Settlement Class and the effective prosecution and resolution of the action.  The quality of opposing counsel is also important when a court evaluates the services rendered by plaintiffs' counsel.  *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986); *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1351 (N.D. Ill. 1974).  Nationally known, prominent, and extremely capable counsel represented Defendant and vigorously defended this action.  The ability of Class Counsel to obtain a favorable result for the Settlement Class in the face of such qualified opposition is further evidence of the quality of their work.

The examination of all these relevant factors shows that they all weigh in favor of the fee award requested, and that the Court should grant Plaintiffs' Counsel's fee application for one-third of the Settlement Fund.

### B.      <u>The Expenses Requested Are Reasonable and Should be Reimbursed</u>

Class Counsel also request reimbursement of expenses incurred in connection with the prosecution of this litigation.  Plaintiffs' Counsel have incurred litigation expenses in the aggregate amount of $3,499,893.02 for the benefit of the Settlement Class.[5]

---

[5] Plaintiffs' Counsel also have incurred some settlement expenses, related to the preliminary approval motion and providing notice to the Settlement Class, and will incur further such expense, related to class notice, the motion for final approval of the settlement, and the claims process.  The Preliminary Approval Order authorized payment of these expenses up to $1

17

"Expense awards are customary when litigants have created a common settlement fund for the benefit of a class."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535. "[C]lass counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses."  *Id.*  The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *Id.* (*citing In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001)); *see U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989) ("[W]e have held that attorney's fee awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.").  The categories of expenses for which counsel seek reimbursement here are the type of expenses routinely charged to hourly clients and, therefore, should be reimbursed out of the common fund because they were necessary to the prosecution of the case.

A significant component of Plaintiffs' Counsel's expenses here is the cost of the expert work performed on behalf of the Settlement Class.  Class Counsel retained highly qualified economic experts to analyze the impact of Blue Cross's MFN clauses on prices of acute care hospital healthcare services in Michigan, and to address other issues such as market definition and market power.  This work required complex statistical analysis of

---

million.  *See* Order ¶ 18, Dkt. No. 151.  Settlement expenses will exceed $1 million, and Class Counsel intend to seek reimbursement or payment of such expenses above $1 million at the end of the claims process when they file a motion to distribute the Net Settlement Fund.

extraordinarily large amounts of data. These experts provided significant services on behalf of the Settlement Class and their expenses were necessarily incurred for the successful prosecution of this litigation.

The notice sent to Settlement Class Members will state that Plaintiffs' Counsel will seek reimbursement of litigation expenses up to $3,500,000. As set forth above, and consistent with this estimate, Plaintiffs' Counsel are seeking reimbursement of litigation expenses of $3,499,893.02.

### C.    The Requested Class Representative Incentive Awards Are Reasonable

"Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Such awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Id.* The Sixth Circuit has recognized that payment of incentive awards to class representatives is a reasonable use of settlement funds. *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351–52 (6th Cir. 2009).

Courts in this District have also granted incentive awards to compensate class representatives for incurring "significant demands on their time and expenses, including submission to depositions and responding to discovery requests for the benefit of absent class members." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535; *see also In re Packaged Ice*, 2012 WL 5493613, at *9. Accordingly, Courts in this District have approved incentive awards of up to $15,000 for individual plaintiff class representatives for "providing information to Class Counsel, receiving and approving pleadings, assisting

19

with discovery, preparing for and attending their depositions, and participating in settlement discussions." *See In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006).

Organization class representative plaintiffs often endure a greater burden in the course of litigation by, in part, locating and producing greater numbers of documents and reviewing those documents for 30(b)(6) depositions. Courts therefore have approved larger incentive awards for organizational class representatives. *See, e.g., In re Vitamin C Antitrust Litig.*, No. 06-MD-1738, 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) (approving incentive awards of $50,000 each for two organizational class representatives).

The Notice will inform Settlement Class Members that Class Counsel will request incentive awards of up to $50,000 for each Plaintiff organization and up to $10,000 for each Plaintiff individual. Consistent with the Notice, Class Counsel requests incentive awards of $45,000 for Michigan Regional Council of Carpenters Employee Benefits Fund ("Carpenters"), $35,000 for Abatement Workers National Health and Welfare Fund ("Abatement"), $35,000 for Monroe Plumbers & Pipefitter Local 671 Welfare Fund ("Plumbers"), and $20,000 for The Shane Group, Inc. ("Shane Group"), all of which are organization plaintiffs. Class Counsel also requests incentive awards of $10,000 for Susan Baynard, $10,000 for Anne Patrice Noah, $5,000 for Bradley Veneberg, and $5,000 for Scott Steele. As provided in the Notice, the maximum amount Class Counsel could request for incentive awards for the class representatives is $240,000, which is 0.8% of the Settlement Fund. However, Class Counsel are only seeking a total of $165,000 in incentive awards, which is only 0.55% of the Settlement Fund.

20

Plaintiffs Carpenters, Abatement, and Plumbers filed their initial complaint against Blue Cross over three and a half years ago, in December 2010. Carpenters, Abatement, and Plumbers, and their third party administrators, thereafter spent extensive time and resources representing a class. They all lent their substantive knowledge of the industry, particularly about the experience of self-funded entities, to Plaintiffs' Counsel throughout the litigation. In response to broad document requests from Blue Cross, they produced thousands of documents and extensive data after even broader initial collections that involved both paper and electronic records from multiple custodians. Abatement produced more than 11,000 documents, Carpenters produced more than 19,000 documents, and Plumbers produced more than 30,000 documents. Carpenters, Abatement, and Plumbers also aided in drafting Plaintiffs' interrogatory responses— which numbered nearly 250 pages. Before she was deposed, the 30(b)(6) deponent for Carpenters reviewed documents and prepared extensively for a deposition on a wide range of topics put forth by BCBSM. The requested incentive awards for Carpenters, Plumbers and Abatement would only begin to compensate the funds and their agents for the value of their time and resources spent on the litigation for the benefit of the Settlement Class.

Plaintiff The Shane Group filed its initial complaint against Blue Cross almost four years ago, in October 2010. Since then, Shane Group worked with Class Counsel to locate and produce relevant documents, respond to written discovery, and review filings. Although The Shane Group was not required to prepare a designee to testify in a 30(b)(6) deposition, its contributions justify an incentive award of $20,000.

21

Susan Baynard and Anne Patrice Noah provided important and indispensable service to the Settlement Class. They both searched through their personal records multiple times to locate documents that were responsive to Blue Cross's discovery requests. They also worked to obtain responsive documents that were in the custody of third parties. Plaintiffs Noah and Baynard also testified in their depositions, which required them to prepare, travel to Detroit from northern Michigan, and take time off work. Given the amount of time and effort Ms. Noah and Ms. Baynard have spent advancing the interests of the Settlement Class, the requested incentive awards of $10,000 each are reasonable.

Plaintiff Bradley Veneberg filed his initial complaint against Blue Cross almost four years ago, in October 2010. Mr. Veneberg subsequently worked with Class Counsel to locate and produce relevant documents and respond to discovery requests. Mr. Veneberg was not, however, required to testify in a deposition. In light of his contributions to the case to advance the interests of the Settlement Class, an incentive award of $5,000 is justified.

Plaintiff Scott Steele filed his initial complaint against Blue Cross in January 2011. Mr. Steele then worked with Class Counsel to identify and produce relevant documents and respond to Blue Cross's other discovery requests. In light of these contributions, and considering that Mr. Steele was not required to testify in a deposition, an incentive award of $5,000 is justified.

The requested incentive awards total only 68.75% of the maximum awards that the Notice will indicate Class Counsel may request for the named Plaintiffs. The requested

22

awards are in line with awards approved in other cases in light of each Plaintiff's
contributions to the case.  Accordingly, Class Counsel request that the Court grant their
request for incentive awards to the class representatives.

## IV.   CONCLUSION

For all the foregoing reasons, Class Counsel respectfully request that the Court
approve Class Counsel's application for attorney fees, reimbursement of expenses, and
payment of incentive award to the class representatives.

Dated: July 24, 2014                         Respectfully submitted,

                                             /s/ Daniel E. Gustafson
                                             Daniel E. Gustafson
                                             Daniel C. Hedlund
                                             **GUSTAFSON GLUEK PLLC**
                                             Canadian Pacific Plaza
                                             120 South Sixth Street, Suite 2600
                                             Minneapolis, MN 55402
                                             Telephone:  (612) 333-8844
                                             dgustafson@gustafsongluek.com
                                             dhedlund@gustafsongluek.com

                                             Daniel A. Small
                                             Brent W. Johnson
                                             Jeffrey B. Dubner
                                             **COHEN MILSTEIN SELLERS**
                                             **& TOLL PLLC**
                                             1100 New York Avenue, NW, Suite 500
                                             Washington, DC 20005
                                             Telephone: (202) 408-4600
                                             dsmall@cohenmilstein.com
                                             bjohnson@cohenmilstein.com
                                             jdubner@cohenmilstein.com

E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan  48307
Telephone: (248) 841-2200
epm@millerlawpc.com

Fred T. Isquith
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
270 Madison Avenue
New York, New York, 10016
Telephone: (212) 545-4690
isquith@whafh.com

Theodore B. Bell
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Telephone: (312) 984-0000
tbell@whafh.com

*Interim Class Counsel*

David H. Fink (P28235)
Darryl Bressack (P67820)
**FINK + ASSOCIATES LAW**
100 West Long Lake Rd, Suite 111
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkandassociateslaw.com

*Interim Liaison Counsel*

24

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2014, I electronically filed the *Class Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Payment of Incentive Awards to Class Representatives* with the Clerk of the Court using the ECF, who in turn sent notice to the following:

**Attorneys for Defendant - Blue Cross Blue Shield of Michigan:**

Todd Stenerson: tstenerson@hunton.com
Bruce Hoffman: bhoffman@hunton.com
Ashley Cummings: acummings@hunton.com
Neil Gilman: ngilman@hunton.com
Jack Martin: martinj@hunton.com
Jonathan Lasken: jlasken@hunton.com

Carl T. Rashid: crashid@bodmanlaw.com
Jason R. Gourley:
jgourley@bodmanlaw.com

**Attorneys for Aetna Inc.:**

Joshua Lipton: jlipton@gibsondunn.com
Dan Matheson: DMatheson@gibsondunn.com
Veronica Lewis: vlewis@gibsondunn.com
Sarah Wilson: sawilson@gibsondunn.com
Cara Fitzgerald: CFitzgerald@gibsondunn.com

/s/ Daniel E. Gustafson_____
Daniel E. Gustafson