UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

THE SHANE GROUP, INC., *et al.*,

Plaintiffs, on behalf of themselves
and all others similarly situated,

v.

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

Defendant.

Civil Action No. 2:10-cv-14360

Judge Denise Page Hood

Magistrate Judge Mona K. Majzoub

---

**PRO SE OBJECTION OF SCOTT MANCINELLI TO THE PROPOSED SETTLEMENT**

Class member Scott Mancinelli ("Mancinelli") hereby submits his objection to the proposed class settlement as follows:

Mancinelli is a member of the class as he has directly purchased healthcare services from Michigan General Acute Care Hospitals for himself individually and for his minor children between January 2006 and June 2014 in the form of co-pay, co-insurance and insurance deductibles. See generally Mancinelli Affidavit which is Exhibit 1 to this Objection. Mancinelli's contact information is set forth below his signature line at the end of this Objection. At present Mancinelli does not intend to appear at the Fairness Hearing but requests that the Court take the following points and concerns into consideration in evaluating and deciding on the settlement.

<u>The Settlement is Not Reasonable, Fair or Adequate</u>

The burden of proving the fairness of a proposed class action settlement is always on its proponents, without the benefit of any presumption to aid in meeting this burden. See, *In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106 (7th Cir.), cert.

denied, 444 U.S. 870 (1979)). See also *Gautreax v. Pierce,* 690 F.2d 616,630-31 (7th Cir. 1982); *Blanchard v. Edgemark Financial Corp.,* 175 F.R.D.293, 300 (N.D. 111.1997). The Court, meanwhile, has an independent duty to closely scrutinize class settlements to safeguard the rights of absent class members. See *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir), cert. denied, 423 U.S. 864 (1975). In *Amchem Products, Inc. v. Windsor,* 117 S. Ct. 2231 (1997), the Supreme Court held that the rights of absent class members must be "the dominant concern" of the Court, especially in the settlement context. "The primary purpose of a fairness hearing is to protect class members ... whose rights may not have been given due regard by the negotiating parties." *Ficaora v. Lockheed Calif Co.,* 751 F.2d 995, 996 (9th Cir. 1985).


## The Settlement Fails to Address BCBS "Most Favored Nation" Contracts with the Hospitals – The Primary Issue in the Case

From the outset, this action has been about BCBS restraint of trade and unfair competitive advantage in extracting most favored nation contract terms from the acute care hospitals. The complaint contains paragraph after paragraph of detailed allegations on this practice, that increases hospital charges for BCBS insurance customers, such as myself, as well every other insurance carriers and their insured customers as well. These allegations are supported with extensive factual detail and the complaint rightly requested extensive declaratory and injunctive relief prohibiting such unfair trade practices in the future. Yet the settlement contains no declaratory or injunctive relief whatsoever. Instead according to language at paragraphs 58 through 65 it completely releases all claims having to do the most favored nation contract clauses; and this release essentially applies to

almost every consumer of acute care hospital services in the State of Michigan.

In exchange for a paltry $15 to $40, Michigan consumers are dooming themselves to a rigged hospital pricing system that perpetuates a quasi-monopoly for BCBS. Such a result is not in the best interest of the settlement class, the citizens of Michigan, or the other insurance carriers. The settlement should be revised to simply prohibit such clauses in any contracts between BCBS and the hospitals going forward and to declare existing clauses void and contrary to public policy. We should not mortgage the future, for a minimal present benefit. If the system is broken, as the complaint admirably demonstrates, fix the system, fix the problem - don't paper it over.

## The Settlement Improperly Awards Cy Pres Recipients That Have Nothing to do With the Reasons that the Case was Originally Brought

In a class action settlement, "[t]he *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). *Cy pres* distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity. *Id.* Direct distributions to settlement class members are preferred over *cy pres* distributions. *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173 (3d Cir. 2013).

This action was initially brought to stop the defendant's anti-trust activities that were a restraint on trade raising both insurance premiums as well as hospital charges and to compensate consumers of health services who suffered increased costs as a result of Defendants behavior. At its outset this case had nothing to do with funding free health clinics. Such a *Cy pres* distribution imperfectly serves the original purpose of the action by substituting direct compensation for an

3

indirect benefit that is, at best, attenuated and, at worse, illusory. *See e.g. Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784–85 (7th Cir. 2004).

*Cy pres* may be used in class action settlements once all known settlement class members have been made whole or "where the proof of individual claims would be burdensome or distribution of damages costly." *Dennis v. Kellogg Co.,* 697 F.3d 858, 865 (9th Cir. 2012). Any leftover funds should first be distributed to known class members; only when it is not economically viable to do so should a court engage in a *cy pres* program:

> A court may approve a settlement that proposes a *cy pres* remedy even if such a remedy could not be ordered in a contested case. The court must apply the following criteria in determining whether a *cy pres* award is appropriate:

> (a)    If individual class members can be identified through a reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members.

> (b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.

> (c) If the court finds that individual distributions are not viable based on the criteria set forth in subsections (a) and (b), the settlement may utilize a *cy pres* approach. The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class. If, and only if, no recipient whose interests reasonably approximate those being pursued by the class can be identified after thorough investigation and analysis, a court may approve a recipient that does not reasonably approximate the interests being pursued by the class.

4

PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.07 (Am. Law. Inst. 2010); *see also In re Checking Account Overdraft Litig.*, Case No. 1:09-MD-02036-JLK, at 2–3 (S.D. Fla. Apr. 15, 2013)

Any settlement allocation plan must meet Rule 23 standards. "The court's principal is obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *Walsh v. Great Atlantic & Pacific Tea Co.,* 726 F.2d 956, 964 (3d Cir. 983). Class members are entitled to receive their own property, property that has been procured in their name rather than have to watch it get funneled to inferior "next-best' cy pres [h] beneficiaries. *Klier v. Elf Atochem North Am. Inc.,* 658 F.3d 468, 474 (5th Cir. 2011) (settlement-fund proceeds, having been generated by the value of the class members' claims, belong solely to the class members.'). A settlement with a large number of small beneficiaries would economically use a cy pres remedy "only where the cost per class member of distributing the residual funds substantially outweighs the amount each class member would receive." *In re American Tower Corp. Sees. Litig.,* 648 F. Supp. 2d 223, 224 n.1 (D. Mass. 2009). In *Klier,* 658 F.3d 468 at 475, the court explained:

> Because the settlement funds are the property of the class, a cy pres distribution to a third party of unclaimed settlement funds is permissible "only when it is not feasible to make further distributions to class members." Where it is still logistically feasible and economically viable to make additional pro rata distributions to class members, the district court should do so, except where an additional distribution would provide a windfall to class members with liquidated-damages claims that were 100 percent satisfied by the original distribution. A cy pres distribution puts settlement funds to their next-best use by providing an indirect benefit to the class. That option arises only if it is not possible to put those funds to their very best use: benefiting the class members directly.

A *cy pres* distribution, therefore, should take place only when a court cannot distribute settlement funds to known class members. *See Nachshin*, 663 F.3d at 1038 ("In the context of class action settlements, a court may employ the *cy pres* doctrine to 'put the unclaimed fund to its next best compensation use, *e.g.*, for the aggregate, indirect, prospective benefit of the class.'")

More generally, any cy pres distribution in a settlement such as this one is unjustifiable unless and until reasonable measures are taken to ensure that the class members are completely compensated.  If class members are legally entitled to compensation on their underlying claims, and that compensation can be feasibly distributed to individual class members without unreasonable administrative burden, class counsel violates its fiduciary duties to put the financial interests of third parties ahead of their clients. And the court's "fiduciary responsibility" must prevent it from ratifying such a provision. *Grant v. Bethlehem Steel Corporation,* 823 F.2d 20, 23 (2d Cir. 1987).  The present cy pres distribution is a carve out of funds from the overall settlement and is not necessitated by or the result of the economic unviability of a distribution to class members. The cy pres distribution is a direct result of a cap placed on distributions to class members, the cap should be removed.

<u>The Settlement Notification Fails to Provide Adequate Notice to Class Members &<br>Unreasonable Requires the Production of Records by Class Members</u>

As set forth in the affidavit of Mancinelli (Exhibit 1) this writer received no direct notice of the class action or its settlement despite the fact that he has been a patient at the several of the acute care hospitals listed in the case, has had BCBS insurance for most of the past ten years, and has personally paid for services for himself and his family at listed acute care hospitals. Instead a notice was mailed to his eight year old daughter Lena. (Exhibit 2). Lena obviously has never paid for any health care services directly nor any insurance. It was only chance that this writer

discovered the notice of settlement card before it was discarded. How many other class members who should be receiving notice, are being omitted from the settlement because notice is being sent to their minor children instead of to them directly?

Mancinelli also adopts by reference the objection of John M. Kunitzer (Dkt. No. 158) who correctly points out that very few class members are going to have medical bills and EOB forms from their insurance carrier going back to 2006. The claim forms require the claimant to put down the date of service, the amount paid, and the hospital provider. The amount then received on the settlement is than a percentage of the total put on the claim form.

Very few people itemize medical expenses on their tax returns, because it is an infrequent occurrence where the total spent would exceed 7.5% of AGI, consequently there is no reason to save the records, and thus many claimants will simply not have the records necessary to submit a claim that actually compensates them for their losses.

The insurance carriers have those records however, this writer has in the past obtained reports and printouts from BCBS summarizing medical services paid for under the insurance policy. A mechanism should be set up by which claimants who submit initial information, can obtain online or via email, a summary of the medical costs paid by their insurance carrier during the relevant time period, through which they then can complete the claim form.

## Conclusion

For the reasons set forth above this Objector respectfully requests that the Court enter an order:

a) Denying final approval of the proposed settlement in the current form before the Court;

b) Recommend that the parties amend the Settlement Agreement so that all funds are fully

distributed to identifiable Settlement Class Members rather than cy pres;

c)  Recommend that the parties develop notice protocols for any future settlement notice that ensures that notice is given to the parents of any minors who are class members;

d)  Recommend that the parties revise the claims procedure and provide a mechanism for Settlement Class Members to obtain insurance and hospital records via internet or email so that they can receive full compensation on their claims;

e)  Recommend that the parties revise the settlement agreement to prohibit all future use of MFN clauses in contracts;

f)  Objector requests that the Court grant such other relief as the Court deems just and proper.

Respectfully Submitted

September 24, 2014

Scott Mancinelli
PO Box 3266
Holland, MI 49422-3266
616-990-0453