UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

THE SHANE GROUP INC.; BRADLEY
A. VENEBERG; SCOTT STEELE;
MICHIGAN REGIONAL COUNCIL OF          Case No. 2:10-cv-14360
CARPENTERS EMPLOYEE BENEFITS
FUND; ABATEMENT WORKERS               Honorable Denise Page Hood
NATIONAL HEALTH AND WELFARE
FUND; and MONROE PLUMBERS AND
PIPEFITTERS LOCAL 671 WELFARE
FUND,

      Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF
MICHIGAN,

      Defendant.

---

**JOINT OBJECTION TO PROPOSED SETTLEMENT BY ADAC AUTOMOTIVE, ALMA PRODUCTS COMPANY, BAKER COLLEGE, BORROUGHS CORPORATION, EAGLE ALLOY INC., FISHER & COMPANY INC., FOUR WINDS CASINO RESORT, FRANKENMUTH BAVARIAN INN INC., GEMINI GROUP INC., GILL-ROY'S HARDWARE/MORGAN PROPERTIES LLC, GRAND TRAVERSE BAND OF OTTAWA AND CHIPPEWA INDIANS, HI-LEX CORPORATION, HUIZENGA GROUP, KENT COMPANIES INC., LA BELLE MANAGEMENT INC., MASTER AUTOMATIC MACHINE COMPANY INC., MORBARK INC., PETOSKEY PLASTICS INC., SAF-HOLLAND USA INC., STAR OF THE WEST MILLING COMPANY, TARUS PRODUCTS INC., TERRYBERRY COMPANY LLC, THELEN INC., TRILLIUM STAFFING SOLUTIONS, TRUSS TECHNOLOGIES, AND WADE TRIM GROUP INC.**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................. iii

I.    Introduction........................................................................................1

II.   Legal Standard ..................................................................................2

III.  Argument ...........................................................................................4

    A.    The Proposed Settlement Is Unfair, Unreasonable, and
    Inadequate Under the *UAW* Factors. ......................................4

        1.    There Is Substantial Risk of Fraud or Collusion. ......................4

            a.    The Meager Amount of the Settlement Fund Itself
            Demonstrates a Substantial Risk of Fraud and
            Collusion...........................................................................4

            b.    The Amount of Incentive Awards Being Paid to
            the Named Plaintiffs Also Creates a Substantial
            Risk of Fraud and Collusion............................................10

            c.    The Excessive Amount to Be Paid to Class
            Counsel as a Percentage of the Overall Settlement
            Also Points to a Substantial Risk of Fraud and
            Collusion.........................................................................11

            d.    The Unnecessarily Burdensome Claims Process
            Also Suggests Possible Fraud or Collusion....................12

            e.    The Lack of Access to the Court Record Also
            Creates a High Risk of Fraud and Collusion..................15

        2.    The Complexity, Expense, and Likely Duration of the
            Litigation Does Not Weigh in Favor of Approval of the
            Settlement...............................................................................17

        3.    The Amount of Discovery Engaged in by the Parties
            Does Not Favor Settlement.....................................................18

4.    The Likelihood of Success on the Merits Does Not Favor Settlement..................................................................19

5.    The Opinions of Class Counsel and Class Representatives Should Not Be Given Significant Weight Due to the Preferential Treatment Afforded to Class Counsel and Class Representatives in the Settlement. ............21

6.    The Reaction of Absent Class Members Demonstrates that the Proposed Settlement Is Unfair, Unreasonable, and Inadequate. ........................................................22

7.    Public Interest Factors Do Not Weigh in Favor of the Settlement..................................................................23

B.    The Proposed Settlement Is Unfair Under the Preferential Treatment Standard. ..........................................................23

1.    The Preferential Treatment Received by the Named Plaintiffs in Their Incentive Awards Also Requires Rejection of the Settlement.......................................23

2.    The Preferential Treatment Provided to Class Counsel Also Makes the Proposed Settlement Agreement Unfair.........24

IV.    Conclusion ........................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Baker v. Dolgen Corp. Inc.*,
    No. 2:10-cv-199, 2000 WL 166257 (E.D. Va. Jan. 19, 2011) ......................16

*Granada Invest. Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ......................................................................17

*Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*,
    724 F.3d 713 (6th Cir. 2013) ................................... 2, 3, 4, 10, 11, 12, 24, 25

*In re Cedant Corp.*,
    260 F.3d 183 (3d Cir. 2001) ........................................................................16

*In re Domestic Air Transp. Antitrust Litig.*,
    144 F.R.D. 421 (N.D. Ga. 1992) ..................................................................16

*In re Knoxville News-Sentinel Co. Inc.*,
    723 F.2d 470 (6th Cir. 1983) ........................................................................16

*Smith v. SEC*,
    129 F.3d 356 (6th Cir. 1997) ........................................................................15

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir.2007) ................................................................ 2, 3, 19

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995) .........................................................................16

*Vassalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013) ............................................. 3, 4, 11, 12, 24, 25

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ..........................................................................4

## Statutes

15 U.S.C. § 15 ................................................................................................6, 18

MCL 500.3405a ....................................................................................................20

## Rules

Fed. R. Civ. P. 23(e)(1)(C) ........................................................................................2

## I. __INTRODUCTION__

This objection is filed on behalf of 26 self-insured entities with over 5,000 health plan participants who received healthcare services at Michigan General Acute Care Hospitals (the "Self-Insured Objectors") since 2006. The objections of the Self-Insured Objectors to the proposed settlement are as follows:

**1. The proposed settlement fund is woefully inadequate.** Class members spent approximately $85 billion at Michigan hospitals during the eight-and-a-half-year time period covered by the proposed settlement. The parties agreed in the proposed settlement to refund class members between 1 percent and 3.5 percent of the money they paid to Michigan hospitals, subject to a $30 million cap on the total settlement fund. Using the parties' own agreed-upon refund amount, in order to pay a 1-percent refund to class members, the total amount of the settlement fund should be $850 million. The proposed $30 million gross settlement fund (of which approximately $15 million would actually be distributed to class members) is woefully inadequate.

**2. The proposed settlement gives preferential treatment to the named Plaintiffs.** The proposed incentive awards to the named Plaintiffs far exceed the amount they would otherwise receive as class members, thus creating a conflict of interest and a disincentive for the named Plaintiffs to represent the interests of class members.

**3. The proposed settlement gives preferential treatment to class counsel.** When contrasted with the net settlement amount to be distributed to class members, the proposed amount of attorneys' fees and expenses to be paid to class counsel create a conflict of interest and a disincentive for class counsel to represent the interests of class members.

**4. The claims process is unnecessarily burdensome.** The claims process is unnecessarily burdensome and will deter most class members from submitting claims. Moreover, for the millions of class members that are either insured by Blue Cross or are self-insured plans administered by Blue Cross, a claims form is completely unnecessary. Blue Cross has superior access to all of the information necessary to calculate the claims of the class members whose healthcare Blue Cross manages.

**5.    The court record should be unsealed before the proposed settlement is even considered.**  Almost all of the substantive documents that class members would need to review to fully assess the merits of the case, and therefore assess the fairness of the settlement, are currently under seal and not available for public review.  Because of the lack of transparency concerning both the substantive evidence of Blue Cross's antitrust violations and the amount of potential damages, the parties cannot meet their burden of demonstrating that the settlement is fair, reasonable, and adequate.

In short, the proposed settlement is a good deal for Blue Cross, the named Plaintiffs, and Plaintiffs' counsel.  It is a bad deal for the class members, who would receive a pittance in the proposed settlement and would be much better served if their antitrust claims were tried.  The proposed settlement should be rejected.

## II.   <u>LEGAL STANDARD</u>

Before the Court approves a class action settlement, it must find that the settlement is "'fair, reasonable, and adequate.'"  *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir.2007)(quoting Fed. R. Civ. P. 23(e)(1)(C)).  "The burden of proving the fairness of the settlement is on the proponents."  *Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*, 724 F.3d 713, 719 (6th Cir. 2013).

The United States Court of Appeals for the Sixth Circuit has recently vacated two class action settlements approved by district courts within this circuit. In doing so, the Sixth Circuit emphasized that courts must <u>carefully scrutinize</u> class action settlements:

2

Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval. In contrast, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. And thus there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own.

***

Hence-unlike in virtually every other kind of case—in class-action settlements the district court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class. Instead, the law relies upon the fiduciary obligations of the class representatives and, especially, class counsel, to protect those interests. And that means the <u>courts must carefully scrutinize whether those fiduciary obligations have been met</u>.

*Id.* at 715, 717–18 (quotation omitted).

The Sixth Circuit has used two different frameworks to carefully scrutinize the fairness, reasonableness, and adequacy of proposed class action settlements. Under the *UAW* factors, the district court considers seven factors in determining whether a proposed class action settlement is fair, reasonable, and adequate:

(1) the risk of fraud or collusion;
(2) the complexity, expense and likely duration of the litigation;
(3) the amount of discovery engaged in by the parties;
(4) the likelihood of success on the merits;
(5) the opinions of class counsel and class representatives;
(6) the reaction of absent class members; and
(7) the public interest.

*Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013)(citing *UAW*, 497 F.3d at 631).

Under the "preferential treatment" standard, the Sixth Circuit has rejected proposed class action settlements that give preferential treatment to either the named plaintiffs or to class counsel. "Although not included in the seven UAW factors, in evaluating the fairness of a settlement [the Sixth Circuit has] also looked to whether the settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Id.* at 755 (quoting *Williams v. Vukovich*, 720 F.2d 909, 925 n.11 (6th Cir. 1983)). "[S]uch inequities in treatment make a settlement unfair." *Id.* "The same is true of a settlement that gives preferential treatment to class counsel; for class counsel are no more entitled to disregard their fiduciary responsibilities than class representatives are." *Greenberg*, 724 F.3d at 718 (quotation omitted).

## III.   ARGUMENT

### A.   THE PROPOSED SETTLEMENT IS UNFAIR, UNREASONABLE, AND INADEQUATE UNDER THE *UAW* FACTORS.

#### 1.   There Is Substantial Risk of Fraud or Collusion.

##### a.   The Meager Amount of the Settlement Fund Itself Demonstrates a Substantial Risk of Fraud and Collusion.

Plaintiffs allege that the "Most Favored Nation" Agreements ("MFN Agreements") between Blue Cross and Michigan hospitals violated federal antitrust laws and significantly increased the cost of hospital care in Michigan since 2006. The potential liability faced by Blue Cross in this case is <u>massive</u>.

4

In 2009 alone, over $26 billion was spent on healthcare at the over 130 hospitals in Michigan that are covered by the proposed settlement. Office of the Actuary, Centers for Medicare and Medicaid Services, www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/NationalHealthExpendData/Downloads/res-tables.pdf, **Ex. 1**. Approximately 39 percent of these hospital expenditures were by individuals, insurers, or self-insured entities. Office of the Actuary, Center for Medicare and Medicaid Services, www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/NationalHealthExpendData/Downloads/tables.pdf, **Ex. 2**.

The proposed settlement covers <u>all</u> direct purchases of healthcare services between January 1, 2006, and June 23, 2014, from <u>all</u> Michigan hospitals by <u>all</u> individuals who paid Michigan hospitals, <u>all</u> insurers that paid Michigan hospitals, and <u>all</u> self-insured entities that paid Michigan hospitals. As such, over the eight-and-a-half-year period covered by the proposed settlement, it is estimated that the class members paid Michigan hospitals over **<u>$85 billion</u>**.[1]

The proposed settlement provides that, subject to a total cap on the overall settlement fund, class members shall be refunded 1 percent of their payments to

---

[1] $26 billion in annual expenditures to Michigan hospitals x 0.39 (percent of hospital expenditures paid for by individuals and private insurance) x 8.5 years = $86.19 billion in estimated Michigan hospital expenses paid for by the class over the time period covered by the settlement. *See also* Consolidated Am. Compl. ¶ 9 [Dkt. #72] (Blue Cross alone "purchased more than $4 billion in such hospital services in 2007").

most Michigan hospitals.  *See* Pls' Proposed Plan of Allocation, Category 2 [Dkt. #148-1, PgID 4289].  For a small number of specific hospitals, class members shall be refunded 3.5 percent of their payments to those particular hospitals.  *Id.*, Category 1.

At first blush, this appears to be a reasonable compromise of the litigation. The MFN Agreements are alleged to have significantly increased the cost of hospital services in Michigan.  Refunding class members between 1 percent and 3.5 percent of their hospital expenditures since 2006 would provide some meaningful compensation to class members who have overpaid for hospital services.  The proposed settlement also would protect Blue Cross from the potential of a much larger judgment against it, including the risk of treble damages and payment of Plaintiffs' attorneys' fees that Blue Cross faces in a trial on the merits. *See* 15 U.S.C. § 15.

However, simple math dictates that in order to refund class members 1 percent of their hospital expenditures, **<u>the settlement fund should be at least $850 million</u>**.  Because class members paid over $85 billion to Michigan hospitals during the time period covered by the settlement, a 1-percent refund of hospital payments made by class members during the settlement period would require that $850 million be refunded to the class.

6

The proposed settlement calls for Blue Cross to pay a <u>gross</u> amount of $29,990,000 into the settlement fund.[2]  Moreover, the proposed settlement calls for the following deductions from the $30 million gross settlement amount: (1) $3.5 million to reimburse class counsel for expenses; (2) up to $10 million in attorneys' fees for class counsel; (3) over $200,000 in potential incentive awards to the Plaintiffs; and (4) expenses incurred in administering the proposed settlement, for which the Court has pre-authorized payment of up to $1 million.

Once these items are deducted from the gross settlement amount, the proposed <u>net</u> settlement amount available to reimburse class members is much smaller.  If Plaintiffs' requested attorneys' fees, reimbursement of expenses, and incentive awards are granted in full, the proposed net settlement fund actually available to reimburse class members would be closer to $15 million.

A $15 million net settlement fund is wholly inadequate to reimburse the class members.  In order to refund class members 1 percent of their hospital expenditures—the refund rate <u>agreed to by the parties</u> as reasonable—the settlement fund should be at least $850 million—over 50 times the amount of the proposed net settlement fund available to the class members.

---

[2] For ease of discussion in this objection, the Self-Insured Objectors will round the amount of the gross settlement fund to $30 million.

The proposed net settlement amount represents 0.000176 of the hospital expenditures by class members since 2006.  Under the proposed settlement, class members would, on average, be refunded $1 for every $5,681 they spent at a Michigan hospital over the last eight and a half years.

Put another way, almost every one of the 10 million residents of Michigan is a member of the proposed settlement class, as almost every Michigan resident has paid some hospital expenses since 2006.  Even if only half of all Michigan residents are class members, the net settlement fund of $15 million, if divided between 5 million class members, would result in an average payment to each class member of $3.00.  This does not account for the fact that, under the proposed settlement, insurers and self-insured entities are also class members whose claims would consume much of the $15 million net settlement fund.

The proposed settlement fund is wholly inadequate and represents nothing more than a nuisance-value settlement amount.  The implication in the proposed settlement that the settlement is based on a 1-percent refund of hospital expenditures to class members is completely misleading and illusory.

The stand-alone case brought by Aetna, who would otherwise be a class member in this proposed settlement, also demonstrates the inadequacy of the amount of the proposed settlement.  Based on its expert witness analysis, Aetna has alleged that it suffered antitrust damages of between $547 million and $763 million

as a result of the MFN Agreements.  When trebled under federal antitrust law, Aetna alleges that it suffered over $2 billion in antitrust damages.  2/10/12 Aetna Supp. Disclosures, **Ex. 3**.

The collective claims of every individual, every self-insured plan, and every insurer other than Aetna that has paid hospital claims in Michigan since 2006 obviously far exceed the size of Aetna's claim standing alone.  There is simply no doubt that this is a billion-dollar case if Plaintiffs are successful at trial.

Moreover, this is not a situation in which the class should accept an artificially low settlement because of collectability concerns with regard to the Defendant.  Blue Cross, despite nominally being a non-profit corporation, holds massive cash reserves that could be used to satisfy a settlement or judgment in this case.  Blue Cross (and its subsidiaries) collectively had almost $12.8 billion in assets at the end of 2013, including $695 million in cash.  Blue Cross 2013 Annual Report, Financial Statement at 2, **Ex. 4**.

The grossly inadequate amount of the proposed settlement strongly suggests a serious risk of fraud and collusion between Plaintiffs and Defendant.  The class members gain almost nothing in the proposed settlement, such that their interests would be far better served by a trial on the antitrust claims.  The inadequate settlement amount is, in itself, ample reason to reject the proposed settlement.

      **b.**    **The Amount of Incentive Awards Being Paid to the Named Plaintiffs Also Creates a Substantial Risk of Fraud and Collusion.**

Under the proposed settlement, each of the four named Plaintiff organizations is entitled to an incentive payment of up to $50,000, and each of the four named individuals is entitled to an incentive payment of up to $10,000. These incentive amounts grossly exceed the amount that the Plaintiffs would otherwise recover as class members in the proposed settlement.

The average rate of reimbursement to class members under the proposed settlement is $1 for every $5,681 they spent at a Michigan hospital. As outlined above, even if the entire net settlement fund of $15 million was distributed solely to individuals (and not to insurers or self-insured entities), each class member would receive an average recovery of approximately $3.00. In contrast, the individual Plaintiffs would be paid $10,000 each—but only if the proposed settlement is approved.

The Sixth Circuit has, on two recent occasions, rejected settlements in which incentive payments to plaintiffs grossly exceeded the amount that class members would otherwise recover under the proposed settlement. Such an arrangement is unfair to the class and creates a conflict of interest, such that there is a "patent divergence of interest between the named representatives and the class." *Greenberg*, 724 F.3d at 722 (quotation omitted). "The incentive payments

10

provide[ ] a *disincentive* for the class members to care about the adequacy of relief afforded unnamed class members, and instead encourage[ ] the class representatives to compromise the interest of the class for personal gain." *Id*. (quotation omitted)(emphasis in original).[3]

The Sixth Circuit has clearly held that "such inequities in treatment make a settlement unfair." *Vassale*, 708 F.3d at 755. As discussed further in Section II(B)(1) below, this also is an independent reason for rejecting the proposed settlement under the "preferential treatment" test.

### c. The Excessive Amount to Be Paid to Class Counsel as a Percentage of the Overall Settlement Also Points to a Substantial Risk of Fraud and Collusion.

Standing alone, an attorneys' fee award of up to $10 million to Plaintiffs' counsel would not necessarily be unreasonable in this case—if Plaintiffs' counsel had secured an appropriate settlement fund for the class. However, the substantial amount to be paid to class counsel as part of the proposed settlement, when compared to the meager net amount to be paid to class members, creates a substantial conflict of interest exists between class counsel and the class members that raises a serious risk of fraud and collusion.

---

[3] "Thus, to the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design. And we have expressed a sensible fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Greenberg*, 725 F.3d at 722 (quotations omitted).

Under the proposed settlement, class counsel would be paid up to $13.5 million in expenses and attorneys' fees.  The proposed settlement would pay almost half of the $30 million settlement fund to class counsel.  In contrast, the amount proposed to be paid to class members—an average of $3.00 per class member if the net settlement fund was distributed solely to individuals—represents a pittance.  The gross disparity between the amount paid to class counsel and the amount to be paid to class members under the proposed settlement creates a significant risk of fraud and collusion.

"The reality is that this settlement benefits class counsel vastly more than it does the consumers who comprise the class.  The conclusion is unavoidable: this settlement gives preferential treatment to class counsel while only perfunctory relief to unnamed class members."  *Vassalle*, 708 F.3d at 755 (quotations omitted); see also *Greenberg*, 724 F.3d at 721.  The Sixth Circuit has clearly held that "such inequities in treatment make a settlement unfair."  *Vassalle*, 708 F.3d at 755.  As discussed further in Section II(B)(2) below, this also is an independent reason for rejecting the proposed settlement under the "preferential treatment" test.

### d. The Unnecessarily Burdensome Claims Process Also Suggests Possible Fraud or Collusion.

The burdensomeness of the claims process will be a substantial deterrent to claims being filed and further suggests possible fraud or collusion.  In order to submit a claim, insurers and self-insured plans are required to itemize in a claims

table (1) the amount of healthcare services paid for; on (2) each date of service over an eight-and-a-half-year period; for (3) each of the approximately 130 hospitals in Michigan from which the class member purchased healthcare services. The claims tables from insurers and self-insured entities are likely to be thousands of pages long. Individuals submitting claims are also required to itemize their claim by amount, date, and hospital over an eight-and-a-half-year time period.

Moreover, insurers and self-insured plans also are required to submit copies of hospital bills supporting <u>all payments</u> that the claimant includes in their claim. In most cases, there will be numerous hospital bills supporting each entry on the claims table. This documentation requirement could easily result in self-insured plans and insurers having to submit thousands upon thousands, perhaps even millions, of pages of supporting documents with their claim. Although individuals are not required to submit supporting documentation with their claim, the claims form states that individuals may be asked for supporting documents at a later date and that "your claim may be rejected if any requested information is not provided."

There is no reason for the claims process to be this burdensome. Claimants should be able to submit a claim that aggregates their total payments to Michigan hospitals since 2006. Moreover, supporting documentation should not have to be submitted for every payment the class member made to a hospital since 2006.

13

Rather, insurers and self-insured plans should be treated the same way as individuals, in that supporting documentation should only be required if a claim appears on its face to be suspect.  All claimants are already required to certify under penalty of perjury in their claim form that the submitted claim amount is true and accurate to the best of their knowledge.  This should be sufficient to minimize the risk of false or inflated claims being submitted.

Moreover, for the millions of class members that are either insured directly by Blue Cross or are self-insured plans administered by Blue Cross, there is no reason why those class members should have to submit a claims form at all.  Blue Cross has superior access to the hospital payment information concerning its insureds and the self-insured plans that it manages.[4]  Blue Cross can make the calculations concerning the amount paid to hospitals by the class members whose

---

[4] Individuals and self-insured plans rely on their insurers and third-party administrators (such as Blue Cross) to maintain records and supporting documentation concerning healthcare expenses.  It is very likely that class members whose healthcare is managed by Blue Cross will need Blue Cross to obtain the detailed information dating back to 2006 needed to complete the claims form. *See, e.g.*, 8/22/14 Claims Request to Blue Cross, **Ex. 5**.

healthcare Blue Cross manages without needing to obtain any additional information from those class members.[5]

The burdensome claims process established by the parties can only be seen as a cynical attempt to discourage most class members from submitting claims in order to justify the extremely low settlement fund amount. This should not be countenanced by the Court.

### e. The Lack of Access to the Court Record Also Creates a High Risk of Fraud and Collusion.

Almost all of the significant documents in the case, including motions, affidavits, and exhibits attached to court filings, have been filed under seal with the Court and are not available for review by class members. There are not even redacted versions of these documents accessible by the public.

Class members have a compelling interest in access to the substantive information on which the fairness of the settlement can be assessed. "There is a strong presumption that court files will open to the public." *Smith v. SEC*, 129 F.3d 356, 359 n.1 (6th Cir. 1997). "Only the most compelling reasons can justify

---

[5] Calculating the amount of class action claims on behalf of its participants is not a novel concept for Blue Cross. Just last month, Blue Cross offered to do so with regard to the settlement of a class action lawsuit concerning the marketing of the prescription drug Neurontin. As plan administrator, Blue Cross had complete access to data concerning self-insured plans' purchases of Neurontin on behalf of plan participants. Blue Cross had no difficulty calculating the claim on behalf of its self-insured plans. *See* 8/22/14 letter from Blue Cross Blue Shield of Michigan, **Ex. 6**. Blue Cross could easily do so in this case as well.

non-disclosure of judicial records." *In re Knoxville News-Sentinel Co. Inc.*, 723 F.2d 470, 476 (6th Cir. 1983).

This is particularly true in the context of a class action case, as class members' interests are directly affected by the outcome of the litigation. *See, e.g., In re Cedant Corp.*, 260 F.3d 183, 194, 198 (3d Cir. 2001)(the "right of public access is compelling" in the class action context, such that the "test for overriding the right of access [in a class action] should be applied . . . with particular strictness"); *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)("the strong weight to be accorded the right of public access judicial documents was largely derived from the role those documents played in determining the litigants' substantive rights . . . and from the need for public monitoring of that conduct"); *Baker v. Dolgen Corp. Inc.*, No. 2:10-cv-199, 2000 WL 166257, at *2 (E.D. Va. Jan. 19, 2011)("the public has an interest in determining whether the court is properly fulfilling its duties when it approves a [ ] settlement agreement").[6]

The substantive evidence concerning the merits of the litigation and the potential damages to the class has been completely shrouded from public view,

---

[6] Indeed, although the Self-Insured Objectors are not requesting discovery, courts routinely grant class members the opportunity to conduct limited discovery with regard to the facts supporting the proposed settlement. *See, e.g., In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D. Ga. 1992)("discovery should allow objectors meaningful participation in the fairness hearing without unduly burdening the parties or causing unnecessary delay").

such that class members cannot fully assess the strength of the claims that are being settled or the amount of potential damages if Plaintiffs are successful. This significantly increases the possibility of fraud and collusion in the settlement.[7]

### 2. The Complexity, Expense, and Likely Duration of the Litigation Does Not Weigh in Favor of Approval of the Settlement.

In determining the reasonableness of the settlement, it is appropriate for the Court to consider "the risk associated with the expense and complexity of litigation." *Granada Invest. Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992). There is no question that antitrust litigation of this size and scope is a complex and expensive process that can take several years to resolve.

However, the risk associated with the expense and complexity of this lawsuit is mitigated by several factors in this case. First, the bulk of the work necessary to get the case ready for trial has already been done. Blue Cross's motion to dismiss was denied. Discovery in this case, including expert discovery, is complete. Trial was set for January 2015 before this proposed settlement was reached between the parties. Accordingly, although antitrust litigation is complex, expensive, and takes time, those are largely "sunk costs" at this point.

---

[7] The Self-Insured Objectors will be filing a motion to intervene in this case for the limited purpose of seeking to unseal the record. The Self-Insured Objectors reserve the right to amend or supplement their objection if they obtain additional information relevant to the reasonableness, fairness, or adequacy of the proposed settlement as a result of the record being unsealed.

More importantly in this context, if the Plaintiffs prevail at trial on their federal antitrust claims, they are entitled to both treble damages and recovery of their attorneys' fees and costs incurred in the litigation.  15 U.S.C. § 15.  As such, there is substantially less risk to the Plaintiffs in continuing to litigate rather than settle than in other contexts.

Indeed, to the extent Plaintiffs are likely to succeed on their claims if brought to trial, it is Blue Cross that bears far greater litigation risk.  Blue Cross bears the risk of not only paying its attorneys' fees in continuing to defend the claims, but also paying treble damages and Plaintiffs' attorneys' fees and costs if Plaintiffs are successful at trial.  This is not a case where avoiding the potential future costs of continuing to litigate weighs in favor of settlement.

### 3.    The Amount of Discovery Engaged in by the Parties Does Not Favor Settlement.

A minor factor the Court can consider is the amount of discovery engaged in by the parties under the theory that in situations where the parties have conducted substantial discovery, there is a more informed decision as to whether settlement is appropriate.  It appears that Plaintiffs engaged in a very significant amount of discovery in this case.

However, because almost all of the substantive documents in this case have been filed under seal, it is impossible to assess the extent to which discovery has (1) confirmed the allegations in the Complaint, (2) enhanced or developed

additional information in support of the allegations in the Complaint, or (3) identified weaknesses in the allegations in the Complaint that might motivate settlement. Plaintiffs' motion for preliminary approval of the proposed settlement did not include any analysis of the evidence uncovered during discovery. Without careful public scrutiny of the information obtained during discovery, this factor weighs against accepting the proposed settlement.

### 4. The Likelihood of Success on the Merits Does Not Favor Settlement.

This is one of the most important factors for the Court to consider in determining whether the proposed settlement is fair, reasonable, and adequate. The Court "cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631 (quotation omitted).

Much of the evidence needed to assess the likelihood of success and the amount of potential damages has been sealed from the public. This itself demonstrates that the parties have not met their burden of demonstrating the reasonableness, fairness, or adequacy of the proposed settlement.

The information that is publicly available strongly suggests that Plaintiffs have a substantial likelihood of success. First, Blue Cross's alleged antitrust violations were determined to be significant enough that the United States Department of Justice ("DOJ") brought a federal court complaint against Blue

19

Cross alleging that the MFN Agreements violated federal antitrust law. *United States v. Blue Cross Blue Shield of Michigan*, No. 2:10-cv-14155 (E.D. Mich. Oct. 18, 2010), Compl. [Dkt. #1]. The allegations in the DOJ complaint are thorough and specific, showing that the DOJ undertook a detailed investigation of the merits before deciding to bring its antitrust lawsuit against Blue Cross. Indeed, most of the allegations in the Consolidated Amended Complaint in this case are based on the DOJ complaint.

Second, the Michigan legislature was concerned enough about the anti-competitive effect on healthcare costs of Blue Cross's MFN Agreements with Michigan hospitals to explicitly ban such agreements by legislation passed in March 2013. *See* MCL 500.3405a. This is very strong evidence of the anti-competitive nature of the MFN Agreements.

Third, the DOJ dismissed its federal court complaint against Blue Cross without prejudice only because the Michigan legislature passed the statute outlawing the MFN Agreements. The DOJ effectively attained through legislation the injunctive relief that the DOJ sought against Blue Cross in the lawsuit. Stip. to Dismiss Without Prejudice, **Ex. 7**.

Fourth, the Court has not granted a dispositive motion in favor of Blue Cross in this class action lawsuit, the related Aetna lawsuit, or the original DOJ lawsuit, despite each of these cases being filed several years ago. If the antitrust claims

concerning the MFN Agreements had no likelihood of success on the merits, these cases would have been resolved by dispositive motion long ago.

Finally, in Plaintiffs' motion for preliminary approval of the settlement, Plaintiffs offered little more than generic statements to the Court about litigation risk and statistics about settlement amounts in other antitrust class actions lawsuits. In contrast, the publicly available information specific to this case strongly suggests that Plaintiffs have a substantial likelihood of success on the merits.

When the evidence supporting a finding of liability against Blue Cross is considered in conjunction with the massive amount of potential damages and the possible recovery of treble damages and attorneys' fees, it is obvious that the proposed settlement is grossly unreasonable. Class members have nothing to lose—and everything to gain—by going forward with trial. Plaintiffs have not come close to meeting their burden of demonstrating that the proposed settlement is fair, reasonable, and adequate.

**5.**     **The Opinions of Class Counsel and Class Representatives Should Not Be Given Significant Weight Due to the Preferential Treatment Afforded to Class Counsel and Class Representatives in the Settlement.**

One of the factors this Court may consider in deciding whether the proposed settlement is reasonable is the opinion of class counsel and class representatives concerning the proposed settlement. Obviously, class counsel and class representatives support the proposed settlement.

21

However, in circumstances such as this, where class counsel and the class representatives would receive preferential treatment under the terms of the settlement, there is no reason to give any weight to their opinions. Class counsel and the class representatives have a conflict of interest due to their heavy financial incentive to push for the proposed settlement. This factor does not weigh in favor of approving the settlement.

### 6. The Reaction of Absent Class Members Demonstrates that the Proposed Settlement Is Unfair, Unreasonable, and Inadequate.

Aetna's parallel lawsuit against Blue Cross provides significant evidence of the inadequacy of the proposed settlement. As discussed above, Aetna has alleged that it alone has suffered over $600 million in damages as a result of the MFN Agreements. When trebled under federal antitrust laws, Aetna alleges that its individual damages claim against Blue Cross is over $2 billion.

There can be no question that the aggregate damages to class members far exceed the damages being sought by Aetna. Even if Aetna's damage estimate is overstated by a magnitude of 10—such that Aetna's individual damages are more accurately assessed at $200 million, rather than $2 billion—this would still be overwhelming evidence that the proposed net settlement fund of approximately

$15 million to reimburse the claims of millions of class members is unfair, unreasonable, and inadequate.[8]

### 7. Public Interest Factors Do Not Weigh in Favor of the Settlement.

A final factor that the Court can consider in deciding whether a proposed settlement is fair, reasonable, and adequate is the broader interest of the public at large. In this case, nearly every member of the public is a class member. Under these circumstances, the interests of the public are best analyzed as part of assessing the reasonableness of the settlement to the class. This factor does not weigh in favor of approval of the settlement.

### B. THE PROPOSED SETTLEMENT IS UNFAIR UNDER THE PREFERENTIAL TREATMENT STANDARD.

### 1. The Preferential Treatment Received by the Named Plaintiffs in Their Incentive Awards Also Requires Rejection of the Settlement.

Under the proposed settlement agreement, the named Plaintiffs may receive incentive awards of up to $10,000 for each individual Plaintiff and up to $50,000 for each Plaintiff organization. These incentive awards are far in excess of the amounts that the named Plaintiffs would otherwise receive as class members—an average of $1 for every $5,681 spent at Michigan hospitals since 2006.

---

[8] The Self-Insured Objectors cannot evaluate the strength of Aetna's damages claim because, just like in this case, virtually all of the substantive documents in the Aetna case are filed under seal.

23

As discussed above, the Sixth Circuit has twice recently held that, in circumstances where the incentive payments to plaintiffs grossly exceed the amount the named plaintiffs would otherwise receive in the settlement as a class member, such that there is a "patent divergence of interest between the named representatives and the class." *Greenberg*, 724 F.3d at 722 (quotation omitted). "The incentive payments provide[ ] a *disincentive* for the class members to care about the adequacy of relief afforded unnamed class members, and instead encourage[ ] the class representatives to compromise the interest of the class for personal gain." *Id.* (quotation omitted)(emphasis in original). The Sixth Circuit has clearly held that "such inequities in treatment make a settlement unfair." *Vassalle*, 708 F.3d at 755.

### 2.      The Preferential Treatment Provided to Class Counsel Also Makes the Proposed Settlement Agreement Unfair.

The same can be said of the preferential treatment class counsel would receive under the proposed settlement.   Again, the Self-Insured Objectors acknowledge that an award of up to $10 million in attorneys' fees might have been appropriate if class counsel had negotiated a much larger settlement fund. However, under the proposed settlement, the amount to be paid for attorneys' fees and expenses to class counsel is almost equal to the total amount to be paid to the millions of class members.

24

Under these circumstances the proposed settlement is unfair to the class, in that it gives preferred treatment to class counsel over the interests of the millions of unnamed class members. There can be little question that class counsel has "urge[d] a settlement at a low figure or on a less-than-optimal basis." *Greenberg*, 724 F.3d at 718. Although class counsel purports to be getting paid less than their full rates on the time they have spent on this litigation, there is no doubt that class counsel would be well-compensated for their work on this action under the proposed settlement, whereas the millions of class members would receive a relative pittance—an average of $3.00 each. "Such inequities in treatment make a settlement unfair." *Vassalle*, 728 F.3d at 754.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Self-Insured Objectors request that this Court reject the proposed settlement of this matter as unfair, unreasonable, and inadequate to the class.

VARNUM LLP
*Counsel for Objectors*

Dated: September 24, 2014          By:   <u>s/ Bryan R. Walters</u>
                                          Bryan R. Walters (P58050)
                                   Business Address, Telephone, and E-Mail:
                                          P.O. Box 352
                                          Grand Rapids, MI 49501-0352
                                          (616) 336-6000
                                          brwalters@varnumlaw.com

25

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to counsel of record.  I also caused the foregoing paper to be served via first-classed United States mail, postage prepaid, to the following individuals:

*Daniel A. Small*                     *Todd M. Stenerson*
*Brent W. Johnson*                    *D. Bruce Hoffman*
*Cohen Milstein Sellers & Toll PLLC*   *Hunton & Williams LLP*
*1100 New York Avenue, NW, Suite 500*  *2200 Pennsylvania Avenue, NW*
*Washington, DC 20005*                 *Washington, DC 20037*


By:   s/ Bryan R. Walters
          Bryan R. Walters (P58050)
      Business Address, Telephone, and E-Mail:
          P.O. Box 352
          Grand Rapids, MI 49501-0352
          (616) 336-6000
          brwalters@varnumlaw.com

8745334_1.docx

26

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

John Shape
ADAC Automotive

8763025_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

Brian Pate
Alma Products Company

8763052_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

Dana M. Clark
Baker College

8767197_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

Thomas Gambon, VP Of Finance & Administration
Borroughs Corporation

8769436_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

John Workman
Eagle Alloy, Inc.

8766255_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

Marc Waggener
Fisher & Company

8767277_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

Brett M. Godush, *VP Legal Affairs*
Four Winds Casino Resourt

8762987_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

_____
Vernon L. Schiefer
Frankenmuth Bavarian Inn, Inc.

8770076_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

_____
Linda Janks, Controller
Gemini Group, Inc.

8766314_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

Jennifer Irish

Jennifer Irish
Gill-Roy's Hardware / Morgan Properties, LLC

8763114_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

_____
Alvin V. Pedwaydon, Tribal Chairman
Grand Traverse Band of Ottawa and Chippewa Indians

8763131_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

_____
John Flack
Hi-Lex Corporation

8763141_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

_____
Michael Brom
Huizenga Group

8763165_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the

Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to

Proposed Class Settlement dated June 26, 2014,

Date: September 24, 2014

Jeff VanderLaan
Kent Companies, Inc.

8763176_1.DOCX

The undersigned has retained Varnum LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.


Date: September 24, 2014

Tom Binder
LaBelle Management, Inc.

8763184_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

_____

Steve Sierakowski
Master Automatic Machine Company, Inc.

8768637_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

Debra C. Lehmann, Treasurer/VP Finance
Morbark, Inc.

8768739_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

Sue Maskaluk, Corporate Treasurer
Petoskey Plastics, Inc.

8768568_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

Kathleen A. Brady                    DARRYL RABON
SAF-Holland, Inc.                    SAF-Holland, Inc.

8766032_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

Art Loeffler
Star of the West Milling Company

8766621_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

Victoria Belgeri
Tarus Products, Inc.

8774711_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

_____
David Beemer
Terryberry Company, LLC

8763246_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

A. Scott Kostus
Thelen, Inc.

8762670_2.docx

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

Timm Sturgeon
Trillium Staffing Solutions

8763270_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

_____
David Benson
Truss Technologies

8763288_1.DOCX

The undersigned has retained VARNUM LLP to file this Objection and hereby signs the Objection pursuant to paragraph 7(b) of the Court's Order Granting Preliminary Approval to Proposed Class Settlement dated June 26, 2014.

Date: September 24, 2014

Ralph Picano, Controller
Wade Trim Group, Inc.

8770009_1.DOCX