October 06, 2014

Via Hand Delivery

Clerk of Court

The United States District Court

For The Eastern District of Michigan

Southern Division

U.S. Courthouse

231 W. Lafayette Blvd.

Detroit, Michigan 48226



The Shane Group, Inc. etc. al

Plaintiffs,

v. Blue Cross Blue Shield of Michigan,

Defendant .

Christopher Andrews, objector, Pro se also

is acting as representative under Power of

Attorney for Objector C.W. individual and

as executor of the estate of E.G. and E.G.

and as representative for Objector R.W.

and M.A, individuals will be known as the

Case No. 2:10-cv-14360-DPH-MKM

Supplement to existing objection of

settlement against approval, Plaintiffs'

Counsels application for attorneys' fees,

rates, hours, expenses, incentive awards,

expenses of the administrator, notice,

notice plan, and release. Counsel is

inadequate, dismissal requested. Fairness

Hearing: November 12, 2014 Time: 2:00

pm Courtroom of Judge Denise Page Hood

"Andrews' Objectors" for reference

purposes. In the initial objection the names

were not redacted by the clerk and

docketed so they will be redacted here.

Names are available to the Court and

Plaintiffs' Counsel upon request.

**Tables of Authorities:**

*Dry Max Pampers*, 724 F.3d at 717 (emphasis in original)....................44

*Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998); ..44

[*GMC Pickup Litig.*], 55 F.3d 768, 820 (3d Cir. 1995) (internal quotation marks

omitted)............................................................................44

Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2013) ....................45

Packaged Ice Antitrust Litig., No. 08-MDL-01952,2011 U.S. Dist. LEXIS 150427,

at *42 (E.D. Mich. Dec. 13, 2011);IUE-CWA v. General Motors Corp., 238 F.R.D.

583, 593 (E.D. Mich. 2006).......................................................50

Dallas v. Alcatel-Lucent USA, Inc., No. 09-cv-14596, 2013 WL 2197624, at *8

(E.D. Mich. May 20, 2013) (quoting In re Inter-Op Hip Prosthesis Liab. Litig.,2

04 F.R.D. 359, 379 (N.D. Ohio 2001)).............................................51

UAW v. GMC, No. 05-cv-73991, 2006 U.S. Dist. LEXIS 14890, at *63 (E.D.

Mich. Mar. 31, 2006).............................................................70

*Bluetooth,* 654 F.3d at 947 ..................................................................74

*Staton,* 327 F.3d at 964..........................................................................66

Staton v. Boeing Co., 327 F.3d 938, 975 (9th Cir. 2003)..........................75

*Weseley v. Spear, Leeds & Kellogg,* 711 F. Supp. 713, 720 (E.D.N.Y. 1989); see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co., 75 F.R.D. 173, 180 (S.D.N.Y. 1977).......................................................75

*Cook v. Niedert,* 42 F.3d 1004, 1016 (7th Cir. 1998)..............................77

*Vranken v.Atlantic Richfield Co.,* 901 F.Supp. 294, 299 (N.D. Cal. 1995).......77

Global Materials v. Superior Court, 113 Cal. App. 4th 836, 851 (2003) ; see also Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978), citing Nat'l Assoc. of Reg'l Med. Programs, Inc. v. Mathews, 551F.2d 340 (D.C. Cir. 1976); Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3:23 (4th ed. 2002).......................................................................78

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. Cal. 2009)........79

Mercury Interactive Corp., 618 F. 3rd 988, 994-95 (9th Cir. 2010) (quoting In re Washington Pub. Power Supply Systems Lit. 19 F. 3d 1291, 1302 (9th Cir 1994)).......................................................................70

In re Relafen Antitrust Litigation, 360 F. Supp.2d 166, 192-94 (D.Mass. 2005), citing inter alia Amchem Prods., Inc v Windsor, 521 U.S. 591, 617, 623 (1997) (Rule 239e).......................................................................79

Reynolds v. Beneficial Nat't Bank, 238 F. 3d 277, 279-80 (7th Cir.

2002)……………………………………………………………………...…..79

 In re General Motors Corp, Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55F. 3d

768, 785 (3d Cir. 1995) (quoting Grunin v International House of Pancakes, 513 f.

2d 114, 123 (8th Cir.1975))… ………………………………………….…..80

True v American Honda co. 749 F. Supp. 2nd 1052, 1080 (C.D.Cal. 2010) ( citing 4

newberg on Class actions $ 11:42 (4th ed 2009)). Accord American Law Institute,

Principles of the Law of Aggregate Litig. $3.05 © (2010) (Ali

Principles")……………………………………………………………80 Hanlon v. Chrysler

Corp., 150F. 3d 1011, 1021 (9th Cir. 1998); In Bluetooth Handset Prods. Liability

Litig., 654 F. 3d 935, 947 (9th Cir.

2011)……………………………………………………………..80 Grovev Principal Mut.

Life Ins. Co., 200 F.R.D. 434, 447 (S.D. Iowa 2001) citing In re Gen Motors Pick-Up

Litig., 55 F. 3d at 789.)………………………….82 Thedore Eisenberg & Empericial

Issues, 57 VAND .L. Rev. 1529, 1532 (2004).82 In (*Radcliffe v. Experian Information

Solutions Inc.* (--- F.3d ----, C.A.9 (Cal.), May 2, 2013).50in *Vassalle v. Midland

Funding LLC*, 708 F.3d 747 (6th Cir. 2013)………………………………………….83,

In re Pet Food Prods. , 629 F.3d 333, 355 (3d Cir. 2010)……………………………84

Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.), No. 11-4156,

2013 WL 3957060, at *1 (6th Cir. Aug. 2, 2013).) ........................................84

Beattie v. CenturyTel, Inc., 234 F.R.D. 160, 169 (E.D. Mich. 2006) (quoting Stout v.

J.D. Byrider , 228 F.3d 709, 717 (6thCir. 2000))............................................86

In re Gen. Motors, 55 F.3d at 800 (citations omitted).....................................88

In re Gen. Motors, 55 F.3d at 795 (citing Eisen v. Carlisle & Jacquelin, 391 F.2d 555,

562 (2d Cir. 1968))................................................................... ...............88

Wetzel, 508 F.2d at 247. ......................................................................88

See, e.g., Amchem Prods. v. Windsor, 521 U.S. 591, 625 (1997)....................88

McCrary v. Elations Co., 2014 U.S. Dist. LEXIS 8443, at *36 (C.D. Cal. Jan. 13,

2014)...................................................................................................89

Radcliffe v. Experian Info., 715 F.3d 1157, 1164–65 (9th Cir. 2013)...................89

Porter v. Nationscredit Consumer Disc. Co., 2004 U.S. Dist. LEXIS 13641, at *6–8

(E.D. Pa. July 8, 2004)............................................................................89

Sheffield, 280 B.R. 719, 722 (Bankr. S.D. Ala. 2001).................................90

London v. Wal-Mart Stores, 340 F.3d 1246, 1255 (11th Cir. 2003); see also Sipper

v. Capital One Bank, 2002 U.S. Dist. LEXIS 3881, at *7–8 (C.D. Cal. Feb. 28,

2002)...................................................................................................90

General Motors, 55 F.3d at 801-3.............................................................90

Amchem Products, Inc. v. Windsor, 521 U.S. 591, 619-20 (1997)......................91

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).........................97

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 216 F.R.D. 197, 203

(D.Me.2003); *see also Eisen v. Carlisle & Jacquelin,*417 U.S. 156, 174, 94 S.Ct.

2140, 40 L.Ed.2d 732 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.,*339 U.S.

306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950)...........................................................101

In Cardizem CD Antitrust Litig., 218 F.R. D. at 533.................................................126

*Id.* at *8, *citing Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991) 128  at

*8-9, *citing Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007). .........................128

*Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003)...................................128, 129

 Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Albany, 484 F.3d 162 (2d

Cir. 2007)................................................................................................................129

 Visa Check/Mastermoney Antitrust Litig., 297 F. Supp. 2d at 522................129

Goldberger v. Integrated Resources , Inc. , 209 F.3d 43, 47 (2d Cir. 2000)(citing

Mills v.*Electric Auto-Lite Co.*, 396 U.S. 375, 392(1970))...........................130 IPO Sec.

Litig., 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009)................................................133

Kenny A. v. Perdue...............................................................................................139

Citigroup Inc. Securities Litigation, 07-cv-9901, U.S. District Court, Southern

District of New York..............................................................................................92

*Hensley*, 461 U.S. at 433-434. *Kenny A. v. Perdue........ .........................................139*

*Hensley v. Eckerhart*, 461 U.S. 424 (1983); *see also United States v. Metro. Health*

*Corp.*, No. 02-485, 2005 WL 3434830 (W.D. Mich. 2005)....................................139

*Hensley*, 461 U.S. at 433-434. ......... ......................................................................130

*Blum v. Stenson*, 46 U.S. 886, 897 (1984)................................................................140

Michigan. *Id.* at 897; *Adcock-Ladd v.Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir.

2000).........................................................................................................141

*Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 F. App'x. 498, 501-02 (6t Cir.)

*Gratz v. Bollinger*, 353 F. Supp. 2d 929, 948 (E.D. Mich.2006)...............................141

*Gratz v. Bollinger*, 353 F. Supp. 2d 929, 948 (E.D. Mich............................................142

Reed v Rhodes, 179F.,3d 453, 471 (6th Circuit 1999) (quoting Blum v Stenson,  U.S.

886, 897 (1984).........................................................................................................152

City of Burlington v  Dague, 505 U.S. 557, 562 (1992)............................................152

Bowling, 102 F.3d at 779............................................................................................152

Pennsylvania vs v Delaware Valley Citizens' Counsel for Claen Air, 478 U.S. 546,

565 (1986).........................................................................................................153

Adcock –Ladd v Sec'y of Treasury, 227 F 3rd 343, 350 (6th Circuit 2000) (quoting

Blum v Stenson, 465 U.S. 886,895 (1984)................................................................143

Geier v Sundquist, 372 F. 3rd 784, 791 (6th Circuit 2004)...................................143,153

Addock-Ladd, 226 F3rd.at 349 (quoting Johnson v Georgia Highway Express,Inc.,488 F.2d 714,717-719 (5)th Cir 1974),................................153

B&G Mining, Inc.v Director, Office of Workers Comp. Programs , 522 F. 3d 657, 663 (6th Cir. 2008)................................................……….……........153

*Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975)…....….165

*In re Diet Drugs*, 431 F.3d 141, 145 (3d Cir. 2005).............................…......165

Lehman Bros. Sec. & ERISA Litig., No. 09-MD-2017 (S.D.N.Y. June 29,2012) [Dkt. No. 970].....................................................................................179

*Michael Saunders v. StubHub Inc.*, Case No. CGC12517707, in the Superior Court of California, County of San Francisco...........................................….....181

Postill v. Postill,  116 Mich. App. 57 8, 323 N.W.2d 491 (1982)......................................................................….................…..183

Wallace v. Bell,387 F.Supp. 2 d 728, 738 (ED Mich 2005) citing Chapman v. California,386 US 18, 23 n.8 (1967)..........................................…....183

Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir. 1993).....................…...184

11-12557 - Hi-Lex Controls Incorporated et al v. Blue Cross and Blue Shield of Michigan.........................................................................................190

**Statutes, rules and regulations**

28 U.S.C. § 1711……………………………………………… ……………13

Federal Rule of Civil Procedure 23…………………………20,29,33,40,115,117

Fed. R. Civ. P. 21; …………………………………………………..38

Fed.R. Civ. P. 23(a) and (b)(3); ………………………..……………………39

Rule 23(b)(3)……………………………………………………45

Rule 23(g) …………………………………………………………51

Rule 23(h)…………………………………………………………124

Rules 23(a)(4) and (g)……………………………………………..……75

Fed. R. Civ. P. 23(a)……………………………………………………85,87

Rule 23(b) …………………………………………………………85

Fed. R. Civ. P. 23(a)(4)……………………………………………..……88

Rule 23(a)(4)………………………………………………………91

Rule 23(c)(2)(B)……………………………………………………54,73

Rule 23(e)(1) and MCL 4th § 21.312),……… ………………………………96

Fed. R. Civ. P. 23(e)……………………………………………………97

Rule 23……………………………………………………………100

Fed.R.Civ.P. 23(c) (2) (B)…………………………………………………….……………….100

Fed.R.Civ.P. 23(e)(1)……………………………………………………….…………..101

Federal Rules of Civil Procedure 23(h)…………………………………………..78,105

54(d)(2)……………………………………………………………………..……….....124

Rule 54………………………………………………………………...………125,150

Rule 23 h 4……………………………………………………………………129,152

Federal Rules of Civil Procedure 23(h)(4) and 53(a)(1)(C)………………..……147

MCL 4th §21.727………………………………………………………………147

28 U.S.C. § 1715,……………………………………………………………...…177

Rule 3.3………………………………………………………………………184

Rule 3.1………………………………………………………………….…185

Rule 1.2(d)……………………………………………………………...…185

Rule 1.2(c)……………………………………………………….…………186

Rule 23(e)…………………………………………………………………192

Rule 23(a) …………………………………………………………………193

Rule 23(a)(4),  23(e)………………………………………………….…………163

Rule 23(e) of the Federal Rules of Civil Procedure……………………….……163

Rule 58 of the Federal Rules of Civil Procedure………..……………………..163

## Other Miscellaneous Terms

Fed Fund Rate...............................................................................50,57

Crain's Business article on settlement, quoting Plaintiffs' Counsel's dated

September 07, 2014................................................................................59

Legalese definition...............................................................................104

**2014 Economics of Law Practice Attorney Income and Billing Rate Summary**

**Report.................................................................18,119,135** Peer

Group 1-5 ............................................................................................176

## Table of Contents:

INTRODUCTION...............................................................................16

Preliminary Statement.........................................................................20

Deadlines in the Order granting Preliminary Approval to Proposed Class settlement

have not been met and/or carried out.................................................28

Plaintiffs' unopposed motion for preliminary approval of settlement I-VIII......36

Memorandum in support of Plaintiffs' unopposed motion for preliminary approval

of settlement, certification of settlement class and related relief is defective......38

The Court should NOT approve the proposed settlement, includes Crain's article

September 2014  media comments about settlement by Plaintiffs' Counsel that raises

more issues........................................................................................51

The Settlement Is NOT the Result of Arm's-Length Negotiations.................. 71

The Court Has A Fiduciary Duty to The Unrepresented Members OF The Class 80

Public Policy Reasons Mean That the Court Should Not Infer Settlement Approval

from a Low Number of Objectors………………………………………..…….82

The Sixth Circuit reverses two settlements due to incentive awards…….............84

Noah & Baynard should NOT be added as additional named plaintiffs…..……...86

The settlement class should not be certified and class counsel dismissed as

inadequate along with named plaintiffs…. …….. . ………………………..…...87

The class notices and the notice plan are defective should NOT be approved…….93

Declaration of Shannon R. Whetman, PH.D on the adequacy of notice plan is

wrong………………………………………………………………………………100

This court should NOT approve the plan of allocation and the claim form because

they are defective ……………………………………………………………..…102

Defendant cannot respond to any objections received, the Court should

disregard………………………………………………………………..…….. 118

Objectors will "deconstruct" Plaintiffs' Counsel's motion for award of attorneys'

fees,  reimbursement of expenses, and payment of incentive awards to class

representatives and should NOT award them ……………..…..……………… 119

Declaration of Daniel C. Hedlund in support of Class Counsel's motion for award of

attorneys' fees, reimbursement of expenses and payment of incentive awards to class

representatives…..……………………………………………………………..120

Plaintiffs' Counsel Should NOT Be Awarded a Fee from the Settlement Fund... 126

There are no reasonable hourly rates in this case, just usurious rates............. 134

About Those Contract Lawyer Fee Markups ........................................129

The $5,400,000.00 possible fraudulent lawyer billing scam .........................142

The $3,500,000.00 inflated expense claim is unreasonable and should NOT be

Reimbursed ... ..............,.................................................... 158

The high on crack document review illusion......... ... ...  .. .. ........... ....168

The $165,000.00 quid pro quo Class Representative Incentive Awards Are

Unreasonable and Unconscionable...................................................... 165

"Extensive work preparing the initial Complaints and the subsequent Consolidated

Amended Complaint" is false statement..................................:.... 165

Briefing and prevailing against Defendant's Motion to Dismiss.................. 168

The high on crack document review illusion........................................: 168

The Class Action Settlement Release is defective and void........................175

Suggested attorney fee should be zero.............................................. 180

Possible Fraud on the Court is occurring............................................... 183

Michigan Rules of Professional Conduct may have been violated..............185

Deny motion to certify............................................................ 193

CONCLUSION..................................................................194

The accurate attorney fee lodestar is calculated correctly in this case ...…196-217

## The Beginning

**Statutes and Rules**

**28 U.S.C. § 1711 note.**

§ 2(a) Findings. Congress finds the following: …

(3) Class members often receive little or no benefit from class actions, and are

sometimes harmed, such as where—

(A) counsel are awarded large fees, while leaving class members with coupons or

other awards of little or no value;

(B) unjustified awards are made to certain plaintiffs at the expense of other class

members; and

(C) confusing notices are published that prevent class members from being able

to fully understand and effectively exercise their rights.

**Federal Rule of Civil Procedure 23. Class Actions.**

**(a) Prerequisites.**

One or more members of a class may sue or be sued as representative parties on

behalf of all members only if:

(4) the representative parties will fairly and adequately protect the interests of

the class.

**(e)    Settlement, Voluntary Dismissal, or Compromise.**

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures

apply to a proposed settlement, voluntary dismissal, or compromise:

...

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

...

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

...

**(g) Class Counsel.**

...

(4) *Duty of Class Counsel.* Class counsel must fairly and adequately represent the interests of the class.

**(h) Attorney's Fees and Nontaxable Costs.**

In a certified class action, the court may award reasonable attorney's fees and

nontaxable costs that are authorized by law or by the parties agreement. The

following procedures apply:

(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to

the provisions of this subdivision (h), at a time the court sets. Notice of the motion

must be served on all parties and, for motions by class counsel, directed to class

members in a reasonable manner.

(2) A class member, or a party from whom payment is sought, may object to the

motion.

## INTRODUCTION:

- Objectors have records that show they paid for healthcare services at a general

  acute care hospital in Michigan between January 1, 2006 and June 23, 2014, are

  members of the settlement class in Category 1, 2 and 3; therefore have standing

  to object to the settlement. Attached as Exhibit "aa" are just a few bills and there

  are more from C.W. showing payments for services at William Beaumont

  Hospital and Providence Hospital for E.G for six plus days and paid bills for E.B

  for six days at William Beaumont hospital. Christopher Andrews has also

  attached paid invoices through HAP at Henry Ford Hospital. Other objectors are

  obtaining their records as well as the executor papers for C.W. on behalf of E.G.

and E. B. will be submitted to the court prior to the hearing, most likely with the sur-reply.

- Christopher Andrews, Pro se, non attorney, also is acting as representative under Power of Attorney for objector C.W. individual and as executor of the estate of E.G. and E.B. PO Box XXXXXXXXXXXXXXXX and for individuals R.W. XXXX PO Box XXXXXXXXXXXXXXXx and M.A. XXXXXXXXXXX  (The clerk failed to redact this information in the September 24, 2014 objection so it is being redacted here.)

- Objectors and Representative's mailing address where all correspondence should be directed to for all objectors is Christopher Andrews P.O. Box 530394 Livonia, MI 48153. The telephone number is 1-248-635-3810. E-mail is caaloa@gmail.com. Objectors and their representative do intend to appear at the fairness hearing on November 12, 2014 and request permission to speak to the Court. Objectors have  attached several additional exhibits as follows,

  - A 41page NERA for securities settlements dated January 21, 2014 (Exhibit A) showing the average attorney fee in a settlement this size for the latest reporting period ending in 2013 is 25% vs. the 33% counsel requests, is located on page 34. The average expense over a seventeen year period compared to the settlement amount is 2.3% **vs. 33.5% in this case.** There are no comparative

studies for expenses for consumer settlements; this is next best thing to use as a comparison.

- A copy of the complaint filed by the U.S Government and State of Michigan with paragraphs numbered 1-79 (Exhibit B),

- A copy of original class action complaint with paragraphs labeled 1-79 and A-V45 (Exhibit C),

- A copy of the amended complaint with paragraphs labeled A-V45 (Exhibit D),

- A ten page "Judges' Class Action Notice and Claims Process Checklist and plain language guide 2010 (Exhibit E).

- A twelve page copy of the 2014 Economics of Law Practice, Attorney Income and Billing Summary Report. Page 4 is the key for the Court to zero in on. (Exhibit F)

Objectors request the following:

- An opportunity to speak to the Court and the option to cross-examine any witnesses who may testify at the hearing in support of settlement approval.

- A list of any witness or named plaintiffs to be called with their cv (resume) and the specific scope of their testimony and copies of any evidence they may or will introduce at the hearing.

- The option to perform discovery on certain issues that are described below per Rule 23, 4 paragraph 2, if necessary.

- Objectors reserve the right to file a sur-reply if necessary.

- Objectors request that the Fairness hearing NOT be rescheduled if plaintiffs' Counsel requests it and if it is that Plaintiffs' Counsel notify objectors by email and call cell phone immediately as listed in objection and leave a message if there are any changes. Objector's schedules are being cleared to attend the hearing.

- Objectors' reserves the right to supplement this objection at any time. In addition if the parties introduce new facts, evidence, arguments or valuations after Plaintiffs Counsels' settlement filing made on July 24, 2014 this may call for an additional addition to the objection.

- Objectors do not intend to call any witnesses at the fairness hearing at this time but reserve the right to and make use of all documents entered on to the docket by any settling  party/objector/witness or any visual items used at the fairness hearing.

  - Objectors' incorporate any other objections received in this matter into this objection that are not inconsistent with their own and reserves the right to amend and expand on those objections.

  - Objectors request copies of any objections or papers filed sent via email.

  - Objectors adopt all definitions used in the complaint and amended complaint.

- Objectors adopt all of defendant counsel's definitions as described in defendant's own designed, defective and one sided Class Action Settlement Agreement dated June 23, 2014 document # 148-1.

- Objectors request a copy of the expert's reports and summaries estimating the alleged damages to the class in the amount of $120 million. Counsel can attach it their response to this objection or post it on the website etc. Objectors agree to sign a confidentiality/ secrecy agreement to view the requested information and a response if any can be filed under seal if required.

**Preliminary Points of Concern and failures which give the objectors and class members cause to pause.**

This is a page-turner of an objection and you can't make up the stuff you are about to read. This settlement suffers from multiple material concerns and defects that are equal to the number of holes on a golf course. Here are a list of some of the failures of this proposed settlement that clearly show it is NOT fair, reasonable, adequate, in the public interest, does not satisfy district or circuit factors, outside district or circuit factors  for settlement and clearly is a failure.  It also creates a conflict between class members by treating some of them much better than others rendering the named plaintiffs and class counsel inadequate. The class has been poorly and inadequately represented as the court will see and should be dismissed

along with the named plaintiffs and administrator.  The missing, neglected,

unexplained, hidden, overlooked issues, contradictory information, intentional

sworn under oath overcharging of fees and expenses to the class, undocumented

administrator's costs, missing facts, flawed notice, flawed claim forms and fatal

material errors throughout this entire proposed settlement make it unapprovable as

is, so it……. "look(s) like a jigsaw puzzle with a couple of pieces gone." (Jim

Croce- Bad Bad Leroy Brown-1973)

**It is up to the Plaintiffs Counsel to prove what they request not for the**

**objectors to disprove it, a huge difference.**

In reviewing the motion for preliminary approval and motion for attorney fees etc.

**NOT** once did Plaintiffs' Counsel state for the record that this particular proposed

settlement was the product of "good faith."  The reason why they did not claim it

and can't claim it is because it does not exist in this settlement as will be proven

below.

The proposed $30 million settlement does not fit approval guidelines under Rule

23 of the Federal Rules of Civil Procedure; violates existing case decisions in this

district, this circuit, in and out of this district/ circuit and the due process clause

under the Constitution. Here are a few reasons why this settlement can't be

approved:

- Substantial recovery of more than $30 million based on the evidence so far in this case is realistically possible against the Defendant and currently is an unacceptable percentage of the alleged current damages caused by defendant. Objector's require more evidence of damage calculation.

- Not fair, reasonable and adequate in all respects.

- Not in the best interests of the class members but it is for counsel and named plaintiffs.

- Not in the public interest.

- Runs contrary to public policy.

- Violates due process clause.

- Lead counsel has breached its fiduciary duty of the class by putting its own interest ahead of the class by accepting this quid pro quo settlement.

- This proposed settlement creates no meaningful relief to the class.

- Continued litigation does not pose substantial risks of reducing defendants' ability to fund a settlement or judgment, rather it is more likely the settlement will rise by many multiples. This first settlement offer is a trial balloon that is punctured and useless.

- The Settlement does not appropriately balance the risks of litigation and the benefit to the settlement class victims of a far superior recovery.

- Continued litigation does not pose substantial risks in establishing liability.

- Continued litigation does not pose substantial risks in establishing damages.

- Balancing the certainty of a curb high immediate recovery against the recovery of many multiples of $30 million in a better negotiated settlement, or trial. Logically an increased offer the closer to trial or trial verdict dictates and favors the continuation of the suit and rejecting the cheap shell game settlement offer.

- Based on what counsel demands and the inflated fees and expenses they want to charge to the class, the unnamed class members will receive less than half of the gross settlement amount, a gross miscarriage of justice rendering the fee and expense driven settlement unapprovable.

- The proposed settlement is not approvable because Rule 23 provisions have not and cannot be met without major revisions in this entire proposed settlement along with additional net settlement funds for the class.

- There are no declarations from the named class members stating they agree with the settlement. A sworn statement is needed from each of them explaining the reasoning for them allowing this proposed $30 million settlement to go forward especially after they read this objection to see if

they agree or disagree with what has been written. Named class members

will be given this objection to review, right counsel?

The grocery store list of other issues includes but is not limited to which will be

expanded further below incluse:

- The definition of the size of settlement class is unreasonable because the
  total compensation is inadequate.
- A second opt out period should now be required based on the new
  information made available in this objection that is material enough that it
  would have swayed class members when they were deciding what was the
  best course of action to take.

- The incentive awards sought by representative named plaintiffs with
  Plaintiffs' Counsels endorsement are excessive and create a fatal conflict
  between lead plaintiffs and absent class members which have broken the
  bond of trust and cannot be repaired so a divorce is required and requested.
- There are three separate classes based on divergent interests those being
  Categories 1, 2 and 3 that class members have been placed into without them
  even knowing it and no one representing each group.
- Postcard short notice is defective and should be revised since it's not the best
  practical notice based on form and more importantly, content.

- Long notice is defective, has to be redone properly and re-mailed to all class members.

- Claim forms are flawed.

- The release is defective, flawed, written by defendant, over broad and invalid.

- Cy pres was not mentioned in the detailed notice, short or long form so objectors object to any program, period.

- Claim packets are defective and have to be re-mailed as well.

- Hourly rates are intentionally inflated by 34.5% or $157.00 per hour for the 34,343 hours claim based on the Michigan Bar Survey Rates of 2014 matching the job description to the hourly rates in the city of Detroit. $157.00 per hour overcharge multiplied by 34,343 hours claimed is a $5,416,963 in overbilling to the class. The hours claimed are also inflated causing this number to rise even further. The sworn declarations are going to pose a severe problem down the line for many of those who signed them and attempted to intentionally mislead and deceive the class and Court and overbill the class on fees and expenses as well as fraudulently trick the court into approving the settlement.

- $3.5 million in expenses are grossly inflated, misleading; missing many details and a significant portion may be fraudulent without receipts.

- Hours claimed are clearly misleading, deceiving, grossly inflated and have the effect of being possibly being fraudulent based on the evidence in this objection.

- There are errors and negligent pleading errors in complaint and amended complaint that have also caused the settlement to become invalid as is, and there is less potential damages to be able to be negotiated and/or recovered in this settlement and at trial for the class, resulting in an unacceptably lower settlement amount than the class is entitled to.

- No recovery percentage amount per dollar spent by class members in all three separate classes has been offered to class members so they cannot calculate their realistic or even ball park recovery amount. Class members cannot adequately decide how to exercise their options as to object, opt out, stay in, file a claim in say small claims court or do nothing without this information and they don't even know it by design. The class should have been told this.

- The total damage estimate appears to unrealistically underestimated, possibly for settlement purposes, based on the amount of purchases made by defendant in one year alone (2007). The amounts charged to many hospitals seem to indicate that amount of $120 million alleged total damages incurred

by the class over a seven and a half year period caused by the defendant is
unrealistically low. There is no evidence supporting damage estimate.

- There are errors in the terms of the release so the agreement should be ruled
  invalid.

Based on the evidence in the settlement papers, docket and this objection an
informed evaluation by the Court cannot be made because of missing, incorrect,
misleading facts and information so there can be no understanding of the strength
of the merits of the case, the available defenses, the amount in controversy, and the
realistic range of outcome of the litigation. The proposed settlement has more holes
in it than a professional golf course so it's unapprovable.

Taken in part and together the settlement, notice and claims process are a complete
and utter failure. **The settlement also has the effect of misleading and possibly
defrauding the class and Court, hindering a class member's ability to make
informed decisions to accurately exercise their rights/options as class
members and recover fair damages and yet is still producing a windfall for the
lawyers.** Sanctions should also be imposed for counsel's malpractice relating to
the claims, damage recovery, intentionally overcharging on the fees and expenses
charged to the class and attempted claim on the settlement fund by most of the
eighteen counsels some of whom appear to have no right to any of those funds
AND should not even be part of this litigation. Plaintiffs' Counsel and class

counsel all know this in vary... ...es and are engaged in reckless disregard of the rules, procedures and are telling only half the truth which is a well known method of deception. They have $13.5 million reasons for doing so and the chances of being caught are slim and if caught it's a slap on the wrist, until today. **Objectors want to know how each named plaintiff became associated with each counsel that claims to represent them.**

Objectors will first take a quick look at the following order to show what has not been carried out by Plaintiffs' Counsel and the administrator in violation of the Court's order. Objectors object to allowing Plaintiffs counsel to file any motion to correct the errors in their settlement papers. After that we will take a look at the preliminary PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND RELATED RELIEF AND THE MEMORANDUM IN SUPPORT OF THER ABOVE MOTION and why it's a mess also.


ORDER GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS SETTLEMENT

1. Defined Terms:
This Court adopts the defined terms set forth in Section A (Definitions) of the Settlement Agreement for purposes of this Order, unless otherwise specified herein.

**Response:** Several of the terms in section A (definitions) of the Settlement Agreement for purposes of the order are incorrect and invalid. Some terms that should have been included are not. For example both Counsels and the Court agreed to paragraph #87 page 58 in the Settlement Release located in Proposed order filing but deleted that entire paragraph in the release under Important Documents "Settlement Agreement".

**The Court's Order; Paragraph 8**

**Notice**

The forms of Notice attached to the Settlement Agreement as Exhibits B (Postcard Notice), C (Publication Notice) and D (Long Form Notice) are hereby approved. The Notice Plan described in Exhibit A to the Settlement Agreement is hereby approved and shall be implemented according to its terms. The Long Form Notice, Publication Notice and Postcard Notice shall be disseminated in accordance with the Notice Plan substantially in the form approved. Plaintiffs shall cause the Settlement Administrator to send the Postcard Notice by first-class mail, postmarked no later than 40 days after entry of this Order, to the Settlement Class Members who can be identified from the names and addresses produced to Plaintiffs by BCBSM, Priority Health and Aetna Inc. Plaintiffs shall cause all forms of publication notice provided for in the Notice Plan to be completed no later than 45 days after entry of this Order. Plaintiffs shall cause the Settlement

Administrator to activate the Settlement website and the mailing address, email address and toll free number by which Settlement Class Members can communicate with the Settlement Administrator no later than the date Notice is first mailed or published. The Court finds that the form and method of providing notice described in the Notice Plan is the best practicable under the circumstances and, if carried out, shall constitute due and sufficient notice of the Settlement Agreement under Federal Rule of Civil Procedure 23 and the Due Process Clause of the United States Constitution.

**Response:** Plaintiffs Counsel and the administrator failed to meet the Court's deadline by not having a full, complete and accurate website stocked with all applicable hospitals and medical institutions listed when the website went live and the postcards mailed and put into the hands of potential class members.  When potential class members received their short notice postcard and checked the site within a few days after the mailing deadline via first class mail on July 10, 2014, they would **NOT** have found all applicable hospitals listed because the list at the point was short by 236% of all the hospitals, medical clinics and health care centers that eventually made up the entire list. In addition all class members who viewed the site were initially required to send in paid invoices with their claims causing an huge unknown number of class members to drop out of the process and never exercise their rights, by design after reading that. Counsel attempted to fix

the intentional burdensome error but it's too late, the damage has already been done. Finally on August 14, 2014 the list was updated and dozens of new institution were added. That is one full month after the postcards were received and after the website went live. **These are material errors that cause a failure to meet the requirements under Rule 23.** Do the new additions somehow change the categories the class members' fall into? What was the reason for adding to the existing list one month after the postcards were received? The result of not having all the institutions listed will be to make a huge percentage of visitors assume they were not class members which will dramatically drive down the number of members who were/will seek reimbursement of their claims and now will not seek damages they have a right to claim.

**The last date the long notice was updated on the website was July 24, 2014. When was the website made live?**

**How many times was the website updated through July 24, 2014? Show what changes were made during each update.**

**When were the notices mailed, start and finish date?**

On August 6, 2014 this objector viewed the website that class members were directed to and clicked on "claim form -individual. The list of "hospitals" numbered seventy two (72) at the time. The "hospitals" that were listed that the objector and a family member were looking for were NOT listed on the website so

we assumed we were NOT part of the class. Other objectors who's "hospitals" were on the list and paid for services were unhappy with the settlement after this objector explained what the settlement and claims process was really about so an objection was started. On August 14, 2014 one of the objector's was checking the website for additional information and errors. The objector clicked on "Submit a Claim - Select Claim Click here to file a Consumer Claim Form" for the second time and scrolled down to page 5. Low and behold the website claim form list was updated and created a few hours earlier and now additional names of new hospitals and clinics were listed. The new additional institutions had risen 236% and now contained 170 names of "hospitals" "medical centers" and "healthcare centers" which are not all "hospitals" or "acute care hospitals" as defined in the notices. Class members differentiate "medical centers" and health care centers" from "hospitals" because the not all institutions provide the same services as an "acute care hospital" can. The date the page was updated is on bottom of each page under the number 08-CA8356. If it gets updated again the new date will be listed there. How many potential class members never went back to take a second look a full month later and why would they?

If potential class members go directly to the "Important Documents" section, click off and print the consumer claim form and send it in to the administrator they would never see the **release form** nor is it mentioned anywhere on that document.

Would it have been too hard to attach the two page release to the claim form so it would not be hidden so class members would not miss it? The release form may also be missing from the electronic version. There is no reason to believe it was ever there based on the fact it is missing from the printable claim copy.

This poses a notice problem, a big one. Any person or entity who received a junk mail looking postcard or referral to the website from a friend, relative co-worker or family member who looked at the website prior for at least thirty days leading up to August 14, 2014 did not see all the "hospitals" that should have been listed, assumed they were not part of the action and wrote off the claim as not eligible like two objectors initially did. They would have tossed the junk-mail postcard away in their garbage thereby throwing away their claim and rights to damages due to an error Plaintiffs' Counsel and the administrator are solely responsible for! Both of them caused a grave error and the result is class members who may have decided to file a claim and were part of this action were led to believe incorrectly that they were NOT members of the class so now they can't file a claim, can't opt out or object and won't take any action to protect their rights. They will be denied justice. Was this an intentional mistake? Plaintiffs' Counsel and the administrator NEVER included all the institutions and all pertinent information before the website went live until long after the fact and after the mailings were completed. By running the notice program like they did the effect will be to exclude out possibly hundreds of

thousands or more class members from filing claims, objecting or opting out for those class members who viewed the website prior to August 14, 2014. It's unacceptable and the class has to be renoticed to meet Rule 23 requirements.

**The preliminary approval order Exhibit D is not the same as the detailed notice on the website. For example in the Exhibit D at the bottom of the page it has an important note as follows:**

**Habla Espanol? Visite la página web: www.MichiganHospitalPaymentsLitigation.com**

**But the above phrase is missing on the same document that is on the website that class member's view.** In addition to this phrase and another one in Arabic should have been included on the web notice as well as the postcard. This is now incompetent error number 3, 15 more to go. Plaintiffs' Counsel and administrator are in way over their heads and a life preserver should NOT be thrown out to them. They should have used a regional administrator that is one of the best.

**15. Notice Declaration**

: No later than 75 days after the entry of this Order, Plaintiffs shall file with the Court and serve a declaration of the person(s) under whose general direction the Notice was disseminated showing that the Notice Plan was effectuated according to its terms and this Order.

**Response:** Deadline not met. June 26, 2014 plus 75 days is September 07, 2014. As of September 24, 2014 the last day for objectors to file an objection there was still no evidence on the docket showing and proving that the Notice Plan was effectuated under the terms of the order. **Since objectors couldn't review the notice plan declaration before filing the objection this supplement to objection is now required.** What a mess for $13.5 million in fees and expenses and it's only going to get worse. Dismissal of Plaintiffs' Counsel as well as several other class counsel is justified and appropriate based on the evidence in this objection. Plaintiffs' Counsel has failed to meet the Court's deadlines and it's just one of very many examples that will show even a blind person that Plaintiffs' Counsel and named plaintiffs are inadequate, should be dismissed by the Court and not awarded any fees or expenses. Objectors can assist with substitution of counsel and named plaintiffs.

Objectors are now going to "deconstruct" the **Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, certification of settlement class and related relief and ......"** to show what was promised to the Court and class is NOT what is NOW being delivered to the class and Court for the final approval. It's a trick for approval and undeserved cash. This will prove objectors position that the settlement is unapprovable without major changes and additional cash in the settlement fund and that might not even be enough. Some of that additional money

will come directly from Plaintiffs' Counsel's fee forfeiture of $10 million and $3.5 million in expenses and some additional funds should come from the defendant. The settlement is that bad and the court will realize that before the end of this supplement to the objection.

Once that is completed, objectors will "deconstruct" the CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PAYMENT OF INCENTIVE AWARDS TO CLASS REPRESENTATIVES which is also a trick for approval, for undeserved cash and will also prove objectors position that the hourly rates sworn to under the penalty of perjury and the expenses claimed are intentionally and artificially false, inflated by a material, misleading gouging, jaw dropping amount that should be classified as attempted theft. The funds should be deleted from counsel's request which will cause the settlement to rise substantially with the class going from the biggest loser and pawn in this settlement to being treated as they should, like the most important client in the world. The number of hours claimed are also falsely stated. Fraud on the class and court appears to maybe exist in this settlement. The settlement is really this bad.

**Counsel writes:** PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS,

and RELATED RELIEF AND THE MEMORANDUM IN SUPPORT OF THER

ABOVE MOTION

TABLE OF CONTENTS, I.INTRODUCTION, II. PROCEDURAL HISTORY

III.THE PROPOSED SETTLEMENT, iV.THE COURT SHOULD APPROVE

THE PROPOSED SETTLEMENT.

A. The Settlement Is Well Within the Range of Possible Approval as Being Fair,

Reasonable and Adequate

**Response: NO**

B. The Settlement Is the Result of Arm's-Length Negotiations

**Response: NO**

V.NOAH AND BAYNARD SHOULD BE ADDED AS ADDITIONAL NAMED

PLAINTIFFS

**Response: NO**

VI.THE SETTLEMENT CLASS SHOULD BE CERTIFIED AND CLASS

COUNSEL APPOINTED

**Response: NO**

    A. The Settlement Class Satisfies the Numerosity Requirement

**Response:** No comment.

    B. The Settlement Class Satisfies the Commonality Requirement

**Response:** No comment.

C. The Settlement Class Satisfies the Typicality Requirement

**Response:** No comment.

D. The Settlement Class Satisfies the Adequacy Requirement

**Response: NO**

E. Questions of Law and Fact Predominate Over Any Questions Affecting

Individual Members of the Settlement Class

**Response:** No comment.

VII.THE CLASS NOTICES AND THE NOTICE PLAN SHOULD BE

APPROVED

**Response: NO**.

VIII. THIS COURT SHOULD PRELIMINARILY APPROVE THE PLAN

OF ALLOCATION AND APPROVE THE CLAIM FORM

**Response: NO.** This proposed settlement has more material holes in it than a large

package of "Life Savers" and is unapprovable as is and without changes and more

money in the net settlement fund after fees and expenses, and that might not even

be enough. The trust has been forever broken with the class, a divorce is required.

**INTRODUCTION:** Objectors will follow and respond to Plaintiffs' Counsel's

MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION

FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF

SETTLEMENT CLASS, AND RELATED RELIEF

**Counsel writes:** The Settlement Class is defined in the Settlement Agreement as follows: "Settlement Class" means "all Direct Purchasers of healthcare services from a Michigan General Acute Care Hospital from January 1, 2006 until June 23, 2014.

**Response:** Appears not true. The Amended complaint defines the class as January 1, 2007 to June 23, 2014 not January 1, 2006 to June 23, 2014. In addition, objectors believe that the statutes noted in the complaint and amended complaint may only allow the claim to go back four years from the original complaint but the settlement goes back ten months further than that. This could be a problem so it should be checked.

 **Counsel writes:** The settlement provides an excellent recovery for the Settlement Class, Plaintiffs request that this Court enter an order substantially in the form attached to the Settlement Agreement as Exhibit H:

1.granting preliminary approval to the Settlement Agreement, including the Plan of Allocation attached to the Settlement Agreement as Exhibit F;

2.joining Patrice Noah and Susan Baynard as additional named plaintiffs under Fed. R. Civ. P. 21;

3.certifying the Settlement Class under Fed.R. Civ. P. 23(a) and (b)(3);

4.appointing each of the six existing named Plaintiffs and Proposed Plaintiffs Noah and Baynard as representatives of the Settlement Class;

5. appointing those firms currently serving as interim Co-Lead Counsel, namely, The Miller Law Firm, P.C., Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), Gustafson Gluek, PLLC, and Wolf, Haldenstein, Adler, Freeman & Herz LLC ("Wolf Haldenstein"), as Class Counsel under Fed. R. Civ. P. 23(g) to represent the Settlement Class;

6. appointing Epiq Systems as the Settlement Administrator to administer the Settlement under the supervision of Class Counsel;

7. appointing Eagle Bank to hold the Settlement Fund in an escrow account and to disburse funds from that account according to the orders of this Court;

8. approving the form of the Notices attached to the Settlement Agreement as Exhibits B, C and D, and approving the Notice Plan (attached to the Settlement Agreement as Exhibit A), for disseminating these notices to the Settlement Class Members;

9. approving the Claim Form attached to the Settlement Agreement as Exhibit E;

10. authorizing payment from the Settlement Fund of certain expenses of settlement administration;

**Response:** Objectors state that the recovery is **not** "excellent" for the class but it is for Plaintiffs' Counsel and named plaintiffs. Objectors ask the Court to rescind the ruling at the Fairness hearing for numbers 1-10 by refusing to approve the

settlement due to material issues in the requested numbers above as will be described in detail below.

Working closely with BCBSM, class counsel and the administrator crafted a thoroughly indefensible failed settlement, notice, claim plan while defendant crafted the one sided defective settlement release. Everything is riddled with material errors that all sides knew or should have know was a failure. It appears both Plaintiffs Counsel and named plaintiffs, don't care and thought they could ram this settlement through with a rubber- stamp and walk away with an undeserved "Inca's treasure" and no one is the wiser. It's a perfect possible fraud on the class and the Court that would have gone undiscovered if not for this objection and supplement. This notice plan, claim plan and release should not receive approval by the court because it does not comply with Rule 23 requirements, violates due process clause and common sense. The damages seem way underestimated for settlement purposes.

**Counsel writes:** The parties engaged in extensive fact discovery, in coordination with the discovery occurring in the parallel cases brought against Blue Cross by the United States and the State of Michigan and by Aetna. They exchanged millions of pages of documents, procured millions of pages of documents from third parties, responded to voluminous interrogatories, and took 169 depositions, including many of third-party insurers and hospitals. In addition to documents, the

voluminous data produced and analyzed in this case – data reflecting payment terms and numerous other relevant factors for the large majority of healthcare procedures occurring in Michigan General Acute Care Hospitals over a period of about seven years – is almost unprecedented in antitrust litigation.

**Response: Plaintiffs' Counsel appears to be comingling, describing and taking credit for the extensive work that other parties did, not what work they actually performed.** They attempt to prove this sole credit work by falsely inflating the hours worked and expenses incurred. The "busy work" counsel wasted should not be approved by the Court. The excerpt below comes from the just one docket entry form the government's suit against defendant which everyone associated with the case, including Plaintiffs Counsel has access to and did access to obtain evidence and where it's located. This is just one example of how much information class counsel had available in the "road map" and 'free pass," they were provided as a "piggyback ride" to the settlement. The names of the people and entities are known. This piggyback ride is really a free pass for $13,500,000.00 treasure road map that counsel falsely believes is theirs alone. They believe it's their right to claim and to exploit for any purpose they see fit and it's "all them." No it's not.

In fact the Court wrote in the motion to dismiss regarding the City of Pontiac and as it relates to Plaintiffs' Counsel's own case, "Both parties rely extensively on the

previous briefs filed in the government-related case to support each of their arguments." This observation by the Court also applies in the objector's opinion that this is clear and convincing evidence that this case relied on the Government's own work product to bring and resolve this case so counsel can't rightfully claim they are owed what they claim because they are not entitled to it, period. Additional proof is found below in much more convincing detail. The following comes from just one of the government documents:

"The United States Department of Justice's Division attorneys, assisted by economists and paralegals, conducted voluntary oral interview of about 75 persons employed primarily by hospitals, health insurers or group purchasers of health insurance. Id. At 5,8 The Division conducted those interviews to obtain evidence that would enable the United States to make an informed decision whether to challenge in litigation Defendant's use of MFN clauses, and to develop evidence from potential witnesses should the matter **go to trial.**

**Objector's state class counsel had a road map to the evidence and all the pieces of the puzzle were laid out for them to assemble with a picture of the completed puzzle in front of them with all the pieces numbered for easy assembly. This was provided at taxpayer expense that they would not have been able to develop on their own without the government's suit being filed first and all the information that was spun off of it as a direct result.** They

were in essence a beneficiary and all they did was review documents that already been through a pass one and pass two procedures which is the bulk of the attorney fee and sat in on depositions. The U.S. government spent thirteen months investigating the defendant before they and the State of Michigan filed suit. If the government was able to easily defeat a motion to dismiss with all the information in their brief and available on the docket, so could Plaintiffs' Counsel because they both had much of the same information, thanks to the government. Plaintiffs' Counsel appear to have caved into defendant's unreasonable settlement demands in this proposed settlement in exchange for the huge fees and expenses first. Class counsel should be calling the shots and not the defendant. The stronger player with a stronger case is settling for a poor amount because a Fort Knox treasure in fees is being dangled in front of them by defendant which has clouded their greedy vision. Defendant wants out of this litigation for as little amount as possible and is walking away with a unreasonably low reimbursement amount to the class with the blessing of Plaintiffs Counsel who are walking away with a king's ransom. Defendant could care less about how the money is divided up between the class and counsel and as a result the class gets screwed, twice.

"In class-action settlements, the adversarial process ... extends only to the amount the defendant will pay, not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members." *Dry Max*

*Pampers*, 724 F.3d at 717 (emphasis in original). For "the economic reality [is] that a settling defendant is concerned only with its total liability[,]" *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998); and thus a settlement's "allocation between the class payment and the attorneys' fees is of little or no interest to the defense." [*GMC Pickup Litig.*], 55 F.3d 768, 820 (3d Cir. 1995) (internal quotation marks omitted).

"No Mas, No Mas" as Roberto Duran once famously said in the ring. Plaintiffs' Counsel is that boxer in this case and has thrown the fight for the cash.

**Counsel writes:** On June 17, 2013, Plaintiffs filed a motion to drop the claims of certain Plaintiffs and to add Patrice Noah and Susan Baynard as additional plaintiffs to represent the proposed class. Dkt. No. 124.

**Response:** Why drop certain claims, what was dropped and why and why add two plaintiffs? The complaint was filed on 10-29-10 and the amended complaint filed on 06-12-12. Two new plaintiffs are proposed to be added on June 17, 2013 and the case settles on March 27 2014 for all intents and purposes. Why did it take so long to realize they needed to drop claims and two additional named plaintiffs? What have these two named plaintiffs done in the last nine months vs. the last twenty two months since the amended complaint was filed. **Prove how they were representing the class best interests.** Why did they have to be added? How much

time was spent by each class representative representing the class? We need statements showing hours worked and dates. Justify the contribution. Based on the settlement details the objectors say they were not needed.

**Counsel writes**: . Drs. Leitzinger and Sibley were deposed.

**Response:** *Plaintiffs' Counsel has failed to adequately provide quantitative and qualitative means for the court and class to assess how damages to the class categories 1, 2 and 3 were determined. There is no legal, economic analysis or discernible methodology made to the class or Court as to why the differences and how total damages were calculated.*

This is not acceptable. Rule 23(b)(3) is satisfied only if plaintiffs establish that "damages are capable of measurement on a class wide basis." Comcast Corp. v.Behrend, 133 S. Ct. 1426, 1433 (2013). We have no evidence right now and the damages seem way low if you compare the fact that in 2007 alone BCBSM spent $4 billion on purchase services with 10%-39% of the charges being artificially inflated with certain hospitals so it seems out of line with $120 million in damages to the class over seven and a half years.

Objectors would like to see the report that the depositions are based on that there is only $120 million in damages caused by the defendant to the class in a seven and one half year period. The depositions would be a good read also, if the Court so

permits. There is no declaration or cv (resume) from the firms and 'experts' as to

who these people are, what qualifies them, their billing rates, time spent, if the

calculations are correct or were accidentally underestimated for settlement

purposes, the scope of the assignment, the budget, deadline etc. There is nothing

but loose ends and evasive tactics being utilized against the class and Court. It

seems there is a need to guard the guardians who hijacked the case for the fees and

inflated expenses alone.

- What is a class member's reimbursement percentage per dollar spent per
  class member for those in class Category 1, 2 and 3 assuming all eligible
  class members filed a claim and received the minimum in each category not
  including the 3.5% cap?

- Which categories and how many class members are in the certified class?

- What are the damages per each category?

- What categories are the named plaintiff's in?

- Why are those who were treated and paid for overcharges as an outpatient
  entitled to less damages compared to a class member who was classified as
  an inpatient if they are in Category 1 class?  What difference does it make if
  the class member was treated for 22 hours than discharged vs. staying
  overnight and being discharged at the 25 hour mark?

- Why would someone who paid all cash for their overcharge bill be entitled to less recovery in damages than someone who had insurance pay 95% of the bill and they paid a $200 deductible if both procedures and bills were exactly the same for both parties and they are both in Category 1,2 or 3 class?

If everyone files a claim and is eligible to receive the minimum amount ($25.00 if in Class Category 1 and $15.00 in Category 2) how much would the check per claim be for each class member in each class? There is no answer to that basic question in all these settlement papers, why? After Plaintiffs' Counsel has allegedly spent $2.5 million of class money on "experts" the 3 million plus class members and the 1412 entities should have that answer long before today before deciding what actions to take. Right this very moment we have nothing, zilch, nada, zero. **If we don't know the numbers how can a damage amount be determined and a fair, adequate and reasonable settlement be proposed to begin with and how can class members decide the right course of action to take and determine what is fair, reasonable and adequate?**

Without a percentage number, logically, a class member can't reasonably decide whether to object, opt out or stay in and if this is worth their time and attention. There will be a very low claims rate because of errors like this throughout the notice and the error filled documents on the website. The damage amount, by error

2534e017c144fd60

or design, can make defendant's offer look better, much better than it really should be for settlement purposes. Objector has firsthand knowledge of class damages being intentionally undercounted for settlement purposes in one case and this looks like a duplicate case.

**Counsel writes:** The Settlement Agreement provides that Blue Cross will deposit $29,990,000 in an interest-bearing escrow account for the benefit of the Settlement Class. ¶¶ 35-37. The payment will be made in two installments. The first installment will be paid within 15 days of preliminary approval of the settlement, and the remainder will be paid within 5 days of Final Approval (including any appeals). Id . The escrow account will be maintained at Eagle Bank, a Maryland State Chartered Bank which has served as an escrow agent for settlement funds on several occasions. ¶¶ 6 & 38. Any interest accrued on the Settlement Amount will become part of the Settlement Fund. ¶¶ 32, 38, & 68.

**Response:** Defendant knows this is a weak settlement and a weak Plaintiffs' Counsel. By not depositing the entire amount it shows lack of good faith and belief by both counsels that this settlement would/should be approved. There is no meeting of the minds in this settlement between defense counsel, Plaintiffs Counsel and the class that this is a fair, reasonable and adequate deal and rightfully so. Plaintiffs' Counsel's decision not to require the entire amount be deposited up front has also caused the class to lose out on interest from June 31, 2014 forward.

If the $29 million accrues interest at .25% per year (Fed Fund Rate) that's $72,500.00 per annum or $6042 a month loss to the class. So from June 1, 2014 to at least the day of the fairness hearing the class lost $30,210.00.

**Class counsel should have that $6,000.00 a month of lost interest that should have been credited to the settlement fund subtracted from any fee awarded,** if any is ever made. The interest on the $13.7 million left over after all deductions are made and until checks are cut should also be deducted. $14 million multiplied by .25% per annum is $35,000.00 per year or $2,900.00 per month using the same Fed Fund Rate. **The kicker of this is that Plaintiffs' Counsel wants interest on their malaria induced haze they are in on the $10 million fee they demand for themselves but no interest for the class on its settlement damages.** It's in there papers!

**In fact, class counsel failed to ask for interest in the complaint and amended complaint!** That shows Plaintiffs Counsel is who they care about most and first, themselves and their fee. $10 million fee multiplied by .25% a year, (again using the Fed Fund Rate)  and not compounded, is $25,000 a year multiplied by four years is $100,000.00 minimum that Plaintiffs Counsel demands while they don't look out for the best interests of the class. This is the poster child settlement of how not to run and settle a class action suit and why CAFA was enacted. **The Court**