**Counsel writes:** "Class Counsel also excluded ??? ??? ?? at in the preparation of the present motion for fees, expenses and insensitive awards".

**Response:** What was the time line from the summary agreement, order suspending deadlines and execution of the Agreement?

Class Counsel may have continued to bill the class after the stay deadline was issued on March 27, 2014. **The question was how many hours did class counsel bill and how many expenses were incurred from March 27, 2014 to June 23, 2014 and was it all fair and reasonable?** Except for the release (written by BCBL obviously a one sided document giving up too much of plaintiffs claims and rights and damages) and some tidying up issues, 18 law firms continued to bill the class for another three months. Anything after March 27, 2014 should be carefully reviewed and stricken for reimbursement if found to be questionable.

**There is no breakdown in blocks of time, stages or tranches like every three months to help determine accurate billings to the class and how much work was performed and when.** Example, original total is 34,343 hours that are claimed divided by 24 months from start to finish of the suit is an average of 1414 hours per month @ $451 an hour is $638,000 per month in fees the class is being billed on average. That is equal to nine full time attorneys working full time forty hours a week for twenty two months. The objector has seen firms pile on the hours

after settlement in principle was made. Since counsel need nothing justifying their fees, expenses and administrators costs and when the work was done they now have to prove all the above to prove their numbers are accurate to get paid. It up to the lawyers to prove what they are owed not for the objector's to disprove it.

Under Rule 23h of the Rules of Civil Procedure, a court" may award reasonable attorney fees and non taxable costs that are authorized by law or the party's agreement." Fed. Rule Civ. P. 23 (h). Fees are reasonable if they are "adequate to attract competent counsel, but……(do)not produce windfalls for attorneys." Reed v Rhodes, 179F.,3d 453, 471 (6th Circuit 1999) (quoting Blum v Stenson, 465 U.S. 886, 897 (1984) These rates are truly a windfall for the lawyers.

Courts have tended to prefer the "lodestar" method of determining attorney fee awards in class actions. City of Burlington v Dague, 505 U.S. 557, 562 (1992) It is within the discretion of the court "to determine the appropriate method for calculating attorney fees in light of the unique characteristics of class actions in general, and the unique circumstances of the actual cases" Bowling, 102 F.3d at 779.

The "lodestar method" involves multiplying the number of hours reasonably expended by a reasonable hourly rate. Pennsylavina vs v Delaware Valley Citizens' Counsel for Claen Air, 478 U.S. 546, 565 (1986).

A court should determine the attorney's fee rate based on the "prevailing market rate in the relevant community." Adcock –Ladd v Sec'y of Treasury, 227 F 3rd 343, 350 (6th Circuit 2000) (quoting Blum v Stenson, 465 U.S. 886,895 (1984). The prevailing market rate is defined as "the rate that lawyers of comparable skill and experience can reasonably expect to command in the venue of the court of record."Geier v Sundquist, 372 F. 3rd 784, 791 (6th Circuit 2004). The factors the court may consider in determining the lodestar are ·

The time and labor required by the case; (2)The novelty and difficulty of the questions presented; (3) The skill needed to perform the legal service properly; (4) The preclusion of employment by the attorney due to acceptance of the case;(5) The customary fee; (6) Whether the fee is fix or contingent;(7) Time limitations imposed by the client or the circumstances (8) The amount involved and results obtained;(9) The experience, reputation and ability of the attorneys; (10) The "undesirability" of the case;(11) The nature and length of the professional relationship with the client;(12) Awards in similar cases.

Addock-Ladd, 226 F3rd.at 349 (quoting Johnson v Georgia Highway Express,Inc.,488 F.2d 714,717-719 (5)th Cir 1974), abrogated on other grounds). Courts do not simply look to the "exact value sought by a particular firm, but rather (to) the market rate in the venue sufficient to encourage competent

representation." B&G Mining, Inc.v Director, Office of Workers Comp. Programs , 522 F. 3d 657, 663 (6th Cir. 2008).

The DOJ got the relief it wanted against the defendant which was the end of MFN's in Michigan. Plaintiffs complaint has already been 50% accomplished because the MFN's have been cancelled. That should reduce counsel's fee demand by 50%. The alleged damages are stage two which seem undercounted.

One of the most important pieces of evidence the court relies on to determine the nature and extent of legal services supplied is a contemporaneous time sheet. The time sheet must provide the number of hours worked, a description of the services provided, the date the services were provided and the specific claim to which the hours pertain. **Class counsel did not state that the fee petition was prepared from contemporaneous daily time records that they were supposed to prepare on a regular basis and when. Since they did not state it and based on the deconstruction of the rates and hours below they did not do it.**

Hours are disallowed if they are not properly documented or if there are duplicative hours or "padding". Also, only legal work is supposed to be billed at an attorney's rate, not clerical or secretarial work and not any other work that can be done by non-lawyers. However, if the fee claims are exorbitant or the time

devoted to presenting the fee application is unnecessarily high, the application can

be denied outright or greatly reduced.

**Objectors claim Plaintiffs' Counsel improperly billed for non-legal clerical**

**work and that the legal work that was performed was excessive, duplicative,**

**unnecessary, unproductive, inefficient, unreasonable, excessive, redundant,**

**unnecessary and possibly fraudulent.** The hours and rates billed were not needed

for this result. There are multiple attorneys (186 or less) are doing the same general

work to create work and an unneeded bill to the class.

Class counsel's request for attorney's fees of $10.0 million (33.3% of the $30

million settlement fund less expenses), is clearly in excess of the least amount

necessary to litigate the case effectively. When measured against the non work

done in this case and precedents in this and other Circuits, the requested fees are

clearly unreasonable and excessive.

**This Court should not award Class Counsel any portion of the interest that**

**has accrued on the settlement fund that counsel is requesting, (oops there is**

**none right now) for the reason that Class Counsel had and has no legal right**

**to any portion of the settlement fund until this Court enters an order**

**awarding fees.**

Plaintiffs' Counsel already knows this but is hoping for a rubber stamp and a quick

getaway just like some shoplifters that ran by one of the objectors' office window's

ten minutes ago with Sears security chasing them to a get-a-way car. Objector's are like the police car trying to catch them. Objectors did one better, we caught them.

Fee applicants "must make every effort to submit time records which specifically allocate the time spent on each claim. [Time records] should attempt to specifically describe the work which the fee applicant allocated to unsuccessful claims so as to assist the district court in determining the reasonableness of the fee request." Time records must also "fully explain" the individual tasks for which the fee applicant is billing to ensure that the court is not "at a loss to determine the reasonableness of the task." The general rule is that where a court cannot determine the reasonableness of a task, the fee request for that task is deducted from the overall fee request. Courts also require that billing records be kept contemporaneously with the work done.

Based on what the objector has read through there would be a lot of block hours billed to the class which should be reduced. Some class counsel included admin time is included in the lodestar calculation and should not be. Plaintiffs' Counsel reviewed these records prior to submitting them to the Court and intentionally let it go by. That's because most appear to have attempted to defraud the class and the Court. **No multiplier should be used.** There are some names of people who billed the class but there is no job description! One firm at least never attached

descriptions of what the two or three letters abbreviations are for the people billing. Also, Of Counsel should not be billed as if they were an equity employee. They are billing as if they are.

One case summary this objector reviewed in the past showed a billing counsel could only document 6% of the hours claimed out of 8,000. A good portion of the remainder is based on impermissible estimates that federal courts have routinely refused to accept. We might find similar issues by reviewing billing records in this case.

e. The Complexity of the Litigation

They just piggy backed and got a free pass as to where all the evidence was and given the pieces of the puzzle to assemble with a full picture of the puzzle to assist them with. After the government defeated defendant's motion to dismiss it was all just going through the motions after that.

f. **The Quality of the Representation**

**Response:** This objection shows the poor quality of these firms in handling this litigation.

**Counsel writes: B. The Expenses Requested Are Reasonable and should be Reimbursed**

**Response:** NO. Plaintiffs counsels implied indirectly that they participated in 169 depositions. The objectors now assume they scheduled and made arrangements for all those 169 depositions. Yet they have claimed $13,000.00 in court reporters and transcript fees. $13,000 divided by 169 depositions is $69 per deposition and or for transcripts. Here are some basic questions from the objectors to determine if that claim is accurate:

- How many depositions did counsel actually arrange, schedule and where were the taken?

- How many exhibits in each deposition did they mark?

- How many depositions did counsel sit in on but not schedule themselves?

- How many of plaintiffs counsels attorneys were at each deposition?

**Travel expenses. 169 depositions** implies a lot of traveling. What locations and why there?

**The Airfare cost is $132,000.00** for twenty two months where the defendant is located in Michigan. It seems high. One of the objector's flew from Detroit to New York City in one day at a cost of $286 roundtrip. Plaintiffs Counsel's bill would fly the objector roundtrip from Detroit to New York 461 times for 169 depositions and for what else counsel?

- Was all this travel for business or was a part of it pleasure like overstaying in the location for longer than necessary? Could counsel have driven vs. flying?

- Did counsel fly coach or was there some first class involved?

- Were others not involved in this case along for the ride and if so were those expenses, separated out and noted on the billing statements and records of the firm?

- If points were earned who got to keep the points and was that amount translated into dollars credited to the class fund?

That Airfare implies **Lodging and food, cost $54,690.00** seems a tad high. 169 depositions divided into $54,690 is $323.00 per deposition. Red Roof Inn is an average of $50.00 a night. If food was $50 a day that is $100 total per day equals three days of lodging and food for each deposition, seems too long.

- Were there any certificates or points earned and were those translated into dollars and credited to the class?

- Were there traveling companions that the class paid for?

- Was the lodging and food only if overnight travel was required? If not was the return scheduled longer than the number of days the deposition required?

- What was the average cost per night?

- Was any of this personal after business was done and if so how much was credited to the class's bill?

- Was the class charged :··· :·· hourly rate of the attorney(s) charged for the travel time how much time and at what rate? Was it from the moment leaving home to the moment arriving back home through the front door?

**$18,500.00 in car rental fees** divided by 169 depositions is $109.00 per deposition, seems high. That is four days of car rental per deposition at a cost of $25.00 per day. **The total bill is equal to 676 days of car rental or 1.8 years worth or eighteen months for a case that lasted twenty months.** It seems high, need receipts.

**Professional fees of $35,533.00.** Wait a second isn't that included in the total expense of $3.5 million? Isn't this disallowed under federal court rules and not reimbursable?

**Computer time of $366,829.00 seems absurd and may be fraudulent**

Define "computer time" and how were the rates and hours figured? Is this like Westlaw or similar? Need to show paid invoices on this also. Objector assumes this is not all Pacer @ .10 per page, right? Take $366,829.00 divided by 22 months from the time the amended complaint was filed means counsels incurred, on behalf of the class, a bill of $17,586.00 a month just for this case since Plaintiffs Counsel was appointed. What? Broken down to a forty hour work week it's equal to $110 an hour

five days a week, forty hours a week or twenty two straight months. For computer time? It seems a bit outrageously high and absurd.  Please explain with a lot of detail and paid invoices or it's not valid to charge the class for this. There are third party invoices, right?  This isn't billing per minute for the time each attorney had their computer on during the work day is it?

**Assessments: $1,827,500.00** in assessments to almost each firm in different amounts? The objectors have never seen this type of "invoice" "assessed" to class counsel before, ever. It appears fraudulent.

- What is the methodology used for calculating said assessment? Objectors don't believe it based on the proven artificially inflated hourly rate, and inflated hours claimed. If the approval of the balance owed to the firm or even the so called "expert" is denied will Plaintiffs' Counsel be off the hook for it and Econ One will "forgive" it because it's not "really owed" if not approved?

- Are these actual legal debts owed by each firm, to whom and for what? If not why are they a part of each lawyers sworn under oath invoice indicating a legitimate legal debt? Did these counsels agree to these fees? Didn't think so.

- Do each of the firms have a legal agreement from inception agreeing to said indebtedness and how it will be assessed? Who agrees to a blank check unlimited, unknown liability? Lawyers certainly don't.

- Why do some firms have a higher assessment than others and still others have none at all?

- Why are there no invoices for the class members to review in the settlement papers?

- Is this $1,827,500.00 incurred by the class fair, reasonable and adequate in prosecution of pursuit of this litigation? Objectors say no.

- Is it simply a clever, fraudulent way to obtain a windfall? Maybe.

Where is attached documented evidence that should have been made available to the class in the settlement papers and posted to the website for all to review? Objectors request a copy of each document related to the individual assessments from each firm  to review to insure accuracy and to ensure that this is not some scheme like the defendant engaged in against the class. The court should delete this amount demanded by the lawyers without proper documentation. Hard evidentiary detailed proof that this amount has reasonably been incurred are required for the $30 million settlement .

**Who is Econ One?** Where is the retainer agreement and those partially paid invoices for this $2.5 million "invoice" for Econ One? There is no information, no deceleration from anyone as to what work was done, who did the work, the number of hours incurred, what rate charged etc, nothing! Who incurs and pays bills like

this?  The class wants answers because class members NOW have known documented "issues" based on the evidence so far.

**No bill paying customer would ever agree to pay these artificially inflated fees and expenses and hourly rates even with a gun to his/her head without being able to see documentation and evidence.**

Let's start at the bottom and come up with a figure that would show the lowest amount the class should be expected to spend for this lousy riddled with unfixable error proposed settlement. The class is being victimized a second time by counsel who should be dismissed along with the named class representatives who failed to do their job.

**$54,000 claimed for copies?** At .10 a copy all class counsel made 540,000 copies? Objector's think not. How much is the class being overcharged per copy compared to the .10 a copy at Kinkos, Staples, Office Max, Office Depot counsel? $1.00 a page means counsel made 54,000 copies and maybe the lawyers themselves made the copies at $451 an hour as an example of "busy work? Objectors don't think so as far as the 54,000 copies. Who made them and at what rate? **What is the cost per copy counsel?** Any amount over $.10 a copy should be stricken from Plaintiffs' Counsel's request. Are scanning expenses figured into copy charges?

Where is the proof of the expenses incurred for the entire class to view, for the court to view, for the objectors to view?

The cost of the administrator is not included in the notice nor has plaintiffs' counsel broken them down like they should have been for review by the Court in its settlement papers or posted to the website for review by all. How are the invoices calculated, hourly rates, hours expended etc. to determine if the costs are fair, reasonable and adequate, what the budget was, did they go over it and the objectors want to see the retainer agreement. The costs for the class and court need to be reviewed to determine if the costs are fair, reasonable and adequate and competitive in the marketplace. Who does business like this? **Did the administrator charge the class $500.00 for a PO Box that actually costs $100.00 for a full year?** So the class gets to write a blank check for whatever the attorneys, administrator and notice provider want to charge? The class has the right to see a detailed invoice because after all it's their money right? Where were the named plaintiffs during all of this? Are the objectors going to see some outrageous charges to the class? This objector says yes based on the inflated hourly rates, hours and expenses incurred but we won't know until we see the detailed invoices. They have a printing press making money in each of their offices, incredible

### C. The Requested Class Representative Incentive Awards Are Reasonable

***Response: Plaintiffs' Counsel has failed to demonstrate that settlement benefits of absent class members are proportional to class representative's incentive awards.***

An incentive fee award to a named class representative must be supported by evidence that quantifies time and effort expended by the individual and a reasoned explanation of financial or other risks undertaken by the class representative. In this case time and expense records for named plaintiffs are missing and no risk of retaliation from defendant. How many hours did each named plaintiff spend on this case?

Under Rule 23, the court must also ensure that named plaintiffs do not have "interests antagonistic to those of the class." *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975). This "serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Diet Drugs*, 431 F.3d 141, 145 (3d Cir. 2005). In this case the awards prove conflicts exist, $165,000 worth.

**Counsel writes: (1) extensive work preparing the initial Complaints and the subsequent Consolidated Amended Complaint;**

**Response:** NO, clearly an intentionally deceptive, false and misleading claim attempting to justify the usurious hourly rate and exorbitant pie in the sky hours allegedly expended to unfairly obtain unjustified approval by the Court for the money first and class justice left in the dust.

The United States Government's complaint was filed on October 18 2010. Plaintiffs' Counsels' complaint was filed eleven days later on October 29, 2010 and was taken word for word, paragraph by paragraph all 80 paragraphs from the governments complaint, 100% of it. Objectors have attached the government's complaint and Class Counsels initial complaint and numbered the matching paragraphs 1 through 80 on each separate document as evidence.

The amended complaint filed by class counsel was a 95% copy of the original complaint paragraph by paragraph. Objectors have attached the original complaint and amended complaint and labeled the matching paragraphs A through V- 46 on both the original complaint and amended complaint as evidence. Yet counsel is asking for thousands of hours for work they didn't perform? It's the entire governments work product at taxpayer expense! If both the original complaint and amended complaint are identical how can counsel claim in their settlement papers that "extensive work preparing the initial complaint and the subsequent Consolidated Amended Complaint"? It's a lie like this whole settlement. What work? Some additional information added in on the amended complaint that was

obtained off the government's case docket? All counsel did was piggyback and get a free pass on the taxpayers dime and they feel entitled to $10,000,000.00 in attorney fees and $3,500,000.00 in inflated expenses for all the heavy lifting that was done by someone else. This is not acceptable to the class to have counsel awarded an unearned and unreasonable Fort Knox chunk of class funds that really belongs to the victimized class. The US should get 50% of those fees since they did all the work and counsel rode the coattails in without even a decent settlement. But, let's keep it in the class fund instead. Most class actions don't have the full weight and resources of the United States Government on point taking all the reputational risk, tying up limited recourses and doing all the work for the class counsel. They have no shame, it's all a naked money theft grab and the class comes in second behind the needs of the class and the named plaintiffs. The motion defending dismissal dated 10-13-13 was a slam dunk for defeat based on the work the DOJ performed throughout this case. The DOJ created and obtained all the pieces of the puzzle for anyone to see in this settlement that are on the docket. Plaintiffs' Counsel simply sat around waiting for this to settle. Defendant's counsel was grasping at straws as they have done throughout all of both the cases they have been involved in. All they can do is attempt to divert attention away from the real issue when asked to justify their position, any position, while billing the defendant

for busy work defending a futile position. Plaintiffs' Counsel right now are like the last inhabitants of The Alamo. It will all be over soon.

**Any more than ten hours charged to the class would be unnecessary hours for both complaints and any funds should be stricken for reimbursement as faked "busy work."**

Counsel writes: 2) briefing and prevailing against Defendant's Motion to Dismiss;

**Response:** The motion to dismiss was a cakewalk for Plaintiffs' Counsel because of the work the government performed without the help of Plaintiffs' Counsel. Counsel could in no way would have or could have filed or continued on with this suit without the government's heavy lifting and should not be unjustly rewarded for it. The objector's could go on relating to the above but will stop.

**The high on crack document review illusion:**

How many millions of pages are the 18 counsels claiming had to be reviewed to reach this settlement? Any documents should have been converted to electronic form which would be stored in one or more databases for easy search and retrieval. All the work has already been done for our counsel and given to them on a silver platter. This was supposed to be a slam dunk gift from the class action gods above but it's anything but. Counsel claims to have "obtained and analyzed millions of pages but gives no detail as to how many 1, 5, 10, 20 million? The class should

not have to pay for duplicative work product. W..re they all were computerized and tagged making search very easy for anyone to see? Or did Counsel code them all? Our counsel seems to have done it the hard and expensive way, page by page for the class at $451 an hour for 34,343 hours. If counsel reviewed and analyzed millions of pages as they claim at 1 minute each that's a lot of pages and time.

If one page a minute is reviewed for each of the first one million pages that is 1 million minutes divided by sixty minutes in an hour is 16,666 hours x $451 an hour is $7,516,366 cost to the class. If they reviewed two million pages that is 33,333 hours  of document review out of the 34,343 hours billed to the class at $451 an hour for a cost of $15 million billed to the class. It is not believable in this day and age that it was all needed for this awful result. Control + F on the keyboard is a wonderful tool if one can do it.

Did class council engage in a lot of coding or were the documents they reviewed already have some pre-supplied objective coding included?
How many hard copy documents did they review vs. electronic?

All counsel really did was do pass one and most likely never did a pass two on the documents which we know the government and defendant already did. Class Counsel didn't need to do all that document review that to get this result. A paralegal could have done a pass one review.

Class Counsel attorneys and especially the contract lawyers hired by some class counsel overbilled for first-tier document review and objective coding. As most commonly used, "first pass" document review is a document review generally employed by organizations producing documents or overseeing the production of documents, or by receiving firms choosing a broad selection of documents for production, in which: (1) "responsive" documents are distinguished from non-responsive documents; (2) confidential documents are distinguished from non-confidential documents; and (3) privileged documents are distinguished from non-privileged documents.

Such "first pass" review is little more than a series of blunt, mechanistic "yes/no" decisions concerning responsiveness, confidentiality, and privilege. There is no evaluation of the content or meaning of the document involved, let alone its probity or utility with respect to the claims and allegations at issue in the litigation. No such review work was done – or, indeed, could have been done -- by project-specific attorneys here since they worked solely to review and evaluate the documents already produced by Defendants and third parties after Defendant and third parties themselves had conducted such "first pass" reviews, and were primarily tasked to prepare for and possibly take depositions of Defendants and third parties.

It is generally contemplated that such a "first pass" document review will be followed by a "second pass" document review which typically involves a more detailed evaluation of documents previously-identified to be important, more detailed "issue coding" of the legal and factual issues to which those documents speak, and the selection and analysis of the most important documents for use in witness or expert depositions. Class counsel clearly worked longer but not smarter than they could have.

A substantial amount of those hours were not needed by the class for this $30 million settlement. Not believable, no way, no how, period end of story. Incredible, these people have no shame and could care less about the class members and their losses come second. **The costs to the class are equal to 11.5% of the gross settlement fund which is outrageous. Red flags are flying.** According to the attached NERA 2014 summary for class actions in the securities arena **over a 17 year the average costs per settlement represented just 2% of the settlement amount.** For the years 2011-2013 the average expenses per case was 2.3%. Our counsels have incurred 5 (five) times that amount on behalf of the class which indicates all is not right and the expenses need to be reviewed. The chart references the above numbers above page 34 of the report. There is no other chart available that uses consumer class actions with a breakdown in expenses like in this report. Page two of the report shows the total number of filing in the seventeen year

period. Adding up the number ~~ ~~ ~~ filings, excluding the laddering IPO cases, was 3933 cases. For the last two years it is 447 cases with an average of 231 cases filed a year. These numbers seem appropriate to determine what an average amount of expenses were incurred to be used as a guide when looking at expenses in this case which appear to be extraordinary in a not extraordinary.

## The plan of allocation

Another distribution round of funds should go to damaged class members as a "bonus check" to those who received and cashed an initial check of $10.00 or higher. **In fact the Court might want to eliminate any amount over $25.00 if some class members won't receive any check. The 3.5% cap should not be allowed to kick in if the fund runs out of money prior to all claimants receiving a minimum check first.**

**The Revised Settlement Notice should state that** "any funds remaining after the initial distribution are to be automatically redistributed by Plaintiffs' Counsel to all Class Members who have cashed their prior distributions and would receive at least $10 from the redistribution. Thereafter, redistributions will continue to be made to Class Members who have cashed their prior distributions and would receive at least $10 so long as Plaintiffs' Counsel in consultation with the administrator should determine that additional re-distributions, after the deduction

of any additional fees and expenses that would be incurred with respect to such re-distributions, would be cost-effective."

Federal Rules of Civil Procedure 23(h)(4) and 53(a)(1)(C) expressly authorize using special masters to review attorney fee requests See MCL 4th §21.727. This case should have one because:

- **Lead Counsel did not state that they have excluded from the total request those hours and expenses that Lead Counsel expended prior to their appointment by the Court on May 29, 2012, In addition they did not state they excluded out hours expended by other law firms or individual attorney's prior to the appointment of Lead Counsel nor is there a breakdown before and after Plaintiffs' Counsel was appointed. All those hours and applicable expenses need to be excluded from the total billed to the class.**

- **This total fee and expense demand may also include the hours and fees that were included from firms that may have competed to be Lead Counsel. Those hours and costs claimed before class counsel was appointed and should be stricken as inappropriate in Plaintiffs' Counsels drunken sailor fee request and also the applicable expense demand part as well.**

- **It also appears that attorneys are billing for work performed in a filing of a suit against BCBSM that defendant got dismissed. Any fees or expenses submitted by any attorney or firm for the Pontiac dismissal above should not be charged to the class and deleted from the lodestar calculation and also the applicable expense demand part as well.**

- **There appear to be firm's billing the class that should not be included as counsel in the first place.** Why are there 18 firms and do they all have the right to submit invoices to the class? Objectors would like proof of they hold legal binding documents as proof they are entitled to bill this class for work done in this suit that benefited the class. **They call their friends up and hire them so they can obtain free money at the expense of the class.**

### The Class Action Settlement Release

Objectors will point out some of the issues in this document that cause it to be invalid in its present state and for anyone who has already agreed to it or read it. Paragraphs 10a, 12,14, 15, 19, 20, 22, 44 and 46 are missing exhibits and different sections mentioned in said paragraphs. **Plaintiffs' Counsel state " see attached exhibit." None of the exhibits referenced in the paragraphs are attached to the release. If there was a "Mercy Rule" relating to objection's Plaintiffs' Counsel would have been in the shower fifty pages ago.**

**Counsel writes, page 2:** WHEREAS, BCBSM, ... ... ... its counsel, and Plaintiffs, through their counsel and on behalf of themselves and the other Settlement Class Members, have engaged in vigorous, arms'-length negotiations that led to this Agreement, which embodies all of the terms and conditions of the Settlement among the Parties, subject to approval of this Agreement by the Court;

**Response:** If Plaintiffs' Counsel had employed a mediator this might be true. With all that has been shown to be wrong with this it can't be true. It's more like a "wink wink" negotiation with counsels on both sides with the unnamed plaintiffs and Counsels the biggest winners and the unnamed class members the biggest losers.

**Counsel writes, 12.** "Michigan General Acute Care Hospital" means each of the hospitals in Michigan during the period January 1, 2006 through the Execution Date that BCBSM contemporaneously identified in its classification system as a Peer Group 1, 2, 3, 4, or 5 hospital. Each such hospital is listed in Exhibit G to this Agreement.

**Response:** The definition does not include "medical centers" and "health centers" that have such descriptions in the list of "hospitals" so is lacking in material detail which misleads class members. Explain the definition of Peer Group 1-5 and how does that relate to Category 1-3 classes and this settlement since there is nothing in the settlement papers describing this term. Class members would also be confused by reading this.

**Counsel writes: 30.** "Settlement Class" means "all Direct Purchasers of healthcare services from a Michigan General Acute Care Hospital from January 1, 2006 until June 23, 2014.

**Response:** The class dates seem to go too far back based on the statute's objector's read. Only four years, so it appears.

**Counsel writes: 35.** No more than fifteen (15) days after Preliminary Approval, BCBSM shall pay, or cause to be paid, by wire transfer, one million U.S. Dollars into the Escrow Account. The purpose of this payment is to pay Settlement Administration Expenses in the period before Final Approval.

**Response:** Were settlement expenses paid and how much? Were any other expenses paid and how much? Let's see proof.

**Counsel writes:43.** The Parties shall use their best efforts to effectuate this Agreement, and Plaintiffs, in consultation with BCBSM, shall timely seek to obtain the Court's preliminary and final approval of this Settlement. Plaintiffs shall use their best efforts to secure the prompt, complete and final dismissal with prejudice of the Action.

**Response:** Both counsels are on the same side now and will push through even a rotten settlement like this. There is no one looking out for the best interests of the class during the suit and now especially once this document was signed except for the objectors and this objection.

**Counsel writes: 45.** Within ten (10) days of this Agreement's filing with the Court, BCBSM shall cause notice of the proposed Settlement that meets the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, to be served on the appropriate federal and state officials within the time period required by CAFA. BCBSM shall file with the Court a certification stating the date(s) on which the CAFA notices were sent.

**Response:** Did they send it, file it and when?

**Counsel writes: 65.** "BCBSM and Plaintiffs, on behalf of themselves and the other Settlement Class Members, hereby expressly agree that all provisions of this Section H together and separately constitute essential and material terms of this Agreement."

**Response:** Class members cannot agree to all the provisions of Section H when material parts are misleading and deceiving and plainly incorrect as a matter of law, so the signed releases are invalid.

**Counsel writes: 70.** Upon Court approval, the Settlement Fund may be distributed to pay the following expenses as they are incurred in administering the Settlement: Taxes, Tax Expenses, charges of Eagle Bank, charges of the Settlement Administrator, and the cost of implementing the Notice Plan.

**Response:** Why was Eagle bank selected? What criteria were used? Why not a Michigan Bank? Why not a bank connected to the administrator? What are the charges incurred by the class? Objectors request a breakdown.

**Counsel writes:** BCBSM agrees not to oppose a request by Class Counsel for: (a) attorneys' fees to be paid out of the Settlement Fund of up to one-third of the Settlement Fund; and (b) reimbursement of all reasonable expenses incurred in connection with this Action.

**Response:** Defendant and Plaintiffs' Counsel could care less about the class and by dangling this "Inca Gold" in front of Plaintiffs' Counsel defendant is hoping to buy off a huge exposure for tin cup pennies on the dollar damages for a lot less than it is reasonably worth. Plaintiffs' Counsel will look the other way for $13.5 million and who can blame them? They just want the deal to go through. There is one redeeming side to defendant's counsel's one sided release they stuck the class with which is (b) above. Even they don't want Class Counsel being reimbursed for unreasonable expenses which clearly there are so many that need to be reviewed prior to any settlement approval. **Any disallowed expenses should stay with the fund and not revert to the defendant.**

90. Neither BCBSM or its counsel nor Plaintiffs, Proposed Plaintiffs or their counsel shall be considered to be the drafter of this Agreement, or any of its provisions for the purpose of any statute, case law, or rule of interpretation or

construction that would or might cause any provision to be construed against the

drafter of this Agreement.

Response: Clearly, the release was written by the defendant to the detriment of the

class. Anyone with a two digit IQ would understand that by reading it.

**Suggested attorney fee**

If the Court does approve eventually approve the settlement, by some miracle, the

fee request should be reduced to $4.4 million to reflect the fact that the taxpayer

funded U.S. Government and State of Michigan provided all the evidence in the

form of a roadmap in this case, counsel just copied reread it and put its own spin

on it and then billed the class for reviewing the same evidence! In fact reading the

first and second amended complaint that counsel failed to ask for interest and not

plead the Clayton Act which lowers leverage and damage amounts recoverable.

The settlement amount is largely illusory compared to the total maximum damages

defendants face on the court steps the day of the trial.  We should proceed on.

Objectors also urge consideration of the fee award in the Lehman Bros. Action. In

re Lehman Bros. Sec. & ERISA Litig., No. 09-MD-2017 (S.D.N.Y. June 29,2012)

[Dkt. No. 970] which one of the objectors filed an objection which helped the court

render the following opinion.  In this opinion, the court granted a lower fee award

to (14%), lower than class counsel had requested. The primary reason provided by

the court was that:[P]laintiffs' counsel [in Lehman] had the benefit of the quite

extraordinary report of the examiner appointed by the Bankruptcy Court in the Lehman bankruptcy. It was that report that revealed the facts regarding Lehman's use of and accounting for Repo 105s, which became the most important part of plaintiffs' case.

(See In re Lehman Bros. Sec. & ERISA Litig., 799 F. Supp.2d 258 (S.D.N.Y. 2011).]Indeed, the second amended complaint, which antedated the examiner's report, did not even mention that subject while the third amended complaint ("TAC") relied heavily upon it - as did the Court in denying in significant respects defendants' motions to dismiss the TAC. [See id.] Thus, plaintiffs took great and good advantage of the examiner's report, which became a roadmap for the most significant part of their case. [Lead Counsel candidly acknowledged that the examiner's report provided plaintiffs with important information they had not had earlier, particular with respect to Repo 105s. (citation omitted)] They were right to do so. But the fact remains that this very significant factor in the denial of much of the motions to dismiss and, doubtless, in the price defendants eventually paid to settle was the product of the examiner's efforts. And just to be quite clear, this implies no criticism of plaintiffs' counsel, who lacked the examiner's access to the evidence. But it does bear on the amount of compensation appropriately paid to plaintiffs' counsel, particularly any amount above the lodestar." **The Plaintiffs' Counsel were awarded 14% of the total fund.**

Below is a ruling by a federal judge rejecting a settlement which has a few similar points in this case. This case has many more reasons for rejecting it.

**Stubhub's $2M Privacy Deal 'Doesn't Add Up,' Judge Says**

Share us on: By **Beth Winegarner** from Law 360

Law360, San Francisco (September 25, 2014, 2:46 PM ET) -- A California state judge on Thursday bashed a proposed $2 million settlement between StubHub Inc. and a class of 69,000 customers who say the ticket reseller violated privacy laws by recording calls without warning, saying he wouldn't approve the deal because "the whole thing doesn't seem to add up."

San Francisco Superior Court Judge Ernest Goldsmith told attorneys for the parties that he thought they would need to start over on the deal. In particular, he took issue with the fact that only 1,011 of the class members filed claims and that the settlement includes a clause in which $1 million of the fund would be returned to StubHub if it isn't claimed.

Judge Goldsmith also called the proposed attorneys' fees, which constitute more than 25 percent of the total settlement fund, "excessive."

"I don't want to approve this. Maybe it's just not a class action that makes a lot of sense," Judge Goldsmith said. "It just looks like a deal between attorneys and the defendants."

StubHub attorney John Nadolenco of Mayer Brown defended the deal, saying

counsel did everything they could to notify potential class members, including

sending emails and postcards to California customers who called StubHub. Many

of those who were notified chose not to file claims, said class counsel Eric Grover

of Keller Grover LLP.

"I can put the water out there, but I can't make people drink it," Grover argued.

Nadolenco said that the small number of claims suggests that people didn't actually

feel harmed by StubHub's conduct. However, those who responded would receive

$71 each, which is more than the small amounts class members receive in many

consumer settlements, he argued.

"Then we've been approving settlements we shouldn't have," Judge Goldsmith

said. He granted preliminary approval to the StubHub deal in January, but noted

Thursday that he probably should have gone through it more carefully at the time.

"Who gets what out of this? How is the public served?" Judge Goldsmith asked.

**Fraud on the Court**, or Fraud upon the Court, is where a material

misrepresentation has been made to the court, or by the court itself. The main

requirement is that the impartiality of the court has been so disrupted that it can't

perform its tasks without bias or prejudice. (The damages and attorney fee fits in here perfect.)

Wikipedia

In the United States, when an <u>officer of the court</u> is found to have fraudulently presented facts to court so that the court is impaired in the impartial performance of its legal task, the act, known as "fraud upon the court", is a crime deemed so severe and fundamentally opposed to the operation of justice that it is not subject to any statute of limitation.

MICHIGAN

Fraud on the Court is perpetrated when some material fact is concealed from the court or when some material misrepresentation is made to the court.
Postill v. Postill, 116 Mich. App. 57 8, 323 N.W.2d 491 (1982).
Judicial bias is structural error that can never be found harmless. Wallace v. Bell, 387 F.Supp. 2 d 728, 738 (ED Mich 2005) citing Chapman v. California,386 US 18, 23 n.8 (1967)
The Appeals for the Sixth Circuit has set forth five elements of fraud upon the court which consist of conduct: "1. On the part of an officer of the court; 2. That is directed to the 'judicial machinery' itself; 3. That is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; 4. That is a positive

averment or is concealment where one is under a duty to disclose; 5. That deceives the court." Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir. 1993).

Objectors believe this has and is occurring in this case.

**Michigan Rules of Professional Conduct**

**Comment - <u>Rule 3.3</u>**

[1] The advocate's task is to present the client's case with persuasive force. Performance of that duty while maintaining <u>confidences</u> of the client is qualified by the advocate's duty of candor to the tribunal. However, an advocate does not vouch for the evidence submitted in a cause; the tribunal is responsible for assessing its probative value.

Representations by a Lawyer

The lawyers are making a false claim to the court that being hourly rate and hours expended.

[2] An advocate is responsible for pleadings and other documents prepared for litigation, but is usually not required to have personal knowledge of matters asserted therein, because litigation documents ordinarily present assertions by the client or by someone on the client's behalf and not assertions by the lawyer. Compare <u>Rule 3.1</u>. However, an assertion purporting to be on the lawyer's own

knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or <u>believes</u> it to be true on the basis of a reasonably diligent inquiry. There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation. The obligation prescribed in <u>Rule 1.2(d)</u> not to counsel a client to commit or assist the client in committing a <u>fraud</u> applies in litigation. Regarding compliance with Rule 1.2(d), see the <u>Comment to that Rule</u>. See also the <u>Comment to Rule 8.4(b)</u>.

Misleading Legal Argument

[3] Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities. Furthermore, as stated in paragraph (a)(3), an advocate has a duty to disclose directly controlling adverse authority in the jurisdiction which has not been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.

False Evidence

[4] When evidence that a lawyer knows to be false is provided by a person who is not the client, the lawyer must refuse to offer it regardless of the client's wishes.

[5] When false evidence is offered by the client, however, a conflict may arise between the lawyer's duty to keep the client's revelations confidential and the duty of candor to the court. Upon ascertaining that material evidence is false, the lawyer should seek to persuade the client that the evidence should not be offered or, if it has been offered, that its false character should immediately be disclosed. If the persuasion is ineffective, the lawyer must taken reasonable remedial measures.

[6] Except in the defense of a criminal accused, the rule generally recognized is that, if necessary to rectify the situation, an advocate must disclose the existence of the client's deception to the court or to the other party. Such a disclosure can result in grave consequences to the client, including not only a sense of betrayal but also loss of the case and perhaps a prosecution for perjury. But the alternative is that the lawyer cooperate in deceiving the court, thereby subverting the truth-finding process which the adversary system is designed to implement. See Rule 1.2(c). Furthermore, unless it is clearly understood that the lawyer will act upon the duty to disclose the existence of false evidence, the client can simply reject the lawyer's advice to reveal the false evidence and insist that the lawyer keep silent. Thus the client could in effect coerce the lawyer into being a party to fraud on the court.

Remedial Measures

[11] If perjured testimony or false evidence has been offered, the advocate's proper course ordinarily is to remonstrate with the client confidentially. If that fails, the advocate should seek to withdraw if that will remedy the situation. If withdrawal will not remedy the situation or is impossible, the advocate should make disclosure to the court. It is for the court then to determine what should be done--making a statement about the matter to the trier of fact, ordering a mistrial, or perhaps nothing. If the false testimony was that of the client, the client may controvert the lawyer's version of their communication when the lawyer discloses the situation to the court. If there is an issue whether the client has committed perjury, the lawyer cannot represent the client in resolution of the issue, and a mistrial may be unavoidable. An unscrupulous client might in this way attempt to produce a series of mistrials and thus escape prosecution. However, the second such encounter could be construed as a deliberate abuse of the right to counsel and as such a waiver of the right to further representation.

Constitutional Requirements

[12] The general rule--that an advocate must disclose the existence of perjury with respect to a material fact, even that of a client--applies to defense counsel in criminal cases, as well as in other instances. However, the definition of the

lawyer's ethical duty in such a situation may be qualified by constitutional provisions for due process and the right to counsel in criminal cases. The obligation of the advocate under these rules is subordinate to such a constitutional requirement.

Duration of Obligation

[13] A practical time limit on the obligation to rectify the presentation of false evidence must be established. The conclusion of the proceeding is a reasonably definite point for the termination of the obligation.

Refusing to Offer Proof Believed to Be False

[14] Generally speaking, a lawyer has authority to refuse to offer testimony or other proof that the lawyer believes is untrustworthy. Offering such proof may reflect adversely on the lawyer's ability to discriminate in the quality of evidence and thus impair the lawyer's effectiveness as an advocate. In criminal cases, however, a lawyer may be denied this authority by constitutional requirements governing the right to counsel.

Ex Parte Proceedings

[15] Ordinarily, an advocate has the limited responsibility of presenting one side of the matters that a tribunal should consider in reaching a decision; the conflicting

position is expected to be presented by the opposing party. However, in an ex parte proceeding, such as an application for a temporary restraining order, there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosures of material facts that are known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision.

Fraud upon the court is fraud committed by officers of the court. The officers of the court are attorneys, judges, and judicial employees, including the staff of the clerk of the court. In its simplest terms, fraud upon the court is types of actions designed to interfere with the proper functioning and decision-making of a court.

Seems the defendant might be a serial fraudster based on the article below.

Appeals Court Upholds $6.1M Fraud Judgment Against BCBS of Michigan

Written by Ayla Ellison (Twitter | Google+) | May 19, 2014

A $6.1 million fraud judgment against Blue Cross Blue Shield of Michigan has been upheld by the U.S. Court of Appeals for the Sixth Circuit, according to a *National Law Review* article.

In 2013, a federal court in Detroit held BCBS of Michigan had committed fraud by marking up hospital claims as much as 22 percent for employees of Hi-Lex Controls and Hi-Lex America, both based in Hudson, Mich. The court found over a 20-year period, BCBS of Michigan collected millions of dollars from the two companies through the use of the markups as well as hidden fees, according to the report.

On May 14, a federal appeals court agreed with the 2013 holding and stated BCBS of Michigan knew about the markups and hidden fees and misrepresented them to its customers. The court found BCBS of Michigan even trained its employees to downplay the hidden fees if one of its customers discovered them, according to the report.

Seems defendant has a history of committing fraud which shows they should be treated with a "serial fraudster designation" which is more evidence that this $30 million settlement is a possible fraud.

Using the correct method of Michigan 2014 BAR Survey v. Counsel's numbers after all is said and done the lodestar properly figured equals out to the following:

| Totals Hours | Inflated Lodestar | Using 2014 MI BAR Rate Survey | Overcharge |
|---|---|---|---|
| 34343 hrs for $15,497,960 | vs $10,081,262 = a | $5,416,963 or 34.5% overcharge | |

Counsel is asking for 33% of the $30,000,000 or $9,900,000. Objectors request that the court perform a cross check subtract or take out the overcharge of $5,416,963 from the $9,900,000 for an adjusted correct lodestar or percentage amount counsel requests of $4,483,037 which is actually less than the 25% benchmark used in many circuits of the $10 million or $7.5 million for this case. The fee award in this case should be $4,483,037 right now, less later.

The summary of the fee invoices are broken down a few pages below. The rates do not take into account that the hours claimed are also overcharged up to 34.5% which reduced the lodestar fee request even more. Also class counsel has not indicated which attorneys are no longer employed at each firm and there a bunch.

The ultimate question to be resolved is this:

Has Plaintiff's Counsel proved that the $30 million is fair, reasonable and adequate to the class based on the evidence and that the case should be settled as is? Objector says no they have not, a blind person could see this.

**Deny motion to certify**

Wherefore, this objector respectfully requests that the Court withdraw its conditional approval of the proposed settlement and enter orders requiring further proceedings so as to affect substantial justice in this cause between the parties and the absent class members. The Court should rule that the class cannot be certified pursuant to Rule 23(a)(4), 23(e) and sustain these objections because the proposed settlement at this time is unfair, unreasonable, inadequate and not in the public interest because of all the issues stated in this objection which all the evidence backs up and is irrefutable. Objectors ask the Court to not enter a "Final Judgment" granting final approval of this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and no entry of a final judgment under Rule 58 of the Federal Rules of Civil Procedure.

The overwhelming amount of gigantic evidence available in this objection that the proposed settlement is fatally flawed is overwhelming. To approve this settlement

would be, in this objector's opinion, a mistake of law and clearly erroneous factual finding.

The Settlement Class should not be certified for Settlement Purposes, Plaintiffs not Re-Appointed as Class Representatives, Plaintiff's Counsel not Re-Appointed as Class Counsel because based on the evidence the best interests of the class have been abused and broken and can't be put back together again. The Proposed Settlement Class Does Not Meet All the Requirements of Rule 23(a).

Objector incorporates any other objections received in this matter into this objection that are not inconsistent with their own and reserves the right to amend and expand on those objections.

## CONCLUSION:

Counsel and defendant are using the court's power to rush through what they know to be a flawed settlement with a lot of unanswered questions as to how it was handled from the start to the conclusion. The defendant wants out of this lawsuit for as little money as possible and to keep the claims and publicity low which Plaintiffs; Counsel is more than happy to agree to for $13.5 million. This settlement was designed to create some sort of record from which both sides can claim, "this is the best we can do." It's nowhere near the best they can do. They want to take the money and head to the beach for a huge party that the class is paying for and we are not even invited to!

It is nowhere near the best they could do for the class, maybe for themselves, but not the class. In grade school this kind of settlement and treatment of the class by plaintiff's lawyers and named class members would get an "F".

The issues the objector's have brought up, which no other class member is aware of, should void any approval and attorney fee request for them and a rejection of the settlement is in order. This proposed settlement clearly shows it is not fair, unreasonable, inadequate, not in the public interest, violates due process under the Constitution and needs to be rejected or modified. The settlement is clearly unfair due to the conflict among class members including the fee and expense shanigans.

Counsel on both sides are all very capable of putting a distorted record in front of the class and court that would lead the court down a predetermined path so as to reach a predetermined conclusion and result that they want the court to reach at the expense of the class members. This is not about truth and justice, right or wrong but winning and losing with the lawyers winning and the class the biggest losers.

Clearly based on the evidence above, the suit got hijacked by the plaintiffs lawyer's primarily for their own benefit, for the legal fees first, reduced liability for the defendant second. The incentive awards appear to have bought out the named class members and justice for the class is way back in last place. Counsel appears to be

trying to "sell out" the class for the attorney fee in this proposed settlement. As it stands now the court should reject the settlement or require Plaintiffs Counsel to submit more details to the court, this objector and/or post them to the website and fix what is wrong with it and also put more money into the net settlement fund somehow. The Court should rule that the settlement has obvious material deficiencies, it does grant preferential treatment to segments of the class, and falls outside the range of possible approval. The evidence also clearly shows that Plaintiffs' Counsel and named plaintiffs are inadequate and should be dismissed. This proposed settlement in its current form is the equivalent of what happened when Dorothy in the "Wizard of Oz" threw a bucket of water on the "Wicked Witch of the West".

**The accurate lodestar in this case is shown in the next**

| Totals   Hours | Inflated  Lodestar | Using 2014 MI | Overcharge |
|---|---|---|---|
| | | BAR  Rate Survey | |

 34,343 hrs. $15,498,225      vs.      $10,081,262   for an overcharge  to the class of  $5,416,963  or 34.5%

The Shane Group etc. al v Blue Cross Blue Shield of Michigan Case No. 2:10-cv-14360-DPH-MKM

- Objectors will use the [illegible]. Bar rates 2014 survey and compare them to the sworn rates. Objectors will use the 75th percentile for all lawyers which clearly they are all not and have not proven to the class and court that they are.

- Equity partners at $417 hr rate.

- Paralegal's are billed at $111 an hour, (Sommers Schwartz is billing the class at $100 an hour).

- Associates are all billed at Senior Associate level at $300 an hour for the 75th percentile.

- Law clerks are billed at the rates counsel used.

- Administrative staff billed at $50 an hour.

- Contract attorneys are billed at $200 per hour (see attached opinion in Citi case) (not at the partner equity rate, come on man)!

- I = Intern? $50 an hour

- T= Trainee? $50 an hour

- Of Counsel $408 an hour

- SC= Senior Counsel billed as Senior Associate $300 an hour

Firm Name Gustafson Gluek PLLC

Time Period Inception through June 30, 2014

Name Status Hourly Rate Total Hours Total Lodestar

Daniel Gustafson (P) $ 900.00 335.00h= $301,500.00   417 x 335 hrs = $139,695

Karla Gluek (P) $ 775.00 0.50h $387.50                $417 x .50 hrs = $209

Daniel Hedlund (P) 700.00 $ 819.25h 573,475.00   417 x 819.25 hrs. = $341,627

Jason Kilene (P) 700.00 $ 18.25h 12,775.00          $417 x 18.25hrs = $7610

Amanda Williams (P) 500.00 $ 194.75h 97,375.00    $417 x 194.75 hrs = $81,210

Cathy Smith (P) 500.00 $ 1.00h 500.00                   $417 x 1 hr. = $417

David Goodwin (A) 425.00 $ 0.25h 106.25                $300 x .25 hr. = $75

Michelle Looby (A) 425.00 $ 99.00h 42,075.00        $ 300 x 99 hrs = $29,700

Sara Payne (A) 400.00 $ 8.25h $3,300.00               $ 300 x 8.25 hrs. = $2475

Josh Rissman (A) 375.00 $ 44.50h $16,687.50         $ 300 x 44.50 hrs = $13,350

Ellen Ahren (A) 375.00 $ 1775.75h 665,906.25      $300 x 1775.75 hrs = $532,725

Raina Borrelli (A) 350.00 $ 3.25h $1,137.50           $ 300 x 3.25 hrs = $975

Dan Nordin (A) 350.00 $ 689.25h 241,237.50        $ 300 x 689.25 hrs = $206,775

Lucy Massopust (A) 335.00 $ 18.50h 6,197.50       $ 300  x 18.50 hrs = $5,550

Cory Carpenter (CA) 315.00 $ 549.75h 173,171.25   300 x 549.75 hrs = $164,925

Johanna Smith (LC) 280.00 $ 118.50h 33,180.00     $280 x 118.50hrs = $33,180

Aalok Sharma (LC) 280.00 $ 42.00h 11,760.00       $ 280 x 42 hrs = $11,760

Caroline Marsili (LC) 265.00 $ 2.50h 662.50          $ 265 x 2.50 hrs= $662

Nadja Baer (LC) 250.00 $ 8.50h 2,125.00              $250 x 8.50 hrs = $2,125

Sarah Moen (PL) 200.00 $ 11.75h  2,350.00          $111 x 11.75 hrs. = $1304

Diana Jakubauskiene (PL) 200.00 $ 2.50 500.00       $111 x 2.50 hrs = $278

Melanie Morgan (PL) 150.00 $ 4.25h 637.50           $111 x 4.25 hrs = $472

Danette Mundahl (PL) 150.00 $ 608.75h 91,312.50  $111 x 608.75 hrs = $67, 571

Jamie Holzer (PL) 150.00 $ 7.75h 1,162.50           $ 111 x 7.75 hrs = $860

Tracey Grill (ADM) (office manager) 150.00 $ 25.25h 3,787.50        $50 x 25.25

hrs = $1,262

Shawn Seaberg (ADM) (a receptionist) 125.00 $ 32.00h 4,000.00        $50 x 32

hrs = $1,600

Dana Noss (ADM) (assistant) 150.00 $ 1.50h 225.00       $ 50 x 1.50 hrs = $75

Janey Atchison (ADM) 175.00 $ 0.25h 43.75           $50 x .25 hrs = $13

TOTAL  5,678.75hrs       **$2,386,137.50**    $420 hr  **v.**     **$1,725,280.00**


Status:

(P) Partner   (OC) Of Counsel (SA) Senior Associate

(A) Associate (LC) Law Clerk (PL) Paralegal

Firm:

Cohen Milstein Sellers & Toll, PLLC

Reporting Period: Inception through June 30, 2014

Name Status,Total Hours To Date, Hourly Rate Total Lodestar

Small, Daniel P 1,246.00h x $795 = $922,252.50     246 hrs. x $417 = $519,582

Dominguez John P 1.25h $675 762.50     1.25 hrs x $417 = $521

Brown, Benjamin, D. P 64.75h  $665 34,672.50     64.75 hrs x $417 = $27,001

Konopka,Kathleen OC 5.00h  $560 2,525.00     5 hrs x $417 = $2085

Cormier, Christopher, J. P 0.25h $605 118.75     .25 hrs x 417 = $104

Johnson, Brent P 1,460.75h  $595 774.396.25     1,460 hrs x $417 = $608,820

Alicia Gutierrez CA 84.50h  $420 35,490.00     84.50 hrs x $200 = $16,900

Ossakow, Ian CA 382.50h  $415 158,737.50     382.50 hrs x $200 = $76,500

Alexander, Laura A 26.00h  $475 10,340.00     26 hrs x $300 = $7800

Levens, Emmy A 1.00 $475 395.00     1hr x $300 = $300

Dubner, Jeff A 39.50h $440 17,380.00     39.50 hrs. x $300 = $11,850

Clarke, Suzanne I 1.50h  $420 615.00     1.50 hrs x $50 = $75

Gebrewold, Besrat A 90.25h $395 38,325.00     90 hrs x $300 = $27,000

Benner, David A 358.50h  $390 136,230.00     358 hrs x $300 = $107,400

Tran,  Ngan CA 754.75h  $350 264,162.50     754 hrs x $200 = $150,800

Boone, Meghan A 1,787.25h  $415,633,586.25     1,784 hrs x $300 = $535,200

Cacace, Robert A 525.25h  $370 183,193.75     525.25 hrs x $300 = $157,575

Bush Veltre, Brenna A 901.00h $310 271,170     901 hrs. x $300 = $270,300

Fu, Abigail PL 0.50h $250 120.00     .50 hr x $111 = $56

Prince, Joshua A 2.00h $330 617.50     2 hrs x $300 = $600

Schmitz, Aaron A 82.25h $335 26,731.25         82.25 hrs x $300 = $24,675

Oak, Lindsay CA 336.00h  $260 87,360.00        336 hrs x $200 = $67,200

Ayyagari, Srinivas CA 154.25h $290 44,732.50   154.25 hrs x $200 = $30,850

Pavesner, Seth CA 507.00h $290 147,030.00      507 hrs x $200 = $101,400

Barevadia, Zarna T 1.75h $275 481.25           1.75 hrs x $50 = $88

Westerman, Jessica LC 19.50h $250 4,875.00     19.50  hrs x $250 = $4,875

Watson, Brett LC 8.50h $250 2,040.00           8.50 hrs x $250 = $2125

Peterson, Brenda PL 11.75h $250 2,878.75       11.75 hrs x $111 = $1304

Hanson, Clara PL 0.50h $250 122.50             .50 hr x $111 = $56

Twigg, Andrew PL 11.50h  $250 2,828.75         11.50 hrs x $111 = $1276

Cooke, William PL 555.50h  $250 135,761.25     555.50 hrs x $111 = $61,660

Abetti, Jonathan PL 242.00h $250 59,872.50     242 hrs x $111 = $26,862

Wong, Debra PL 5.50h  $250 1,308.75            5.50 hrs x $111 = $610

Wentworth, Ariel PL 22.00h  $250 6,401.25      22 hrs x $111 = $2442


TOTAL 9,690.50  **$4,007,513.75**      **$413 hr**      **v.**      **$2, 845,892.75**

Blue Cross Blue Shield of Michigan

MFN Antitrust Litigation

Lodestar Report