# EXHIBIT B

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SHANE GROUP, INC., *et al.*,<br><br>Plaintiffs, on behalf of themselves and all others similarly situated,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF MICHIGAN,<br><br>Defendant. | Civil Action No. 2:10-cv-14360-DPH-MKM<br><br><br>Judge Denise Page Hood<br>Magistrate Judge Mona K. Majzoub |

## DECLARATION OF DANIEL A. SMALL IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

I, Daniel A. Small, declare as follows:

1.      I am a partner in the law firm of Cohen Milstein Sellers & Toll PLLC ("CMST" or the "Firm") in Washington, D.C.  On May 29, 2012, the Court appointed my Firm interim co-lead counsel on behalf of the proposed plaintiff class.  Dkt. No. 69.  More recently, on June 26, 2014, the Court appointed CMST as Class Counsel for purposes of representing the certified Settlement Class. Dkt. No. 151.

2.      This declaration describes the negotiations that led to the settlement agreement with Blue Cross Blue Shield Michigan ("BCBSM") dated June 23, 2014. It also will clarify one detail in Exhibit A to my July 24, 2014 Declaration.

3.      I begin with a brief description of my firm's antitrust group and my professional background.  The Firm's antitrust group consists of 24 lawyers who are involved in many of the major antitrust actions in this country, including over 50 such cases at this time.  I have been a partner at CMST for nearly 19 years and have chaired or co-chaired the antitrust group since 2008.  I have represented plaintiff classes, often as lead counsel, in numerous antitrust cases over the last 25 years.  I have argued in courts around the country including the United States Supreme Court.  I have tried antitrust cases to verdict including obtaining a verdict for full damages in a price-fixing action on behalf of a class of wild blueberry farmers.

4.      CMST's antitrust group has been widely recognized and respected for its work on complex antitrust matters.  For example, in January 2014, *Law360* (a publication that reports competition law developments daily and is widely read in the industry) selected CMST's antitrust group as one of 11 Practice Groups of the Year in the area of "Competition."  CMST was the only plaintiffs' firm – and the only firm outside the AmLaw 200 – so recognized.  In 2013, CMST was also

selected by *Law360* on its list of "Most Feared Plaintiffs' Firms" based on the Firm's litigation efforts on behalf of antitrust and securities class action plaintiffs.

5.      I participated in all aspects of the settlement negotiations with BCBSM in this case.

6.      Settlement was first broached with BCBSM in early 2013, more than two years after this class action began.  In the first substantive discussion on that topic, in February 2013, BCBSM took the position that if any damages could be proved at all, they would be negligible, and that Plaintiffs faced extremely difficult class certification issues.  Plaintiffs took the view that settlement discussions should be based on the parties' respective best understanding of damages and other merits issues.  Plaintiffs wanted to obtain a damages estimate from their expert, grounded in analysis of the voluminous insurance claims databases that had been produced in discovery, before making a demand.  At the time, Plaintiffs' economics expert, Dr. Jeffrey Leitzinger, had been analyzing damages for Plaintiffs' upcoming class certification motion.

7.      In March 2013, Dr. Leitzinger completed an initial estimate of damages.  That month, Plaintiffs met with BCBSM to make a settlement demand. Multiple lawyers participated in the meeting for BCBSM, quizzing Plaintiffs' counsel on the basis of Plaintiffs' demand and suggesting ways in which BCBSM would challenge Plaintiffs' damages analysis.  BCBSM did not respond to the

demand.  Instead, over a month later, BCBSM asked for a new demand specific to a sub-part of the class.  Plaintiffs declined to make a new demand, instead standing on their original demand.

8.     No further settlement talks occurred for many months, although in August 2013, the parties briefly discussed settlement without progress.  After Plaintiffs' class certification motion in October 2013 and the December 2013 deposition of Dr. Leitzinger, BCBSM made its first settlement offer in the case after three years of litigation.  BCBSM maintained that the case only had nuisance value, and made an offer consistent with that view.  The meeting became somewhat contentious thereafter, and Plaintiffs declined to respond to the offer unless BCBSM reconsidered and raised it.  After BCBSM did so, Plaintiffs then made a counteroffer, but BCBSM refused to respond, and the meeting ended with the parties still far apart.

9.     BCBSM filed its opposition to class certification and a motion to exclude Dr. Leitzinger's opinions in early February 2014.  Plaintiffs began working on a class reply brief, and Dr. Leitzinger began working on an expert rebuttal report.  Plaintiffs deposed BCBSM's class certification economist in early March 2014.

10.     Before Plaintiffs' reply brief was filed, BCBSM made a new offer in response to Plaintiffs' earlier demand and suggested meeting to further negotiate.

Plaintiffs countered the offer before the meeting.  The meeting, in mid-March, lasted for many hours.  The time was spent negotiating several different settlement structures and dollar amounts.  At the end of the day, Plaintiffs made a final demand.  An agreement in principle was finally reached a week later.

11.     Even after the parties reached an agreement in principle, the task of negotiating a full, written settlement agreement was arduous.  That process took three months, until June 23, 2014, when an agreement was signed.  During that time span, the parties exchanged multiple drafts and had several telephone calls and an in-person meeting to hammer out a written deal.

12.     At all times, the parties negotiated aggressively and at arm's length for their respective clients.  The negotiations were difficult and protracted, and they broke off and resumed multiple times over the course of about a year and a half from start to finish.

13.     I would also like to clarify one detail in Exhibit A to my July 24, 2014 Declaration.  *See* Dkt. # 155-3.  The four Staff Attorneys who worked on the case (David Benner, Brenna Bush Veltre, Joshua Prince, and Aaron Schmitz) were listed with an "A" (for "Attorney," but which is also used for "Associates"), rather than a unique "SA" status.  In recognition of the different responsibilities and skill sets of Associates and Staff Attorneys, CMST sets lower billing rates for Staff Attorneys than Associates of comparable experience. For example, Mr. Prince,

5

who graduated in 2009, bills at $110 less per hour than Associates who graduated in 2009.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:          October 24, 2014

Respectfully submitted,

/s/ Daniel A. Small
Daniel A. Small
**COHEN MILSTEIN SELLERS &**
    **TOLL PLLC**
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
dsmall@cohenmilstein.com

6