# EXHIBIT O

C4CTLEHC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   IN RE:  LEHMAN BROTHERS
                                                 08-CV-5523 (LAK)
 4   ------------------------------x
                                                 New York, N.Y.
 5                                                April 12, 2012
                                                  4:00 p.m.
 6
     Before:
 7
                        HON. LEWIS A. KAPLAN,
 8
                                                 District Judge
 9
                              APPEARANCES
10
     BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
11        Attorneys for Lead Plaintiffs
     BY:  MAX W. BERGER, ESQ.
12        DAVID R. STICKNEY, ESQ.

13   BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP
          Attorneys for Lead Plaintiffs
14   BY:  DAVID KESSLER, ESQ.
          JOHN A. KEHOE, ESQ.
15
     GIRARD GIBBS LLP
16        Attorneys for Structured Product Plaintiffs
     BY:  DENA CONNOLLY SHARP, ESQ.
17
     CLEARY GOTTLIEB STEEN & HAMILTON LLP
18        Attorneys for Underwriter Defendants
     BY:  MITCHELL A. LOWENTHAL, ESQ.
19        VICTOR L. HOU, ESQ.

20   ALLEN & OVERY LLP
          Attorneys for Defendant Fuld
21   BY:  PATRICIA HYNES, ESQ.

22   DECHERT LLP
          Attorneys for Director Defendants
23   BY:  ADAM J. WASSERMAN, ESQ.

24

25
```

1    two publications as well as, your Honor, very wide
2    dissemination of the news media of our settlement.
3              THE COURT:  Your point about the claim cut-off date
4    answers my concern.
5              MR. BERGER:  OK.  So class members comprising -- I'm
6    going to get to the underwriter settlement in one moment, I
7    just wanted to give a predicate for that.  Class members
8    comprising a majority of the class are some of the largest and
9    most sophisticated institutional investors in the world, many
10   routinely object to settlements and fee requests.  We're very
11   pleased to report no one institutional investor had objected to
12   either settlement or either plan of allocation or either fee
13   request.  For that matter, only 13 institutional investors have
14   chosen to opt out of the case, which is also very rare.  It's
15   also virtually unprecedented not one class member at all,
16   individual or institutional, objected to the class settlement,
17   plan of allocation, or fee request.
18             There's only seven individual shareholders who
19   objected to aspects of the D and O settlement and plan of
20   allocation, and four individuals objected to the fee requested
21   with respect to the directors and officers settlement.  We
22   believe that they're wholly without merit, but obviously we're
23   prepared to answer any questions your Honor has.  Mr. Andrews,
24   who submitted a 95-page fairly rambling objection, has now also
25   submitted a surreply and request for fees which we oppose.

1           THE COURT:  He needs to build up his lodestar.

2           MR. BERGER:  Your Honor, I don't know if we sent it to

3    your Honor yesterday, because we just received it.  I don't

4    know whether you received it, if you didn't --

5           THE COURT:  I have been through it.  Thank you.

6           MR. BERGER:  So we respectfully submit that the

7    paucity of objections, because these are outstanding

8    settlements which were achieved through tremendous effort, and

9    the plans of allocation and fee requests are well within the

10   established guidelines for approval in this circuit -- and it

11   bears noting, and the decision is up to your Honor in any

12   event, but the reaction of the class has been described by the

13   Second Circuit in the *Wal-Mart* case as the most significant

14   Grinnell factor for the Court to weigh in considering approval.

15          So let me say with respect to the underwriter

16   settlement, our papers in support of the settlement plan of

17   allocation are quite detailed.  In light of this, I'll just

18   briefly summarize for your Honor.  The overarching factor with

19   respect to the settlements, both the officer and directors

20   settlement --

21          THE COURT:  Let's stick to the underwriters

22   settlement.

23          MR. BERGER:  The underwriters settlement, the case was

24   fraught with risk, particularly after Lehman filed for the

25   largest bankruptcy in history.  Three months after the case

1   paying for a long-term prosecution of this case, or should we
2   resolve the case at this number.  We decided we would resolve
3   the case at this number provided that on a confidential
4   basis -- the confidentiality wasn't our choice, it was the
5   individual defendants' choice -- on a confidential basis, we
6   pick, the plaintiffs, pick the respected neutral.  That
7   respected neutral is charged with a responsibility of hiring a
8   forensic accountant, getting sworn statements from these
9   officers, reviewing their tax returns, reviewing their bank
10  accounts, reviewing their brokerage accounts, getting lists of
11  assets other than cash or a functionally equivalent asset, and
12  then rendering an opinion to whether, on the basis of his
13  review, that their assets were less than $100 millions.  He
14  says substantially less.
15          That is much more, going much further than I
16  respectfully submit almost anyone would go to with respect to a
17  settlement like this.  And we did it because we were conscious
18  of the fact that there would be a potential public hue and cry
19  about the officers of Lehman Brothers getting off the hook
20  without paying any money.
21          But you know what?  I mean not one, not one
22  shareholder out of 630 million shares had said that the number
23  we settled for for the officers and directors was inadequate,
24  not one.
25          THE COURT:  Well, I think Mr. Andrews had a few things

1     to say about it.
2              MR. BERGER:  But he didn't say that, your Honor, what
3     he said is we should have included -- well --
4              THE COURT:  He talks about somebody's $28 million
5     house.
6              MR. BERGER:  He tried to extort a fee from us.  And he
7     didn't have that house.  It's not true.  These numbers are
8     coming out of thin air.  How do you respond to somebody like
9     him?
10             THE COURT:  Well, you know, I read his papers, too,
11    and I know that Mr. Fuld doesn't have five airplanes and a
12    helicopter.  I know that Mr. Andrews says he does because there
13    was once an article somewhere that said that Lehman had that
14    aircraft, which is rather different.  Even I could figure that
15    out.  So I certainly am capable of figuring out that it is
16    possible that what the man is talking about in terms of houses
17    and the like may be wildly inaccurate, there might even be a
18    probability that it's so, but I don't know because I don't have
19    a record.
20             MR. BERGER:  But your Honor, it's not -- we can't --
21    that is not a record we could get you because basically the
22    condition of the settlement was that -- and this is why we
23    hired John Martin, we hired John Martin because we knew that
24    nobody --
25             THE COURT:  Let's get clear, I assume for purposes of

|  |  |
|---|---|
| 1 | MR. BERGER: If I could just conclude, I just want |
| 2 | to -- we're focusing principally on this financial review, but |
| 3 | at the outset of the presentation of the officer and director |
| 4 | settlement, what I said was it was based upon a twofold |
| 5 | analysis, one was ability to pay and the other was the merits. |
| 6 | And I just want to quickly comment, because Mr. Andrews called |
| 7 | the case against the officers and directors a slam dunk, and |
| 8 | all I want to say about that is -- and here's again where the |
| 9 | examiner's report comes in, is the examiner virtually |
| 10 | exonerated the directors for any liability, and with respect to |
| 11 | the officers, despite the 2200 pages, never found a reason to |
| 12 | argue or even imply that there was a fraud claim against them. |
| 13 | Yes, he found that they may have breached -- or certain of them |
| 14 | may have breached their fiduciary duty to Lehman Brothers, but |
| 15 | that wasn't sufficient for our 10(b) claim or our Section 11 |
| 16 | claim because the officers also were relying upon the |
| 17 | examiner's conclusion with respect to the Ernst & Young report |
| 18 | and the expertized portions of the registration statements. |
| 19 | So I respectfully submit that the case was far from a |
| 20 | slam dunk, was very problematic against the officers and |
| 21 | directors, and perhaps that's why the government -- no |
| 22 | governmental agency has chosen to prosecute them for any |
| 23 | wrongdoing despite the notoriety and the impact the Lehman |
| 24 | bankruptcy had on the United States and the world economy. Of |
| 25 | course, they also made the arguments that there was no |