# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

THE SHANE GROUP, INC. *et al.*,

Plaintiffs, on behalf of themselves
and all others similarly situated

vs.

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

Defendant.

Civil Action No. 2:10-cv-14360-DPH-MKM

Judge Denise Page Hood
Magistrate Judge Mona K. Majzoub

## REPLY TO OBJECTORS' OPPOSITION TO CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PAYMENT OF INCENTIVE AWARDS TO CLASS REPRESENTATIVES

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.　　Should the Court grant Class Counsel's request for award of attorneys'

fees?

Class Counsel's answer: Yes.

2.　　Should the Court grant Class Counsel's request for reimbursement of

expenses?

Class Counsel's answer: Yes.

3.　　Should the Court grant Class Counsel's request for incentive awards to

the class representatives?

Class Counsel's answer: Yes.

## <u>CONTROLLING OR APPROPRIATE AUTHORITY</u><br><u>FOR RELIEF SOUGHT</u>

### Federal Authority

*Barnes v. City of Cincinnati*,
    401 F.3d 729 (6th Cir. 2005)

*Bowling v. Pfizer, Inc.*,
    102 F.3d 777 (6th Cir. 1996)

*Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*,
    724 F.3d 713 (6th Cir. 2013)

*Hadix v. Johnson*,
    65 F.3d 532 (6th Cir. 1995)

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)

*Kogan v. AIMCO Fox Chase, L.P.*,
    193 F.R.D. 496 (E.D. Mich. 2000)

*Rawlings v. Prudential-Bach Props., Inc.*,
    9 F.3d 513 (6th Cir. 1993)

*Vassalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013)

## I.    <u>INTRODUCTION</u>

Pursuant to Local Rule 7.l, the Court's June 26, 2014, Order Granting Preliminary Approval to Proposed Class Settlement, and the Court's October 22, 2014, Order Enlarging Briefs, Class Counsel for the Settlement Class respectfully submit this reply in further support of their request for an award of attorneys' fees, reimbursement of their litigation expenses, and incentive awards for the named plaintiffs.   Contrary to the claims made by objectors, and as discussed in the Preliminary Approval Brief,[1] the Fee and Expense Brief,[2] and the Final Approval Brief,[3] the recovery in this case is substantial and justifies the fees, expenses, and incentive awards Class Counsel have requested.   No objector has presented persuasive authority, much less a convincing argument, that supports denying or modifying Class Counsel's request.

## II.    <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

The background and procedural history of the case have been briefed extensively in the Preliminary Approval Brief and the Fee and Expense Brief.

---

[1] Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Certification of Settlement Class, and Related Relief, Dkt. No. 148 ("Preliminary Approval Brief").

[2] Brief in Support of Class Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Payment of Incentive Awards to Class Representatives, Dkt. No. 155 ("Fee and Expense Brief").

[3] Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation ("Final Approval Brief") is being filed on the same day as this supplemental brief.

Since that time, four comments or objections have been received in opposition to Class Counsel's request for an award of attorney's fees, reimbursement of expenses, and award of incentive awards to the class representatives.

Cynthia S. Rock mailed a letter to Class Counsel on September 24, 2014.[4] Ms. Rock supported the settlement as a whole, but objected to Class Counsel's request for one-third of the Settlement Fund as attorneys' fees. She also objected to the amount Class Counsel requested in incentive awards to the class representatives. Ms. Rock voiced a preference that class members receive a larger portion of the settlement fund, reasoning that there would be no case were it not for the class members.

Nicholas and Coralin Davelaar mailed a letter to Class Counsel on August 19, 2014.[5] The Davelaars stated that they had requested to be excluded from the settlement, but also objected on the basis that Class members were receiving insufficient compensation in light of the fees and expenses requested by Class Counsel.

Christopher Andrews filed an objection on September 24, 2014[6] purporting to represent not only himself but also three family members, Michael Andrews, Cathy Waltz (individually and as executor of the estate of Eileen Greenia and

---

[4] Final Approval Brief, Ex. D ("Rock Objection").
[5] Final Approval Brief, Ex. G ("Davelaar Objection").
[6] Objection to Proposed Class Action Settlement, Dkt. No. 159 ("Andrews Objection").

Emily Byrne), and Ronald Waltz.[7]  Among other objections which Plaintiffs will address in their Final Approval Brief, Mr. Andrews claims that the fees and expenses requested by Class Counsel preclude approval of the settlement.  In support of this contention, Mr. Andrews perfunctorily and speculatively claims that the "incentive awards may be high," "[h]ourly rates are high as are the number of hours claimed," and "$3.5 million in expenses may be high."[8]  Mr. Andrews filed an untimely supplemental objection on October 6, 2014.[9]  The Andrews Supplemental Objection expands the original six-page Andrews Objection to a repetitive, 218-page (with an additional 201 pages of exhibits) compilation of unfounded speculation, misrepresentation, misunderstanding, accusations of criminal conduct, insinuations of illicit drug use, and pop song lyrics.

Finally, ADAC Automotive and about two dozen other entities that are all represented by Varnum LLP in unrelated, highly contentious litigation against Blue Cross Blue Shield of Michigan (collectively, the "Varnum Objectors") filed an

---

[7] Christopher Andrews is not an attorney and cannot represent others. *See, e.g.*, *Falkner v. United States*, No. 11-cv-2982, 2012 WL 2682789, at *2 (W.D. Tenn. July 6, 2012) ("A power of attorney does not authorize a non-lawyer to prosecute a case in federal court on behalf of another person.").

[8] Andrews Objection at 6.

[9] Supplement to existing objection of settlement against approval, Plaintiffs' Counsels application for attorneys' fees, rates, hours, expenses, incentive awards, expenses of the administrator, notice, notice plan, and release, Dkt. No. 163 ("Andrews Supplemental Objection").

objection on September 24, 2014.[10]   The Varnum Objectors protest that the settlement gives preferential treatment to the named Plaintiffs in the form of the incentive awards and also gives preferential treatment to Class Counsel in light of Counsel's fee and expense request.

Contrary to the perception of Mr. Andrews and the Varnum Objectors, the Settlement Agreement neither guaranteed *any* payment of attorneys' fees or reimbursement of expenses to Class Counsel nor guaranteed *any* amount of incentive awards to the named Plaintiffs.[11]

## III.   <u>ARGUMENT</u>

"[T]he district court enjoys wide discretion in awarding attorneys fees."[12] "It is within the district court's discretion to determine the 'appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.'"[13]

As explained in the Fee and Expense Brief, the fees, expenses, and incentive awards requested by Class Counsel are all reasonable and well within established precedent.   Moreover, because the fee request is based on the widely accepted percentage of the fund method, the interests of Class Counsel are 100% aligned

---

[10] Joint Objection to Proposed Settlement, Dkt. No. 161 ("Varnum Objection").

[11] *See* Class Action Settlement Agreement, Dkt. No. 148-1 ("Settlement Agreement").

[12] *Barnes v. City of Cincinnati*, 401 F.3d 729, 746 (6th Cir. 2005).

[13] *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996) (quoting *Rawlings v. Prudential-Bache Props., Inc.* 9 F.3d 513, 516 (6th Cir. 1993)).

with the interests of the class: a larger recovery would lead to a correspondingly larger fee.

In any event, the request for attorneys' fees and expenses to be awarded to Plaintiffs' Counsel, as well as the amount of compensation to be awarded the named Plaintiffs, are independent of the Settlement Agreement. The final approval of the Settlement is a wholly separate question from the amount to allocate to Plaintiffs' Counsel and the named Plaintiffs in fees, expenses, and incentive awards.

### A.   Class Counsel's Fee Request Is Fair and Reasonable

In the interests of brevity and judicial economy, Class Counsel refer to their Final Approval Brief for all objections regarding the value of the Settlement to the Class and the dangers of continued litigation.

### 1.   Use of the Percentage of the Fund Approach is Warranted

Mr. Andrews incorrectly claims that the Court should use the lodestar method rather than the percentage of the fund method to calculate Plaintiffs' Counsel's attorney fee award.[14]  Class Counsel already noted the trend in the Sixth Circuit for using the percentage of the fund method.[15]  The percentage of the fund method is preferable because it eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and fully aligns the interests of Class

---

[14] Andrews Supplemental Objection at 127.
[15] Fee and Expense Brief at 7.

Counsel and the Class.[16]   Moreover, Class Counsel have requested a fee that is

$5.5 million *less* than their actual lodestar.   Even the authority to which Mr.

Andrews cites recognizes that a multiplier may be applied in cases that use the

lodestar method.[17]   Mr. Andrews's suggestion, therefore, would increase the award

to Class Counsel, not decrease it.   Because Class Counsel are requesting an

attorney fee award that is less than Plaintiffs' Counsel's lodestar, there is no danger

that Plaintiffs' Counsel will receive a windfall under either method of calculating

attorneys' fees.

### 2.   The Request for One-Third of the Settlement Fund is Fair and Reasonable

In their Fee and Expense Brief, Class Counsel detailed why their request for

an award of one-third of the settlement fund is reasonable.   Indeed, anywhere from

30% of the fund to one-third is a well-accepted ratio in complex class actions.[18]

Even as much as fifty percent of a common fund is not uncommon.[19]   Ms. Rock

---

[16] *See, e.g.*, *Rawlings v. Prudential-Bach Props., Inc.*, 9 F.3d 513, 515 (6th Cir. 1993).

[17] *Am. Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 246 (7th Cir. 2014) (recognizing that a court may apply a multiplier of 1.5 "to account for the contingent nature of the recovery").   Class Counsel believe Mr. Andrews meant to cite to this case on page 128 of his Supplemental Objection; the *Id.* citation given is incorrect.

[18] *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011); *Kogan v. AIMCO Fox Chase, L.P.,* 193 F.R.D. 496, 503 (E.D. Mich. 2000).

[19] *Brotherton v. Cleveland,* 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001) ("Typically, the percentage awarded ranges from 20 to 50 percent of the common

objects that a third is too much, and would prefer a greater share of the settlement fund be distributed to class members. The Davelaars appear to be making essentially the same objection. Given the scope of litigation and the result, Class Counsel are confident that their fee request is fair and reasonable in light of well-established precedent.[20]

The Varnum Objectors claim that "the substantial amount to be paid to class counsel as part of the proposed settlement . . . creates a substantial conflict of interest exists [sic] between class counsel and the class members that raises a serious risk of fraud and collusion."[21] The Varnum Objectors cite to two cases, *Vassalle* and *Greenberg*, for the following proposition: "The reality is that this settlement benefits class counsel vastly more than it does the consumers who comprise the class. The conclusion is unavoidable: this settlement gives preferential treatment to class counsel while only perfunctory relief to unnamed

---

fund created."); *In re Telectronics Pacing Sys., Inc., Accufix Atrial "J" Leads Prods. Liab. Litig.,* 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001) ("the range of reasonableness . . . has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility,* 173 F.R.D. 205, 217 (S.D. Ohio 1997), *rev'd on other grounds,* 24 Fed. App'x 520 (6th Cir. 2001) ("Typically, the percentage awarded ranges from 20 to 50 percent of the common fund created."); *In re Cincinnati Gas & Elec. Co. Sec. Litig.,* 643 F. Supp. 148, 150 (S.D. Ohio 1986) ("typically the percentages range from 20%-50%").
[20] *See* Fee and Expense Brief at 2–17.
[21] Varnum Objection at 11.

class members."[22]  The Varnum Objectors do not explain how the settlements in these cases are similar to the present case.  The reason for that failing is simple: the only thing *Vassalle* and *Greenberg* have in common with the present case is that they all involve class action settlements.

The Varnum Objectors mistakenly rely on *Vassalle* with regard to Class Counsel's fee request.  *Vassalle* only dealt with preferential treatment of named class representatives over unnamed class members.  In fact, the Sixth Circuit explicitly recognized that the challenges to the attorney fee award were mooted by its findings with regard to preferential treatment of the named class representatives.[23]  As such, the Varnum Objectors' reliance on *Vassalle* for this argument is misplaced.

*Greenberg* presents a settlement with vastly different characteristics than are present here.  The *Greenberg* litigation dealt with claims that certain diapers manufactured by defendant Procter & Gamble Company ("P & G") tended to cause severe diaper rash.[24]  "The parties and their counsel negotiated a settlement that awards each of the named plaintiffs $1000 per 'affected child,' awards class counsel $2.73 million, and provides the unnamed class members with nothing but

---

[22] *Id.* at 12.  Varnum Objectors cite this quotation to *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013), but it is properly attributed to *Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*, 724 F.3d 713, 721 (6th Cir. 2013).

[23] *Vassalle*, 708 F.3d at 760.

[24] *Greenberg*, 724 F.3d at 715.

7

nearly worthless injunctive relief."[25]   Unsurprisingly, the Sixth Circuit found that the settlement benefitted the named plaintiffs and their counsel without benefiting the unnamed class members.[26]   The Varnum Objectors claim that the present settlement provides similar preferential treatment of Class Counsel over the unnamed Class members.[27]

The present settlement significantly differs from the settlement in *Greenberg*. First, the present settlement does not guarantee Plaintiffs' Counsel will be paid any amount of attorneys' fees.  The Court may rule on Class Counsel's request for an award of fees in any way it deems fair and reasonable, and it will not affect the terms of the settlement one iota.[28]  The settlement is not tied to the amount of attorney's fees and there is no possibility of collusion as the amount of fees is set by the Court.  Second, the settlement includes a substantial monetary recovery of almost $30 million in which all class members have an opportunity to share.   The interests between Class Counsel and the Class are aligned as the award of attorneys' fees is directly related to how much was recovered on behalf of the class members. Such a settlement bears no resemblance to an instance where unnamed class members only receive "worthless" injunctive relief and class counsel receive a predefined, and agreed to, sum for fees.

---

[25] *Id.*
[26] *Id.* at 721.
[27] Varnum Objection at 24–25.
[28] *See* Settlement Agreement ¶ 11.

Mr. Andrews relies on a 2013 survey on securities class action cases to argue that the fee request is excessive.[29]  However, that survey averaged cases that settled immediately or right after the motion to dismiss stage when counsel's lodestar is low (which therefore tend to have lower fee awards) with cases that went through years of discovery (which tend to have higher fees).  Given the length of this case, and the extensive discovery and briefing involved, that survey is not instructive.

### 3.   Plaintiffs' Counsel's Lodestar

Mr. Andrews falsely claims that Plaintiffs' Counsel "intentionally and artificially inflated" hourly rates by 34.5%.[30]  He also baselessly claims that "the hours claimed are also inflated . . . ."[31]

As a preliminary matter, Mr. Andrews's false claims with regard to Plaintiffs' Counsel's lodestar are a distracting sideshow.  As Class Counsel noted in the Fee and Expense Brief, a "percentage of the fund approach fosters judicial economy by eliminating a detailed and time-consuming lodestar analysis."[32]  Even so, Plaintiffs' Counsel's rates are in line with hourly rates clients pay in high-stakes, complex cases.[33]  Plaintiffs' Counsel's rates are their standard rates for complex class action

---

[29] Andrews Supplemental Objection at 17–18.

[30] Andrews Supplemental Objection at 25, 118.

[31] *Id.*

[32] Fee and Expense Brief at 7 (citing *Rawlings*, 9 F.3d at 515–16).

[33] *See* Declaration of Daniel C. Hedlund in Support of Reply to Objectors' Opposition to Class Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Payment of Incentive Awards to Class

Filed 10/24/14

litigation and have not been inflated in any way for this case.   Indeed, Class

Counsel's fees and rates have been approved by other courts.[34]   Mr. Andrews relies

on the 2014 State of Michigan Economics of Law Practice survey to argue that

average rates across *all* litigation in Detroit should apply to counsel in this case.[35]

The averages in the study Mr. Andrews cites are based in large part on

comparatively simple matters like landlord-tenant law, workers' compensation,

and other disputes which cannot seriously be construed as similar to this case.   The

study does not even list antitrust cases as a category, likely because antitrust cases

are exceptionally complex and specialized.     Therefore, these statistics are

unhelpful in determining hourly rates for "*similar work* in the relevant

community."[36]

---

Representatives ("Hedlund Decl."), Ex. A ("McGuinness Decl.") ¶¶ 22, 46, 52, 54, 58, 64–66, 69, 73, 76, 79, 82, 85, 88, 91, 94, 96.  While Mr. McGuinness opines that he lacks sufficient information to conclude that Dan Gustafson's rate is reasonable, McGuinness Decl. at 19 n.3, he is confident that an hourly rate of $775 would be reasonable, and this difference only impacts the lodestar by $41,875, or 1.75%.

[34] *See, e.g., In re The Mills Corp. Sec. Litig.*, No. 06-cv-77, Doc. No. 478-15, *granted*, 265 F.R.D. 246, 264-65 (E.D. Va. 2009) (approving as reasonable Cohen Milstein rates ranging from $440 to $775 for partners and $295 to $525 for associates); *Trabakoolas v. Watts Water Techs., Inc.*, No. 3:12-cv-1172, Doc. No. 281 (N.D. Cal. May 30, 2014), *granted*, Doc. No. 304 (Aug. 5, 2014) (approving as reasonable a percentage of the fund fee request including Gustafson Gluek rates ranging from $700 to $900 for partners and $335 to $425 for associates).

[35] Andrews Supplemental Objection at 140–50.

[36] *Hadix v. Johnson*, 65 F.3d 532, 535–36 (6th Cir. 1995) (emphasis added).

Regarding the hours billed, as discussed in the Fee and Expense Brief, Co-Lead Counsel carefully coordinated efforts by Plaintiffs' Counsel to maximize efficiency, minimize duplication of effort, and minimize any unnecessary or duplicative billing. Class Counsel also reviewed time submissions to ensure that no person submitted time for unauthorized work. The result is a well-managed number of hours worked that is reasonable for a case of this type.[37] Class Counsel thus firmly deny Mr. Andrews's scurrilous and entirely baseless charges.

Mr. Andrews incorrectly estimates that Plaintiffs' Counsel's lodestar is inflated by $5,416,963.[38] Of course, Mr. Andrews's supposed conviction that Class Counsel inflated their lodestar by nearly $5.5 million is difficult to credit given his offer not to object if Class Counsel reduced their request by less than $1 million—and paid him $153,450.[39] But even if Mr. Andrews's number had some plausible basis in fact, the requested attorney fee award would still be reasonable. Plaintiffs' Counsel have invested time in this case totaling a lodestar of $15,497,960.25.[40] Subtracting Mr. Andrews imaginary "excess" yields a lodestar

---

[37] *See* McGuinness Decl. ¶ 12.

[38] Andrews Supplemental Objection at 25. Mr. Andrews also claims that historic, rather than current, hourly rates should be used. *Id.* at 118. However, this is plainly contrary to settled law. *Barnes*, 401 F.3d at 745.

[39] *See* Final Approval Brief at 33–34; Final Approval Brief, Exs. L–N.

[40] *See* Fee and Expense Brief at 14.

of $10,080,997.25.[41]   Class Counsel are requesting a fee of one-third of the Settlement Fund, or approximately $9,996,667.  In other words, Class Counsel's fee request is still *lower* than the lodestar Mr. Andrews would arbitrarily assign.  As noted in the Fee and Expense Brief, courts routinely approve fee awards that represent a substantial *increase* of counsel's actual lodestar.[42]  Thus even if Mr. Andrews manufactured enough "inflated billing" to diminish the lodestar below the requested award, Class Counsel's fee request would still be reasonable even with a modest multiplier.

Another of Mr. Andrews's litany of objections is that the attorney fee award should be calculated based on the net settlement fund after subtraction of expenses rather than the gross settlement fund.[43]  However, "the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable."[44]  If fees were not awarded on the gross recovery, Class Counsel would be unfairly required to pay a portion of

---

[41] When Mr. Andrews attempts to perform this math, he starts with Class Counsel's fee request based on the percentage of the fund method and subtracts the imagined excessive lodestar amount.  Andrews Supplemental Objection at 134, 191.  That approach is nonsensical.  Any imagined excessive lodestar can only properly be subtracted from Plaintiffs' Counsel's total lodestar.

[42] *See, e.g., In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767–68 (S.D. Ohio 2007) (awarding a multiplier of 6 and noting that "[m]ost courts agree that the typical lodestar multiplier . . . ranges from 1.3 to 4.5"); *Kogan*, 193 F.R.D. at 503–04 (approving an effective multiplier of 2.21).

[43] Andrews Supplemental Objection at 158–64.

[44] *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

12

the expenses it advanced at its risk.  In this case, Class Counsel paid well into

seven figures of case expenses and seeks no interest on this multi-year investment,

but merely to be returned the amount it had paid and incurred to third parties.

Thus, no objectors have presented a credible and coherent argument as to

why Class Counsel's fee request is unfair or unreasonable.

### B.      The Expenses Requested Are Fair and Reasonable

Mr. Andrews offers a speculative objection that Plaintiffs' Counsel may be

seeking reimbursement for inflated, or even invented, expenses.[45]  Class Counsel

categorically deny any suggestion that expenses have in any way been inflated,

either intentionally or negligently.   Plaintiffs' Counsel have incurred all these

expenses in litigating this case, including millions of dollars in expert fees.  Given

the uncertainty of ever recouping these expenses, and the fact that the litigation has

been active for almost four years, Plaintiffs' Counsel have had no interest in

incurring any more expenses than absolutely necessary to advance the interests of

the Class.[46]

---

[45] *See* Andrews Supplemental Objection at 25 ("$3.5 million in expenses are grossly inflated, misleading; missing many details and a significant portion may be fraudulent without receipts.").

[46] The $1 million Blue Cross Blue Shield of Michigan already paid into the Settlement Fund has been entirely used to pay for the costs of notice.  Hedlund Decl. ¶¶ 4–7.  Additionally, since submitting the proposed notice plan to the Court, Class Counsel were able to gain access to approximately 500,000 additional names and addresses for the purposes of providing direct notice.  Hedlund Decl. ¶ 8.  The

13

Mr. Andrews repeatedly questions the $2.5 million expense for the expert analysis of Dr. Jeffrey J. Leitzinger and the respected economic consulting firm Econ One, but expert expenses are indispensable in complex antitrust class actions.[47]  Any suggestion that these expenses could have been avoided or reduced suggests a serious misunderstanding of or disinterest in the Class's needs in this litigation.

All of the expenses, especially the extensive expert fees, were necessary to advance the litigation and ultimately secure this recovery.  The millions invested by Class Counsel, without any guarantee of recovery, demonstrate the extent of their commitment to and the substantial risks inherent in this complex class action litigation.

## C.  The Requested Class Representative Incentive Awards Are Fair and Reasonable

As with Class Counsel's fee and expense reimbursement requests, nothing in the terms of the settlement guarantees the payment of incentive awards in any amount to any of the named Plaintiffs.  The question of whether and how much to allow the named Plaintiffs in compensation for their time and devotion to the case

---

cost of this additional direct notice is approximately $146,000, an expense for which Class Counsel will not be seeking reimbursement.  Hedlund Decl. ¶ 9.

[47] *B&H Med., L.L.C. v. ABP Admin., Inc.*, No. 02-73615, 2006 WL 123785, at *3 (E.D. Mich. Jan. 13, 2006) ("[T]he Court recognizes that the assistance of a qualified expert is both a necessary and a costly expense of antitrust litigation . . . .").

is unrelated to the question of whether to approve the settlement. The Court could decline to allow any incentive awards and the terms of the settlement would still be fully intact, although Class Counsel believe the incentive award request is reasonable as set forth in the Fee and Expense Brief.[48]

Mr. Andrews, Ms. Rock, and the Varnum Objectors all object that the requested incentive awards are too high.[49] Ms. Rock objects that "there would not be a case if it were not for the class members." However, it would be more accurate to say that there would not be any *claims* were it not for the class members. It is the named Plaintiffs, who were willing to contest with the biggest health insurer in the state of Michigan and expend substantial time and effort advancing the litigation of the case, to whom credit for the case itself is due.[50]

The Varnum Objection again cites *Vassalle* and *Greenberg* to argue that the requested incentive awards create a substantial risk of fraud and collusion and constitute impermissible preferential treatment of the named Plaintiffs over the

---

[48] *See* Fee and Expense Brief at 19–23; *see also Hadix*, 322 F.3d at 897 (noting that courts have "stressed that incentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class").

[49] *See* Andrews Objection at 6; Andrews Supplemental Objection at 165; Rock Objection at 1; Varnum Objection at 10–11, 23–24.

[50] *See* Fee and Expense Brief at 21–23 (summarizing named Plaintiffs' participation).

unnamed class members.[51]  As with Class Counsel's fee request, these cases are inapposite or easily distinguishable from the present case.

In *Vassalle*, the named plaintiff sued on behalf of a nationwide class of individuals against whom Midland Funding LLC ("Midland") had filed debt collection actions.[52]  The suit alleged that employees of Midland Credit Management, Inc. ("MCM") "robo-signed" affidavits used in the collection actions, claiming that they had personal knowledge of the debt when they actually did not. The suit alleged that Midland and MCM had violated the Fair Debt Collection Practices Act ("FDCPA") via this practice.[53]  The settlement created a common fund of $5.2 million for the benefit of the class.[54]  But the settlement also forbade absent class members from using the robo-signed affidavits to oppose the debts—while exonerating the named plaintiffs from their debts.[55]  This "virtually assure[d] that [defendant] will be able to collect on these debts."[56]  Finding the settlement unfair due to the combination of the exoneration of the named plaintiffs' debt with the entrenchment of absent class members' debts, the Sixth Circuit explicitly declined to examine the appropriateness of the incentive awards at issue.[57]

---

[51] Varnum Objection at 10–11, 23–24.

[52] *Vassalle*, 708 F.3d at 751–52.

[53] *Id.*

[54] *Id.* at 753.

[55] *Id.* at 755.

[56] *Id.*

[57] *Id.*

16

Unlike *Vassalle*, the named Plaintiffs here received no unique benefit aside from the requested incentive awards, and the absent class members suffer no liability in any other disputes with the defendant. *Vassalle* is thus wholly inapposite with regard to the reasonableness of the requested incentive awards.

As discussed above, *Greenberg* included what could be construed as incentive awards of $1,000 for each affected child of each named plaintiff.[58] However, given that these amounts were set as part of the settlement itself and not at the discretion of the court, they are more akin to the debt forgiveness afforded to the named plaintiff in *Vassalle* than incentive awards. Even viewing the *Greenberg* payments as incentive awards, *Greenberg* is a case where all unnamed class members received *zero* compensation. As noted above, the Sixth Circuit found that the sole relief afforded to the unnamed class members was "worthless" injunctive relief. Where the named plaintiffs receive a substantial and certain amount and the unnamed class members receive nothing (even in the aggregate), it is obvious that the named plaintiffs are receiving unfairly preferential treatment. However, that is far from the case here. Class Counsel secured a settlement fund of almost $30 million in which all class members have an opportunity to share.

Any argument that the incentive awards constitute inherently impermissible preferential treatment is unavailing. Payment of incentive awards is a permissible

---

[58] *Greenberg*, 724 F.3d at 715.

use of settlement funds.[59] And the amount of the requested incentive awards is justified, reasonable and well in line with established precedent.[60]

## IV. <u>CONCLUSION</u>

For all the foregoing reasons, Class Counsel respectfully request that the Court overrule all objections and approve Class Counsel's application for attorney fees, reimbursement of expenses, and payment of incentive award to the class representatives.


Dated: October 24, 2014             Respectfully submitted,

                                    /s/ Daniel E. Gustafson
                                    Daniel E. Gustafson
                                    Daniel C. Hedlund
                                    Daniel J. Nordin
                                    **GUSTAFSON GLUEK PLLC**
                                    Canadian Pacific Plaza
                                    120 South Sixth Street, Suite 2600
                                    Minneapolis, MN 55402
                                    Telephone: (612) 333-8844
                                    dgustafson@gustafsongluek.com
                                    dhedlund@gustafsongluek.com
                                    dnordin@gustafsongluek.com

---

[59] While the Sixth Circuit has "never explicitly passed judgment on the appropriateness of incentive awards," it has recognized that "there may be circumstances where incentive awards are appropriate." *Hadix*, 322 F.3d at 898; *see also Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351–52 (6th Cir. 2009) (affirming final approval of a settlement where the named class representatives each received $10,000 and the unnamed class members received $300).

[60] *See* Fee and Expense Brief at 19–23.

Daniel A. Small
Brent W. Johnson
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
dsmall@cohenmilstein.com
bjohnson@cohenmilstein.com

E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan  48307
Telephone: (248) 841-2200
epm@millerlawpc.com

Fred T. Isquith
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
270 Madison Avenue
New York, New York, 10016
Telephone: (212) 545-4690
isquith@whafh.com

Theodore B. Bell
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Telephone: (312) 984-0000
tbell@whafh.com

*Interim Class Counsel*

David H. Fink (P28235)
Darryl Bressack (P67820)
**FINK + ASSOCIATES LAW**
100 West Long Lake Rd, Suite 111
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkandassociateslaw.com

*Interim Liaison Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2014, I electronically filed the *Reply to Objectors' Opposition to Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Payment of Incentive Awards to Class Representatives* with the Clerk of the Court using the ECF, who in turn sent notice to counsel of record for all parties and for the Varnum Objectors. Additionally, I served a copy of that document by first-class mail or electronic mail on each of the following individuals who have not registered with ECF:

Christopher Andrews
P.O. Box 530394
Livonia, MI 48152-0394

Scott Mancinelli
P.O. Box 3266
Holland, MI 49422-3266

Nicholas and Coralin Davelaar
405 Turrentine Way
Russellville, AR 72801

Cynthia S. Rock
18357 Levan Rd.
Livonia, MI 48152

Ronald D. Diebel
19177 Cheshire Street
Detroit, MI 48236

David VanDaele
9812 Ferder Road
Maybee, MI 498159

John M. Kunitzer
4328 Lakecress Drive East
Saginaw, MI 48603

/s/ Daniel E. Gustafson
Daniel E. Gustafson