# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| THE SHANE GROUP, INC. et al. | ) | |
| | ) | |
| Plaintiffs, on behalf of themselves | ) | |
| and all others similarly situated | ) | Case No. 2:10-cv-14360-DPH-MKM |
| | ) | |
| v. | ) | Judge Denise Page Hood |
| | ) | Magistrate Judge Mona K. Majzoub |
| BLUE CROSS BLUE SHIELD | ) | |
| OF MICHIGAN, | ) | |
| | ) | |
| Defendant. | ) | |

## BLUE CROSS BLUE SHIELD OF MICHIGAN'S
## MEMORANDUM IN SUPPORT OF MOTION FOR FINAL
## APPROVAL OF CLASS ACTION SETTLEMENT

Thomas Van Dusen (P30602)
Alan N. Harris (P56324)
Jason R. Gourley (P69065)
BODMAN PLC
201 South Division St., Suite 400
Ann Arbor, MI 48104
734-930-2482
aharris@bodmanlaw.com

Robert A. Phillips (P58496)
BLUE CROSS BLUE SHIELD OF
    MICHIGAN
600 Lafayette East, MC 1925
Detroit, MI  48226
313-225-0536
rphillips@bcbsm.com

Todd M. Stenerson (P51953)
D. Bruce Hoffman (Adm. E.D. MI, DC Bar
495385)
Neil K. Gilman (Adm. E.D. MI, DC Bar
449226)
Jonathan H. Lasken (Adm. E.D. MI, DC Bar
997251)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Ave., NW
Washington, DC  20037
202-955-1500
tstenerson@hunton.com

## STATEMENT OF ISSUES PRESENTED

1. Is the Settlement fair, reasonable, and adequate?

    BCBSM's answer: **Yes.**

2. Is the Plan of Allocation fair, reasonable, and adequate?

    BCBSM's answer: **Yes.**

## <u>CONTROLLING AUTHORITY</u>

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*IUE-CWA v. General Motors Corp.,* 238 F.R.D. 583 (E.D. Mich. 2006)

## **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED...................................................................i

CONTROLLING AUTHORITY ........................................................................ ii

TABLE OF AUTHORITIES ..........................................................................iv

ARGUMENT ........................................................................................3

    I.    The Kunitzer Objection Misunderstands The Requirements Of The Settlement...........................................................................4

    II.    The Andrews Objection Provides A Laundry List Of Vague Assertions From An Individual Who Demanded $153,000 Not To File His Objection ...........................................................6

    III.    The Mancinelli Objection Ignores Michigan Law And The Terms Of The Settlement ........................................................7

    IV.    The Varnum Objectors Kitchen Sink Filing Should Be Rejected ......11

        A.    The Varnum Objectors Cannot Impugn the Fairness, Reasonableness and Adequacy of the Settlement....................11

            1.    The Settlement Amount is Fair.......................................12

            2.    The Claims Process is not Burdensome .........................15

            3.    The Sealing of Documents is not Evidence of Collusion and is Moot....................................................17

        B.    The Other Arguments Raised by the Varnum Objectors are Just as Weak ........................................................18

CONCLUSION .....................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Carson v. Am. Brands, Inc.,* 450 U.S. 79 (1981)  ....................................................13

*In re Baby Products Antitrust Litig.,*
    708 F.3d 163 (3d Cir. 2013) ............................................................8, 9

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    588 F.3d 24 (1st Cir. 2009)................................................................8

*IUE-CWA v. General Motors Corp.,*
    238 F.R.D. 583 (E.D. Mich. 2006) (Hood, J.)................................3, 15

*Lane v. Facebook, Inc.,*
    696 F.3d 811 (9th Cir. 2012) .............................................................8

*Reppert v. Marvin Lumber and Cedar Co.,*
    359 F.3d 53 (1st Cir. 2004)...............................................................10

*UAW v. Gen. Motors Corp.,*
    497 F.3d 615 (6th Cir. 2007) ...............................................2, 12, 13

STATUTES

Mich. Comp. Laws § 500.3405a(1-2)......................................................7

Mich. Comp. Laws § 500.3405a(3) .........................................................7

OTHER AUTHORITIES

Manual for Complex Litigation (Fourth) § 21.61 (2004).......................16

iv

There can be little question that the Settlement is fair, reasonable, adequate, and deserving of approval. Settlement Class Members – both individuals and entities – can make claims and obtain payments. Contrary to the suggestion of some of the very few objectors, the claims process is not burdensome. Settlement Class Members are required to provide much less information than would be required if they were forced to go to trial. And the amount and allocation of payments is more than reasonable in light of Plaintiffs' expert's conclusion about Plaintiffs' best case damages scenario.

A key question in this case was whether the Court could certify for litigation purposes the class proposed by Plaintiffs. After Plaintiffs filed their motion for class certification, Blue Cross Blue Shield of Michigan ("BCBSM") responded by demonstrating that, among other things, the proposed class would be unmanageable. BCBSM also filed a *Daubert* motion challenging Plaintiffs' expert's methodology. And Plaintiffs were well aware of the weaknesses in their merits case. In particular, Plaintiffs faced the daunting prospect of proving that hospitals increased prices because of Most Favored Nations provisions ("MFNs") in the face of the uniform testimony of the large hospitals (where most of the hospital spending occurs) that the MFNs did not cause any price increases.

These fundamental flaws in Plaintiffs' case created significant risk for them. It is therefore understandable that they sought a settlement. And while BCBSM

1

believes that it would have prevailed and that Plaintiffs and the Settlement Class

Members would ultimately have recovered nothing, BCBSM also had reasons to

resolve this case.  It faced considerable costs and business disruption from the

continuation of litigation that has already lasted four years.  Thus, settlement

serves the best interests of all parties.

Plaintiffs' Final Approval brief fully explains the Settlement and why it

meets the standards for approval.  BCBSM files this separate brief to respond to

the objections filed with the Court.  BCBSM notes that there are only ***four***

objections to the Settlement filed on behalf of 32 Settlement Class Members.

Given the millions of Settlement Class Members, this alone refutes any contention

that the Settlement is not fair, reasonable, and adequate.[1]  Moreover, the three *pro*

*se* objections (Dkts 158, 159, 160) rely on erroneous characterizations of the

Settlement and legally flawed arguments.  And the objection filed by a law firm on

behalf of 26 BCBSM self-insured entities (Dkt 161) appears designed to further the

objectors and their counsel's interest in unrelated litigation they are pursuing

---

[1] The number of opt-outs is also incredibly small, approximately 0.01% of all class members.  Given the broad notice program and the publicity surrounding the Settlement, this reaction further demonstrates that the Settlement is supported by the overwhelming majority of Settlement Class Members.  *See UAW v. Gen. Motors Corp.,* 497 F.3d 615, 631-32 (6th Cir. 2007) (reaction of absent class members is an important factor in final approval analysis).

against BCBSM, rather than any viable objections to the Settlement.  Accordingly, the Court should reject the objections and approve the Settlement.

## ARGUMENT

As this Court has explained, a court should approve a class settlement if it determines that the settlement is "fair, reasonable and adequate." *IUE-CWA v. General Motors Corp.,* 238 F.R.D. 583, 593 (E.D. Mich. 2006) (Hood, J.).  The court must evaluate the proposed settlement "in light of the general federal policy favoring the settlement of class actions.  .  .  .  Given that class settlements are favored, the role of the district court is 'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'"  *Id.* at 594 (citations omitted).  As the Court further recognized:

> In exercising this role, the court must respect the parties' compromise and may not "substitute his or her judgment for that of the litigants and their counsel."  This is because "there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."

*Id.* (citations omitted).

Plaintiffs' brief comprehensively demonstrates why the Settlement is fair, reasonable, and adequate when evaluated under the appropriate

3

standard. BCBSM demonstrates below why none of the four objections to the Settlement (again, out of millions of class members) casts any doubt on that conclusion.[2]

## I.  The Kunitzer Objection Misunderstands The Requirements Of The Settlement

The first objection (Dkt 158) was filed by a single individual, Mr. John M. Kunitzer. Mr. Kunitzer states that he would like to file a claim but does not have copies of his bills. He further states that because he was identified as a Settlement Class Member, the Settlement Administrator should be able to get for him the information he needs to support his claim.

Mr. Kunitzer is mistaken. Settlement Class Members are only eligible for payments based on what *they* paid to a hospital. This includes things like deductibles, co-pays, and non-covered services. Insurers such as BCBSM have records showing how much was billed by the hospital, but have no way to know whether individuals actually paid the hospital, or how much. The Settlement Administrator does not have and cannot obtain the necessary information, which is

---

[2] Four other documents that can be construed as objections were sent by individuals to counsel, but were not filed with the Court. These four one-page letters are attached to Plaintiffs' Memorandum. As discussed therein, one was sent by a non-class member who has no standing to object, one was sent by two individuals who opted out and thus has no standing to object, one was sent by an individual who misunderstood the claims process, and one was sent by an individual who supports the Settlement, but not the attorneys' fees.

in the possession of the individuals or, possibly, the hospitals.  This is the reason the Parties designed the claims process as they did.[3]

The Parties reasonably believed that most Settlement Class Members would have records of hospital visits and payments.  If they did not have the actual bills, then they would have other evidence of payment, such as canceled checks or credit card statements.  But the Parties also recognized that some Settlement Class Members may not have records.  This is why, as explained in Plaintiffs' brief, the Settlement Class Members are asked to provide information to the best of their ability, subject to the Settlement Administrator's right to request more if the information provided seems obviously incorrect or fraudulent (*e.g.,* an individual claims to have paid one million dollars out of pocket to a hospital).

The reasonableness of this approach becomes even more apparent when it is compared to the evidence that would have been necessary for any Settlement Class Member to have recovered after a trial.  There, BCBSM could have held Settlement Class Members to much stricter proof than the "we'll take almost anything that is reasonable" approach governing the Settlement claims process.  The Settlement is a fair and reasonable attempt to limit the burden on Settlement Class Members while recognizing the need for them to provide some evidence to

---

[3] BCBSM understands that Class Counsel has explained these facts to Mr. Kunitzer, and based on that explanation, Mr. Kunitzer intends to withdraw his objection and file a claim.

obtain payment – as long as it is reasonably based in fact and signed under the penalty of perjury.  Thus, the Court should reject Mr. Kunitzer's objection.

## II.   The Andrews Objection Provides A Laundry List Of Vague Assertions From An Individual Who Demanded $153,000 Not To File His Objection

The second objection (Dkt 159) was filed by Christopher Andrews, on behalf of himself and three others.  Mr. Andrews' initial filing simply listed a large number of generic objections – *e.g.,* "not in the public interest," "violates the due process clause," and "postcard short notice is flawed" – but provided no analysis or explanation as to why those objections apply to the Settlement Agreement in this case.

Mr. Andrews subsequently filed a longer document.  (Dkt 163.)  This 220-page "brief" was filed long after the objection deadline and should be stricken both for its length and untimeliness.  The 220 pages include many unsupported assertions, and mostly appears to be a screed against Class Counsel.  BCBSM will let Class Counsel respond to those accusations.

However, BCBSM believes it is necessary to point out why Mr. Andrews appears to make such vicious attacks against Class Counsel and seeks to derail the Settlement.  Before the objection deadline, BCBSM learned from Class Counsel that Mr. Andrews threatened to file an objection unless Class Counsel paid him $153,000.  Such a payment would, of course, have been improper, and Class

6

Counsel rejected Mr. Andrews' demand.   Mr. Andrews made good on his threat.
If the content of Mr. Andrews' objection is not enough to demonstrate that it
should be rejected, the fact that it was filed as a response to a rejected improper
demand for a pay-off should be.   Mr. Andrews' objection is not made in good faith
and provides no legitimate reasons why the Court should deny final approval.

## III.   The Mancinelli Objection Ignores Michigan Law And The Terms Of The Settlement

The third objection (Dkt 160) was filed by Scott Mancinelli.   Mr. Mancelli
makes three arguments.[4]   Mr. Mancinelli's primary argument is that the Settlement
does not contain a provision barring the future use of MFNs.   Thus, Mr. Mancinelli
asserts that "the settlement should be revised to simply prohibit [MFN] clauses in
any contracts between BCBS[M] and the hospitals going forward and to declare
existing clauses void and contrary to public policy." (Dkt 160,  at 3.)   Mr.
Mancinelli is apparently unaware that as of January 1, 2014, the Michigan
legislature prohibited the use of MFNs, broadly defined, in healthcare contracts.
*See* Mich. Comp. Laws § 500.3405a(3).   Moreover, MFNs in healthcare contracts
have been unenforceable in Michigan since February 1, 2013.   *See* Mich. Comp.
Laws § 500.3405a(1-2); Mich. Dep't of Licensing and Regulatory Affairs, Bulletin

---

[4] Mr. Mancinelli also incorporates Mr. Kunitzer's objection.  That objection
is addressed above.

7

2013-04-INS (Feb. 8, 2013).  Thus, Mr. Mancinelli's primary objection fails to recognize the state of the law, and is essentially moot.

Mr. Macninelli's second argument fares no better.  He cites several cases, ostensibly to suggest that *cy pres* distribution is inappropriate, but never actually applies the case law to the facts of this case.  Courts routinely grant final approval to settlements that include *cy pres* distributions.  *See, e.g., Lane v. Facebook, Inc.,* 696 F.3d 811, 819-20 (9th Cir. 2012); *In re Pharm. Indus. Average Wholesale Price Litig.,* 588 F.3d 24, 33-36 (1st Cir. 2009); *see also In re Baby Prods. Antitrust Litig.,* 708 F.3d 163, 172 (3d Cir. 2013) (vacating final approval because district court did not have sufficient information, but stating that "[w]e join other courts of appeals in holding that a district court does not abuse its discretion by approving a class action settlement agreement that includes a *cy pres* component directing the distribution of excess settlement funds to a third party to be used for a purpose related to the class injury").  Although *cy pres* distributions

> are most appropriate where further individual distributions are economically infeasible, we decline to hold that *cy pres* distributions are only appropriate in this context. Settlements are private contracts reflecting negotiated compromises.  The role of a district court is not to determine whether the settlement is the fairest possible resolution— a task particularly ill-advised given that the likelihood of success at trial (on which all settlements are based) can only be estimated imperfectly. The Court must determine whether the compromises reflected in the settlement—including those terms relating to the allocation of settlement funds—are fair, reasonable, and adequate when considered from the perspective of the class as a whole.

*Baby Products,* 708 F.3d at 174-75 (citation omitted).

The *cy pres* distribution here easily meets the standards for fairness. This is not a case where the entire settlement amount is being distributed *cy pres* and class members receive nothing (although those have been upheld). Rather, the Settlement is designed to put as much of the money as possible into the hands of Settlement Class Members. Thus, Category 1 and 2 payments are not eligible for *cy pres* distribution. Rather, the Parties agreed that only a small number of Category 3 payments – those less than $10 where the claimant has not filed Category 1 or 2 claims – are eligible for *cy pres*. The Parties properly determined that distribution of amounts less than $10 would be economically infeasible. The *cy pres* component of the Plan of Allocation is therefore appropriate and does not affect the fairness of the Settlement.[5]

Mr. Mancinelli also challenges the notice, claiming that he did not receive it, but acknowledging that his daughter did. This is not surprising. The class consists of millions of individuals and entities with coverage from numerous different insurers who received services at more than 140 hospitals in Michigan over an eight year period. As detailed in the Notice Plan (Exhibit A to Plaintiff's Motion

---

[5] The Parties believe that the Free Clinics of Michigan is an excellent *cy pres* choice and that its exemplary work improving healthcare in Michigan fits well within this case. There has been no challenge to its selection as the *cy pres* recipient. However, because of the way the Settlement is structured to provide money to Settlement Class Members, the expectation is that the amount distributed to the Free Clinics of Michigan will be at most modest.

for Preliminary Approval (Dkt 148)), the Plaintiffs had some data sources from which to send notice. These were comprehensive, with the names of approximately three million individuals, but they were not perfect. This is why the Parties supplemented the notice with additional extensive media notice, as is standard in large consumer class actions.

As the Court found on Preliminary Approval, the Notice Plan "is the best practicable under the circumstances and, if carried out, shall constitute due and sufficient notice." (Dkt 151, at 6.) The fact that one Settlement Class Member complains he received a notice at his house but it was directed to his daughter does not change that conclusion. *See, e.g., Reppert v. Marvin Lumber and Cedar Co.,* 359 F.3d 53, 56 (1st Cir. 2004) ("[i]ndividual notice of class proceedings is not meant to guarantee that every member entitled to individual notice receives such notice, but it is the court's duty to ensure that the notice ordered is reasonably calculated to reach the absent class members") (citations omitted).[6]

For the reasons discussed above, Mr. Mancinelli's objection should be rejected.

---

[6] Mr. Mancinelli states that his daughter "obviously . . . never paid for any health care services directly." (Dkt 160, at 6.) This further demonstrates that the question of who paid the hospitals and how much is not information that is in the possession of the insurer or the Settlement Administrator, and further supports the appropriateness of the claims process.

**IV.    The Varnum Objectors' Kitchen-Sink Filing Should Be Rejected**

At first glance, the objection filed by 26 BCBSM self-insured customers (the "Varnum Objectors" (Dkt 161)), seems to be the most serious.  It is the only objection where the objectors appeared to take the step of retaining lawyers to file their objections.  However, what the objection leaves out dispels the notion that this objection represents a good-faith disagreement by these Settlement Class Members with the terms of the Settlement.

The Varnum Objectors are not a random collection of entities that separately approached the Varnum law firm to complain about the Settlement and to address legitimate concerns.  Rather, Varnum already represents these "objectors" in unrelated litigation against BCBSM.  That litigation has been ongoing for more than three years and has been, to put it mildly, contentious.  Once this context is understood, it becomes apparent that the Varnum Objectors' filing is not about the current Settlement, but about antipathy toward BCBSM and a desire to force BCBSM to continue to litigate on multiple fronts.  Indeed, this is the only way to make sense of the ludicrous suggestion that the ***minimum*** settlement amount that the Court should approve is ***$850 million***.  (Dkt 161, at 6.)

**A.    The Varnum Objectors Cannot Impugn the Fairness, Reasonableness and Adequacy of the Settlement**

The Varnum Objectors posit five reasons why the Settlement is not fair, reasonable, and adequate:  (1) the Settlement Amount is too low; (2) the Settlement

11

gives preferential treatment to the named Plaintiffs; (3) the Settlement gives

preferential treatment to class counsel; (4) the claims process is unnecessarily

burdensome; and (5) the court record should be unsealed.  (Dkt, 161, at 1-2.)

BCBSM demonstrates below why arguments (1), (4), and (5) fail.  Argument (2)

and (3) also fail, but because those are aimed at Class Counsel and the Named

Plaintiffs, BCBSM will allow Class Counsel to address those.[7]

In assessing these objections, it is important to reiterate that it is not the

Court's role to "decide whether one side is right or even whether one side has the

better of these arguments.  Otherwise, we would be compelled to defeat the

purpose of a settlement in order to approve a settlement.  The question rather is

whether the parties are using settlement to resolve a legitimate legal and factual

disagreement."  *UAW,* 497 F.3d at 632.

### 1.    The Settlement Amount is Fair

The Varnum Objectors appear to make two arguments regarding the

Settlement amount.  The first argument suggests that the amount is simply too low

because of the overall amount of payments to the hospitals during the Class Period.

---

[7] It is worth noting that contrary to the suggestion of preferential treatment, the Settlement does not require any payment to the Plaintiffs or their counsel. Rather, the Settlement allows Plaintiffs and their counsel to ask the Court to award them payment of up to those amounts from the Settlement Fund.  The ultimate amount awarded to Plaintiffs and their counsel is solely in the Court's discretion. (*See* Order Granting Preliminary Approval to Proposed Class Settlement, Dkt 151, at 8.)

(Dkt 161, at 4-9.)  The second argument limits the first, asserting that "[w]hen the evidence supporting a finding of liability against Blue Cross is considered in conjunction with the massive amount of potential damages and the possible recovery of treble damages and attorneys' fees, it is obvious that the proposed settlement is grossly unreasonable."  (Dkt 161, at 21.)  The latter argument is the only relevant one, but it fails on the merits.

> As the Sixth Circuit has held:
>
> The fairness of each settlement turns in large part on the bona fides of the parties' legal dispute. Although this inquiry understandably does not require us to "decide the merits of the case or resolve unsettled legal questions," we cannot "judge the fairness of a proposed compromise' without "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement."

*UAW,* 497 F.3d at 631 (6th Cir. 2007) (quoting *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981).  The Varnum Objectors' analysis of Plaintiffs' likelihood of success on the merits is perfunctory at best.  They rely primarily on the Department of Justice ("DOJ") case, but they ignore the fact that the allegations in that case were never proven.  Perhaps more importantly, the DOJ proceeded based on the government's right to enjoin potential violations of the law, sought only an injunction, and was not required to show injury or damages.  A civil plaintiff, on the other hand, must prove both injury and damages.

BCBSM does not believe it is necessary to address all of the arguments as to why the MFNs did not cause injury and damages. Indeed, the Court is very familiar with these arguments. However, a single crucial fact is sufficient to explain why, when the Settlement amount is weighed against the likelihood of success, the Settlement is fair, reasonable, and adequate. In this case, which is based on the allegation that MFNs caused Settlement Class Members to pay too much at hospitals, the witnesses from the large hospitals all testified that the MFNs did not affect the rates charged to anyone.[8]

It is also important to recognize what success on the merits actually would mean in this case. The Varnum Objectors suggest that $850 million is a *minimum* reasonable settlement. (Dkt 161, at 6.) But this ignores the fact that the class expert, Dr. Leitzinger, calculated *total potential damages* to the proposed class of less than $120 million. Thus, the Settlement amount is more than 25% of the claimed damages, which is well within the range of reasonableness.[9]

---

[8] The Varnum Objectors may not be aware of this fact because the actual testimony is confidential under the Protective Order (and is not being cited herein or attached because it is third party information that is protected from disclosure under the Protective Order, and it has been provided to the Court on numerous previous occasions). But this is another reason why the Varnum Objectors should have contacted Class Counsel before filing their objection. (*See* pp. 17-18, *infra*.)

[9] The Varnum Objectors were certainly aware of this fact, as it is discussed in Plaintiffs' Motion for Preliminary Approval. (Dkt 148, at 9.)

BCBSM believes Dr. Leitzinger's model and methodology are fatally flawed.  BCBSM further believes that its *Daubert* motion would have been granted, leaving Plaintiffs with no damages and no case.  Combining the weakness of Plaintiffs' underlying merits case and the limits on their maximum damages claim, a settlement of $29.99 million is perfectly fair, reasonable, and adequate. *See IUE-CWA,* 238 F.R.D. at 596 ("Settlements involve compromise, and '[c]ourts routinely recognize that settlements never equal the full value of the loss claimed by the plaintiffs.'  The reason is that, '[a] just result is often no more than an arbitrary point between competing notions of reasonableness.'  In assessing the settlement, the court must determine whether it falls within this 'range of reasonableness,' and 'not whether it is the most favorable possible result in the litigation.'") (citations omitted)).[10]

## 2.    The Claims Process is not Burdensome

The Varnum Objectors assert that the claims process is fair for individual insureds but "unnecessarily burdensome" for self-insured entities and insurers.

---

[10] The Varnum Objectors seek to compare the damages in this case to the damages sought by Aetna.  Of course, Aetna has not recovered anything.  And the cases are completely different from a damages perspective.  This case seeks repayment of supposed hospital overcharges, which the class expert admits are limited.  Aetna, on the other hand, argues that unknown hospital overcharges impacted its business, somehow causing significant lost profits to its insurance business.  Putting aside the merits of Aetna's claim (or lack thereof), none of the Varnum Objectors is an insurance company and none have a claim for lost profits.

(Dkt 161, at 12-14.)  This claim is based primarily on the erroneous assertion that these large entities "are required to submit copies of hospital bills."  (Dkt 161, at 13.)  However, the Claim Form is clear that although hospital bills are one way to demonstrate payments, these entities may also submit ***"other records"*** evidencing payment.  As long as the entity can show (a) the hospital providing the service (necessary to determine the Category), (b) the amount charged (necessary to determine the payment), and (c) the dates of services (necessary to determine eligibility and Category), it will qualify for payment.

This is a perfectly reasonable requirement.  Some of these entities are quite large, and will likely be claiming against the Settlement Fund for thousands or even millions of dollars of purchases.[11]  Plainly, some evidence is required –

---

[11] The Manual for Complex Litigation lists "cumbersome claims procedures" as an issue courts should be aware of when reviewing proposed settlements, but notes this is a concern "particularly if the settlement provides that the unclaimed portions of the fund will revert to the defendants."  Manual for Complex Litigation (Fourth) § 21.61 (2004), at 311.  The concern is that the parties will make the claims process burdensome so that what looks like a high settlement number will in fact be much lower as most of the fund is unclaimed and is returned to the defendant.  That concern does not exist in this case.  There is ***no*** reversion to BCBSM.  Where all the money will go to the class members, the defendant has no interest in limiting claims.  Rather, the claims process must be designed to protect class members whose claims could be diluted by fraudulent or inflated claims.

16

although, again, much less than would be required in a trial – before such payments are made.[12]

### 3.    The Sealing of Documents is not Evidence of Collusion and is Moot

The Varnum Objectors claim that the fact that many documents in this case are filed under seal somehow suggests collusion.  (Dkt 161, at 15-17.)  This argument is patently false and ignores that these documents were ordered to be filed under seal by the Court.  And with good reason.  Much of the evidence in this case was gathered from third parties, including more than 140 hospitals and multiple insurers in Michigan.  This evidence includes competitively sensitive information, such as pricing and negotiation strategies.  These third parties (as well as BCBSM) have a legitimate interest in protecting their highly confidential information from public disclosure, as the Court correctly concluded in entering the Protective Order.

Moreover, this argument is completely disingenuous and demonstrates that the Varnum Objectors filed their objection for reasons unrelated to the actual Settlement.  ***The first the Parties learned of this objection was when it was filed***.

---

[12] Exhibit 5 to the Varnum Objection also demonstrates the lack of burden to them.  One of the Varnum Objectors, Petoskey Plastics, requested that BCBSM provide the information needed to submit a claim.  BCBSM told Petoskey it would respond to the request.  BCBSM provided all of the requested information to Petoskey on October 8, 2014, more than five weeks before the claims deadline.

17

Had the "objectors" truly been interested in making a legitimate determination of the fairness of the Settlement and had they truly believed that access to certain documents was relevant to this determination, they would have contacted Class Counsel in an attempt to learn more about the case.  The truth is that they have no real interest here other than to obtain confidential information that they hope will be useful to them in other ways.

In any event, this objection is moot.  Class Counsel and BCBSM have agreed to provide certain pleadings to the Varnum Objectors.  Those pleadings have been redacted in the manner they would have been filed on the public docket had the Court not ordered all documents filed under seal and provided to counsel for the Varnum Objectors.[13]

### B.   The Other Arguments Raised by the Varnum Objectors are Just as Weak

The only other objection raised by the Varnum Objectors not addressed above that is worth responding to is the claim that the complexity, expense, and likely duration of the litigation does not favor approval of the Settlement.  (Dkt 161, at 17-18.)  The Varnum Objectors' analysis falls short.  For example, the Varnum Objectors claim that expert discovery is complete.  (Dkt 161, at 17.)  But this is wrong, as they would have known had they simply asked.  Class

---

[13] The Varnum Objectors have now filed a motion to unseal the record.  (Dkt 166.)  BCBSM will be filing a separate response to that motion.

18

certification expert discovery is not even complete, and merits expert discovery had not even started.   Moreover, the work necessary to complete summary judgment briefing and argument, *Daubert* motions, motions in limine, and trial preparation is enormous.  There also would be the inevitable appeals, including from any class certification decision.  While extensive amounts of discovery and other work has occurred during this four year old litigation, absent settlement, the Plaintiffs faced a years-long and difficult road to any recovery in this case.

The fundamental flaw in the Varnum Objectors' filing is the assumption that at the end of this long, arduous road the class will emerge victorious.  (Dkt 161, at 17, 19.)  The objection provides no real analysis as to why this is the case and, in fact, makes the contradictory argument that the objectors do not have enough information to make this determination.  (*Id.*, at 18-19.)  And the Varnum Objectors' attempt to cast doubt on those best positioned to make the determination – Class Counsel – fails.  The Varnum Objectors try to suggest that Class Counsel are selling out the Settlement Class Members for the opportunity to ask the Court for $10 million.  (Dkt 161, at 11-12, 24-25.)  But if the Varnum Objectors are correct that the vast majority of Class Counsels' costs have already been incurred and they are certain to win hundreds of millions or billions of dollars at trial, then Class Counsel would be giving up a fee award that dwarfs the $10 million they are seeking from the Settlement.  The reality is that Class Counsel

have been working on this case for many years and they, not Varnum or the

Varnum Objectors, understand its true value.[14]

## CONCLUSION

For the foregoing reasons, the Court should reject the objections, find that

the Settlement is fair, reasonable, and adequate, and grant final approval.

By:  /s/ Todd M. Stenerson
Todd M. Stenerson (P51953)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Ave, N.W.
Washington, D.C. 20037
(202) 955-1500
tstenerson@hunton.com
*Attorney for Defendant*

October 24, 2014

---

[14] As explained, the argument that the opinions of Class Counsel should not be given any weight (Dkt 161, at 21-22) ignores the fact that if the Varnum Objectors are correct, Class Counsel would be acting against their own self-interest.  The argument that the reaction of the absent Class Members demonstrates that the Settlement is inadequate (Dkt 161, at 22) does not actually address the reaction of the Settlement Class Members, which as demonstrated above, *see* n.1, *supra*, has been accepted by the overwhelming majority.  Rather, in a complete non sequitur, the Varnum Objectors again talk about the Aetna case and the damages sought there.  But, as noted above, Aetna seeks lost profits, a claim that none of the Varnum Objectors can make, and thus has no relevance.  Finally, the Varnum Objectors suggest that the Settlement is not in the public interest (Dkt 161, at 23), but do not include any argument or analysis.

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2014, I electronically filed the *Memorandum of Law in Support of Motion for Final Approval of Settlement* with the Clerk of the Court using the ECF, who in turn sent notice to counsel of record for all parties and for the Varnum Objectors. Additionally, I served a copy of that document by first-class mail on each of the following individuals who have not registered with ECF:

Christopher Andrews
P.O. Box 530394
Livonia, MI 48152-0394

Nicholas and Coralin Davelaar
405 Turrentine Way
Russellville, AR 72801

Ronald D. Diebel
19177 Cheshire Street
Detroit, MI 48236

John M. Kunitzer
4328 Lakecress Drive East
Saginaw, MI 48603

Scott Mancinelli
P.O. Box 3266
Holland, MI 49422-3266

Cynthia S. Rock
18357 Levan Rd.
Livonia, MI 48152

David VanDaele
9812 Ferder Road
Maybee, MI 498159

/s/  Todd M. Stenerson
Todd M. Stenerson (P51953)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Ave., NW
Washington, DC  20037
202-955-1500
tstenerson@hunton.com