

October 28, 2014

Via Hand Delivery

Clerk of Court

The United States District Court

For The Eastern District of Michigan

Southern Division

U.S. Courthouse

231 W. Lafayette Blvd.

Detroit, Michigan 48226

FILED

2014 OCT 28  A II: 48

U.S. DIST. COURT CLERK
EAST. DIST. MICHIGAN
DETROIT

The Shane Group, Inc. etc. al

Plaintiffs,

v. Blue Cross Blue Shield of Michigan,

Defendant.

Christopher Andrews, objector, Pro se also is

acting as representative under Power of

Attorney for Pro se Objector C.W. individual

and as executor of the estate of E.G. and E.B,

and as representative for Objector R.W. and

Case No. 2:10-cv-14360-DPH-MKM

Courtroom of Judge Denise Page Hood

Sur-reply, balance of proof of class

membership for objector's, breach of

attorney client privilege by counsel in their

final submission papers

Fairness Hearing: November 12, 2014

Time: 2:00 pm

Objector M.A,


All individuals will be known as the

"Andrews' Objector's" for reference

purposes. In the initial objection the names

were not redacted by the clerk and docketed

so they will be redacted here. Names are

available to the Court and Plaintiffs' Counsel

upon request. Included is proof of class

membership for the balance of objector's and

a executor papers labeled Exhibit A.


Objector's incorporate the initial objection and the supplement into this sur-reply.

Objector's incorporate the other objections and letters filed by unnamed class

members/entities in this case into their own objection for any and all purposes now

and in the future.

Objector's' adopt all the 25 pages of class member comments at the end of the Sur-

reply along with the remaining 175 pages not included, representing a total of over

1100+ class member comments proving the failure of the short notice postcard.

If Christopher Andrews is not allowed to represent/and or speak for each objector as a group, each objector will represent themselves at the hearing and each request's the opportunity to speak for up to five minutes to the Court.

**Tables of Authorities:**

Union Asset Mgmt. Holding A.G. v. Dell, Inc., 669 F.3d 632, 641 (5th Cir. 2012))…………………………………………………… ……………..26

(Lupron Mktg. & Sales Practices Litig., 677 F.3d 21, 24 (1st Cir. 2012))…26

Union Asset Mgmt. Holding A.G., 669 F.3d at 642-45)…………………….26

Baby Prods., 708 F.3d at 175-76)……………………………………………27

Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1163-68 (9th Cir. 2013)…………………………………………………………………………..27

Rodriguez v. West Publ'g Corp., 563 F.3d 948, 960-61 (9th Cir. 2001)……..27

Dry Max Pampers Litigation, 11-4156, U.S. Court of Appeals for the 6th Circuit (Cincinnati)…………………………………………………………………….27

(Vassalle v. Midland Funding LLC, 708 F.3d 747, 755 (6th Cir. 2013) (reversing district court's approval of a settlement)……………………………………….27

Olden v. Gardner , 294 F. App'x 210, 219 (6th Cir. 2008) (quoting In re Cal. Micro Devices Sec. Litig. , 168 F.R.D. 257, 262 (N.D. Cal. 1996))……………………27

Amorgianos v. National RR Passenger Corp. 303 F.3d at 267…………….…..30

Gen . Elec. Co. 522 U.S. at 146…………………………..…………………………31

Jeffrey Etter et al. v. Thetford Corp. et al., case number 8:13-cv-00081, in the U.S. District Court for the Central District of California……………………………40

Carlos G. Rocha v. J. Gordon Ruad Jr. et al., case number 1:14-cv-04857, in the U.S. District Court for the Northern District of Illinois…………………..……41

McDonough et al. v. Toys R Us et al., case number 2:06-cv-00242, and Elliott et al. v. Toys R Us Inc. et al., case number 2:09-cv-06151, both in the U.S. District Court for the Eastern District of Pennsylvania………………..……………...51


Statutes:

 1712(b) (1) of CAFA………………………………………………………………26

Table of Contents:

The lawyers breached attorney client privilege in desperate bid for their fee…... 5

Attorney fee and "experts" fees summarized and deconstructed……………..……14

Response to administrators' declarations of October 02, 2014……………..…….19

Summary of additional reasons for rejecting settlement, dismissal of Plaintiffs Counsel, named plaintiffs' and administrators…………………………………...26

Missing items in the release…………………………………………………..…31

A member of Plaintiffs' Counsel and two class counsel have issues in other cases as well as in this case…………………………………………………………..………..…36

1100+ individual class members surveyed about their short notice postcard…...52

It appears from Plaintiffs' Counsel's latest final settlement papers they don't like the role reversal the objector's have put them in. Good, it's going to get worse.

Based on the close to two dozen errors committed in this case and shenanigans engaged in by all parties as was stated in the supplement and additional issues listed below in response to the final motion papers filed four days ago, this is the **worst class action settlement ever proposed in any district court filed anywhere in the United States of America. It's a poster child for rejection.**

**Most members of the Plaintiffs's Counsel family's broke the attorney client privilege with the objector's by intentionally disclosing and posting protected communications and documents in their final papers. Dismissal of all applicable counsel is requested and striking all of the final submission papers for approval is requested as well for this misconduct.**

Plaintiffs' Counsel and most of class counsel are serial class action filers clogging the courts with lawsuits that only benefit themselves and not the class members

they purport to represent, just like in this case, fees first, class damages last. In the filing of the final papers, Plaintiffs' Counsel fails to directly address almost all of the approximately two dozen errors within the whole settlement but did manage to spend 70% of their time attempting to justify their inflated fees and expenses.

Counsel is attempting to portray the objector's' as extortionists by using an elaborate scheme to try and get around attorney client privilege information that was divulged and communicated to them in a conference call they initiated. They intentionally violated the confidentiality privilege in multiple ways in two separate documents. Typical of those who are desperate for an undeserved payday and will do anything to exit this litigation while screwing the class.

Attorney–client privilege is an American legal concept that protects certain communications between a **client** and his or her **attorney** and keeps those communications confidential. The **attorney–client privilege** is one of the oldest recognized privileges for confidential communications. Wikipedia


This objector has been working with and dealing with lawyers for thirty years and is well aware of what lawyers can and can't do unless there is a lot of money at stake and they decide the risk is worth taking, like the $13.5 million in this case. Objector has agreed to over the years to a protective order, secrecy agreements, confidentiality agreements in writing and some only verbally. Objector has also

seen lawyers be disbarred and some put in jail for being greedy. This is an instance proving all four of conference call participants and their firms are greedy, inadequate and need to be dismissed from this case. Counsels in this case are so desperate for approval of this joke of a proposed settlement for the fees first that they intentionally breached attorney client privilege with the objector's, who are their own clients! Plaintiffs' Counsel represents the entire class that being the named plaintiffs, unnamed plaintiffs and the objector's equally. An equal duty is owed to all to keep all communications secret, forever, but counsel's greed caused them to intentionally overlook this fact, all for the Inca gold in fees. Most of the family heads of the Plaintiffs' Counsel's were on a call and all agreed to the secrecy privilege with this objector but still intentionally disclosed the contents in their final papers. They engaged in a fraudulent attempt to paint the objector's as crook's in a failed attempt at silencing them and diluting a mighty fine objection in the eyes of the court and deceitfully obtaining a windfall by cheating the class. Their plan fell just short of success but the damage is done and irreparable.  They need to be terminated; they are a cancer on the class.

After Plaintiffs Counsel saw the proposed supplement, knowing they were in huge trouble, (as evidenced by the final settlement papers and their contents) they intentionally and with malice decided to put together a plan using the conference

call as a ruse to impeach the credibility of the objector's by using a warped sense of logic to attempt to force this settlement through.

This objector spoke and had a forty five minute conference call (as referenced in the emails posted in the final papers by Plaintiffs' counsel) with the heads of most of the various counsel families participating. All participants agreed to keep the contents of the call "secret" with that word being used twice. The objector agreed **TWICE** to the secrecy question posed to him. This "secrecy" agreement is the attorney client privilege we all are aware of and know so well that was invoked when discussing the legal objection issues raised in the one hundred and eighteen page rough draft objector's' sent to Plaintiffs' counsel that brought about the conference phone call. Plaintiffs' Counsel represents the entire class including objector's, unnamed class members and named plaintiffs as well, not separate and apart, all treated equally as far as attorney client privilege and protected communications go. Counsel can't even disclose the contents to another objector even if they are an attorney! A duty and loyalty is owed to both. As a result of that privileged conversation secrecy agreement, objector disclosed confidential information. One piece that was leaked was the proposed fee motion that attempted to save the class a million dollars in attorney fees that would flow back into the settlement fund for distribution to the victimized class members. **At the request of**

**Plaintiffs' Counsel,** the objector's created, prepared and emailed that document to them per **their request which they then included in their final submission, without permission!** That document is protected information just like the entire contents of the call.

Counsel also intentionally revealed in their final papers the personal relationship between the objector's that was disclosed in that conference call. That information was mentioned **ONLY verbally** on the phone and not put in writing. That disclosure is located on page one of document 170.  They also brought up the potential for an appeal in their final papers but that was taken out of context based on what was said in the call to make objector's look bad again and to dilute the value of the objection and the credibility behind it while unethically pushing the deal through this "sticky" settlement for the fees first. To heck with the class. Counsel also failed to include all the emails in their breach so they cherry picked which one's to impeach the credibility of the objector's and their motives. Objector's never gave permission to share any emails from our own lawyers in this case with anyone outside the Plaintiff's family group and certainly not with the defendant and world and still consider them attorney client privileged information with the lawyers who represent us even to this day. Don't release any more data counsels or you personally might be forced into bankruptcy.

Counsel can attempt to claim only two possible reasons for breaching the privilege which fails in its logic and violates all sorts of lawyer rules. They can claim "oops" we misread Rule 23(e) 3 that calls for any agreement made to be disclosed to the Court. But objector's don't have an agreement but rather a rejection of the offer per Plaintiffs' Counsel.  So the document remains protected by attorney client privilege and should not have been disclosed to the defendant, the Court, anyone. The second reason is the real truth of this breach based on what they disclosed in their final papers. They will claim they did not disclose the information as a result of the conversation but rather because the emails sent by the unnamed class member objector to Plaintiffs' Counsel, their own lawyers, are not covered by attorney client privilege. Even emails directly related to the same protected information that occurred on the call and that the objector's created and sent to them per their request don't count for attorney client privilege!  What? This is additional proof of bad faith and dirty "sticky" lawyers in the objector's opinion. How does counsel explain the family disclosure breach that is not in writing? Hmm. See how deceitful their conspiracy is to win approval of this hideous settlement solely for their fees? With either explanation the result is the same, an intentional breach that has fatally contaminated the Court's review and possible approval of the settlement has occurred. They have corrupted and unethically

influenced the fairness hearing and biased the Court when reviewing Plaintiffs'
Counsel's settlement papers and papers filed by the objector's in this case.
Great job counsel, the class appreciates the awful services you have performed for
us, now go away, forever. Do not pass go, do not collect $13,500,000.00. Your
beat.

(Not to counsel, administration costs are not applicable and can't be considered in
the calculating the cost of an appeal bond by the court, only actual costs are to be
considered per Frap rules based on current case law in and out of the circuit. Any
bond over $500 would be appealed and reduced by a circuit court order) Why do
the objector's have to educate, inform and rewrite the entire settlement and prove
its illegitimacy for Plaintiffs' Counsel? Isn't approximately twenty four total errors
enough to realize that? 180 lawyers can't be all this bad or is just a handful of
incompetent head's of the firms? Some should be disbarred and/or required to
retake the bar exam, with some family head's failing the ethics part easily. Bad
ethics flow down from the top based on the inflated hourly rate scam.
The objector's separately and collectively have not given Plaintiffs' Counsel
permission to disclose any information, period. If the objectors' think the lawyers
might disclose confidential information that is under attorney client privileged
communications to say a judge, say in an impeachment effort, go ahead but that

still doesn't equate to granting explicit permission for counsel to "go ahead and break attorney client privileged communications." If you choose to do it on a bad guess or misunderstanding and are wrong there will be very severe consequences. When in doubt, ask, than ask again. Got it counsel?

Objector's claim breach of attorney client privilege and will now plan and take action as a result. As a result of this breach, some in our group were questioning whether to drop out of the objection but after a lively four hour discussion they all want damages and more. One objector wants disbarment of all lawyers on the call. Another objector will NOT appear at the hearing due to their disgust at the sleazy lawyering they have seen but keep's the objection alive and does not withdraw it. Due to this breach, this objector now has to appease a particular objector or else, so a plan and proposal has been arrived at by the objector's as a response.

First though. How come counsel didn't disclose the contents of the call(s) made to any other objector in their filing? This appears to be a double standard counsel.

The objector's claim violation of the attorney client privilege relating to the disclosures and request:

- sanctions

- penalties for bad faith and misconduct and breaching fiduciary obligations.

- Banishment from the case of all call participants and their firm's with no fees or expenses being awarded to them **before** ruling on the settlement.

- Objector's request that the final papers be **stricken and removed** from the docket and/or not **considered** due to this intentional breach of confidentiality.

- Objector's demand payment from each of the four participants and their firm's for their intentional disclosures. On second thought, objector's demand damages from all eighteen law firms with some contributing more than others just like the potentially bogus assessment invoice. Now for the bruising part.

Applicable Plaintiffs' Counsel will also report themselves and their firm's to their applicable State Bar Associations in the state's they are located in for investigation and certain discipline. They agree to a voluntary suspension of their own individual law license's to practice for six months and the firm will also agree not take on new clients for six months. This will be under court monitored supervision of each State Bar's compliance program.


Objectors' will bring a sealed envelope to the fairness hearing. A one sentence document will be enclosed disclosing a show stopping, jaw dropping disclosure

made to the objectors' in that conference call about a very key issue in this settlement which would also involve the applicable state bar associations and violation of attorney ethics rules. Should objector's disclose that information which may cause their removal as Plaintiffs' Counsel as a return volley for what the call participants did to objector's in their final papers? We will consider what to do at the hearing with this envelope. Disclose or not to disclose, that is the question. We will take a vote.

Let's put this into perceptive. What Plaintiffs' Counsel did would be the same as someone going into a confessional at church and disclosing an issue with a verbal "secrecy" acknowledgement made by the reverend, twice. Then the reverend requests that the issue be written down to be sure what he (or she as the case may be) heard and then posts it in the next week's church bulletin! The information and document should have burned/ shredded and no one told about the contents, ever.

Now let's look at the approximately two dozen material issues in this settlement that Plaintiffs' Counsel intentionally chose to ignore in and/or gloss over and overlook in their final settlement papers while still seeking $13,500,000.00 first, ahead of the class's best interests.

The balance of lodestar calculation from the supplement:

Plaintiffs' Counsel claimed their lodestar is $15,400,000.00 and the objector's proved it is really $10,000,000.00 million in the supplement using just the correct hourly rates in the city of Detroit, a $5,000,000.00 overcharge. Take this one step further. Since most counsels intentionally and collectively inflated their hourly rates by 34.5% it's logical to assume they inflated the hours too, why not it's easy free money. Based on their actions counsel sees the class and court as ignorant stupid sheep that need to be sheared. The 34,343 hours are inflated by 34.5% which is equal to 11,220 hours overcharged, multiplied by $455.00 an hour, which is their average rate billed for 34,343 hours, is an overcharge of $5,105,100 on hours. $10,000,000.00 minus $5,105,100 is a final lodestar of **$4,894,900 exactly like objector's wrote about in the supplement.**  It appears to be an overcharge billing fraud scheme combining rates and hours to the class of **315%.** But they won't see even that amount after all is said and done.

Correction: On page 197 of the supplement the fifth attorney from the bottom. The hourly rate objector's' used incorrectly calculated the rate for this contract attorney at $300 per hour multiplied by 549.75 hours. It should have been reduced to $200 an hour multiplied by 549.75 hours for a saving of $100 an hour equals a reduction of $54,900.00 from the total fee for the Gustafson Gluek PLLC firm $1,725,250 currently - $54,900.00 = $1,670,350.

Objector's' state that the "expert's" unseen alleged invoice of $2.5 million may not based on any economic reality. The total alleged unseen invoice of $2.5 million was incurred by Plaintiffs' Counsel on behalf of the class over a maximum of 22 months and maybe less, (the date the amended complaint was filed to settlement). On a monthly basis it's equal to $113,636.00 incurred per month for twenty two straight months. Broken down further it is $28,409.00 per week, based on a five day week is $5,681.00 per day. Based on an eight hour day it is equal to $710.00 per hour. Take 40 hours a week multiplied by 22 months is 3520 hours x $710.00 an hour is the $2,499,200.00 invoice Plaintiffs' Counsel, the "expert" and named plaintiffs' all want the class and the Court to believe was reasonable and necessary for this result. False. Prove it counsel. They have chosen **NOT** to in their final papers nor are there any documents for the class to see and review. Maybe counsel could should had their no paid carnival barker, biased, "solo" lawyer alleged fee expert waste another 109 pages attempting to justify a $2.5 million invoice that may be artificially inflated. But their justifying their fee was more important than justifying class damages. Don't trust these guys judge, they are "sticky." Objector's believe there is no reasonable explanation to justify this invoice and request a full detailed breakdown for the objectors to review, again for a second, and a third and a fourth time. No breakdown, no check.

Objector's' request an evidentiary hearing be held to prove actual class

damages and the expert fee, by demonstrating real world calculation methods and

methodology and not some unknown filed under seal, trust us, blind faith numbers.

The Walter's objection does raise a valid request. Objector's request that the Court

unseal the sealed documents. There is more than enough justification to do so

based on the bad faith counsel has shown. There is too much evidence proving

counsel can't be trusted and lacks good faith. Bad faith, that they have a lot of.


Objector's' would like a summary of the weekly reports prepared by the claims

administrator that should have been sent to Plaintiffs' Counsel on a regular basis.

Something big is not being disclosed in their latest submission, that being the total

number of claims filed, the dollar amount claimed to date.

**How much were medical premiums increased** to individual class members and

entities in each class category on a percentage basis for each year of the class

period as a result of this illegal anti-trust behavior engaged in by the defendant's

successful scheme and why weren't they figured into the damages? An amended

complaint is in order, by new counsel. Additional damages should be calculated

and reimbursed to affected class members based on overcharged premiums paid by

them due to this scheme. This  jector started paying under $500 a month in premiums for a very long time and logically the premiums would have been artificially inflated as well because costs are passed on to the end user. The rates increased to over $500.00 a month during the class period so logically the premiums also rose as costs artificially increased due to Blue Cross Blue Shield of Michigan's antitrust scheme impacting the market.

As far as the exhibits attached to counsels final papers that pertain to objection's this objector filed in the past, a quick response to one of them, this sur-reply is getting long. In the Lehman objection case this objector filed the sole objection out of 900.000 individual and entities which included some of the smartest lawyers, people and institutions in the world, like some of the biggest hedge funds, pension funds, banks, investment institutions on Wall Street, and individuals as class members. Fortunately for this class, this objector is used to dealing with a lot of higher caliber lawyers then in this case and can spot a joke of a settlement a mile away. In this case the lawyers are the worst ever encountered based the misrepresentations and the law school errors contained throughout the case like forgetting to date when the release was signed. (surprise) C'Mon Man! LOL!

The Lehman objection caused the Court to place the approval on hold for six weeks while the Court investigated the flawed asset test of the five former officers the objector pointed out and the court undertook an in camera review. The judge

also agreed to reduce the minimum distribution amount to each claimant based on the objector's calculation that many would not get anything at the original distribution price. Finally the Court agreed with the objector that because the expert report provided much of the vital information in the Third Amended Complaint (TAC) word for word that brought about the settlement and amount, the Court reduced the attorney fee down to 12% or a reduction of $24,000,000.00 with this money flowing in reverse back into the settlement fund for distribution to the victimized class members.

In this case, **both** complaints were based on the government's complaint word for word, paragraph by paragraph 95% a total copy. So awarding that same 12% that was awarded in the Lehman case would be fair in this case and amounts to 12% of $30,000,000.00 is $3,600,000.00 and even that would be a gift. Counsel's are desperate amateurs as the evidence proves without a doubt and are looking for an undeserved, unearned windfall at the expense of the class victims.

Objector's' will now respond to Plaintiffs' Counsel's document number 162-1 and 162-2 filed on October 02, 2014. On October 06, 2014 Objector's' filed a supplement to the initial objection and were unaware that Plaintiffs' Counsel had filed document number 162-2 described as "Declaration of Shannon R. Wheatman on "Implementation and Adequacy of Notice Plan" four days earlier on October 02, 2014 and document number 162-1 Declaration of Charles Marr Regarding

Publication Notice and Administration. That's because counsel intentionally chose not to forward the filings to the objector's' in violation of court rules.

The declarations from the administrators' have issues:

- Epiq and Kinsella Media declarations dated October 02, 2014 included results for the Court's review from the date of the first mailing on July 25, 2014 to September 05, 2014 and could have easily included the results through October 01, 2014 since the results can been seen on a real time basis with a few clicks of a mouse. Why hide the last month's results?  Sneaky.

- The total amounts claimed and even which class category those claims are in are not disclosed.

- The total number of individuals represented by those submitted claims has also not been disclosed.

- There is significant and required information missing. For example the two page release was included with the administrator's submission implying it was there for all claimants to see with the claim form. Objector's can confirm it was **NOT** and is not included for all class members to view with the claim form as of this filing date. Class members are then forced to jump through more hoops to find pages 58 and 59 in the settlement release to find the applicable pages. Not acceptable.

- The objectives were not met.

- The notice plan did not reach class members effectively with **accurate** information in the postcard and when it referred class members to the defective website that also contains materially misleading, incorrect and missing information. 1100+ class members see the short notice as a note of unimportance, a gag note, a joke or a fraud to obtain identity theft information.

- The postcard was not noticed nor designed to increase noticeability and comprehension because of the results to date. Postcards are seen as junk mail by most people and entities, that's why they don't work, especially in this case.(See the class member's comments below.)

- The notice is defective and hindered class members rights when they were attempting to decide what to do as explained in the supplement.

- The notice was NOT noticeable and is a failure per the results so far as will be shown below. In the first month a total of 11,278 individual claims were filed out of three million individuals and 40 entity claims of the 1412 entities. This represents a take rate of .38% of 1% for individual class members and 2.9% for the entities. Barring a miracle, these rates indicate a colossal failure is in the works for this claims made settlement, which objector's' partially object to.

The Epic declaration stated that the notice mailing started on July 25, 2014 and

ended on August 05, 2014, the last day the Court ordered the mailing to be

completed. One class member stated at the end of the Sur-reply she received her

card about August 11, 2014. (See page 50 middle of page). Objector's' want proof

of the start and finish dates along with any and all correspondence including emails

and notes made between Plaintiffs' Counsel and the administrators relating to the

claims and notice program in order from oldest to newest please.

The postcards had bulk first class postage attached with no date stamped and they

would have arrived in mailboxes starting on July 28 2014 and the last day arriving

would be August 08, 2014. The website was not updated with all applicable

"hospitals" medical centers and health care centers for all class members to view

until August 14, 2014, six days after the fact, not the thirty days objector's'

guesstimated in the supplement. This means all three million individual class

members did not see all the institutions listed (approximately 236% less) thereby

throwing the post card and claim away because of material screw-up's of Plaintiffs

Counsel and the administrators. (The missing hospital issue is also raised by

several objector's in their comments in the survey results below.) The objector's'

believe that this is a failure of the notice, contrary to the claims made in the two

declarations. If we use the 7 million individuals figure supplied by Plaintiffs'

Counsel in the Crain's article, the claims rate drops to almost zero of all possible

individual claimants that have responded to date, a complete and utter failure of the notice and claims plan. Plaintiffs' Counsel want $13.5 million and named plaintiffs' want $165,000.00 for this result? Someone is smoking something.

The declarations dated October 02, 20014 were written in such a way that the administrators and Plaintiffs Counsel used the term "not missing" when "missing" was stated in the supplement but that was filed four days later by the objector's' on October 06, 2014. How could they know what was in the supplement filed days later?

The reason is the objector's' sent Plaintiffs' Counsel a one hundred and fifteen page **rough draft** of the supplemental objection on **September 08, 2014, sixteen days** before the initial objection was filed on September 24, 2014, and almost a full month before the October 02, 2014 declarations were filed which included the very same notice and claims issues in specific detail like the "missing" release form that were raised in the supplement and so pointedly addressed in the administrator's latest declarations. The 115 page rough draft was included in the 218 page supplement (excluding exhibits) filed on October 06, 2014 that counsel caused the objector's to delay filing intentionally and now they claim it's not applicable. A clear case of deceitfulness and double cross but it's all applicable. Good thing objector didn't fall for the ruse or no objection would have been filed at all by the

deadline. The objector's' did not mention to Plaintiffs' counsel in the September

08, 2014 email to them that they missed the Court's imposed deadline one day

earlier on September 07, 2014.

It appears Plaintiffs' Counsel shared with the administrators the applicable portions

of the rough draft when creating the declarations to make it appear they are being

proactive in their response before the supplement hit the docket. The answers the

administrators provided to the exact questions that appeared in the supplement four

days prior to the supplement being filed are listed below and are on page 31 of the

supplement:

The last date the long notice was updated on the website was July 24, 2014. When

was the website made live?

How many times was the website updated through July 24, 2014? Show what

changes were made during each update.

When were the notices mailed, start and finish date?

Nice failed try counsel, faking being proactive and being competent.


Plaintiffs' Counsel was finally told in an email sent by objector's' on October 02,

2014 at 8:14 a.m. that they had **missed** the court imposed filing deadline by almost

a full **month** and that the objector's' were now going to file a 440 page supplement

(in 14 font) in a few days as a result. Later that **same** day on October 02, 2014,

Plaintiffs' Counsel filed Ms. Wheatman's declaration on "Implementation and

Adequacy of Notice Plan and also filed Mr. Marr's declaration regarding

"Publication Notice and Administration." The supplement was filed on October 06,

2014. They are trying to sneakily blunt the affect of the supplement. Just two

examples of this are as follows. One is the sentence that Ms. Wheatman wrote was

paragraph 20: "No important or required information was missing."

**Response:** Not true, see supplement

Mr. Marr wrote: "Class Counsel and Counsel for the defendant approved all

scripting used on the website."

**Response:** Maybe, maybe not, but the result is the same, the class got screwed.

The alert in Spanish sentence is missing from the website but it's in Plaintiffs'

Counsel's settlement papers approved by the Court. Isn't that a scripting error that

is not the fault of Plaintiffs' Counsel or is it?


After reading through the supplement and Plaintiffs' counsel's latest filing it's

clear there are more than a dozen and less than two dozen meritorious reasons for

rejection of the settlement, firings, sanctions, reimbursement of fees paid, and

discipline of Plaintiffs' Counsel, named plaintiffs and administrators that show

nothing about this settlement is fair, reasonable and adequate. The settlement is the

product of tacit collusion, malpractice, incompetence, bad faith, violation of

fiduciary responsibilities and duties, double cross involving Plaintiffs' Counsel, named class members, (now involving objector's, but only the double cross as to the violation of attorney client privilege) and the defendant Blue Cross Blue Shield of Michigan against the Court and class. Objector's want the applicable Plaintiffs Counsel off the case permanently, not just demoted to class counsel bench status and not a penny more for their shenanigans. If they don't come off the case it will be insurance for both objector groups if this is not a good enough settlement in the future it will form the basis of a successful appeal just based on their total inadequacy alone, forget the dozen plus other issues that each one or two together could get any approval reversed.  The defendant better break open their piggybank.

The next few pages prove why they should all be fired and the settlement rejected:

 Defective notice (see Union Asset Mgmt. Holding A.G. v. Dell, Inc., 669 F.3d 632, 641 (5th Cir. 2012)).

An unreasonable cy pres provision (Lupron Mktg. & Sales Practices Litig., 677 F.3d 21, 24 (1st Cir. 2012)). (Objector's state it also has no basis in law.)

Unreasonable fees and expenses of counsel (see Union Asset Mgmt. Holding A.G., 669 F.3d at 642-45). The lodestar method is applicable under section 1712(b) (1) of CAFA and that it is the "key consideration" in determining the appropriate fees

is the reasonableness in light of the results actually achieved. In this case $4.8 million minus $1.0 million for the failed mailing that has to be redone is $3.8 million, net.

Improper allocation of settlement funds among subclasses (see In re Baby Prods., 708 F.3d at 175-76).

Conflicts of interest (see Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1163-68 (9th Cir. 2013); Rodriguez v. West Publ'g Corp., 563 F.3d 948, 960-61 (9th Cir. 2001)). Dry Max Pampers Litigation, 11-4156, U.S. Court of Appeals for the 6th Circuit (Cincinnati), (Vassalle v. Midland Funding LLC , 708 F.3d 747, 755 (6th Cir. 2013) (reversing district court's approval of a settlement).

The "specter of collusion" is present when " 'class counsel [are] allowed to prosecute an action and negotiate settlement terms without meaningful oversight by the class representative.' " Olden v. Gardner , 294 F. App'x 210, 219 (6th Cir. 2008) (quoting In re Cal. Micro Devices Sec. Litig. , 168 F.R.D. 257, 262 (N.D. Cal. 1996)).

**Plaintiffs' Counsel and class counsel did the following in this class action lawsuit:**

They sued defendant in order to extract a payment called "attorneys' fees," which is best described as law school prank ransom experiment gone completely wrong in this pile-on case. Who's on second?

They negotiated an inadequate settlement.

They negotiated claims made only settlement when a check should go directly to many class members based on the class category they are in when records show damages to a class member are already known.

They filed duplicative class actions asserting the same exact claims on behalf of essentially the same people and entities solely so they could join the suit and bill out unnecessary fees and expenses to the class while adding close to nothing of value. The copycat suits should not be granted any fees or expenses.

They filed the class action and amended complaint using the government's (taxpayer) complaint, twice and falsely claimed "extensive" work performed producing it.

Both sides delayed settlement negotiations in order to increase their billable time.

They spend excessive and unnecessary time litigating this class action.

They abused the use of "experts" or purported "experts" in order to unethically influence, overbill and defraud the Court and class. The fee "expert" wasted 109

pages of paper in this desperate, biased, one sided, bought out opinion. Those that

can, do, those who can't, opine. Whatever he was paid was way too much. The

class is not to pay a cent for this one-sided piece of desperate propaganda. When

judges in the past approve bad settlements and produce windfalls for lawyers, it

artificially raises the hourly rates that are then used as evidence to justify even

higher awards in future settlements. It's a vicious cycle that is a false reality in

terms of true hourly rates. A lie repeated often enough becomes the truth. Seen it

all before.  Enough said, next.

The attorney fee should not be calculated until the total amount of reimbursements

going to the claimants involving both entities and the individuals is determined.

This will end up like a coupon settlement based on the number of individual claims

filed by individual class members. Based on claims filed to date the process is a

light year wide failure.

They deceived the Court by representing their own interests rather than those of the

class.

They defrauded the class using inflated fees, hours and now a wannabe fee expert.

They invited firms to join the suit and bill the class for free money that brought

nothing of reasonable value to the table in return.

They ignored fundamental due process rights of class members.

They corrupted the proposed class representatives' adequacy thus making themselves corrupt as to their own adequacy as well.

They violated the attorney client privilege as detailed above corrupting the entire process once again.

Plaintiffs' Counsel, class counsel and the "experts" are like the Milli Vanilli's of the class action bar and "The Wizard of Oz". They are busy pulling levers and creating a distorted truth. Objector's are like Dorothy's dog "Toto" who has just pulled back the curtain on the now naked Wizard. In this case one big distorted truth besides the attorney fees, expert fees and inadequacy of the entire process from A through Z is the unproven $120 million damage estimate that forms the basis for the entire settlement. Based on the lack of information for the class to review about the credentials, or lack thereof, of the "expert", and the unknown methodology used for the damage calculation, which appears to be **underestimated** for settlement purposes, a Daubert analysis should be required and if one has already been made and/or filed under seal, objector's' request it be unsealed for review and comment by all to see on the website. A court should exclude expert opinion testimony that is "based on data, methodology, or studies that are simply inadequate to support the conclusions reached." Amorgianos, 303 F.3d at 267. Moreover, if there is "too great an analytical gap between the data and

the opinion proferred, " exclu .  is required because the opinion is simply not "helpful." Gen . Elec. Co. 522 U.S. at 146.

Why wasn't the objections,  supplement and final settlement papers posted to the website for all class members to view? It's more evidence of bad faith by hiding material information and facts from the class. Objector's will fix that this week.

**Plaintiffs' Counsel and defendant failed to include a following in the release:**
"This stipulation shall be deemed to have been executed upon the last date of execution by all the undersigned."
The dates when each of the head's of the four families and defendant's counsel executed the release are all missing. You can't make this stuff up! LOL  "If they only had a brain." (a quote from the Wizard of Oz, you have to sing it for the full effect. "If they only had a brain")  Objector's state it appears based on the results, that after negotiating their fee, expenses and incentive awards, the document was executed,  then class damages were agreed to sometime after that as an afterthought. The release is defective, nonbinding and not approvable.


**Plaintiffs' Counsel and defendant failed to include the following in the release:**
"The exhibits to this Stipulation are an integral part of the settlement and are hereby incorporated and made a part of this Stipulation."

Any and all exhibits referenced in the release on the website are missing. But even if they were not, they are still not explicitly incorporated into the document so they can't be part of the release; it's defective, invalid and unapprovable.

**Plaintiffs' Counsel and defendant failed to include the following in the release, the short/long notice, the printed and electronic version of the claim form as well as on the website:**

Validity of check not defined: "The check payable to the Settlement Class member may be cashed for a period of up to 120 days after the issuance date of the check."

What if there is a dispute about a claim, than what? Right now class members are **always** going to lose if someone else screws up intentionally or not like in this settlement and no recourse is left for the victimized class members, again. Class member comments in the survey have already provided examples of this. The administrator or counsel screws up and the class member is screwed. Not acceptable. The following clause should be added to the release:

**Plaintiffs' Counsel and defendant failed to include the following in the release:**

Both Defendant's Counsel and Class Counsel, the Parties and/or their

representatives shall have the right to challenge the acceptance or rejection of a

Claim Form submitted by Class Members. The Settlement Administrator shall

follow any agreed to decisions of Defendant's Counsel and Class Counsel. To the

extent Defendant's Counsel and Class Counsel are not able to agree on

the disposition of a challenge, the Special Master shall timely decide such

challenge. The Parties agree that the Settlement Administrator shall thereafter

follow the decision of the Special Master resulting from any such challenge.

"Special Master" means an independent person to be agreed upon by the Parties or

appointed by the Court to evaluate those Claim Forms submitted by purported

members of the Settlement Class the acceptance or rejection of which has been

challenged by Defendant, Defendant's representative's or Class Counsel.

**Plaintiffs' Counsel and defendant failed to include the following in the release:**

Person not defined. ""Person " means a natural person, individual, corporation,

partnership, association, or any other type of legal entity."

**Plaintiffs' Counsel and defendant failed to include the following in the release:**

"Plaintiffs acknowledge that they may discover facts in addition to or different

from those that they now know or believe to be true with respect to the subject

matter of this release, but that it is their intention to finally and forever to settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph."

Since Plaintiffs' Counsel did not include the above paragraph in this settlement release and now there is newly discovered additional material information, unknown claims and material facts that they are now in possession of, that occurred after the release was signed and dated (oops, it's not dated, giggle) that information must be disclosed to the entire class before approval because the new information is material and dramatically changes the entire proposed settlement for the class and how they would decide to proceed with their claim. This new information can be disclosed with a second notice that will also inform the class that current Plaintiffs' Counsel, and named plaintiff's have been terminated and new highly qualified counsel and named plaintiffs are being recruited and brought up to speed by the objector's'.  (Objector's' can assist with this chore.)

**The new notice should state** "Claims that have already been submitted remain valid and no additional information is required unless you have found new paid items. If claims have NOT been submitted there will be an additional sixty days when the new noticed is received to send/file the claims. You should contact your insurance company or hospital you were treated at, on the web or by phone, and have a computerized invoice of charges you paid from 2006 through 2014 sent to

you as proof of payment to submit to allow y̶ ̶ ̶ ̶ ̶ ̶ claim and for evidence if

the administrator requires more information."

**Plaintiffs' Counsel and administrators failed to include the following in the**

**long notice, website and claim forms and should include it in the new notice:**

"If you change your address, please notify the administrator to update their

records." (This case might drag on for years and forwarding orders will expire.)

Last but not least:

The parties should work cooperatively to draft an Amendment to the Settlement

addressing the issue of distribution of any residual settlement funds that should

replace the cy pres provision because millions could remain undistributed based on

the failure of the notice and claims process

Plaintiffs' Counsel should resign prior to the fairness hearing or be fired by the

Court at the hearing. **They clearly have not, never have been, are not presently**

**and never will be qualified to adequately represent the class in this case,**

**especially going forward based on the Mount Everest size evidence in this**

**objection of their incompetence and double dealing.** Most of the nearly two

dozen large and larger errors have been exposed and suggestions made to fix the

issues. Isn't this supposed to be counsels', the "experts" and administrators job and

not the objector's? Plaintiffs' Counsel and class counsel unfortunately can't be fixed, just like Humpty Dumpty, so dismissal is required.

Counsel, since you like to post past objections that build my credibility I am returning the volley, in reverse. Below are issues with a two members of class counsel (one of them twice in two other cases besides this one) and one member of Plaintiffs' Counsel. Issues with this settlement and counsel's never seem to end. (sigh)  The Court should take note of these cases, they reflect on this one as well.

**Judge Scuttles $33M Deal In Defective Fridge Class Action**

## (Class counsel Zimmerman Reed in this case has named plaintiffs' issues in another case)

Share us on: By **David Siegel**

Law360, New York (October 15, 2014, 1:40 PM ET) -- A California federal judge refused Tuesday to grant preliminary approval for a $33 million settlement in a proposed class action against Norcold Inc., Thetford Corp. and Dyson-Kissner-Moran Corp. involving allegedly defective refrigerators, saying more information is needed on incentives provided to named plaintiffs.

U.S. District Judge Josephine L. Stanton denied the plaintiffs' motion for approval

of the settlement terms without prejudice, saying the court lacks adequate

information to determine the incentive amounts for named plaintiffs, who would

receive $100 per hour for their assistance, with a suggested $5,000 minimum

award.

"Because settling plaintiffs have not provided the court with any estimates of the

number of hours the proposed class representatives have expended, the court

cannot determine whether or not the incentive awards corrupt the proposed class

representatives," Judge Stanton wrote. "Consequently, the court cannot

conditionally certify the class."


The class action was initially filed in December 2012 by a series of plaintiffs who

claimed the refrigerators in their recreational vehicles had a design defect in the

boiler tubing of the cooling unit.

The defect caused the tubes to prematurely corrode, releasing flammable gas into

the air, causing the refrigerators to fail and putting the RV owners at risk of fires,

according to court records.

The defendants launched recalls to repair the refrigerators by retrofitting them with

tubing that wasn't defective, but the repairs and retrofitting didn't fix the actual

problem, the plaintiffs alleged in their suit.

Norcold, Thetford and Dyson-Kissner-Moran **agreed in September** to pay the $33

million sum, which then would be divided among the would-be class members

depending on which refrigerator they purchased and whether they already paid for

repairs or replacements, according to the plaintiffs' motion.

Judge Stanton noted that eight of the proposed class representatives are receiving

payments in addition to their incentive awards in the agreement for the release of

their reserved claims, for amounts ranging from $500 to $68,744.60. She compared

that to the payments ranging from $7.02 to $175.40 other settling plaintiffs would

receive if all class members participated in the settlement.

Judge Stanton said there is nothing inherently improper about a class representative

settling an individual claim with a defendant, but added the agreement here

provides that consideration for the release of reserved claims will be paid only in

the event the entire settlement is approved.

"There is no compelling reason to link the two settlements, and doing so provides

those plaintiffs releasing their reserved claims with a substantial reason to support

the settlement separate and apart from any interest they have solely as members of

the settlement class." Judge Stanton wrote. "This conflict destroys the adequacy of

those eight plaintiffs releasing their reserved claims."


The law firms of Ridout Lyon Ottoson LLP and Zimmerman Reed PLLP can't be

appointed lead counsel, Judge Stanton said, because they represent both the eight

plaintiffs in question and the entire putative class, and would thus be simultaneously representing clients with conflicting interests.

Judge Stanton also noted that some class representatives owned a different model refrigerator than the majority of the proposed class. Because those models allowed owners to take advantage of more favorable settlement terms, Judge Stanton said the settlement class could not be certified  The plaintiffs were given 60 days to file an amended motion addressing the deficiencies outlined in Judge Stanton's order.

Caleb Marker of Ridout Lyon Ottoson LLP, who represents the plaintiffs, told Law360 that nothing in the court's order raised any questions about the fundamental fairness of the actual settlement or the proposed relief to class members, but instead dealt with the "intricacies of class action law and practice." "We plan on resubmitting our motion for preliminary approval in the coming weeks," Marker said.

Robert Bodzin of Burnham Brown PC, who represents Norcold, told Law360 his client supports the efforts to obtain approval of the settlement, and that he expects the plaintiffs will be able to correct the "technical issues which factored into Judge Stanton's decision."

The plaintiffs are represented by Hart L. Rabinovich and Bradley C. Buhrow of Zimmerman Reed PLLP and Christopher P. Ridout of Ridout Lyon & Ottoson LLP.

The defendants are represented by Robert M. Bodzin, Gregory D. Brown, Melissa A. Horst and Brian Robert Thompson of Burnham Brown PC.

The case is Jeffrey Etter et al. v. Thetford Corp. et al., case number 8:13-cv-00081, in the U.S. District Court for the Central District of California.

--Additional reporting by Kat Greene. Editing by Mark Lebetkin.

**(Two of our class counsel being sued)**

**Zimmerman Reed, Lockridge Botched FedEx Claims, Suit Says**

Share us on: By **Vin Gurrieri**

Law360, New York (June 27, 2014, 5:58 PM ET) -- Zimmerman Reed PLLP and
Lockridge Grindal Nauen PLLP were sued Friday over alleged errors they made
representing FedEx Ground Package Systems Inc. contractors in sweeping
multidistrict litigation over their classification status that resulted in workers being
forced to settle claims for a fraction of their value. (The objector's' state just like in
this case).

Plaintiff Carlos G. Rocha accused the firms of conspiring with FedEx to induce
individual plaintiffs to settle claims that they were misclassified as independent
contractors on terms friendly to the mail carrier in exchange for secret payments by
FedEx to pay the firms' unrecoverable attorneys' fees.


"Between May 2012 and January/February 2013, [the firms] actively and
aggressively solicit[ed] additional plaintiffs for FedEx in pursuit of the additional
fees promised for each contractor it persuaded to execute a general release of
claims for a small fraction of its value," the suit said.

The dispute centers around an April 2005 class action that was filed by FedEx
workers — one of several dozen cases that were centralized in Indiana federal
court in 2005 — that claimed the company used a business model that improperly
classified its drivers as independent contractors. The cases involved hundreds of
drivers in over 20 states, according to court documents.

In creating a class definition for the workers, however, the law firms failed to take into consideration the differences regarding the type of contracts the workers actually signed with the delivery giant when it embarked on the class certification process.

The varying contracts included differing pay structures, whether contractors included in the class contracted with FedEx as corporations or individuals, and whether they owned one or multiple routes, the suit said.

According to the suit, the firms purposely ignored the distinctions within the class "in order to maximize the size of their class and potential fee awards."

Ultimately, though, the workers were denied certification, and FedEx was **awarded summary judgment in 2010** on the contractors' employment status by the judge overseeing the MDL. **The firms were eventually left unable to recover millions in attorneys' fees for the years of work they had already invested in the case, according to the suit.**

**Following the decision, the firms allegedly accepted an offer from FedEx in 2012 — an offer the present case called a bribe — to recoup some of the millions of attorneys' fees they lost. FedEx offered to pay the firms a portion of the lost fees if they could produce a sufficient number of contractors interested in joining an aggregate settlement whose terms tilted in FedEx's**

**favor, according to the complaint.**

The firms began aggressively courting potential class members after the denial of certification — including Rocha — and convinced many of them to settle their claims on terms very favorable to FedEx, while concealing the amount of fees they stood to gain from the aggregate settlement, the suit alleged.

The offer by FedEx to pay the firms additional fees for additional plaintiffs was made on a confidential basis and mostly kept secret from the court and from the settling clients, the complaint said.

Additionally, certain FedEx workers were offered higher settlements than others, and the amount each contractor settled for was not disclosed to the claimants in order to conceal the disparities, the complaint alleged.

According to plaintiffs' counsel Lisa Johnson, a list of settlement amounts was provided but the names and identities of the recipients were redacted or withheld to conceal unjustified disparities — meaning the contractors could not tell how much the named plaintiffs in the MDL received for their stale claims compared to the more valuable claims held by Rocha and other workers.

In addition to persuading additional class members to severely discount and settle their claims in FedEx's favor, the law firms also agreed to keep and conceal evidence of any illegal activity by FedEx and to destroy the evidence once FedEx paid the firm the amounts promised, according to the complaint.

Rocha, who was initially soli⋯⋯ ⋯ the firms in 2005 and later signed a retention agreement in July 2010, says the lawyers delayed joining his claims to the lawsuit at the start of the case, thus causing his claims to exceed a statute of limitation provision.

Instead, the firms immediately disclosed his name to FedEx for a potential settlement in violation of attorney-client confidentiality rules and later misrepresented the terms of the deal he was offered.

Rocha's suit alleges the law firms breached their retainer agreement, which required them to perform their legal duties to represent his interests in good faith, and that the firms colluded with FedEx to defraud him and other plaintiffs. Rocha's suit seeks damages, disgorgement of unearned fees gained by the law firms, and attorneys' fees and court costs.

The suit individually names as defendants Zimmerman Reed partners J. Gordon Rudd, **Anne T. Regan** (billed this class) and Patricia A. Bloodgood, as well as Lockridge Grindal partners Gregory J. Myers and Susan Ellingstad.

Gordon Rudd, one of the Zimmerman Reed partners named in the suit, told Law360 in a statement Friday that the "complaint filed by [plaintiff's counsel] Lisa Johnson on behalf of her husband Mr. Rocha is without merit."

"The referenced settlement was approved by [a] Northern District of Illinois
[judge]," Rudd said. "Mr. Rocha elected not to participate, and the firms withdrew
as his counsel. ... According to publicly available dockets, the court granted the
defendants' motion to dismiss earlier this year."

Johnson said Friday that it is "unfortunate that we had no other choice but to file
the complaint."

"There is substantial document evidence regarding the allegations," she added.

Representatives for Lockridge Grindal did not respond to a request for comment.

Rocha is represented by Lisa D. Johnson of Anchor Law Offices PLLC.

Counsel information for the defendants was not immediately available Friday.

The case is Carlos G. Rocha v. J. Gordon Rudd Jr. et al., case number 1:14-cv-
04857, in the U.S. District Court for the Northern District of Illinois.

--Editing by Philip Shea.

*Correction: A previous version of this story incorrectly reported that the law firms*

*concealed the amount of fees they received on each individual settlement. The error*

*has been corrected*

**Plaintiffs' Counsel Wolf Haldenstein has excessive fee issues in the following case as well as this one:**

Attys Milking Fees From $35.5M Toys R Us Deal, Objector's Say

Share us on: By Aaron Vehling

Law360, New York (August 25, 2014, 6:44 PM ET) -- Three plaintiffs in a long-running antitrust class action in a Pennsylvania federal court accusing Toys R Us of restraining prices on baby products have filed objections to an amended $35.5 million settlement, saying that, despite improvements, the fourth round of changes still gives attorneys too much money.

Objecting class members Kevin Young, Susan House and Allison Leder on Friday each sent letters to Senior U.S. District Judge Anita B. Brody with objections to the latest amended settlement. All agreed that attorneys' fees should not exceed 24.9 percent of the settlement amount. They said the current allocation of $14 million, which comes out to almost 40 percent, is "unreasonably high."

**"Reducing class counsel's award is fair and will serve the public policy purpose of incentivizing future class counsel not to wait for objections and appellate decisions — like class counsel did here — before negotiating a suitable settlement," Young said in his letter to the court.**

Leder and House also took issue with a plan to distribute coupons for baby products from the unclaimed settlement money. They said that because class members purchased baby products from 2000 to 2005, it is unlikely they would be in the market for baby products more than a dozen years later.

This is the latest dispute in a contentious settlement process that has stretched for four years — ending up at one point **under the review** of the Third Circuit — as the litigation marches on in its eighth year.

Judge Brody signed off on the latest agreement in May. The settlement takes into account a ruling from the appeals court to nix the cy pres distributions to charity so that class members get a net settlement of nearly $18 million — as opposed to the $3 million allocated in the initial 2010 agreement.

However, it has still caught the attention of objector's Young, House and Lederer.

Young, who was behind the appeal, argues that coupon yr's should receive a financial incentive of as much as $1 million for their role in assuring the best agreement outcome.

House said the attorneys' fees should not be calculated until the wholesale value of the redeemed coupons is determined.

Lederer said the coupons were a poor compensation for the class because they forced them to do business with Toys R Us and promoted collusion between the company and class counsel. She further argued that none of the unclaimed money should revert to Toys R Us in any fashion.

The plaintiffs brought the suit in 2006 on behalf of themselves and other consumers who purchased certain baby products from Babies R Us after it allegedly threatened to drop certain popular lines from its stores if their manufacturers didn't agree to block Internet retailers from offering the same products at lower prices.

The class action complaints, brought by 13 consumers, alleged that the anti-discounting actions constituted illegal vertical price restraints under the Sherman

Act.

In July 2009, the trial court certified **several subclasses** representing the buyers of strollers, breast pumps and other products from Babies R Us that were made by the manufacturers named as defendants, including Medela Inc. and Peg Perego U.S.A. Inc.

The parties in May 2010 reached an accord to resolve the suit and a related class action, and they executed a settlement agreement in January 2011 under which the defendants agreed to pay $35.5 million in exchange for a release from the claims.

The district court overruled objections to that settlement and approved it in December of that year, but some purchasers dissatisfied with the deal appealed to the Third Circuit. The appeals court sided with the objector's In February 2013, vacating the lower court's approval, saying consumers would've gotten too little out of the deal.

Only about $3 million would have been set aside for buyers of the overpriced baby products, while $14 million would be spent on attorneys' fees and $18.5 million was to be allocated toward cy pres distributions to charity — a distribution formula

the appeals court ruled was unreasonable and not ideal for compensating class members.

The settlement at that point was structured so consumers who provided documentary proof of purchase would receive a percentage of sales, while a class member with any lower level of proof could recover at most $5. With the vast majority of claims falling into the undocumented category, the total payment to consumers would wind up being roughly $3 million.

The Third Circuit remanded the case, saying the lower court should rethink a cy pres distribution distribution that was six times larger than the payout to the class.

In December the parties **submitted** a third amended settlement, nixing the massive payouts to charity that gave the Third Circuit pause in February. However, according to the court docket, Judge Brody did not approve the third round for reasons that are under seal.

Judge Brody in May signed off on a fourth amended settlement, and the parties moved for her final approval on Aug. 15.

Representatives for Toys R Us and the consumers were not available for comment Monday.

The consumers are represented by <u>Hagens Berman Sobol Shapiro LLP</u>, <u>Spector Roseman Kodroff & Willis PC</u> and <u>Wolf Haldenstein Adler Freeman & Herz LLC</u>.

Objecting class member Kevin Young is represented by Theodore H. Frank of the Center for Class Action Fairness. Objecting class member Allison Lederer is represented by James H. Price of Lacy Price and Wagner PC. Counsel information for objector Susan House was not available Monday.

Toys R Us is represented by <u>Reed Smith LLP</u>.

The cases are McDonough et al. v. Toys R Us et al., case number 2:06-cv-00242, and Elliott et al. v. Toys R Us Inc. et al., case number <u>2:09-cv-06151</u>, both in the U.S. District Court for the Eastern District of Pennsylvania.

--Additional reporting by Bill Donahue. Editing by Richard McVay.

**The evidence in this joke of a settlement below provides final proof that the notice and claims procedures are utter failures, contrary to the claims of counsel and the administrators.**

A Grand Rapids TV station posted a question on its Facebook page which read: **Have you received a card like this in the mail?** (Which showed the back of the postcard notice as shown below). 1100+ class members who received a short notice responded, and commented in writing, with those comments encompassing over two hundred printable pages. Objector's state that the survey has a 3% to 4% margin of error with a 96% confidence rate. Objector's will show the first 25 pages of comments which repeat many of the rest of the 1100+ class member comments. Almost all 1100+ class member individuals simply ignored the postcards, don't know what to do, confused, it's sitting on a table, waste of time finding six year old medical records, thought it was a scam, thought the $3.5 million was the fee because that's how counsel wanted it to be seen based on how they wrote the piece, threw them out, don't understand it, it's in the recycle bin, undecided what to do, file 13 etc. This is exactly what the objector's' said would happen, that being an unacceptable low response rate will occur due to multiple failures with the notice, claims procedure and website. Postcards don't work, hello! The notice plan is a failure so say almost all of the class members below. 98% of class members

can't, are unable or won't file a claim because of a notice and website failures and hoops they are forced to jump through, intentionally. Why can't some class members be sent a check without filing a claim if the damages are known already as one class member wrote about?  Good question, how about an answer counsel? The long form and additional information on it should have been mailed out like objector's' wrote about in the supplement. Nice going Plaintiffs' Counsel, named plaintiffs' as well as the administrators' and one million dollars just got vaporized by the evidence below. All of them are going to refund that wasted money back into the settlement fund or issue a credit for a redo before all is said and done in this case.  A malpractice suit looks better after every filing is made in this case.


Some brutally honest observations from the 1100+ comments are below with some showing the administrator intentionally failed to provide suggestions on how to make the process work for the class member. Some class members, like this objector, paid for services at institutions that are not listed but are in the same health system, ie. Henry Ford Hospital! Huh?

How come a separate claim has to be filed for each child in a family why not one form for a whole family?

The claims process is intentionally designed to frustrate claimants and cause them not to file a claim, which is what is intended.

The question from the TV station was this:

**Have you received a card like this in the mail? We've heard from hundreds**

**and hundreds of you who want to know more about what it means.**

A Settlement has been reached in a class action lawsuit against Blue Cross Blue Shield of Michigan ("BCBSM"). Plaintiffs claim that certain clauses in contracts between BCBSM and some hospitals in Michigan violate federal and state laws and inflated prices for medical care at certain Michigan hospitals. BCBSM denies all wrongdoing and liability, but has concluded that it is in its best interests to settle to avoid the expense, inconvenience, and interference with ongoing business operations.

**Are you included?** Records show that you are either an individual who paid for healthcare services at a general acute care hospital in Michigan between January 1, 2006 and June 23, 2014, an insurer who paid for such services for your insureds, or a self-insured entity whose health plan participants received such services. You do not need to be a BCBSM customer to be eligible.

**What does the Settlement provide?** A $29,990,000 Settlement Fund will be established to make payments to Class Members who submit valid claims. There are minimum payments of up to $40 for small hospital healthcare purchases and much higher payments for large relevant hospital healthcare purchases. The Settlement Fund will also be used to pay Court-approved attorneys' fees and expenses, costs of notice and claims administration, Plaintiff incentive awards, and potentially a small payment to Free Clinics of Michigan.

**How do you ask for a payment?** To receive a payment, you must submit a Claim Form by **November 16, 2014**. You can file a claim online or by mail. Claim Forms are available at the website and toll-free number listed below.

**Your other options.** If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement by **September 24, 2014**. If you do not exclude yourself, you will not be able to sue, or continue to sue, BCBSM about its conduct challenged in this case or related conduct. The full release is included in the Settlement Agreement, which is available at the website and toll-free number listed below. If you exclude yourself, you cannot get a payment from the Settlement. If you do not exclude yourself, you may object to the Settlement and the upcoming request for attorneys' fees, expenses, and Plaintiff incentive awards by **September 24, 2014**. A detailed Notice, available at the website and toll-free number listed below, explains how to exclude yourself or object and has more information about the Settlement.

The Court will hold a hearing on **November 12, 2014** to consider whether to approve the Settlement and a request by Plaintiffs' Counsel for attorneys' fees up to one-third of the Settlement Fund, litigation expenses up to $3,500,000, and Plaintiff incentive awards up to $150,000. You or your own lawyer, if you have one, may ask to appear and speak at the hearing at your own cost.

www.MichiganHospitalPaymentsLitigation.com          877-846-0588

Find friends

# Timeline Photos

<u>Back to Album</u> · <u>WOOD TV8's Photos</u> · <u>WOOD TV8's Page</u>
<u>Previous</u> · <u>Next</u>



WOOD TV8

Objector's write: The link below is to the website listing all 1100+ plus comments from potential class members who received a short notice postcard.

https://www.facebook.com/woodtv/photos/a.84218536235.81626.20114386235/10152547876421236

Below is a link to the short summary of the story/survey

http://woodtv.com/2014/08/18/about-2-million-eligible-for-bcbsm-settlement/

Objector's would like to thank WOOD TV8 and all commenter's for their assistance. We will try and right this wrong.

**Here are some spot on comments:**

**Page 1** Marsha Lynn Tech- I received one and burned it. It is stupid and illogical, poorly written and you would have to be the one that wrote it to understand the wording. To get an attorney and go to the litigation will probably cost more than the so-called settlement.

Like · 20 Replies  Reply · 1C    gust 18 at 10:52am

**Page 15** bottom <u>Laurene Stewart</u> Everyone at our house received one. Regardless of what it is all about, the hospitals listed on the website were none that we had been to so I threw the cards away.

   Like · <u>Reply</u> · <u>2</u> · <u>August 18 at 10:44am</u>

~~**Page 20** bottom~~<u>Amy Hawker Kulesza</u> Yes, we got three. My husband and I have always had blue Cross insurance, so I tried to do out their form online, it keeps telling me my information doesn't match their records and I know my info is 100%correct, so I think it's a scam.

Like · <u>Reply</u> · <u>1</u> · <u>August 18 at 11:24am</u>

  **Page 30**  <u>Julie Schimke Hansen</u> I got 4 cards so far - all for various people that may or may not have ever lived at this address. I marked them as wrong address and put them back in my mailbox. Ironically, I had BCBSM during this time and paid out a lot of $$ for premiums and hospital expenses, but did NOT get a card for myself:(<u>Like</u> · <u>Reply</u> · <u>August 19 at 5:21pm</u>

**Page 57** <u>Lydia Vierson</u> Settlement people said u need to file one for each child.

Like · Reply · August 18 at 7:... ...

**Page 89** <u>Krystal Kirt Brady</u> We got 3, me and my 2 children. Tossed them. However, each of us that got one, have had substantial medical bills in the time frame that they are talking about. Curious, but assumed it was it was a scam.


**Page 101** <u>Cindy Truax</u> I got one. I didn't have Blue Cross insurance but I had many medical procedures and a hospital stay. I haven't gone to the website yet and don't know if I should. I would like to know if this settlement is for real.

**Robin Kritzman** Yes and I contacted them to say I didn't have ask the paperwork. They said it was my responsibility. I spent a lot of money as I was hospitalized for a month. Would like to recoup.

Objector's' state the administrator didn't inform the class member and maybe many others as well that they could contact the hospital or insurance company directly and have them send a computerized list of payments out like this objector thought to do on his own. After all, the hospitals were complicit in this fraud because without their help defendant could not have engaged in this scheme of their's. Why aren't the hospitals being sued and/or contributing to this settlement counsel? Objectors' demand an explanation for $13.5 million.

Class members could also have been told to fill out and send in a claim without records, just look at credit card receipts or checkbook, but that they may need them as evidence if asked. The administrator did not tell the class member this and maybe all class members who had the same question. By not saying anything of value the result will be less class members filing claims, opposite of the goal of the settlement which is to help as many people as possible file claims, unless that is not the goal.

 **(Comment number 699)** Barb Near bottom,   Received 2, however it impossible to file a claim if you did not keep all records, have no idea where you would get this info. It says: "On the below Claim Table, please list each hospital from the below list that you paid for healthcare services, the date(s) the hospital provided the services, the amount(s) you paid to the hospital, and any insurance provider. You may include only payments for hospital healthcare services provided between January 1, 2006 and June 23, 2014". )

Objector's note: Again administrator did not make beneficial suggestions to the class members, seems the effect is less claims will be filed.)

...ttlement has been ...erched in a class action lawsuit against Blue Cross Blue Shield of Michigan ...SM"). Plaintiffs claim that certain clauses in contracts between BCBSM and some hospitals in Michigan violate federal and state laws and inflated prices for medical care at certain Michigan hospitals. BCBSM denies all wrongdoing and liability, but has concluded that it is in its best interests to settle to avoid the expense, inconvenience, and interference with ongoing business operations.

**Are you included?** Records show that you are either an individual who paid for healthcare services at a general acute care hospital in Michigan between January 1, 2006 and June 23, 2014, an insurer who paid for such services for your insureds, or a self-insured entity whose health plan participants received such services. You do not need to be a BCBSM customer to be eligible.

**What does the Settlement provide?** A $29,990,000 Settlement Fund will be established to make payments to Class Members who submit valid claims. There are minimum payments of up to $40 for small hospital healthcare purchases and much higher payments for large relevant hospital healthcare purchases. The Settlement Fund will also be used to pay Court-approved attorneys' fees and expenses, costs of notice and claims administration, Plaintiff incentive awards, and potentially a small payment to Free Clinics of Michigan.

**How do you ask for a payment?** To receive a payment, you must submit a Claim Form by November 16, 2014. You can file a claim online or by mail. Claim Forms are available at the website and toll-free number listed below.

**Your other options.** If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement by **September 24, 2014**. If you do not exclude yourself, you will not be able to sue, or continue to sue, BCBSM about its conduct challenged in this case or related conduct. The full release is included in the Settlement Agreement, which is available at the website and toll-free number listed below. If you exclude yourself, you cannot get a payment from the Settlement. If you do not exclude yourself, you may object to the Settlement and the upcoming request for attorneys' fees, expenses, and Plaintiff incentive awards by **September 24, 2014**. A detailed Notice, available at the website or toll-free number listed below, explains how to exclude yourself or object and has more information about the Settlement.

The Court will hold a hearing on **November 12, 2014** to consider whether to approve the Settlement, and a request by Plaintiffs' Counsel for attorneys' fees up to one-third of the Settlement Fund, litigation expenses up to $3,500,000, and Plaintiff incentive awards up to $150,000. You or your own lawyer, if you have one, may ask to appear and speak at the hearing at your own cost.

MI032 - v.04-07122014

**www.MichiganHospitalPaymentsLitigation.com**    877-846-0588

We're working to learn more now -- and we'll have the story on 24 Hour News 8 at 5.

LikeLike · · Share · August 18 · Edited

- 
- Top Comments

  696 people like this.

- 433 shares



Press Enter to post.



Linda Pitsch I just contacted News 8 and they are doing a segment on this to better explain what it all means and who all this effects

Like · Reply · 60 · August 18 at 10:50am



MelissaTodd Dykman I got one- pitched it

Like · Reply · 44 · August 18 at 10:56am

    o

       3 Replies



Rob Allen My neighbor's husband's sister's second cousin got one but threw it away. I hope this helps.

Like · Reply · 31 · August 18 at 10:52am

o

2 Replies



Jamie Denton Bailey It requires way to much information and my time to dig it all up for $40 settlement

Like · Reply · 20 · August 18 at 10:54am



Dave Cramer I've been through several "class action" suits (not hospital-related), and have usually been paid small amounts once all is said and done, usually anywhere from $10 to not more than $200, but your mileage may vary. Lawyers are usually the big winners ...See More

Like · Reply · 22 · August 18 at 11:06am

o

6 Replies



Ami Jo Botruff I received one, not really sure what to do...

Like · Reply · 21 · August 18 at 10:39am



Tami Korloch Dickinson I got one. How on earth am I supposed to document my medical going back to 2006?

Like · Reply · 22 · August 18 at 10:46am

6 Replies



Monica Linehan Response from News 8: Thank you for your email. We made the facebook post in an effort to judge how many people received these cards, and judging from the response it is a lot. The post card is part of a settlement of a federal lawsuit. We are working on the story for our 5pm and 6pm shows. We hope to be able to tell you what you need to know about the settlement, and how you can move forward.

Like · Reply · 10 · August 18 at 12:18pm



2 Replies



Jill Yonkers-Roedema Following......I would love more info on it. NEWS 8 Can you tell us when you are going to do a segment?

Like · Reply · 7 · August 18 at 11:26am



Sheryl Sprague Yes, my husband received one too; however, I don't feel like wasting time digging out how much I paid out of pocket since 2006. Not worth my time for a possible $40 settlement.

Like · Reply · 5 · August 18 at 10:49am



<u>Christal Boerman</u> We receive one for each family member (4), I tossed them seeing that we don't even have BCBS.

Like · Reply · 4 · August 18 at 10:50am · Edited



<u>Jeff Schepers</u> If you read the fine print, you did not have to have BCBS to be a part of the suit.

Like · August 18 at 12:17pm



Write a reply…



<u>Kimberly Aldridge</u> I received four of them. Two in my maiden name and two in my married name. I have been researching my past medical records and I have paid a pretty heafty amount to the hospitals since 2006. Would love to know how they are basing distributions if this is even real.

Like · Reply · 4 · August 18 at 10:45am

3 Replies



<u>Beth Jacobson Humphreys</u> I received them for myself and my children. Being that I work in the health insurance industry I am fully aware of this suit and will be adding our names to the suit.

Like · Reply · 3 · August 18 at 11:54am



Cherie Van Klompenberg I have had a lot of medical expenses for 2006 until now, but not sure if it would hurt my current coverage. I will be watching News 8 for more info.

Like · Reply · 3 · August 18 at 11:51am



Lisa Wnuk Got one too. Checked site and list of documents needed was too much to follow up on. Makes it almost impossible to do which seems like it's why they structure it that way - so no payout.

Like · Reply · 3 · August 18 at 11:30am



Jil Spangenberg We received one but threw it away.

Like · Reply · 3 · August 18 at 10:51am



Ed Phinney I wonder if they owe us money WHY DO WE? have to do anything, if they took our money they should just send it back.

Like · Reply · 2 · August 19 at 9:35am



Carrie Blok Cheryl Diane Stewart, we got them, too, and we don't have BCBS, either, but it DOES state on there that you don't have to have BCBS to be included in the settlement.

Like · Reply · 2 · August 18 at 2:36pm



Angie Perysian Gutierrez Got 3 of them too.. curious to see and why Michigan Hospitals

are ripping people off.. SMH

Like · Reply · 2 · August 18 at 1:12pm



Catherine Baldrica I got 3 and pitched them one for each of my kids

Like · Reply · 2 · August 18 at 12:44pm



Denise Commans I got one bout a week ago didn't really think to much of it and just kinda let it b. Is it something I should b concerned bout?

Like · Reply · 2 · August 18 at 12:37pm



Heather Lyn Weidenfeller-kukla I got one and threw it away

Like · Reply · 2 · August 18 at 12:04pm



Keara Hilton I received one for each of my 5 children but have no idea what it's about.

Like · Reply · 2 · August 18 at 11:37am



Becky Britz I submitted mine, but only because I have access to all of my EOB's online, so it took all of 15 minutes to pull them. If I had to go through paper files there's no way I would have taken the time.

Like · Reply · 2 · August 18 at 11:34am



Lisa Dymock Got them too threw them out

Like · Reply · 2 · August 18 at 11:34am



Heidi Martin Yes I got one

Like · Reply · 2 · August 18 at 11:34am



Julie Olsen I got one 4 e everyone in my family

Like · Reply · 2 · August 18 at 11:32am



Jill Johnson Finley Three of four in our immediate family got one. When it asked for medical documentation back to 2006, I pitched them. Who has that kind of time, not to mention I shred documents after 7 years.

Like · Reply · 2 · August 18 at 11:22am



Lou Meeth Worden they want you to jump through some pretty high hurdles to get the money. I went to that website. I have bills I paid from 2007 and 2008 that fall under this, but I would have to get the hospital to give me an itemized statement from that far back. Sounds like a big hassle to me

Like · Reply · 2 · August 18 at 11:16am



Shawna Veltema I got a few. ...threw them away

Like · Reply · 2 · August 18 at 11:11am

○

2 Replies



Mary Hammes Hinchman I got one too - it's sitting here witing for me to decide what to do

Like · Reply · 2 · August 18 at 11:07am



Jan Norton It has something to do with Blue Cross and certain hospitals over charging patients for services. Instead of going to trial, Blue Cross agreed to settle. If you go to the website listed and submit a claim, you will be awarded your part of the settlemen...See More

Like · Reply · 2 · August 18 at 11:06am



Sara Fetterhoff Hoffman I got 2 of them.

Like · Reply · 2 · August 18 at 11:05am



Sue Karrip Walker I received one for me and one for my husband.

Like · Reply · 2 · August 18 at 11:04am



Robyn McClellan Yup file 13 is where it went

Like · Reply · 2 · August 18 at 11:03am



Latonia Estill We received 2 of them.. Not thinking I just threw them away

Like · Reply · 2 · August 18 at 10:57am



Amy Wigger We did, kind of confusing but we had some major medical bills at spectrum in 2013.

Like · Reply · 2 · August 18 at 10:53am



Katrina Corwin Got one but didn't do anything with it because i replied to one several years ago and it was a scam

Like · Reply · 2 · August 18 at 10:48am



Laurene Stewart Everyone at our house received one. Regardless of what it is all about, the hospitals listed on the website were none that we had been to so I threw the cards away.

Like · Reply · 2 · August 18 at 10:44am



Matt Koppel I got one....did nothing with it.

Like · Reply · 2 · August 18 at 10:43am



Ashley Brower We got 3, is it legit?

Like · Reply · 2 · August ... at 10:41am



Fred Ruble Many people seem to think that $40 would be the amount of their settlement check. Their website states that no checks less than $40 will be issued. The maximum amount you could receive is 3.5% of your approved claims. So if you can document expenses yo...See More

Like · Reply · 1 · August 19 at 12:25pm · Edited



Todd Clevenger Lawyers paid 3.5 million....hum...I don't want to be a part of it......these lawsuits only help the lawyers, everyone else, gets a few bucks after you prove your case...

Like · Reply · 1 · August 18 at 8:29pm



Jennifer Wilks Bowen Staci Gilchrist

Like · Reply · 1 · August 18 at 6:08pm



Jen Thurow Todd, You got this in the mail

Like · Reply · 1 · August 18 at 5:52pm



Karrie Walker I got one in the mail. Already threw it away.

Like · Reply · 1 · August 18 at 4:13pm



Amanda Huff Ives I got 4

Like · Reply · 1 · August 18 at 3:51pm



Erin Kobel 3 to our house!

Like · Reply · 1 · August 18 at 3:45pm



Brenda Vandenberg- VanderWege yes!

Like · Reply · 1 · August 18 at 2:54pm



Lisa Marie Moore I got one...and its beyond me why they cant just pay you back for their over charges. Like everyone keeps their receipts that long

Like · Reply · 1 · August 18 at 2:50pm

Mary Brown Got one, threw it away. Always feel it's a scam if some sort

Like · Reply · 1 · August 18 at 2:28pm



Melissa Koetje Got two on the mail. Caught my attention and starting digging into this. Looks like the documentation need to file is dates, institution, how much the bill was. Still skeptical about this. The website just tells you about the postcard and not why the case has been brought forward. I was going to call the number and find out further information, but I will let News 8 provide answers.

Like · Reply · 1 · August 18 at 1:55pm



Renae Scarberry I also received one for my husband...he's been under alot of care n specialist since way before that...interested to know whats going on...

Like · Reply · 1 · August 18 at 1:44pm



Lisa TenHarkel Maybe you should have asked who didn't get them!

Like · Reply · 1 · August 18 at 1:23pm



Candace VandenBerg Got one not sure what to do with it yet. Glad to hear your checking into it

Like · Reply · 1 · August 18 at 1:13pm



Kathleen Robinson Lok Got one! Did nothing about it.

Like · Reply · 1 · August 18 at 1:12pm



Carol Leski Whats is it all about? I recieved one to

Like · Reply · 1 · August 18 at 12:58pm



Kim Curtis I got one last week. Filed it in a landfill.

Like · Reply · 1 · August 18 at 12:52pm



<u>Bambi Somers Stewart</u> Got two just tossed them today.

<u>Like</u> · <u>Reply</u> · <u>1</u> · <u>August 18 at 12:44pm</u>



<u>Patricia Leaf</u> Got one. Trashed it

<u>Like</u> · <u>Reply</u> · <u>1</u> · <u>August 18 at 12:44pm</u>



<u>Cindy Sumner</u> I got one but don't understand it.

<u>Like</u> · <u>Reply</u> · <u>1</u> · <u>August 18 at 12:41pm</u>



<u>Charlene Chansler</u> Sam and I both received one. Will be interesting to see what News 8 digs up.

<u>Like</u> · <u>Reply</u> · <u>1</u> · <u>August 18 at 12:41pm</u>



<u>Angela Decker</u> I received one and pitched it

<u>Like</u> · <u>Reply</u> · <u>1</u> · <u>August 18 at 12:41pm</u>



<u>Kathy Sherk</u> Got 3...would be interested to watch the segment if you could post when it will air please

<u>Like</u> · <u>Reply</u> · <u>1</u> · <u>August 18 at 12:40pm</u>



Ronda Beamer Our family all received one. I recycled all of them.

Like · Reply · 1 · August 18 at 12:40pm



Christy Hoogerhyde For some reason I actually received two of this one.

Like · Reply · 1 · August 18 at 12:33pm



Brandon Gleason Julie Dotts Lepzinski

Like · Reply · 1 · August 18 at 12:33pm



Julie Dotts Lepzinski I seen it already....lol

Like · August 18 at 12:34pm





Kathy Russo Miller We all got these as well and we don't have BCBS

Like · Reply · 1 · August 18 at 12:26pm



Karen Rivera We received 5!

Like · Reply · 1 · August 18 at 12:25pm



Star Sapphire I got one but class action lawsuits just maybe give you a dollar. They definately overcharge though. I brought my own prescription medicine when I was hspitalized & they insisted on storing it and charged me $14. A pill in 1995! I complainex even though I had full coverage insurance. Dont let them overcharge-it hurts everyone.

Like · Reply · 1 · August 18 at 12:23pm



Trish O'Connell Boomsma We received one for all three members of our family. Not for sure what to do???

Like · Reply · 1 · August 18 at 12:23pm



Jenny Redes I also received and disposed of

Like · Reply · 1 · August 18 at 12:20pm



Barbara Main Buck I got 7 of them last week. Anyone know what it's all about. I don't think we have bills from that far back to prove anything.

Like · Reply · 1 · August 18 at 12:17pm



Lisa Kollar-Cassini I did but threw it away

Like · Reply · 1 · August 18 at 12:15pm



Darcy Mercer Reister We got 2 of them in the mail!

Like · Reply · 1 · August 18 at 12:05pm



Bob Devereaux Got one ...tossed it

Like · Reply · 1 · August 18 at 12:05pm



Brandie Kornoelje Cogswell Just got one few weeks ago.. Threw it in the trash!! Garbage!!

Like · Reply · 1 · August 18 at 12:04pm



Alyssa Lynn Mullins John Mullins

Like · Reply · 1 · August 18 at 11:52am



Alexsis Bultema Yes, it's called US health insurance is a rip off.

Like · Reply · 1 · August 18 at 11:51am



Christa Snyder I got one. I was iffy about it....is it a scam???

Like · Reply · 1 · August 18 at 11:51am



Eric Vogler Sounds like woodtv8 is going to be talking to a lot of people! Lol

Like · Reply · 1 · August 18 at 11:50am



Oma Monica Knopf My husband and I got them too

Like · Reply · 1 · August 18 at 11:45am



Nicole Tobey I got one of these for a bcbs suit and also for a sylvania light bulb suit.

Like · Reply · 1 · August 18 at 11:44am



Cheryl Poirier Yes... I have received one.... But I do not get involved in any class action claims. They all seem a little suspect.

Like · Reply · 1 · August 18 at 11:42am



Sherri Shoaf Andrew My husband and I both got one. I threw them away.

Like · Reply · 1 · August 18 at 11:43am · Edited



Lindsay Rae I got one idk what to do

Like · Reply · 1 · August 18 at 11:33am



<u>Kimberly Barrett</u> Got them, figured it was fishy since only some in my family got them and threw them away

Like · Reply · 1 · August 18 at 11:27am



<u>Kyla Reinhardt Ewen</u> Who didn't get one? I want to know what it's all about as well!

Like · Reply · 1 · August 18 at 11:27am



<u>Courtney E. Fisk</u> I got one for myself and both of the boys. It's a class action against BCBSM - some of the contracts between BCBSM and various hospitals (Metro Health is a big one) included inflated prices for medical care (yes, I realize that's pretty much what the card says) - so, if you as the insured ended-up paying on a bill that was submitted to and not fully covered by your insurance provider, you may be entitled to receive some of the funds back. Maybe…and it will likely be a small percentage of what you paid.

Like · August 18 at 12:42pm





<u>Amy Hawker Kulesza</u> Yes, we got three. My husband and I have always had blue Cross insurance, so I tried to do out their form online, it keeps telling me my information doesn't match their records and I know my info is 100%correct, so I think it's a scam.

Like · Reply · 1 · August 18 at 11:24am



Vera Parker I GOT ONE TO

Like · Reply · 1 · August 18 at 11:24am



Norm Cole Yes....we have received a number of them...for each child....why

Like · Reply · 1 · August 18 at 11:21am



Amber Borrello I did. O_o

Like · Reply · 1 · August 18 at 11:20am



Paula Anderson-Chaney We recieved for each member but tossed them..was sure nothing would come from it

Like · Reply · 1 · August 18 at 11:20am



Laura Elizabeth I got one too

Like · August 18 at 3:16pm



Simone Petoskey Following

Like · Reply · August 18 at 4:59pm



Joe Homer Manning Yep, got one and recycled it!

Like · Reply · August 18 at 4:59pm



Kerrie Haminger received 4 of those cards here too. One for each of us! We too threw them Way. "Scam"?

Like · Reply · August 18 at 4:57pm



Barbara Church Jeff and I each got one.

Like · Reply · August 18 at 4:56pm

Objector's' believe they have covered almost all the numerous issues in this case that counsel failed to tie down and resolve: "[I]ssues not presented to the district court but raised for the first time on appeal are not properly before the court." Marks Mgmt. Servs., Inc. v. Reliant Mfg., Inc., 74 F. App'x 493, 496–97 (6th Cir. 2003) (internal citation omitted)

---

Below are copies of the invoices for C.W., R.W., and M.A. Also included is the

POA appointing C.W. as executor of the estate's of E.G. and E.B.

Thank you for your attention and consideration.

Case No. Case No. 2:10-cv-14360-DPH-MKM

Dated: October 28, 2014

*Christopher Andrews (Pro se also acting as representative for pro se objectors*

*listed below).*

P.O. Box 530394

*Livonia, MI 48152-0394 E-mail caaloa@gmail.com Phone 1-248-635-3810*

*Christopher Andrews   Cathy Waltz   Ron Waltz   Michael Andrews*

*Christopher Andrews, objector also is acting as representative for pro se*

*objector's Cathy Waltz,, Ron Waltz and Michael Andrews. We/I certify under*

*penalty of perjury that the above and below information is true and accurate to the*

*best of my/our knowledge, information and belief. All correspondence is to be*

*mailed to Christopher Andrews.  Any emails, notices or docket filings filed with the*

*court or phone calls as well should go to Christopher Andrews at the email and phone number listed above.*

I/we hereby certify that on this day I/we hand delivered foregoing to the Clerk of the Court, and served true and correct copies upon class counsel and defendants' counsel via US Post Office Priority Mail (two- three day delivery) at the addresses below, per the instructions of the Settlement Notice to:

Clerk of Court, the United States District Court for the Eastern District of Michigan Southern Division, U.S. Courthouse 231 W. Lafayette Blvd.

Detroit, Michigan 48226 Telephone number (313) 234-5005.

COHEN MILSTEIN SELLERS & TOLL PLLC 202-408-4600

Daniel A. Small

Brent W. Johnson

1100 New York Avenue, NW

Suite 500

Washington, DC 20005


HUNTON & WILLIAMS LLP 202.955.1500

Todd M. Stenerson

D. Bruce Hoffman

2200 Pennsylvania Ave, NW

Washington, DC 20037

Christopher Andrews     Cathy Waltz     Ron Waltz     Michael Andrews

*I/we certify under penalty of perjury that the above and below information is true*

*and accurate to the best of my/our knowledge*, information, and belief .The Shane

Group etc. al v Blue Cross Blue Shield of Michigan Case No. 2:10-cv-14360-

DPH-MKM

# First Codicil
## To The Last Will and Testament of
### Eileen R. Greenia

I, Eileen R. Greenia, of the City of ▆▆▆▆▆, County of ▆▆▆▆, State of Michigan, made my Last Will and Testament on September 24, 1998.  On April 15, 2005, I now make the following First Codicil to my Will:

## ARTICLE SIXTH

I delete Article Sixth, Section (a) and substitute in its place the following language:

"(a)   **Personal Representative.**  I hereby nominate and appoint my daughter, **Cath▆▆▆▆ Waltz**, as Personal Representative of this, my Last Will and Testament.  In the event ▆▆▆▆▆, **Cath▆▆▆ Waltz**, is unable or unwilling to act in such capacity, then, and in that event, I hereby appoint ▆▆▆▆▆ ▆▆▆▆▆ to serve as Personal Representatives of my estate with all the powers as hereinabove stated. In the event none of the above mentioned individuals are able or willing to serve as Personal Representative, I hereby request that my oldest living beneficiaries select a financial institution qualified to do business in the State of Michigan to serve as Personal Representative of my estate, with all the powers as hereinabove stated.

I further request that my Personal Representative shall only be required to file a nominal bond."

In all other respects, I ratify and confirm my will dated September 24, 1998..

I, Eileen R. Greenia, the Testator, sign my name to this document on April 15, 2005.  I swear that the statements in this document are true; declare that this document is a codicil to my Will; that I sign it willingly or willingly direct another to sign for me; that I execute it as my voluntary act for the purposes expressed in this Codicil; and that I am 18 years of age or older, of sound mind, and under no constraint or undue influence.

_Eileen R. Greenia_
Eileen R. Greenia

We, John P. Hartwig and Jacqueline L. Garcher, the witnesses, sign our names to this document swear that all of the following statements are true: the individual signing this document as the Testator executes the document as a Codicil to his or her Will, signs it willingly or willingly directs another to sign for him or her, and executes it as his or her voluntary act for the purposes expressed in this codicil; each of us, in the Testator's presence, signs this Codicil as witness to the

Initials

Approved, SCAO

JIS CODE: LET



| STATE OF MICHIGAN<br>PROBATE COURT<br>COUNTY OF OAKLAND | LETTERS OF AUTHORITY FOR<br>PERSONAL REPRESENTATIVE | FILE NO. |

Estate of  Emily Byrne,
Deceased

**To:** *Name and address*
Cath~~~~~~~ Waltz

*Telephone no.*

You have been appointed and qualified as _____ personal representative(s) _____ of the estate on  June 18, 2010
Date

You are authorized to perform all acts authorized by law unless exceptions are specified below.

☐ Your authority is limited in the following way:

☐ You have no authority over the estate's real estate or ownership interests in a business entity that you identified on your acceptance of appointment.

☐ Other restrictions or limitations are:

☒ These letters expire: NO EXPIRATION DATE
Date

June 18, 2010
Date

Judge   (formal proceedings)/Register Jill Koney Daly (informal proceedings)           Bar no

SEE NOTICE OF DUTIES ON SECOND PAGE

Attorney name (type or print)                 Bar no.

Address

City, state, zip                 Telephone no.

I certify that I have compared this copy with the original on file and that it is a correct copy of the original, and on this date, these letters are in full force and effect.

June 15, 2010
Date

Deputy register

Do not write below this line – For court use only

FILED _____ 20 __

**Deputy Register of Probate**

PC 572 (10/07) **LETTERS OF AUTHORITY FOR PERSONAL REPRESENTATIVE**

MCL 700.3103, MCL 700.3307, MCL 700.3414,
MCL 700.3504, MCL 700.3601,
MCR 5.202, MCR 5.206, MCR 5.307, MCR 5.310

# EXPLANATION OF BENEFIT PAYMENTS
## THIS IS NOT A BILL



**Blue Cross Blue Shield** of Michigan

A nonprofit corporation and independent licensee of the Blue Cross and Blue Shield Association

**Statement Date:    07/17/10**



WALTZ RONALD

**Your Customer Service Phone Number Is:**
NATIONWIDE TOLL-FREE   1-800-432-9881

**Send Written Inquiries to this Address:**

BLUE CROSS BLUE SHIELD OF MICHIGAN
SECS - WRITTEN, MAIL CODE X300
600 E. LAFAYETTE BLVD.
DETROIT        MI 48226-2998

| | |
|---|---|
| **Group Name:** | MIACG/HEALTHQUEST OF FARMING |
| **Group Number:** |  |
| **Subscriber Name:** | WALTZ RONALD |
| **Contract Number:** | |
| **Coverage:** | |

See your Health Care Benefits Certificate or Benefits Guide for details on contract coverage. For ASC groups, we don't assume any financial risk or obligation with respect to claims.

**Patient Name or Initial:**
**Patient Birth Month/Year:**

## Summary of Balances (See Detail on Services)

| Name of Hospital, Physician or Provider | Total Provider Charges | (-) Less BCBSM Paid | (-) Less Participating Provider Savings | (-) Less Other Insurance Paid | (=) Equals Your Balance* |
|---|---|---|---|---|---|
| REGENTS OF THE | 148.00 | 105.35 | 32.65 | 0.00 | 10.00 |
| **Totals:** | $    148.00 | $   105.35 | $    32.65 | $    0.00 | $    10.00 |

*Note: The amount in the 'Equals Your Balance' column includes any copayments, deductibles, sanctions and non-covered charges.

## Summary of Deductibles and Copayments (These totals are based on our information to date and may not reflect all outstanding claims.)

| | | |
|---|---|---|
| Totals for: FAMILY | 01/01/10 to 12/31/10 | |
| Deductible required for year: | $ | 500.00 |
| Deductible applied year to date: | $ | 205.79 |
| The family deductible has not been met. | | |

## Helpful Information

Did you know that good oral health impacts your overall health? Gum disease can increase the severity of diseases like heart disease and diabetes. See your dentist for a healthier you!

When you carry a Blues card, you're part of our unique mission to create stronger, healthier communities by providing access to quality health care for everyone. And we encourage you to make healthy choices. Visit bcbsm.com/xtras for offers on healthy products and services. You'll find many from businesses in Michigan and around the U.S.

# EXPLANATION OF BENEFIT PAYMENTS
## THIS IS NOT A BILL



**Blue Cross Blue Shield** of Michigan

A nonprofit corporation and independent licensee
of the Blue Cross and Blue Shield Association

**Statement Date:**   **07/17/10**

| **Detail on Services** | **Contract Number: 893164078** | **Patient: RONAL** |
|---|---|---|

| | | |
|---|---|---|
| **Service Date**(From/To) : | 06/25/10 | Total Charge ................................... $    148.00 |
| **Claim Received on:** | 07/01/10 | |
| **Provider Name:** | REGENTS OF THE | Amount approved by BCBSM for this service.........    115.35 |
| **Provider Status:** | PARTICIPATING | **Minus copayment**............................. −    10.00 |
| **Referring Provider:** | | BCBSM processed on 07/01/10 and paid provider...    105.35 |
| **Service Type:** | | Savings because provider participates with BCBSM ... +    32.65 |
| **Procedure:** | | Total Covered ................................... $    138.00 |
| **Procedure Code:** | | |
| **Claim Number:** | | **Your Balance:**  (Highlighted Amounts)      $    10.00 |

EOBP101980180066



**Medical Financial Solutions**

A division of ACCRETIVE HEALTH
C/O Henry Ford Health System
P.O. Box 50888
Kalamazoo, MI 49005

| | |
|---|---|
| Statement Date | 05/26/14 |
| Patient Name | ANDREWS MICHAEL |
| Medical Record Number | |

## Patient Billing Statement

| | |
|---|---|
| Previous Balance | $330.75 |
| Charges Due | $0.00 |
| Insurance Payments/Adjustments | $0.00 |
| Patient Payments | $0.00 |
| Credits/Adjustments | $0.00 |
| **Amount You Owe** | **$330.75** |

HEN100.A4KTL9000288.J0GU40.000527.000264



MICHAEL ANDREWS

### Insurance Information

| | |
|---|---|
| Primary Insurance | PRIORITY PPO |
| ID Number | |
| Secondary Insurance | |
| ID Number | |

**REMINDER:** Please remember to update your banking account information with your 8 digit Medical Record Number.

## Contact Us



Online: MyChart at www.henryford.com
- Pay Your Bill Online
- Update Your Address or Insurance Information
- View Past Statements
- Sign up for eStatements



Phone: 1-866-994-4096



Hours
- Mon. to Thurs. 8:00 am - 9:00 pm
- Fri. 8:00 am - 4:30 pm
- Sat. 10:00 am - 2:00 pm

| Patient | Medical Record Num |
|---|---|

# EXPLANATION OF BENEFIT PAYMENTS
## THIS IS NOT A BILL



**Blue Cross Blue Shield** of Michigan

A nonprofit corporation and independent licensee of the Blue Cross and Blue Shield Association

**Statement Date:** 01/01/11



036092

WALTZ RONALD W

**Your Customer Service Phone Number Is:**
NATIONWIDE TOLL-FREE 1-800-432-9881

**Send Written Inquiries to this Address:**
BLUE CROSS BLUE SHIELD OF MICHIGAN
SECS - WRITTEN, MAIL CODE X300
600 E. LAFAYETTE BLVD.
DETROIT                 MI 48226-2998

| | |
|---|---|
| **Group Name:** | MIACG/HEALTHQUEST OF FARMING |
| **Group Number:** | |
| **Subscriber Name:** | WALTZ RONALD W |
| **Contract Number:** | |
| **Coverage:** | |

See your Health Care Benefits Certificate or Benefits Guide for details on contract coverage. For ASC groups, we don't assume any financial risk or obligation with respect to claims.



**Patient Name or Initial:** CATHE *CATHY WALTZ*
**Patient Birth Month/Year:**

## Summary of Balances (See Detail on Services)

| Name of Hospital, Physician or Provider | Total Provider Charges | (-) Less BCBSM Paid | (-) Less Participating Provider Savings | (-) Less Other Insurance Paid | (=) Equals Your Balance* |
|---|---|---|---|---|---|
| REGENTS OF THE | 103.00 | 64.62 | 28.38 | 0.00 | 10.00 |
| **Totals:** | $ 103.00 | $ 64.62 | $ 28.38 | $ 0.00 | $ 10.00 |

*Note: The amount in the 'Equals Your Balance' column includes any copayments, deductibles, sanctions and non-covered charges.

## Summary of Deductibles and Copayments  (These totals are based on our information to date and may not reflect all outstanding claims.)

| Totals for: FAMILY | 01/01/10 to 12/31/10 | Totals for: CATHE | 01/01/10 to 12/31/10 |
|---|---|---|---|
| Deductible required for year: | $ 500.00 | Deductible required for year: | $ 250.00 |
| Deductible applied year to date: | $ 353.59 | Deductible applied year to date: | $ 250.00 |

The family deductible has not been met.
The patient deductible has been met.

| Totals for: FAMILY | 01/01/10 to 12/31/10 | Totals for: CATHE | 01/01/10 to 12/31/10 |
|---|---|---|---|
| Copayment required for year: | $ 2,000.00 | Copayment required for year: | $ 1,000.00 |
| Copayment applied year to date: | $ 16.69 | Copayment applied year to date: | $ 16.69 |

The family copayment requirement has not been met.
The patient copayment requirement has not been met.

## Helpful Information

Did you know that good oral health impacts your overall health? Gum disease can increase the severity of diseases like heart disease and diabetes. See your dentist for a healthier you!

# EXPLANATION OF BENEFIT PAYMENTS
## THIS IS NOT A BILL



Blue Cross
Blue Shield
of Michigan

A nonprofit corporation and independent licensee
of the Blue Cross and Blue Shield Association

**Statement Date:   01/01/11**

## Helpful Information

Check your health IQ. Take BlueHealthConnection's free, online health assessment and learn a lot
about your health. When you answer questions on your health status, lifestyle and medical history,
you'll get a tailored action plan to help you reach your health goals. Visit bcbsm.com and log in to
Member Secured Services to get started. And don't forget to visit bcbsm.com/xtras to access our
Healthy Blue Xtras savings program. Some members may not have access to BlueHealthConnection or
other online tools.

## Detail on Services       Contract Number: 893164078       Patient: CATHE

| | |
|---|---|
| **Service Date**(From/To) : 12/08/10 | |
| **Claim Received on:** 12/14/10 | |
| **Provider Name:** REGENTS OF THE | |
| **Provider Status:** PARTICIPATING | |
| **Referring Provider:** | |
| **Service Type:** | |
| **Procedure:** | |
| **Procedure Code:** | |
| **Claim Number:** | |

| | |
|---|---:|
| Total Charge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | 103.00 |
| Amount approved by BCBSM for this service . . . . . . . . . | 74.62 |
| Minus copayment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . - | 10.00 |
| BCBSM processed on 12/14/10 and paid provider . . . | 64.62 |
| Savings because provider participates with BCBSM . . .  + | 28.38 |
| Total Covered . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | 93.00 |
| **Your Balance:** (Highlighted Amounts)   $ | 10.00 |