IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THE SHANE GROUP, INC. et al. ) | |
| ) | |
| Plaintiffs, on behalf of themselves ) | |
| and all others similarly situated ) | Case No. 2:10-cv-14360-DPH-MKM |
| ) | |
| v. ) | Judge Denise Page Hood |
| ) | Magistrate Judge Mona K. Majzoub |
| BLUE CROSS BLUE SHIELD ) | |
| OF MICHIGAN, ) | |
| ) | |
| Defendant. ) | |

# BLUE CROSS BLUE SHIELD OF MICHIGAN'S
# MEMORANDUM IN OPPOSITION TO
# <u>MOTION TO INTERVENE</u>

Thomas Van Dusen (P30602
Alan N. Harris (P56324)
Jason R. Gourley (P69065)
BODMAN PLC
201 South Division St., Suite 400
Ann Arbor, MI 48104
734-930-2482
aharris@bodmanlaw.com

Robert A. Phillips (P58496)
BLUE CROSS BLUE SHIELD OF
  MICHIGAN
600 Lafayette East, MC 1925
Detroit, MI  48226
313-225-0536
rphillips@bcbsm.com

Todd M. Stenerson (P51953)
D. Bruce Hoffman (Adm. E.D. MI, DC Bar 495385)
Neil K. Gilman (Adm. E.D. MI, DC Bar 449226)
Jonathan H. Lasken (Adm. E.D. MI, DC Bar 997251)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Ave., NW
Washington, DC  20037
202-955-1500
tstenerson@hunton.com

**TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES PRESENTED ................................................................ ii

CONTROLLING AUTHORITY ............................................................................. iii

TABLE OF AUTHORITIES ................................................................................... iv

BACKGROUND ...................................................................................................... 1

ARGUMENT ............................................................................................................ 3

    I.    The Motion to Intervene is Untimely ........................................................ 4

    II.    The Documents Should Not Be Unsealed ................................................ 6

    III.    The Fairness Hearing Should Not Be Adjourned .................................... 9

CONCLUSION ....................................................................................................... 11

# STATEMENT OF ISSUES PRESENTED

1. Should the Court allow an untimely request for intervention?

    BCBSM's answer:  **No.**

2. Should the Court unseal documents in this case that were marked confidential by parties and non-parties and filed under seal pursuant to a properly entered Protective Order?

    BCBSM's answer:  **No.**

3. Should the Court postpone the Fairness Hearing?

    BCBSM's answer:  **No.**

## CONTROLLING AUTHORITY

*Bailey v. White,* 320 Fed. App'x 364 (6th Cir. 2009)

*Seattle Times Co. v. Rhinehart,* 467 U.S. 20 (1984)

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*In re General Tire and Rubber Securities Litig.,* 726 F.2d 1075 (6th Cir. 1984)

Fed. R. Civ. P. 26(c)

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bailey v. White,*
   320 F. App'x 364 (6th Cir. 2009) .................................................................... 4, 5

*Baker v. Dolgen Corp.,*
   818 F. Supp. 2d 940 (E.D. Va. 2011) .................................................................. 7

*Geier v. Alexander,*
   801 F.2d 799 (6th Cir. 1986) ............................................................................... 9

*Gillard v. Boulder Valley Sch. Dist.,*
   196 F.R.D. 382 (D. Colo. 2000) .......................................................................... 6

*In re Cedant Corp.,*
   260 F.3d 183 (3d Cir. 2001) ................................................................................ 7

*In re Denture Cream Prods. Liab. Litig.,*
   No. 09-2051-MD, 2013 U.S. Dist. LEXIS 8114 (S.D. Fla. Jan. 18, 2013) .......... 9

*In re Gen. Tire and Rubber Secs. Litig.,*
   726 F.2d 1075 (6th Cir. 1984) ........................................................................... 10

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
   No. 07-md-01819CW, 2011 WL 5193479 (N.D. Cal. Nov. 1, 2011) .................. 8

*Press-Enterprise Co. v. Superior Court,*
   478 U.S. 1 (1986) ................................................................................................. 7

*R.C. Olmstead, Inc. v. CU Interface, LLC,*
   606 F.3d 262 (6th Cir. 2010) ............................................................................... 6

*Seattle Times Co. v. Rhinehart,*
   467 U.S. 20 (1984) ............................................................................................... 6

*Transamerica Life Ins. Co. v. Moore,*
   No. 10-14-DCR, 2011 WL 97786 (E.D. Ky. Jan. 12, 2011) ............................... 6

*Tri-County Wholesale Distribs. Inc. v. The Wine Group*,
   No. 10-4202, 2012 WL 2478357 (6th Cir. June 29, 2012) ................................. 7

## TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*UAW v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) ...................................................................................9

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995) ....................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24(a) and (b) ......................................................................................4

Fed. R. Civ. P. 26(c) ..................................................................................................6

The Motion to Intervene by 26 members of the *Shane* Settlement class ("Objectors") is an untimely and baseless attempt to disrupt a settlement that is supported by the overwhelming majority of Class Members. As detailed in Blue Cross Blue Shield of Michigan's ("BCBSM") Memorandum in Support of Final Approval of Class Action Settlement (Dkt 171), the 26 objectors and their counsel are involved in unrelated contentious litigation with BCBSM. Despite knowing about the Settlement for months, the Objectors never contacted Class Counsel in advance of the objection deadline to obtain the information they now claim is so crucial. That alone demonstrates that their efforts here are not about the merits of the Settlement, but, instead, are an attempt to impose litigation costs and distraction on BCBSM (and, perhaps, to obtain information for their unrelated litigation against BCBSM). The Court should reject the Objectors' attempt to derail the Settlement and deny the motion to intervene. Moreover, the Court should hold the Fairness Hearing on November 12, 2014, as the Class Members expect, so that payments can be made to those Class Members who have submitted claims and the Parties can obtain the closure for which they have bargained.

## BACKGROUND

September 24, 2014 was the opt-out deadline from the proposed Settlement. A total of four objections were filed. Three were *pro se* objections. (Dkts, 158, 159, and 160.) The fourth was filed by the Varnum law firm on behalf of 26 Class

Members (Dkt 161), all of whom were BCBSM self-insured customers. Neither the objection nor the Motion to Intervene mentioned it, but for more than three years, Varnum and these Objectors have been involved in litigation with BCBSM over issues unrelated to the issues in *Shane*.

The Objectors made many arguments, several of which were contradictory. For example, the Objectors argued that the Settlement amount was too low in light of Plaintiffs' likelihood of success on the merits, while, at the same time, they claim that they did not have enough information to evaluate the merits. (Dkt 161, at 16-17, 21.) As demonstrated by both BCBSM and Class Counsel, the Objectors could not refute the conclusion that the Settlement is fair, reasonable, and adequate. (Dkts 169 and 171.) More importantly for this motion, however, the Objectors filed their objection without ever seeking to learn more about the Settlement or the underlying claims. Before accusing Class Counsel of "colluding" with BCBSM, they never contacted Class Counsel to learn about the Settlement. Nor did they make any attempt to obtain access to the Court filings or underlying documents. Plainly, as BCBSM explained in its Final Approval brief, the objection was not really about the fairness of the Settlement.

After the objection was filed, Objectors' counsel contacted BCBSM's counsel to request access to certain filings that the Court had ordered should be filed under seal in their entirety, rather than with the confidential information

redacted. (*See* emails between Bryan Walters and Bruce Hoffman, dated October 6, 2014 through October 20, 2014 (attached as Ex. 1)).) The Objectors wanted unrestricted access to numerous pleadings, including for the lawyers most heavily involved in the Objectors' other cases against BCBSM with no restrictions placed on their use of the confidential information. (*Id.*) For example, the Objectors rejected an attorneys' eyes only proposal by BCBSM. (*Id.*) Because most of the confidential information in the documents belonged to third parties (primarily hospitals), neither BCBSM nor Class Counsel could provide the documents the Objectors wanted. Accordingly, BCBSM and Class Counsel agreed to produce redacted documents and undertook the time-consuming task of redacting the pleadings. (*Id.*) The documents were provided to Objectors' counsel on October 16, 2014. The Objectors then filed this motion.

## ARGUMENT

The motion to intervene should be denied because it is untimely and prejudicial. The request to unseal documents should be denied because it is untimely and violates the procedures set by this Court to seek access to confidential documents. The request to adjourn the Fairness Hearing should be denied because it is unfair to the parties and the other class members.

3

## I. The Motion to Intervene Is Untimely

The Objectors recognize that intervention should be denied where the motion to intervene is not "timely." (Br. at 6); *see* Fed. R. Civ. P. 24(a) and (b) (both intervention as of right and permissive intervention require a "timely motion"). Five factors govern the Rule 24 timeliness analysis: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice due to the proposed intervenors' failure to promptly intervene; and (5) the existence of unusual circumstances militating against or in favor of intervention. *Bailey v. White,* 320 F. App'x 364, 366 (6th Cir. 2009). The determination of whether a motion is timely is within the Court's discretion. *Id.*

Objectors' "analysis" of the timeliness of the motion consists of a single paragraph claiming that they have not delayed filing their motion and there would be no prejudice from allowing intervention. (Br. at 6-7.) Objectors' arguments are contradicted by the facts. This case has been extensively publicized for years. The Objectors knew long ago that they planned to object. Indeed, a document attached to their objection suggests that they planned the objection months ago. Dkt 161, Exhibit 5) In any event, they obviously started working on their filing well before the September 24, 2014, deadline. If the real purpose of intervention was to

4

"assess whether the proposed settlement fully and fairly represents their interests," (Br. at 3), they would have sought the documents **before** the deadline to object or opt out of the settlement. *See Bailey,* 320 F. App'x at 366 (intervention untimely when motion to intervene filed after notice was sent to class members).

That the Objectors waited until after the objection deadline speaks volumes as to their actual motive. As entities that are suing BCBSM, their obvious goal is to disrupt the Settlement, force BCBSM to expend unnecessary resources and, possibly, obtain information that can assist in their other cases. The Motion to Intervene is not just untimely, it is untimely by design. *See Bailey,* 320 F. App'x at 366-67 (intervention properly denied where "[t]here would have been prejudice to the parties if intervention were permitted because the settlement would have been disrupted").

Finally, unusual circumstances militate against intervention. This is a Settlement involving millions of Settlement Class Members, many of which are large, sophisticated entities. The only ones seeking to intervene are a handful of entities involved in other litigation against BCBSM.

The motion to intervene is untimely under the Sixth Circuit's test. The motion should be denied.

## II. The Documents Should Not Be Unsealed

Protective Orders like the one entered by the Court in this case (Dkt 47) are common in litigation. And they are perfectly appropriate.[1] The Court entered the Protective Order based on a showing (and its knowledge from the previously-filed DOJ case) that significant amounts of highly confidential information would be produced in this litigation. Significantly, this included not only the Parties' confidential information, but also information produced by non-parties, such as the 140 hospitals and numerous other insurance companies. The documents and testimony covered issues such as these entities' confidential negotiating strategies for hospital pricing. The Objectors' proposal that documents containing this information simply be dumped into the public record is unsupported and would cause significant harm to BCBSM and numerous non-parties.[2]

---

[1] *See* Fed. R. Civ. P. 26(c); *see also Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984) (Rule 26(c) confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required"); *Transamerica Life Ins. Co. v. Moore*, No. 10-14-DCR, 2011 WL 97786, at *2-3 (E.D. Ky. Jan. 12, 2011) (noting that "protective orders 'have been used so frequently that a degree of standardization is appearing'" and that "'blanket protective orders routinely are approved by courts in civil cases'") (citing *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 889 (E.D. Pa. 1981)); *Gillard v. Boulder Valley Sch. Dist.*, 196 F.R.D. 382, 386 (D. Colo. 2000); *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 269 (6th Cir. 2010) (concluding district court did not abuse its discretion in issuing protective order under Rule 26(c)(1)(G) denying access to defendant's trade secret information).

[2] The cases cited by the Objectors are not on point and do not cast any doubt on the common practice of courts entering Protective Orders like the one in this

Significantly, the Court provided a mechanism that the Objectors could have used to seek the documents they now claim to want. The Confidentiality Order has a specific provision entitled "Right to Seek Modification." (Dkt 47, at 9.) That provision allows any person to "seek modification of this Order, upon motion made pursuant to the rules of this Court." (*Id.*)

The Objectors could have, and should have, invoked this provision and made such a motion.[3] If the Court determined that the Objectors should be granted

---

case. Objectors misrepresent *Tri-County Wholesale Distributors* by citing the dissent. *Tri-County Wholesale Distribs. Inc. v. The Wine Group*, No. 10-4202, 2012 WL 2478357, at *24 (6th Cir. June 29, 2012). The majority in *Tri-County* did not even consider whether the protective order was appropriate, remanding to the district court for consideration. While the Court questioned in dicta whether the protective order in that case was appropriate, that just further demonstrates that the Objectors' argument that protective orders are *per se* impermissible is incorrect. *Id.* at 13. The other cases have nothing to do with the issues here. The Supreme Court in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13 (1986), narrowly held that the qualified First Amendment right of access to criminal proceedings applies to preliminary hearings. And the Third Circuit in *In re Cedant Corp.*, 260 F.3d 183 (3d Cir. 2001), addressed an equally narrow issue of the proper legal standard for granting a confidentiality order to seal bids to serve as class counsel. The Objectors quote *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) for the "strong weight to be accorded the right of public access," but ignore the Second Circuit conclusion that "the presumption [of public access] [was] weak" in that case and reversed the district court's unsealing of a section of the investigative report. *Id.* at 1052-53. Finally, in *Baker v. Dolgen Corp.*, 818 F. Supp. 2d 940, 945 (E.D. Va. 2011), the parties attempted to keep the settlement documents sealed, which is obviously not the case here.

[3] The Objectors do not suggest that the redacted information, much of which comes from third parties, is not confidential information properly labeled as such under the protective order.

access to the documents, the Court could have prevented competitors and others from seeing this highly confidential information by limiting access to and use of the documents. *See, e.g., In re Static Random Access Memory (SRAM) Antitrust Litig.,* No. 07-md-01819CW, 2011 WL 5193479, at *5 (N.D. Cal. Nov. 1, 2011) ("The Canadian plaintiffs do not seek to release the redacted information to the public. Instead, they intend only to use the information for purposes of litigating their actions in Canada and have agreed that their access should be contingent on their securing comparable protective orders in the Canadian courts.").

The Objectors may complain that they cannot now timely file such a motion. But this is their own fault. By waiting so long to seek the documents, they put themselves in this predicament. The Parties and non-parties who produced documents with the full expectation that their competitors and those with whom they negotiate would not be able to obtain and use these documents should not lose that protection because of the Objectors' tactical decisions.[4] *See SRAM,* 2011 WL 5193479, at *6 ("Among the goals furthered by protective orders is reducing

---

[4] As just one example, there is a section in Plaintiffs' Motion for Class Certification and Appointment of Class Counsel entitled "Priority Health." That section includes information produced by Priority, a non-party to this litigation that produced significant amounts of information in response to a subpoena. (*See* redacted version of motion attached as Exhibit D to the Objectors' Motion, at 19-21.) Priority invoked the Protective Order and designated its information confidential. The Objectors provide no basis for upsetting this expectation and making the information public.

conflict over discovery and facilitating the flow of information through discovery. Changing the ground rules later is to be avoided because protective orders that cannot be relied upon will not foster cooperation through discovery."); *see also In re Denture Cream Prods. Liab. Litig.*, No. 09-2051-MD, 2013 U.S. Dist. LEXIS 8114, *51 (S.D. Fla. Jan. 18, 2013) (concluding that P&G's reliance upon agreed Confidentiality Order in producing confidential documents, among other reasons, weighed in favor of keeping those documents sealed).

### III. The Fairness Hearing Should Not Be Adjourned

There is no basis to adjourn the hearing. The Objectors have filed their objection, the Parties have responded, and the Court has more than sufficient information to determine that the Settlement is fair, reasonable, and adequate. As the Sixth Circuit has held:

> a district court has wide latitude. It "may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision" and need not endow objecting class members with "the entire panoply of protections afforded by a full-blown trial on the merits." Objecting class members also do not have a vested "entitle[ment] to discovery." A district court, moreover, need grant objectors discovery only if they can make a colorable claim that the settlement should not be approved.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 635 (6th Cir. 2007) (citation omitted); *see also Geier v. Alexander,* 801 F.2d 799, 809 (6th Cir. 1986) ("To allow the objectors to disrupt the settlement on the basis of nothing more than their unsupported suppositions would completely thwart the

9

settlement process. . . . [U]nless the objectors have made a clear and specific showing that vital material was ignored by the District Court[,] [t]here is no need for the District Court to hold an additional evidentiary hearing on the propriety of the settlement."); *In re Gen. Tire and Rubber Secs. Litig.,* 726 F.2d 1075, 1084 n.6 (6th Cir. 1984) ("While objectors are entitled to "meaningful participation" in the settlement proceedings, and "leave to be heard," they are not automatically entitled to discovery or "to question and debate every provision of the proposed compromise"; question is "whether or not the District Court had before it sufficient facts intelligently to approve the settlement offer").

Adjourning the hearing would also be unfair to the Settlement Class Members who followed the rules of the Settlement, submitted claims and are entitled to receive payments. Those Settlement Class Members should not be penalized so that the Objectors can embark on their vendetta against BCBSM. The objection casts no doubt on the fairness and reasonableness of the settlement, let alone enough doubt to justify delaying the Fairness Hearing.

10

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Motion to Intervene.

November 3, 2014

/s/ Todd M. Stenerson
Todd M. Stenerson (P51953)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Ave, N.W.
Washington, D.C. 20037
(202) 955-1500
tstenerson@hunton.com
*Attorney for Defendant*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filling to all parties of record.

/s/  Todd M. Stenerson
Todd M. Stenerson
220 Pennsylvania Ave, N.W.
Washington, D.C. 20037
(202) 955-1500
tstenerson@hunton.com
*Attorney for Defendant*

November 3, 2014