

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

THE SHANE GROUP, INC. *et al.*,

Plaintiffs, on behalf of themselves and all others similarly situated,

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN,

Defendant.

Case No. 2:10-cv-14360-DPH-MKM

Judge Denise Page Hood

Magistrate Judge Mona K. Majzoub

# OBJECTOR'S RESPONSE TO PLAINTIFFS SUPPLEMENTAL SUBMISSION IN SUPPORT OF FINAL SETTLEMENT APPROVAL

Objector respectfully files this supplemental submission in response to Plaintiffs' brief filed a few days ago.

Class Counsel keeps making the same mistake over and over again when dealing with this objector. The Rule 11 twenty one day free look and 28U.S.C. $1927 sanction motion combined is in the hands of class counsel, per court rules. The missing emails, transcript and the real fee number counsel is willing to settle for that they blurted out on the call may be mentioned in that motion. Their fee claim amount sworn in their papers and stated to the Court at the Fairness hearing is bogus. After all the conniving, deceitfulness and fraud, why should counsel claim be surprised at a sanctions motion after the objectors raised it in their papers multiple times? Class counsel is so deep in a hole they continue digging for themselves the objector can hear an echo. The walls are starting to crack and heavy rains are almost here.

There are judges and district courts in this country that lawyers would never dare enter trying to obtain approval of even a settlement that is only a quarter as bad as this. The judges would laugh them out of their Court. This is such a case.

First a correction to an incorrect comment the objector made to the Court at the Fairness Hearing using the transcript pages below. Page 41 at number 5 attached. Objector incorrectly stated that "there is a rate of two percent, 25,000 people have filed claims out of three million." This is incorrect. The total was 30,000 people

filed a claim that represents just 1.1%, a huge mathematical difference. Again it's irrefutable proof of a colossal failure of the notice program, the administrator and class counsel regardless of how they try and spin it.

Attached please find a copy of a newsletter (Exhibit A) written by a administrator named Rust Consulting dated October 2014 that shows eight class action settlements (and there are more) that were rejected because the claims rates in those settlements were too low and they are all much, much, much higher than the 1.1% we have in this case. The objector has read in the past based on research the average for claims made settlement and it's a light year away from 1.1%. Approval should not be made. As objectors have written about and the Walter's objector brought up in more explicit detail any class members who defendant knows the damage amount should NOT have to file a claim, a check should automatically be sent to them.

The link for Exhibit A above is below.http://marketing.rustconsulting.com/acton/attachment/2165/f-012b/1/-/-/l-0e49/l-0e49:0/RustKinsella_WWN%20Increasing%20Judicial%20Attention.pdf

Page 62 attached at 16-23. Objector attempted to bring value to the class and a deal apparently was never in the works due to class counsel's double cross, as

evidenced by the fee motion counsel had the objectors create, so class counsel was misstating the truth all along. Objector is angry at being lied to and becoming entangled in a fraudulent document creation scheme. Objector followed the instructions of class counsel creating the document and court rules per the fee motion but class counsel continues to falsely claim they are not allowed to do this. Sorry, than judges all over the country in all circuits are wrong and these guys are right? Objector doesn't think so. It's nice that there is an email, paper trail and transcript on all this to be used in the sanction motion.

Page 63 attached at 13. A blatantly false statement to the Court. The fraudulent fee fee motion and disclosing the family connection were used and they came right out of that conversation! The words "before or after" were NEVER spoken. That means the fee motion request that the objectors created at their direction in the call and sent via email was never intended to "be clear" to counsel but rather created for the sole purpose of being used in a fraudulent scheme to include in their final papers. This was done solely to divert attention away from the objector's two dozen issues and make the objector the story, not the hideous settlement. The document is covered under the secrecy attorney client privilege but was used in a fraud set up gone bad.

The objectors will take credit for the $141,000.00 class counsel is graciously giving up to the class at the cost of an inflated $15.5 million in alleged "work." Objector can only assume it's because of us and we will continue to save the class money and/or put more money into the hands of claimants who right now have nothing because of the failed notice program. Counsels, tell the Court the real amount you are willing to accept to get the objectors to endorse the settlement and the objector will verify if the number provided is truthful.

Page 68 attached at 5-8. Mr. Miller is talking in double speak and either doesn't know it or is a "conflicted bully" himself. Look at this incredible statement that is as bad and atrocious as this settlement is. "no provision in the settlement for fees, expenses and awards." What lawyer writes such nonsense? By the way counsel, this objector is not serial; one objection each year for seven years hardly qualifies for that category. Counsels combined are all serial class action filers.

As far as the Nutella objection. Counsel should have brought that up ten weeks ago, they are a bit late as usual due to incompetence and this provides additional proof class counsel is inadequate and needs to be dismissed. They are so bad and have no clue how to negotiate which is why they left millions on the table.

That was the first time this objector ran across a lawyer doing the same thing these lawyers are doing in this case, but in that case there was no paper trail left by the lawyer and a fairness hearing with only one side speaking. Fortunately there is a detailed paper trail here.

Class Counsel and the objectors continue to prove that this settlement is not ready for prime time approval.

Thank you for your attention and consideration.

Case No. Case No. 2:10-cv-14360-DPH-MKM

Dated: December 12, 2014

*Christopher Andrews, objector,*

P.O. Box 530394

*Livonia, MI 48152-0394 E-mail caaloa@gmail.com Phone 1-248-635-3810*

Christopher Andrews

*I certify under penalty of perjury that the above and below information is true and accurate to the best of my knowledge, information and belief.*

I hereby certify that on this day I hand delivered foregoing to the Clerk of the Court, and served true and correct copies upon class counsel and defendants' counsel via US Post Office First Class Mail per the instructions in the detailed notice.

Clerk of Court, the United States District Court for the Eastern District of Michigan Southern Division, U.S. Courthouse 231 W. Lafayette Blvd. Detroit, Michigan 48226 Telephone number (313) 234-5005.

COHEN MILSTEIN SELLERS & TOLL PLLC 202-408-4600

Daniel A. Small

Brent W. Johnson

1100 New York Avenue, NW

Suite 500

Washington, DC 20005


HUNTON & WILLIAMS LLP 202.955.1500

Todd M. Stenerson

D. Bruce Hoffman

2200 Pennsylvania Ave, NW Washington, DC 20037

Christopher Andrews

*I certify under penalty of perjury that the above information is true and accurate to the best of my/our knowledge*, information, and belief.

The Shane Group etc. al v Blue Cross Blue Shield of Michigan Case No. 2:10-cv-14360-DPH-MKM

1         At this point, there is three million
2    Michiganders who have been supposedly overcharged on
3    medical services. That includes everybody in this room
4    who is from Michigan.
5         Right now, there is a rate of two percent,
6    25,000 people have filed claims out of three million.
7    That is a failure in the notice.
8         In fact, when you go back and read through
9    one of the class members who commented on Facebook this
10   week, 1100 members who said we think it is a joke,
11   talked about the fact when you call the administrator,
12   they were told they had to file one form for each child.
13   So out of those 25,000 claims that have been filed, they
14   could represent 8,000 households and there's three
15   people in each household. That is 25,000 right there.
16   So it is a failure.
17        The Court should not be able to approve this
18   based on how bad the notice that went out to the
19   classes. Those notices should be remailed out.
20        A second opt-out period also should be
21   included in that bail out. If we somehow come up with
22   the 118 million dollars worth of damages as evidence,
23   those opt-outs can then go to small claims court or
24   district court. At this point, no one can do anything.
25   We're all hamstrung here.



# What We've Noticed
ISSUE 4 / OCTOBER 2014

EXHIBIT "A"

## Increasing Judicial Attention to Claims-Filing Rates

Courts are increasingly focused on absent class member participation in class action settlements. In recent years, courts have cited low claims rates among the reasons for rejecting or reversing final approval of a settlement or for reducing plaintiff attorney fee awards.

Several examples of these cases appear below; please contact us for a more detailed list that includes additional cases. The claims rate—actual or anticipated—was not the sole dispositive factor in most of these decisions, but it was a significant focus of these courts. And as that focus among judges expands, it coincides with a time when it is much more difficult to get potential claimant's attention in a fragmented media universe or through a single direct communication, whether mailed or emailed.

| CASE | OUTCOME | ESTIMATED CLAIMS RATE |
|---|---|---|
| Van Horn v. Nationwide Property and Casualty Insurance Co., 2010 WL 1751995 (N.D. Ohio Apr. 30, 2010) | Awarded only slightly more than half of requested attorney fees | Class members (insureds) claimed $4 million of approximately $24 million settlement fund as of fairness hearing |
| Harris v. Vector Marketing Corp., 2011 WL 4831157 (N.D. Cal. Oct. 12, 2011) | Final approval denied | 13% of settlement fund (employment case) |
| Ferrington v. McAfee, Inc., 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) | Final approval denied | Parties stated 3-5% "would be a 'good claims rate'" |
| In re Apple iPhone 4 Products Liability Litig., 2012 WL 3283432 (N.D. Cal. Aug. 10, 2012) | Reduced attorney fees to only a little more than one-third the requested amount | 0.16-0.28% |
| In re Baby Products Antitrust Litig., 708 F.3d 163 (3d Cir. 2013) | Vacated and remanded settlement | Less than 10% of settlement fund |
| Pearson v. NBTY, Inc., 2014 WL 30676 (N.D. Ill. Jan. 3, 2014) | Awarded less than half requested attorney fees | 0.25% of 12 million proposed class members or 0.7% of 4.7 million direct notice recipients |
| Eubank v. Pella Corp., 753 F.3d 718 (7th Cir. 2014) | Reversed and remanded settlement approval | Less than 10% of trial court's valuation of the settlement, though Seventh Circuit believed that valuation to be too high; 5% of direct notice recipients filed claims |
| Redman v. RadioShack Corp., Nos. 14-1470, -1471, -1658, -1320 (7th Cir. Sept. 19, 2014) | Reversed and remanded settlement approval | 0.5% |

There are some cases where there will be a low claims rate regardless of the efforts made. However, in many cases, parties can make specific efforts to attempt to increase filing percentages:

- Your administrator can provide you with an initial estimated claims rate based on experience in multiple similar cases and also suggest claims processes and benefit structures — such as level of proof required, payment amounts, and other elements—that have yielded results in line with your goals.

- Your notice expert can provide guidance about not only what is necessary to satisfy due process and Rule 23, but also additional outreach and media opportunities that have proven successful at generating additional claims.

Please contact us to assist with these or other notice and administration challenges.


Belinda Macauley, Esq.
Vice President
Kinsella Media
202.686.4111
bmacauley@kinsellamedia.com


Tiffaney Janowicz, Esq.
Senior Vice President
Rust Consulting
612.359.2047
tjanowicz@rustconsulting.com



1       He says Aetna opted out. No, it didn't, it
2  brought its own case from day one. HAP did opt out but
3  that was wonderful news because one of the great
4  features of the settlement is there is no reduction for
5  opt-outs and HAP was one of the largest Class members.
6  So that increased the value of the settlement for Class
7  members quite frankly at least 20 percent, maybe more.
8       There is no dispute that this case is
9  complex, that we did a lot in discovery. The likelihood
10 of success, we obtained 25 percent of the Class members
11 for damages when the standard for antitrust is 5.35
12 percent to 28 percent. That is excellent. Especially
13 since we faced class certification fight, a 23(f) fight,
14 a Daubert challenge and defeating the inevitable Rule 56
15 opinion.
16      As it relates to Mr. Andrews, Mr. Andrews'
17 objection reveals itself as malicious. All you have to
18 do is see what he has written. Its mudslinging, it is
19 bullying. He is upset because we wouldn't pay him
20 $153,000. We wouldn't pay him because he didn't bring
21 any benefit to the Class. And we followed the rules
22 that you don't share attorney fees with non-lawyers and
23 we will never break that rule.
24      There is no dispute that even though he
25 calls this the worst settlement ever, he was willing to

give up all the objections to the settlement if we reduced our request for fees by 990,000 and paid him 153,000 for 50.

He says we abused confidentiality. Absolutely false. There was no attorney/client privilege once he announced his intention to object.

We had one telephone call with him, led by Mr. Gustafson, who did a great job, and he said in the call that this is a four-way call. Because he is not a lawyer, I pinned him to explain what that means and to make clear it is only what is in that call, nothing before, nothing after.

And we didn't use anything in that call in any of our submissions.

While he filed hundreds of pages, you only need to look at one e-mail, Your Honor, and that is what he sent to me on September 22nd, 2014, which is docket 169-16. And it says, quote:

> "No call means no I guess. After reviewing the 380 pages in this objection it will be posted to describe in an email news release sent out to 125 news organizations, congressional committees, public interest groups directing them to this objection. I will also send a letter to all judges in

of months. The parties were absolutely willing to walk away from settlement if they couldn't get a deal that they thought was reasonable. And it happened twice for months.

There are no separate deals in this settlement. We have heard about incentive awards, we've heard about expenses. Your Honor, the settlement provides for none of those. There is absolutely no guarantee, no provision in the settlement for fees, expenses or incentive awards. All of those are left to the Court's discretion. The Court is absolutely free to determine what a reasonable attorney fee is, what a reasonable disbursement of expenses is, and what reasonable incentive awards are. And whatever the Court determines on that will not affect the settlement. The settlement goes forward whatever the Court rules on those issues.

And I will say that far from Class Counsel profiting from this case in some way that should give the Court concern, the fee that we're asking for, if the Court awards what we're asking for, we view that a negative multiplier, less than the value of our time that we put into the case.

And finally, Your Honor, on the issue of whether there is any fraud or collusion here, Your