

January 12, 2014

Hand Delivery

Clerk of Court

The United States District Court

For The Eastern District of Michigan

Southern Division

U.S. Courthouse

231 W. Lafayette Blvd.

Detroit, Michigan 48226



|  |  |
|---|---|
|  | Courtroom of Judge Denise Page Hood |
|  | Case No. 2:10-cv-14360-DPH- MKM |
| The Shane Group, Inc. etc. al | Response Class Counsels Emergency Motion |
|  | Supplement to Mr. Miller's Submission |
|  | Supplement to Sanctions Motion |

Plaintiffs,

v. Blue Cross Blue Shield of Michigan,

Defendant,



Issue:

A. Is this Emergency Motion Necessary?

Answer: No.

B. Should class counsel be sanctioned for wasting this objector's time once again responding to a fake emergency motion?

Answer: Yes.

Class counsel received the email in question on January 8, 2014 at 8:40 am. They then filed an emergency motion thirty four long hours later. Had class counsel simply called the objector by dialing seven numbers twenty four hours a day or emailed for an explanation, this is how the conversation or written response from the objector would have went:

Class Counsel: "What do you mean by the last email?"

Objector: "Based on new findings the last two days you better pull those two poisoned documents because publicity about this case will start on Wednesday."

No reasonable thinking lawyer would jump to the conclusion the lawyers made up artificially to try and divert attention away for the Miller response and the Motion Sanction filed a few days earlier. By waiting all that time and filing the motion at 6:20 pm after business hours on a Friday night, knowing the objector can't file a

response until Monday morning shows it as a simple harassment filing. Class Counsel is grasping at straws to divert attention away from their horribly abominable proposed settlement along with multiple firms (so far) getting caught defrauding the class in its billing scheme as has been shown in the papers filed in the past and last week. Class Counsel's filing has now slowed the objector's audit of each firm seeking more ghost promotion billing scheme evidence so objector only had limited time to check one firm and found that firm did engage in this behavior with twelve more firms and their lawyers to go. Class counsel was successful in needlessly delaying this audit. This is why the Court needs to sanction class counsel immediately to stop wasting the objector's very valuable time.

Here is Class Counsel's email and objector's email response sent to counsel ten minutes after receiving a "courtesy" copy.

**Shane Group et al. v. Blue Cross, 10-cv-14360**



6:12 PM (30 minutes ago)
**Bell, Theo**

to me, Daniel, Dan, Fred

Mr. Andrews,

Attached is a courtesy copy of Class Counsel's Emergency Motion for Show Cause Order Relating to Sanctionable Conduct filed with the Court a short while ago.

Theodore Bell

---

**Theodore B. Bell, Esq.**

Wolf Haldenstein Adler Freeman & Herz LLC

55 West Monroe Street, Suite 1111

Chicago, IL 60603

Tel: (312) 984-0000

Fax: (312) 984-0001

---

Notice: This message is for addressee only and may contain privileged and/or confidential information. Any dissemination by anyone other than the intended recipient is strictly prohibited. If you have received this message in error, please delete immediately.

Attachments area

Preview attachment 206.pdf

6:22 PM (19 minutes ago)

| | |
|---|---|
| from: | caaloa <caaloa@gmail.com> |
| | "Bell, Theo" <tbell@whafh.com>, |
| | Dan Gustafson <DGustafson@gustafsongluck.com>, |
| | dhedlund@gustafsongluek.com, |
| to: | Daniel Small <dsmall@cohenmilstein.com>, |
| | "E. Powell Miller" <epm@millerlawpc.com>, |
| | isquith@whafh.com, |
| | caaloa <caaloa@gmail.com> |
| date: | Fri, Jan 9, 2015 at 6:22 PM |
| subject: | Re: Shane Group et al. v. Blue Cross, 10-cv-14360 |
| mailed-by: | gmail.com |
| : | Important mainly because of your interaction with messages in the conversation. |

0.81 GB (5%) of 15 GB used
Manage
©2015 Google - Terms - Privacy
Last account activity: 19 minutes ago
Details

Dear Counsel,

      Class counsel is so desperate. I am talking about the publicity you are about to receive in this and other cases that applicable counsel appears to have been engaging in questionable billing practices. You can call off your emergency motion and stop wasting my time and the Court's time.

Chris Andrews

End of email

The Oliver Group apparently belongs to the "ghost promotion inflated billing fraud scheme club" and has deleted the lawyer's bio and redirected it to Ms.Oliver's own bio in a failed attempt at a cover-up. Maybe she is obtaining advice from class counsel. This lawyer, NS, is named as a partner billing out at $595.00 per hour and based on his resume not a partner after being there a few years, an attorney for seven years and not worth $595.00 per hour. (Exhibit "A") (That firm's fee is in the supplement dated October 06, 2014 page 203.) (The objector copied the bio a a while ago assuming it would be deleted when the stuff hit the fan so to speak.) The Court should demand Ms Oliver explain the cover-up and sanction her too for wasting this objector's time uncovering this fraudulent cover-up. Ms. Oliver seems to have multiple law firms with her BAR address at a firm that is not the name and

address shown in the declaration that is billing the class for allegedly close to $200,000.00. Where does Ms. Oliver really work at? This finding brought about the email to Class Counsel.

The objector has only reviewed six out of the eighteen law firms using outside sources verifying the lawyers are at the level the heads of the law firms claim they are at. What is this now four out of six firms checked have job classification issues? This objector is disgusted and the selfish greed just never ends with these lawyers. Objector continues to audit all the firms in this case, their pending cases, like AIG, JP Morgan that settled last week, and all the cases class counsel has been involved in for the past five years looking for evidence of this past ghost promotion scheme and overbilling. Objector will pass on information to those objectors and appellants above and in future cases, gratis. This is obviously not the first case multiple counsels have engaged in these shenanigans, just the first time they got caught and they continue to do it in other pending cases.

Counsels' scheme shows a clear and present danger to the class that the settlement amount was compromised by the apparent fraud scheme that is taking place related to the fees and expenses. This behavior has poisoned this case and all of class counsel.

Class Counsel, remember those 125 media, governmental agencies and public interest groups, pro business groups est. that the objector referenced in the email you chose to disclose in your bid for bloated fees and expenses at the expenses of the class? Well due to counsels greed and evidence left behind there are now multiple stories to be told starting Wednesday going out to these organizations. Class counsel can explain its actions to those who may follow up on this story. The Committee on the Judiciary Administrative Oversight and the Courts will be most interested in this case since this objector has done business with them in the Lehman officer's case.

This objector made two very minor errors in the two motions filed a few days ago which can now be corrected thanks to this fake emergency motion:

First, in Mr. Miller's supplement for more undeserved money, Ms. Casey's billing rate of $525 an hour is not as much as Mr. Fieger's as the objector wrote about but rather is $125.00 an hour **more** than **he** can charge using the Michigan Bar Rate survey! All counsels' know they should have used this survey or something similar but chose to intentionally play ignorant hoping for a rubber stamp.

The particular Miller lawyer should have been billing at $300.00 an hour for an associate status but the "ghost promotion" to "partner" solely for billing purposes now artificially increases the rate to what they claim to a laughable $525.00 hourly

rate for the three cases shown. According to the Michigan Bar Survey that rate is still $125.00 an hour to high even at the top end of the scale for a partner. Attached Exhibit "B" from the Wells Fargo case shows the "associate" promoted to "partner" issue promotion. This exhibit attaches to Exhibit "B1" of the Miller response which is the lawyer's bio that was included in that fee petition in the Miller response filed a few days ago. (See date at top of the bio for a match.)

When you add up the number of hours charged at the too high a rate vs. what should have been charged for the proper job status (assuming Michigan Bar Rates) the one employee in just one firm in all three class action cases combined billed out for a potential overcharge of almost a $1,000,000.00 to the class's! The firm's entire fee should be forfeited in this case, the pending AIG case and refunded in the case they were already paid on. The same goes for the other firm's who engaged in this scheme.

Objector adds the following to the pending sanction motion filed a few days ago: Objector requests that Class Counsel withdraw the emergency motion as it is harassing, filed for no valid reason other than retaliation for objector's filings made a few days ago and again wasted the objector's time and money. Objector requests that the Court jettison this firm as well as being clearly inadequate to represent the best interests of the class. Objector requests reimbursement of time, eight hours at

$288.00 per hour, total $2,304.00 and expenses of $3.80, gas $5.64, for a total of $9.44, grand total $2,313.64 be added to the pending sanction motion.

The Court should demand all counsels provide a detailed breakdown using the attached example (Exhibit "C") as a guide to explain their hours and where they s were recorded. **The hours are recorded but that doesn't mean they were all needed!** Tranches say every four moths should be included. Why didn't each law firm use a spread sheet like this here? Maybe because they have so many fake hours to hide and by breaking it down as shown would make it a whole lot easier to see the inflated hours charged to the class for various sections of the litigation. The same breakdown should be done on the expense side especially the expert's $2,500,000.00 bill.

Counsel's harassment of the objector and diverting attention away from the issues over the past few months would have been better spent fixing this broken, decrepit proposed class action settlement that only benefits class counsel and just 1% of the seven million affected Michigander's. Why hasn't defense counsel objected to class counsel's behavior when a huge number of claimants are the defendants own customers? The defendant is secretly rooting for class counsel and/or case dismissal with prejudice. Shouldn't defense counsel report Class Counsel to the State Bar per BAR rules based on the evidence to date?

Class Counsel keeps making the same mistake over and over again dealing with this objector and wasting the objector's time and money and causing lost opportunity costs. They fail to realize and acknowledge the settlement has spun out of control and is becoming worse with every new response the objector files due to class counsels own filings. They underestimated this objector, won't repair the material issues and the damages caused because they are arrogant. Class Counsel can learn from this very, very appropriate parable below, maybe.

### The Monkey's Fist

Native tribes used to catch monkeys by hollowing out a coconut (later using a glass jar) and filling it with rice or other delicacies, then leaving it tethered to a tree for a monkey to find. A monkey would reach in and grab the desired delicacy and be trapped because the hole had been deliberately made just big enough for a flexible hand to enter but not for a closed fist to leave. In short order, the monkey went from getting his dinner to being someone else's dinner.

Clearly it was not the coconut that was the trapping the monkey. Rather the true trap was in the monkey's own mind, the monkey's **greed,** the monkey's attachment to his physical possessions, the monkey's unwillingness to "Let Go".

Thank you for your continued time and consideration.

Respectfully submitted,

Christopher Andrews

Case No. Case No. 2:10-cv-14360-DPH-MKM

Dated: January 12, 2015

*Christopher Andrews, Pro se objector*

P.O. Box 530394

*Livonia, MI 48152-0394 E-mail caaloa@gmail.com Phone 1-248-635-3810*

/s/ Christopher Andrews
Christopher Andrews

*I certify under penalty of perjury that the above and below information is true and accurate to the best of my knowledge, information and belief.*

/s/ Christopher Andrews
Christopher Andrews

I hereby certify that on this day I hand delivered foregoing to the Clerk of the Court, and served true and correct copies upon class counsel via email at the addresses below. Clerk of Court, the United States District Court for the Eastern District of Michigan Southern Division, U.S. Courthouse 231 W. Lafayette Blvd. Detroit, Michigan 48226 Telephone number (313) 234-5005.

COHEN MILSTEIN SELLERS & TOLL PLLC 202-408-4600 Daniel A. Small

Daniel Small <dsmall@cohenmilstein.com>,

Brent W. Johnson

1100 New York Avenue, NW

Suite 500

Washington, DC 20005

Gustafson Gluek Pllc

Canadian Pacific Plaza

120 South Sixth Street, Suite 2600

Minneapolis, MN 55402

Attention Daniel Gustafson <DGustafson@gustafsongluek.com>,

dhedlund@gustafsongluek.com,

The Miller Law Firm

950 West University Avenue, Suite 300

Rochester, MI 48307

Attention Mr. Miller E. Powell Miller" <epm@millerlawpc.com>

Wolf Haldenstein Adler Freeman & Herz, LLC

270 Madison Avenue

New York, New York 10016

Attention Fred Isquith isquith@whafh.comThe Shane Group etc. al v Blue Cross Blue Shield of Michigan Case No. 2:10-cv-14360-DPH-MKM

EXHIBIT "A"

# Alyson Oliver – Attorney | Managing Partner

With a multi-faceted career spanning over 14 years, Alyson Oliver's experience as a trial lawyer and managing partner of the Oliver Law Group P.C. has provided a solid foundation for handling intricate litigation. Oliver has thrived over the years on challenging courtroom battles and victories. As a dynamic trial lawyer, she is a diligent advocate for her clients. Oliver is skilled in all phases of litigation from the preparation and discovery phases through negotiations, hearings, and trials.

- See more at: http://legalbusinessnow.com/attorney-bios/alyson-oliver-attorney-managing-partner/#sthash.JNAkIiDk.dpuf

# Nick Suciu III – Attorney

Mr. Suciu joined the Oliver Law Group in March of 2012 and holds both his Juris Doctor and Masters in Business Administration. Prior to joining the Oliver Law Group, Mr. Suciu represented and provided General Counsel to several dietary supplement manufacturers and retailers. Mr. Suciu guided these companies through all aspects of their businesses including; FDA and FTC regulatory guidelines, employment guidelines, advertising and labeling, insurance and litigation issues.

Mr. Suciu's practice focuses on business consulting and litigation, with an emphasis on the dietary supplement and food industry, regulatory compliance.

In 2013, Mr. Suciu was recognized as a "Rising Star" by SuperLawyers Magazine.
For 2014, Mr. Suciu was again recognized as a "Rising Star" by SuperLawyers Magazine.

- See more at: http://legalbusinessnow.com/attorney-bios/nick-suciu-iii-attorney/#sthash.t4DzEuYR.dpuf

# Lisa M. Gray – Attorney

Lisa Gray is an attorney with Oliver Law Group. She practices with the firm's Class Action and Multidistrict Litigation section. Since joining the firm in January, 2013, Ms. Gray has represented clients and worked on cases involving product liability, premise liability, anti-trust, consumer protection, and employment law claims. Ms. Gray is also experienced with Municipal and Government Law, probate law, and business formation and contract services. Prior to joining Oliver Law Group, Ms. Gray held a variety of legal positions which included working as a Law Clerk for the United States Department of Interior, as a Policy Analyst for the Columbus

Chamber of Commerce, and as a Hearing Referee for the Michigan Tax Tribunal, Small Claims Division.

- See more at: http://legalbusinessnow.com/attorney-bios/lisa-m-gray-attorney/#sthash.kH3w3H0M.dpuf

## Alyson Oliver http://www.nwtla.org/members/AlysonOliver/

- Profile
- View

*Profile*

Name   Alyson Oliver

Firm   Oliver Law Group P.C.

City   Rochester

State   MI

Bio   Alyson Oliver is a senior partner at Kresch Oliver PLLC. Ms. Oliver specializes in multi-plaintiff litigation, class actions, labor and employment, civil rights, personal injury, bankruptcy and all phases of litigation.
Ms. Oliver obtained her Juris Doctorate Degree at the University of Detroit Mercy School of Law. She was admitted to the Michigan Bar in 1998, the U.S District Court in 2001 and the Sixth Circuit Court of Appeals in 2003 and admitted via pro hac vice motion and through the multi district litigation throughout many states.

### State Bar website:

Alyson Oliver—P55020 *(active and in good standing)*

**Oliver Law Group PC**
363 W Big Beaver Rd Ste 200
Troy, MI 48084   Map It

Phone: **(248) 327-6556**
Fax: (248) 436-3385
e-Mail: aoliver@oliverlg.com

Web: www.legalactionnow.com

vCard Electronic Business Card

Michigan Licensed: 05/12/1999

# A second address and business Kresch Oliver PLLC goes to 1-800-law firm

1-800-LAW-FIRM
26700 Lahser Road #400

# A third address

The Oliver Law Group (www.legalactionnow.com) | The ...
*legalactionnow.com/*

*Oliver Law Group* P.C. is a different kind of national law firm. One that focuses on the needs of the injured first. A compassionate law firm dedicated to fighting for ...

Google+ page · Be the first to review

950 West University Drive #200, Rochester, MI 48307
(800) 939-7878

# Ms. Oliver, is this your firm?

# Zimmer goes on offensive against lawyers

March 30, 2011

J.K. Wall

The Internet has been a boon for trial attorneys trying to find plaintiffs for class-action lawsuits. Now Warsaw-based Zimmer Inc. is taking the trial attorneys to court.

The maker of orthopedic implants filed suit in February to stop Detroit-area law firm Kresch Oliver PLLC from making allegedly false claims and using its trademarks on websites about one of Zimmer's knee-replacement implants, which is called NexGen.

On a website at www.zimmernexgenkneereplacement.com, Kresch Oliver highlights study results released in 2010 that showed 36 percent of patients with the NexGen implant suffered pain in their knees two years after the implant surgery. And 9 percent of patients had to have a repeat surgery because they experienced a loosening of the joint after receiving the NexGen implant.

But that's not the whole story, Zimmer retorted in a 30-page amended complaint in federal court in South Bend. The lawyers are citing only one study, of 108 surgeries conducted by two Chicago physicians, compared with about 3 million implanted since NexGen's launch in 1994.

Zimmer also made sure to note that the joint loosening experienced by some patients did not involve all parts of its NexGen products, but only one, called the CR-Flex Porous Femoral Component.

The case is still pending, but Zimmer seems to have gotten what it wanted. The websites maintained by Kresch have since hedged their claims and, on the site www.1800lawfirm.com, even included the counter-arguments from Zimmer's lawsuit.

Whether that spares the company a lawsuit is anyone's guess. There is no record in the federal courts nationwide of Kresch Oliver partners Ari Kresch or Alyson Oliver filing any lawsuits against Zimmer. A message left at Kresch Oliver was not returned.

But Zimmer is certainly motivated to cut off class-action lawsuits before they get rolling. Since 2008 it has set aside $179 million to settle claims that its Durom cup hip implant had a high failure rate, resulting in joint loosening and follow-up surgery.

The lawsuits came as Zimmer's sales were stagnating due to the recession. The company in January said it was launching a restructuring effort to reduce spending by more than $100 million a year. As part of that effort, the company confirmed to the *Wall Street Journal* this month that it will close a plant in South Carolina, putting 130 people out of work

> Finding the right attorney can be a difficult process. At some large firms your case won't receive the personalized attention it deserves. Lost in the shuffle, your case becomes one of many. Smaller firms can provide the personalized attention, but lack the resources necessary for a complex case.
>
> At Kresch Oliver, our skilled attorneys will fight for your rights. We are small enough to give you the personalized attention you deserve, but as a proud member of the 1-800-LAW-FIRM network we have access to all the resources you may need. With attorneys

who specialize in all areas of law, we can protect your rights regardless if it is a civil or criminal matter. Located in Southfield, Michigan our attorneys will proudly fight for your rights so that you get the justice you deserve.

**Specialties**

Bankruptcy, Product Liabilities, Social Security Disability Claims, Criminal Defense

- *Website*

  http://www.krescholiver.com

- *Industry*

  Law Practice

- *Type*

  Privately Held

- *Headquarters*

  Suite 305 Southfield, Michigan 48076 United States

EXHIBIT B

EXHIBIT 1 – B

*The City of Farmington Hills Employees Retirement System v. Wells Fargo Bank, N.A.*

## The Miller Law Firm, P.C. Lodestar Report

| Staff | Hours | Rate | Amount |
|---|---|---|---|
| **Attorneys** | | | |
| E. Powell Miller | 2,668.75 | $725.00 | $1,934,843.75 |
| Marc L. Newman | 285.75 | $695.00 | $198,596.25 |
| Sharon S. Almonrode | 3,094.40 | $725.00 | $2,243,440.00 |
| Ann L. Miller | 217.50 | $680.00 | $147,900.00 |
| Jayson E. Blake | 2,380.00 | $650.00 | $1,547,000.00 |
| Christopher D. Kaye | 3,001.50 | $575.00 | $1,725,862.50 |
| Melissa Wojnar-Raycraft | 12.50 | $425.00 | $5,312.50 |
| Emily E. Hughes | 41.25 | $525.00 | $21,656.25 |
| Casey A. Fry | 74.50 | $525.00 | $39,112.50 |
| Bartosz Kmiec | 544.25 | $425.00 | $231,306.25 |
| Brian C. Martin | 560.75 | $330.00 | $185,047.50 |
| Christiana M. Sayegh | 322.25 | $295.00 | $95,063.75 |
| Jane Gazman | 117.50 | $295.00 | $34,662.50 |
| Justin B. Vandeputte | 658.75 | $465.00 | $306,318.75 |
| Keith Treanor | 200.50 | $325.00 | $65,162.50 |
| Lauren E. Crummel | 478.50 | $355.00 | $169,867.50 |
| Lowell D. Johnson | 369.00 | $385.00 | $142,065.00 |
| M. Ryan Jarnagin | 1,041.00 | $465.00 | $484,065.00 |
| Mariell R. McLatcher | 923.58 | $425.00 | $392,521.50 |
| Mark Hermiz | 12.50 | $330.00 | $4,125.00 |
| Nancy Decker | 292.25 | $330.00 | $96,442.50 |
| Rick A. Decker | 2,231.80 | $425.00 | $948,515.00 |
| Steven Zehnder | 1,283.75 | $365.00 | $468,568.75 |
| **Subtotal:** | **20,812.53** | | **$11,487,455.25** |
| **Law Clerks/Legal Assistants** | | | |
| Shannon C. King | 36.50 | $275.00 | $10,037.50 |
| Amy S. Long | 4.50 | $175.00 | $787.50 |
| Amy A. Davis | 31.00 | $175.00 | $5,425.00 |
| Samantha S. Stenquist | 4.00 | $175.00 | $700.00 |
| Sarah Dahlin | 90.55 | $175.00 | $15,846.25 |
| Julia Moskwa | 54.50 | $175.00 | $9,537.50 |
| David Goodrich | 420.75 | $175.00 | $73,631.25 |
| **Subtotal:** | **641.80** | | **$115,965.00** |
| **Grand Total:** | **21,454.33** | | **$11,603,420.25** |

EXHIBIT "B"

(1) Investigations & Factual Research　　(5) Settlement
(2) Discovery　　(6) Class Certification
(3) Pleadings, Briefs (drafting, serving, filing & legal research)　　(7) Trial & Preparation
(4) Court Appearances & Preparation　　(8) Litigation Strategy, Analysis & Case Management

Partner (P)　　Associate (A)
Paralegal (PL)　　Law Clerk (LC)

| Name & Status | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | Current Hourly Rate | Total Hours This Period | Lodestar This Period |
|---|---|---|---|---|---|---|---|---|---|---|---|

TOTALS