# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SHANE GROUP, INC. *et al.*,<br><br>Plaintiffs, on behalf of themselves and all others similarly situated<br><br>vs.<br><br>BLUE CROSS BLUE SHIELD OF MICHIGAN,<br>Defendant. | Civil Action No. 2:10-cv-14360-DPH-MKM<br><br><br>Judge Denise Page Hood<br>Magistrate Judge Mona K. Majzoub |

## CLASS COUNSEL'S OPPOSITION TO
## OBJECTOR CHRISTOPHER ANDREWS' MOTION FOR SANCTIONS

## STATEMENT OF ISSUES PRESENTED

1.    Has Mr. Andrews provided any basis for sanctioning Class Counsel?

      Class Counsel's answer: No.

2.    Should Mr. Andrews pay Class Counsel's reasonable attorneys' fees in

      opposing this motion, given that the motion is meritless and part of an

      ongoing pattern of harassment?

      Class Counsel's answer: Yes.

## <u>CONTROLLING OR APPROPRIATE AUTHORITY</u><br><u>FOR RELIEF SOUGHT</u>

### Federal Authority

Fed. R. Civ. P. 11

28 U.S.C. § 1927

*Fenzel v. Group2 Software, LLC*,
     No. 13-cv-379, 2014 WL 7404575 (D. Md. Dec. 29, 2014)

*King v. IB Prop. Holdings Acquisition*,
     635 F. Supp. 2d 651 (E.D. Mich. 2009)

*Rentz v. Dynasty Apparel Indus., Inc.*,
     556 F.3d 389 (6th Cir. 2009)

*Ridder v. City of Springfield*,
     109 F.3d 288 (6th Cir. 1997)

*Selvy v. U.S. Dept. of Hous. & Urban Dev.*,
     198 F.R.D. 485 (E.D. Mich. 2000)

*United States v. Dakota*,
     197 F.3d 821 (6th Cir. 1999)

### State Authority

Mich. R. Prof. Conduct 1.6

## I.    INTRODUCTION

Christopher Andrews' Motion for Sanctions, Dkt. 205, is meritless and is designed solely to harass and burden Class Counsel, with the hope that they will pay Mr. Andrews to go away. For months, Mr. Andrews has threatened and harassed Class Counsel, and this motion is part of this pattern of misconduct. Mr. Andrews' baseless motion should be denied, and because the motion was filed for an illegitimate purpose, Class Counsel should be awarded their reasonable attorney's fees as provided by Federal Rule of Civil Procedure 11. Such an award would deter Mr. Andrews from further attempts (in this case and others) to coerce or extort money from class counsel.

## II.    FACTUAL BACKGROUND

In addition to his ten docketed filings,[1] Mr. Andrews has sent Class Counsel dozens of emails, many of them containing personal and professional threats and baseless accusations.

Mr. Andrews first contacted Class Counsel, via email, on September 2, 2014. *See* Joint Declaration of Daniel A. Small, Daniel E. Gustafson, Daniel C. Hedlund, and E. Powell Miller, etc. ("Joint Decl."), filed herewith, ¶ 3. Mr. Andrews stated that he was drafting an objection and offered to allow Class Counsel to review a rough draft to see if any of the issues it raised might be resolved.

---

[1] *See* Dkt. Nos. 159, 163, 172, 179, 193, 195, 202, 204, 205, and 207.

1

On September 8, 2014, Mr. Andrews emailed a rough draft of his objection to Class Counsel. Joint Decl. ¶ 4. In his email, Mr. Andrews made his objective clear, telling Class Counsel not to "take what was written as personal, **it's all business**." (Emphasis added). He offered to discuss the objection via email or phone, urging Class Counsel to explore compromise.

On September 12, Mr. Andrews proposed a "solution" in an email whereby counsel would "agree to reduce the attorney fee request by approximately $1,155.000." [2] Mr. Andrews offered to "provide additional details if you are interested." *Id.* ¶ 5. Pushing to get a date set for a meeting or call with counsel in which he could provide his additional details, Mr. Andrews sent Mr. Miller an email on September 17 suggesting that the Settlement was bad enough in his view to be "a story that is worthy of some publicity and a movie deal." *Id.* ¶ 7. Counsel and Mr. Andrews agreed to have a conference call on September 19. *Id.* ¶ 9. During the call, Class Counsel and Mr. Andrews both agreed to keep the negotiations during that telephone conversation – and that conversation only – confidential pursuant to Federal Rule of Evidence 408. *Id.* Class Counsel advised Mr. Andrews on the call that any settlement with Mr. Andrews would need to be disclosed to and approved by the Court. *Id.* ¶ 11.

---

[2] For ease of reading, Plaintiffs are not using "[sic]" markings for Mr. Andrews' emails. All grammatical errors are in the originals. In his September 12 email, Mr. Andrews meant $1,155,000.

2

Following the call, Class Counsel reiterated to Mr. Andrews in an email that "we fully expect that we would need a written demand/agreement that we could put before the Court to make sure there is no confusion about the terms and to make sure that we [have] full transparency before the Court and Class." *Id.* ¶ 12. Class Counsel also requested a written settlement agreement in order to "know what the exact details are so we can make clear choices." *Id.* That evening, a Friday night, Mr. Andrews emailed Class Counsel a pleading styled "Stipulation Withdrawing Objection." *Id.*¶ 13. The draft stipulation provided that Mr. Andrews would "acknowledge that the objections that he had set forth in his Objection have been appropriately and fully addressed," if Class Counsel reduced their attorney fee request by $990,000 and paid Mr. Andrews $153,450. *Id.*

The next business day, September 22, 2014, before Class Counsel had responded to Mr. Andrews' proposal, Mr. Andrews emailed Class Counsel to threaten a massive publicity campaign to damage Class Counsel's reputation, including by filing complaints with the State Bar and sending letters to all the Judges in the Eastern District of Michigan; and further warning that his demands had "changed and been substantially increased." In full, Mr. Andrews' email reads:

Dear Mr. Miller,

No call means no I guess. After reviewing the 380 pages in this objection it will be posted to Scribed[3] and a email news release sent out to 125 news organizations, congressional committees, public interest groups directing them to this objection. **I will also send a letter to all judges in this district** referring them to this objection so everyone will be able to see what a poster child of abuse this entire settlement is so no other class members will be victimized in future class action settlements. The goal is to get Plaintiffs Counsel dismissed as you already know, the demands have now changed and been substantially increased. This won't be a slam dunk like it was for your last two settlements in in the Detroit Federal Court. BAR complaints will also being filed. **You can also include this for the judge to see with all the other emails sent your way.**

Christopher Andrews

*Id.* ¶ 14 (emphasis added). Class Counsel subsequently rejected Mr. Andrews' proposed settlement. *Id.* ¶ 15.

Mr. Andrews then sent several more emails to counsel in an further effort to negotiate a payment for himself. *Id.* ¶ 16. He noted that he intended to appeal if the Court rejected his objections, and offered to have "a local lawyer make the same proposal" Mr. Andrews had made. *Id.* Mr. Andrews spoke with a Michigan lawyer, Dani Liblang. But Ms. Liblang advised Class Counsel's co-counsel that while she had been contacted by Mr. Andrews, she had not been retained by him in this matter. *Id.* ¶¶ 17-18. Mr. Andrews subsequently informed Class Counsel that

---

[3] Class Counsel believe this is a reference to Scribd, a popular online document repository.

4

"[t]here is no attorney representing the Andrews' objector group as of the moment . . . nor will there be one at the fairness hearing." *Id.* ¶ 21.

Mr. Andrews filed an eight-page objection to the Settlement on September 24, 2014, Dkt. 159. On October 2, 2014, Mr. Andrews advised that he would soon be filing a "supplement to the objection," and warned that the fairness hearing would be "standing room only and full of fireworks." *Id.* ¶ 19. On October 6, 2014, Mr. Andrews advised Class Counsel that he had filed his supplemental objection, stating that while "[n]othing in our call was used in the supplement," he had added additional "issues" from his "continued digging" and warned that "**[s]ome should prepare for a career change.**" *Id.* ¶ 20 (emphasis added).

Late on October 31, 2014, Mr. Andrews sent an email to Class Counsel in response to a motion to strike his "sur-reply" which Plaintiffs had filed that day. His email stated that Class Counsel had "opened Pandora's Box with that stunt" and "counsel risks losing everything at any time." *Id.* ¶ 23.

The Fairness Hearing on the Settlement in this case occurred on November 12, 2014.  The next day, Mr. Andrews emailed Class Counsel, accusing them of making false statements at the hearing and threatening to appeal in the event the Court granted final approval of the Settlement. Mr. Andrews also stated that if Class Counsel did not report themselves for alleged ethical violations, he would file ethics complaints. *Id.* ¶ 24.

On December 8, 2014, Mr. Andrews emailed Class Counsel, attaching a draft of a sanctions motion. *Id.* ¶ 26. The 58-page draft largely consisted of excerpts from treatises and similar sources. To the extent it discussed Class Counsel's conduct, it challenged only their purported statements on the September 19 conference call, their request for a written proposal from Mr. Andrews, their supposed disclosure of confidential information to the Court, and their filing of the motion to strike Mr. Andrews' sur-reply (Dkt. 177). In the cover email, Mr. Andrews threatened that he would file "BAR complaints" within days of filing the sanctions motion. *Id.*

On December 9, 2014, Liaison Counsel filed a Supplemental Submission in Support of Final Settlement Approval (Dkt. 200) to answer a question the Court raised at the Fairness Hearing unrelated to Mr. Andrews and to convey additional, recently discovered information about Mr. Andrews' long-standing pattern of harassing and extortionate settlement objections. Because Liaison Counsel inadvertently used an old signature block, Liaison Counsel filed a corrected version on December 10, 2014 (Dkt. 201). Other than the signature block, the corrected supplement is identical to the original. Liaison Counsel was unaware at the time that Mr. Andrews was not receiving ECF service, and Mr. Andrews was therefore not immediately served a copy. On December 12, 2014, Class Counsel

discovered the oversight and immediately caused a copy of the corrected supplement to be emailed to Mr. Andrews. *Id.* ¶ 27.

On December 13, 2014, Mr. Andrews emailed Class Counsel, again accusing Class Counsel of violating ethical rules and stating that he would be filing "BAR complaints asking for disbarment". *Id.* ¶ 28. Mr. Andrews also indicated that he was tracking other cases in which Class Counsel are involved. Referencing one Class Counsel's recently announced settlement in a case against AIG, Mr. Andrews said "Mr. Miller won't need to practice after his AIG payday, what about the rest of you?" *Id.* In a second email that day, Mr. Andrews insisted that Class Counsel withdraw the motion to strike they had filed nearly two months earlier. *Id.* ¶ 29.

On December 21, 2014, Mr. Andrews emailed Class Counsel, again threatening sanctions. He also stated, "I see one class counsel is dealing with another objection in another case, you may have your hands full at the appellate level. Objectors should always help each other out." *Id.* ¶ 30.

On January 6, 2015, Mr. Andrews filed his sanctions motion. His motion differs substantially from the draft he emailed to Class Counsel on December 8, covering several additional topics. Unlike the draft, the motion seeks sanctions for delay in filing the October 2, 2014 Notice Declaration, for the October 31, 2014 motion to strike sur-reply, for the December 9, 2014 supplemental memorandum,

7

and for the fee petition and a laundry list of other conclusory allegations. In the email by which he served Class Counsel, Mr. Andrews speculated that the Court may have contacted the FBI to investigate Class Counsel based on his filings. Mr. Andrews also speculated that the Court may rule after seeing his latest filing. Mr. Andrews concluded, "**If the Court does not act I can**. Since counsel likes to have cases follow me, this case will follow you." *Id.* ¶ 31 (emphasis added).

On January 8, 2015, Mr. Andrews emailed Class Counsel, stating:

In the event you are unaware of it the longer this drags on the worse it gets. **You are to withdraw the two documents by 5:00 pm Monday and have a check ready for me to pick up or be delivered by Tuesday 5:00 pm regardless of how the Court rules**. If not it will get much worse when I take further action starting on Wednesday. If you did nothing wrong in the past you have nothing to fear. On the other hand........

*Id.* ¶ 32 (emphasis added).

The following day, Class Counsel filed an Emergency Motion for Show Cause Order Relating to Sanctionable Conduct in response to Mr. Andrews' January 8, 2015 email. After Class Counsel served the motion on Mr. Andrews via email, Mr. Andrews replied, "Class counsel is so desperate.  I am talking about the publicity you are about to receive in this and other cases that applicable counsel appears to have been engaging in questionable billing practices. You can call off your emergency motion and stop wasting my time and the Court's time." *Id.* ¶ 33.

## III.  <u>ARGUMENT</u>

Mr. Andrews' motion is frivolous and procedurally deficient and is part of a pattern of making threats and abusing the legal process for personal financial gain. Accordingly, Mr. Andrews' motion should be denied and Class Counsel should be awarded their reasonable attorneys' fees incurred in defending the motion.

### A.    **Mr. Andrews' Motion for Sanctions Should Be Denied**

#### 1.    **Mr. Andrews' Motion Is Substantively Baseless**

Mr. Andrews seeks sanctions under Rule 11 and 28 U.S.C. § 1927.

"In this circuit the test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances." *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997). Despite Mr. Andrews' baseless allegations and inflammatory tactics, Class Counsel have conducted themselves reasonably and professionally throughout this litigation.

"An attorney is . . . sanctionable under § 1927 . . . at least when an attorney knows or reasonably should know that . . . his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 396 (6th Cir. 2009) (internal quotations omitted). Nothing Class Counsel has done has in any way obstructed Mr. Andrews'

objection. His objection is before the Court, and Mr. Andrews has had (and taken) every opportunity to present his claims.[4]

Although the sanctions motion is difficult to parse, Mr. Andrews appears to present five grounds for sanctions: (a) the Notice Regarding Effectuation of Notice Plan ("Notice") (Dkt. 162) was belatedly filed (Dkt. 205 at 13-14); (b) Class Counsel violated attorney-client privilege and/or a confidentiality agreement made in the September 19 conference call (*id.* at 10, 14-16); (c) Class Counsel induced Mr. Andrews to draft a document memorializing his proposed compromise (*id.* at 10, 21-22); (d) Class Counsel did not timely send copies of all filings to Mr. Andrews (*id.* at 18-20); and (e) Class Counsel generally committed fraud on the Court for the reasons suggested in Mr. Andrews's objections (*id.* at 23-25). None of these claims, either singly or jointly, has any merit.

### a.   Mr. Andrews Was Not Harmed by the Date on Which a Notice Was Filed

Mr. Andrews contends that, by filing the Notice (Dkt. 162) on October 2, 2014, rather than September 7, 2014, Class Counsel somehow caused Mr. Andrews

---

[4] The motion also invokes the Court's inherent authority, but does not suggest any conduct by Class Counsel that even arguably should be addressed through an exercise of that authority. *See, e.g.*, *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) ("[A] district court may award sanctions pursuant to its inherent powers when bad faith occurs. . . . In order to award attorney fees under this bad faith exception, a district court must find that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." (internal quotation marks omitted)).

"to again waste time and money responding to something that should have been
included in our September 24, 2014 submission." (Dkt. 205 at 14). Mr. Andrews
does not explain, however, how addressing the Notice in his October 6, 2014
supplemental objection, rather than in his September 24, 2014 original objection,
caused him to waste any time or money.[5] Further, Mr. Andrews' original objection
was a sparse and conclusory eight pages, designed as a placeholder while he still
hoped to negotiate a payment from Class Counsel. *See* Dkt. 159. Mr. Andrews has
not shown why that placeholder would have been any different had Plaintiffs filed
the Notice on September 7.

Mr. Andrews also complains that Class Counsel did not serve the Notice on
him directly. (Dkt. 205 at 18–19). But even if Class Counsel were obligated to
serve Mr. Andrews, he cannot explain how he has been prejudiced.  Mr. Andrews
clearly has followed the docket in this case closely, and in fact addressed the
Notice in his supplemental objection.

### b.    Mr. Andrews Falsely Accuses Class Counsel of Revealing Confidential Information

Mr. Andrews next claims that Class Counsel divulged information that was
either protected by the attorney-client privilege or that they agreed to keep secret.
To the contrary, no attorney-client privilege ever existed, and Mr. Andrews

---

[5] The 220-page supplement raised many issues beyond class notice, and clearly
would have been filed whether the Notice was filed on October 2 or September 7.

11

misrepresents the limited scope of confidentiality to which he and Class Counsel agreed.

No attorney-client privilege has ever attached to Mr. Andrews' communications with counsel.[6] From his first communication with Class Counsel, Mr. Andrews' interests have been adverse to Class Counsel's. Mr. Andrews has wanted Class Counsel to pay him a portion of any attorneys' fees awarded to them in this case. He sought to obtain such a payment first through negotiation and then, when that failed, by repeatedly threatening Class Counsel. Clearly, Class Counsel cannot represent, and have not represented, an individual who from the outset has sought to negotiate, and then extort, money from them. *See, e.g.*, *Fenzel v. Group2 Software, LLC*, No. 13-cv-379, 2014 WL 7404575, at *9 (D. Md. Dec. 29, 2014) ("No reasonable person who believes he is represented by counsel would expect to negotiate on his own behalf against his own counsel.").

Further, Mr. Andrews' interests have also been adverse to the parties Class Counsel have represented from the outset of this case: the named plaintiffs. Plaintiffs seek approval of the Settlement with Blue Cross, while Mr. Andrews opposes approval and has since he first approached Class Counsel. Similarly, Class Counsel believe the Settlement is in the best interests of the Settlement Class, *see* Dkt. Nos. 148 & 169, while Mr. Andrews does not. Class Counsel cannot represent,

---

[6] "The burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

and have not represented, a person who opposes the litigation objective of Class Counsel and their clients in this case. *See* Mich. R. Prof. Conduct 1.7; *see also, e.g.*, *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157 (3d Cir. 1984) (disqualifying counsel that had withdrawn from representing named plaintiffs to represent objectors).

Even if Mr. Andrews' communications were somehow confidential, Mr. Andrews waived any claimed confidentiality by expressly authorizing disclosure to the Court, stating "You can also include this [email] for the judge to see with all other emails sent your way." *Id.* ¶ 14. Similarly, Mr. Andrews' repeated assertions of fraud and other wrongdoing by Class Counsel vitiated any duty of confidentiality. *See* Mich. R. Prof. Conduct 1.6(c)(5) ("A lawyer may reveal . . . confidences or secrets . . . to defend the lawyer or the lawyer's employees or associates against an accusation of wrongful conduct.").

As to the conference call, the parties did agree that the negotiation terms discussed therein would be subject to confidentiality under Rule 408. But Class Counsel divulged nothing from that call prior to this opposition, and now only to defend themselves against the accusations in and relief sought by the sanctions motion. *See* Joint Decl. ¶ 10 .

Mr. Andrews claims that Class Counsel revealed two pieces of information that he divulged during the conference call. The first was that the three class

members and two estates he purports to represent on his objection are family members. (Dkt. 205 at 15). However, Class Counsel determined via their own investigation that the other class members Mr. Andrews purports to represent are related to him. Simple Google searches such as <christopher andrews eileen greenia> immediately bring up documents that identify the three individuals and two decedents as his family members. *See* Joint Decl. ¶ 10. The second alleged unauthorized disclosure is Class Counsel's claim that Mr. Andrews is in the business of objecting to class action settlements. But this claim has been based solely on his publicly documented actions rather than anything he told Class Counsel during the conference call. *Id.*

> ### c.  Mr. Andrews Falsely Accuses Class Counsel of Misleadingly or Fraudulently Inducing Him to Create a Document

Mr. Andrews also attacks Class Counsel for asking him to create a written document memorializing his proposed settlement of his objection. Mr. Andrews characterizes this as "fraud" and "trickery." (Dkt. 205 at 16). But Class Counsel requested it for the exact purpose they stated to Mr. Andrews: "we would need a written demand/agreement that we could put before the Court to make sure there is

no confusion about the terms and to make sure that we [have] full transparency before the Court and Class." *See* Joint Decl. ¶ 12[7]

Class Counsel's request for a document that could be "put before the Court" belies his protestation now that he thought the contents of his proposed Stipulation Withdrawing Objection would be "privileged and 'secret.'" (Dkt. 205 at 15). Mr. Andrews prepared the document in the form of a pleading to be filed with the Court.  *See id.* ¶ 13.  Moreover, the settlement reflected in the document was similar to the demand that Mr. Andrews had made to Class Counsel in a September 12, 2014 email, which he made before any conversation with Class Counsel and with no assurance of any confidentiality. *See id.* ¶ 5.  Further, the next business day after emailing the proposed stipulation to Class Counsel, Mr. Andrews wrote to Class Counsel that they could give the Judge "all the . . . emails sent your way." *See id.* ¶ 14. The record readily establishes that Mr. Andrews intended for his proposed Stipulation to be filed with the Court, with no expectation that it, or its terms, would be confidential.[8]

---

[7] Rule 23(e)(3) requires parties to "file a statement identifying any agreement made in connection with the [settlement] proposal."

[8] Mr. Andrews also complains that he retained a lawyer in service of trying to get the deal done. Class Counsel explicitly told Mr. Andrews that they could not advise him on whether to retain a lawyer, and the lawyer in question told Class Counsel's co-counsel that she had not, in fact, been retained.  *See* Joint Decl. ¶¶ 16-18.

15

### d.    Class Counsel Did Not Intentionally or Unreasonably Delay Service of Filings on Mr. Andrews

Mr. Andrews argues that Class Counsel should be sanctioned because they did not serve Plaintiffs' Supplemental Submission on the day it was filed by Liaison Counsel. (Dkt. 205 at 19). As explained above, Class Counsel immediately caused the supplement to be served on Mr. Andrews, just three days after it was filed with the Court, as soon as they learned of Liaison Counsel's oversight. Clearly, there was no prejudice to Mr. Andrews, who filed his response only three days after the Supplemental Submission was first filed.  Indeed, Mr. Andrews states that he accessed the Supplemental Submission via PACER on December 11, the day after it was filed. *Id.*

Mr. Andrews similarly demands sanctions because Mr. Miller's December 29 Corrected Fee Declaration (Dkt. 203) was not served on him. Again, Mr. Andrews presents no coherent argument for how he has been prejudiced by the timing, or content, of this filing. The Corrected Fee Declaration made minor corrections, solely to provide the Court with the most accurate information possible. Mr. Andrews also misapprehends the effect of this Declaration. Plaintiffs' Counsel's fee request remains the same; the only difference is that the negative lodestar multiplier changes by a fraction of a percent.[9]

---

[9] Mr. Andrews complains in response to the Corrected Declaration about the billing rates and titles of certain Miller Law Firm personnel. His critique fails to

### e.   Class Counsel Have Not Engaged in Illegal or Unethical Activity

Mr. Andrews accuses Class Counsel of engaging in numerous illegal acts, largely repeating his charges in his Supplemental Objection. (Dkt. 205 at 21–26). Mr. Andrews also accuses Class Counsel of perpetuating a "fraud on the court." *Id*. at 28–31. Mr. Andrews similarly makes conclusory and unfounded accusations that Class Counsel have violated civility principles, responsibilities to the Court, responsibilities to "other counsel," and Michigan Rules of Professional Conduct. *Id*. at 27–28. These accusations are conclusory, baseless, false, and improper. Class Counsel categorically and emphatically deny that such accusations have any basis in reality.

### 2.   Mr. Andrews' Motion is Procedurally Deficient

In addition to the substantive dearth of Mr. Andrews' motion, he has not complied with the safe harbor requirements of Rule 11. On December 8, 2014, Mr. Andrews emailed Class Counsel a draft of a sanctions motion. However, the draft differs greatly from Mr. Andrews' filed motion. The draft was 58-pages long, consisting almost exclusively of treatise excerpts and challenging only the alleged

---

recognize that Casey Fry was previously an Associate with The Miller Law Firm but was promoted to Partner in 2014, before taking an in-house counsel position. Amy Long likewise was previously a Legal Assistant/Paralegal and was promoted to Office Manager in 2014. In any event, these corrections are immaterial because, as noted, Class Counsel are not requesting more fees as a result of any of the corrections in the Declaration.

confidentiality breaches the creation of the proposed stipulation, and Class Counsel's October 31, 2014 motion to strike Mr. Andrews' sur-reply. The filed motion is considerably expanded. Whereas the draft motion essentially consisted of twelve quasi-substantive pages (discounting the lengthy quotations and excerpts), the filed motion demands sanctions for additional conduct such as the delay in filing the October 2 Notice (Dkt. 162), delayed service of the December 9 supplemental memorandum (Dkt. 200), and supposed misconduct in Class Counsel's fee petition. *See supra* at 7. Because Mr. Andrews did not serve a substantively similar motion on Class Counsel 21 days before filing it, he has failed to comply with the requirements of Fed. R. Civ. P. 11(c)(2).[10] Mr. Andrews' subsequent emails are also insufficient to satisfy Rule 11's safe harbor requirement.[11] Even if Mr. Andrews' motion had substantive merit, which it does not, it should still be denied as procedurally deficient.

---

[10] *See Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997) (holding that "sanctions under Rule 11 are unavailable unless *the motion for sanctions* is served on the opposing party for the full twenty-one day 'safe harbor' period *before* it is filed with or presented to the court" (emphasis added)). Allowing satisfaction of Rule 11's safe harbor requirement by service of a completely different motion for sanctions from the motion that is eventually filed would frustrate the purpose of the safe harbor provision.

[11] *See, e.g.*, *Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 14-3108, 2014 WL 7003762, at *3–4 (6th Cir. Dec. 12, 2014) (holding that formal service of a motion is required and that informal letters do not satisfy Rule 11's safe harbor requirement).

Mr. Andrews has also flouted Local Rule 7.1(d)(3)(A) requiring that the "text of a brief supporting a motion or response, including footnotes and signatures, may not exceed 25 pages." Mr. Andrews' 34-page brief not only exceeds 25 pages, it is longer than the limits for opening and reply briefs *combined*.

### B.   Mr. Andrews Should Pay Class Counsel's Reasonable Attorneys' Fees Incurred in Responding to This Motion

Mr. Andrews' objection was never made out of concern for the Settlement Class. It was made for one purpose: for Mr. Andrews to extract a payment from the settlement fund. Since it became clear that Class Counsel would not bow to Mr. Andrews' demands, Mr. Andrews has adapted his strategy in hopes of extracting a payment via sanctions and extrajudicial threats.[12]

All of Mr. Andrews' communications with Class Counsel fit the pattern of his attempting to coerce an unearned payment. However, his January 6 and 8, 2015, emails are especially telling. On January 6, Mr. Andrews warned Class Counsel that "[i]f the Court does not act I can." *See* Joint Decl. ¶ 31. Similarly, two days later, he demanded that Class Counsel pay him and withdraw certain pleadings

---

[12] Indeed, Mr. Andrews' hunger for money trumps his interest in consistency: In his supplemental objection, Mr. Andrews claimed that Class Counsel's rates were "intentionally inflated by 34.5%." (Dkt. 163-2 at 35). Mr. Andrews went so far as to propose reduced rates at values he deemed reasonable. *See* Dkt.163-3 at 45–50; Dkt. 164-4 at 1–17. Now, Mr. Andrews uncritically uses Class Counsel's rates as the basis for the sanction award that he seeks, even though he is not an attorney. (Dkt. 205 at 31–34). Class Counsel were and remain confident that their rates are reasonable. However, Mr. Andrews' views appear to change depending on whether he is asking to be paid based on Class Counsel's rates.

19

"regardless of how the Court rules." *See id.* ¶ 32.  Thus, Mr. Andrews now seeks to extract payment from Class Counsel based on the threat of consequences **totally unrelated to the merits of the Settlement or his objection**.

Additionally, Mr. Andrews has made overt and implied threats to inundate judges, file bar complaints, object in other cases in which Class Counsel are involved,[13] and otherwise assault Class Counsel's reputation, unless Class Counsel capitulate to his demands in the present case. Class Counsel have spent many hours responding to Mr. Andrews' baseless claims in this case; explaining their innocence in these many other venues would be an extraordinary burden.[14]

These are not the actions of someone who is interested in the best interests of the Class. These are the brazen and calculating acts of an individual who is abusing the legal process and making threats for his own pecuniary gain. Such conduct, especially when so transparent, should have consequences.[15]

---

[13] *Cf. In re Charles Schwab Corp. Sec. Litig.*, No. 08-cv-1510, 2011 WL 633308, at *2 (N.D. Cal. Feb. 11, 2011) (criticizing a serial objector who "stalks settlements in which [a particular law firm] is class counsel").

[14] Mr. Andrews may fall back on his lack of a law degree as a defense. But as the Seventh Circuit recently said about another *pro se* serial objector, "[d]espite [Mr. Andrews'] *pro se* status, he is an experienced litigator" and is not owed the "customary solicitude offered to pro se litigants." *Wong v. Accretive Health, Inc.*, No. 14-2191, 2014 WL 6888166, at *1 n.1 (7th Cir. Dec. 9, 2014). Indeed, Mr. Andrews' aggressive use of his *pro se* status—invoking supposed attorney-client privilege as a cloak to conceal his demands and making threats that could get an attorney disbarred—renders him even more insidious than a represented objector.

[15] *See, e.g., Gemelas v. Dannon Co., Inc.*, No. 08-cv-236, 2010 WL 3703811, at *3 (N.D. Ohio Aug. 31, 2010) ("Serial objectors . . . should not be encouraged to

"If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). Given the vexatious, harassing, and baseless nature of Mr. Andrews' motion, and his continuing pattern of making threats in bad faith, an award of attorneys' fees against Mr. Andrews is warranted. *See King v. IB Prop. Holdings Acquisition*, 635 F. Supp. 2d 651, 661 (E.D. Mich. 2009) ("*Pro se* plaintiffs are not exempt from Rule 11 sanctions simply because they are not represented by counsel."); *Selvy v. United States Dept. of Hous. & Urban Dev.*, 198 F.R.D. 485, 487 (E.D. Mich. 2000) (sanctioning *pro se* individual who made filing containing "groundless accusations" and "ludicrous assertions").

This Court has an opportunity to change the financial calculus of Mr. Andrews and others, so that he and others will think twice before engaging in a campaign of harassment and threats with the sole objective of getting paid to go away. If the Court agrees, and at the Court's direction, Class Counsel will submit a statement of the lodestar incurred responding to Mr. Andrews' motion.

---

continue holding up valuable settlements for class members . . . ."); *In re Initial Public Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) ("[P]rofessional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves . . . ."); *In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) ("[T]here are public policy reasons to prevent frivolous objectors from threatening to hold up class distributions."); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Penn. 2003) ("Federal courts are increasingly weary of professional objectors.").

21

IV.    **CONCLUSION**

Mr. Andrews' motion lacks any merit and should be denied. Because his motion is part of a pattern of harassment designed to extort money from Class Counsel, they should be allowed to recover their reasonable attorneys' fees incurred in responding to the motion.

Dated: January 20, 2015                     Respectfully submitted,

                                            /s/ David H. Fink
                                            David H. Fink (P28235)
                                            Darryl Bressack (P67820)
                                            **FINK + ASSOCIATES LAW**
                                            100 West Long Lake Rd, Suite 111
                                            Bloomfield Hills, MI 48304
                                            Telephone: (248) 971-2500
                                            dfink@finkandassociateslaw.com

                                            *Interim Liaison Counsel*

                                            Daniel E. Gustafson
                                            Daniel C. Hedlund
                                            Daniel J. Nordin
                                            **GUSTAFSON GLUEK PLLC**
                                            Canadian Pacific Plaza
                                            120 South Sixth Street, Suite 2600
                                            Minneapolis, MN 55402
                                            Telephone: (612) 333-8844
                                            dgustafson@gustafsongluek.com
                                            dhedlund@gustafsongluek.com
                                            dnordin@gustafsongluek.com

                                            Daniel A. Small
                                            Brent W. Johnson
                                            Jeffrey B. Dubner
                                            **COHEN MILSTEIN SELLERS
                                            & TOLL PLLC**

22

1100 New York Avenue, NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
dsmall@cohenmilstein.com
bjohnson@cohenmilstein.com
jdubner@cohenmilstein.com

E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan  48307
Telephone: (248) 841-2200
epm@millerlawpc.com

Fred T. Isquith
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
270 Madison Avenue
New York, New York, 10016
Telephone: (212) 545-4690
isquith@whafh.com

Theodore B. Bell
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Telephone: (312) 984-0000
tbell@whafh.com

*Interim Class Counsel*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 20, 2015, I electronically filed *Class Counsel's Opposition to Objector Christopher Andrews' Motion for Sanctions* with the Clerk of the Court using the ECF, who in turn sent notice to the following:

**Attorneys for Defendant - Blue Cross Blue Shield of Michigan:**

Todd Stenerson: tstenerson@hunton.com
Bruce Hoffman: bhoffman@hunton.com
Ashley Cummings: acummings@hunton.com
Neil Gilman: ngilman@hunton.com
Jack Martin: martinj@hunton.com
Jonathan Lasken: jlasken@hunton.com

Carl T. Rashid:
crashid@bodmanlaw.com
Jason R. Gourley:
jgourley@bodmanlaw.com

**Attorneys for Aetna Inc.:**

Joshua Lipton: jlipton@gibsondunn.com
Dan Matheson:
DMatheson@gibsondunn.com
Veronica Lewis: vlewis@gibsondunn.com
Sarah Wilson: sawilson@gibsondunn.com
Cara Fitzgerald:
CFitzgerald@gibsondunn.com

Additionally, I served a copy of this filing upon Christopher Andrews via electronic mail.

/s/ David H. Fink_____
David H. Fink

24