## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| THE SHANE GROUP, INC., *et al.*,<br><br>Plaintiffs, on behalf of themselves and all others similarly situated,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF MICHIGAN,<br><br>Defendant. | Civil Action No. 2:10-cv-14360-DPH-MKM<br><br><br><br>Judge Denise Page Hood<br>Magistrate Judge Mona K. Majzoub |

## JOINT DECLARATION OF DANIEL A. SMALL, DANIEL E. GUSTAFSON, DANIEL C. HEDLUND, AND E. POWELL MILLER IN SUPPORT OF CLASS COUNSEL'S OPPOSITION TO OBJECTOR CHRISTOPHER ANDREWS' MOTION FOR SANCTIONS

We, Daniel A. Small, Daniel E. Gustafson, Daniel C. Hedlund, and E. Powell Miller, declare as follows:

1.　We are Class Counsel in the above-captioned action. The court appointed our firms interim class counsel for the putative class on May 29, 2012, and class counsel for the Settlement Class on June 26, 2014. We each have personal knowledge of the information set forth below.

2.　Christopher Andrews has objected to the settlement in this case. He is a non-lawyer who has also objected to settlements in several other cases. In 2012,

the court in *In re Nutella Marketing and Sales Practices Litigation*, No. 11-cv-01086 (D.N.J.) found that "Mr. Andrews, no surprise to anyone, appears to be a professional objector who has extorted additional fees from counsel in other cases through his objections or threats to object, and has as well based upon a submission made to this Court done so in this case."

3.      None of us had any contact with Mr. Andrews before he sent an email to Mr. Miller on September 2, 2014. His email (attached as Exhibit A) advised that he was preparing an objection to the settlement, and he offered to hand-deliver a draft to Mr. Miller's office so that counsel could see whether any of the issues raised therein might be resolved. Mr. Andrews sent another email (attached as Exhibit B) the same day advising that he would drop off a rough draft which would be approximately 100 pages long with about 6-7 exhibits.

4.      On September 8, 2014, Mr. Andrews emailed a draft of his objection to Mr. Miller and advised that the objection would be filed with the court in 14 days. The cover email said "not [to] take what was written as personal, it's all business" and encouraged counsel to "explore[]" "compromise." This email is attached as Exhibit C.

5.      On September 12, 2014, Mr. Andrews emailed Mr. Miller with a purported "solution." Specifically, Mr. Andrews wrote: "I want counsel to voluntarily agree to reduce the attorney fee request by approximately $1,155.000

2

[sic]." In return, Mr. Andrews offered to "revise the objection to assist you with it's [sic] passage assuming the Court approves the motion." He stated that he could "provide additional details if you are interested." This email is attached as Exhibit D.

6.     Mr. Miller responded that day with an offer to meet "to discuss our respective views." Mr. Andrews accepted the invitation and agreed to meet on any day. The email chain containing this conversation is attached as Exhibit E.

7.     On September 17, 2014, in an email to Mr. Miller, Mr. Andrews expressed his view of the settlement that "some will end up with nothing and the rest might split $5 million, maybe. This is a story that is worthy of some publicity and a movie deal." This email is attached as Exhibit F.

8.     On September 18, 2014, Mr. Andrews sent another email to Mr. Miller, stating "I do realize the judge could dismiss this entire objection but the cost benefit analysis does not seem to work in Plaintiffs' counsel's favor." This email is attached as Exhibit G.

9.     A call between counsel and Mr. Andrews was set for September 19, 2014, to discuss the "additional details" Mr. Andrews had alluded to. The four of us participated in the call for Plaintiffs. At the outset of the call, Mr. Gustafson asked Mr. Andrews to agree that we all would keep the call confidential pursuant to Federal Rule of Evidence 408, and Mr. Miller clarified that the agreement of

confidentiality would only apply to that call, and not to communications before or after the call. Mr. Andrews agreed. Counsel agreed to consider the proposal Mr. Andrews made on the call.

10.    Mr. Andrews accuses us of breaching Rule 408 confidentiality by disclosing that he is in the business of objecting to class action settlements. None of us recalls Mr. Andrews saying that on the September 19 call. In any event, Mr. Andrews has created a public record of his activities as a serial objector, as our filings demonstrate, belying any notion that such information is confidential or that we relied on anything other than the public record. Mr. Andrews also claims that we learned in this call that the other individuals joining his objection are family members and used that information to oppose his objection. Again, however, we relied on the public record, which readily demonstrates that Mr. Andrews' co-objectors are family members and that such information is not confidential. *See, e.g.*, http://deathnotices.michigan.com/view-single.php?id=225489 (last accessed Jan. 12, 2015) (attached as Exhibit H).

11.    At the time of this call, there was a divergence of views among Class Counsel as to whether to attempt to negotiate a resolution of Mr. Andrews' objection. None of us viewed the objection as having any merit, but some were interested in exploring a nuisance settlement, while others believed that there was no way to structure a deal that ethically would permit Class Counsel to pay Mr.

4

Andrews any money.  All lawyers on the call were in agreement that if there were a settlement with Mr. Andrews, it would need to be disclosed to and approved by the Court, and Mr. Gustafson so advised Mr. Andrews on the call.

12.     Following the call, Mr. Gustafson emailed Mr. Andrews on September 19, 2014 to reiterate that "we would need a written demand/agreement that we could put before the Court to make sure there is no confusion about the terms and to make sure that we [have] full transparency before the Court and Class." The email thus requested that Mr. Andrews give counsel "a written demand and proposed settlement agreement."  This email, sent at 12:56pm, is included in an email chain attached as Exhibit I.

13.     Later that same day, Mr. Andrews sent his proposal in the form of a pleading with the case caption entitled "Stipulation Withdrawing Objection."  The form of the pleading, together with counsel's insistence that any deal must be disclosed to and approved by the Court, made it clear to Class Counsel that Mr. Andrews prepared the Stipulation for filing with the Court with no intention that it be kept confidential.  The draft pleading recited that Plaintiffs' Counsel had agreed to reduce their attorney fee request by $990,000, and that contingent on the Settlement being approved by the Court, Plaintiffs' Counsel agree, subject to Court approval, to pay $153,450 to Mr. Andrews from any attorney fee award they received in the case.  The stipulation further provided that in return for this

5

payment, Mr. Andrews would withdraw his objection. This proposed stipulation is attached, beginning on page five of Exhibit I.

14.    On September 22, 2014, before Class Counsel responded to Mr. Andrews' proposal, Mr. Andrews wrote to Mr. Miller advising that he would post his 380-page objection online, send an email news release to "125 news organizations, congressional committees, public interest groups directing them to this objection," and send a letter to all judges in the district referring them to the objection. Mr. Andrews' email also advised that his "demands have now changed and been substantially increased," that the "goal is to get Plaintiffs Counsel dismissed," and that "BAR complaints will also being [sic] filed." He concluded his email by stating that "[y]ou can also include this for the judge to see with all the other emails sent your way." This email is attached as Exhibit J. In full, the email read:

> Dear Mr. Miller,
>
> No call means no I guess. After reviewing the 380 pages in this objection it will be posted to Scribed and a email news release sent out to 125 news organizations, congressional committees, public interest groups directing them to this objection. I will also send a letter to all judges in this district referring them to this objection so everyone will be able to see what a poster child of abuse this entire settlement is so no other class members will be victimized in future class action settlements. The goal is to get Plaintiffs Counsel dismissed as you already know, the demands have now changed and been substantially increased. This won't be a slam dunk like it was for your last two settlements in in the Detroit Federal Court. BAR complaints will also being filed. You can also include this for the judge to see with all the other emails sent your way.

Christopher Andrews

15.     Class Counsel rejected Mr. Andrews' proposal later that day.  Class Counsel reminded Mr. Andrews that "the deadline is Wednesday to file objections and the process/rules for doing so are set out in the Notice and on the website."  In response, Mr. Andrews advised Mr. Gustafson that he would file his objection the next day.  The email chain depicting this conversation is attached as Exhibit K.

16.     However, Mr. Andrews then attempted to keep the negotiation going by inquiring of Mr. Gustafson that same day whether Class Counsel would accept his proposal if it were made instead by "a local lawyer"?  Class Counsel understood this request to be an effort by Mr. Andrews to use a lawyer as an intermediary to transfer all or most of a payment from Class Counsel to him, to make it appear that Class Counsel were not sharing attorney fees with a non-lawyer. Mr. Andrews also indicated that he planned to appeal any approval. The email chain regarding Mr. Andrews' multiple inquiries related to retaining counsel is attached as Exhibit L.

17.     The next day, September 23, 2014, Mr. Andrews gave Mr. Gustafson the contact information for Michigan attorney Dani Liblang.  The email chain containing this information is attached as Exhibit M.

18.     At Class Counsel's request, their co-counsel in this case, Alyson Oliver, contacted Ms. Liblang.  Ms. Oliver reported to Class Counsel that while Mr.

7

Andrews had contacted Ms. Liblang, she did not consider herself to have been retained by him. We have had no further contact with Ms. Liblang in this case, and Mr. Andrews filed his objection with the Court the following day, September 24, 2014.

19.     On October 2, 2014, Mr. Andrews wrote to Mr. Gustafson announcing that he was preparing a supplement to his objection and describing his objection as "a masterpiece." He said that he would see Mr. Gustafson at the fairness hearing, which "[s]hould be standing room only and full of fireworks." This email is attached as Exhibit N.

20.     After filing his supplement, Mr. Andrews wrote to Mr. Gustafson that "[a]pproval [of the Settlement] is off the board forever. Some should prepare for a career change." This email is attached as Exhibit O.

21.     On October 13, 2014, Mr. Andrews wrote to Mr. Gustafson that "[t]here is no attorney representing the Andrews' objector group as of the moment . . . nor will there be one at the fairness hearing." This email is attached as Exhibit P.

22.     On October 24, 2014, after receiving service of Plaintiffs' final approval papers, Mr. Andrews wrote to a paralegal in Mr. Gustafson's firm that "[y]ou guys are desperate, are now in much bigger trouble then [sic] before and will realize that when you see the sur-reply that will be filed on Monday or

Tuesday." He added that "[y]ou guys are beat and new counsel will replace you sooner or later." This email is attached as Exhibit Q.

23.     On October 31, 2014, Mr. Small contacted Mr. Andrews to request concurrence in Plaintiff's motion to strike Mr. Andrews' sur-reply, as required by Local Rule 7.1(a). Mr. Andrews did not concur, and then, after Plaintiffs filed their motion, informed Mr. Small that Class Counsel had "opened Pandora's Box with that stunt" and "counsel risks losing everything at any time." The email chain depicting this conversation is attached as Exhibit R.

24.     On November 13, 2014, the day after the fairness hearing in this case, Mr. Andrews wrote to advise, among other things, that "[w]e are waiting to hear that counsel's [sic] have self reported. If we don't hear soon we will start to file complaints based on the severity of each counsel in breaching the secrecy pledge which was also violated at the fairness hearing." This email is attached as Exhibit S.

25.     The following day, Mr. Andrews emailed again to say that there was "[n]o need to respond until after the order comes down." This email is attached as Exhibit T.

26.     On December 8, 2014, Mr. Andrews sent Class Counsel a draft of a sanctions motion with the subject line in the cover email of "21 day countdown to sanction motion filing begins now." The email stated that "BAR complaints will

also be filed within days after that." This email and the draft motion are attached as Exhibit U.

27.     Liaison Counsel filed a Final Approval Supplement on December 9, 2014 and a Corrected Final Approval Supplement on December 10, 2014, and emailed a courtesy copy of the latter to Mr. Andrews on December 12, 2014. This email is attached as Exhibit V. Mr. Andrews claims in his Sanctions Motion that he emailed Class Counsel on December 12, prior to the courtesy copy being sent, but we have not found such an email in our records.

28.     On December 13, 2014, Mr. Andrews again threatened to file "BAR complaints" against Class Counsel, this time specifying that they would seek disbarment. His email ended with the question: "Mr. Miller won't need to practice after his AIG payday, what about the rest of you?" This email is attached as Exhibit W.

29.     Later that day, Mr. Andrews sent Class Counsel another email, insisting we withdraw the Motion to Strike we had filed on October 31, 2014. This email is attached as Exhibit X.

30.     On December 21, 2014, Mr. Andrews sent another email, repeating his threat of a sanctions motion and concluding with "I see one class counsel is dealing with another objection in another case, you may have your hands full at the

appellate level.  Objectors should always help each other out." This email is
attached as Exhibit Y (cited portion can be found on page two).

31.  On January 6, 2015, Mr. Andrews served counsel with his sanctions
motion and a response to a filing by The Miller Law Firm.  In the cover email, he
stated that "[m]aybe the Court took my advise [sic] and brought in the FBI based
on what has been filed to date and the fact there is no decision after fifty seven
days.  If the Court hasn't done that yet it might after seeing these two filings.  If the
Court does not act I can.  Since counsel likes to have cases follow me, this case
will follow you." This email is attached as Exhibit Z.

32.  On January 8, 2015, Mr. Andrews sent an email to Class Counsel.
The body of the email, which is attached as Exhibit AA, reads as follows:

> Dear Class Counsel,
>
> In the event you are unaware of it the longer this drags on the worse it gets.
> You are to withdraw the two documents by 5:00 pm Monday and have a
> check ready for me to pick up or be delivered by Tuesday 5:00 pm
> regardless of how the Court rules.  If not it will get much worse when I take
> further actions starting on Wednesday.  If you did nothing wrong in the past
> you have nothing to fear.  On the other hand........
>
> Chris Andrews

33.  On January 9, 2015, in response to Class Counsel's Emergency
Motion for Show Cause Order Relating to Sanctionable Conduct, Mr. Andrews
emailed Class Counsel, stating that "the publicity" that Class Counsel "are about to
receive in this and other cases" is that "applicable counsel appears to have been

11

engaging in questionable billing practices." Mr. Andrews instructed Class Counsel to "call off your emergency motion and stop wasting my time and the Court's time." This email is attached as Exhibit BB.

34.     Mr. Andrews has accused us in the past of selectively disclosing his emails to the Court. This declaration traces the more salient communications between Class Counsel and Mr. Andrews, which all occurred by email.  But to eliminate any doubt, we attach, as Exhibit CC, the rest of the emails from Mr. Andrews to Class Counsel that we could find in our files.

The undersigned declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:          January 20, 2014

Respectfully submitted,

_____
Daniel A. Small


_____
Daniel E. Gustafson


_____
Daniel C. Hedlund


_____
E. Powell Miller

13

The undersigned declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:        January 20, 2014

Respectfully submitted,

_____
Daniel A. Small

_____
Daniel E. Gustafson

_____
Daniel C. Hedlund


_____
E. Powell Miller

13

The undersigned declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated:          January 20, 2014

                                Respectfully submitted,


                                _____
                                Daniel A. Small


                                _____
                                Daniel E. Gustafson


                                _____
                                Daniel C. Hedlund

                                _____
                                E. Powell Miller


13

# EXHIBIT A

From:           caaloa <caaloa@gmail.com>
Sent:           Tuesday, September 02, 2014 9:12 AM
To:             E. Powell Miller
Subject:        Shane Group v. BCBSM Objection

Hello Mr. Powell,

        An objection is in the process of being assembled in the above mentioned case. I am interested in dropping off a rough draft of the objection at your office next Monday for Plaintiffs' Counsels review prior to it being filed with the Court on September 22, 2014. If there are issues brought up that we can resolve I can amend the objection to reflect that. Would you like to meet next Monday or just have me drop it off and you can forward copies on to the other class counsel for their review, input and comments.Thanks. CA

# EXHIBIT B

| | |
|---|---|
| From: | caaloa <caaloa@gmail.com> |
| Sent: | Tuesday, September 02, 2014 12:57 PM |
| To: | E. Powell Miller |
| Subject: | Re: Shane Group v. BCBSM Objection |

Hello Mr. Miller,

      My name is Mr. Andrews I am not an attorney. I will drop off the rough draft next Monday morning on behalf of myself and three other class members for Plaintiffs' Counsel's review.The rough draft will be approximately 100 pages long with approximately six-seven exhibits totaling around 150 pages.
Thank you for your time.


On Tue, Sep 2, 2014 at 10:46 AM, E. Powell Miller <epm@millerlawpc.com> wrote:

 Thank you for your email.  You are welcome to send a draft as we appreciate input from every class member.  Please let me know who you are as I cannot tell from your initials or email address and your interest in the case.

Sincerely,

Powell Miller

Sent from my iPhone

> On Sep 2, 2014, at 9:11 AM, "caaloa" <caaloa@gmail.com> wrote:
>
> Hello Mr. Powell,
>       An objection is in the process of being assembled in the above mentioned case. I am interested in dropping off a rough draft of the objection  at your office next Monday for Plaintiffs' Counsels review prior to it being filed with the Court on September 22, 2014. If there are issues brought up that we can resolve I can amend the objection to reflect that. Would you like to meet next Monday or just have me drop it off and you can forward copies on to the other class counsel for their review, input and comments.Thanks. CA

# EXHIBIT C

From:          caaloa <caaloa@gmail.com>
Sent:          Monday, September 08, 2014 10:01 AM
To:            E. Powell Miller
Subject:       Blue Cross Blue Shield of Michigan Rough Draft Objection
Attachments:   Blue cross objection.docx


Dear Mr. Miller,
            As promised attached is a rough draft of the objection that will be filed with the Court fourteen
days from today. Please forward to applicable parties for their review also. Do not take what was written as
personal, it's all business. After all parties have carefully reviewed the objection I can be reached at this email
address and phone of 1-248-635-3810 from 9:00 a.m. to 9:00 p.m. to  discuss the objection what should be done
to benefit the class to resolve some or all of these issues. Court's can do anything and the objector's could be
wrong and overruled in spite of all the evidence so compromise should be explored if Plaintiffs' Counsel so
chooses. Thank you for your time.
Christopher Andrews

# EXHIBIT D

| | |
|---|---|
| From: | caaloa <caaloa@gmail.com> |
| Sent: | Friday, September 12, 2014 7:35 AM |
| To: | E. Powell Miller |
| Subject: | Re: Blue Cross Blue Shield of Michigan Rough Draft Objection |

Dear Mr. Miller,

        I may have a solution to the problem of enhancing the settlement fund for the class and gaining approval of the settlement on November 12, 2014. The answer is on pages 65 and 66 of the objection. I want counsel to voluntary agree to reduce the attorney fee request by approximately $1,155.000. That would ensure the class has more than it has now. I will revise the objection to assist you with it's passage assuming the Court approves the motion. This will help Plaintiffs' Counsel save a further reduction of at least $2,000,000.00 and quite possibly all of the fee. I can provide additional details if you are interested. A bird in the hand is worth three in the bush.

Chris Andrews

On Mon, Sep 8, 2014 at 10:37 AM, E. Powell Miller <epm@millerlawpc.com> wrote:
Dear Mr. Andrews,

 I did receive your rough draft of the objection and it is readable.  I appreciate your interest and will review it closely.

  Sincerely,

 Powell Miller

Sent from my iPhone

On Sep 8, 2014, at 10:02 AM, "caaloa" <caaloa@gmail.com> wrote:

      Please email back and let me know you received it and it's readable. Thanks.

      On Mon, Sep 8, 2014 at 10:01 AM, caaloa <caaloa@gmail.com> wrote:
      Dear Mr. Miller,
                As promised attached is a rough draft of the objection that will be filed with the Court fourteen days from today. Please forward to applicable parties for their review also. Do not take what was written as personal, it's all business. After all parties have carefully reviewed the objection I can be reached at this email address and phone of 1-248-635-3810 from 9:00 a.m. to 9:00 p.m. to  discuss the objection what should be done to benefit the class to resolve some or all of these issues. Court's can do anything and the objector's could be wrong and overruled in spite of all the evidence so compromise should be explored if Plaintiffs' Counsel so chooses. Thank you for your time.
      Christopher Andrews

# EXHIBIT E

From:            caaloa <caaloa@gmail.com>
Sent:            Saturday, September 13, 2014 9:28 AM
To:              E. Powell Miller
Subject:         Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Mr. Miller,

We can meet anytime after 10:00 am. Pick a day and I will meet rearrange my schedule. Traffic can be bad during rush hour especially where you are.

On Fri, Sep 12, 2014 at 6:18 PM, E. Powell Miller <epm@millerlawpc.com> wrote:
Dear Mr. Andrews,

Thank you for your email. We respect your right to object, but have different views on the merits of the settlement and the amount of our fee request. We suggest a meeting to discuss our respective views. Please let me know if you are willing to meet and dates you are available.

Sincerely,

Powell Miller

Sent from my iPhone

On Sep 12, 2014, at 4:35 AM, "caaloa" <caaloa@gmail.com> wrote:

Dear Mr. Miller,
                I may have a solution to the problem of enhancing the settlement fund for the class and gaining approval of the settlement on November 12, 2014. The answer is on pages 65 and 66 of the objection. I want counsel to voluntary agree to reduce the attorney fee request by approximately $1,155.000. That would ensure the class has more than it has now. I will revise the objection to assist you with it's passage assuming the Court approves the motion. This will help Plaintiffs' Counsel save a further reduction of at least $2,000,000.00 and quite possibly all of the fee. I can provide additional details if you are interested. A bird in the hand is worth three in the bush.
Chris Andrews

On Mon, Sep 8, 2014 at 10:37 AM, E. Powell Miller <epm@millerlawpc.com> wrote:
Dear Mr. Andrews,

I did receive your rough draft of the objection and it is readable. I appreciate your interest and will review it closely.

Sincerely,

Powell Miller

Sent from my iPhone

On Sep 8, 2014, at 10:02 AM, "caaloa" <caaloa@gmail.com> wrote:

> Please email back and let me know you received it and it's readable. Thanks.
>
> On Mon, Sep 8, 2014 at 10:01 AM, caaloa <caaloa@gmail.com> wrote:
> Dear Mr. Miller,
>                  As promised attached is a rough draft of the objection that will be
> filed with the Court fourteen days from today. Please forward to applicable parties
> for their review also. Do not take what was written as personal, it's all business.
> After all parties have carefully reviewed the objection I can be reached at this
> email address and phone of 1-248-635-3810 from 9:00 a.m. to 9:00 p.m.
> to  discuss the objection what should be done to benefit the class to resolve some
> or all of these issues. Court's can do anything and the objector's could be wrong
> and overruled in spite of all the evidence so compromise should be explored if
> Plaintiffs' Counsel so chooses. Thank you for your time.
> Christopher Andrews

# EXHIBIT F

| | |
|---|---|
| From: | caaloa <caaloa@gmail.com> |
| Sent: | Wednesday, September 17, 2014 4:50 PM |
| To: | E. Powell Miller |
| Subject: | Re: Blue Cross Blue Shield of Michigan Rough Draft Objection |

Dear Mr. Miller,

==From continued review of this case it seems some will end up with nothing and the rest might split $5 million, maybe. This is a story that is worthy of some publicity and a movie deal.==

On Sat, Sep 13, 2014 at 9:27 AM, caaloa <caaloa@gmail.com> wrote:
Dear Mr. Miller,
             We can meet anytime after 10:00 am. Pick a day and I will meet rearrange my schedule. Traffic can be bad during rush hour especially where you are.

On Fri, Sep 12, 2014 at 6:18 PM, E. Powell Miller <epm@millerlawpc.com> wrote:
Dear Mr. Andrews,

  Thank you for your email.  We respect your right to object, but have different views on the merits of the settlement and the amount of our fee request.  We suggest a meeting to discuss our respective views.  Please let me know if you are willing to meet and dates you are available.

 Sincerely,

 Powell Miller

Sent from my iPhone

On Sep 12, 2014, at 4:35 AM, "caaloa" <caaloa@gmail.com> wrote:

        Dear Mr. Miller,
                    I may have a solution to the problem of enhancing the settlement fund for the class and gaining approval of the settlement on November 12, 2014. The answer is on pages 65 and 66 of the objection. I want counsel to voluntary agree to reduce the attorney fee request by approximately $1,155.000. That would ensure the class has more than it has now. I will revise the objection to assist you with it's passage assuming the Court approves the motion. This will help Plaintiffs' Counsel save a further reduction of at least $2,000,000.00 and quite possibly all of the fee. I can provide additional details if you are interested. A bird in the hand is worth three in the bush.
        Chris Andrews

        On Mon, Sep 8, 2014 at 10:37 AM, E. Powell Miller <epm@millerlawpc.com> wrote:
        Dear Mr. Andrews,

         I did receive your rough draft of the objection and it is readable.  I appreciate your interest and will review it closely.

Sincerely,

Powell Miller

Sent from my iPhone

On Sep 8, 2014, at 10:02 AM, "caaloa" <caaloa@gmail.com> wrote:

> Please email back and let me know you received it and it's readable. Thanks.
>
> On Mon, Sep 8, 2014 at 10:01 AM, caaloa <caaloa@gmail.com> wrote:
> Dear Mr. Miller,
>            As promised attached is a rough draft of the objection that will be
> filed with the Court fourteen days from today. Please forward to applicable parties
> for their review also. Do not take what was written as personal, it's all business.
> After all parties have carefully reviewed the objection I can be reached at this
> email address and phone of 1-248-635-3810 from 9:00 a.m. to 9:00 p.m.
> to  discuss the objection what should be done to benefit the class to resolve some
> or all of these issues. Court's can do anything and the objector's could be wrong
> and overruled in spite of all the evidence so compromise should be explored if
> Plaintiffs' Counsel so chooses. Thank you for your time.
> Christopher Andrews

# EXHIBIT G

| | |
|---|---|
| From: | caaloa <caaloa@gmail.com> |
| Sent: | Thursday, September 18, 2014 11:33 AM |
| To: | E. Powell Miller |
| Subject: | Re: Blue Cross Blue Shield of Michigan Rough Draft Objection |

Dear Mr. Miller,

       Because no one was interested in communicating, more digging was done and more issues discovered. I have deleted some issues mentioned and expanded on others. Give up 10% and save 30% to 40% more than that. I do realize the judge could dismiss this entire objection but the cost benefit analysis does not seem to work in Plaintiffs' Counsel's favor. Doing nothing is a decision but not the correct one in this case. Cell number is 1-248-635-3810 anytime after 10:00 a.m. until 8:00 p.m.

On Thu, Sep 18, 2014 at 11:07 AM, E. Powell Miller <epm@millerlawpc.com> wrote:

Dear Mr. Andrews,


Given traffic issues, I suggest a call Friday or late afternoon Tuesday  if that works for you.  I have included on this string my colleague Dan Small.  Please let me know some good times.



  Best,


  Powell


The Miller Law Firm, PC

950 West University, Suite 300

Rochester, Michigan  48307

248-841-2200



**From:** caaloa [mailto:caaloa@gmail.com]
**Sent:** Saturday, September 13, 2014 9:28 AM
**To:** E. Powell Miller
**Subject:** Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Mr. Miller,

        We can meet anytime after 10:00 am. Pick a day and I will meet rearrange my schedule. Traffic can be bad during rush hour especially where you are.

On Fri, Sep 12, 2014 at 6:18 PM, E. Powell Miller <epm@millerlawpc.com> wrote:

Dear Mr. Andrews,


 Thank you for your email.  We respect your right to object, but have different views on the merits of the settlement and the amount of our fee request.  We suggest a meeting to discuss our respective views.  Please let me know if you are willing to meet and dates you are available.


 Sincerely,


 Powell Miller

Sent from my iPhone

On Sep 12, 2014, at 4:35 AM, "caaloa" <caaloa@gmail.com> wrote:

      Dear Mr. Miller,

            I may have a solution to the problem of enhancing the settlement fund for the class and gaining approval of the settlement on November 12, 2014. The answer is on pages 65 and 66 of the objection. I want counsel to voluntary agree to reduce the attorney fee request by approximately $1,155.000. That would ensure the class has more than it has now. I will revise the objection to assist you with it's passage assuming the Court approves the motion. This will help Plaintiffs' Counsel save a further reduction of at least $2,000,000.00 and quite possibly all of the fee. I can provide additional details if you are interested. A bird in the hand is worth three in the bush.

      Chris Andrews


On Mon, Sep 8, 2014 at 10:37 AM, E. Powell Miller <epm@millerlawpc.com> wrote:

      Dear Mr. Andrews,

I did receive your rough draft of the objection and it is readable.  I appreciate your interest and will review it closely.


 Sincerely,


 Powell Miller

Sent from my iPhone


On Sep 8, 2014, at 10:02 AM, "caaloa" <caaloa@gmail.com> wrote:

> Please email back and let me know you received it and it's readable. Thanks.


> On Mon, Sep 8, 2014 at 10:01 AM, caaloa <caaloa@gmail.com> wrote:

> Dear Mr. Miller,

>                    As promised attached is a rough draft of the objection that will be filed with the Court fourteen days from today. Please forward to applicable parties for their review also. Do not take what was written as personal, it's all business. After all parties have carefully reviewed the objection I can be reached at this email address and phone of 1-248-635-3810 from 9:00 a.m. to 9:00 p.m. to  discuss the objection what should be done to benefit the class to resolve some or all of these issues. Court's can do anything and the objector's could be wrong and overruled in spite of all the evidence so compromise should be explored if Plaintiffs' Counsel so chooses. Thank you for your time.

> Christopher Andrews

# EXHIBIT H

2:10-cv-14360-DPH-MKM   Doc # 208-1   Filed 01/20/15   Pg 35 of 221   Pg ID 6720

## Death Notices

**Brought to you by: Michigan.com**

### GREENIA EILEEN R

*2009-11-17*



Age 73 of Southfield, entered into rest on November 15th at her home. Loving son of the late Edward and Eileen Hughes. Devoted wife of the late Larry Andrews and Claude Greenia. Dearest mother of Christopher Andrews, Kevin (Maureen) Andrews and Cathy (Ron) Waltz. Cherished grandmother of Michael, Jackie, Robert, Jessica, Jennifer, Bryan, Rachel, Erin, and Patricia. Beloved sister of Eamon Rochford and the late Emily Byrne. Visitation Tuesday November 17th from 4-8 p.m. at Haley Funeral Directors 24525 Northwestern Hwy. Southfield 48075. Funeral Mass 10 a.m. Wednesday November 18th at Transfiguration Catholic Church 25225 Code Road ( N of 10 East of Lahser) Southfield, Michigan. In lieu of flowers, donations to Beaumont Hospice/ Foundation. For directions and online condolences please go to www.haleyfuneraldirectors.com

*From The Detroit News and Detroit Free Press*

- Your Name
- Your Email
- Recipient's Email
- Submit

## Guestbook listing for 1



Share memories in the guest book. Entries are free and are posted after being reviewed for appropriate content.

No guestbook entries.

© Michigan.com. Use of this site signifies your agreement to the Terms of Service. 2014-2015.



# EXHIBIT I

**From:**          caaloa <caaloa@gmail.com>
**Sent:**          Friday, September 19, 2014 6:27 PM
**To:**            Dan Gustafson
**Subject:**       Re: Blue Cross Blue Shield of Michigan Rough Draft Objection
**Attachments:**   new stip.doc

Dan,
       Here it is on short notice, you can make changes and clean it up if need be. Give me a call to discuss some time this weekend as to Monday filing and which one. I would make a second copy and reword to have the award come out of the settlement fund if that's a deal breaker.
Chris Andrews

On Fri, Sep 19, 2014 at 5:45 PM, caaloa <caaloa@gmail.com> wrote:
  It was done, saved it and it is nowhere in the computer and no one here to help. Will have to redo and send again.

  On Fri, Sep 19, 2014 at 4:29 PM, Dan Gustafson <DGustafson@gustafsongluek.com> wrote:
    Thx

    Dan

    On Sep 19, 2014, at 3:19 PM, "caaloa" <caaloa@gmail.com<mailto:caaloa@gmail.com>> wrote:

    Just looked at email after I called you. I will assemble a motion for your review and email it to you. That will show what I was going to clarify with you. Should be there within a forty minutes ish.
    Christopher Andrews

    On Fri, Sep 19, 2014 at 12:56 PM, Dan Gustafson
    <DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>> wrote:
    Dear Mr. Andrews

    Thanks for taking the time to talk to us this morning about your potential objections

    We are considering your offer and will get you a final answer as soon as we can.

    But as we advised you, we fully expect that we would need a written demand/agreement that we could put before the Court to make sure there is no confusion about the terms and to make sure that we full transparency before the Court and Class.

    To further this possible resolution, can you get us a written demand and proposed settlement agreement?

    Then we will all know what the exact details are so we can make clear choices

    Let me know when I can expect a draft

    Dan

From: E. Powell Miller [mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>]
Sent: Thursday, September 18, 2014 3:54 PM
To: caaloa
Cc: Small, Daniel (DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>)
(DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>); Dan Gustafson; Dan Hedlund
Subject: RE: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Mr. Andrews:

  Here is the call in information:

  This conference call is scheduled for 10:00am Eastern Time/9:00am Central Time.
Date:    Friday, September 19, 2014
Start Time:        10:00 AM Eastern Daylight Time
Dial-in Number: 1-605-475-5950<tel:1-605-475-5950> (Midwest)
Participant Access Code:            3674356

Sincerely,
Powell Miller

The Miller Law Firm, PC
950 West University, Suite 300
Rochester, Michigan  48307
248-841-2200<tel:248-841-2200>

From: caaloa [mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>]
Sent: Thursday, September 18, 2014 4:46 PM
To: E. Powell Miller
Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

OK

On Thu, Sep 18, 2014 at 4:41 PM, E. Powell Miller
<epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Thanks Mr. Andrews

I will work on a call in number and be sure to e-mail it to you before 10 tomorrow.

Sincerely,

Powell

The Miller Law Firm, PC
950 West University, Suite 300
Rochester, Michigan  48307
248-841-2200<tel:248-841-2200>

From: caaloa [mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>]
Sent: Thursday, September 18, 2014 4:34 PM

To: E. Powell Miller

Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Sure

On Thu, Sep 18, 2014 at 3:49 PM, E. Powell Miller <epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Mr. Andrews,

 Can you participate in a call tomorrow (Friday) at 10 EST?  If so, I will e-mail a call in number.  We will have as participants who are all class counsel: myself, Dan Small, Dan Hedlund and/or Dan Gustafson.  Please advise.

  Sincerely,

 Powell Miller

Sent from my iPhone

On Sep 18, 2014, at 11:07 AM, "E. Powell Miller" <epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Dear Mr. Andrews,

Given traffic issues, I suggest a call Friday or late afternoon Tuesday  if that works for you.  I have included on this string my colleague Dan Small.  Please let me know some good times.

  Best,

  Powell

The Miller Law Firm, PC
950 West University, Suite 300
Rochester, Michigan  48307
248-841-2200<tel:248-841-2200>

From: caaloa [mailto:caaloa@gmail.com]
Sent: Saturday, September 13, 2014 9:28 AM
To: E. Powell Miller
Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Mr. Miller,
               We can meet anytime after 10:00 am. Pick a day and I will meet rearrange my schedule. Traffic can be bad during rush hour especially where you are.

On Fri, Sep 12, 2014 at 6:18 PM, E. Powell Miller <epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Dear Mr. Andrews,

  Thank you for your email.  We respect your right to object, but have different views on the merits of the settlement and the amount of our fee request.  We suggest a meeting to discuss our respective views.  Please let me know if you are willing to meet and dates you are available.

Sincerely,

 Powell Miller

Sent from my iPhone

On Sep 12, 2014, at 4:35 AM, "caaloa" <caaloa@gmail.com<mailto:caaloa@gmail.com>> wrote:
Dear Mr. Miller,
            I may have a solution to the problem of enhancing the settlement fund for the class and gaining approval of the settlement on November 12, 2014. The answer is on pages 65 and 66 of the objection. I want counsel to voluntary agree to reduce the attorney fee request by approximately $1,155.000. That would ensure the class has more than it has now. I will revise the objection to assist you with it's passage assuming the Court approves the motion. This will help Plaintiffs' Counsel save a further reduction of at least $2,000,000.00 and quite possibly all of the fee. I can provide additional details if you are interested. A bird in the hand is worth three in the bush.
Chris Andrews

On Mon, Sep 8, 2014 at 10:37 AM, E. Powell Miller
<epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Dear Mr. Andrews,

 I did receive your rough draft of the objection and it is readable.  I appreciate your interest and will review it closely.

 Sincerely,

 Powell Miller

Sent from my iPhone

On Sep 8, 2014, at 10:02 AM, "caaloa" <caaloa@gmail.com<mailto:caaloa@gmail.com>> wrote:
Please email back and let me know you received it and it's readable. Thanks.

On Mon, Sep 8, 2014 at 10:01 AM, caaloa <caaloa@gmail.com<mailto:caaloa@gmail.com>> wrote:
Dear Mr. Miller,
               As promised attached is a rough draft of the objection that will be filed with the Court fourteen days from today. Please forward to applicable parties for their review also. Do not take what was written as personal, it's all business. After all parties have carefully reviewed the objection I can be reached at this email address and phone of 1-248-635-3810<tel:1-248-635-3810> from 9:00 a.m. to 9:00 p.m. to  discuss the objection what should be done to benefit the class to resolve some or all of these issues. Court's can do anything and the objector's could be wrong and overruled in spite of all the evidence so compromise should be explored if Plaintiffs' Counsel so chooses. Thank you for your time.
Christopher Andrews

The United States District Court

For The Eastern District of Michigan

Southern Division


**This Document Applies To:**

The Shane Group, Inc. etc. al

Plaintiffs,

v. Blue Cross Blue Shield of Michigan,

Defendant .


Case No. 2:10-cv-14360-DPH-MKM

Case No. 2:10-cv-14360-DPH-MKM

**<u>ECF CASE</u>**


**<u>STIPULATION WITHDRAWING OBJECTION</u>**

WHEREAS,  as set forth in Lead Plaintiffs' papers supporting the Blue Cross Blue Shield of Michigan (BCBSM) Settlement, Lead Plaintiffs obtained a $30 million settlement after nearly four years of litigation and negotiations;

WHEREAS, Lead Plaintiffs and Lead Counsel believe that the BCBSM Settlement is a favorable outcome for the BCBSM Settlement Class and has recommended its approval to the Court;

• WHEREAS, Christopher Andrews, Pro se non attorney, also acting as representative under Power of Attorney for Objector Cathy Waltz as executor of the estate of Eileen Greenia and Emily Byrne and as representative for Objector Ronald Waltz and Objector Michael Andrews (the Andrews's Objectors) all BCBSM Class Member's by virtue of all objectors have records that show they paid for healthcare services at a general acute care hospital in Michigan between January 1, 2006 and June 23, 2014 during the class period, are members of the settlement class in Category 1, 2 and 3; therefore have standing to object to the settlement, have filed an objection to the BCBSM  Settlement, the application for an award of attorney's fees, reimbursement of expenses and claims process, plan of allocation in connection with the BCBSM Settlement in the above-captioned matter, a copy of which is docketed with the Court as Docket No. _____ (the "Andrews's Objection");

WHEREAS, as reflected in the Andrews's Objection, Andrews objected to, among other things, the fee amount and the $25 and $15 minimum distribution per Authorized Claimant:

WHEREAS Andrews objected to the attorney fee amount and requested a reduction in their fee request. and that the claims administration process should reduce the $25 & $15 to $ 10 threshold for minimum distribution among other things;

WHEREAS, Andrews acknowledges that the objections that he had set forth in his Objection have been appropriately and fully addressed in Lead Plaintiffs' settlement submission of October _____2014 submission,  Docket No. _____

WHEREAS, Andrews has provided Co-Lead Counsel with an estimate of his commission rate for revenue generated the past 18 years is 28% and he also performs consulting work for attorneys for the past 30 years;

WHEREAS after negotiations with Andrews, Plaintiffs' Counsel has agreed to reduce its request for attorney fees in the amount of $990,000.00

WHEREAS, this Stipulation is contingent upon the BCBSM Settlement being approved by the Court and the Court awarding attorney's fees to Plaintiffs' Counsel from the BSBSM Settlement Fund; and

WHEREAS, the consideration to be paid by virtue of this Stipulation shall be paid entirely out of any Court-awarded attorney's fees and shall not, in any way, diminish the amount due to the BSBSM Settlement Class in the event that the BCBSM Settlement shall be approved by the Court;

1.      In recognition of the time and negotiation experience expended by Andrews and the results achieved by the class in increasing the settlement funds available to compensate all class members and in order to avoid any appeals, Plaintiffs' Counsel hereby agrees, subject to Court approval, to pay a 15.5%  fee on the $990,000.00 revenue he generated back into the settlement fund of $153,450.00 to Andrews out of any award of attorney's fees granted by the Court in connection with the BCBSM Settlement in the event that the BCBSM Settlement is approved by the Court;

WHEREAS, Co-Lead Counsel have agreed not to contest the Andrews' Application in the amount of $153,450.00;

NOW THEREFORE, the parties to this Stipulation hereby agree as follows:

1.                Acknowledging that Andrews has created a $990,000.00 benefit for the
                  BCBSM Settlement Class by increasing the settlement fund,  Plaintiffs'

3

Counsel hereby agree not to contest the Andrews' Application in an amount of $153,450.00, to be paid to Andrews within five days of Plaintiffs' Counsel receiving the Court Order of it's attorney fee award; and

2.      Andrews will hereby withdraw the objection and agrees that he shall not appeal any orders in connection with the Settlement, Plan of Allocation or award of attorneys' fees and reimbursement of expenses.

Said amount, upon approval of the Court, shall be paid out of the attorney fees that are ultimately awarded to Plaintiffs' Counsel by the Court in connection with the BCBSM Settlement and shall be paid to Mr. Andrews within five calendar days after Plaintiffs' Counsel receives its award of attorney's fees and expenses in the BCBSM Settlement in connection with the above-captioned matter; and

Andrews hereby withdraws his Objection with prejudice and shall not appeal any issues with respect to the BCBSM Settlement.

_____
/s/ Daniel E. Gustafson
Daniel E. Gustafson
Daniel C. Hedlund
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com

_____

Daniel A. Small
Brent W. Johnson
Jeffrey B. Dubner
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue, NW, Suite 500
Washington, DC 20005
Telephone: (202
) 408-4600
dsmall@cohenmilstein.com
bjohnson@cohenmilstein.com
jdubner@cohenmilstein.com

_____

E. Powell Miller
THE MILLER LAW FIRM, P.C.
950 West University Drive, Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
epm@millerlawpc.com

_____

Fred T. Isquith
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC
270 Madison Avenue
New York, New York, 10016
Telephone: (212) 545-4690
isquith@whafh.com

_____

Theodore B. Bell
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Telephone: (312) 984-0000
tbell@whafh.com
Interim Class Counsel


SO ORDERED:_____  DATE: _____, 2014


5

_____
Denise Page Hood
United States District Judge

# EXHIBIT J

From:           caaloa <caaloa@gmail.com>
Sent:           Monday, September 22, 2014 12:46 PM
To:             E. Powell Miller
Subject:        No Response

Dear Mr. Miller,
        No call means no I guess. After reviewing the 380 pages in this objection it will be posted to Scribed and a email news release sent out to 125 news organizations, congressional committees, public interest groups directing them to this objection. I will also send a letter to all judges in this district referring them to this objection so everyone will be able to see what a poster child of abuse this entire settlement is so no other class members will be victimized in future class action settlements. The goal is to get Plaintiffs Counsel dismissed as you already know, the demands have now changed and been substantially increased. This won't be a slam dunk like it was for your last two settlements in in the Detroit Federal Court. BAR complaints will also being filed. You can also include this for the judge to see with all the other emails sent your way.
Christopher Andrews

# EXHIBIT K

**From:**           caaloa <caaloa@gmail.com>
**Sent:**           Monday, September 22, 2014 2:39 PM
**To:**               Dan Gustafson
**Subject:**        Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Yes,

     Do you need to have me involve an attorney to speak to you on my behalf to resolve this? If not it will be filed tomorrow, I have been working on it since noon today and still not done.

Chris Andrews

On Mon, Sep 22, 2014 at 2:09 PM, Dan Gustafson <DGustafson@gustafsongluek.com> wrote:

Dear Chris,


We have discussed and determined that we cannot agree to your proposed resolution of your potential individual objection at this time.


As I understand it, the deadline is Wednesday to file objections and the process/rules for doing so are set out in the Notice and on the website.



If you decide to file, the Court will have to decide the merits.



Please let me know if you have any questions



Dan



**From:** caaloa [mailto:caaloa@gmail.com]
**Sent:** Friday, September 19, 2014 7:56 PM
**To:** Dan Gustafson


**Subject:** Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Dan,

      Almost forgot. Upon rereading my revised objection the $990,000.00 will reimburse the class for the cost of the notice mailing which also benefits the class fund.

Christopher Andrews


On Fri, Sep 19, 2014 at 7:27 PM, caaloa <caaloa@gmail.com> wrote:

Dan,

    Here it is on short notice, you can make changes and clean it up if need be. Give me a call to discuss some time this weekend as to Monday filing and which one. I would make a second copy and reword to have the award come out of the settlement fund if that's a deal breaker.

Chris Andrews


On Fri, Sep 19, 2014 at 5:45 PM, caaloa <caaloa@gmail.com> wrote:

It was done, saved it and it is nowhere in the computer and no one here to help. Will have to redo and send again.


On Fri, Sep 19, 2014 at 4:29 PM, Dan Gustafson <DGustafson@gustafsongluek.com> wrote:

Thx

Dan

On Sep 19, 2014, at 3:19 PM, "caaloa" <caaloa@gmail.com<mailto:caaloa@gmail.com>> wrote:

Just looked at email after I called you. I will assemble a motion for your review and email it to you. That will show what I was going to clarify with you. Should be there within a forty minutes ish.
Christopher Andrews

On Fri, Sep 19, 2014 at 12:56 PM, Dan Gustafson
<DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>> wrote:
Dear Mr. Andrews

Thanks for taking the time to talk to us this morning about your potential objections

We are considering your offer and will get you a final answer as soon as we can.

But as we advised you, we fully expect that we would need a written demand/agreement that we could put

before the Court to make sure there is no confusion about the terms and to make sure that we full transparency before the Court and Class.

To further this possible resolution, can you get us a written demand and proposed settlement agreement?

Then we will all know what the exact details are so we can make clear choices

Let me know when I can expect a draft

Dan

From: E. Powell Miller [mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>]
Sent: Thursday, September 18, 2014 3:54 PM
To: caaloa
Cc: Small, Daniel (DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>)
(DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>); Dan Gustafson; Dan Hedlund
Subject: RE: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Mr. Andrews:

  Here is the call in information:

  This conference call is scheduled for 10:00am Eastern Time/9:00am Central Time.
Date:    Friday, September 19, 2014
Start Time:        10:00 AM Eastern Daylight Time
Dial-in Number: 1-605-475-5950<tel:1-605-475-5950> (Midwest)
Participant Access Code:            3674356

Sincerely,
Powell Miller

The Miller Law Firm, PC
950 West University, Suite 300
Rochester, Michigan  48307
248-841-2200<tel:248-841-2200>

From: caaloa [mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>]
Sent: Thursday, September 18, 2014 4:46 PM
To: E. Powell Miller
Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

OK

On Thu, Sep 18, 2014 at 4:41 PM, E. Powell Miller
<epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Thanks Mr. Andrews

I will work on a call in number and be sure to e-mail it to you before 10 tomorrow.

Sincerely,

Powell

The Miller Law Firm, PC
950 West University, Suite 300
Rochester, Michigan  48307
248-841-2200<tel:248-841-2200>

From: caaloa [mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>]
Sent: Thursday, September 18, 2014 4:34 PM

To: E. Powell Miller
Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Sure

On Thu, Sep 18, 2014 at 3:49 PM, E. Powell Miller
<epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Mr. Andrews,

 Can you participate in a call tomorrow (Friday) at 10 EST?  If so, I will e-mail a call in number.  We will have as participants who are all class counsel: myself, Dan Small, Dan Hedlund and/or Dan Gustafson.  Please advise.

  Sincerely,

  Powell Miller

Sent from my iPhone

On Sep 18, 2014, at 11:07 AM, "E. Powell Miller" <epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Dear Mr. Andrews,

Given traffic issues, I suggest a call Friday or late afternoon Tuesday  if that works for you.  I have included on this string my colleague Dan Small.  Please let me know some good times.

  Best,

  Powell

The Miller Law Firm, PC
950 West University, Suite 300
Rochester, Michigan  48307
248-841-2200<tel:248-841-2200>

From: caaloa [mailto:caaloa@gmail.com]
Sent: Saturday, September 13, 2014 9:28 AM
To: E. Powell Miller
Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Mr. Miller,

We can meet anytime after 10:00 am. Pick a day and I will meet rearrange my schedule. Traffic can be bad during rush hour especially where you are.

On Fri, Sep 12, 2014 at 6:18 PM, E. Powell Miller <epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Dear Mr. Andrews,

  Thank you for your email.  We respect your right to object, but have different views on the merits of the settlement and the amount of our fee request.  We suggest a meeting to discuss our respective views.  Please let me know if you are willing to meet and dates you are available.

  Sincerely,

  Powell Miller

Sent from my iPhone

On Sep 12, 2014, at 4:35 AM, "caaloa" <caaloa@gmail.com<mailto:caaloa@gmail.com>> wrote:
Dear Mr. Miller,
             I may have a solution to the problem of enhancing the settlement fund for the class and gaining approval of the settlement on November 12, 2014. The answer is on pages 65 and 66 of the objection. I want counsel to voluntary agree to reduce the attorney fee request by approximately $1,155.000. That would ensure the class has more than it has now. I will revise the objection to assist you with it's passage assuming the Court approves the motion. This will help Plaintiffs' Counsel save a further reduction of at least $2,000,000.00 and quite possibly all of the fee. I can provide additional details if you are interested. A bird in the hand is worth three in the bush.
Chris Andrews

On Mon, Sep 8, 2014 at 10:37 AM, E. Powell Miller
<epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Dear Mr. Andrews,

  I did receive your rough draft of the objection and it is readable.  I appreciate your interest and will review it closely.

  Sincerely,

  Powell Miller

Sent from my iPhone

On Sep 8, 2014, at 10:02 AM, "caaloa" <caaloa@gmail.com<mailto:caaloa@gmail.com>> wrote:
Please email back and let me know you received it and it's readable. Thanks.

On Mon, Sep 8, 2014 at 10:01 AM, caaloa <caaloa@gmail.com<mailto:caaloa@gmail.com>> wrote:
Dear Mr. Miller,

                As promised attached is a rough draft of the objection that will be filed with the Court fourteen days from today. Please forward to applicable parties for their review also. Do not take what was written as personal, it's all business. After all parties have carefully reviewed the objection I can be reached at this email address and phone of 1-248-635-3810<tel:1-248-635-3810> from 9:00 a.m. to 9:00 p.m. to  discuss the objection what should be done to benefit the class to resolve some or all of these issues. Court's can do

anything and the objector's could be wrong and overruled in spite of all the evidence so compromise should be explored if Plaintiffs' Counsel so chooses. Thank you for your time.

Christopher Andrews

# EXHIBIT L

**From:**          caaloa <caaloa@gmail.com>
**Sent:**          Monday, September 22, 2014 5:02 PM
**To:**            Dan Gustafson
**Subject:**       Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Dan,
          Maybe you are still considering maybe not. Here are the possible out comes based on reviewing many cases that did not get approved and this is one of them:

Judge denies approval based on the numerous issues and gives you thirty days to fix but can't fix all of the material ones.
New hearing in thirty days not approved and maybe named plaintiffs and/or counsel dismissed.
Judge approves despite all the evidence, appeal, objectors defeat bond motion or appeal bond ruling, appeals court agrees with objectors, then appeals court easily overturns order.
Judge approves but denies incentive awards. Appeal. If the named plaintiffs are inadequate so are counsel and vice versa, appeals court agrees with objectors and cases on record and finds counsel and named plaintiffs inadequate, removed.
Judge reviews case finds counsel inadequate, dismisses them.

Take the offer and move on you are in a no win position based on the rough draft you have and the thirteen major, material mistakes that can't be fixed.
An objection  will be filed in am tomorrow. I will need one of you at least to autograph the motion I prepared  and email back to me by 10:00 am. No more emails or calls from me.
Chris Andrews


On Mon, Sep 22, 2014 at 4:19 PM, caaloa <caaloa@gmail.com> wrote:
  Let me rephrase. Assuming I had a local lawyer make the same proposal to you would that be acceptable proposal which you would agree to? The stipulation to the judge which I assembled is what would be submitted with your response to my objection.

On Mon, Sep 22, 2014 at 4:14 PM, Dan Gustafson <DGustafson@gustafsongluek.com> wrote:

   Chris,


   I can't give you advice about whether you should or need to hire counsel.


   But as we discussed last week, any resolution with you (and/or your counsel) would
   need to be approved by Judge Hood and fully disclosed.

Please let me know what you decide


Dan


**From:** caaloa [mailto:caaloa@gmail.com]
**Sent:** Monday, September 22, 2014 3:01 PM


**To:** Dan Gustafson
**Subject:** Re: Blue Cross Blue Shield of Michigan Rough Draft Objection


Do you need to speak to a attorney to assist in resolving this based on my proposal?  I can handle this and an appeal myself and Mr. Ted Frank may also become involved at some point if needed and he agrees. At this point if an attorney can't resolve this based on my proposal to Plaintiffs Counsel an attorney is not needed.


On Mon, Sep 22, 2014 at 3:55 PM, Dan Gustafson <DGustafson@gustafsongluek.com> wrote:

Chris,


Whether to hire an attorney is up to you of course.  But if you decide to do so, please let me know who it is and his/her contact information.


Thanks


Dan


**From:** caaloa [mailto:caaloa@gmail.com]
**Sent:** Monday, September 22, 2014 2:39 PM


**To:** Dan Gustafson
**Subject:** Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Yes,

   <mark>Do you need to have me involve an attorney to speak to you on my behalf to resolve this?</mark> If not it will be filed tomorrow, I have been working on it since noon today and still not done.
Chris Andrews


On Mon, Sep 22, 2014 at 2:09 PM, Dan Gustafson <DGustafson@gustafsongluek.com> wrote:

## Dear Chris,


We have discussed and determined that we cannot agree to your proposed resolution of your potential individual objection at this time.


As I understand it, the deadline is Wednesday to file objections and the process/rules for doing so are set out in the Notice and on the website.


If you decide to file, the Court will have to decide the merits.


Please let me know if you have any questions


Dan


**From:** caaloa [mailto:caaloa@gmail.com]
**Sent:** Friday, September 19, 2014 7:56 PM
**To:** Dan Gustafson


**Subject:** Re: Blue Cross Blue Shield of Michigan Rough Draft Objection


Dear Dan,

Almost forgot. Upon rereading my revised objection the $990,000.00 will reimburse the class for the cost of the notice mailing which also benefits the class fund.

Christopher Andrews

On Fri, Sep 19, 2014 at 7:27 PM, caaloa <caaloa@gmail.com> wrote:

Dan,

Here it is on short notice, you can make changes and clean it up if need be. Give me a call to discuss some time this weekend as to Monday filing and which one. I would make a second copy and reword to have the award come out of the settlement fund if that's a deal breaker.

Chris Andrews

On Fri, Sep 19, 2014 at 5:45 PM, caaloa <caaloa@gmail.com> wrote:

It was done, saved it and it is nowhere in the computer and no one here to help. Will have to redo and send again.

On Fri, Sep 19, 2014 at 4:29 PM, Dan Gustafson <DGustafson@gustafsongluek.com> wrote:

Thx

Dan

On Sep 19, 2014, at 3:19 PM, "caaloa" <caaloa@gmail.com<mailto:caaloa@gmail.com>> wrote:

Just looked at email after I called you. I will assemble a motion for your review and email it to you. That will show what I was going to clarify with you. Should be there within a forty minutes ish.
Christopher Andrews

On Fri, Sep 19, 2014 at 12:56 PM, Dan Gustafson
<DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>> wrote:
Dear Mr. Andrews

Thanks for taking the time to talk to us this morning about your potential objections

We are considering your offer and will get you a final answer as soon as we can.

But as we advised you, we fully expect that we would need a written demand/agreement that we could put before the Court to make sure there is no confusion about the terms and to make sure that we full transparency before the Court and Class.

To further this possible resolution, can you get us a written demand and proposed settlement agreement?

Then we will all know what the exact details are so we can make clear choices

Let me know when I can expect a draft

Dan

From: E. Powell Miller [mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>]
Sent: Thursday, September 18, 2014 3:54 PM
To: caaloa
Cc: Small, Daniel (DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>)
(DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>); Dan Gustafson; Dan Hedlund
Subject: RE: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Mr. Andrews:

  Here is the call in information:

  This conference call is scheduled for 10:00am Eastern Time/9:00am Central Time.
Date:    Friday, September 19, 2014
Start Time:       10:00 AM Eastern Daylight Time
Dial-in Number: 1-605-475-5950<tel:1-605-475-5950> (Midwest)
Participant Access Code:         3674356

Sincerely,
Powell Miller

The Miller Law Firm, PC
950 West University, Suite 300
Rochester, Michigan  48307
248-841-2200<tel:248-841-2200>

From: caaloa [mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>]
Sent: Thursday, September 18, 2014 4:46 PM
To: E. Powell Miller
Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

OK

On Thu, Sep 18, 2014 at 4:41 PM, E. Powell Miller
<epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Thanks Mr. Andrews

I will work on a call in number and be sure to e-mail it to you before 10 tomorrow.

Sincerely,

Powell

The Miller Law Firm, PC
950 West University, Suite 300

Rochester, Michigan  48307
248-841-2200<tel:248-841-2200>

From: caaloa [mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>]
Sent: Thursday, September 18, 2014 4:34 PM

To: E. Powell Miller
Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Sure

On Thu, Sep 18, 2014 at 3:49 PM, E. Powell Miller
<epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Mr. Andrews,

 Can you participate in a call tomorrow (Friday) at 10 EST?  If so, I will e-mail a call in number.  We will
have as participants who are all class counsel: myself, Dan Small, Dan Hedlund and/or Dan
Gustafson.  Please advise.

  Sincerely,

 Powell Miller

Sent from my iPhone

On Sep 18, 2014, at 11:07 AM, "E. Powell Miller"
<epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Dear Mr. Andrews,

Given traffic issues, I suggest a call Friday or late afternoon Tuesday  if that works for you.  I have included
on this string my colleague Dan Small.  Please let me know some good times.

  Best,

  Powell

The Miller Law Firm, PC
950 West University, Suite 300
Rochester, Michigan  48307
248-841-2200<tel:248-841-2200>

From: caaloa [mailto:caaloa@gmail.com]
Sent: Saturday, September 13, 2014 9:28 AM
To: E. Powell Miller
Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Mr. Miller,
                    We can meet anytime after 10:00 am. Pick a day and I will meet rearrange my schedule.
Traffic can be bad during rush hour especially where you are.

On Fri, Sep 12, 2014 at 6:18 PM, E. Powell Miller

<epm@millerlawpc.com><mailto:epm@millerlawpc.com>> wrote:
Dear Mr. Andrews,

  Thank you for your email.  We respect your right to object, but have different views on the merits of the
settlement and the amount of our fee request.  We suggest a meeting to discuss our respective views.  Please
let me know if you are willing to meet and dates you are available.

 Sincerely,

 Powell Miller

Sent from my iPhone

On Sep 12, 2014, at 4:35 AM, "caaloa" <caaloa@gmail.com><mailto:caaloa@gmail.com>> wrote:
Dear Mr. Miller,
             I may have a solution to the problem of enhancing the settlement fund for the class and gaining
approval of the settlement on November 12, 2014. The answer is on pages 65 and 66 of the objection. I want
counsel to voluntary agree to reduce the attorney fee request by approximately $1,155.000. That would ensure
the class has more than it has now. I will revise the objection to assist you with it's passage assuming the
Court approves the motion. This will help Plaintiffs' Counsel save a further reduction of at least
$2,000,000.00 and quite possibly all of the fee. I can provide additional details if you are interested. A bird in
the hand is worth three in the bush.
Chris Andrews

On Mon, Sep 8, 2014 at 10:37 AM, E. Powell Miller
<epm@millerlawpc.com><mailto:epm@millerlawpc.com>> wrote:
Dear Mr. Andrews,

 I did receive your rough draft of the objection and it is readable.  I appreciate your interest and will review it
closely.

 Sincerely,

 Powell Miller

Sent from my iPhone

On Sep 8, 2014, at 10:02 AM, "caaloa" <caaloa@gmail.com><mailto:caaloa@gmail.com>> wrote:
Please email back and let me know you received it and it's readable. Thanks.

On Mon, Sep 8, 2014 at 10:01 AM, caaloa <caaloa@gmail.com><mailto:caaloa@gmail.com>> wrote:
Dear Mr. Miller,
               As promised attached is a rough draft of the objection that will be filed with the Court
fourteen days from today. Please forward to applicable parties for their review also. Do not take what was
written as personal, it's all business. After all parties have carefully reviewed the objection I can be reached at
this email address and phone of 1-248-635-3810<tel:1-248-635-3810> from 9:00 a.m. to 9:00 p.m. to  discuss
the objection what should be done to benefit the class to resolve some or all of these issues. Court's can do
anything and the objector's could be wrong and overruled in spite of all the evidence so compromise should
be explored if Plaintiffs' Counsel so chooses. Thank you for your time.
Christopher Andrews

# EXHIBIT M

| | |
|---|---|
| **From:** | caaloa <caaloa@gmail.com> |
| **Sent:** | Tuesday, September 23, 2014 4:20 PM |
| **To:** | Dan Gustafson |
| **Subject:** | Re: Blue Cross Blue Shield of Michigan Rough Draft Objection |

Dan,

    Gave her you info a few hours ago.Just left a message at her office to have her call you on your cell ASAP. I don't have her cell but answer if it's a 248 area code but I believe it will come up as blocked so you should answer if you can. I will send an email too and aske her to leave her cell if she goes to your voice mail.
Chris Andrews

On Tue, Sep 23, 2014 at 5:05 PM, Dan Gustafson <DGustafson@gustafsongluek.com> wrote:
 Chris

 Please have her call me or give me a time to talk

 Dan

 On Sep 23, 2014, at 10:36 AM, "caaloa" <caaloa@gmail.com<mailto:caaloa@gmail.com>> wrote:

 Dan,
    Michigan attorney Ms. Dani Liblang office number 1-248-540-9270<tel:1-248-540-9270> email danil@liblanglaw.com<mailto:danil@liblanglaw.com>. spoke to her five minutes ago at her office she can represent me.
 Chris Andrews

 On Tue, Sep 23, 2014 at 11:25 AM, caaloa <caaloa@gmail.com<mailto:caaloa@gmail.com>> wrote:
 Dan,
    Waiting for a response to assist, attorney may be in court right now. Has a brief overview of issue. If yes will forward the contact information.
 Chris Andrews

 On Tue, Sep 23, 2014 at 11:05 AM, Dan Gustafson <DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>> wrote:
 Ok Chris

 Let me know his/her name and contact info

 Dan

 On Sep 23, 2014, at 6:02 AM, "caaloa" <caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>> wrote:

 Dear Dan,
       Deadline suspended. I will attempt to contact an attorney I used to work with a long time ago. See if they have time to become involved and resolve this. I will provide your cell phone number and email.

1

Chris Andrews

On Mon, Sep 22, 2014 at 7:34 PM, caaloa
<caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>
wrote:
I have the authority to do what ever needs to be done.

On Mon, Sep 22, 2014 at 6:13 PM, Dan Gustafson
<DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>>> wrote:
I will ask my group but it would certainly make the fee splitting and unauthorized practice of law issues different

Dan

On Sep 22, 2014, at 3:18 PM, "caaloa"
<caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>>> wrote:

Let me rephrase. Assuming I had a local lawyer make the same proposal to you would that be acceptable proposal which you would agree to? The stipulation to the judge which I assembled is what would be submitted with your response to my objection.

On Mon, Sep 22, 2014 at 4:14 PM, Dan Gustafson
<DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>>>>> wrote:
Chris,

I can't give you advice about whether you should or need to hire counsel.

But as we discussed last week, any resolution with you (and/or your counsel) would need to be approved by Judge Hood and fully disclosed.

Please let me know what you decide

Dan

From: caaloa
[mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>>]
Sent: Monday, September 22, 2014 3:01 PM

To: Dan Gustafson
Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Do you need to speak to a attorney to assist in resolving this based on my proposal?  I can handle this and an appeal myself and Mr. Ted Frank may also become involved at some point if needed and he agrees. At this

point if an attorney can't resolve this based on my proposal to Plaintiffs Counsel an attorney is not needed.

On Mon, Sep 22, 2014 at 3:55 PM, Dan Gustafson
<DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>>>> wrote:
Chris,

Whether to hire an attorney is up to you of course.  But if you decide to do so, please let me know who it is and his/her contact information.

Thanks

Dan

From: caaloa
[mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>]
Sent: Monday, September 22, 2014 2:39 PM

To: Dan Gustafson
Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Yes,
   Do you need to have me involve an attorney to speak to you on my behalf to resolve this? If not it will be filed tomorrow, I have been working on it since noon today and still not done.
Chris Andrews

On Mon, Sep 22, 2014 at 2:09 PM, Dan Gustafson
<DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>>>> wrote:
Dear Chris,

We have discussed and determined that we cannot agree to your proposed resolution of your potential individual objection at this time.

As I understand it, the deadline is Wednesday to file objections and the process/rules for doing so are set out in the Notice and on the website.

If you decide to file, the Court will have to decide the merits.

Please let me know if you have any questions

Dan

From: caaloa
[mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.co

m>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>]
Sent: Friday, September 19, 2014 7:56 PM
To: Dan Gustafson

Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Dan,
        Almost forgot. Upon rereading my revised objection the $990,000.00 will reimburse the class for the cost of the notice mailing which also benefits the class fund.
Christopher Andrews

On Fri, Sep 19, 2014 at 7:27 PM, caaloa
<caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>>> wrote:
Dan,
    Here it is on short notice, you can make changes and clean it up if need be. Give me a call to discuss some time this weekend as to Monday filing and which one. I would make a second copy and reword to have the award come out of the settlement fund if that's a deal breaker.
Chris Andrews

On Fri, Sep 19, 2014 at 5:45 PM, caaloa
<caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>>> wrote:
It was done, saved it and it is nowhere in the computer and no one here to help. Will have to redo and send again.

On Fri, Sep 19, 2014 at 4:29 PM, Dan Gustafson
<DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>>><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>>>>> wrote:
Thx

Dan

On Sep 19, 2014, at 3:19 PM, "caaloa"
<caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>>>> wrote:

Just looked at email after I called you. I will assemble a motion for your review and email it to you. That will show what I was going to clarify with you. Should be there within a forty minutes ish.
Christopher Andrews

On Fri, Sep 19, 2014 at 12:56 PM, Dan Gustafson
<DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>><mailto:DGustafson@gustafso

ngluek.com<mailto:DGustafson@gustafsongluek.com>><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>><mailto:DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>><mailto:DGustafson@gustafsongluek.com>>>> wrote:

Dear Mr. Andrews

Thanks for taking the time to talk to us this morning about your potential objections

We are considering your offer and will get you a final answer as soon as we can.

But as we advised you, we fully expect that we would need a written demand/agreement that we could put before the Court to make sure there is no confusion about the terms and to make sure that we full transparency before the Court and Class.

To further this possible resolution, can you get us a written demand and proposed settlement agreement?

Then we will all know what the exact details are so we can make clear choices

Let me know when I can expect a draft

Dan

From: E. Powell Miller
[mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>>>]
Sent: Thursday, September 18, 2014 3:54 PM
To: caaloa
Cc: Small, Daniel
(DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>>>>)
(DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>><mailto:DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>>>>); Dan Gustafson; Dan Hedlund
Subject: RE: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Mr. Andrews:

  Here is the call in information:

This conference call is scheduled for 10:00am Eastern Time/9:00am Central Time.
Date:     Friday, September 19, 2014
Start Time:          10:00 AM Eastern Daylight Time
Dial-in Number: 1-605-475-5950<tel:1-605-475-5950><tel:1-605-475-5950<tel:1-605-475-5950>><tel:1-605-475-5950<tel:1-605-475-5950><tel:1-605-475-5950<tel:1-605-475-5950>>><tel:1-605-475-5950<tel:1-605-475-5950><tel:1-605-475-5950<tel:1-605-475-5950>><tel:1-605-475-5950<tel:1-605-475-5950>>>> (Midwest)
Participant Access Code:          3674356

Sincerely,
Powell Miller

The Miller Law Firm, PC
950 West University, Suite 300
Rochester, Michigan  48307
248-841-2200<tel:248-841-2200><tel:248-841-2200<tel:248-841-2200>><tel:248-841-2200<tel:248-841-2200><tel:248-841-2200<tel:248-841-2200>>><tel:248-841-2200<tel:248-841-2200><tel:248-841-2200<tel:248-841-2200>><tel:248-841-2200<tel:248-841-2200>>>>

From: caaloa
[mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>>]
Sent: Thursday, September 18, 2014 4:46 PM
To: E. Powell Miller
Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

OK

On Thu, Sep 18, 2014 at 4:41 PM, E. Powell Miller
<epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>>> wrote:
Thanks Mr. Andrews

I will work on a call in number and be sure to e-mail it to you before 10 tomorrow.

Sincerely,

Powell

The Miller Law Firm, PC
950 West University, Suite 300
Rochester, Michigan  48307
248-841-2200<tel:248-841-2200><tel:248-841-2200<tel:248-841-2200>><tel:248-841-2200<tel:248-841-2200><tel:248-841-2200<tel:248-841-2200>>><tel:248-841-2200<tel:248-841-2200><tel:248-841-2200<tel:248-841-2200>><tel:248-841-2200<tel:248-841-2200>>>>

6

From: caaloa
[mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>>]
Sent: Thursday, September 18, 2014 4:34 PM

To: E. Powell Miller
Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Sure

On Thu, Sep 18, 2014 at 3:49 PM, E. Powell Miller
<epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>>> wrote:
Mr. Andrews,

 Can you participate in a call tomorrow (Friday) at 10 EST?  If so, I will e-mail a call in number.  We will have as participants who are all class counsel: myself, Dan Small, Dan Hedlund and/or Dan Gustafson.  Please advise.

  Sincerely,

  Powell Miller

Sent from my iPhone

On Sep 18, 2014, at 11:07 AM, "E. Powell Miller"
<epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>>> wrote:
Dear Mr. Andrews,

Given traffic issues, I suggest a call Friday or late afternoon Tuesday  if that works for you.  I have included on this string my colleague Dan Small.  Please let me know some good times.

  Best,

  Powell

The Miller Law Firm, PC
950 West University, Suite 300
Rochester, Michigan  48307
248-841-2200<tel:248-841-2200><tel:248-841-2200<tel:248-841-2200>><tel:248-841-2200<tel:248-841-

2200><tel:248-841-2200<tel:248-841-2200>>>

From: caaloa
[mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>>]
Sent: Saturday, September 13, 2014 9:28 AM
To: E. Powell Miller
Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Mr. Miller,

We can meet anytime after 10:00 am. Pick a day and I will meet rearrange my schedule. Traffic can be bad during rush hour especially where you are.

On Fri, Sep 12, 2014 at 6:18 PM, E. Powell Miller
<epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>>>> wrote:
Dear Mr. Andrews,

   Thank you for your email.  We respect your right to object, but have different views on the merits of the settlement and the amount of our fee request.  We suggest a meeting to discuss our respective views.  Please let me know if you are willing to meet and dates you are available.

   Sincerely,

   Powell Miller

Sent from my iPhone

On Sep 12, 2014, at 4:35 AM, "caaloa"
<caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>>>>> wrote:
Dear Mr. Miller,

I may have a solution to the problem of enhancing the settlement fund for the class and gaining approval of the settlement on November 12, 2014. The answer is on pages 65 and 66 of the objection. I want counsel to voluntary agree to reduce the attorney fee request by approximately $1,155.000. That would ensure the class has more than it has now. I will revise the objection to assist you with it's passage assuming the Court approves the motion. This will help Plaintiffs' Counsel save a further reduction of at least $2,000,000.00 and quite possibly all of the fee. I can provide additional details if you are interested. A bird in the hand is worth three in the bush.
Chris Andrews

On Mon, Sep 8, 2014 at 10:37 AM, E. Powell Miller
<epm@millerlawpc.com<mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>><mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>>

<mailto:epm@millerlawpc.com>>><mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com><mailto:e
pm@millerlawpc.com><mailto:epm@millerlawpc.com>><mailto:epm@millerlawpc.com><mailto:epm@millerl
awpc.com><mailto:epm@millerlawpc.com><mailto:epm@millerlawpc.com>>>>> wrote:
Dear Mr. Andrews,

 I did receive your rough draft of the objection and it is readable.  I appreciate your interest and will review it
closely.

  Sincerely,

 Powell Miller

Sent from my iPhone

On Sep 8, 2014, at 10:02 AM, "caaloa"
<caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>><
mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com
>>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmai
l.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@
gmail.com>>>> wrote:
Please email back and let me know you received it and it's readable. Thanks.

On Mon, Sep 8, 2014 at 10:01 AM, caaloa
<caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>><
mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com
>>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@gmai
l.com>><mailto:caaloa@gmail.com<mailto:caaloa@gmail.com><mailto:caaloa@gmail.com<mailto:caaloa@
gmail.com>>>> wrote:
Dear Mr. Miller,
                As promised attached is a rough draft of the objection that will be filed with the Court fourteen
days from today. Please forward to applicable parties for their review also. Do not take what was written as
personal, it's all business. After all parties have carefully reviewed the objection I can be reached at this email
address and phone of 1-248-635-3810<tel:1-248-635-3810><tel:1-248-635-3810<tel:1-248-635-
3810>><tel:1-248-635-3810<tel:1-248-635-3810><tel:1-248-635-3810<tel:1-248-635-3810>>> from 9:00
a.m. to 9:00 p.m. to  discuss the objection what should be done to benefit the class to resolve some or all of
these issues. Court's can do anything and the objector's could be wrong and overruled in spite of all the
evidence so compromise should be explored if Plaintiffs' Counsel so chooses. Thank you for your time.
Christopher Andrews

# EXHIBIT N

**From:**                    caaloa <caaloa@gmail.com>
**Sent:**                    Thursday, October 02, 2014 8:14 AM
**To:**                      Dan Gustafson
**Subject:**                 Supplement to objection

Dear Dan,

      The supplement to the objection is almost done and needed because you have failed to meet the Court's deadline declaring the notice plan has been effectuated as of 9-24-14. Five copies will be printed off starting Monday at 12:00 pm. Three copies go to the Court and two in the mail to Plaintiffs' Counsel and defendant either that day or the following morning. It's too bad you don't know what you can and can't do before a hearing regarding an objection. No deal by 12:00 pm Monday and the entire objection may very will  cause four Plaintiffs'  Counsel and some other class counsel to be booted off the case along with named plaintiffs. I will find substitutes for all parties. It should be easy after saving the attorney fees that Plaintiffs' Counsel and other lawyers will forfeit. Do some research where counsel has been found to be inadequate, this settlement takes the cake. This entire objection is a masterpiece and is the best one ever filed that totally dismembers a proposed settlement. See you on 11-12-14, unless it gets rescheduled. Should be standing room only and full of fireworks.
Chris Andrews

# EXHIBIT O

**From:**              caaloa <caaloa@gmail.com>
**Sent:**              Monday, October 06, 2014 2:20 PM
**To:**                Dan Gustafson
**Subject:**           Supplemental filing

Dear Dan,

      Filing was made today, paper copies to applicable counsel and it should hit the docket tomorrow. Nothing in our call was used in the supplement. The proof is the rough draft. All the other issues that were expanded on and discovered were due to continued digging from September 10, 2014 up until this morning. You guys will realize how much trouble you are in after reading this latest document. ==Approval is off the board forever. Some should prepare for a career change.==

Chris Andrews

# EXHIBIT P

**From:**          Dan Gustafson
**Sent:**          Monday, October 13, 2014 7:04 PM
**To:**            caaloa
**Cc:**            E. Powell Miller; Dan Small; Dan Hedlund; Alyson Oliver
**Subject:**       Re: No attorney representation

Ok

Dan

On Oct 13, 2014, at 5:37 PM, "caaloa" <caaloa@gmail.com> wrote:

> Dear Dan,
>          There is no attorney representing the Andrews' objector group as of the moment the original objection was filed on September 24, 2014 nor will there be one at the fairness hearing. Please direct all communications to me. Thank you.
> Chris Andrews

# EXHIBIT Q

| | |
|---|---|
| From: | caaloa <caaloa@gmail.com> |
| Sent: | Friday, October 24, 2014 8:19 PM |
| To: | Danette Mundahl |
| Subject: | Re: The Shan Group, Inc. et al. vs. BCBSM; case no. 10-14360 |

Dear Danette,

       Received. You guys are desperate, are now in much bigger trouble then before and will realize that when you see the sur-reply that will be filed on Monday or Tuesday. I will save the best part for the five minute oral presentation at fairness hearing.  You guys are beat and new counsel will replace you sooner or later. Forward this on to those who need to know. Enjoy your weekend.
Chris Andrews.

On Fri, Oct 24, 2014 at 4:57 PM, Danette Mundahl <DMundahl@gustafsongluek.com> wrote:

Attached please find documents filed via ECF today, October 24, 2014 regarding Plaintiffs' Final Approval of Settlement and Plan of Allocation.  Also please find Plaintiffs' Reply to Objectors' Opposition to Class Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Payment of Incentive Awards to Class Representatives.



If you have any questions, please contact us.



Thank you.



**Danette K. Mundahl**  |    Paralegal
**Gustafson Gluek PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402


Phone: (612) 333-8844


profile  | website | vCard  | map
_____
*committed to the protection of fair competition ...*

# EXHIBIT R

**From:**          Small, Daniel
**Sent:**          Friday, October 31, 2014 11:26 AM
**To:**            'caaloa@gmail.com'
**Subject:**       Shane v. Blue Cross Blue Shield of Michigan

Dear Mr. Andrews:

Plaintiffs are filing a motion today to strike the "sur-reply" you filed on October 28 as untimely.  We plan to file our motion around 4 pm.  I write because the Court's local rules require us to see whether you agree to what the motion requests.

Do you agree that your "sur-reply" should be struck?

Our motion also asks the Court to disallow your use of the "one sentence document" at the fairness hearing for failure to timely provide a copy to the parties' counsel.  Do you agree that you should be prohibited from using the document at the hearing?

Please respond to these questions before 4 pm today.

Sincerely,
Dan Small



Daniel A. Small
Partner

**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, NW | Suite 500 West
Washington, DC 20005
t:  202.408.4610 | f:  202.408.4699
www.cohenmilstein.com

**From:**              caaloa <caaloa@gmail.com>
**Sent:**              Friday, October 31, 2014 8:35 PM
**To:**                Small, Daniel
**Subject:**           Re: Shane v. Blue Cross Blue Shield of Michigan


Dear Mr. Small,
            We request that Plaintiffs' Counsel send us a transcript of the fairness hearing within three days
of it's conclusion. Counsel and/or defendant opened Pandora's Box with that stunt, (that maybe defendant put
you up to) so resolving this breach issue before it goes any further is a good idea. Defendant has nothing to lose,
ever ,but counsel risks losing everything.at any time. Be wary of a double cross by them. Happy Holloween.
Christopher Andrews on behalf of all the objector's

On Fri, Oct 31, 2014 at 2:24 PM, caaloa <caaloa@gmail.com> wrote:
Dear Mr. Small,
                The answer to your two questions are below.

Counsel writes: Do you agree that your "sur-reply" should be struck?

Response: No we do not agree that any documents should be struck because of violation of attorney privilege
when engaging in a conspiracy to delay our filing using the telephone lines that cross state lines .Does counsel
use the highest level of integrity when dealing with non lawyers? Be ready to explain that at the hearing.

You wrote:  Our motion also asks the Court to disallow your use of the "one sentence document" at the fairness
hearing for failure to timely provide a copy to the parties' counsel.  Do you agree that you should be prohibited
from using the document at the hearing?

Response: No we do not agree. We then could disclose that same one sentence verbally if we decide to break
attorney client privilege and only we can do that, not counsel. Until that happens you are to remain silent
because attorney client privilege is in effect.
Christopher Andrews on behalf of all objector's..

# EXHIBIT S

| | |
|---|---|
| From: | caaloa <caaloa@gmail.com> |
| Sent: | Thursday, November 13, 2014 11:28 AM |
| To: | E. Powell Miller |
| Subject: | Yesterday's hearing |

Dear Mr. Miller,

We are a lot easier to work with then to fight because we are interested in what is best for the class.

We expect to receive a copy of the transcript in a few days as requested. We also request that an email and snail mail copy of the order be sent to us for review. Claim forms for all the objectors will be sent in before the 16th which allows us standing to file an appeal within 30 days of the order being filed if needed.

There were some errors and misstatements made by class counsel yesterday that will come back to bite counsel in the future. For example two misstatements are as follows. Mr. Small made a false statement yesterday regarding the conference call. Second, you stated the contents of the call were secret but then made a statement I was engaged in filing objections full time. Who told you that and when? Counsel also brought up information that will only hurt them going forward if an appeal is filed. Clearly strategic errors were made by class counsel.

Class Counsel still is not clear on what they can and can't do when resolving objections with objectors. You better read up on it or give me a call, you will need that information in the future.

The court could approve the settlement despite eighteen errors that have occurred and have not been addressed along with the failed notice issue. Any four of the fatal one's will cause the appeals court to send this right back to the district for correction. In fact counsel could also be found inadequate by the circuit at that point and forfeit all fees.

If the Court approves the settlement but cuts the fee down we accomplished only a third of our goal and saved the class money in addition to the $141K in mailing costs counsel is not seeking reimbursement for. We will determine what to do at that point.

Assuming the settlement is not granted approval but counsel is granted additional time to fix all the errors the objector's have pointed out  you will also need to fix some additional errors we found in the last few days that we were unable to bring to the attention of the court and class counsel so you can call us for help.

Mr. Frank has offered us assistance with any appeal. We will not lose this case if we bring him in on this, we already know this and will do most of the legwork. We are waiting to hear that counsel's have self reported. If we don't hear soon we will start to file complaints based on the the severity of each counsel in breaching the secrecy pledge which was also violated at the fairness hearing.

Chris Andrews

# EXHIBIT T

| | |
|---|---|
| From: | caaloa <caaloa@gmail.com> |
| Sent: | Friday, November 14, 2014 10:14 AM |
| To: | E. Powell Miller |
| Subject: | Re: |

No need to respond until after the order comes down.

On Fri, Nov 14, 2014 at 6:29 AM, E. Powell Miller <epm@millerlawpc.com> wrote:
Mr. Andrews,

I am out of town. I will respond to your email by Monday.

Sincerely,

Powell

Sent from my iPhone

# EXHIBIT U

| | |
|---|---|
| **From:** | caaloa <caaloa@gmail.com> |
| **Sent:** | Monday, December 08, 2014 8:15 AM |
| **To:** | Dan Gustafson; Dan Hedlund; Daniel Small; E. Powell Miller; isquith@whaft.com; tbell@whath.com |
| **Subject:** | 21 day countdown to sanction motion filing begins now |
| **Attachments:** | Sanctions Motion.docx; Vilolation of Civility Principles.pdf |

Hello,

     BAR complaints will also be filed within days after that. Attached is the proposed motion and relevant.court document.

Happy Holidays.

Chris Andrews

December 30, 2014

Clerk of Court

The United States District Court

For The Eastern District of Michigan

Southern Division

U.S. Courthouse

231 W. Lafayette Blvd.

Detroit, Michigan 48226

| | |
|---|---|
| The Shane Group, Inc. etc. al | Case No. 2:10-cv-14360-DPH-MKM |
| Plaintiffs, | Motion For Sanctions |
| v. Blue Cross Blue Shield of Michigan, | |
| Defendant . | Courtroom of Judge Denise Page Hood |

Four lawyers working for three of class counsel violated the following Civility
Principles along with the Preamble.

Attorney's Responsibilities To Other Counsel (and should include Pro se
litigants/objectors.

1,2,3,4,6,7,9,11,23,24,27 and 28.

Violated Attorney Responsibilities To The Court

Two attorneys lied to the Court at the Fairness hearing. Mr. Small intentionally

mislead the Court and Mr. Miller by disclosing contents of the privileged

conversation but misconstrued the objector's comment and was in error but never

the less it's still a misstatement that unfairly influenced the Court. This was all

done to obtain the artificially inflated fees and approval of a hideous settlement.


MOTION FOR SANCTIONS AGAINST CLASS COUNSEL BASED ON

1. Rule 11 of the <u>Federal Rules of Civil Procedure</u>;

2. <u>28 U.S.C. § 1927</u>

3. The inherent power of the court.

4. Contempt of court by lying to the Court at the Fairness Hearing.


Objector incorporates all documents they have filed in this lawsuit into this motion.

Objector also ask for sanctions for bad faith, fraud, conspiracy and violation of

RICO statutes based on two or more violations of federal law that being two counts

of wire fraud and civil and criminal contempt of court for one attorney for directly

and intentionally lying to the Court at the Fairness Hearing.

FED. R. Civ. P. 11 (c)(1)(A).

The Safe Harbor Provision Unlike the case of court-initiated sanctions, a party seeking to impose sanctions must first serve the opposing party with a Rule 11 motion at least twenty-one days before presenting the motion to the court, and then file the motion with the court.

Objector request the following:

Strike  all of the papers identified below due to Class Counsel intentionally breaching  the attorney client privilege with objectors and using that privileged information and the fraudulently created document  in their papers that were therefore poisoned and then filed with the Court on October 24, 2014. Class counsel has employed fraud and bad faith to attempt to gain approval of the settlement with the attorney fee and expenses as the ultimate goal, not justice for the class first.

Those documents that objector requests striking are:

Strike Class Counsel's Motion For Award Of attorneys' Fees, Reimbursement Of Expenses, And Payment Of Incentive Awards To Class Representatives.

Strike Reply To Objectors' Opposition To Class Counsel's Motion For Award Of Attorneys' Fees, Reimbursement Of Expenses And Payment of Incentive Awards To Class Representatives.

Strike Declaration Of Daniel C. Hedlund In Support Of Reply To Objectors'

Opposition To Class Counsel's Motion For Award Of Attorneys' Fees,

Reimbursement Of Expenses, and payment Of Incentive Awards To Class

Representatives.

Strike Plaintiffs' Motion For Final Approval Of Settlement And Plan Of Allocation

Strike Exhibits B,H,L,M and N.

Strike counsel's Notice of Motion and Motion to Strike Sur-reply Of Objector

Christopher Andrews.

Strike Blue Cross Blue Shield of Michigan's Memorandum In Support Of Motion

For Final Approval of Class Action Settlement.


Class Counsel filed a meritless "Motion to Strike Sur-reply" in a bad-faith effort

that continued their unethical conspiracy to obtain approval of the $30 million

settlement and obtain $13.5 million in unjustified fees and expenses by fraudulent

means and try to intimidate the objectors at all costs. Class counsel's motion to

strike sur-reply wasted the objectors and Court's time in a stupid thought out

motion to attempt to bury evidence of bad faith and fraudulent undertakings by

class counsel.

The objectors request sanctions under 28 U.S.C. § 1927, because class counsel

unreasonably sought to obstruct and delay and to falsely cause the approval of the

settlement through the use of fraudulent documents and lying to the Court at the Fairness Hearing.

No question this is bad faith and fraud by the lawyers and qualifies as fraudulent inducement is creation of a document with the intent of ultimately obtaining through the use of fraud unjust approval of the settlement and usurious attorney fees and costs.

Lawyers lied on the conference call by using the telephone to cross state lines and through the use of a computer by having objectors email the fee motion to class counsel to commit this failed conspiracy against the objectors, the class and the Court.

Mr.  intentionally lied directly to the Court when he said at the Fairness Hearing that he stated ???????/

Obviously that was a untrue statement class counsel made as to why they needed the motion created by us. It was designed with the sole intent of falsely impeaching the objector's not acting in the best interests of the class by addressing the eighteen remaining errors in the settlement.

## 28 U.S.C. § 1927 Sanctions

Section 1927 states, in relevant part, that "[a]ny attorney . . . who so multiples the

proceedings in any case unreasonably and vexatiously may be required by the

court to satisfy personally the excess costs, expenses, and attorneys' fees

reasonably incurred because of such conduct."

**Contemptuous conduct consists of verbal or non-verbal acts which:**

**(1) Embarrass or obstruct the court in its administration of justice or derogate from its authority or dignity;**

**(2) Bring the administration of justice into disrepute; or**

**(3) Constitute disobedience of court order or judgment.**

For dispositive sanctions :

Willfulness, bad faith, or fault In re Global Technovations, Inc. ., 431 B.R. 739,

779 (Bankr. E.D. Mich. 2010) (using "fault" to describe conduct ranging from

intentional conduct to ordinary negligence). Other cases in circuit define "fault" as

"objectively unreasonable behavior." E.g., BancorpSouth Bank v. Herter , 643

F. Supp. 2d 1041, 1060 (W.D. Tenn.  2009); Jain v. Memphis Shelby Airport Auth.

, No. 08-2119-STA-dkv,  2010 WL 711328,  at *3 (W.D. Tenn. Feb. 25, 2010).

Bad faith

In re Global Technovations, Inc., 431 B.R. 739, 782 (Bankr. E.D. Mich. 2010).

Bad faith not required Miller v. Home Depot USA, Inc., No. 3-08-0281,

2010 WL 373860, at *1 (M.D. Tenn. Jan. 28, 2010). Ordinary negligence

Jain v. Memphis Shelby Airport Auth. , No. 08-2119-STA-dkv, 2010 WL 711328,

at *3 (W.D. Tenn. Feb. 25, 2010);  Forest Labs., Inc. v. Caraco Pharm.

Labs., Ltd. , No. 06-CV-13143, 2009 WL 998402, at *5-6 (E.D. Mich. Apr.

14, 2009

**PREMIUM LEGAL RESOURCES LEGAL FORMS ASK A LAWYER**

(excerpted from The Manual for Complex Litigation, '95 ed.)

20.15 Sanctions

.151 General Principles

.152 Sources of Authority

.153 Considerations in Imposing

.154 Types

.155 Procedure

20.151 General Principles

The rules and principles governing the are the same in complex as in other

litigation, but the potential of sanctions requires careful attention in complex

litigation because misconduct may have more severe consequences. Because the litigation will generally be conducted under close judicial oversight and control, there should be fewer opportunities for sanctionable conduct to occur.

If the court's management program is clear, specific, and reasonable - having been developed with the participation of counsel - the parties will know what is expected of them and should have little difficulty complying. The occasions for sanctionable conduct will therefore be reduced. Indeed, the need to resort to sanctions may reflect a breakdown of case management. On the other hand, the stakes involved in and the pressures generated by complex litigation may lead some parties to violate the rules.

Although as a general matter sanctions should not be a means of management, the court needs to make clear its willingness to resort to sanctions, sua sponte if necessary, to assure compliance with the management program. -fn.19

The design of the case management program should anticipate compliance problems and include prophylactic procedures, such as requiring parties to meet and confer promptly in the event of disputes and providing ready access to the court if they cannot resolve them. In addition, the court should inform counsel at the outset of the litigation of the court's expectations about cooperation and professionalism. Perceptions of the limits of legitimate advocacy differ; advance

guidance from the court can reduce the need for sanctions later. Though at times unavoidable, sanctions should be considered a last resort.

The court should exercise its discretion with care and explain on the record or in an order the basis for its action and the purpose to be achieved. Sanctions may be imposed for general or specific deterrence, to punish, or to remedy the consequences of misconduct. Sanctions proceedings can be disruptive, costly, and may create personal antagonism inimical to an atmosphere of cooperation. Counsel should therefore avoid moving for sanctions unless all reasonable alternatives have been exhausted.

20.152 Sources of Authority

The primary codified sources of authority to impose sanctions in civil litigation are 28 U.S.C. 1927 and Fed. R. Civ. P. 11, 16, 41, and 56(g). -fn.20 Sanctions relating to discovery are authorized by Fed. R. Civ. P. 26, 30, 32(d), 33(b)(3)-(4), 34(b), 35(b)(1), 36(a), and, most prominently, Rule 37. -fn.21 Under limited circumstances sanctions may also be imposed under local rules. -fn.22

Sanctions may also be imposed through the exercise of the court's inherent powers. -fn.23 The court may resort to this power even where the conduct at issue could be sanctioned under a statute or rule; the court should, however, avoid resort to its

inherent power if the statute or rule is directly applicable and adequate to support the intended sanction. -fn.24

The court may assess attorneys' fees pursuant to its inherent power, but when sitting in diversity should avoid doing so in contravention of applicable state law embodying a substantive policy, such as a statute permitting prevailing parties to recover fees in certain classes of litigation. -Fn.25

Because the applicable standards and procedures and the available sanctions will vary depending on the authority under which the court proceeds, it needs to decide on the choice of the authority on which it will rely and make that choice clear in its order. For example, 28 U.S.C. 1927 authorizes the assessment of costs and fees against an attorney only - it therefore cannot provide authority to impose sanctions on a party.

20.153 Considerations in Imposing

In considering the imposition of sanctions, the judge should take these factors into account:

* the nature and consequences of the dereliction or misconduct;

* the person(s) responsible;

* the court's discretion under the applicable source of authority to impose sanctions

and to choose which sanctions to impose;

* the purposes to be served by imposing sanctions, and what is the least severe sanction that will achieve the intended purpose; and

* the appropriate time for conducting sanctions proceedings.

With respect to the consideration of the nature and consequences of the dereliction or misconduct, the court should take these factors into account:

* whether the act or omission was willful or negligent;

* whether it directly violated a court order or a federal or local rule;

* its effect on the litigation and the trial participants;

* whether it was isolated or part of a course of misconduct or dereliction; -fn.26 and

* the existence of any extenuating circumstances.

Rule 11 substantially limits the authority of the court to impose monetary sanctions, but they may still be available in unusual cases or under other rules or powers.

If monetary sanctions are warranted, they should generally be imposed only on the person(s) responsible for the misconduct; if assessed against counsel, they should be accompanied by a direction not to pass the cost on to the client.

It may be appropriate to sanction the client or the client and attorney jointly. If the proper allocation of responsibility between counsel and client is unclear, its determination may raise problems; by pitting the attorney against the attorney's client, it can create a conflict of interest. -fn.27 In addition, it may require inquiry into potentially privileged communications. -Fn.28 The court should seek the least disruptive alternative, which may be to impose joint and several liability on both counsel and client, -fn.29 or to defer the matter of sanctions until the end of the litigation. -Fn.30

Some types of nonmonetary sanction, such as dismissal, default, or preclusion of a claim or evidence, will or may affect the outcome. They should be imposed only in egregious circumstances and only after consideration of the following factors:

* the policy favoring trial on the merits;

* whether the sanction will further the just, speedy, and inexpensive determination of the action;

* the degree to which the sanctioned party acted deliberately and knew or should have known of the possible consequences;

* the degree of responsibility of the affected client;

* the merits and importance of the claim(s) affected;

* the impact on other parties or the public interest; and

* the availability of less severe sanctions to accomplish the intended purpose.

20.154 Types

In imposing the least severe sanction adequate to accomplish the intended purpose, the court can select from a broad range of options. -Fn.31 These include the following:

* Reprimand. For most minor violations, particularly a first infraction, an oral reprimand will suffice. In more serious cases, a written reprimand may be appropriate.

* Cost shifting. The purpose of Rule 11 sanctions is deterrence rather than compensation; the rule therefore permits cost shifting only in "unusual circumstances." -fn.32 In contrast, many of the discovery rules (primarily Rules 26(g) and 37) and Rule 16(f) (dealing with pretrial conferences) require or permit cost shifting in specified situations. Under 28 U.S.C. 1927, Fed. R. Civ. P. 56(g) (depositions), and its inherent power, the court may order cost-shifting sanctions for actions taken in bad faith.

* Denial of fees or expenses. The court may decline to award otherwise recoverable attorneys' fees and expenses, or order counsel not to charge them to

their client, when incurred through dilatory or otherwise improper conduct, or in proceedings brought on by such conduct.

* Remedial action. Counsel and parties may be required to remedy a negligent or wrongful act at their own expense, as by reconstructing materials improperly destroyed or erased.

* Grant/denial of time. Improper delay may justify awarding opposing parties additional time for discovery or other matters, -fn.33 or denying otherwise proper requests for extension of time.

More serious sanctions, reserved for egregious circumstances, include the following:  (like in this case)

* Demotion/removal of counsel. An attorney may be removed from a position as lead, liaison, or class counsel, or (in an extreme case) from further participation in the case entirely. Such a sanction, however, is likely to disrupt the litigation, may cause significant harm to the client's case and the reputation of the attorney or law firm, and can conflict with a party's right to counsel of its choosing.

* Removal of party as class representative. Before imposing this sanction, the court should consider ordering that notice be given to the class under Rule 23(d)(2) to

enable them to express their views concerning their representation or intervene in the action. -fn.34

* Enjoining party from commencing other litigation. While there is a strong policy against denying access to the courts, a party may be enjoined from commencing other actions until it has complied with all orders in the current action, or from bringing, without court approval, other actions involving the same or similar facts or claims.

* Preclusion/waiver/striking. Failure to timely make required disclosures or production, raise objections, or file motions may be grounds to preclude the introduction of related evidence, deem certain facts admitted and objections waived, strike claims or defenses, or deny the motions, including those seeking to amend pleadings or join parties. -fn.35

* Dismissal. This severe sanction should generally not be imposed until the affected party has been warned and given a chance to take remedial action, and then only when lesser sanctions, such as dismissal without prejudice and assessment of costs, would be ineffective.

* Vacation of judgment. The court may vacate a judgment it has rendered if procured by fraud. -fn.36

* Suspension/disbarment. The court may initiate proceedings to suspend an attorney from practice in the court for a period of time or for disbarment. -fn.37

* Fine. The court may assess monetary sanctions apart from or in addition to cost shifting, even without a finding of contempt. The amount should be the minimum necessary to achieve the deterrent or punitive goal, considering the resources of the person or entity fined. - fn.38

* Contempt. The court may issue a contempt order under its inherent authority, -fn.39 statute, -fn.40 or rule. -fn.41 The order should indicate clearly whether the contempt is civil or criminal. The procedure and possible penalties will depend on that determination and the nature and timing of the contemptuous act. -fn.42

* Referral for possible criminal prosecution. Where the misconduct rises to the level of a criminal offense, -fn.43 the matter may be referred to the U.S. Attorney's Office.

20.155 Procedure

The appropriate timing for the imposition of sanctions depends on the basis for their imposition. Generally sanctions are most effective when imposed promptly after the improper conduct has occurred. -Fn.44 This maximizes their deterrent effect in the litigation. Prompt imposition also allows the court to try to deal with

the problem by imposing less severe sanctions before resorting to more severe measures should they become necessary. Some sanctions, however, depend for their predicate on further proceedings.

The frivolous nature of a paper may not be established until further action by the court. Some misconduct or the extent of its consequences may not become apparent until the litigation has developed further; some sanctions are expressly conditioned on later developments. -fn.45 Certain facts may have to be established before the court can decide the sanctions issue, a process which may delay the litigation unless deferred until its conclusion.

Similarly, as discussed above, deferral is advisable where the decision may require inquiry into potentially privileged communications and create a conflict of interest between counsel and client. Delaying rulings on sanctions may allow the court to consider the issue more dispassionately; the court must be careful, however, not to apply the wisdom of hindsight. Sanctions should not be assessed without notice and an opportunity to be heard. -Fn.46

The extent of the process afforded, however, depends on the circumstances, primarily the type and severity of sanction under consideration. -fn.47 An oral or evidentiary hearing may not be necessary for relatively minor sanctions; the issue may be decided on papers. -fn.48 To provide notice when acting sua sponte, the

court should issue an order to show cause why sanctions should not be imposed, specifying the alleged misconduct. -Fn.49 To avoid disrupting a settlement, monetary sanctions should generally not be assessed sua sponte once the parties have reached agreement. -Fn.50

Unless the sanction is minor and the misconduct obvious, the court should memorialize its findings and reasons on the record or by written order. - fn.51 The findings should identify the objectionable conduct clearly, state the factual and legal reasons for the court's action, including the need for the particular sanction imposed and the inadequacy of less severe measures, and the authority relied on. Making such a record will facilitate appellate review and help the appellate court understand the basis for the court's exercise of its discretion. -fn.52 Normally the court need not explain its denial of sanctions. -fn.53

Footnotes

19. See Fed. R. Civ. P. 11(c)(1)(B); Chambers v. NASCO, Inc., 111 S. Ct. 2123, 2131 n.8 (1991).

20. A number of federal statutes allow the court, in its discretion, to award prevailing parties costs, including attorneys' and sometimes experts' fees. See, e.g., 42 U.S.C.A. 1988, 2000e-5(k) (West Supp. 1993); 15 U.S.C. 78i(e), 78r(a). Such

statutes may expressly predicate such an award on a finding that the action (or defense) was meritless, see, e.g., 15 U.S.C. 77k(e), and common law may impose the same requirement when awards under such statutes are sought by defendants. See Christansburg Garment Co. v. EEOC, 434 U.S. 412, 416 (1978). But see Fogerty v. Fantasy Inc., 62 U.S.L.W. 4153 & 4155 n.12 (U.S. March 1, 1994) (same standard applies to plaintiffs and defendants seeking fees in copyright, patent, and trademark cases). Such awards may therefore be considered a sanction for meritless litigation.

21. Note that Rule 11 is expressly made inapplicable to discovery. Fed. R. Civ. P. 11(D).

22. See, e.g., Rule 11.1 of the Local Rules for Civil Cases, E.D. Mich.; Miranda v. Southern Pacific Transp. Co., 710 F.2d 516 (9th Cir. 1983).

23. See Chambers, 111 S.Ct. at 2132-33, and cases cited therein.

24. Id. at 2135-36 & n.14 (distinguishing Societe Internationale v. Rogers, 357 U.S. 197 (1958) (Rule 37)); United States v. One 1987 BMW 325, 982 F.2d 655, 661 (1st Cir. 1993) (where civil rule limits sanction that may be imposed, court may not circumvent by resort to inherent power).

25. Chambers, 111 S.Ct. at 2136-37.

26. See Fed. R. Civ. P. 11(b), (c) advisory committee's note (listing these and other considerations).

27. See Healy v. Chelsea Resources, Ltd., 947 F.2d 611, 623 (2d Cir. 1991); White v. General Motors Corp., 908 F.2d 675, 685 (10th Cir. 1991).

28. Though it may be ethically permissible for an attorney to reveal client confidences to the extent necessary in this context, see Model Rules of Professional Conduct 1.6(b)(2); Model Code of Professional Responsibility DR 4-101(c), this does not resolve the privilege issue.

29. See Martin v. American Kennel Club, 1989 U.S. Dist. LEXIS 201, at *22-23 (N.D. Ill. 1989) ("Absent a clear indication of sole responsibility" liability should be joint and several).

30. See, e.g., O'Neal v. Retirement Plan for Salaried Employees of RKO Gen. Inc., 1992 U.S. Dist. LEXIS 237, at *12-13 (S.D.N.Y. 1992); Fed. R. Civ. P. 11 advisory committee's note.

31. See Chambers v. NASCO, Inc., 111 S. Ct. 2123, 2132-33 (1991) ("a primary aspect" of court's discretion to invoke inherent sanction power "is the ability to fashion an appropriate sanction" for abuse of judicial process).

32. See Fed. R. Civ. P. 11 advisory committee's note (monetary sanctions ordinarily paid into court, but may be directed to those injured if deterrence would otherwise be ineffective).

33. See, e.g., Fed. R. Civ. P. 30(D)(2).

34. See Fed. R. Civ. P. 23(d)(2) & advisory committee's note.

35. See, e.g., Fed. R. Civ. P. 37(b)(2), (c)(1).

36. Chambers, 111 S. Ct. at 2132 (inherent power); Fed. R. Civ. P. 60(B).

37. The court has inherent power to suspend or disbar attorneys, but should follow applicable local rules. See In re Snyder, 472 U.S. 634, 643 & n.4 (1985). For discussion of the standard for taking such action, see id. at 643-47 (refusal to supplement fee petition or accept CJA assignment coupled with single instance of discourtesy insufficient to support suspension).

38. See, e.g., Fed. R. Civ. P. 11(C)(2).

39. See Chambers, 111 S. Ct. at 2132; Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980).

40. See, e.g., 18 U.S.C. 401-403, 28 U.S.C. 1784, and statutes cited in Fed. R. Crim. P. 42 advisory committee's note.

41. See, e.g., Fed. R. Civ. P. 37(b)(2)(D), 45(e), Fed. R. Crim. P. 17(G).

42. See Bench Book for United States District Judges 2.08 (civil contempt), 1.24 (criminal contempt) (Federal Judicial Center 1986) [hereinafter Bench Book]; 18 U.S.C. 3691 (jury trial of criminal contempts), 3692 (jury trial for contempt in labor dispute cases), 3693 (summary disposition or jury trial; notice); Fed. R. Crim. P.42 (criminal contempt). Since there is no federal rule establishing a procedure for civil contempt, the court should follow the procedures of Fed. R. Crim. P.42 to the extent applicable.

43. In particular, see 18 U.S.C. 1501-1517 (obstruction of justice).

44. See Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 881 (5th Cir. 1988).

45. See, e.g., Fed. R. Civ. P. 37(c)(2) (recovery of expenses for failure to admit depends on later proof of matter not admitted); Fed. R. Civ. P. 68 (assessment of costs incurred after settlement offer refused depends on failure to obtain more favorable judgment).

46. Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980). Some rules expressly require this. See, e.g., Fed. R. Civ. P. 11(C).

47. See, e.g., Media Duplication Servs. v. HDG Software, 928 F.2d 122, 1238 (1st Cir. 1991) (citing Roadway, 447 U.S. at 767 n.14 (due process concerns raised by

dismissal are greater than those presented by assessment of attorneys' fees)); G.J.B. Assoc., Inc. v. Singleton, 913 F.2d 824, 830 (10th Cir. 1990) (same); Fed. R. Civ. P. 11 advisory committee's note.

48. See, e.g., In re Edmond, 934 F.2d 1304, 1313 (4th Cir. 1991); Hudson v. Moore Bus. Forms, Inc., 898 F.2d 684, 686 (9th Cir. 1990); Fed. R. Civ. P. 11 advisory committee's note.

49. El Paso v. Socorro, 917 F.2d. 7 (5th Cir. 1990); Maisonville v. F2 Am., Inc., 902 F.2d 746 (9th Cir. 1990); Fed. R. Civ. P. 11(c)(1)(B) & advisory committee's note

50. See Fed. R. Civ. P. 11(c)(2)(B) & advisory committee's note.

51. See Fed. R. Civ. P. 11(C)(3).

52. The standard of review is abuse of discretion. Chambers v. NASCO, Inc., 111 S. Ct. 2123, 2138 (1991) (inherent power); Cooter & Gel v. Hartmax Corp., 496 U.S. 384, 405 (1990) (Rule 11); Blue v. United States Dep't of the Army, 914 F.2d 525, 539 (4th Cir. 1990) (28 U.S.C. 1927).

53. Fed.R.Civ.P. 11 advisory committee's note. Only the First Circuit has held to the contrary. See Metrocorps, Inc. v. Eastern Mass. Junior Drum & Bugel Corps

Ass'n, 912 F.2d 1, 3 (1st Cir. 1990); Morgan v. Massachusetts Gen. Hosp., 901

F.2d 186, 195 (1st Cir. 1990).


-----

Brought to you by - The 'Lectric Law Library

The Net's Finest Legal Resource For Legal Pros & Laypeople Alike.

http://www.lectlaw.com


http://federalpracticemanual.org/book/export/html/25

---

Home » Federal Practice Manual for Legal Aid Attorneys » Chapter 4: Drafting and Filing the Complaint

# 4.2 Sanctions

*Updated 2013 by Jeffrey S. Gutman*

Federal courts generally have three sources of power from which to impose sanctions:

1. Rule 11 of the Federal Rules of Civil Procedure;

2. 28 U.S.C. § 1927; and

3. The inherent power of the court.

These sources of power overlap and are not necessarily mutually exclusive.[1] The

legal aid attorney should consider all three carefully when asking for sanctions or

when faced with the threat of sanctions. This chapter explores each of these

grounds for imposing sanctions as well as the ethical issues inherent in ghostwriting filings for *pro se* litigants.

### 4.2.A. **Federal Rule of Civil Procedure 11**

Federal Rule of Civil Procedure 11 authorizes federal courts to issue sanctions against parties or their attorneys who file pleadings, motions, or other papers that are filed for an improper purpose or lack a required level of evidentiary or legal support. Rule 11 sanctions are not available for other sorts of misconduct, like discovery abuse or actions during a trial./2/ The aim of Rule 11 is to deter frivolous filings, to "curb abuses of the judicial system,"/3/ and to require litigants to refrain from conduct that frustrates Rule 1's goal of the "just, speedy, and inexpensive determination of every action."/4/

Rule 11 states that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented."/5/ That is, counsel must sign every document filed with the court./6/a A typed name is not a signature./7/ But, courts may by local rule establish electronic filing policies consistent with technical standards adopted by the Judicial Conference of the United States that permit electronic signature./8/ The signer's address, e-mail address, and telephone number must be included./9/ Additionally, local rules of court may require further

identifying information to accompany the signature, such as fax numbers./10/ In

*Business Guides Inc. v. Chromatic Communications Enterprises*, the Supreme

Court noted that "[t]he essence of Rule 11 is that signing is no longer a

meaningless act; it denotes merit. A signature sends a message to the district court

that this document is to be taken seriously."/11/

### 4.2.A.1   *Standards for Making Representations to the Court*

Rule 11(b) provides that,"[b]y presenting to the court a pleading, written motion,

or other paper--whether by signing, filing, submitting, or later advocating it--an

attorney or unrepresented party certifies that to the best of the person's knowledge,

information, and belief, formed after an inquiry reasonable under the

circumstances" that the material presented is not filed for an improper purpose and

has the requisite degree of evidentiary and legal support./12/ This language raises

two interpretive questions: what "later advocating" means and what "a reasonable

inquiry under the circumstances" entails.

The "later advocating" requirement was added to Rule 11(b) in 1993 to emphasize

that Rule 11 obligations continue throughout the litigation process./13/ This

amendment "subjects litigants to potential sanctions for insisting upon a position

after it is no longer tenable."/14/ Although an attorney must discontinue

advocating a position that the attorney later learns is invalid, Rule 11 does not

require a formal amendment or withdrawal of the initial filing./15/ Nor does Rule 11 cover contentions made before the court at oral argument regarding matters not previously raised because attorneys may have lacked time to research their validity./16/ However, oral statements that repeat baseless assertions earlier made in writing are sanctionable./17/

The "reasonable inquiry" requirement imposes on the attorney a duty to stop and investigate the legal and factual basis for a claim or defense before making it in writing./18/  How much and what type of inquiry is required depends on the circumstances. As one might expect, important circumstances include the amount of time the attorney has to make the investigation, the complexity of the matter, the party's familiarity with the matter, and the degree of access to relevant information./19/ A pending expiration of a statute of limitations or situation in which the client is facing irreparable or grave harm may justify a less robust investigation. If there is sufficient time to conduct a full investigation, an attorney is expected to interview relevant witnesses, review pertinent documents, and discuss the case with prior counsel if the case has been referred./20/ Generally, an attorney may rely upon the reasonable representations of their client, but good practice is to seek verification of those facts when it is possible to do so./21/ Lack of experience is not a relevant factor, as inexperienced attorneys are expected to

seek guidance from seasoned attorneys. At bottom, absolute certainty of the facts

following a reasonable investigation is not required./22/

Rule 11(b) enumerates four standards to which litigants and counsel must adhere

when presenting materials to the court. First, Rule 11(b)(1) requires that the

papers not be presented for an improper purpose. Prohibited improper purposes

include harassment, unnecessary delay, and the needless increase in the cost of

litigation./23/ Despite the subjective connotation of "improper purpose," most

courts agree that the test is an objective one based upon a totality of the

circumstances at the time the paper is filed./24/ Courts adhering to the objective

test will look to "objective indicators of purpose from which to infer improper

purpose" and will not consider or attempt to divine an individual litigant's

subjective purpose./25/ Frivolousness alone is not a basis for inferring improper

purpose. Courts using this test must identify specific "unusual circumstances" that

show an improper purpose, such as excessive filing of motions that are

substantially similar to earlier, unsuccessful motions./26/ While most circuits

addressing the issue agree that finding an improper purpose is a purely objective

task, a few courts disagree, leaving unresolved the question of whether, and to

what extent, subjective intent should be considered as a factor in determining the

litigant's purpose./27/

Complicating the improper purpose standard has been how to evaluate cases involving a mix of proper and improper purposes and cases involving the filing of non-frivolous documents which may nevertheless be filed for an improper purpose. The language of Rule 11 plainly states that papers presented for "any" improper purpose will be sanctionable./28/ However, the courts have split on mixed motive cases./29/ Whether non-frivolous filings made for improper purposes are sanctionable has also split the circuits. The Second, Ninth, and Tenth Circuits have held that sanctions may not be imposed in connection with the filing of a non-frivolous complaint, even if filed for an improper purpose./30/ These courts have found that that "[a] party should not be penalized for or deterred from seeking and obtaining warranted judicial relief merely because one of his multiple purposes in seeking that relief may have been improper."/31/ Alternatively, the Fourth, Fifth and Seventh Circuits have held that counsel filing a non-frivolous complaint for improper purposes may be sanctioned./32/ The Fourth Circuit has adopted a balancing test of sorts, stating that "the purpose to vindicate rights in court must be central and sincere."/33/ The Fifth Circuit has adopted a "but for" test to determine when a party may be sanctioned for filing a document with an improper purpose./34/ This test requires the movant to prove, through objectively ascertainable evidence, that "but for" the improper motive, the filing would not

have been filed./35/ In contrast, courts have held that sanctions may be awarded against attorneys filing non-frivolous motions for an improper purposes./36/

Second, Rule 11(b)(2) states that any claims, defenses, or legal contentions presented to the court must be grounded in existing law, asserted to extend, modify, or reverse existing law, or establish new law./37/ This requires attorneys to make an objectively reasonable inquiry under the circumstances into the state of the law. The standard is not met when the legal assertion is (1) objectively baseless and (2) the attorney has not made a "reasonable and competent inquiry" before making it./38/ The notion is that sanctions are warranted when a reasonable inquiry would reveal frivolousness to a comptent attorney./39/ A court need not find bad faith to issue sanctions; good faith is no defense./40/ Thus, an "empty head, pure heart" defense to a motion for sanctions must fail.  A legal position will be sanctionable only when it can be said that a "reasonable attorney in like circumstances could not have believed his actions to be legally justified."/41/

When the prevailing law is unsettled, a well-supported but unsuccessful argument should not be subject to sanctions.  When the existing law is clear, but contrary to the position of the legal aid attorney, courts have held that plausible arguments to extend, modify, or reverse existing law are not subject to Rule 11 sanctions./42/ Such arguments, though, should be grounded in favorable precedent in other

circuits or academic literature.  Reliance on policy or logic alone raises the risk of sanctions. The legal argument must have "absolutely no chance of success under the existing precedent" to contravene Rule 11./43/ Nonetheless, advancing an argument for the purpose of preserving it for appellate review is permissible, so long as the argument is not frivolous./44/ Legal services attorneys should document the legal research performed and consultations with other attorneys before filing because these efforts are subject to scrutiny should a Rule 11 motion be filed./45/ When an argument is foreclosed by existing law, the legal aid attorney should be careful to explain that the attorney is advancing a novel legal argument aimed at reversing existing law or establishing new law./46/

Third, Rule 11(b)(3) requires that any factual allegation either have evidentiary support or, if identified as such, be "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."/47/ Evidentiary support can include reasonable inferences from facts or circumstantial evidence./48/ This requires attorneys to make an objectively reasonable inquiry under the circumstances into the facts of the case. As noted above, to determine whether factual assertions are supported by an objectively reasonable factual inquiry, courts will look to several factors, including:

whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts./49/

The Second Circuit recently held that "[a] statement of fact can give rise to the imposition of sanctions only when the particular allegation is utterly lacking in support."/50/ It is not a violation of Rule 11 to fail to indentify the support for the fact as either based on direct evidence or inference./51/ Nor is it generally a violation not to disclose contrary factual evidence./52/ Generally, isolated factual errors are not sanctionable, so long as the error was made in good faith and in a context in which the filing as a whole had factual support./53/ However, courts have on occasion held such errors to be deserving of sanctions./54/ Factual assertions should, at bottom, be made with extreme care and after review by others in the legal aid office.

Fourth, Rule 11(b)(4) states that any denials of factual contentions must be either "warranted on the evidence" or, if identified as such, "reasonably based on a lack of information or belief."/55/ Thus, denials of fact are treated like factual

assertions and must be objectively reasonable. The addition of this fourth

requirement to the 1993 amended rule ensures an equal application to both

plaintiffs and defendants.

### 4.2.A.2.   *Sanctions*

Rule 11(c) permits, but no longer requires, the court to issue sanctions to attorneys,

law firms, or parties in violation of the rule or responsible for the violation./56/

The 1993 amendments made the issuance of sanctions, whether prompted by

motion or by the court's own initiative, discretionary rather than mandatory./57/

The advisory committee's notes list several factors that the courts should consider

in deciding whether to issue a sanction and, if appropriate, the kind of sanction to

impose:

> Whether the improper conduct was willful, or negligent; whether it
>
> was part of a pattern of activity, or an isolated event; whether it
>
> infected the entire pleading, or only one particular count or
>
> defense; whether the person has engaged in similar conduct in
>
> other litigation; whether it was intended to injure; what effect it
>
> had on the litigation process in time or expense; whether the
>
> responsible person is trained in the law; what amount, given the
>
> financial resources of the responsible person, is needed to deter

that person from repetition in the same case; what amount is

needed to deter similar activity by other litigants./58/

The 1993 amendments also stress that the purpose of sanctions is deterrence rather

than compensation and highlight the availability of non-monetary sanctions for the

court's consideration./59/  Consistent with this deterrence function, "if a monetary

sanction is imposed, it should ordinarily be paid into court as a penalty."/60/ These

amendments lessen the incentive for a litigant to file a motion for sanctions

because the litigant is less likely to profit financially if a Rule 11 violation is found

by the court. Rule 11, however, also authorizes the direct payment of fees and

expenses to the moving party when "warranted for effective deterrence."/61/ At

bottom, "sanctions should not be more severe than reasonably necessary to deter

repetition of the conduct by the offending person or comparable conduct by

similarly situated persons."/62/ This deterrence function permits the court to

account for the attorney's resources when setting a monetary sanction./63/

Rule 11 authorizes the court to sanction both attorneys and their clients./64/ Rule

11(c)(1)(A) further provides that, "[a]bsent exceptional circumstances, a law firm

shall be held jointly responsible for violations committed by its partners,

associates, and employees."/65/ Although this provision has apparently not been

applied to a legal services organization, it does suggest that such an entity could be

regarded as a law firm and, therefore, subject to sanctions when an attorney it employs violates Rule 11./66/ The advisory committee's notes state that the court may appropriately inquire whether "institutional parties" impose restrictions on the discretion of individual attorneys./67/ To the extent that such restrictions minimize the risk of institutional sanctions, legal aid organizations may wish to consider imposing them.

Rule 11(c)((1)(A) requires that a party seeking sanctions must serve a separate motion/68/ identifiying the conduct that is alleged to have violated Rule 11 on the alleged offender twenty-one days before filing the motion in court. /69/ During this twenty-one-day period,/70/ the party served may withdraw or correct any challenged material, thus eliminating the need for the motion to be filed with the court./71/ This "safe harbor" period aims to decrease the volume of Rule 11 motions that come before the court. Litigants may avoid potential sanctions by withdrawing or amending improper materials without the court's involvement. The court in *Barber v. Miller* discussed the rationale for the safe-harbor provision as follows:

These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refused to withdraw that

position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions. /72/

A court may also levy sanctions *sua sponte* but may do so only after issuing a specific order describing the perceived misconduct and allowing the possible offender an opportunity to show cause why the sanction should not be issued./73/ The rule incorporates a measure of due process protection./74/ However, because a *sua sponte* order to show cause does not allow an attorney the opportunity to withdraw the offending filing, courts are cautioned to "reserve such sanctions for situations that are akin to a contempt of court."/75/ Furthermore, to facilitate appellate review, the rule requires the court to describe the sanctionable conduct and the basis for the sanction imposed./76/

While the matter may turn on particular facts, Rule 11 sanctions are not generally immediately appealable under the collateral order doctrine./77/ On appeal,"[a]ll aspects of a district court's Rule 11 determination are examined under the abuse of discretion standard."/78/ However, when sanctions are levied *sua sponte*, they will

be reviewed with "particular stringency" due to the "unusual position of the trial court in such circumstances, serving at once as both prosecutor and judge . . . ."/79/

## 4.2.B. 28 U.S.C. § 1927

Another basis for sanctions lies in 28 U.S.C. § 1927, which serves "to deter unnecessary delays in litigation."/80/ The statute authorizes sanctions in the form of "excess costs, expenses, and attorneys fees" against any attorney who "multiplies the proceedings in any case unreasonably and vexatiously."/81/ Courts are divided on whether law firms (and, by extension, legal aid offices) may be subject to sanctions under § 1927 in addition to individual attorneys./82/  Courts have resorted to § 1927 more frequently since the statute was amended to include attorney fees./83/

The scope of authority to sanction under § 1927 is both broader and narrower than Rule 11./84/ Section 1927 is broader in that the attorney's behavior is examined throughout the entire litigation, as a "course of conduct,"/85/ while Rule 11 applies to individual filings.  The filing of a frivolous complaint, alone, may violate Rule 11, but not § 1927 because such a complaint does not "multiply" the proceedings./86/ Conversely, a course of conduct can be sanctionable under § 1927 even though the individual filings during that conduct comport with Rule 11 standards.

Section 1927 is narrower because, unlike Rule 11 requirement of objective reasonableness, § 1927 generally requires subjective bad faith./87/ Some courts, however, interpret § 1927 as authorizing sanctions when attorney conduct falls short of bad faith: "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."/88/  For these courts, malicious intent or bad purpose is not required. Thus, the "circuits are split as to whether § 1927 requires a showing of subjective bad faith or whether mere recklessness is sufficient."/89/

Since Rule 11 and § 1927 have different standards, courts deciding whether to issue sanctions under both may conduct a separate inquiry into § 1927 and Rule 11, but a court proceeding *sua sponte* under either rule must give the subject attorney notice and an opportunity to respond./90/ The resulting findings must detail the basis for the sanctions, link the conduct to the sanctions awarded, and distinguish among sanctions awarded under different theories./91/ Sanctions under § 1927 serve both deterrence and compensatory functions. As a result, the amount awarded need not be the least amount necessary to deter subsequent misconduct and is approrpiately payable to the opposing party./92/ The circuits are divided on whether it is not an abuse of discretion for a trial court to reduce a fee award to account for the sanctioned attorney's ability to pay it./93/

## 4.2.C.  The Inherent Power of the Court

The sanctioning power of the federal courts "is not limited to what is enumerated in statutes or in the rules of civil procedure."/94/ Federal courts have the inherent power to punish persons who abuse the judicial process.  The inherent power of the court is an "implied power squeezed from the need to make the courts function."/95/ Rule 11 and § 1927 do not displace the court's inherent power, but instead they exist concurrently./96/

The inherent power to sanction is broad./97/ The scope of the power reaches "any abuse" of the judicial process./98/ This includes the authority to sanction for conduct that occurs outside of the courtroom and is not limited to attorneys or parties./99/ Courts also have broad discretion to determine the appropriate sanction to be imposed./100/ Where appropriate, courts may impose attorney fees representing the entire cost of litigation./101/ However, the courts' inherent power to impose attorney fees "is limited to those cases where the litigant has engaged in bad-faith conduct or willful disobedience . . . ."/102/

Given the broad authority granted, a court's use of the inherent power should be used cautiously./103/ Any use must comply with due process./104/ Use of the power will be reviewed under the abuse of discretion standard./105/

**Table of Comparison:**

|  | **Rule 11** | **28 U.S.C. §1927** | **Inherent Power** |
|---|---|---|---|
| **Applicable Conduct:** | Pleadings, written motions, and other papers filed in a civil action for an improper purpose or without a reasonable inquiry into the facts and law. | Any conduct which so multiplies the proceedings in any case unreasonably and vexatiously. | Any abuse of the judicial process. |
| **Legal Standard Triggering Liability:** | Objective reasonableness | Circuit Split: Subjective bad faith or mere recklessness. | Bad faith required to award expenses including attorney fees. |
| **Who Can Be Sanctioned:** | Attorneys, their law firms, parties, and pro se litigants. | Attorneys only. | Broad authority. |
| **Procedural Requirements:** | Must be in separate motion, which must be served on the offending party 21 days before filing with the court. If offending filing is withdrawn, the matter is concluded. Court may demand attorney, law firm, or party show cause why conduct does not violate Rule 11(b) of its own initiative. | No specific requirements. Must comport with due process. | No specific requirements. Must comport with due process. |

_____
_____

1.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (finding that, despite Rule 11 and 28 U.S.C. § 1927 both being potentially applicable, court was not required to resort to using them when inherent power of court was best suited to facts); *see also* Danielle Kie Hart, *And the Chill Goes on--Federal Civil Rights Plaintiffs Beware: Rule 11 Vis-À-Vis 28 U.S.C. § 1927 and the Court's Inherent Power*, 37 Loy. L.A. L. Rev. 645 (2004) (exploring interaction of Rule 11, § 1927, and inherent power of court, and their chilling effect on development of common law).

2. *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 245 (1st Cir. 2010) (actions during trial); *Christian v. Mattel, Incorporated*, 286 F.3d 1118, 1129-31 (9th Cir. 2002) (discovery abuses and other bad conduct).

3. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990).

4. Fed. R. Civ. P. 1;  Fed. R. Civ. P. 11 advisory committee's notes   (1993).

5. Fed. R. Civ. P. 11(a).

6. "Other papers" is broadly interpreted. *See, e.g., Becker v. Montgomery*, 532 U.S. 757, 763 (2001) (notice of appeal); *Apolistic Pentecostal Church v. Colbert*, 169 F.3d 409, 417 (6th Cir. 1999) (garnishee disclosure).  However, Rule 11 does not apply to discovery. *See* Fed. R. Civ. P. 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rule 26 through 37.").

7. *Becker*, 532 U.S. at 764. Should a filing be made without a handwritten signature, the clerk's office should return it and a substitute promptly filed. *See* Fed. R. Civ. P. 11(a) .

8.  Fed. R. Civ. P. 5(d)(3); *see also* Fed. R. Civ. P. 5 advisory committee's notes (1996) ("An electronic filing that complies with the local rule satisfies all requirements for filing on paper, signature, or verification.").

9. Fed. R. Civ. P. 11(a).

10. Fed. R. Civ. P. 11 advisory committee's notes (1993).

11. *Business Guides, Incorporated v. Chromatic Communications Enterprises* , 498 U.S. 533, 546 (1991).

12. Fed. R. Civ. P. 11(b).

13. *See e.g., Buster v. Greisen*, 104 F.3d 1186, 1190 n.4 (9th Cir. 1997) (holding that district court could impose sanctions on plaintiff for continuing to argue frivolous contentions asserted in complaint even when action was filed in state court and removed). *See also Fabriko Acquisition Corporation v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008).

14. Fed. R. Civ. P. 11 advisory committee's notes (1993). At the same time, a voluntary dismissal of a complaint does not divest the trial court of jurisdiction to issue Rule 11 sanctions. *Cooter & Gell*, 496 U.S. at 395.

15. Fed. R. Civ. P. 11 advisory committee's notes (1993). *See Samuels v. Wilder*, 906 F.2d 272, 275 (7th Cir. 1990) (updating of papers that were not sanctionable when filed is not required); *but see Merritt v. International Association of Machinists and Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010).

16. Fed. R. Civ. P. 11 advisory committee's notes (1993) (Rule 11 "does not cover matters arising for the first time during oral presentations to the court, when counsel may make statements that would not have been made if there had been more time for study and reflection."). *See also Columbia Venture LLC v. FEMA (In re Bees)*, 562 F.3d 284, 289 (4th Cir. 2009) (court could not sanction attorney for her erroneous statements that were not advocated previously in written submission).

17. *Phonometrics, Incorporated v. Economy Inns of America*, 349 F.3d 1356, 1361 (Fed. Cir. 2003), *cert. denied sub nom.*, *Sutton v. Interstate Hotels, LLC*, 541 U.S. 1010 (2004).

18. *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003).

19. *CQ International Company v. Rochon International Incorporated, USA*, 659 F.3d 53, 62 (1st Cir. 2011).

20. *Wigod v. Chicago Mercantile Exchange*, 981 F.2d 1510, 1523 (7th Cir. 1992) (sanctioned attorney in antitrust case failed to interview prior counsel and available witnesses); *Smith v. Our Lady of the Lake Hospital, Incorporated*, 960 F.2d 439, 446 (5th Cir. 1992) (attorney receiving case from another attorney may place some reliance on other attorney's prior investigation).

21. *Dubois v. U.S. Department of Agriculture*, 270 F.3d 77, 82-83 (1st Cir. 2001).

22. *CQ International Company*, 659 F.3d at 63.

23. Fed. R. Civ. P. 11(b)(1). This list is not exclusive. Actions intended to embarrass an opposing party may, for example, be sanctionable under Fed. R. Civ. P. 11(b)(1). *See Whitehead v. Food Max of Mississippi*, 332 F.3d 796, 807 (5th Cir.) (en banc), *cert. denied*, 540 U.S. 1047 (2003). So may actions filed to make a political point. See *Saltany v. Reagan*, 886 F.2d 438, 440 (D.C. Cir. 1989); *but see* Sussman v. Bank of Israel, 56 F.3d 450, 459 (2d Cir. 1995) (exerting pressure by generating adverse publicity is not an improper purpose), *cert. denied* 516 U.S. 916 (1995) .

24. *See FDIC v. MAXXAM, Incorporated*, 523 F.3d 566, 581 (5th Cir. 2008); *G.C. & K.B. Investments, Incorporated v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003); *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000).

25. *See* Jerold S. Solovy et al., *Sanctions Under Rule 11: A Cross-Circuit Comparison*, 37 Loy. L.A. Rev. 727, 729 (2004); *MAXXAM*, 523 F.3d at 581.

26. *See MAXXAM*, 523 F.3d at 585-86; *G.C. & K.B. Investments*, 326 F.3d at 1110; *see also* Solovy, *supra* note 25, at 729-30.

27. In *Szabo Food Service, Incorporated v. Canteen Corporation*, 823 F.2d 1073, 1083 (7th Cir. 1987), *cert. dismissed*, 485 U.S. 901 (1988), the Seventh Circuit referred to the improper purpose prong as the "subjective component" of Rule 11 and stated that subjective bad faith was part of the analysis. At least two other circuits also claim to use an improper purpose test with at least some subjective component. *See e.g.*, *Clark v. UPS*, 460 F.3d 1004, 1010 (8th Cir. 2006) (referring to district court's finding of subjective motivation), *cert. denied sub nom.*, *Buchanan v. UPS, Incorporated*, 549 U.S. 1340 (2007); *see also* In re Kunstler, 914 F.2d 505, 519 (4th Cir. 1990), *cert. denied*, 499 U.S. 969 (1991) (holding that subjective beliefs revealed through admission can be viewed as objective evidence of improper purpose).

28. Fed. R. Civ. P. 11 .

29. *See Silva v. Witschen*, 19 F.3d 725, 730 (1st Cir. 1994) (upholding sanctions when proper motive was mixed with improper objective of pressuring defendants); *Sussman*, 56 F.3d at 459 (2d Cir. 1995) ("A party should not penalized for or deterred from seeking and obtaining warranted judicial relief merely because one of his multiple purposes in seeking that relief may have been improper."); *In re Kunstler*, 914 F.2d at 518 ("if a complaint is filed to vindicate rights in court, and also some other purpose, a court should not sanction counsel for an intention that the court does not approve, so long as the added purpose is not undertaking in bad faith and is not so excessive as to eliminate a proper purpose. Thus, the purpose to vindicate rights in court must be central and sincere.").

30. *Sussman*, 56 F.3d at 459 ("[W]hatever the analysis applicable to motions and other papers filed after the commencement of the litigation, special care must be taken to avoid penalizing the filing of a nonfrivolous complaint, for otherwise a plaintiff who has a valid claim may lost his right 'to vindicate his rights in court.'"); *Townsend v. Holman Consulting Corporation*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc) ("With regard to complaints which initiate actions, we have held that such complaints are not filed for an improper purpose if they are non-frivolous . . . . The reason for this rule regarding complaints is that the complaint is, of course, the document which embodies the plaintiff's cause of action and it is the vehicle through which he enforces his substantive legal rights.") (citations omitted); *Burkhart v. Kinsley Bank*, 852 F.2d 512, 515 (10th Cir. 1988) (If counsel filed complaint that was non-frivolous, "then any suggestion of harassment would necessarily fail.").

31. *Sussman*, 56 F.3d at 459.

32. *See In re Kunstler*, 914 F.2d at 518 (finding that court may sanction otherwise colorable complaint if purpose to vindicate rights in court is not "central and sincere"); *MAXXAM*, 523 F.3d at 583-84 (court considered, and then rejected, balancing inquiry suggesting that such test would be too vague); *Senese v. Chicago Area I. B. of T. Pension Fund*, 237 F.3d 819, 823-24 (7th Cir. 2001) (Rule 11 may be violated when a complaint with a legal and factual basis is filed for an improper purpose).

33. *In re Kunstler*, 914 F.2d at 518 (finding that "the purpose to vindicate rights in court must be central and sincere" and that "filing a motion or pleading without a sincere intent to pursue it will garner sanctions").

34. *MAXXAM*, 523 F.3d at 583-84.

35. *Id.*

36. *Whitehead*, 332 F.3d at 805; *Pierce v. F.R. Tripler and Company*, 955 F.2d 820, 831 (2d Cir. 1992).

37. Fed. R. Civ. P. 11(b)(2).

38. *ICU Medical, Incorporated v. Alaris Medical Systems, Incorporated*, 558 F.3d 1368, 1381 (Fed. Cir. 2009) (citing *Christian*, 286 F.3d at 1127); *see also Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (failure to allege essential elements of Section 1985(3) claim is sanctionable).

39. **Thompson v. RelationServe Media, Incorporated, 610 F.3d 628, 665 (11th Cir. 2010).**

40. *Raylon LLC v. Complus Data Innovations, Incorporated*, 700 F.3d 1361, 1368 (Fed. Cir. 2012); *Jenkins v. Methodist Hospital*, 478 F.3d 255, 264 (5th Cir. 2007), *cert. denied*, 552 U.S. 825 (2007); *Young v. City of Providence*, 404 F.3d 33, 40 (1st Cir. 2005); *Fed. R. Civ. P. 11 advisory committee's notes* (1993) (The rule "establishes an objective standard, intended to eliminate any empty-head pureheart justification for patently frivolous arguments."). *See also Business Guides Incorporated*, 498 U.S. 533, 549-51 (1991) (objective reasonableness standard applies to both attorneys and represented parties); *but see In re Pennie & Edmonds*, 323 F.3d 86 (2d Cir. 2003) (Second Circuit is alone among circuits holding that subjective bad faith is required when court issues sanctions *sua sponte*, thereby not permitting attorney to withdraw filing under safe harbor provision).

41. *Morris v. Wachovia Securities, Incorporated*, 448 F.3d 268, 277 (4th Cir. 2006) (quoting *Hunter v. Earthgrains Company Bakery*, 281 F.3d 144, 153 (4th Cir. 2002)). *See Ario v. Underwriting Members of Syndicate 53*, 618 F.3d 277, 297 (3d Cir. 2010) (unpersuasive and losing argument is not invariably frivolous).

42. *See, e.g.*, *Hunter*, 281 F.3d at 156-57 (reversing sanction of attorney who inartfully argued for reversal of Circuit precedent); *Gibson v. Chrysler Corporation*, 261 F.3d 927, 949 (9th Cir. 2001), *cert. denied sub nom.*, *DaimlerChrysler Corporation v. Gibson*, 534 U.S. 1104 (reversing award of Rule 11 sanctions because "we recognize the difficulties faced by parties who seek to advance novel legal arguments"); *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) ("[T]he purpose of Rule 11 is to deter frivolous lawsuits and not to deter novel legal arguments or cases of first impression."); *Peloza v. Capistrano Unified School District*, 37 F.3d 517, 524 (9th Cir. 1994), *cert. denied*, 515 U.S. 1173 (1995) (dismissed complaint was not sanctionable as it raised important questions of first impression); *United States v. Alexander*, 981 F.2d 250, 253 (5th Cir. 1993) ("Parties who argue points of first impression in a circuit are not ordinarily the recipients of Rule 11 sanctions order,"); *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990), *cert. denied*, 498 U.S. 1028 (1991) ("[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.") (citations omitted).

43. *Morris*, 448 F.3d at 277 (internal quotations omitted).

44. **Gilmore v. Shearson/Am. Express, Incorporated, 811 F.2d 108, 111-12 (2d Cir. 1987).**

45. Fed. Civ. P.11 advisory committee's notes (1993). *See Savino v. Computer Credit Incorporated*, 164 F.3d 81, 88 (2d Cir. 1998).

46. *See* Fed. R. Civ. P. 11 advisory committee's notes (1993) ("Although arguments for a change of law are not required to be specifically identified, a contention that is so identified should be viewed with greater tolerance under the rule."); *Margo*, 213 F.3d 55, 64 (2d Cir. 2000).

47. Fed. R. Civ. P.11(b)(3). *See, e.g.*, *U.S. Bank National Association v. Sullivan-Moore*, 406 F.3d 465, 469-70 (7th Cir. 2005) (sanctions upheld where law firm caused eviction of tenant knowing that service address was incorrect).

**48.** *Lucas v. Duncan*, **574 F.3d 772, 777 (D.C. Cir. 2009).**

49. *Divane v. Krull Electric Company*, 200 F.3d 1020, 1028 (7th Cir. 1999) (*quoting Brown v. Federation of State Medical Boards of the U.S.*, 830 F.2d 1429, 1435 (7th Cir. 1987)). *See also Jones v. International Riding Helmets Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995); *Rodick v. City of Schenectady*, 1 F.3d 1341, 1351 (2d Cir. 1993) ("Where an attorney is forced to plead under exigent circumstances, her reliance on the affidavits of her clients should be sufficient to constitute reasonable investigation for purposes of Rule 11.") (citing *Hamer v. Career College Association*, 979 F.2d 758, 759 (9th Cir. 1992)).

50. *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) (finding that counsel's statements were possibly factually wrong and overstated, but not utterly lacking support, and therefore not sanctionable) (internal quotations omitted).

**51.** *Lucas*, **574 F.3d at 778.**

**52.** *Id.* **at 780.**

53. Fed. R. Civ. P. 11 advisory committee's notes (1993); *see also Kiobel*, 592 F.3d at 83; *In re Bees*, 562 F.3d at 288.

**54.** *Jenkins*, **478 F.3d 255, 265 (5th Cir. 2007).**

**55.** Fed. R. Civ. P. 11(b)(4).

**56.** Fed. R. Civ. P. 11(c).

57. *Id.*

58. Fed. R. Civ. P. 11 advisory committee's notes (1993).

**59.** *Id.* **(non-monetary sanctions include striking offending filing; admonition, reprimand, or censure; attendance at continuing legal education courses; or referral to disciplinary authorities).**

**60.** *Id. See also Methode Electronics, Incorporated v. Adam Technologies, Incorporated*, **371 F.3d 923, 926 (7th Cir. 2004) (court cannot award attorney fees as sanction** *sua sponte*); *Baffa v. Donaldson, Lufkin & Jenrette Securities Corporation*,

222 F.3d 52, 57 (2d Cir. 2000) ("[A]bsent a specific motion for attorneys' fees, the court only had authority to order sanctions payable to the court.").

61. Fed. R. Civ. P. 11(c)(2). *See Rentz v. Dynasty Apparel Industries*, 556 F.3d 389, 400 (6th Cir. 2009) ("[I]t is clear that Rule 11 is not intended to be a compensatory mechanism in the first instance, it is equally clear that effective deterrence sometimes requires compensating the victim for attorney fees arising from abusive litigation."); *but see Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001) (Rule 11 does not allow for award of attorney fees to pro se litigant as sanction). At the same time, the court may account for the attorney's financial condition in determining whether and the degree to which to issue monetary sanctions. *DiPaolo v. Moran*, 407 F.3d 140, 145-46 (3rd Cir. 2005).

62. Fed. R Civ. P. 11 advisory committee's notes (1993); *see also Rentz*, 556 F.3d at 402 (finding that while sanction of $250 against young and inexperienced attorney was possibly enough to deter his repetition, it was insufficient to deter other attorneys).

63. *Lamboy-Ortiz*, 630 F.3d at 249.

64. Fed. R. Civ. P. 11(c). *See also Business Guides, Incorporated*, 498 U.S. at 544-48 (1991) (Rule 11 applies to represented parties who sign court filings). A court may not, however, sanction a represented party for advancing a frivolous legal argument. It is the solely the counsel's responsibility to ensure there is adequate legal support. Fed. R. Civ. P. 11(c)(2)(A). Rule 11 also applies to pro se litigants but may account for the pro se litigant's financial situation in determining whether to award monetary sanctions. *See Moore v. SouthTrust Corporation*, 392 F. Supp. 2d 724, 736 (E.D. Va. 2005).

65. This 1993 provision effectively overturns *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120 (1989). The advisory committee's notes justify this expansion of potential liability on the ground that the safe-harbor provision, discussed below, makes it appropriate to regard a law firm as jointly responsible for the sanctionable conduct of its agents. Fed. R Civ. P. 11 advisory committee's notes (1993); *but see Rentz*, 556 F.3d at 397 (upholding district court's decision not to sanction law firm where attorney violated Rule 11 just after joining the firm in case  attorney brought with him and with which others at firm had little to no involvement).

66. While there are no decisions holding legal service organizations jointly accountable, examples of government agencies being held jointly accountable may be instructive. *See, e.g., MAXXAM*, 523 F.3d at 583-84 (5th Cir. 2008)  (imposing sanctions against the FDIC as a whole); *see also In re Bees*, 562 F.3d 284 (sanctions had been imposed against FEMA as whole and against individual attorney); *but see 1-10 Industry Associates LLC v. United States*, 528 F.3d 859 (Fed. Cir. 2008) (sanctions levied against individual attorney at Department of Justice) (sanctions reversed on other grounds).

67. Fed. R. Civ. P. 11 advisory committee's notes (1993).

68. The Second Circuit has held that the proposed motion need not be accompanied by a supporting memorandum. *Star Mark Management v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175-76 (2d Cir. 2012). Some courts adhere strictly to the requirement that a motion be served. *See Roth v. Green*, 466 F.3d 1179 (10th Cir. 2006), *cert. denied*, 552 U.S. 814 (2007) (court found that informal letter addressed to offending party did not suffice to satisfy safe harbor requirements when plain language of rule required copy of actual motion). *See also Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1029 (8th Cir. 2003) (reversing award of Rule 11 sanction when movant did not comply with separate motion requirement in safe harbor provision). However, the Seventh Circuit has held that a letter sent to an offending party can constitute substantial compliance with Rule 11(c)(1)(A). *See Matrix IV, Incorporated v. American National Bank and Trust Company*, 649 F.3d 539, 552 (7th Cir. 2011); *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808 (7th Cir. 2003).

69. Fed. R. Civ. P. 11(c)(1)(A). Counsel is expected to give informal notice prior to drafting and serving such a motion. Fed. R. Civ. P. 11 advisory committee's notes (1993). While the rule encourages informal resolution, counsel must be sure to serve an actual copy of the motion for sanctions 21 days prior to filing with the court. Additionally, the Fourth Circuit has held that the safe harbor provisions are not jurisdictional and therefore waivable. *Brickwood Contractors, Incorporated v. Datanet Engineering Incorporated*, 369 F.3d 385, 393 (4th Cir. 2004) (en banc); *Rector v. Approved Federal Savings Bank*, 265 F.3d 248, 253 (4th Cir. 2001).

70. Most courts have held that Rule 11 motions must be filed at least 21 days prior to the conclusion of the case or resolution of the issue prompting the motion. *Peer v. Lewis*, 606 F.3d 1306, 1313 (11th Cir. 2010). The Seventh Circuit disagrees. *Matrix IV*, 649 F.3d at 552-53 (motion may be filed post-judgment so long as there was previous substantial compliance with fair harbor rule).

71. Filing a timely motion to amend the challenged pleading that omitted assertions found objectionable is an acceptable response to a "safe harbor" motion; a dismissal with prejudice is not required. *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 639 (9th Cir. 2010).

72. *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998).

73. Fed. R. Civ. P.11(c)(1)(B); *see 1-10 Industry Associates LLC v. United States*, 528 F.3d 859, 867 (Fed. Cir. 2008); *Johnson v. Cherry*, 422 F.3d 540, 551-53 (7th Cir. 2005); *Plaintiffs' Baycol Steering Committee v. Bayer Corp.*, 419 F.3d 794, 809-10 (8th Cir. 2005).

74. *See In re DeVille*, 361 F.3d 539, 549 (9th Cir. 2004); *Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000).

75. *See Columbia Venture LLC*, 562 F.3d 284, 287 (4th Cir. 2009) (internal quotations omitted). Additionally, because the Advisory Committee's notes to Rule 11(c)(3) explained that "show cause orders will ordinarily be issued only in situations that are

akin to a contempt of court" and therefore do not require a "safe harbor" provision, at least one Circuit has required a finding of subjective bad faith when the sanctions are imposed *sua sponte* and the lawyer has no opportunity to withdraw or amend the filing. *See In re Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003) ("We conclude that where, as here, a sua sponte Rule 11 sanction denies a lawyer the opportunity to withdraw the challenged document pursuant to the 'safe harbor' provision of Rule 11(c)(1)(A), the appropriate standard is subjective bad faith."); *see also ATSI Communications, Incorporated v. Shaar Fund, Ltd.*, 579 F.3d 143 (2d Cir. 2009) (stating that subjective bad faith should be required if the sanctions proceeding is initiated "'long after' the lawyer had an opportunity to amend or withdraw"). Other circuits have declined to follow. *See, e.g., Jenkins*, 478 F.3d at 264; *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 40 (1st Cir. 2005) (declining to follow *Pennie*). Some circuits have been careful to avoid the issue. *See, e.g., Lucas*, 574 F.3d 772, 776 (D.C. Cir. 2009); *1-10 Industry Associates, LLC*, 528 F.3d at 866; *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1256 (11th Cir. 2003).

76. Fed. R. Civ. P.11(c)(3).

77. The Supreme Court in *Cunningham v. Hamilton County*, 527 U.S. 198 (1999) held that discovery sanctions issued under Rule 37 were not appealable under the collateral order doctrine. While the courts of appeals were previously divided on the point, *Cunningham* strongly suggests that Rule 11 sanctions are not immediately appealable either. *See, e.g., Williams v. Midwest Employers Casualty Company*, 243 F.3d 208 (5th Cir. 2001).

78. *Lawrence v. Richman Group of Connecticut, LLC*, 620 F.3d 153, 156 (2d Cir. 2010); *Nyer v. Winterthur International*, 290 F.3d 456, 460 (1st Cir. 2002); *see also Cooter & Gell v. Hartmarx Corporation*, 496 U.S. 384, 405 (1990).

79. *See Lucas*, 574 F.3d at 775 (citations omitted).

80. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (internal citations omitted).

81. *Id.*; *see also Dreiling v. Peugot Motors of America*, 768 F.2d 1159, 1165 (10th Cir. 1985).

82. *Enmon v. Prospect Capital Corporation*, 675 F.3d 138, 147 (2d Cir. 1986); *BDT Products, Incorporated v. Lexmark International, Incorporated*, 602 F.3d 742, 744 (6th Cir. 2010) (law firms may not be sanctioned); *Claiborne v. Wisdom*, 414 F.3d 715, 724 (7th Cir. 2005) (same).

83. 28 U.S.C. § 1927 , *amended by* Antitrust Procedural Improvements Act of 1980, Pub. L. No. 96-349, § 3, 94 Stat. 1154, 1156. *See generally* Janet Eve Josselyn, *The Song of the Sirens-Sanctioning Lawyer Under 28 U.S.C. § 1927*, 31 B.C. L. Rev. 477, 478 (1990). Additionally, courts may be using § 1927 more frequently as a result of the 1993 amendments to Rule 11, which instituted the 21-day safe harbor provision. Since

voluntarily withdrawn filings are not sanctionable, parties may be attempting to "sidestep" Rule 11 in the hope of getting attorney fees under § 1927. *See generally* Hart, *supra* note 1 (arguing that "sidestepping" accounts for the increased use of § 1927 and that this phenomenon defeats the purpose of the 1993 revision of Rule 11, which was supposed to remove the chilling effect suffered by civil rights litigants engaged in attempting good faith extensions of the law).

84. *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). The court's inherent power to sanction is broader still in that it permits sanctions for conduct beyond the filing of documents or "multiplying" proceedings. Yet, it requires a finding of bad faith for an award of attorney fees. *Chambers v. NASCO, Incorporated*, 501 U.S. 32, 43-46 (1991).

85. *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1345-46 (2d Cir. 1991).

86. *De Dios v. International Realty and Investments*, 641 F.3d 1071, 1076 (9th Cir. 2011); *Jensen v. Phillips Screw Company*, 546 F.3d 59, 65 (1st Cir. 2008).

87. *Equal Employment Opportunity Commission v. Great Steaks, Incorporated*, 667 F.3d 510, 522 (4th Cir. 2012); *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995); *Oliveri*, 803 F.2d at 1273.

88. *Lee v. L.B. Sales Incorporated*, 177 F.3d 714, 718 (8th Cir. 1999). *See also Lamboy-Ortiz*, 630 F.3d at 245-46; *Hall v. Liberty Life Assurance Company*, 595 F.3d 270, 275 (6th Cir. 2010); *Amlong and Amlong v. Denny's, Incorporated*, 500 F.3d 1230, 1240 (11th Cir. 2006); *Claiborne*, 414 F.3d at 721; *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc).

89. *See* Hart, *supra* note 1, at 653.

90. *Johnson v. Cherry*, 422 F.3d 540, 551-52 (7th Cir. 2005).

91. *Cambridge Toxicology Group v. Exnicios*, 495 F.3d 169, 180-81 (5th Cir. 2007); *Jones v. Pittsburgh National Corporation*, 899 F.2d 1350, 1359 (3rd Cir. 1990).

92. *Lamboy-Ortiz*, 630 F.3d at 247-48.

93. *Haynes v. City and County of San Francisco*, 688 F.3d 984, 987-88 (9th Cir. 2012) (may account for ability to pay); *Shales v. General Chauffeurs, Sales Drivers & Helpers Local Union*, 557 F.3d 746, 749 (7th Cir. 2009); *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1206-07 (10th Cir. 2008) (same; district court has discretion to award fees based on straight time or loadstar basis).

94. *See* Hart, *supra* note 1, at 653.

95. *Chambers*, 501 U.S. 32, 42 (1991) (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990)).

96. *Id.* at 46, 49 ("The Court's prior cases have indicated that the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."). *But see Peer*, 606 F.3d at 1315 ("Generally, if appropriate sanctions can be imposed under provisions such as Rule 11, courts should not exercise their inherent power.").

97. *Id.*

98. *See id.* at 44.

99. *See id.* at 46, 57 ("As long as a party receives an appropriate hearing . . . the party may be sanctioned for abuses of process occurring beyond the courtroom . . . .").

100. *See id.* at 44-45. *See Stalley v. Mountain States Health Alliance*, 644 F.3d 349, 352 (6th Cir. 2011) (monetary sanction can exceed amount needed for deterrence). However, the court should account for the sanctioned party's ability to pay the monetary sanction. *Martin v. Automobili Lamborghini Exclusive, Incorporated*, 307 F.3d 1332, 1337 (11th Cir. 2002).

101. *See Chambers*, 501 U.S. at 45.

102. *Id.*; *Ali v. Tolbert*, 636 F.3d 622, 627 (D.C. Cir. 2011);  *Amlong & Amlong*, 500 F.3d at 1251. *But see United States v. Seltzer*, 227 F.3d 36, 40-42 (2d Cir. 2000) (distinguishing between sanctioning attorneys as officers of court, which does not require bad faith, and attorneys in their capacity as counsel for clients, which does).

103. *Chambers*, 501 U.S. at 44 ("Because of their very potency, inherent powers must be exercised with restraint and discretion."); *Methode Electronics*, 371 F.3d at 927.

104. *Chambers*, 501 U.S. at 50 ("A court must . . . comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees."); *Metz v. Unizan Bank*, 655 F.3d 485, 491 (6th Cir. 2011).

105. *Id.* at 55.

**Most members of the Plaintiffs's Counsel family's broke the attorney client**

**privilege with the objector's by intentionally disclosing and posting protected**

**communications and documents in their final papers. Dismissal of all**

**applicable counsel is requested and striking all of the final submission papers for approval is requested as well for this misconduct.**

Counsel is attempting to portray the objector's' as extortionists by using an elaborate scheme to try and get around attorney client privilege information that was divulged and communicated to them in a conference call they initiated. They intentionally violated the confidentiality privilege in multiple ways in two separate documents. Typical of those who are desperate for an undeserved payday and will do anything to exit this litigation while screwing the class.

Most of the family heads of the Plaintiffs' Counsel's were on a call


PUT NAMES HERE

and all agreed to the secrecy privilege with this objector but still intentionally disclosed the contents in their final papers. They engaged in a fraudulent attempt to paint the objector's as crook's in a failed attempt at silencing them and diluting a mighty fine objection in the eyes of the court and deceitfully obtaining a windfall by cheating the class.

After Plaintiffs Counsel saw the proposed objection, knowing they were in huge trouble, (as evidenced by the final settlement papers and the fraudulent wasteful motion to strike sur-reply) class counsel intentionally and with malice decided to put together a plan using the conference call as a ruse to impeach the credibility of

the objector's by using a warped sense of logic to attempt to force this settlement through. They used the telephone lines that crossed state lines originating in Washington DC, Minneapolis  Minnesota and Rochester Michigan which is wire fraud.


This objector spoke and had a forty five minute conference call (as referenced in the emails posted in the final papers by Plaintiffs' counsel and in the email read into the records by the committe's head Mr. Miller of the Miller Law Firm, which again violated attorney client privilege after being warned not to disclose emails again unless all were release for context purposes. All participants agreed to keep the contents of the call "secret" with that word being used twice. The objector agreed **TWICE** to the secrecy question posed to him. This "secrecy" agreement is the attorney client privilege we all are aware of and know so well that was invoked when discussing the legal objection issues raised in the one hundred and eighteen page rough draft objector's' sent to Plaintiffs' counsel that brought about the conference phone call. Plaintiffs' Counsel represents the entire class including objector's, unnamed class members and named plaintiffs as well, not separate and apart, all treated equally as far as attorney client privilege and protected communications go.  Counsel can't even disclose the contents to another objector even if they are an attorney! A duty and loyalty is owed to both.  As a result of that

privileged conversation secrecy agreement, objector disclosed confidential information. One piece that was leaked was the proposed fee motion that attempted to save the class a million dollars in attorney fees that would flow back into the settlement fund for distribution to the victimized class members. **At the request of Plaintiffs' Counsel,** the objector's created, produced and emailed that document to them per **their request which they then included in their final submission, without permission!** That document is protected information just like the entire contents of the call. This document was created using fraudulent intent and having class counsel email it to them to??????????? Not even sworn in this didtrict! For desimiation via email to the rest of counsel is using a computer to commit a fraud also a criminal offense.

**Mr. Daniel C. Hedlund who is heavily engaged in this fraudulent conspiracy and who has filed papers with the court is NOT even sworn in this district yet engarges in these shannigans and misleads the Court with false filings.**

Counsel also intentionally revealed in their final papers the personal relationship between the objector's that was disclosed in that conference call. That information was mentioned **ONLY verbally** on the phone and not put in writing. That disclosure is located on page one of document 170.  They also brought up the potential for an appeal in their final papers but that was taken out of context based

on what was said in the call to make objector's look bad again and to dilute the value of the objection and the credibility behind it while unethically pushing the deal through this "sticky" settlement for the fees first. To heck with the class. Counsel also failed to include all the emails in their breach so they cherry picked which one's to impeach the credibility of the objector's and their motives.

Objector's never gave permission to share any emails from our own lawyers in this case with anyone outside the Plaintiff's family group and certainly not with the defendant and world and still consider them attorney client privileged information with the lawyers who represent us even to this day. Don't release any more data counsels or you personally might be forced into bankruptcy.

Mr. Miller as stated above also read into the record at the fairness hearing another email without providing the rest of them to the Court for proper context.

They have corrupted and unethically influenced the fairness hearing and biased the Court when reviewing Plaintiffs' Counsel's settlement papers and papers filed by the objector's in this case.

Objector's claim breach of attorney client privilege and will now plan and take action as a result. As a result of this breach, some in our group were questioning whether to drop out of the objection but after a lively four hour discussion they all

want damages and more. One objector wants disbarment of all lawyers on the call. Another objector will NOT appear at the hearing due to their disgust at the sleazy lawyering they have seen but keep's the objection alive and does not withdraw it.

First though. How come counsel didn't disclose the contents of the call(s) made to any other objector in their filing? This appears to be a double standard counsel.

The objector's claim violation of the attorney client privilege relating to the disclosures and request:

- sanctions
- penalties for bad faith and misconduct and breaching fiduciary obligations.
- Banishment from the case of all call participants and their firm's with no fees or expenses being awarded to them **before** ruling on the settlement.
- Objector's request that the final papers be **stricken and removed** from the docket and/or not **considered** due to this intentional breach of confidentiality.
- Objector's demand payment from each of the four participants and their firm's for their intentional disclosures. On second thought, objector's demand damages from all eighteen law firms with some contributing more than others just like the potentially bogus assessment invoice.

Thank you for your attention and consideration.

Case No. Case No. 2:10-cv-14360-DPH-MKM

Dated: January 02, 2015

*Christopher Andrews, Pro se objector*

P.O. Box 530394

*Livonia, MI 48152-0394 E-mail caaloa@gmail.com Phone 1-248-635-3810*

*Christopher Andrews*

*I certify under penalty of perjury that the above information is true and accurate to the best of my/our knowledge, information and belief.*

I hereby certify that on this day I hand delivered foregoing to the Clerk of the Court, and served true and correct copies upon class counsel and defendants' counsel via US Post Office Priority Mail  (two- three day delivery) at the addresses below, per the instructions of the Settlement Notice to:

Clerk of Court, the United States District Court for the Eastern District of Michigan Southern Division, U.S. Courthouse 231 W. Lafayette Blvd.

Detroit, Michigan 48226 Telephone number (313) 234-5005.

COHEN MILSTEIN SELLERS & TOLL PLLC 202-408-4600
Daniel A. Small
Brent W. Johnson

1100 New York Avenue, NW

Suite 500

Washington, DC 20005


Gustafson Gluek Pllc

Canadian Pacific Plaza

120 South Sixth Street, Suite 2600

Minneapolis, MN 55402

Attention Daniel  Gustafson


The Miller Law Firm

950 West University Avenue, Suite 300

Rochester, MI 48307

Attention Mr. Miller

Wolf Haldenstein Adler Freeman & Herz, LLC

270 Madison Avenue

New York, New York 10016

Attention Fred Isquith




Christopher Andrews

I *certify under penalty of perjury that the above information is true and accurate to the best of my knowledge*, information, and belief .The Shane Group etc. al v Blue Cross Blue Shield of Michigan Case No. 2:10-cv-14360-DPH-MKM

FILED

2008 JAN 23  A 8: 5

U.S. DIST. COURT CLERK
EAST. DIST. MICHIGAN
DETROIT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

In re:  Civility Principles

Administrative Order

No. 08-AO- OO9

### ADMINISTRATIVE ORDER

This Administrative Order supersedes Administrative Order 07-AO-011, in re: Civility Plan.

A.   Introduction

On October 4, 1993, the United States District Court for the Eastern District of Michigan approved a Plan for the Reduction of Expense and Delay in Civil Cases as provided in 28 U.S.C. § 471, et seq. Section VII(C) of that Plan stated that the Court would request that the Federal Bar Association/Detroit Chapter (FBA) and the State Bar of Michigan propose a civility plan to the Court. The FBA and the U.S. Courts Committee of the State Bar of Michigan made recommendations which were considered by the Court.

B.   Adoption of Civility Principles

On February 5, 1996, the Court adopted the attached Civility Principles.

On November 5, 2007, on the recommendation of the Joint Standing Committee on Civility, the Court approved a "Lawyer's Commitment of Professional Civility" to be included with the Civility Principles.

The Civility Principles are included as an Appendix to the Local Rules of the United States District Court for the Eastern District of Michigan.

C.   Distribution of Principles and New Member Certification

The Clerk of the Court will distribute a copy of the Civility Principles to any attorney who applies for admission to practice before the Court. The application for admission to practice before the Court also includes a certification that the applicant has read and will abide by the Civility Principles.

D.   Joint Standing Committee

A Joint Standing Committee shall be selected/designated by the Chief Judge and will consist of two judicial officers, one representative of the FBA, one representataive of the State Bar of Michigan, and at least two other members as designated by the Chief

Administrative Order
in re: Civility Principles

Judge.       The Joint Standing Committee will meet as needed to consider civility issues
and further measures to promote civility and collegiality between attorneys and judicial
officers.

FOR THE COURT:

Bernard A. Friedman
Chief Judge

Attachments

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

## CIVILITY PRINCIPLES

### Preamble

An attorney's conduct should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms. In fulfilling our duty to represent a client vigorously as attorneys, we will be mindful of our obligations to the administration of justice, which is a truth-seeking process designed to resolve human and societal problems in a rational, peaceful and efficient manner.

A judge's conduct should be characterized at all times by courtesy and patience toward all participants. As judges we owe all participants in a legal proceeding respect, diligence, punctuality and protection against unjust and improper criticism or attack.

Conduct that may be characterized as uncivil, abrasive, abusive, hostile or obstructive impedes the fundamental goal of resolving disputes rationally, peacefully and efficiently. Such conduct tends to delay, and often deny, justice.

The following standards are designed to encourage us, judges and attorneys, to meet our obligations to each other, to litigants and to the system of justice, and thereby achieve the twin goals of civility and professionalism, both of which are hallmarks of a learned profession dedicated to public service.

We expect judges and attorneys will make a mutual and firm commitment to these standards. Voluntary adherence is expected as part of a commitment by all participants to improve the administration of justice throughout the Eastern District.

These standards shall not be used alone as a basis for litigation, sanctions or penalties. However, nothing in these standards supersedes or detracts from existing disciplinary codes or alters existing standards of conduct against which attorney negligence or misconduct may be determined.

These standards should be reviewed and followed by all judges and attorneys participating in any proceeding in the Eastern District. Copies may be made available to clients to reinforce our obligation to maintain and foster these standards.

Approved February 5, 1996

United States District Court
Eastern District of Michigan

Civility Principles
Page 2

### Attorneys' Responsibilities to Other Counsel

1) We will practice our profession with a continuing awareness that our role is to advance the legitimate interest of our clients. In our dealings with others, we will not reflect the ill feelings of our clients. We will treat all other counsel, parties and witnesses in a civil and courteous manner, not only in court, but also in all other written and oral communications.

2) We will not, even when called upon by a client to do so, abuse or indulge in offensive conduct directed to other counsel, parties or witnesses. We will abstain from disparaging personal remarks or acrimony toward other counsel, parties, or witnesses. We will treat adverse witnesses and parties with fair consideration.

3) We will not encourage or knowingly authorize any person under our control to engage in conduct that would be improper if we were to engage in such conduct.

4) We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety.

5) We will not seek court sanctions without first conducting a reasonable investigation and unless fully justified by the circumstances and necessary to protect our client's lawful interests.

6) We will adhere to all express promises and agreements with other counsel, whether oral or in writing, and will adhere in good faith to all agreements implied by the circumstances or local customs.

7) When we reach an oral understanding on a proposed agreement or stipulation and decide to commit it to writing, the drafter will endeavor in good faith to state the oral understanding accurately and completely. The drafter will provide other counsel the opportunity to review the writing. As drafts are exchanged between or among counsel, changes from prior drafts will be identified in the draft or otherwise explicitly brought to the attention of other counsel. We will not include in a draft matters to which there has been no agreement without explicitly advising other counsel in writing of the addition.

8) We will endeavor to confer early with other counsel to assess settlement possibilities. We will not falsely hold out the possibility of settlement as a means to adjourn discovery or to delay trial.

9) In civil actions, we will stipulate to relevant matters if they are undisputed and if no good-faith advocacy basis exists for not stipulating.

Approved February 5, 1996

United States District Court                                    Civility Principles
Eastern District of Michigan                                                  Page 3

10)   We will not use any form of discovery or discovery scheduling as a means of
      harassment.

11)   We will make good faith efforts to resolve by agreement our objections to matters
      contained in pleadings, discovery requests and objections.

12)   We will not time the filing or service of motions or pleadings in any way that unfairly
      limits another party's opportunity to respond.

13)   We will not request an extension of time solely for the purpose of unjustified delay
      or to obtain tactical advantage.

14)   We will consult other counsel regarding scheduling matters in a good-faith effort to
      avoid scheduling conflicts.

15)   We will endeavor to accommodate previously-scheduled dates for hearings,
      depositions, meetings, conferences, vacations, seminars or other functions that
      produce good-faith calendar conflicts on the part of other counsel. If we have been
      given an accommodation because of a calendar conflict, we will notify those who
      have accommodated us as soon as the conflict has been removed.

16)   We will notify other counsel and, if appropriate, the Court or other persons, at the
      earliest possible time when hearings, depositions, meetings or conferences are to
      be canceled or postponed. Early notice avoids unnecessary travel and expense of
      counsel and may enable the Court to use the previously-reserved time for other
      matters.

17)   We will agree to reasonable requests for extensions of time and for waiver of
      procedural formalities, recognizing that it is the attorney, and not the client, who has
      the sole discretion to determine the accommodations to be granted opposing
      counsel in all matters not materially or adversely affecting the client's legitimate
      rights. We will affirm that in such matters no client has a right to demand that his
      or her counsel shall be illiberal or that we do anything therein repugnant to our own
      sense of honor and propriety.

18)   We will not cause any default or dismissal to be entered without first notifying
      opposing counsel, when we know his or her identity.

19)   We will take depositions only when actually needed to ascertain facts or information
      or to perpetuate testimony. We will not take depositions for the purposes of
      harassment or to increase litigation expenses.

20)   We will not engage in any conduct during a deposition that would not be

Approved February 5, 1996

United States District Court
Eastern District of Michigan

Civility Principles
Page 4

appropriate in the presence of a judge.

21)  We will not obstruct questioning during a deposition or object to deposition questions unless appropriate under the applicable rules.

22)  During depositions, we will ask only those questions we reasonably believe are necessary for the prosecution or defense of an action.

23)  We will carefully craft document production requests and/or interrogatories so they are limited to those documents we reasonably believe are necessary for the prosecution or defense of an action.  We will not design production requests to place an undue burden or expense on a party.

24)  We will respond to document requests and interrogatories reasonably and not strain to interpret the requests or interrogatories in an artificially restrictive manner to avoid disclosure of relevant and non-privileged documents and information fairly within the scope of the requests or interrogatories.  We will not produce documents or answer interrogatories in a manner designed to hide or obscure the existence of particular documents or information.

25)  We will base our discovery objections on a good-faith belief in their merit and will not object solely for the purpose of withholding or delaying the disclosure of relevant information.

26)  When a draft order is to be prepared by counsel to reflect a court ruling, we will draft an order that accurately and completely reflects the Court's ruling.  We will promptly prepare and submit a proposed order to other counsel and attempt to reconcile any differences before the draft order is presented to the Court.

27)  We will not ascribe a position to another counsel that counsel has not taken or otherwise seek to create an unjustified inference based on counsel's statements or conduct.

28)  Unless specifically permitted or invited by the Court, or unless otherwise necessary, we will not send copies of correspondence between counsel to the Court.

## Attorneys' Responsibilities to the Court

1)  We will speak and write civilly and respectfully in all communications with the Court.

2)  We will be punctual and prepared for all Court appearances so that all hearings, conferences and trials may commence on time; if delayed, we will notify the Court and counsel, if possible.

Approved February 5, 1996

United States District Court  
Eastern District of Michigan

Civility Principles  
Page 5

3) We will be considerate of the time constraints and pressures on the Court and Court staff inherent in their efforts to administer justice.

4) We will not engage in conduct that brings disorder or disruption to the courtroom. We will advise our clients and witnesses appearing in Court of the proper conduct expected and required there and, to the best of our ability, prevent our clients and witnesses from creating disorder or disruption.

5) We will not knowingly misrepresent, mischaracterize, misquote, or miscite facts or authorities in any oral or written communication.

6) We will not send letters to the Court (whether addressed to the Court or copies of letters to opposing counsel) that contain argument or criticize counsel in connection with a pending action, unless invited or permitted by the Court or as appropriate exhibits to Court filings, in which event a copy shall be provided to opposing counsel in such a manner as to insure delivery to opposing counsel on that same day that it is delivered to the Court.

7) Before dates for hearings or trials are set, or if that is not feasible, immediately after such date has been set, we will attempt to verify the availability of necessary participants and witnesses so we can promptly notify the Court of any likely problems.

8) We will act and speak civilly to marshals, clerks, court reporters, secretaries and law clerks with an awareness that they, too, are an integral part of the judicial system.

## Court's Responsibilities to Attorneys

1) We will endeavor to be courteous, respectful and civil to attorneys, parties and witnesses. We will maintain control of the proceedings, recognizing that judges have both the obligation and the authority to insure that all litigation proceedings are conducted in a civil manner.

2) We will not employ hostile, demeaning or humiliating words in opinions or in written or oral communications with attorneys, parties or witnesses.

3) We will be punctual in convening hearings, meetings and conferences; if delayed, we will notify counsel, if possible.

4) The Court, recognizing the existence of family and business obligations of parties, witnesses and attorneys, will attempt, in scheduling all hearings, meetings and conferences, to be considerate of time schedules of attorneys, parties and

Approved February 5, 1996

United States District Court
Eastern District of Michigan

Civility Principles
Page 6

witnesses.

5)   We will make reasonable efforts to decide promptly matters presented to us for decision.

6)   While endeavoring to resolve disputes efficiently, we will be considerate of the time constraints and pressures imposed on attorneys.

7)   We recognize that an attorney has a right and a duty to present a cause fully and properly, and that a litigant has a right to fair and impartial consideration.

8)   We will not impugn the integrity or professionalism of any attorney on the basis of the clients whom, or the causes which, an attorney represents.

9)   We will do our best to insure that Court personnel act civilly toward attorneys, parties and witnesses.

10)  We will not adopt procedures that needlessly increase litigation expense.

11)  We will bring to an attorney's attention uncivil conduct which we observe.

### Judges' Responsibilities to Each Other

1)   We will be courteous, respectful and civil in opinions, ever mindful that a position articulated by another judge is the result of that judge's earnest effort to interpret the law and the facts correctly.

2)   In all written and oral communications, we will abstain from disparaging personal remarks or criticisms, or sarcastic or demeaning comments about another judge.

3)   We will endeavor to work with other judges in an effort to foster a spirit of cooperation in our mutual goal of enhancing the administration of justice.

Approved February 5, 1996

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

## **Lawyer's Commitment of Professional Civility**

A lawyer shall conduct him/herself in accordance with the standards of professional integrity and personal courtesy set forth in the Civility Principles of the United States District Court for the Eastern District of Michigan.

A lawyer shall honor and respect the Constitution of the United States, the judicial system, the legal profession and will strive to uphold the dignity of each.

A lawyer shall be guided by a fundamental sense of integrity, candor and fair play.

A lawyer shall abstain from disrespectful, disruptive and/or abusive behavior, and will at all times act with dignity, decency and courtesy.

A lawyer shall seek to resolve and not prolong legal disputes, without lessening your obligations to client interests.

A lawyer shall respect the time and commitments of others and will be diligent and punctual in communicating with others and fulfilling in your own responsibilities.

A lawyer shall exercise independent judgment and will not be guided by ill will, deceit or avarice.

As a lawyer you shall further your profession's dedication to public service.

A lawyer shall strive to do honor to the search for truth and justice.

As a lawyer your word is your bond.

Incorporated into Civility Principles - December 3, 2007

# EXHIBIT V

| | |
|---|---|
| From: | Darryl Bressack <dbressack@finkandassociateslaw.com> |
| Sent: | Friday, December 12, 2014 6:20 PM |
| To: | caaloa@gmail.com |
| Cc: | David Fink |
| Subject: | The Shane Group et al v Blue Cross Blue Shield of Michigan - Case No. |
| Attachments: | Plaintiffs' Corrected Supplemental Submission in Support of Final Settle....pdf |

Mr. Andrews,

Please see the attached document.

Sincerely,

Darryl Bressack



FINK +
ASSOCIATES LAW
**Darryl Bressack**
dbressack@finkandassociateslaw.com

100 West Long Lake Road; Suite 111, Bloomfield Hills, MI 48304

535 Griswold; Suite 1000, Detroit, MI 48226

T: (248) 971-2500 • F: (248) 971-2600

NOTICE: This is a communication from Fink + Associates Law and is intended for the named recipient(s) only.  It may contain information which is privileged, confidential and/or protected by the attorney-client privilege or attorney work product doctrine.  If you received this by mistake, please destroy it and notify us of the error. Thank you.

# EXHIBIT W

From:           caaloa <caaloa@gmail.com>
Sent:           Saturday, December 13, 2014 5:26 PM
To:             Dan Gustafson; dhedlund@gustafsongluek.com; Daniel Small; E. Powell Miller;
                isquith@whafh.com
Subject:        Additional Rule 11 violation notice


Dear Counsels,

                Your latest supplemental filing dated 10-9,14 and 10-10-14 that was filed with the Court that
included the Nutella objection was done solely to harass and has no basis in being used at this stage of the
litigation other than to harass and cost objectors time and money It will be added to the sanction motion to be
filed after December 30, 2014.
The actions class counsel has taken in the past and continue to take with this latest filing which the objector
received today again violated court rules for the second time. You emailed them last night, the 12th, way after
they should have been emailed the day of your filing to me and also should have been snail mailed on the 9th of
December. No paper copies have arrived as of today the 13th, intentional simple harassment and delay.
Your actions throughout this case also breached Rules of Professional Conduct and Practice multiple multiple
times and will also be included in the sanction filing. BAR complaints asking for disbarment after the ruling on
the sanctions motion will follow. Mr.Miller won't need to practice after his AIG payday, what about the rest of
you?
Chris Andrews

# EXHIBIT X

| | |
|---|---|
| **From:** | caaloa <caaloa@gmail.com> |
| **Sent:** | Saturday, December 13, 2014 6:57 PM |
| **To:** | Dan Gustafson; Dan Hedlund; Daniel Small; E. Powell Miller; isquith@whafh.com |
| **Subject:** | Re: Additional Rule 11 violation notice |

Hello Counsel,

        Working on the sanction motion. ==Pull the no good faith basis for the harassing motion to strike sur-reply before the Court rules on it.== If not it's part of the sanction motion as evidence of a bad pattern of wasting the objectors and Court's time.

Good night.

Chris Andrews

On Sat, Dec 13, 2014 at 5:26 PM, caaloa <caaloa@gmail.com> wrote:

  Dear Counsels,

        Your latest supplemental filing dated 10-9,14 and 10-10-14 that was filed with the Court that included the Nutella objection was done solely to harass and has no basis in being used at this stage of the litigation other than to harass and cost objectors time and money It will be added to the sanction motion to be filed after December 30, 2014.

  The actions class counsel has taken in the past and continue to take with this latest filing which the objector received today again violated court rules for the second time. You emailed them last night, the 12th, way after they should have been emailed the day of your filing to me and also should have been snail mailed on the 9th of December. No paper copies have arrived as of today the 13th, intentional simple harassment and delay.

  Your actions throughout this case also breached Rules of Professional Conduct and Practice multiple multiple times and will also be included in the sanction filing. BAR complaints asking for disbarment after the ruling on the sanctions motion will follow. Mr.Miller won't need to practice after his AIG payday, what about the rest of you?

  Chris Andrews

# EXHIBIT Y

| | |
|---|---|
| **From:** | caaloa <caaloa@gmail.com> |
| **Sent:** | Sunday, December 21, 2014 11:23 AM |
| **To:** | Dan Gustafson; Dan Hedlund; Daniel Small; E. Powell Miller; isquith@whafh.com; dfink@finkandassociateslaw.com |
| **Subject:** | Sanctions for wasted hours |

Deal Counsel,

There is quite a bit to learn about sanctions when you violate the rules counsel. Attached to the motion will be an invoice asking the Court to reimburse for the wasted hours spent responding to the poisoned motions you filed starting from the date of the fraudulent conference call forward until today. That total is approximately 230 hours.

If the Court does not see it that way we request reimbursement of the wasted hours responding to the sur-reply motion to strike and the supplement to the court dated December 09 and 10  2014. That motion could have been filed a month ago (and for me with it should have been filed with your final settlement papers) but you really filed it based on my Sanction 11 motion arriving in your mailboxes per court rules and used the first part of your motion as a pretext to file the motion itself. All the firms who signed it are responsible  The Court will be shown the truth. Total hours spent on those two responses is nineteen hours.

If those two motions above at a minimum are not pulled before a ruling is made by the judge you will also pay for the cost of the sanction motion itself when it is filed soon. Right now it is about thirty hours.

In addition you violated the Court's order in the late filing in the past and intentionally failed to send copies of your filings per the court rules to the objectors,all sanctionable especially when done intentionally.

When a party fails to obey an order, court have the authority to order the party, its attorney, or both to pay reasonable expenses-including attorneys' fees of the party's adversary, unless the non compliance was substantially justified or other circumstances make an award of expense Civ. P. 16 (f) in deciding whether a sanction is merited, the court need not find that a party acted in bad faith, (which they did in this case numerous times from September 24, 2014 forward.) The fact a pretrial order was violated is sufficient to allow some kind of sanction you would think.

If you or the judge don't/can't reimbursement us because of court rules, dismissal will be requested as a  sanction or the penalty put into the class fund.

I see one class counsel is dealing with another objection in another case, you may have your hands full at the appellate level. Objectors should always help each other out.

Chris Andrews .

# EXHIBIT Z

| | |
|---|---|
| **From:** | caaloa <caaloa@gmail.com> |
| **Sent:** | Tuesday, January 06, 2015 12:28 PM |
| **To:** | Dan Gustafson; Dan Hedlund; Daniel Small; E. Powell Miller; isquith@whafh.com; caaloa |
| **Subject:** | Two filings made today |
| **Attachments:** | Response Miller fee.docx; Sanctions Motion.docx; Miller exhibits 001.jpg; Miller exhibits 002.jpg; Miller exhibits 003.jpg; Miller exhibits 004.jpg; Miller exhibits 005.jpg; Miller exhibits 006.jpg; Miller exhibits 007.jpg; Miller exhibits 008.jpg; Miller exhibits 009.jpg; Miller exhibits 010.jpg; Miller exhibits 011.jpg; Miller exhibits 012.jpg; Miller exhibits 013.jpg; Miller exhibits 014.jpg; Miller exhibits 015.jpg; Miller exhibits 016.jpg; Miller exhibits 017.jpg; Miller exhibits 018.jpg; Miller exhibits 019.jpg; Miller exhibits 020.jpg; Miller exhibits 021.jpg; Miller exhibits 022.jpg; Miller exhibits 023.jpg; Miller exhibits 024.jpg; Miller exhibits 025.jpg; Sanction Exhibits 001.jpg; Sanction Exhibits 002.jpg; Sanction Exhibits 003.jpg; Sanction Exhibits 004.jpg; Sanction Exhibits 005.jpg; Sanction Exhibits 006.jpg; Sanction Exhibits 007.jpg; Sanction Exhibits 008.jpg; Sanction Exhibits 009.jpg; Sanction Exhibits 010.jpg; Sanction Exhibits 011.jpg; Sanction Exhibits 012.jpg; Sanction Exhibits 013.jpg; Sanction Exhibits 014.jpg; Sanction Exhibits 015.jpg; Sanction Exhibits 016.jpg; Sanction Exhibits 017.jpg; Sanction Exhibits 018.jpg; Sanction Exhibits 019.jpg; Sanction Exhibits 020.jpg; Sanction Exhibits 021.jpg; Sanction Exhibits 022.jpg; Sanction Exhibits 023.jpg; Sanction Exhibits 024.jpg; Sanction Exhibits 025.jpg; Sanction Exhibits 026.jpg; Sanction Exhibits 027.jpg; Sanction Exhibits 028.jpg; Sanction Exhibits 029.jpg; Sanction Exhibits 030.jpg; Sanction Exhibits 031.jpg; Sanction Exhibits 032.jpg; Sanction Exhibits 033.jpg; Sanction Exhibits 034.jpg; Sanction Exhibits 035.jpg; Sanction Exhibits 036.jpg; Sanction Exhibits 037.jpg; Sanction Exhibits 038.jpg; Sanction Exhibits 039.jpg; Sanction Exhibits 040.jpg; Sanction Exhibits 041.jpg |

Dear Counsel,

Maybe the Court took my advise and brought in the FBI based on what has been filed to date and the fact there is no decision after fifty seven days. If the Court hasn't done that yet it might after seeing these two filings. If the Court does not act I can. Since counsel likes to have cases follow me, this case will follow you.

Chris Andrews

# EXHIBIT AA

**From:**              caaloa <caaloa@gmail.com>
**Sent:**              Thursday, January 08, 2015 7:40 AM
**To:**                Dan Gustafson; Dan Hedlund; Daniel Small; E. Powell Miller; isquith@whafh.com; caaloa
**Subject:**           Monday January 8, 2014 deadline

Dear Class Counsel,
            In the event you are unaware of it the longer this drags on the worse it gets.You are to withdraw
the two documents by 5:00 pm Monday and have a check ready for me to pick up or be delivered by Tuesday
5:00 pm regardless of how the Court rules. If not it will get much worse when I take further actions starting on
Wednesday. If you did nothing wrong in the past you have nothing to fear. On the other hand........
Chris Andrews

# EXHIBIT BB

| | |
|---|---|
| From: | caaloa <caaloa@gmail.com> |
| Sent: | Friday, January 09, 2015 6:22 PM |
| To: | Bell, Theo; Dan Gustafson; dhedlund@gustafsongluek.com; Daniel Small; E. Powell Miller; isquith@whafh.com; caaloa |
| Subject: | Re: Shane Group et al. v. Blue Cross, 10-cv-14360 |

Dear Counsel,

Class counsel is so desperate.  I am talking about the publicity you are about to receive in this and other cases that applicable counsel appears to have been engaging in questionable billing practices. You can call off your emergency motion and stop wasting my time and the Court's time.
Chris Andrews

On Fri, Jan 9, 2015 at 6:12 PM, Bell, Theo <tbell@whafh.com> wrote:

Mr. Andrews,



Attached is a courtesy copy of Class Counsel's Emergency Motion for Show Cause Order Relating to Sanctionable Conduct  filed with the Court a short while ago.



Theodore Bell




_____

**Theodore B. Bell, Esq.**
Wolf Haldenstein Adler Freeman & Herz LLC
55 West Monroe Street, Suite 1111
Chicago, IL  60603
Tel: (312) 984-0000
Fax: (312) 984-0001
_____

Notice: This message is for addressee only and may contain privileged and/or confidential information. Any dissemination by anyone other than the intended recipient is strictly prohibited. If you have received this message in error, please delete immediately.

# EXHIBIT CC

**From:** caaloa <caaloa@gmail.com>
**Sent:** Thursday, September 04, 2014 10:46 AM
**To:** Small, Daniel
**Subject:** Blue Cross Blue Shield Objection

Hello Mr. Small,
              I sent a quick email early in the week to Mr. Miller of the Miller Law Firm in Rochester Mi.
The reason I sent the email to him was I am located in metro Detroit not to far from him. I informed him I was
going to drop off a rough draft of an objection to them on Monday for their review along with other counsel in
an attempt to resolve potential major issues before filing the actual objection. I noticed your firm is listed as to
where to send the objection due in a few weeks. Would it be more appropriate to send it to you instead and you
can decide whom to share it with? I am not an attorney. Thanks.
Mr. Andrews

| | |
|---|---|
| From: | caaloa <caaloa@gmail.com> |
| Sent: | Monday, September 08, 2014 10:02 AM |
| To: | E. Powell Miller |
| Subject: | Re: Blue Cross Blue Shield of Michigan Rough Draft Objection |

Please email back and let me know you received it and it's readable. Thanks.

On Mon, Sep 8, 2014 at 10:01 AM, caaloa <caaloa@gmail.com> wrote:
Dear Mr. Miller,
             As promised attached is a rough draft of the objection that will be filed with the Court fourteen days from today. Please forward to applicable parties for their review also. Do not take what was written as personal, it's all business. After all parties have carefully reviewed the objection I can be reached at this email address and phone of 1-248-635-3810 from 9:00 a.m. to 9:00 p.m. to  discuss the objection what should be done to benefit the class to resolve some or all of these issues. Court's can do anything and the objector's could be wrong and overruled in spite of all the evidence so compromise should be explored if Plaintiffs' Counsel so chooses. Thank you for your time.
Christopher Andrews

From:              caaloa <caaloa@gmail.com>
Sent:              Thursday, September 18, 2014 5:07 PM
To:                E. Powell Miller
Subject:           Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Agreed.

On Thu, Sep 18, 2014 at 4:53 PM, E. Powell Miller <epm@millerlawpc.com> wrote:

Dear Mr. Andrews:


Here is the call in information:


 This conference call is scheduled for 10:00am Eastern Time/9:00am Central Time.

Date:     Friday, September 19, 2014

Start Time:        10:00 AM Eastern Daylight Time

Dial-in Number: 1-605-475-5950 (Midwest)

Participant Access Code:        3674356


Sincerely,

Powell Miller


The Miller Law Firm, PC

950 West University, Suite 300

Rochester, Michigan  48307

248-841-2200


**From:** caaloa [mailto:caaloa@gmail.com]
**Sent:** Thursday, September 18, 2014 4:46 PM

1

**To:** E. Powell Miller
**Subject:** Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

OK

On Thu, Sep 18, 2014 at 4:41 PM, E. Powell Miller <epm@millerlawpc.com> wrote:

Thanks Mr. Andrews

I will work on a call in number and be sure to e-mail it to you before 10 tomorrow.

Sincerely,

Powell

The Miller Law Firm, PC

950 West University, Suite 300

Rochester, Michigan 48307

248-841-2200

**From:** caaloa [mailto:caaloa@gmail.com]
**Sent:** Thursday, September 18, 2014 4:34 PM

**To:** E. Powell Miller
**Subject:** Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Sure

On Thu, Sep 18, 2014 at 3:49 PM, E. Powell Miller <epm@millerlawpc.com> wrote:

Mr. Andrews,

 Can you participate in a call tomorrow (Friday) at 10 EST?  If so, I will e-mail a call in number.  We will have as participants who are all class counsel: myself, Dan Small, Dan Hedlund and/or Dan Gustafson.  Please advise.

 Sincerely,

 Powell Miller

Sent from my iPhone

On Sep 18, 2014, at 11:07 AM, "E. Powell Miller" <epm@millerlawpc.com> wrote:

Dear Mr. Andrews,

Given traffic issues, I suggest a call Friday or late afternoon Tuesday  if that works for you.  I have included on this string my colleague Dan Small.  Please let me know some good times.

Best,

Powell

The Miller Law Firm, PC

950 West University, Suite 300

Rochester, Michigan  48307

248-841-2200

3

**From:** caaloa [mailto:caaloa@gmail.com]
**Sent:** Saturday, September 13, 2014 9:28 AM
**To:** E. Powell Miller
**Subject:** Re: Blue Cross Blue Shield of Michigan Rough Draft Objection


Dear Mr. Miller,

              We can meet anytime after 10:00 am. Pick a day and I will meet rearrange my schedule. Traffic can be bad during rush hour especially where you are.



On Fri, Sep 12, 2014 at 6:18 PM, E. Powell Miller <epm@millerlawpc.com> wrote:

Dear Mr. Andrews,


 Thank you for your email.  We respect your right to object, but have different views on the merits of the settlement and the amount of our fee request.  We suggest a meeting to discuss our respective views.  Please let me know if you are willing to meet and dates you are available.



 Sincerely,



 Powell Miller

Sent from my iPhone


On Sep 12, 2014, at 4:35 AM, "caaloa" <caaloa@gmail.com> wrote:

    Dear Mr. Miller,

              I may have a solution to the problem of enhancing the settlement fund for the class and gaining approval of the settlement on November 12, 2014. The answer is on pages 65 and 66 of the objection. I want counsel to voluntary agree to reduce the attorney fee request by approximately $1,155.000. That would ensure the class has more than it has now. I will revise the objection to assist you with it's passage assuming the Court approves the motion. This will help Plaintiffs' Counsel save a further reduction of at least $2,000,000.00 and quite possibly all of the fee. I can provide additional details if you are interested. A bird in the hand is worth three in the bush.

    Chris Andrews

On Mon, Sep 8, 2014 at 10:37 AM, E. Powell Miller <epm@millerlawpc.com>
wrote:

Dear Mr. Andrews,


 I did receive your rough draft of the objection and it is readable.  I appreciate
your interest and will review it closely.



 Sincerely,



 Powell Miller

Sent from my iPhone


On Sep 8, 2014, at 10:02 AM, "caaloa" <caaloa@gmail.com> wrote:

> Please email back and let me know you received it and it's
> readable. Thanks.



> On Mon, Sep 8, 2014 at 10:01 AM, caaloa <caaloa@gmail.com>
> wrote:

> Dear Mr. Miller,

>               As promised attached is a rough draft of the
> objection that will be filed with the Court fourteen days from
> today. Please forward to applicable parties for their review also.
> Do not take what was written as personal, it's all business. After all
> parties have carefully reviewed the objection I can be reached at
> this email address and phone of 1-248-635-3810 from 9:00 a.m. to
> 9:00 p.m. to  discuss the objection what should be done to benefit
> the class to resolve some or all of these issues. Court's can do
> anything and the objector's could be wrong and overruled in spite
> of all the evidence so compromise should be explored if Plaintiffs'
> Counsel so chooses. Thank you for your time.

> Christopher Andrews

**From:**          caaloa <caaloa@gmail.com>
**Sent:**          Monday, September 22, 2014 2:41 PM
**To:**            Dan Gustafson
**Subject:**       Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Instead of filing a seven page objection it's a bit over 300, it's taking a while to get just right.

On Mon, Sep 22, 2014 at 3:39 PM, caaloa <caaloa@gmail.com> wrote:
 Yes,
     Do you need to have me involve an attorney to speak to you on my behalf to resolve this? If not it will be
filed tomorrow, I have been working on it since noon today and still not done.
 Chris Andrews

On Mon, Sep 22, 2014 at 2:09 PM, Dan Gustafson <DGustafson@gustafsongluek.com> wrote:

Dear Chris,


We have discussed and determined that we cannot agree to your proposed
resolution of your potential individual objection at this time.


As I understand it, the deadline is Wednesday to file objections and the process/rules
for doing so are set out in the Notice and on the website.


If you decide to file, the Court will have to decide the merits.


Please let me know if you have any questions


Dan


**From:** caaloa [mailto:caaloa@gmail.com]
**Sent:** Friday, September 19, 2014 7:56 PM
**To:** Dan Gustafson

**Subject:** Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Dan,

      Almost forgot. Upon rereading my revised objection the $990,000.00 will reimburse the class for the cost of the notice mailing which also benefits the class fund.

Christopher Andrews

On Fri, Sep 19, 2014 at 7:27 PM, caaloa <caaloa@gmail.com> wrote:

Dan,

    Here it is on short notice, you can make changes and clean it up if need be. Give me a call to discuss some time this weekend as to Monday filing and which one. I would make a second copy and reword to have the award come out of the settlement fund if that's a deal breaker.

Chris Andrews

On Fri, Sep 19, 2014 at 5:45 PM, caaloa <caaloa@gmail.com> wrote:

It was done, saved it and it is nowhere in the computer and no one here to help. Will have to redo and send again.

On Fri, Sep 19, 2014 at 4:29 PM, Dan Gustafson <DGustafson@gustafsongluek.com> wrote:

Thx

Dan

On Sep 19, 2014, at 3:19 PM, "caaloa" <caaloa@gmail.com<mailto:caaloa@gmail.com>> wrote:

Just looked at email after I called you. I will assemble a motion for your review and email it to you. That will show what I was going to clarify with you. Should be there within a forty minutes ish.
Christopher Andrews

On Fri, Sep 19, 2014 at 12:56 PM, Dan Gustafson <DGustafson@gustafsongluek.com<mailto:DGustafson@gustafsongluek.com>> wrote:
Dear Mr. Andrews

Thanks for taking the time to talk to us this morning about your potential objections

We are considering your offer and will get you a final answer as soon as we can.

But as we advised you, we fully expect that we would need a written demand/agreement that we could put before the Court to make sure there is no confusion about the terms and to make sure that we full transparency before the Court and Class.

To further this possible resolution, can you get us a written demand and proposed settlement agreement?

Then we will all know what the exact details are so we can make clear choices

Let me know when I can expect a draft

Dan

From: E. Powell Miller [mailto:epm@millerlawpc.com<mailto:epm@millerlawpc.com>]
Sent: Thursday, September 18, 2014 3:54 PM
To: caaloa
Cc: Small, Daniel (DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>) (DSmall@cohenmilstein.com<mailto:DSmall@cohenmilstein.com>); Dan Gustafson; Dan Hedlund
Subject: RE: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Mr. Andrews:

 Here is the call in information:

 This conference call is scheduled for 10:00am Eastern Time/9:00am Central Time.
Date:     Friday, September 19, 2014
Start Time:       10:00 AM Eastern Daylight Time
Dial-in Number: 1-605-475-5950<tel:1-605-475-5950> (Midwest)
Participant Access Code:       3674356

Sincerely,
Powell Miller

The Miller Law Firm, PC
950 West University, Suite 300
Rochester, Michigan  48307
248-841-2200<tel:248-841-2200>

From: caaloa [mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>]
Sent: Thursday, September 18, 2014 4:46 PM
To: E. Powell Miller
Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

OK

On Thu, Sep 18, 2014 at 4:41 PM, E. Powell Miller
<epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Thanks Mr. Andrews

I will work on a call in number and be sure to e-mail it to you before 10 tomorrow.

3

Sincerely,

Powell

The Miller Law Firm, PC
950 West University, Suite 300
Rochester, Michigan  48307
248-841-2200<tel:248-841-2200>

From: caaloa [mailto:caaloa@gmail.com<mailto:caaloa@gmail.com>]
Sent: Thursday, September 18, 2014 4:34 PM

To: E. Powell Miller
Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Sure

On Thu, Sep 18, 2014 at 3:49 PM, E. Powell Miller
<epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Mr. Andrews,

 Can you participate in a call tomorrow (Friday) at 10 EST?  If so, I will e-mail a call in number.  We will
have as participants who are all class counsel: myself, Dan Small, Dan Hedlund and/or Dan
Gustafson.  Please advise.

  Sincerely,

  Powell Miller

Sent from my iPhone

On Sep 18, 2014, at 11:07 AM, "E. Powell Miller"
<epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Dear Mr. Andrews,

Given traffic issues, I suggest a call Friday or late afternoon Tuesday  if that works for you.  I have included
on this string my colleague Dan Small.  Please let me know some good times.

  Best,

  Powell

The Miller Law Firm, PC
950 West University, Suite 300
Rochester, Michigan  48307
248-841-2200<tel:248-841-2200>

From: caaloa [mailto:caaloa@gmail.com]
Sent: Saturday, September 13, 2014 9:28 AM
To: E. Powell Miller

Subject: Re: Blue Cross Blue Shield of Michigan Rough Draft Objection

Dear Mr. Miller,
                    We can meet anytime after 10:00 am. Pick a day and I will meet rearrange my schedule.
Traffic can be bad during rush hour especially where you are.

On Fri, Sep 12, 2014 at 6:18 PM, E. Powell Miller
<epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Dear Mr. Andrews,

  Thank you for your email.  We respect your right to object, but have different views on the merits of the
settlement and the amount of our fee request.  We suggest a meeting to discuss our respective views.  Please
let me know if you are willing to meet and dates you are available.

  Sincerely,

  Powell Miller

Sent from my iPhone

On Sep 12, 2014, at 4:35 AM, "caaloa" <caaloa@gmail.com<mailto:caaloa@gmail.com>> wrote:
Dear Mr. Miller,
                    I may have a solution to the problem of enhancing the settlement fund for the class and gaining
approval of the settlement on November 12, 2014. The answer is on pages 65 and 66 of the objection. I want
counsel to voluntary agree to reduce the attorney fee request by approximately $1,155.000. That would ensure
the class has more than it has now. I will revise the objection to assist you with it's passage assuming the
Court approves the motion. This will help Plaintiffs' Counsel save a further reduction of at least
$2,000,000.00 and quite possibly all of the fee. I can provide additional details if you are interested. A bird in
the hand is worth three in the bush.
Chris Andrews

On Mon, Sep 8, 2014 at 10:37 AM, E. Powell Miller
<epm@millerlawpc.com<mailto:epm@millerlawpc.com>> wrote:
Dear Mr. Andrews,

 I did receive your rough draft of the objection and it is readable.  I appreciate your interest and will review it
closely.

  Sincerely,

  Powell Miller

Sent from my iPhone

On Sep 8, 2014, at 10:02 AM, "caaloa" <caaloa@gmail.com<mailto:caaloa@gmail.com>> wrote:
Please email back and let me know you received it and it's readable. Thanks.

On Mon, Sep 8, 2014 at 10:01 AM, caaloa <caaloa@gmail.com<mailto:caaloa@gmail.com>> wrote:
Dear Mr. Miller,
                    As promised attached is a rough draft of the objection that will be filed with the Court
fourteen days from today. Please forward to applicable parties for their review also. Do not take what was

written as personal, it's all business. After all parties have carefully reviewed the objection I can be reached at this email address and phone of 1-248-635-3810<tel:1-248-635-3810> from 9:00 a.m. to 9:00 p.m. to  discuss the objection what should be done to benefit the class to resolve some or all of these issues. Court's can do anything and the objector's could be wrong and overruled in spite of all the evidence so compromise should be explored if Plaintiffs' Counsel so chooses. Thank you for your time.

Christopher Andrews

| From: | caaloa <caaloa@gmail.com> |
|---|---|
| Sent: | Monday, September 22, 2014 1:02 PM |
| To: | E. Powell Miller |
| Subject: | Re: No Response |

Dear Mr. Powell,

        Since i am now just starting to print off three copies and download and print the exhibits I will be rushed to get this all done by 4:00 pm. This delivery will occur tomorrow am. Some of you are so clueless based on what I now know. Take the offer. Have a nice day.

Christopher Andrews

On Mon, Sep 22, 2014 at 12:45 PM, caaloa <caaloa@gmail.com> wrote:

Dear Mr. Miller,

        No call means no I guess. After reviewing the 380 pages in this objection it will be posted to Scribed and a email news release sent out to 125 news organizations, congressional committees, public interest groups directing them to this objection. I will also send a letter to all judges in this district referring them to this objection so everyone will be able to see what a poster child of abuse this entire settlement is so no other class members will be victimized in future class action settlements. The goal is to get Plaintiffs Counsel dismissed as you already know, the demands have now changed and been substantially increased. This won't be a slam dunk like it was for your last two settlements in in the Detroit Federal Court. BAR complaints will also being filed. You can also include this for the judge to see with all the other emails sent your way.

Christopher Andrews

From:               caaloa <caaloa@gmail.com>
Sent:               Sunday, December 07, 2014 7:35 PM
To:                 E. Powell Miller
Subject:            FED. R. Civ. P. 11 (c)(1)(A) sanction rule

## FED. R. Civ. P. 11 (c)(1)(A).

The Safe Harbor Provision Unlike the case of court-initiated sanctions, a party seeking to impose sanctions must first serve the opposing party with a Rule 11 motion at least twenty-one days before presenting the motion to the court, and then file the motion with the court. The motion will also use 28U.S.C. § 1927;. **Motion for sanctions under 28 U.S.C 1927 does not require a twenty one day wait so we may file one before the twenty one days are up or both at the twenty second day.  I can send a rough draft copy to each class counsel by email or would you prefer snail mail on Tuesday? Sanctions will be asked for three out of the four class counsel.**

**Chris Andrews**

**From:**              caaloa <caaloa@gmail.com>
**Sent:**              Saturday, December 27, 2014 7:09 PM
**To:**                Dan Gustafson; Dan Hedlund; Daniel Small; E. Powell Miller; isquith@whafh.com
**Subject:**           Service of Safe Harbor Rule 11 Motion


Dear Counsel,

       The Sanction Motion was served on you December 11, 2014 was performed via email. Are you accepting service that way per court rules or should I resend it via regular mail? Thank you.
Chris Andrews

| | |
|---|---|
| From: | Dan Gustafson <DGustafson@gustafsongluek.com> |
| Sent: | Monday, December 29, 2014 12:04 PM |
| To: | caaloa |
| Cc: | Daniel Small; David Fink (dfink@finkandassociateslaw.com); E. Powell Miller |
| Subject: | RE: Service Rule 5 |

Dear Mr. Andrews,

As I said before, either way is fine with us.

Dan

**From:** caaloa [mailto:caaloa@gmail.com]
**Sent:** Monday, December 29, 2014 11:03 AM
**To:** Dan Gustafson
**Subject:** Re: Service Rule 5

Do you want the motion sent via email to those in the above address box or sent by US Postal Service after it gets filed with the court?
Chris Andrews

On Mon, Dec 29, 2014 at 11:24 AM, caaloa <caaloa@gmail.com> wrote:
OK.

On Mon, Dec 29, 2014 at 11:20 AM, Dan Gustafson <DGustafson@gustafsongluek.com> wrote:

Dear Mr. Andrews,


As I advised previously, we are fine with your initial service via email.  As you may not know, that has been the practice in this case (and most cases these days) for efficiency and to minimize cost.



Dan


**From:** caaloa [mailto:caaloa@gmail.com]
**Sent:** Monday, December 29, 2014 10:17 AM
**To:** Dan Gustafson
**Subject:** Re: Service Rule 5

1

Do you accept service as if permission was granted prior to receiving the motion on December 08, 2014?

Chris Andrews


On Mon, Dec 29, 2014 at 10:50 AM, Dan Gustafson <DGustafson@gustafsongluek.com> wrote:

Dear Mr. Andrews,


I hope you and your family had a nice holiday season.


With respect to the service issue that you raise below, we are fine with any of  proposed methods you suggest.


Please let me know how you want to proceed


Dan


**From:** caaloa [mailto:caaloa@gmail.com]
**Sent:** Monday, December 29, 2014 7:18 AM
**To:** Dan Gustafson; Dan Hedlund; Daniel Small; E. Powell Miller; isquith@whafh.com
**Subject:** Service Rule 5


Dear Counsel,

            Rather than leave this as an open ended deadline lets shorten it up. By 12:00 pm tomorrow one of three things will happen:


You agree in writing to waive the prior written notice requirement and and accept the service as if it were agreed to with no claim the rule was not followed so the clock continues to run.

You give permission via email to resend via email the motion, the clock starts over.

I will drop paper copies in the mail, clock starts over.

If no answer is received by 12:00 pm tomorrow paper copies will be sent via US mail and the clock starts over.

Chris Andrews.

| | |
|---|---|
| **From:** | caaloa <caaloa@gmail.com> |
| **Sent:** | Monday, January 12, 2015 3:01 PM |
| **To:** | Bell, Theo; Dan Gustafson; Dan Hedlund; Daniel Small; E. Powell Miller; isquith@whafh.com; caaloa |
| **Subject:** | Copy of filing made today Shane Group |
| **Attachments:** | response to emergency motion 1-12.docx; oliver law group.docx |

Exhibit "A" and Exhibit "B" don't want to leave the scanner and be sent to you. Meantime attached is all but the last two pages. Will send asap when a fix is found.

Chris Andrews

January 12, 2014

Hand Delivery

Clerk of Court

The United States District Court

For The Eastern District of Michigan

Southern Division

U.S. Courthouse

231 W. Lafayette Blvd.

Detroit, Michigan 48226

|  |  |
|---|---|
|  | Courtroom of Judge Denise Page Hood |
|  | Case No. 2:10-cv-14360-DPH- MKM |
| The Shane Group, Inc. etc. al | Response Class Counsels Emergency Motion |
|  | Supplement to Mr. Miller's Submission |
|  | Supplement to Sanctions Motion |

Plaintiffs,

v. Blue Cross Blue Shield of Michigan,

Defendant,

Issue:

A. Is this Emergency Motion Necessary?

Answer: No.

B. Should class counsel be sanctioned for wasting this objector's time once again responding to a fake emergency motion?

Answer: Yes.

Class counsel received the email in question on January 8, 2014 at 8:40 am. They then filed an emergency motion thirty four long hours later. Had class counsel simply called the objector by dialing seven numbers twenty four hours a day or emailed for an explanation, this is how the conversation or written response from the objector would have went:

Class Counsel: "What do you mean by the last email?"

Objector: "Based on new findings the last two days you better pull those two poisoned documents because publicity about this case will start on Wednesday."

No reasonable thinking lawyer would jump to the conclusion the lawyers made up artificially to try and divert attention away for the Miller response and the Motion Sanction filed a few days earlier. By waiting all that time and filing the motion at 6:20 pm after business hours on a Friday night, knowing the objector can't file a

response until Monday morning shows it is a simple harassment filing. Class Counsel is grasping at straws to divert attention away from their horribly abominable proposed settlement along with multiple firms (so far) getting caught defrauding the class in its billing scheme as has been shown in the papers filed in the past and last week. Class Counsel's filing has now slowed the objector's audit of each firm seeking more ghost promotion billing scheme evidence so objector only had limited time to check one firm and found that firm did engage in this behavior with twelve more firms and their lawyers to go. Class counsel was successful in needlessly delaying this audit. This is why the Court needs to sanction class counsel immediately to stop wasting the objector's very valuable time.

Here is Class Counsel's email and objector's email response sent to counsel ten minutes after receiving a "courtesy" copy.

**Shane Group et al. v. Blue Cross, 10-cv-14360**

                6:12 PM (30 minutes ago)
**Bell, Theo**

to me, Daniel, Dan, Fred

Mr. Andrews,

 Attached is a courtesy copy of Class Counsel's Emergency Motion for Show Cause Order Relating to Sanctionable Conduct  filed with the Court a short while ago.

 Theodore Bell

_____

**Theodore B. Bell, Esq.**

Wolf Haldenstein Adler Freeman & Herz LLC

55 West Monroe Street, Suite 1111

Chicago, IL  60603

Tel: (312) 984-0000

Fax: (312) 984-0001

_____

Notice: This message is for addressee only and may contain privileged and/or confidential information. Any dissemination by anyone other than the intended recipient is strictly prohibited. If you have received this message in error, please delete immediately.

Attachments area

[Preview attachment 206.pdf](Preview attachment 206.pdf)

6:22 PM (19 minutes ago)

| | |
|---|---|
| from: | caaloa <caaloa@gmail.com> |
| | "Bell, Theo" <tbell@whafh.com>, |
| | Dan Gustafson <DGustafson@gustafsongluek.com>, |
| | dhedlund@gustafsongluek.com, |
| to: | Daniel Small <dsmall@cohenmilstein.com>, |
| | "E. Powell Miller" <epm@millerlawpc.com>, |
| | isquith@whafh.com, |
| | caaloa <caaloa@gmail.com> |
| date: | Fri, Jan 9, 2015 at 6:22 PM |
| subject: | Re: Shane Group et al. v. Blue Cross, 10-cv-14360 |
| mailed-by: | gmail.com |
| : | Important mainly because of your interaction with messages in the conversation. |

0.81 GB (5%) of 15 GB used
[Manage](Manage)
©2015 Google - [Terms](Terms) - [Privacy](Privacy)
Last account activity: 19 minutes ago
Details

Dear Counsel,

        Class counsel is so desperate.  I am talking about the publicity you are about to receive in this and other cases that applicable counsel appears to have been engaging in questionable billing practices. You can call off your emergency motion and stop wasting my time and the Court's time.

Chris Andrews

End of email

The Oliver Group apparently belongs to the "ghost promotion inflated billing fraud scheme club" and has deleted the lawyer's bio and redirected it to Ms.Oliver's own bio in a failed attempt at a cover-up. Maybe she is obtaining advice from class counsel. This lawyer, NS, is named as a partner billing out at $595.00 per hour and based on his resume not a partner after being there a few years, an attorney for seven years and not worth $595.00 per hour. (Exhibit "A")  (That firm's fee is in the supplement dated October 06, 2014 page 203.)  (The objector copied the bio a a while ago assuming it would be deleted when the stuff hit the fan so to speak.) The Court should demand Ms Oliver explain the cover-up and sanction her too for wasting this objector's time uncovering this fraudulent cover-up. Ms. Oliver seems to have multiple law firms with her BAR address at a firm that is not the name and

address shown in the declaration that is billing the class for allegedly close to $200,000.00 of "work".  Where does Ms. Oliver really work at? This finding brought about the email to Class Counsel.

The objector has only reviewed six out of the eighteen law firms using outside sources verifying the lawyers are at the level the heads of the law firms claim they are at. What is this now four out of six firms checked have job classification issues? This objector is disgusted and the selfish greed just never ends with these lawyers. Objector continues to audit all the firms in this case, their pending cases, like AIG, JP Morgan that settled last week,  and all the cases class counsel has been involved in for the past five years looking for evidence of this past ghost promotion scheme and overbilling. Objector will pass on information to those objectors and appellants above and in future cases, gratis. This is obviously not the first case multiple counsels have engaged in these shenanigans, just the first time they got caught and they continue to do it in other pending cases.

Counsels' scheme shows a clear and present danger to the class that the settlement amount was compromised by the apparent fraud scheme that is taking place related to the fees and expenses. This behavior has poisoned this case and all of class counsel.

Class Counsel, remember those 125 media, governmental agencies and public interest groups, pro business groups est. that the objector referenced in the email you chose to disclose in your bid for bloated fees and expenses at the expenses of the class? Well due to counsels greed and evidence left behind there are now multiple stories to be told starting Wednesday going out to these organizations. Class counsel can explain its actions to those who may follow up on this story. The Committee on the Judiciary Administrative Oversight and the Courts will be most interested in this case since this objector has done business with them in the Lehman officer's case.

This objector made two very minor errors in the two motions filed a few days ago which can now be corrected thanks to this fake emergency motion:

First, in Mr. Miller's supplement for more undeserved money, Ms. Casey's billing rate of $525 an hour is not as much as Mr. Fieger's as the objector wrote about but rather is $125.00 an hour **more** than **he** can charge using the Michigan Bar Rate survey! All counsels' know they should have used this survey or something similar but chose to intentionally play ignorant hoping for a rubber stamp.

The particular Miller lawyer should have been billing at $300.00 an hour for an associate status but the "ghost promotion" to "partner" solely for billing purposes now artificially increases the rate to what they claim to a laughable $525.00 hourly

rate for the three cases shown. According to the Michigan Bar Survey that rate is still $125.00 an hour to high even at the top end of the scale for a partner. Attached Exhibit "B" from the Wells Fargo case shows the "associate" promoted to "partner" issue promotion. This exhibit attaches to Exhibit "B1" of the Miller response which is the lawyer's bio that was included in that fee petition in the Miller response filed a few days ago. (See date at top of the bio for a match.)

When you add up the number of hours charged at the too high a rate vs. what should have been charged for the proper job status (assuming Michigan Bar Rates) the one employee in just one firm in all three class action cases combined billed out for a potential overcharge of almost a $1,000,000.00 to the class's! The firm's entire fee should be forfeited in this case, the pending AIG case and refunded in the case they were already paid on. The same goes for the other firm's who engaged in this scheme.

Objector adds the following to the pending sanction motion filed a few days ago: Objector requests that Class Counsel withdraw the emergency motion as it is harassing, filed for no valid reason other than retaliation for objector's filings made a few days ago and again wasted the objector's time and money. Objector requests that the Court jettison this firm as well as being clearly inadequate to represent the best interests of the class. Objector requests reimbursement of time, eight hours at

$288.00 per hour, total $2,304 .00 and expenses of $3.80, gas $5.64, for a total of $9.44, grand total $2,313.64 be added to the pending sanction motion.

The Court should demand all counsels provide a detailed breakdown using the attached example (Exhibit "C") as a guide to explain their hours and where they s were recorded. **The hours are recorded but that doesn't mean they were all needed!** Tranches say every four moths should be included. Why didn't each law firm use a spread sheet like this here? Maybe because they have so many fake hours to hide and by breaking it down as shown would make it a whole lot easier to see the inflated hours charged to the class for various sections of the litigation. The same breakdown should be done on the expense side especially the expert's $2,500,000.00 bill.

 Counsel's harassment of the objector and diverting attention away from the issues over the past few months would have been better spent fixing this broken, decrepit proposed class action settlement that only benefits class counsel and just 1% of the seven million affected Michigander's. Why hasn't defense counsel objected to class counsel's behavior when a huge number of claimants are the defendants own customers? The defendant is secretly rooting for class counsel and/or case dismissal with prejudice. Shouldn't defense counsel report Class Counsel to the State Bar per BAR rules based on the evidence to date?

Class Counsel keeps making the same mistake over and over again dealing with this objector and wasting the objector's time and money and causing lost opportunity costs. They fail to realize and acknowledge the settlement has spun out of control and is becoming worse with every new response the objector files due to class counsels own filings. They underestimated this objector, won't repair the material issues and the damages caused because they are arrogant. Class Counsel can learn from this very, very appropriate parable below, maybe.

**The Monkey's Fist**

Native tribes used to catch monkeys by hollowing out a coconut (later using a glass jar) and filling it with rice or other delicacies, then leaving it tethered to a tree for a monkey to find. A monkey would reach in and grab the desired delicacy and be trapped because the hole had been deliberately made just big enough for a flexible hand to enter but not for a closed fist to leave. In short order, the monkey went from getting his dinner to being someone else's dinner.

Clearly it was not the coconut that was the trapping the monkey. Rather the true trap was in the monkey's own mind, the monkey's **greed,** the monkey's attachment to his physical possessions, the monkey's unwillingness to "Let Go".

Thank you for your continued time and consideration.

Respectfully submitted,

Christopher Andrews

Case No. Case No. 2:10-cv-14360-DPH-MKM

Dated: January 12, 2015

*Christopher Andrews, Pro se objector*

P.O. Box 530394

*Livonia, MI 48152-0394 E-mail caaloa@gmail.com Phone 1-248-635-3810*


*Christopher Andrews*

*I certify under penalty of perjury that the above and below information is true and accurate to the best of my knowledge, information and belief.*


*Christopher Andrews*

I hereby certify that on this day I hand delivered foregoing to the Clerk of the Court, and served true and correct copies upon class counsel via email at the addresses below. Clerk of Court, the United States District Court for the Eastern District of Michigan Southern Division, U.S. Courthouse 231 W. Lafayette Blvd. Detroit, Michigan 48226 Telephone number (313) 234-5005.

COHEN MILSTEIN SELLERS & TOLL PLLC 202-408-4600 Daniel A. Small

Daniel Small <dsmall@cohenmilstein.com>,

Brent W. Johnson

1100 New York Avenue, NW

Suite 500

Washington, DC 20005

Gustafson Gluek Pllc

Canadian Pacific Plaza

120 South Sixth Street, Suite 2600

Minneapolis, MN 55402

Attention Daniel  Gustafson <DGustafson@gustafsongluek.com>,

dhedlund@gustafsongluek.com,

The Miller Law Firm

950 West University Avenue, Suite 300

Rochester, MI 48307

Attention Mr. Miller E. Powell Miller" <epm@millerlawpc.com>

Wolf Haldenstein Adler Freeman & Herz, LLC

270 Madison Avenue

New York, New York 10016

Attention Fred Isquith isquith@whafh.comThe Shane Group etc. al v Blue Cross

Blue Shield of Michigan Case No. 2:10-cv-14360-DPH-MKM

# Alyson Oliver – Attorney | Managing Partner

With a multi-faceted career spanning over 14 years, Alyson Oliver's experience as a trial lawyer and managing partner of the Oliver Law Group P.C. has provided a solid foundation for handling intricate litigation. Oliver has thrived over the years on challenging courtroom battles and victories. As a dynamic trial lawyer, she is a diligent advocate for her clients. Oliver is skilled in all phases of litigation from the preparation and discovery phases through negotiations, hearings, and trials.

- See more at: http://legalbusinessnow.com/attorney-bios/alyson-oliver-attorney-managing-partner/#sthash.JNAkIiDk.dpuf

# Nick Suciu III – Attorney

Mr. Suciu joined the Oliver Law Group in March of 2012 and holds both his Juris Doctor and Masters in Business Administration. Prior to joining the Oliver Law Group, Mr. Suciu represented and provided General Counsel to several dietary supplement manufacturers and retailers. Mr. Suciu guided these companies through all aspects of their businesses including; FDA and FTC regulatory guidelines, employment guidelines, advertising and labeling, insurance and litigation issues.

Mr. Suciu's practice focuses on business consulting and litigation, with an emphasis on the dietary supplement and food industry, regulatory compliance.

In 2013, Mr. Suciu was recognized as a "Rising Star" by SuperLawyers Magazine.
For 2014, Mr. Suciu was again recognized as a "Rising Star" by SuperLawyers Magazine.

- See more at: http://legalbusinessnow.com/attorney-bios/nick-suciu-iii-attorney/#sthash.t4DzEuYR.dpuf

# Lisa M. Gray – Attorney

Lisa Gray is an attorney with Oliver Law Group. She practices with the firm's Class Action and Multidistrict Litigation section. Since joining the firm in January, 2013, Ms. Gray has represented clients and worked on cases involving product liability, premise liability, anti-trust, consumer protection, and employment law claims. Ms. Gray is also experienced with Municipal and Government Law, probate law, and business formation and contract services. Prior to joining Oliver Law Group, Ms. Gray held a variety of legal positions which included working as a Law Clerk for the United States Department of Interior, as a Policy Analyst for the Columbus

Chamber of Commerce, and as a Hearing Referee for the Michigan Tax Tribunal, Small Claims Division.

- See more at: http://legalbusinessnow.com/attorney-bios/lisa-m-gray-attorney/#sthash.kH3w3H0M.dpuf

## **Alyson Oliver** http://www.nwtla.org/members/AlysonOliver/

- Profile

- View

### *Profile*

| | |
|---|---|
| Name | Alyson Oliver |
| Firm | Oliver Law Group P.C. |
| City | Rochester |
| State | MI |
| Bio | Alyson Oliver is a senior partner at Kresch Oliver PLLC. Ms. Oliver specializes in multi-plaintiff litigation, class actions, labor and employment, civil rights, personal injury, bankruptcy and all phases of litigation. |
| | Ms. Oliver obtained her Juris Doctorate Degree at the University of Detroit Mercy School of Law. She was admitted to the Michigan Bar in 1998, the U.S District Court in 2001 and the Sixth Circuit Court of Appeals in 2003 and admitted via pro hac vice motion and through the multi district litigation throughout many states. |

## State Bar website:

Alyson Oliver—P55020 *(active and in good standing)*

**Oliver Law Group PC**
363 W Big Beaver Rd Ste 200
Troy, MI  48084   Map It

Phone: **(248) 327-6556**
Fax: (248) 436-3385
e-Mail: aoliver@oliverlg.com

Web: www.legalactionnow.com

vCard Electronic Business Card

Michigan Licensed: 05/12/1999

# A second address and business

# Kresch Oliver PLLC goes to 1-800-law firm

1-800-LAW-FIRM
26700 Lahser Road #400

# A third address

**The Oliver Law Group (www.legalactionnow.com) | The ...**
*legal*actionnow.com/

*Oliver Law Group* P.C. is a different kind of national law firm. One that focuses on the needs of the injured first. A compassionate law firm dedicated to fighting for ...

Google+ page · Be the first to review

950 West University Drive #200, Rochester, MI 48307
(800) 939-7878

# Ms. Oliver, is this your firm?

# Zimmer goes on offensive against lawyers

March 30, 2011

J.K. Wall

The Internet has been a boon for trial attorneys trying to find plaintiffs for class-action lawsuits. Now Warsaw-based Zimmer Inc. is taking the trial attorneys to court.

The maker of orthopedic implants filed suit in February to stop Detroit-area law firm Kresch Oliver PLLC from making allegedly false claims and using its trademarks on websites about one of Zimmer's knee-replacement implants, which is called NexGen.

On a website at www.zimmernexgenkneereplacement.com, Kresch Oliver highlights study results released in 2010 that showed 36 percent of patients with the NexGen implant suffered pain in their knees two years after the implant surgery. And 9 percent of patients had to have a repeat surgery because they experienced a loosening of the joint after receiving the NexGen implant.

But that's not the whole story, Zimmer retorted in a 30-page amended complaint in federal court in South Bend. The lawyers are citing only one study, of 108 surgeries conducted by two Chicago physicians, compared with about 3 million implanted since NexGen's launch in 1994.

Zimmer also made sure to note that the joint loosening experienced by some patients did not involve all parts of its NexGen products, but only one, called the CR-Flex Porous Femoral Component.

The case is still pending, but Zimmer seems to have gotten what it wanted. The websites maintained by Kresch have since hedged their claims and, on the site www.1800lawfirm.com, even included the counter-arguments from Zimmer's lawsuit.

Whether that spares the company a lawsuit is anyone's guess. There is no record in the federal courts nationwide of Kresch Oliver partners Ari Kresch or Alyson Oliver filing any lawsuits against Zimmer. A message left at Kresch Oliver was not returned.

But Zimmer is certainly motivated to cut off class-action lawsuits before they get rolling.Since 2008 it has set aside $179 million to settle claims that its Durom cup hip implant had a high failure rate, resulting in joint loosening and follow-up surgery.

The lawsuits came as Zimmer's sales were stagnating due to the recession. The company in January said it was launching a restructuring effort to reduce spending by more than $100 million a year. As part of that effort, the company confirmed to the *Wall Street Journal* this month that it will close a plant in South Carolina, putting 130 people out of work

Finding the right attorney can be a difficult process. At some large firms your case won't receive the personalized attention it deserves. Lost in the shuffle, your case becomes one of many. Smaller firms can provide the personalized attention, but lack the resources necessary for a complex case.

At Kresch Oliver, our skilled attorneys will fight for your rights. We are small enough to give you the personalized attention you deserve, but as a proud member of the 1-800-LAW-FIRM network we have access to all the resources you may need. With attorneys

who specialize in all areas of law, we can protect your rights regardless if it is a civil or criminal matter. Located in Southfield, Michigan our attorneys will proudly fight for your rights so that you get the justice you deserve.

**Specialties**

Bankruptcy, Product Liabilities, Social Security Disability Claims, Criminal Defense

- *Website*

  http://www.krescholiver.com

- *Industry*

  Law Practice

- *Type*

  Privately Held

- *Headquarters*

  Suite 305 Southfield, Michigan 48076 United States

| | |
|---|---|
| **From:** | caaloa <caaloa@gmail.com> |
| **Sent:** | Monday, January 12, 2015 3:05 PM |
| **To:** | Bell, Theo; Dan Gustafson; Dan Hedlund; Daniel Small; E. Powell Miller; isquith@whafh.com; caaloa |
| **Subject:** | Re: Copy of filing made today Shane Group |

Make that "Exhibit "B" and Exhibit "C"

On Mon, Jan 12, 2015 at 4:00 PM, caaloa <caaloa@gmail.com> wrote:
> Exhibit "A" and Exhibit "B" don't want to leave the scanner and be sent to you. Meantime attached is all but
> the last two pages. Will send asap when a fix is found.
> Chris Andrews

**From:**          caaloa <caaloa@gmail.com>
**Sent:**          Monday, January 12, 2015 6:16 PM
**To:**            Bell, Theo; Dan Gustafson; Dan Hedlund; Daniel Small; E. Powell Miller;
                   isquith@whafh.com; caaloa
**Subject:**       Balance of two exhibits attached
**Attachments:**   attachments(2).zip


Scanner had some issues as you can see, the last two images are clear.

ging partner of the Oliver Law Group P.C. has ... years, Alyson Oliver's experience as a trial law-
intricate litigation. Oliver ... tried ... over the years on challenging courtroom battles and
victories. As a dynamic trial lawyer, she is a diligent advocate for her clients. Oliver is skilled in
all phases of litigation from the preparation and discovery phases through negotiations, hearings,
and trials.

- See more at: http://legalbusinessnow.com/attorney-bios/alyson-oliver-attorney-managing-
partner/#sthash.JNAkIiDk.dpuf

# Nick Suciu III – Attorney

Mr. Suciu joined the Oliver Law Group in March of 2012 and holds both his Juris Doctor and
Masters in Business Administration. Prior to joining the Oliver Law Group, Mr. Suciu
represented and provided General Counsel to several dietary supplement manufacturers and

retailers. Mr. Suciu guided these companies through all aspects of their businesses including:

FDA and FTC regulatory guidelines, employment guidelines, advertising and labeling, insurance
and litigation issues.

Mr. Suciu's practice focuses on business consulting and litigation, with an emphasis on the
dietary supplement and food industry, regulatory compliance.

In 2013, Mr. Suciu was recognized as a "Rising Star" by SuperLawyers Magazine.
For 2014, Mr. Suciu was again recognized as a "Rising Star" by SuperLawyers Magazine.

- See more at: http://legalbusinessnow.com/attorney-bios/nick-suciu-iii-
attorney/#sthash.t4DzEuYR.dpuf

# Lisa M. Gray – Attorney

Lisa Gray is an attorney with Oliver Law Group. She practices with the firm's Class Action and
Multidistrict Litigation section. Since joining the firm in January, 2013, Ms. Gray has
represented clients and worked on cases involving product liability, premise liability, anti-trust,
consumer protection, and employment law claims. Ms. Gray is also experienced with Municipal
and Government Law, probate law, and business formation and contract services. Prior to joining
Oliver Law Group, Ms. Gray held a variety of legal positions which included working as a Law
Clerk for the United States Department of Interior, as a Policy Analyst for the Columbus

**Alyson Oliver** http://www.nwtla.org/members/AlysonOliver/

- Profile

- View

*Profile*

Name    Alyson Oliver

Firm    Oliver Law Group P.C.

City    Rochester

State    MI

Bio    Alyson Oliver is a senior partner at Kresch Oliver PLLC. Ms. Oliver specializes in multi-plaintiff litigation, class actions, labor and employment, civil rights, personal injury, bankruptcy and all phases of litigation.
Ms. Oliver obtained her Juris Doctorate Degree at the University of Detroit Mercy School of Law. She was admitted to the Michigan Bar in 1998, the U.S District Court in 2001 and the Sixth Circuit Court of Appeals in 2003 and admitted via pro hac vice motion and through the multi district litigation throughout many states.

## State Bar website:

Alyson Oliver ---P55020 *(active and in good standing)*

**Oliver Law Group PC**
363 W Big Beaver Rd Ste 200
Troy, MI 48084   Map It

Phone: **(248) 327-6556**
Fax: (248) 436-3385
e-Mail: aoliver@oliverlg.com

Michigan Licensed: 05/12/1999

# A second address and business

# Kresch Oliver PLLC goes to 1-800-law firm

1-800-LAW-FIRM
26700 Lahser Road #400

# A third address

**The Oliver Law Group (www.legalactionnow.com) | The ...**
*legal*actionnow.com/

*Oliver Law Group* P.C. is a different kind of national law firm. One that focuses on the needs of the injured first. A compassionate law firm dedicated to fighting for ...

Google+ page · Be the first to review

950 West University Drive #200, Rochester, MI 48307
(800) 939-7878

# Ms. Oliver, is this your firm?

# Zimmer goes on offensive against lawyers

March 30, 2011

J.K. Wall

Warsaw-based Zimmer Inc. is taking the trial attorneys to court.

The maker of orthopedic implants filed suit in February to stop Detroit-area law firm Kresch Oliver PLLC from making allegedly false claims and using its trademarks on websites about one of Zimmer's knee-replacement implants, which is called NexGen.

On a website at www.zimmernexgenkneereplacement.com, Kresch Oliver highlights study results released in 2010 that showed 36 percent of patients with the NexGen implant suffered pain in their knees two years after the implant surgery. And 9 percent of patients had to have a repeat surgery because they experienced a loosening of the joint after receiving the NexGen implant.

But that's not the whole story, Zimmer retorted in a 30-page amended complaint in federal court in South Bend. The lawyers are citing only one study, of 108 surgeries conducted by two Chicago physicians, compared with about 3 million implanted since NexGen's launch in 1994.

Zimmer also made sure to note that the joint loosening experienced by some patients did not involve all parts of its NexGen products, but only one, called the CR-Flex Porous Femoral Component.

The case is still pending, but Zimmer seems to have gotten what it wanted. The websites maintained by Kresch have since hedged their claims and, on the site www.1800lawfirm.com, even included the counter-arguments from Zimmer's lawsuit.

Whether that spares the company a lawsuit is anyone's guess. There is no record in the federal courts nationwide of Kresch Oliver partners Ari Kresch or Alyson Oliver filing any lawsuits against Zimmer. A message left at Kresch Oliver was not returned.

But Zimmer is certainly motivated to cut off class-action lawsuits before they get rolling.Since 2008 it has set aside $179 million to settle claims that its Durom cup hip implant had a high failure rate, resulting in joint loosening and follow-up surgery.

The lawsuits came as Zimmer's sales were stagnating due to the recession. The company in January said it was launching a restructuring effort to reduce spending by more than $100 million a year. As part of that effort, the company confirmed to the *Wall Street Journal* this month that it will close a plant in South Carolina, putting 130 people out of work

Finding the right attorney can be a difficult process. At some large firms your case won't receive the personalized attention it deserves. Lost in the shuffle, your case becomes one of many. Smaller firms can provide the personalized attention, but lack the resources necessary for a complex case.

At Kresch Oliver, our skilled attorneys will fight for your rights. We are small enough to give you the personalized attention you deserve, but as a proud member of the 1-800-LAW-FIRM network we have access to all the resources you may need. With attorneys

Bankruptcy, Product Liabilities, Social Security Disability Claims, Criminal Defense

- *Website*

  http://www.krescholiver.com

- *Industry*

  Law Practice

- *Type*

  Privately Held

- *Headquarters*

  Suite 305 Southfield, Michigan 48076 United States

# The Miller Law Firm, P.C. Lodestar Report

| Staff | Hours | Rate | Amount |
|---|---|---|---|
| **Attorneys** | | | |
| E. Powell Miller | 2,668.75 | $725.00 | $1,934,843.75 |
| Marc L. Newman | 285.75 | $695.00 | $198,596.25 |
| Sharon S. Almonrode | 3,094.40 | $725.00 | $2,243,440.00 |
| Ann L. Miller | 217.50 | $680.00 | $147,900.00 |
| Jayson E. Blake | 2,380.00 | $650.00 | $1,547,000.00 |
| Christopher D. Kaye | 3,001.50 | $575.00 | $1,725,862.50 |
| Melissa Wojnar-Raycraft | 12.50 | $425.00 | $5,312.50 |
| Emily E. Hughes | 41.25 | $525.00 | $21,656.25 |
| Casey A. Fry | 74.50 | $525.00 | $39,112.50 |
| Bartosz Kmiec | 544.25 | $425.00 | $231,306.25 |
| Brian C. Martin | 560.75 | $330.00 | $185,047.50 |
| Christiana M. Sayegh | 322.25 | $295.00 | $95,063.75 |
| Jane Gazman | 117.50 | $295.00 | $34,662.50 |
| Justin B. Vandeputte | 658.75 | $465.00 | $306,318.75 |
| Keith Treanor | 200.50 | $325.00 | $65,162.50 |
| Lauren E. Crummel | 478.50 | $355.00 | $169,867.50 |
| Lowell D. Johnson | 369.00 | $385.00 | $142,065.00 |
| M. Ryan Jarnagin | 1,041.00 | $465.00 | $484,065.00 |
| Mariell R. McLatcher | 923.58 | $425.00 | $392,521.50 |
| Mark Hermiz | 12.50 | $330.00 | $4,125.00 |
| Nancy Decker | 292.25 | $330.00 | $96,442.50 |
| Rick A. Decker | 2,231.80 | $425.00 | $948,515.00 |
| Steven Zehnder | 1,283.75 | $365.00 | $468,568.75 |
| **Subtotal:** | **20,812.53** | | **$11,487,455.25** |
| | | | |
| **Law Clerks/Legal Assistants** | | | |
| Shannon C. King | 36.50 | $275.00 | $10,037.50 |
| Amy S. Long | 4.50 | $175.00 | $787.50 |
| Amy A. Davis | 31.00 | $175.00 | $5,425.00 |
| Samantha S. Stenquist | 4.00 | $175.00 | $700.00 |
| Sarah Dahlin | 90.55 | $175.00 | $15,846.25 |
| Julia Moskwa | 54.50 | $175.00 | $9,537.50 |
| David Goodrich | 420.75 | $175.00 | $73,631.25 |
| **Subtotal:** | **641.80** | | **$115,965.00** |
| | | | |
| **Grand Total:** | **21,454.33** | | **$11,603,420.25** |

EXHIBIT "6"

...ons & Factual Research

...Briefs (drafting, serving, filing & legal

...pearances & Preparation

(5) Settlement
(6) Class Certification
(7) Trial & Preparation

(8) Litigation Strategy, Analysis & Case Management

Partner (P)     Associate (A)
Paralegal (PL)  Law Clerk (LC)

| & Status | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | Current Hourly Rate | Total Hours This Period | Lodestar This Period |
|---|---|---|---|---|---|---|---|---|---|---|---|

GG Time Ex

421192