45

January 22, 2015

Hand Delivery

Clerk of Court

The United States District Court

For The Eastern District of Michigan

Southern Division

U.S. Courthouse

231 W. Lafayette Blvd.

Detroit, Michigan 48226

FILED

2015 JAN 22 A 10: 02

U.S. DIST. COURT CLERK
EAST DIST. MICHIGAN
DETROIT

|                                   | Courtroom of Judge Denise Page Hood |
|-----------------------------------|-------------------------------------|
|                                   | Case No. 2:10-cv-14360-DPH- MKM     |
| The Shane Group, Inc. etc. al     | Supplement to Objection             |
|                                   | Supplement to Sanction Motion       |
|                                   | Response to Class Counsel's Opposition To |
|                                   | Sanctions Motion                    |

Plaintiffs,

v. Blue Cross Blue Shield of Michigan,

Defendant.

Issue:

Should numerous law firms be removed from the case with sanctions striking fees and expenses with objector awarded reimbursement of his time and expenses based on the evidence below?

Answer: Yes, without a doubt.

This filing is best summed up by a hit song from the musical group know as Queen. The song is:…….. We Will Rock You!

**Table of Contents:**

Introduction……………………………………………………………..3

Mr. Bell of Wolf Haldenstein ………………………………………….5

Fink and Associates………………………………………………….6

Law Offices of David Balto…………………………………………12

Law Firm of Kohn Swift……………………………………………12

Law Offices of Cohen Milstein and Kohn Swift…………………………13

Law Offices of Cohen Milstein and Wolf Haldenstein………………….13

Law Offices of Wolf Haldenstein, again…………………………………15

Law Firm of Finkelstein Thompson...............................................16

Law Offices of RodaNast PC, **AND** NastLaw LLC...........................16

Law Firm of Gustafson Gluek PLLC.............................................18

Summary.......................................................................19

The Miller Firm and The Oliver Firm who appear to have issues with "ghost promoting" for the sole purpose of fee fraud are not the only firm's that are ethically challenged as will be shown below. Counsel is using the Court to cheat the class out of millions and the class is forced to accept their word that the settlement it is a fair, adequate and reasonable settlement?

The conduct of all Class Counsel and many of Plaintiffs' Counsel's actions in this case is egregious and abhorrent. The wrongful conduct in the filing of their false fee petition and numerous motions, filings and false statements with the Court and also made against the objector all lack a reasonable factual basis to support their requests and allegations they claim. Many counsels' believe the ethics rules and laws don't apply to them that's why they have acted the way they have in this case. They are charging unconscionable fees and expenses because the attorneys' actions contain fraudulent business practices directed at the objector, class and the Court's

machinery based on the evidence. Ghost attorneys appear to exist as will be shown below.

The recurring theme in all the evidence is the misrepresentation and fraud by class counsel and other firms has compromised the fairness, reasonableness, adequacy and accuracy of the damages, settlement amount, fee and expenses so approval should not be granted. Sanctions of forfeiture of the applicable firm's fees and expenses in a addition to a one million dollar penalty assessed against each firm caught engaging in this conduct is required. Two firms in this case filed separate civil RICO cases against other parties in the past. Upon reading those suits, this case mirrors the cases they filed so they must also be guilty of the same charges of wire fraud and RICO business practices in this case.

The objector found nine out of 18 or 50% of the firms have billing issues like, ghost promotion too intentionally, artificially and fraudulently bill the class usurious fees and some appear to have ghost attorneys billing the class. One person is not even an attorney but an IT manager at the firm being billing out as an "Of Counsel".

The Wolf firm who submitted the "emergency motion" has already been shown to have billed the class by "incorrectly" up billing and misclassifying employees and should have no business trying to cast their proven "stickiness" on the objector and

wasting his time and money in yet another false and retaliatory filing done solely for harassment purposes and to slow the fee audit which is now complete.  None of what is written below is a "clerical error". Objector briefly reviewed Class Counsels' twenty seven page filing made yesterday in five minutes but could not review what appears to be a three hundred page attachment because the objector was busy uncovering the following fee issues below. Class Counsel continues to attack the messenger yet eighteen material issues with the settlement remain unresolved. That is backwards.

Mr. Bell who appears to have composed and sent the objector a "courtesy" copy of the fake "Emergency Motion" is just an "Of Counsel" meaning he is loosely connected to the firm Wolf Hammerstein. This lawyer has billed the class for over 1,993 hours of "work" at $565.00 an hour socking the class for $1,092,427.50. (See Exhibit "A".) "C'MON MAN"! A paralegal or associate could have done the same work at half the price for the class.  This has to be a billing record for an "Of Counsel" based on a class action suit for the hours and rate charged.

 Is Mr. Bell a part-time practitioner, a probationary partner-to-be, or equal to an associate or contract lawyer but billing out like a full time partner? No paying client with a two digit IQ would pay that rate and those hours for this lawyer performing essentially document review, which is what the attorney fees in this case are all about. That rate and hours are as fake as the "emergency motion" and

the fake "fee expert's" 109 page bought and paid for document that falsely claims the attorney fees in this case are "OK, nothing to see here please move along". Counsel this isn't the first time this serial "fee expert" has written in support of your bloated fee, is it?  Explain it to the Court counsel, inquiring minds want to know.

Objector has already mentioned the Fink and Associates as possibly having issues with billing the class in the first place. Now more has been found.

Mr  Fink was apparently at the Miller firm for five years but **may** or may not have been a real "partner" that he was billed out over there. Maybe he was a "partner" after only two and three quarters years based on scant evidence or was it after that or really never?  Is that for billing purposes only? The Miller Firm should be required to produce partner "papers" to prove when, why and if a partner status was truly bestowed, buy in amount etc.

**Senior Partner**

**The Miller Law Firm**

2005 – December 2010 (5 years)

Commercial litigation, including individual and class actions. While at The Miller Law Firm, Mr. Fink handled consumer fraud class action, securities fraud class

action, antitrust class action and shareholder derivative litigation, along with a wide range of civil litigation, arbitration and probate court matters.

After investigation it seems the timeline may not support the billing out of an attorney Mr. Bressack, by Mr. Fink at a "partner" rate of $525.00 per hour without more proof of said promotion.  Here is the timeline below

Mr. Bressack was also apparently at the Miller Firm where his resume starts:

**Attorney**

**The Miller Law Firm, P.C.**

January 2008 – January 2011 (3 years 1 month)

Mr. Fink and Mr. Bressack apparently both leave the Miller Firm to start a separate competing firm doing the same exact work with Mr. Fink the principal:

**Managing Partner, Mr. Fink**

**Fink + Associates Law**

January 2011 – Present (4 years 1 month)

Fink + Associates Law is a law firm focused on commercial litigation, including individual and class actions, as well as derivative litigation. Practice areas include

securities fraud (including securities fraud class actions), consumer fraud (including consumer fraud class actions), antitrust (including antitrust class action litigation), Fair Labor Standards Act (FLSA) (including FLSA collective actions) and environmental matters. The firm is also involved in litigation on matters involving insurance coverage, intergovernmental issues, construction contract disputes, eminent domain (condemnation), property tax assessment challenges, probate disputes, partnership dissolution and shareholder oppression claims. The firm also litigates derivative claims on behalf of disaffected shareholders.

Mr. Bressack joins Mr. Fink

**Fink + Associates Law**

January 2011 – Present (4 years 1 month)

Fink + Associates Law is a law firm focused on commercial litigation, including individual and class actions, as well as derivative litigation. Practice areas include securities fraud, consumer fraud, antitrust, Fair Labor Standards Act (FLSA) and environmental matters. The firm is also involved in litigation on matters involving insurance coverage, intergovernmental issues, construction contract disputes, eminent domain (condemnation), property tax assessment challenges, probate disputes, partnership dissolution and shareholder oppression claims.

Somehow Mr. Fink's two person firm became appointed to become "Interim Liaison Counsel" after January 2011 in this case and Mr. Bressack becomes a "partner" soon after. That might not be true. The objector questions why four class counsel that billed out over $10,000,000.00 with over 109 lawyers and personnel would require the need of a brand new two person firm to become "Interim Liaison Counsel" and perform over $200,000.00 worth of alleged "work" on behalf of the class. Did Class Counsel and their 109 lawyers billed out in this case not have the time, experience or expertise to handle the work so Fink and Associates had to be added on to the case? Mr. Miller is the Chairman of Class Counsel so had to have great input in falsely persuading the Court to grant "Interim Liaison Counsel" designation upon two of his now ex-employee's new firm instead of say the Sommers Schwartz firm. Isn't that a conflict based on everything we now know? This appears part of the hire the "friends and family mentality for free money and sheer the class of fees" scheme that was unneeded by the class to obtain the results to date. The Fink Firm's grab for fees should be struck as should the Miller firm's entire fee for engaging in billing shenanigans against the best interests of the class and treating this case like their own personal piggy bank.

Mr. Bressack was billed out to the class as a "partner" at the ludicrous rate of $525.00 per hour rather than an associate rate of $300.00 per hour based on his experience. (See Exhibit "B"). Was he first an associate than became a "partner"

later on but Mr. Fink chose to overbill the class at the partner rate for all the hours instead of only for part of them? Written documentation is required showing when Mr. Bressack was hired, when he became a made "partner", how much of the firm he currently owns, how much he paid to become partner etc is now required. Something is not right here.

**Mr. Bressack was an associate at Miller Law Firm when his resume starts in January 2008.**

Now skip ahead to January 27, 2011 below:

BLOOMFIELD HILLS, Mich., Jan. 27, 2011 /PRNewswire/ -- David H. Fink announced today the opening of Fink + Associates Law located at 100 West Long Lake Rd. in Bloomfield Hills.

Mr. Bressack may not have joined the firm in January or the last day of May 2011, unless the LegalNews.com clip below was four months behind posting updates, which it could be. So when did Mr. Bressack start billing the class and at what job status? The truth is in between.

http://www.legalnews.com/detroit/962135

**Posted** May 30, 2011

Fink + Associates Law

DARRYL BRESSACK has joined Bloomfield Hills-based FINK + ASSOCIATES

Law as an associate. Managing Partner David H. Fink made the announcement.

(There is only one partner and one other lawyer.)

Bressack, who joins Fink & Associates Law from Rochester Hills-based Miller

Law Firm PC, focuses his practice on commercial litigation, including individual

and class actions, in the areas of antitrust, securities fraud and consumer fraud.

Bressack earned a Bachelor of Arts degree from the University of Florida and his

law degree from the University of Michigan Law School. He has been listed as a

Rising Star in Michigan "Super Lawyers" Magazine each year since 2009 and is a

member of the Oakland County Bar Association and the State Bar of Michigan.

According to the release below as of January 12, 2012 Mr. Bressack is an associate

http://www.lawyers.com/bloomfield-hills/michigan/darryl-bressack-46700758-a/

Darryl Bressack

Associate

**Fink + Associates Law**

100 West Long Lake Road , Suite 111,

Bloomfield Hills, MI 48304-2773

Posted on January 16th, 2012 filed under <u>Fink+Associates Law</u>.

**BLOOMFIELD HILLS, Mich.,** January 16, 2012 – <u>Darryl Bressack</u>, an associate

with Bloomfield Hills-based Fink + Associates Law, was recently honored by

*Michigan Lawyers Weekly* as one of 20 *Up and Coming Lawyers for 2011*. The

announcement was made by <u>Fink + Associates Law</u> Managing Partner <u>David Fink</u>

What is it with all the Pennsylvania firms billing the class when the case is about

Michigan?

The Law Offices of David Balto, (Exhibit "C") As of January 18, 2015 an

associate by the name of Bradley Wasser was billed to the class at cost of

$23,000.00+ but there is no record of him at the DC Bar Association.  If the lawyer

is not licensed in the state the law firm is located in any fees requested should be

struck as well as the entire firm's fee for engaging in billing shenanigans.

The law firm of Kohn Swift (Exhibit "D") As of January 20, 2015 three associates

by the names of Lindsay Oak, Ian Ossakow and David Benner cannot be found in

the Pennsylvania Bar Association's look up page. The total billings amount to

$241,000.00.  If the lawyer is not licensed in the state the law firm is located in any

fees requested should be struck as well as the entire firm's fee for engaging in billing shenanigans.

Next the law firm of Cohen Milstein (Exhibit "D1") Found on January 21, 2015 at 8:18 am. The same missing associate "attorneys" that billed the class above that are not listed in the Pennsylvania Bar website for Kohn Swift magically appear on the fee petition of Cohen Milstein in New York in the same case!

David Benner is listed as an associate at both firms on the fee petition and is billing the class twice for $92,000.00 at Kohn Swift in Pennsylvania and for $136,000.00 for Cohen Milstein in New York. Grand total of $228,000.00. He is not licensed in either state. If the lawyer is not licensed in the state the law firm is located in any fees requested should be struck as well as the entire firm's fee for engaging in billing shenanigans.

Ian Ossakow is listed as an associate on the fee petition at Kohn Swift in Pennsylvania and was billed out at $350 an hour for 265 hours for a total of $80,000.00 and also appears on the Cohen Milstein firm in New York as a contract attorney billing out at a whopping $415.00 an hour for 358 more hours for a total of $136,000.00. Grand total of $216,000.00. He is not licensed in either state. If the lawyer is not licensed in the state the law firm is located in any fees requested

should be struck as well as the entire firm's fee for engaging in billing shenanigans. Did the class get billed for the same work done twice?

Lindsay Oak is listed as an associate on the fee petition at Kohn Swift in Pennsylvania and was billed out at $350.00 an hour for 286 hours for a total of $100,000.00 and also appears on the Cohen Milstein firm in New York as a contract attorney billing out at $260.00 an hour for a total of $87,000.00. Grand total $187,000.00. She is not licensed in either state. If the lawyer is not licensed in the state the law firm is located in any fees requested should be struck as well as the entire firm's fee for engaging in billing shenanigans. Did the class get billed for the same work done twice?

Cohen Milstein, again (Exhibit "D2"). Alicia Gutierrez is listed as a contract attorney at Cohen Milstein in New York billing out at $420.00 per hour for 85 hours for a total of $35,000.00. She is also listed as a contract attorney at Wolf Haldenstein in New York billing the class at $250.00 per hour for 174 hours for a total of $43,500.00. Grand total of $78,500.00. If the lawyer is not licensed in the state the law firm is located in any fees requested should be struck as well as the entire firm's fee for engaging in billing shenanigans. Did the class get billed for the same work done twice?

Wolf Haldenstein, again, found on January 21, 2015. (Exhibit "D2" again)Tony Gjata is

listed as an "Of Counsel" at the bottom of their fee petition Exhibit "A". Upon

investigation it appears that he is their "Technical Support Specialist" for the past ten

years per the attached articles (Exhibit "D3" see page 3 and D4 page 8 for writer bio

circled). There is no record of this individual as an attorney in New York State according

to the NY State Bar. This "ghost attorney" is being billed out as an "Of Counsel" attorney

at a rate of $430.00 per hour for 509 hours at a total cost to the class of $218,000.00. If

the lawyer is not licensed in the state the law firm is located in any fees requested

should be struck as well as the entire firm's fee for engaging in billing

shenanigans. Here is a business card:


http://www.joesdata.com/executive/Tony_Gjata_504252040.html

 **Tony Gjata**
Information Technology Manager

**Wolf Haldenstein Adler Freeman & Herz LLP**
750 B St Ste 2770
San Diego, CA 92101-8113
Tel: (619) 239-4599
www.whafh.com

*Last updated on 2015-01-01*

**http://www.corporateinside.com/executive/Tony_Gjata_20905041.html**

**Tony Gjata**
Information Technology Manager

**Wolf Haldenstein Adler Freeman & Herz LLP**
750 B St Ste 2770
San Diego, CA 92101-8113
Tel: (619) 239-4599
www.whafh.com
*Last updated on 2014-04-21*

Might this be evidence of "ghost attorneys" and law firms engaged in fee fraud on the objector, class and court here?  YES.

Law firm of Finkelstein Thompson (Exhibit "E") Found January 21, 2015. The associate Stan M. Doerrer is not listed on the firm's website, nor is Nalalie A. Wengroff a paralegal listed. The class is being billed $2,700.00 for an unknown law clerk named "Law Clerks",  a funny name indeed.

Nastlaw LLC (Exhibit "F' and "F1) Found January 21, 2015. The declaration states …."the predecessor law firm….." There is no predecessor law firm according to the Pennsylvania Corporation Bureau as shown below. There are two active firms with the same principals involved in both entities. The entity below is the "predecessor" law firm that is active. Did the class get billed for the same work done twice at two different places? This bill should not be paid, something is not right here.

https://www.corporations.state.pa.us/corp/soskb/Corp.asp?486206

## Business Entity Filing History

**Date:** 1/20/2015  (Select the link above to view the Business
Entity's Filing History)

---

Business Name History

| Name | Name Type |
| --- | --- |
| RodaNast, P.C. | Current Name |
| RODA & NAST, P.C. | Prior Name |

Professional Corporation - Domestic - Information

**Entity Number:** 715947

**Status:** Active

**Entity Creation Date:** 9/17/1980

**State of Business.:** PA

**Registered Office Address:** 801 Estelle Drive
Lancaster PA 17601
Lancaster

**Mailing Address:** No Address

Officers

**Name:** **JOSEPH F RODA**

**Title:** **President**

**Address:** 801 ESTELLE DR
LANCASTER PA 17601-2136

Name:                                    **DIANNE M NAST**

Title:                                   Secretary

Address:                                 801 ESTELLE DR
                                         LANCASTER PA 17601-2136


Name:                                    **DIANNE M NAST**

Title:                                   **Vice President**

Address:                                 801 ESTELLE DR
                                         LANCASTER PA 17601-2136


The law firm of Gustafson Gluek PLLC billed out an attorney by the name of Ellen

Ahren, (Exhibit G"). Found January 21, 2015. There is no attorney licensed by that

name in Minnesota according to the State Bar of Minnesota. There is an Ellen

Ahrens listed who appears to have been licensed in 2010,  worked at the firm but

left in April of 2013. The 1775 hours for a charge to the class of $665,000.00

seems a bit high. Objector would like an affidavit from that lawyer attesting to

those hours. The objector can contact the ex-employee with one click of a mouse

and a phone call.

The law firm of Gustafson Gluek PLLC employed a contract attorney by the name

of Cory Carpenter that counsel billed the class at the rate of $315.00 per hour for

550 hours of "work" for a total of $173,000.00. There is no attorney named Cory

Carpenter licensed to practice according to the Minnesota Bar Association.  If the

lawyer is not licensed in the state where the law firm is located in, any fees requested should be struck as well as the entire firm's fee for engaging in billing shenanigans.

## Summary

**The ghost promotion, ghost attorneys and related issue schemes involve a total of nine firms, all four class counsel and the balance are costing the class a few million extra dollars on top of the proven $5,000,000.00+ overcharge in fees, not counting another potential of $5,000,000.00 in inflated hours, but what's a few extra millions among family and friends, right?**

It seems all the Michigan law firms are guilty of fee issues and that leaves Sommers Schwartz as the only local firm left standing when the other Michigan firms are dismissed based on the evidence. All class counsel are implicated so objector would like permission to contact outside firms for help if all class counsel are dismissed. If the class absolutely needs the Gustafson firm, keep them for now and we will replace them later with a new substitute firm of trustier and higher caliber. The objector should be brought in on a part time basis to assist in new negotiations with the defendant once the settlement is officially rejected as a guardian to the class. If they are required to be fired now, do it and we can come up with a work around solution in short order. The firms who cheated the class

should be carved right out of the litigation immediately with no fees or expenses reimbursed and an additional penalty of one million dollars ($1,000,000.00) assessed against each firm with the funds going to the class fund. Almost all can easily afford it based on what the objector has seen in court records, unbelievable.

Objector requests that Class counsel withdraw the Response to Objector's Sanctions Motion filed yesterday because it is a frivolous filing, it was done by "sticky" lawyers for harassment and to divert the Court's attention away from the issues the objector has raised meritoriously with each new filing from day one.

Objector's requests to add $96.00 to the expenses incurred, the cost of the Fairness Hearing transcript that was needed for additional evidence and information used in the supplement to objection, response to Miller submission and Sanctions Motion.

Objector also requests that three hours be added to the reply to class counsel's "emergency motion". Objector failed to recalculate the hours after reviewing and adding on newly discovered evidence and before running copies of the filing off to deliver to the Court and email to class counsel.

Objector also incurred an additional 34 hours of additional time x $288 an hour or $9,792.00 since January 12, 2015 uncovering the evidence above and below while preparing this supplement to the objection and supplement to Sanction Motion.

As far as a response to Class Counsels' response to the Objector's Sanction Motion well, class counsel is attempting to rewrite historical evidence, they are all desperate. That filing seems moot after this filing.

One last thing if the objector may. Had class counsel not fraudulently tricked the objector on the conference call way back in September 2014 everything after that date would never been discovered by the objector as a response to each filing made by class counsel. If most law firms in this case are willing to overcharge their rates and others also engaged in fee fraud, isn't it logical to assume, based on the evidence, they maybe, just maybe, settled this case with their fees first and the class best interests second making themselves and the settlement inadequate? Apologies to the visually impaired, but a blind person could see something is wrong with a lot of these lawyers and this proposed settlement. It is now time for the Court to have a "come to Jesus meeting" with Class Counsel regarding its actions in this case in a hearing and/or in a court ruling.

Thank you for your continued time and patience in this soon to be historical case.

Respectfully submitted,

Christopher Andrews

Case No. Case No. 2:10-cv-14360-DPH-MKM

Dated: January 22, 2015

*Christopher Andrews, Pro se objector*

P.O. Box 530394

*Livonia, MI 48152-0394 E-mail caalou@gmail.com Phone 1-248-635-3810*

*Christopher Andrews*

*I certify under penalty of perjury that the above and below information is true and accurate to the best of my knowledge, information and belief.*

Christopher Andrews

I hereby certify that on this day I hand delivered the foregoing to the

Clerk of the Court, and served true and correct copies upon class counsel

via email (per their permission) at the email addresses below. Clerk of

Court, the United States District Court for the Eastern District of

Michigan Southern Division, U.S. Courthouse 231 W. Lafayette Blvd.

Detroit, Michigan 48226 Telephone number (313) 234-5005.

COHEN MILSTEIN SELLERS & TOLL PLLC 202-408-4600 Daniel A. Small

Daniel Small <dsmall@cohenmilstein.com>,

Brent W. Johnson

1100 New York Avenue, NW

Suite 500

Washington, DC 20005

Gustafson Gluek Pllc

Canadian Pacific Plaza

120 South Sixth Street, Suite 2600

Minneapolis, MN 55402

Attention Daniel  Gustafson <DGustafson@gustafsongluek.com>,

dhedlund@gustafsongluek.com,

The Miller Law Firm

950 West University Avenue, Suite 300

Rochester, MI 48307

Attention Mr. Miller E. Powell Miller" <epm@millerlawpc.com>

Wolf Haldenstein Adler Freeman & Herz, LLC

270 Madison Avenue

New York, New York 10016

Attention Fred Isquith isquith@whafh.com

Fink & Associates Law

100 West Long Lake Road, Suite 111

Bloomfield Hills, MI 48304

Attention D. Fink dfink@finkandassociateslaw.com The Shane Group etc. al v

Blue Cross Blue Shield of Michigan Case No. 2:10-cv-14360-DPH-MKM

Attorneys for defendant via email: bhoffman@hunton.com,

tstenerson@hunton.com , crashid@bodman.com,

Atttorneys for Atena Inc. jlipton@gibson.com

THE SHANE GROUP, INC., et al., v. BLUE CROSS BLUE SHIELD OF MICHIGAN
Case No. 10-cv-14360
Time and Lodestar Summary

| Firm Name | Wolf Haldenstein Adler Freeman & Herz LLP |
| Time Period | Inception through June 30, 2014 |

| Name | Status | Hourly Rate | Total Hours | Total Lodestar |
|---|---|---|---|---|
| Daniel W. Krasner | (P) | $910.00 | 32.40 | $ 29,484.00 |
| Fred T. Isquith | (P) | $860.00 | 478.20 | $ 411,252.00 |
| Mary Jane Fait | (P) | $835.00 | 752.10 | $ 628,003.50 |
| Adam J. Levitt | (P) | $825.00 | 0.60 | $ 495.00 |
| Peter C. Harrar | (P) | $785.00 | 1.00 | $ 785.00 |
| Alexander H. Schmidt | (P) | $730.00 | 19.50 | $ 14,235.00 |
| Theodore B. Bell | (M) | $565.00 | 1933.50 | $ 1,092,427.50 |
| Julie A. Swanson | (CA) | $635.00 | 110.10 | $ 69,913.50 |
| Alicia R. Gutierrez | (CA) | $250.00 | 174.00 | $ 43,500.00 |
| John E. Tangren | (A) | $550.00 | 447.20 | $ 245,960.00 |
| Carl V. Malmstrom | (A) | $470.00 | 30.70 | $ 14,429.00 |
| Beth A. Landes | (A) | $375.00 | 1239.40 | $ 464,775.00 |
| Patrick H. Moran | (A) | $470.00 | 32.00 | $ 15,040.00 |
| Edmund S. Aronowitz | (A) | $450.00 | 7.50 | $ 3,375.00 |
| James A. Cirigliano | (PL) | $320.00 | 27.10 | $ 8,672.00 |
| Sarah Kim | (PL) | $265.00 | 413.60 | $ 109,604.00 |
| Derek M. Behnke | (PL) | $285.00 | 1.70 | $ 484.50 |
| David I. Weinstein | (PL) | $240.00 | 360.50 | $ 86,520.00 |
| Marsha V. Klimek | (PL) | $265.00 | 1051.10 | $ 278,541.50 |
| Danielle S. Wilborne | (PL) | $230.00 | 40.80 | $ 9,384.00 |
| Patrick J. Morrissey | (PL) | $210.00 | 65.70 | $ 13,797.00 |
| David E. Sorensen | (PL) | $290.00 | 62.20 | $ 18,038.00 |
| Jiliane E. Gill | (PL) | $270.00 | 27.20 | $ 7,344.00 |
| Tony Glata | (O) | $430.00 | 509.30 | $ 218,999.00 |
| Artem Vladimirtsev | (O) | $340.00 | 2.30 | $ 782.00 |
| TOTAL | | | 7,819.70 | $ 3,795,840.50 |

Status:
(P)   Partner        (M)   Member
(CA)  Contract Attorney
(A)   Associate
(PL)  Paralegal
(O)   Other

Please report time in current rates.

*EXHIBIT "B"*

**THE SHANE GROUP, INC., et al., v. BLUE CROSS BLUE SHIELD OF MICHIGAN**
**Case No. 10-cv-14360**
**Time and Lodestar Summary**

| Firm Name | Fink + Associates Law |
|---|---|
| Time Period | Inception through June 30, 2014 |

| Name | Status | Hourly Rate | Total Hours | Total Lodestar |
|---|---|---|---|---|
| David H. Fink | (P) | $ 725.00 | 134.75 | $ 97,693.75 |
| Darryl Bressack | (P) | $ 525.00 | 211.25 | $ 110,906.25 |
| | (A) | | | |
| | (LC) | | | |
| Tanya Parker | (PL) | $ 175.00 | 0.50 | $ 88.00 |
| TOTAL | ✕ | ✕ | 346.50 | $ 208,688.00 |

**Status:**

(P)    Partner
(OC)  Of Counsel
(SA)  Senior Associate
(A)    Associate
(LC)  Law Clerk
(PL)  Paralegal

**Please report time in current rates.**

*EXHIBIT "C"*

**THE SHANE GROUP, INC., et al., v. BLUE CROSS BLUE SHIELD OF MICHIGAN**
**Case No. 10-cv-14360**
**Time and Lodestar Summary**

| Firm Name | Law Offices of David Balto |
|---|---|
| Time Period | Inception through June 30, 2014 |

| Name | Status | Hourly Rate | Total Hours | Total Lodestar |
|---|---|---|---|---|
| David Balto | (P) | $ 600.00 | 67.40 | $ 40,440.00 |
| Spencer Baldwin | (A) | $ 300.00 | 848.00 | $ 254,400.00 |
| Bradley Wasser | (A) | $ 250.00 | 92.30 | $ 23,075.00 |
|  | (LC) |  |  |  |
|  | (PL) |  |  |  |
| TOTAL |  |  | 1,007.70 | $ 317,915.00 |

**Status:**

(P)   Partner
(OC)  Of Counsel
(SA)  Senior Associate
(A)   Associate
(LC)  Law Clerk
(PL)  Paralegal

**Please report time in current rates.**

*EXHIBIT "D"*

**THE SHANE GROUP, INC., et al., v. BLUE CROSS BLUE SHIELD OF MICHIGAN**
**Case No. 10-cv-14360**
**Time and Lodestar Summary**

**THE SHANE GROUP, INC., et al., v. BLUE CROSS BLUE SHIELD OF MICHIGAN**
**Case No. 10-cv-14360**
**Time and Lodestar Summary**

| Firm Name | KOHN, SWIFT & GRAF, P.C. |
|---|---|
| Time Period | **Inception through June 30, 2014** |

| Name | Status | Hourly Rate | Total Hours | Total Lodestar |
|---|---|---|---|---|
| DOUGLAS A. ABRAHAMS | (SH) | $ 635.00 | 0.50 | $ 317.50 |
| WILLIAM E. HOESE | (SH) | $ 635.00 | 35.80 | $ 22,733.00 |
| CRAIG W. HILLWIG | (SH) | $ 550.00 | 254.80 | $ 140,140.00 |
| DAVID BENNER | (A) | $ 350.00 | 264.75 | $ 92,662.50 |
| IAN OSSAKOW | (A) | $ 350.00 | 230.75 | $ 80,762.50 |
| LINDSAY OAK | (A) | $ 350.00 | 285.25 | $ 99,837.50 |
| GRAYSON PAPA | (PL) | $ 220.00 | 12.00 | $ 2,640.00 |
| **TOTAL** | | | **1,083.85** | **$ 439,093.00** |

**Status:**

(P)    Partner
(SH)  Shareholder
(OC)  Of Counsel
(SA)  Senior Associate
(A)    Associate
(LC)  Law Clerk
(PL)  Paralegal

**Please report time in current rates.**

*EXHIBIT "D1"*                    EXHIBIT A

**Blue Cross Blue Shield of Michigan**
**MFN Antitrust Litigation**
**Lodestar Report**

Firm: <u>**Cohen Milstein Sellers & Toll, PLLC**</u>
Reporting Period: Inception through <u>June 30, 2014</u>

| Name | Status | Total Hours To Date | Hourly Rate | Total Lodestar To Date |
|------|--------|--------------------:|------------:|-----------------------:|
| Small, Daniel | P | 1,246.00 | $795 | $ 922,252.50 |
| Dominguez John | P | 1.25 | $675 | $ 762.50 |
| Brown, Benjamin, D. | P | 64.75 | $665 | $ 34,672.50 |
| Konopka, Kathleen | OC | 5.00 | $560 | $ 2,525.00 |
| Cormier, Christopher, J. | P | 0.25 | $605 | $ 118.75 |
| Johnson, Brent | P | 1,460.75 | $595 | $ 774,396.25 |
| Alicia Gutierrez | CA | 84.50 | $420 | $ 35,490.00 |
| Ossakow, Ian | CA | 382.50 | $415 | $ 158,737.50 |
| Alexander, Laura | A | 26.00 | $475 | $ 10,340.00 |
| Levens, Emmy | A | 1.00 | $475 | $ 395.00 |
| Dubner, Jeff | A | 39.50 | $440 | $ 17,380.00 |
| Clarke, Suzanne | I | 1.50 | $420 | $ 615.00 |
| Gebrewold, Besrat | A | 90.25 | $395 | $ 38,325.00 |
| Benner, David | A | 358.50 | $390 | $ 136,230.00 |
| Tran, Ngan | CA | 754.75 | $350 | $ 264,162.50 |
| Boone, Meghan | A | 1,787.25 | $415 | $ 633,586.25 |
| Cacace, Robert | A | 525.25 | $370 | $ 183,193.75 |
| Bush Veltre, Brenna | A | 901.00 | $310 | $ 271,170.00 |
| Fu, Abigail | PL | 0.50 | $250 | $ 120.00 |
| Prince, Joshua | A | 2.00 | $330 | $ 617.50 |
| Schmitz, Aaron | A | 82.25 | $335 | $ 26,731.25 |
| Oak, Lindsay | CA | 336.00 | $260 | $ 87,360.00 |
| Ayyagari, Srinivas | CA | 154.25 | $290 | $ 44,732.50 |
| Pavesner, Seth | CA | 507.00 | $290 | $ 147,030.00 |
| Barevadia, Zarna | T | 1.75 | $275 | $ 481.25 |
| Westerman, Jessica | LC | 19.50 | $250 | $ 4,875.00 |
| Watson, Brett | LC | 8.50 | $250 | $ 2,040.00 |
| Peterson, Brenda | PL | 11.75 | $250 | $ 2,878.75 |
| Hanson, Clara | PL | 0.50 | $250 | $ 122.50 |
| Twigg, Andrew | PL | 11.50 | $250 | $ 2,828.75 |
| Cooke, William | PL | 555.50 | $250 | $ 135,761.25 |
| Abetti, Jonathan | PL | 242.00 | $250 | $ 59,872.50 |
| Wong, Debra | PL | 5.50 | $250 | $ 1,308.75 |
| Wentworth, Ariel | PL | 22.00 | $250 | $ 6,401.25 |
| **TOTAL** | | **9,690.50** | | **$ 4,007,513.75** |

*EXHIBIT "D2"*                    EXHIBIT A

**Blue Cross Blue Shield of Michigan**
**MFN Antitrust Litigation**
**Lodestar Report**

Firm: <u>**Cohen Milstein Sellers & Toll, PLLC**</u>
Reporting Period: Inception through <u>June 30, 2014</u>

| Name | Status | Total Hours To Date | Hourly Rate | Total Lodestar To Date |
|---|---|---|---|---|
| Small, Daniel | P | 1,246.00 | $795 | $ 922,252.50 |
| Dominguez John | P | 1.25 | $675 | $ 762.50 |
| Brown, Benjamin, D. | P | 64.75 | $665 | $ 34,672.50 |
| Konopka, Kathleen | OC | 5.00 | $560 | $ 2,525.00 |
| Cormier, Christopher, J. | P | 0.25 | $605 | $ 118.75 |
| Johnson, Brent | P | 1,460.75 | $595 | $ 774,396.25 |
| Alicia Gutierrez | CA | 84.50 | $420 | $ 35,490.00 |
| Ossakow, Ian | CA | 382.50 | $415 | $ 158,737.50 |
| Alexander, Laura | A | 26.00 | $475 | $ 10,340.00 |
| Levens, Emmy | A | 1.00 | $475 | $ 395.00 |
| Dubner, Jeff | A | 39.50 | $440 | $ 17,380.00 |
| Clarke, Suzanne | I | 1.50 | $420 | $ 615.00 |
| Gebrewold, Besrat | A | 90.25 | $395 | $ 38,325.00 |
| Benner, David | A | 358.50 | $390 | $ 136,230.00 |
| Tran, Ngan | CA | 754.75 | $350 | $ 264,162.50 |
| Boone, Meghan | A | 1,787.25 | $415 | $ 633,586.25 |
| Cacace, Robert | A | 525.25 | $370 | $ 183,193.75 |
| Bush Veltre, Brenna | A | 901.00 | $310 | $ 271,170.00 |
| Fu, Abigail | PL | 0.50 | $250 | $ 120.00 |
| Prince, Joshua | A | 2.00 | $330 | $ 617.50 |
| Schmitz, Aaron | A | 82.25 | $335 | $ 26,731.25 |
| Oak, Lindsay | CA | 336.00 | $260 | $ 87,360.00 |
| Ayyagari, Srinivas | CA | 154.25 | $290 | $ 44,732.50 |
| Pavesner, Seth | CA | 507.00 | $290 | $ 147,030.00 |
| Barevadia, Zarna | T | 1.75 | $275 | $ 481.25 |
| Westerman, Jessica | LC | 19.50 | $250 | $ 4,875.00 |
| Watson, Brett | LC | 8.50 | $250 | $ 2,040.00 |
| Peterson, Brenda | PL | 11.75 | $250 | $ 2,878.75 |
| Hanson, Clara | PL | 0.50 | $250 | $ 122.50 |
| Twigg, Andrew | PL | 11.50 | $250 | $ 2,828.75 |
| Cooke, William | PL | 555.50 | $250 | $ 135,761.25 |
| Abetti, Jonathan | PL | 242.00 | $250 | $ 59,872.50 |
| Wong, Debra | PL | 5.50 | $250 | $ 1,308.75 |
| Wentworth, Ariel | PL | 22.00 | $250 | $ 6,401.25 |
| **TOTAL** | | **9,690.50** | | **$ 4,007,513.75** |

2:10-cv-14360-DPH-MKM   Doc # 155-4   Filed 07/24/14   Pg 6 of 8   Pg ID 4500

**THE SHANE GROUP, INC., et al., v. BLUE CROSS BLUE SHIELD OF MICHIGAN**
Case No. 10-cv-14360
Time and Lodestar Summary

| Firm Name | Wolf Haldenstein Adler Freeman & Herz LLP |
|---|---|
| Time Period | Inception through June 30, 2014 |

| Name | Status | Hourly Rate | Total Hours | Total Lodestar |
|---|---|---|---|---|
| Daniel W. Krasner | (P) | $910.00 | 32.40 | $ 29,484.00 |
| Fred T. Isquith | (P) | $860.00 | 478.20 | $ 411,252.00 |
| Mary Jane Fait | (P) | $835.00 | 752.10 | $ 628,003.50 |
| Adam J. Levitt | (P) | $825.00 | 0.60 | $ 495.00 |
| Peter C. Harrar | (P) | $785.00 | 1.00 | $ 785.00 |
| Alexander H. Schmidt | (P) | $730.00 | 19.50 | $ 14,235.00 |
| Theodore B. Bell | (M) | $565.00 | 1933.50 | $ 1,092,427.50 |
| Julie A. Swanson | (CA) | $635.00 | 110.10 | $ 69,913.50 |
| Alicia R. Gutierrez | (CA) | $250.00 | 174.00 | $ 43,500.00 |
| John E. Tangren | (A) | $550.00 | 447.20 | $ 245,960.00 |
| Carl V. Malmstrom | (A) | $470.00 | 30.70 | $ 14,429.00 |
| Beth A. Landes | (A) | $375.00 | 1239.40 | $ 464,775.00 |
| Patrick H. Moran | (A) | $470.00 | 32.00 | $ 15,040.00 |
| Edmund S. Aronowitz | (A) | $450.00 | 7.50 | $ 3,375.00 |
| James A. Cirigliano | (PL) | $320.00 | 27.10 | $ 8,672.00 |
| Sarah Kim | (PL) | $265.00 | 413.60 | $ 109,604.00 |
| Derek M. Behnke | (PL) | $285.00 | 1.70 | $ 484.50 |
| David I. Klimek | (PL) | $240.00 | 360.50 | $ 86,520.00 |
| Marsha V. Kimek | (PL) | $265.00 | 1051.10 | $ 278,541.50 |
| Danielle S. Wilborne | (PL) | $230.00 | 40.80 | $ 9,384.00 |
| Patrick J. Morrissey | (PL) | $210.00 | 65.70 | $ 13,797.00 |
| David E. Sorensen | (PL) | $290.00 | 62.20 | $ 18,038.00 |
| Blaine E. Gill | (PL) | $270.00 | 27.20 | $ 7,344.00 |
| Tony Gjata | (O) | $430.00 | 509.30 | $ 218,999.00 |
| Artem Vladmirtsev | (O) | $340.00 | 2.30 | $ 782.00 |
| TOTAL | | | 7,819.70 | $ 3,785,840.50 |

Status:
(P) Partner (M) Member
(CA) Contract Attorney
(A) Associate
(PL) Paralegal
(O) Other

Please report time in current rates.

EXHIBIT D3 SEE PAGE 3

Case Study—
Litigation Solutions

**Wolf Haldenstein is on track to save approximately $300,000 in out-of-pocket costs this year for electronic discovery processing.**

## Overview

**Firm:** Wolf Haldenstein Adler Freeman & Herz LLP

**Location:** New York (headquarters), Chicago and San Diego

**Industry:** Legal services

**Customer Profile:** Wolf Haldenstein Adler Freeman & Herz LLP is a full-service law firm that has provided legal services to its clients since 1888. The firm has practice groups in the following areas: Class Action; Real Estate; Health Care; Trusts & Estates; and General Corporate and Non Profit.

**Business Situation:** Approximately 70 percent of Wolf Haldenstein's practice is in the area of securities class actions, for their clients. This business reality was placing a growing strain on the firm's cash flow as the out-of-pocket expenses associated with electronic discovery requirements for every case they litigated began soaring in the past decade.

**Solution:** In early 2010, the firm reviewed a demonstration of LAW PreDiscovery™ and was immediately impressed with its capabilities. They decided to invest in its implementation as a strategy for curbing electronic discovery costs by keeping some of the processing work in-house.

**Benefits:**
- By bringing roughly 90 percent of its data processing in-house with LAW PreDiscovery, Wolf Haldenstein is on track to save approximately $300,000 in out-of-pocket costs this year for electronic discovery processing
- Greater control of the electronic discovery process reduces its dependence on outside vendors
- Superior training and support has allowed the firm to extend the use of the software throughout its litigation support group
- The firm has transformed its litigation support department from a cost center to a billable practice

**Product Summary:**
Litigation Services
- LAW PreDiscovery™

Wolf Haldenstein Adler Freeman & Herz LLP is a full-service law firm that has provided legal services to its clients since 1888. The firm has practice groups in the following areas: Class Action; Real Estate; Health Care; Trusts & Estates; and General Corporate and Non Profit.

Wolf Haldenstein's clients include large corporations, pension funds, investment managers, privately held businesses and individual entrepreneurs, as well as cooperatives, condominiums and real estate developers.

The firm is distinguished from others by the bold "team approach" that is at the heart of its business model—all of Wolf Haldenstein's lawyers are readily available to the firm's clients and to each other. As a result, the firm is able to provide its clients with cost-effective and thorough counsel focused on the client's overall goals.

### Situation

"Roughly 70 percent of our firm's practice is in the area of securities class actions, which by its very nature means that we aren't paid for our services on a matter unless we win a verdict or settlement in the case," explained Victor Mann, director of information technology at Wolf Haldenstein.

This business reality was placing a growing strain on the firm's cash flow as the out-of-pocket expenses associated with electronic discovery requirements for every case they litigated began soaring in the past decade.

"Like a lot of law firms our size, we were caught up in the wave of electronic discovery over the past several years and knew we needed to find a smarter way to do things," said Mann. "We made it a specific business objective to explore technology options that would help us contain these runaway electronic discovery costs while improving our litigation support workflow."

### Solution

In early 2010, the information technology (IT) team at Wolf Haldenstein agreed to review a demonstration of a LexisNexis® product called LAW PreDiscovery, which combines paper imaging and electronic discovery in one application.

 LexisNexis·

*"It is extremely user-friendly and it's perfectly suited for a law firm of our size that is seeking to reduce costs and increase control over the electronic discovery process."*

—Victor Mann
Director of Information Technology
Wolf Haldenstein

"We were immediately impressed with LAW PreDiscovery capabilities and saw its potential to help us reduce our electronic discovery processing costs and increase control over our client work product at the same time," said Tony Gjata, technical support specialist at Wolf Haldenstein.

More time is spent on discovery than on any other legal task and can represent anywhere from 50 to 90 percent of total litigation costs. LAW PreDiscovery helps ensure costs are controlled by first culling non-responsive and duplicate files, then further refinement of the document set can occur by searching text and metadata to locate relevant files. This prediscovery process not only reduces the amount of files that need to be processed, it also allows users to begin the review process sooner with less files for attorneys to review, providing considerable cost savings. On average, LAW PreDiscovery pays for itself within two months.

"Anything we can do to minimize our out-of-pocket costs is very helpful to our firm's cash flow and profitability," said Mann. "We saw LAW PreDiscovery as a potential tool for helping us curb our electronic discovery processing costs by handling more of the processing work in-house."

### Benefits

"The LAW PreDiscovery software is really amazing," said Mann. "It is extremely user-friendly and it's perfectly suited for a law firm of our size that is seeking to reduce costs and increase control over the electronic discovery process. I consider LAW PreDiscovery one of the few 'wow' software products in the legal industry."

According to Mann, the most significant benefits the firm has realized from its implementation of LAW PreDiscovery are the following:

### 1. Cost Savings

By bringing roughly 90 percent of its data processing in-house with LAW PreDiscovery, Wolf Haldenstein is on track to save approximately $300,000 in out-of-pocket costs this year for electronic discovery processing. "LAW PreDiscovery has saved our firm a significant amount of money, primarily because we no longer need to outsource our electronic discovery processing work to outside vendors," explained Mann.

### 2. Increased Control

LAW PreDiscovery has allowed the firm to take back control of the electronic discovery process and reduce its dependence on outside vendors for electronic discovery processing requirements, which means that their clients' electronic files are now under the control of a Wolf Haldenstein employee at nearly all times.

*"... the LexisNexis team is made up of very competent people who have really invested their time in training our staff, which has allowed us to extend the use of LAW PreDiscovery throughout the litigation support group."*

Tony Gjata
Technical Support Specialist
Wolf Haldenstein

### 3. Training and Support

"We have a fantastic working relationship with LexisNexis," said Gjata. "They are truly committed to customer support and make sure that any questions we have are answered right away. Perhaps more importantly, the LexisNexis team is made up of very competent people who have really invested their time in training our staff, which has allowed us to extend the use of LAW PreDiscovery throughout the litigation support group."

### 4. Litigation Support Department

LAW PreDiscovery has helped the firm transform its litigation support department from a cost center to a billable practice as their professionals handle more client work themselves, rather than routinely outsourcing electronic discovery processing to vendors.

"By using LAW PreDiscovery, we save our clients money, have more control over the way their electronic files are handled at all times and we make more money for our law firm," concluded Mann. "What's not to like about a software tool that helps you achieve all three of those things at once?"

---

LexisNexis® www.lexisnexis.com is a leading global provider of content-enabled workflow solutions designed specifically for professionals in the legal, risk management, corporate, government, law enforcement, accounting and academic markets. LexisNexis originally pioneered online information with its Lexis® and Nexis® services. A member of Reed Elsevier [NYSE: ENL; NYSE: RUK] www.reedelsevier.com, LexisNexis serves customers in more than 100 countries with 15,000 employees worldwide.

---

The opinions expressed within this case study represent customer opinions. LexisNexis believes this case study experience generally represents the experience found with other similar customer situations. However, each customer will have its own subjective goals and requirements and will subscribe to different combinations of LexisNexis services to suit those specific goals and requirements. This case study may not be deemed to create any warranty or representation that any other customer's experience will be the same as the experience identified herein. LexisNexis uses the customer's trademarks herein with the customer's permission.

LexisNexis® LexisNexis and the Knowledge Burst logo are registered trademarks of Reed Elsevier Properties Inc., used under license. PreDiscovery is a trademark of LexisNexis, a division of Reed Elsevier Inc. Other products or services may be trademarks or registered trademarks of their respective companies. © 2011 LexisNexis, a division of Reed Elsevier Inc. All rights reserved. LO20335-1 0111

(C) 2011

*EXHIBIT "D4"*

## Smartphones for Lawyers 3.0

By Robert D. Steele and Tony Gjata

This is an update of *Smartphones for Lawyers* published in this column the past two years. Once again, for the most part, change in the past year has been incremental, not revolutionary   The significant change is in the data networks not the phones, 3G is fast becoming history and all of the phones across all platforms discussed here are 4G LTE network phones, with significantly improved download speeds.  For example, you can now watch videos and live television programs on your phone (but be sure to check your plan for data limits). Watching live television on a phone is simply is not practical with 3G.

We continue to focus on the three dominant platforms -- Apple's IOS, Google's Android (usually referred to simply as "Droid"), and Blackberry, and the phones that run on those platforms.  The Apple phones that we discuss are the iPhone 5 and 5S, which have become the market leaders.  We look at the BlackBerry Q10 since it is one of the few remaining phones with a physical keyboard, and the BlackBerry Z10, which has a large touch screen.  Lastly, we include the increasingly popular Droid phones by Samsung, the Galaxy S4 and the Galaxy Note 3.

2013 saw the introduction of the Apple iPhone 5S, a modest improvement over the iPhone 5 introduced in 2012.  Due to its severely diminished presence, we will not discuss the iPhone 4 or 4S, or the new 5C, which is not attractive for the business market, given the 5S capabilities.

In the Droid arena, the Samsung Galaxy S3 has been replaced by the Galaxy S4.  Due to its diminishing popularity, we have dropped from discussion the HTC Droid DNA and have added the Samsung Galaxy Note 3.  Both the S4 and the Note 3 have larger screens than the iPhone 5 and have been very well received.  They are significant upgrades from prior models.  This past year, the Galaxy S3 passed the

iPhone 5 as the world's best selling phone, but the iPhone remains tops in the US market.

There is no doubt that the advent of the smartphone, and now the overwhelming presence of smartphones, has changed every day life for most Americans.   This trend continues unabated this past year.  While all lawyers use smartphones as everybody else does, there are a few aspects of smartphones that are particularly important in the legal environment.  For example, lawyers must be especially aware of the ability to lock or wipe a phone's data remotely if it should be lost or stolen.  Clearly, email and calendar functions are key for most lawyers   These and other features will be examined.

The importance of smartphones in both law and society in general can be summed up by the recent case decided by the Supreme Court of Queensland, Australia, In Re Yu.[1]   In this remarkable case, the court decided that a document written by a decedent on his iPhone which he intended to be his last will and testament would be treated as such and admitted to probate.  The court concluded, " I am therefore satisfied that the deceased intended the document which he created on his iPhone to form his Will. I am prepared to make the orders sought."

For reference as a benchmark, we again report our firm's usage.  Our law firm has more than 70 lawyers in three states.  All are connected to our main email and word processing servers in New York via smartphones, as is the technology staff and others.  As with many law firms, the lawyers are required to have smartphones for such access.  Although this is clearly not a scientific sample, we note that our firm this past year now services more iPhones than BlackBerrys.  We have 22 BlackBerrys, 43 iPhones, and 15 Droids.

Security is a key issue for all law firms.  For firms that use the BlackBerry Enterprise Server (BES), the BlackBerry has been the most secure of the smartphones, since BES allows the firm to control and host all of the data transmitted.   There are also

new options that are just being introduced into the marketplace. BlackBerry Mobile Fusion is a universal device service which provides administration and management options for iPhone and Android devices.[2] In addition, Good Technology Inc. has recently unveiled a BES-like server platform for securing non-BlackBerry smartphones.[3] Also, you can issue a remote device wipe command from Microsoft Exchange. Users can issue their own remote device wipe commands from the Microsoft Office Outlook Web App user interface.[4]

The ABA has issued a formal ethics opinion on issues surrounding the confidentiality of electronic communication and it should be kept in mind when considering security options.[5] For firms connecting BlackBerrys without BES, the security is then dependent on your carrier, and is comparable to the connections available with the iPhone and Droids not running the new Mobile Fusion or Good Technology products. Until the technical and legal issues surrounding "cloud" computing and storage are worked out, we urge lawyers to investigate a service closely before storing any client or sensitive documents in the cloud, whether in iCloud or other cloud based systems. The reality is that cloud storage – despite its mystical sounding moniker -- in reality is just someone else's server not under your direct control.

A note in switching from a physical keyboard to one of the virtual keyboards – it takes time to get used to the difference. It is significant. You must weigh this against the advantages of the phones with virtual keyboards, whether it is the availability of more than one million apps, the seamless integration with iTunes, or the ability to show high definition quality video. It may well be worth the learning curve, but expect there to be a transition. Note, of course, that the larger screens have larger keyboards, so make sure that you give due consideration to the two Droids reported on here, since they have the largest screens and keyboards.

Spell check is also very important for lawyers. The BlackBerry spell check comes on after typing a message when you click Send. It then goes over each word it does not recognize. The iPhone spell check works as you type. Be careful! It may put

out some strange results if you do not look back at what you have typed.  Once you hit Send, it is gone and there is no second chance.  For more on this problem (and a good laugh) see http://damnyouautocorrect.com/

Battery life on smartphones varies tremendously and there have been widely reported complaints of short battery life for both versions of the iPhone.  This issue has been written about extensively elsewhere and we will not cover this.  A new accessory now readily available are portable iPhone and Droid chargers that extend battery life up to 12 hours and can also be used as a case. Using your smartphone as a mobile hot spot is an interesting feature.  Enabling this feature and paying the additional monthly fee enables your phone to act as a small Wi-Fi hotspot, enabling other devices, such as an iPad or e-reader, to connect via Wi-Fi if they do not have a cellular connection.

For this article, we examine the BlackBerry Q10 (which has both a small touch screen and a physical QWERTY keyboard), and the BlackBerry Z10 (which has a full touch screen). The iPhones and Droids all have full touch screens. The Galaxy S4 and Note 3 are greatly improved over prior models and market share is growing.  The Droid platform (and the phones built around it) is clearly a significant force in the smartphone universe.  Without doubt, these are the Droids you're looking for.

## BlackBerry Q10 and Z10

Blackberry clearly was the early leader in smartphones for business and lawyers, but has been overtaken by the flexibility and vast app library the other platforms offer.  Blackberry simply cannot compete with the app array.  The BlackBerry physical keyboard is still an attraction to many, so we have included the Q10 in this article.  For large firms, control of the data and security via the BlackBerry Enterprise Server remains a top priority

*Security* – The BlackBerry Enterprise Server is excellent for securing the devices and, wiping out information if the phone is lost.   If a firm is small and does not have BES, then consider McAfee WaveSecure, which can remotely track and lock a lost phone. Microsoft Exchange wiping of BlackBerrys is not available.

*Microsoft Outlook* – BlackBerrys integrate very easily with Microsoft Outlook data via Microsoft Exchange, providing full access to email, contact, and calendar functions, and

almost immediate synchronization with the desktop data. Individual Contact groups transfer to the BlackBerrys without any problem.

*Applications* – At the latest count, there were only 100,000 plus apps, clearly a significant disadvantage compared to the iPhone or Droid.

*Documents* – BlackBerrys do not need third party software to view documents. They can open and view Microsoft Word documents and Adobe pdf documents without any add-ons.

*Global phone* -- Both BlackBerrys are world phones, with CDMA and GSM capability.

*Storage Capacity* -- Standard capacity is 16 GB for the Q10 and Z10, but both are expandable by 32GB with a readily available microSD card.

*Camera* -- Both feature 8.0 mp cameras, 2.0 mp front cameras, and 1080p HD video.

*Network* -- Both the Q10 and the Z10 are 4G LTE compatible.

*Mobile Hotspot* – The BlackBerrys can be used as a mobile hotspots.

*Screen* --    Q10 – 3.1" touch screen display; 720 x 720 resolution
               Z10 – 4.2" touch screen display; 1280 x 768 resolution

The BlackBerry screens are very changeable. Under Options, fonts from 5pt to 14pt are available and work throughout the display.

*Voice Recognition commands* -- Limited to voice dialing.

*Battery* -- The battery is easily replaceable.


## iPhone 5 – 16GB, 32GB, and 64GB versions
## iPhone 5S – 16GB, 32GB, and 64GB versions

If you want a mobile device that works well for business uses such as e-mail and calendaring, but also takes full advantage of web connectivity applications, and personal media, the iPhone 5 and 5S are excellent choices. The three versions of each iPhone are identical except for the storage capacity.

*Security* – Pre-installed in the iPhone is *Find My iPhone*. This app, available in the iCloud settings, enables the owner remotely to lock down the iPhone or wipe it clean if it is lost or stolen, as well as locating a missing phone. In addition, the owner can use Microsoft Exchange to wipe an iPhone remotely – a firm's IT group will need to have the log-in information or the user can do it by logging into the Exchange web email module.

The new 5S has fingerprint security.  You can program the phone to activate by placing your finger on the home button – and you can capture up to five fingerprints when you your fingerprint in the settings, to recognize your touch.

**Microsoft Outlook** – The iPhone integrates very easily with Outlook data via Microsoft Exchange server, providing full access to email, contact, and calendar functions, and almost immediate synchronization with the desktop data.  Notes, however, do not carry over to the iPhone.  Individual Contact groups also do not transfer to the iPhones.  You can re-create them using a work-around in Notes.

**Applications** – Over 1,000,000 apps are available.  The wide availability of apps is well known and they are easily found on the web or from the built-in App Store, and the number is constantly increasing.  At this time last year, there were 700,000 apps.  The increase alone far out shadows BlackBerry's total app library.

**Documents** – The iPhone does not need third party software to view documents. It can open and view Microsoft Word documents and Adobe pdf documents without any add-ons.

**Global phone** -- Both iPhone 5 and 5S are world phones.

**Storage Capacity** -- The user is locked into 16GB, 32GB, or 64GB versions, as purchased, so there is plenty of choice and plenty of storage capacity, but there is no ability to change or add a memory card.

**Camera – 5** and 5S -- Both feature an 8 mp camera with 1080p HD video and a front-facing 1.2 megapixel camera.   The 5S has digital image stabilization and, picture taking during video recording.  The 5 has digital image stabilization and video calling.

**Network** -- The iPhone 5 and 5S are 4G LTE phones.

**Mobile Hotspot** – The iPhone can be a mobile hotspot.

**Screen** -- iPhone 5 and 5S both feature 4" display, 1136 x 640 retina display.

Surprisingly, even with the great flexibility of the iPhone operating system, there are numerous places where the screen can be very difficult to read.  For example, look at Contacts, and note that much of the detail is in 5pt or 6pt type, even when Settings is changed to large type.  The three-finger double tap work-around is quite awkward.

**Voice Recognition commands**. -- iPhone has Siri, and the current iOS (7.x) is a good improvement over the original Siri. Opinions and reviews on Siri are still mixed, however, so do not switch to the iPhone merely for this function.

**Battery** – iPhone cases are sealed, so batteries cannot be replaced. The iPhone must be brought back to the vendor, but may be under warranty. If battery life is a problem for you, consider one of the new portable chargers.

## Galaxy S4 and Galaxy Note 3

The Droid operating system from Google is the fastest platform for web browsing and applications.

**Security** – McAfee WaveSecure can remotely track and lock a lost phone. In addition, Microsoft Exchange has the ability to wipe the phones remotely.

**Microsoft Outlook** -- The Droids integrate very easily with Outlook data via Microsoft Exchange server, providing full access to email, contact, and calendar functions, and almost immediate synchronization with the desktop data. Individual Contact groups do not transfer to either phone. The work-around is that you can re-create them on the phones.

**Applications** – The latest claim is that there are well over 1,000,000 apps. The application library may exceed that of the iPhone.

**Documents** – They can open and view Microsoft Word documents and Adobe pdf documents without any add-ons. Note 3 has an S Pen to take notes.

**Global phone** -- The Galaxy S4 and Note 3 are both CDMA and GSM compatible and therefore may be used worldwide.

**Storage Capacity** – Galaxy S4 comes with 16 GB on-board storage with no expansion options.
The Galaxy Note 3 comes with 32 GB on-board storage, and can accommodate up to a 64 GB microSD card.

**Camera** – The Galaxy S4 has a 13mp camera, a 2 mp front camera and 1080p HD video. The Note 3 has a 13mp camera, and a 1.9 mp front camera and 1080p HD video.

**Network** –   The Galaxy S4 and Note 3 both are 4G LTE phones

**Mobile Hotspot** – Both The Galaxy S4 and Note 3 have mobile hotspot capability.

**Screen** -- Galaxy S4 – 5.0" screen, 1080 x 1920
         Note 3 – 5.7" screen, 1080 x 1920

***Voice Recognition commands***:  The Samsung Galaxy S4 and Note 3 have voice assistant called S Voice.  The S Voice is good at recognizing commands and gets better the more you use it.

***Battery*** – The Galaxy S4 and Note 3 have replaceable batteries.

**NOTE – Some features vary by carrier.  We have tried to list features and specifications with the broadest application, but cannot guarantee the accuracy of each item set forth above.  Please check with your carrier for the details of any feature or specification that is critical to you.**

Robert D. Steele is a partner in the firm Wolf Haldenstein Adler Freeman & Herz LLP, and is head of its Trusts and Estates department.  Mr. Steele has been involved in the evolving technology at the firm since joining in 1989, when he became the first lawyer at the firm to use a computer in the practice of law.

Tony Gjata is an IT professional who has been with Wolf Haldenstein for more than 10 years.  He is an expert in all of the technological areas of the firm, from the maintenance of its dozens of smartphones, to its telephone PBX, to the maintenance of the firm's website and its 33 servers and 125+ workstations.

---

[1] Yu [2013] QSC 322, http://www.queenslandreports.com.au/docs/db_keydecisions/QSC13-322.pdf

[2] http://us.blackberry.com/business/software/blackberry-mobile-fusion.html?tab-1&CPID=KNC-kw706510_p6&HBX_PK=rim|38acaeea-fd6d-2e69-321d-000053b12cb2#tab-1

[3] http://www1.good.com/

[4] For users to do the remote wipe from Outlook Web Access, first log into Outlook Web access.  On the top right there is a menu called "Options." Click "Options."  On the left pane you will find "Mobile Devices." Click and select "Wipe all Data from Device."

[5] http://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/11_459_nm_formal_opinion.authcheckdam.pdf

*EXHIBIT "E"*

| THE SHANE GROUP, INC., et al., v. BLUE CROSS BLUE SHIELD OF MICHIGAN |
|:---:|
| Case No. 10-cv-14360 |
| Time and Lodestar Summary |

| Firm Name | FINKELSTEIN THOMPSON LLP |
|---|:---:|
| Time Period | Inception through June 30, 2014 |

| Name | Status | Hourly Rate | Total Hours | Total Lodestar |
|---|:---:|---|---:|---:|
| Douglas G. Thompson, Jr. | (P) | $ 850.00 | 0.30 | $ 255.00 |
| L. Kendall Satterfield | (P) | $ 750.00 | 25.00 | $ 18,750.00 |
| Michael G. McLellan | (P) | $ 575.00 | 195.60 | $ 112,470.00 |
| Donald A. Resnikoff | (OC) | $ 660.00 | 93.00 | $ 61,380.00 |
| Stan M. Doerrer | (A) | $ 450.00 | 130.40 | $ 58,680.00 |
| Natalie A. Wengroff | (PL) | $ 220.00 | 0.80 | $ 176.00 |
| Law Clerks | (LC) | $ 170.00 | 16.00 | $ 2,720.00 |
| TOTAL | | | 461.10 | $ 254,431.00 |

**Status:**

(P)   Partner
(OC) Of Counsel
(SA) Senior Associate
(A)   Associate
(LC) Law Clerk
(PL) Paralegal

**Please report time in current rates.**

*EXHIBIT "F"*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SHANE GROUP, INC., *et al.*,<br><br>Plaintiffs, on behalf of themselves<br>and all others similarly situated,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF<br>MICHIGAN,<br><br>Defendant. | Civil Action No. 2:10-cv-14360-DPH-MKM<br><br><br>Judge Denise Page Hood<br>Magistrate Judge Mona K. Majzoub |

## <u>DECLARATION OF DIANNE M. NAST</u>

I, Dianne M. Nast declare as follows:

1.      I am the founder of NastLaw LLC. I am submitting this Declaration in support of Plaintiffs' application for fees and expenses.

2.      In the beginning of this matter, the predecessor law firm, RodaNast, PC, employed the attorneys who worked on this case. In 2012, NastLaw LLC was formed, and the RodaNast, PC attorneys are and have been employed by NastLaw LLC since that time. RodaNast, P.C. is no longer operating. All time and expenses reported in this Declaration include NastLaw LLC and RodaNast, PC time, and are described as time and expenses of "this firm."

*EXHIBIT "F1"*

| THE SHANE GROUP, INC., et al., v. BLUE CROSS BLUE SHIELD OF MICHIGAN |
|:---:|
| Case No. 10-cv-14360 |
| **Time and Lodestar Summary** |

| Firm Name | NastLaw LLC |
|---|:---:|
| **Time Period** | **Inception through June 30, 2014** |

| Name | Status | Hourly Rate | Total Hours | Total Lodestar |
|---|:---:|---|---:|---|
| Dianne M. Nast | (P) | $    750.00 | 16.30 | $         12,225.00 |
| Erin C. Burns | (A) | $    510.00 | 524.30 | $       267,393.00 |
| Matthew A. Reid | (A) | $    395.00 | 53.00 | $         20,935.00 |
| Cathryn S. Roberts | (PL) | $    170.00 | 10.90 | $           1,853.00 |
| **TOTAL** | | | **604.50** | $       **302,406.00** |

**Status:**

(P)    Partner
(OC)  Of Counsel
(SA)  Senior Associate
(A)    Associate
(LC)  Law Clerk
(PL)  Paralegal

**Please report time in current rates.**

*EXHIBIT "6"*

**THE SHANE GROUP, INC., et al., v. BLUE CROSS BLUE SHIELD OF MICHIGAN**
Case No. 10-cv-14360
Time and Lodestar Summary

| Firm Name | Gustafson Gluek PLLC |
|---|---|
| Time Period | Inception through June 30, 2014 |

| Name | Status | Hourly Rate | Total Hours | Total Lodestar |
|---|---|---|---|---|
| Daniel Gustafson | (P) | $ 900.00 | 335.00 | $ 301,500.00 |
| Karla Gluek | (P) | $ 775.00 | 0.50 | $ 387.50 |
| Daniel Hedlund | (P) | $ 700.00 | 819.25 | $ 573,475.00 |
| Jason Kilene | (P) | $ 700.00 | 18.25 | $ 12,775.00 |
| Amanda Williams | (P) | $ 500.00 | 194.75 | $ 97,375.00 |
| Cathy Smith | (P) | $ 500.00 | 1.00 | $ 500.00 |
| David Goodwin | (A) | $ 425.00 | 0.25 | $ 106.25 |
| Michelle Looby | (A) | $ 425.00 | 99.00 | $ 42,075.00 |
| Sara Payne | (A) | $ 400.00 | 8.25 | $ 3,300.00 |
| Joe Bourne | (A) | $ 385.00 | 256.00 | $ 98,560.00 |
| Josh Rissman | (A) | $ 375.00 | 44.50 | $ 16,687.50 |
| Ellen Ahren | (A) | $ 375.00 | 1775.75 | $ 665,906.25 |
| Raina Borrelli | (A) | $ 350.00 | 3.25 | $ 1,137.50 |
| Dan Nordin | (A) | $ 350.00 | 689.25 | $ 241,237.50 |
| Lucy Massopust | (A) | $ 335.00 | 18.50 | $ 6,197.50 |
| Cory Carpenter | (CA) | $ 315.00 | 549.75 | $ 173,171.25 |
| Johanna Smith | (LC) | $ 280.00 | 118.50 | $ 33,180.00 |
| Aalok Sharma | (LC) | $ 280.00 | 42.00 | $ 11,760.00 |
| Caroline Marsili | (LC) | $ 265.00 | 2.50 | $ 662.50 |
| Nadja Baer | (LC) | $ 250.00 | 8.50 | $ 2,125.00 |
| Sarah Moen | (PL) | $ 200.00 | 11.75 | $ 2,350.00 |
| Diana Jakubauskiene | (PL) | $ 200.00 | 2.50 | $ 500.00 |
| Melanie Morgan | (PL) | $ 150.00 | 4.25 | $ 637.50 |
| Danette Mundahl | (PL) | $ 150.00 | 608.75 | $ 91,312.50 |
| Jamie Holzer | (PL) | $ 150.00 | 7.75 | $ 1,162.50 |
| Tracey Grill | (ADM) | $ 150.00 | 25.25 | $ 3,787.50 |
| Shawn Seaberg | (ADM) | $ 125.00 | 32.00 | $ 4,000.00 |
| Dana Noss | (ADM) | $ 150.00 | 1.50 | $ 225.00 |
| Janey Atchison | (ADM) | $ 175.00 | 0.25 | $ 43.75 |
| **TOTAL** | | | **5,678.75** | **$ 2,386,137.50** |

Status:

(P)    Partner
(OC)  Of Counsel
(SA)  Senior Associate
(A)    Associate
(LC)  Law Clerk
(PL)  Paralegal

**Please report time in current rates.**