**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THE SHANE GROUP, INC., et al.,

      Plaintiffs,

|  |  |
|---|---|
| v. | Case No. 10-CV-14360 |
|  | (Class Action Matter) |
|  | HON. DENISE PAGE HOOD |

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

      Defendant.

_____/

**OPINION AND ORDER REGARDING FAIRNESS HEARING,**
**GRANTING MOTION FOR ATTORNEYS' FEES,**
**REIMBURSEMENT OF EXPENSES AND**
**PAYMENT OF INCENTIVE AWARDS,**
**DENYING MOTIONS TO INTERVENE,**
**GRANTING MOTION FOR FINAL APPROVAL OF**
**SETTLEMENT AND PLAN ALLOCATION,**
**DENYING MOTION TO STRIKE SUR-REPLY,**
**AND**
**DENYING MOTIONS FOR SANCTIONS**

## I.   BACKGROUND

On June 22, 2012, a Consolidated Class Action Amended Complaint was filed

against Defendant Blue Cross Blue Shield of Michigan ("Blue Cross") alleging:

Unlawful Agreement in Violation of § 1 of the Sherman Act under the Rule of Reason

(Count I); Unlawful Agreements in Violation of Section 2 of the Michigan Antitrust

Reform Act, M.C.L. § 445.772 (Count II).  (Doc. No. 78)  The class action seeks to recover overcharges paid by purchasers of Hospital Healthcare Services directly to hospitals in Michigan.  These overcharges resulted from the anticompetitive acts of Blue Cross.  (Am. Comp., ¶ 1)  Blue Cross is a Michigan nonprofit healthcare corporation headquartered in Detroit, Michigan.  (Am. Comp., ¶ 18)  Blue Cross provides, directly and through its subsidiaries, health insurance and administrative services, including preferred provider organization ("PPO") health insurance products and health maintenance organization ("HMO") health insurance products.  (Am. Comp., ¶ 18)

A Discovery Plan was jointly submitted by the parties on August 3, 2012. (Doc. No. 82) Several Scheduling Orders were thereafter entered by the Court and discovery was conducted by the parties.  Various motions were filed by the parties as well.  After the parties informed the Court the parties had resolved the issues before the Court and after a hearing was held on the matter, the Court entered an Order Granting Preliminary Approval to Proposed Class Settlement on June 26, 2014. (Doc. No. 151)  The Court set a date for the Fairness Hearing on November 12, 2014, 2:00 p.m.  Objections were ordered to be filed no later than 90 days from the Preliminary Approval Order.  The Court approved Epiq Class Action & Mass Tort Solutions, Inc. to administer the Settlement Agreement under the supervision of Class Counsel.

2

Eagle Bank, a Maryland State Chartered Bank, was approved by the Court to maintain the Escrow Account in which the Settlement Fund shall be held and to disburse the funds after the Court's approval. To be excluded from the Settlement Class, a Class Member was required to request in writing postmarked no later than 90 days after the Preliminary Approval. If the request for exclusion from any class member was not timely filed, this would result in the Class Member being deemed included in the Settlement Class. The Claim Form was to be completed and sent to the Settlement Administrator by first-class mail, post-marked no later than November 16, 2014.

The Preliminary Order provided that Class Counsel serve an application for attorneys' fees, reimbursement of expenses and incentive awards no later than 30 days after entry of the Preliminary Approval Order, which was filed on July 24, 2014. (Doc. No. 155) Blue Cross filed with the Court a certificate stating compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, on July 1, 2014. (Doc. No. 152) Class Counsel were required to serve, no later than 75 days after entry of the Preliminary Approval Order, a Notice regarding dissemination of the Notice Plan, which was filed on October 2, 2014. (Doc. No. 162)

Timely objections to (90 days from the June 26, 2014 Preliminary Approval Order) or letters regarding the proposed class action settlement were filed by: John Kunitzer (Doc. No. 158, filed September 19, 2014); Christopher Andrews (Doc. No.

3

159, filed September 24, 2014); Scott Mancinelli (Doc. No. 160, filed September 24, 2014) and, ADAC Automotive and Others (Doc. No. 161, filed September 24, 2014). Untimely letters regarding the proposed class action settlement were filed by Darrell Thompson (Doc. No. 165, October 20, 2014) and Marguerite M. Schubert (Doc. No. 176, October 31, 2014).

This matter is now before the Court to determine whether the proposed class action settlement is fair.  If the Court so finds, Plaintiffs seek final approval of the settlement and plan allocation.  Also before the Court is Class Counsel's Motion for Attorneys' Fees, Reimbursement of Expenses and Payment of Incentive Awards to Class Representatives, Certain Movants' Motion to Unseal Certain Records and to Adjourn the Fairness Hearing.  A hearing was held on the various motions on November 12, 2014.  The motions are each addressed below.

## II.    MOTIONS TO INTERVENE

### A.    Background

Twenty-Six Class Members, represented by the Varnum law firm, seek to intervene for the limited purpose of unsealing records and adjourning the fairness hearing.  (Doc. No. 166)  Specifically, they seek to unseal the following four documents which were filed sealed: Opposition to Motion to Add and Drop Named Plaintiffs for the Proposed Class (Doc. No. 127); the Motion for Class Certification

4

and Appointment of Class Counsel and Response thereto (Doc. Nos. 133, 139); and the Motion to Exclude Expert Testimony of Dr. Jeffrey Leitzinger (Doc. No. 140). The Twenty-Six Class Members seek to access the Sealed Documents to gather information that will help them assess the likelihood of success of the case, assess their potential damages recovery, and gather information relevant to their assessment of the proposed settlement and their objections to the proposed settlement. They claim that they are entitled to intervene as of right, or in the alternative, with permission of the Court, and that this motion is timely.

Blue Cross and Plaintiffs oppose the motion asserting that the motion to intervene is untimely and that the Twenty-Six Class Members have not shown they are entitled or require to review the sealed documents to evaluate whether the proposed settlement is fair. Certain Third-Party Hospitals and other organizations seek to intervene in order to respond in opposition to the Twenty-Six Class Members' Motion to Unseal certain records. (Doc. Nos. 183, 184, 185, 186, 189, 192) The Third-Party Hospitals and other organizations produced highly sensitive information during the discovery phase and oppose any records unsealed.

### B.    Intervention as of Rights, Fed. R. Civ. P. 24(a)

Intervention as of right is governed by Rule 24(a) of the Federal Rules of Civil Procedure which allows a party to intervene who "claims an interest relating to the

property or transaction that is the subject of the action, and is so situated that disposition of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). An applicant must show: 1) the application was timely filed; 2) the applicant possesses a substantial legal interest in the case; 3) the applicant's ability to protect its interest will be impaired without intervention; and 4) the existing parties will not adequately represent the applicant's interest. *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011). Each of these elements is mandatory, and therefore failure to satisfy any one of the elements will defeat intervention under the Rule. *Id.* The court must consider timeliness in the first instance. *Id.* at 284 (The "court where the action is pending must *first* be satisfied as to timeliness" under Rule 24.) (quoting *NAACP v. New York*, 413 U.S. 345, 365 (1973)).

In determining timeliness, five factors must be considered: 1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention. *Blount-Hill*, 636 F.3d at 284 (quoting *Jansen v.*

6

*Cincinnati,* 904 F.2d 336, 340 (6th Cir. 1990)).

Applying the first factor–the point to which the suit has progressed–the instant action was filed on October 29, 2010, four years ago.  The related case filed by the United States against Blue Cross was filed on October 18, 2010 and jointly dismissed on March 28, 2013.  The Twenty-Six Class Action Members filed the instant motion on October 20, 2014.  Over the four years this case and other related cases were before the Court, the cases have been vigorously litigated and extensive discovery have been conducted.  In this class action lawsuit, motions to dismiss and other motions were filed.   During the litigation, the parties in this case entered into settlement negotiations.  On June 23, 2014, the parties filed a Motion for Order for Preliminary Approval of Settlement.  The parties held a hearing on the matter, granting the motion in a June 26, 2014 Order.  (Doc. No. 151) When the Twenty-Six Class action Members filed the instant Motion to Intervene in October 2014, the suit had progressed to resolution, only awaiting a hearing on the fairness of the settlement and the motion for final approval of the settlement scheduled on November 12, 2014, about three weeks from when the Motion to Intervene was filed.  Notices have been filed to class action members and the Twenty-Six Class Action Members themselves had filed their Objections to the settlement.  This factor does not weigh in favor of the Twenty-Six Class Action Members since the motion was filed four years after the

7

instant case was filed and when a resolution between the parties has been reached.

The second factor–the purpose of the intervention–is to review motions and documents filed under seal in this case. The Twenty-Six Class action Members claim they require these documents in order to value their claims and to determine whether the settlement is fair. While objectors are entitled to meaningful participation in the settlement process, they are not automatically entitled to discovery or to question and debate every provision of the proposed settlement. *In re Gen. Tire & Rubber Co. Sec. Litig.,* 726 F.2d 1075, 1084 (6th Cir. 1984); *Bailey v. White,* 320 F. App'x 364, 366 (6th Cir. 2009). These objectors should have knowledge of their own interests, as opposed to the interest of others and so evaluating their interests need not require the review of documents submitted by others to the Court and amongst the parties of the instant suit. The Sixth Circuit has noted that the purpose for intervening in order to investigate and evaluate the proposed settlement, was satisfied by the opportunity to participate in the fairness hearing. *Bailey*, 320 F. App'x at 366. This factor does not weigh in favor of the Twenty-Six Class Action Members since the Sixth Circuit has held that the members are not entitled automatically to discovery because they are able to participate in the fairness hearing.

As to the third factor, the length of time the proposed intervenors knew of their interest in the case, the Court finds they should have known of their interest when the

United States filed its lawsuit against Blue Cross back in 2010, and when the instant suit and the related suits were filed in this District in 2010 and 2011. The related lawsuits were well-publicized at that time and since the filing of the suits in the general media and the insurance and medical communities. This Court notes that many of the moving parties have lawsuits in this District against Blue Cross regarding its handling of their insurance contracts on other issues. The length of time the proposed intervenors should have known their interest in the case factor does not weigh in their favor.

Regarding the fourth factor–the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case–also weighs against the Twenty-Six Class Action Members. As addressed in the third factor above, the proposed intervenors should have known of their interests back in 2010. Their failure to promptly intervene back then and only after the parties in the instant suit have reached a resolution, clearly prejudices those parties. The parties have conducted extensive discovery and have vigorously litigated this case. The proposed intervenors now seek documents which are filed under seal but contain sensitive information regarding the parties' interests and private information regarding the parties' insurance and medical information. In addition, many hospitals participated in this litigation and medical

9

information regarding patients may be contained in these documents.  This factor weighs against the Twenty-Six Class Action Members and heavily weighs in favor of the original parties who have vigorously litigated this action.

The fifth factor–the existence of unusual circumstances militating against or in favor of intervention–the proposed intervenors, other than noting there are no unusual circumstances militating against intervention, do not identify any unusual circumstances why the Court should allow intervention.  The settling parties argue there are unusual circumstances militate against intervention.  They claim that the Settlement involves millions of Settlement Class Members, many of which are large and sophisticated entities.  This factor weighs against the Twenty-Six Class Action Members since there are unusual circumstances where millions of class members are involved and where documents the proposed intervenors seek to review may contain highly sensitive business, personal, medical and insurance information which may not be present in other class action lawsuits.

Weighing the factors required for the Court to determine whether the Motion to Intervene is timely, the Court finds that the various motions to intervene were not timely filed.  Having considered the timeliness issue in the first instance and since this element is mandatory, the Motion to Intervene, even for the limited purpose of unsealing and reviewing documents filed by the parties, is denied.  *Blount-Hill,* 636

F.3d at 283.

### C.    Permissive Intervention, Fed. R. Civ. P. 24(b)

Rule 24(b) provides that, "[o]n timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).  The Sixth Circuit in *Blount-Hill* held that because the proposed intervenors' motion was untimely in its analysis under mandatory intervention, the motion for permissive intervention was also untimely. *Id.* at 287.  For the same reasons above, since the motion for mandatory intervention is untimely, the motion under the permissive intervention rule is also untimely.  As in *Bailey*, the Twenty-Six Class Action Members have participated in this case by filing their Objections to the class action settlement.  They have a voice as objectors in this case.  The Motion to Intervene under the permissive intervention rule is denied.

Since the Motions to Intervene are denied, there is no basis to adjourn the Fairness Hearing.  The request to adjourn the Fairness Hearing is denied.

## III.   FAIRNESS OF SETTLEMENT

### A.    Rule 23

Rule 23 of the Rules of Civil Procedure governs the Court's determination of whether the settlement is fair.  Pursuant to Fed. R. Civ. P. 23(e)(2), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or

11

compromised only with the court's approval.  The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:  If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."  The factors to be determined at the fairness hearing are:  (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (2007).

### B.    Objections Filed

#### 1.    Pro Se Letters/Objections

##### a.    John Kunitzer

John Kunitzer filed a timely Objection on September 15, 2014.  (#158) Kunitzer asserts that during the time period at issue, he has had four major surgeries, but has been unable to obtain copies of his bills and therefore cannot support his claim.  He states that this is another case where the lawyers involved will reap the substantial benefits instead of those that actually suffered the loss.

##### b.    Christopher Andrews

Christopher Andrews also filed timely Objections on September 24, 2014.

(Doc. No. 159) He also filed supplemental documents to support his Objections, to seek sanctions and to respond to other motions. (Doc. Nos. 163, 172, 179, 202, 204, 205, 207, 209, 210) Andrews asserts that he is a non-attorney and is also acting as a representative under a Power of Attorney for Cathy Waltz as executor of the estate of Eileen Greenia and Emily Byrne, and for Ron Waltz and Michael Andrews. (Doc. Nos. 193, 195) Andrews lists several issues including: the $30 million amount for damages is too low; incentive awards are too high; postcard and long notices are flawed and defective; claim forms are flawed; claim packets are defective; hourly rates are too high as are the number of hours claimed for attorneys' fees; $3.5 million in expenses is too high; and, Blue Cross should have paid for the notice. Andrews presented his arguments at the hearing.

### c.    Scott Mancinelli

Scott Mancinelli filed a timely Objection on September 24, 2014. (Doc. No. 160) He asserts he directly purchased healthcare services form Michigan General Acute Care Hospitals for himself and for his minor children between January 2006 and June 2014 in the form of co-pay, co-insurance and insurance deductibles. Mancinelli argues the settlement is not reasonable, fair or adequate. He claims the settlement fails to address Blue Cross' "Most Favored Nation" contracts with the hospitals, which was the primary issue in the case. He argues the MFN issue is not

13

addressed in the settlement because there is no declaratory or injunctive relief prohibiting unfair trade practices in the future.   The release in the settlement addressing the MFN issue applies to almost every consumer of acute care hospital services in Michigan.   Mancinelli claims that in exchange for the paltry $15 to $40, consumers are "dooming" themselves to a "rigged" hospital pricing system that perpetuates a "quasi-monopoly" for Blue Cross, which is not the best interest of the settlement class, the citizens of Michigan, or other insurance carriers.   Mancinelli argues that the *cy pres* recipients  and the present *cy pres* distribution is a carve out of funds from the overall settlement and is not necessitated by or the result of the economic unavailability of a distribution to class members.   He claims that the *cy pres* distribution is a direct result of a cap placed on distributions to class members and that the cap should be removed.   As to notice, Mancinelli asserts he received no direct notice of the class action or its settlement, but that his eight-year old daughter received a post card notice.   He agrees with Kunitzer's objection that the claim forms require a claimant to put the date of service, the amount paid and hospital provider, which very few class members are unable to obtain back to 2006.

### d.    Darrell Thompson

Darrell Thompson filed untimely letters regarding the settlement, the first filed October 15, 2014 (Doc. No. 165), and two others received by the Court on November

14

7 and 11, 2014. Thompson's letter dated October 13, 2014 states that he was a patient at Michigan hospitals from January 1, 2006 to June 23, 2014. He emailed the settlement administrator on September 17, 2014 asking how to determine if he is part of the settlement. The settlement administrator responded on September 19, 2014 indicating it was investigating the issue and then responded on September 24, 2014 directing Thompson to contact Class Counsel. Thompson then emailed Class Counsel the evening of September 24th. He received a telephone call the following week indicating he could file for the class action settlement, but by then, the time to file objections had passed. Thompson presented his arguments at the hearing.

### e.   Marguerite Schubert/Dale J. Schubert

Marguerite Schubert filed an untimely letter to the Court on October 30, 2014 submitted by her son, Dale J. Schubert. (Doc. No. 176) Her son indicates he had been attempting to complete the claim form, but has been unable to obtain information from certain insurance companies. He states that he has called the claims administrator, but has not been able to obtain assistance with his questions. He asked to speak to one of the staff attorneys handling the matter, but has not received a response to the request. He seeks an adjournment of the filing deadline until all the issues have been addressed.

The Named-Plaintiffs submitted a supplemental brief indicating that they

15

investigated Mr. Schubert's inquiries to Epiq. Charles Marr, Epiq's Project Manager, submitted a declaration indicating he called Mr. Schubert regarding his letter to the Court and further explained to him the details of the Plan of Allocation. Mr. Marr indicated that by the end of the call, Mr. Schubert stated he had the necessary information to file a claim, which was received by Epiq timely.

### 2.    ADAC Automotive and Others (Represented by Varnum)

Twenty-Six self-insured Objectors, made up of over 5,000 health plan participants filed a timely joint objection asserting: 1) the proposed settlement fund is woefully inadequate; 2) the proposed settlement gives preferential treatment to the named plaintiffs; 3) the proposed settlement gives preferential treatment to class counsel; and, 4) the claims process is unnecessarily burdensome. (#161, 9/24/14) They argue that under the "preferential treatment" standard, although not included in the seven UAW factors in evaluating the fairness of a settlement, the Sixth Circuit also looked to whether the settlement gives preferential treatment to the named plaintiffs and class counsel, citing *Greenberg v. Procter & Gamble Co.* (*In re Dry Max Pampers Litig.*), 724 F.3d 713, 719 (6th Cir. 2013) and *Vasalle v. Midland Funding LLC,* 708 F.3d 747, 755 (6th Cir. 2013). The Objectors' arguments are addressed in the analysis below.

### C.    Factors

16

### 1.   Substantial Risk of Fraud or Collusion

The Twenty-Six Objectors argue that class members over the eight-and-a-half-year period covered under the proposed settlement spent over $86 billion in Michigan hospitals.  They claim that only 1 percent of the class member payments will be refunded under the settlement plan and for a small number of specific hospitals, class members will be refunded 3.5 percent of their payments to those particular hospitals. The Twenty-Six Objectors claim that "simple math" dictates that in order to refund class members 1 percent of their hospital expenditures, the settlement fund should be at least $850 million, based on the $85 billion figure.  They argue that the proposed settlement of a gross amount of $29,990,000 is "woefully inadequate."  The nearly $30 million gross settlement amount is allocated as follows: 1) $3.5 million to reimburse class counsel for expenses; 2) up to $10 million attorneys' fees for class counsel; 3) over $200,000 in potential incentive awards to the named-Plaintiffs; and, 4) expenses incurred in administering the proposed settlement, pre-authorized up to $1 million. The Twenty-Six Objectors claim that closer to $15 million would then be available to reimburse class members, which they argue is "wholly inadequate" to reimburse the class members.   The 1 percent refund set forth in the proposed settlement they argue is completely misleading and illusory.  The proposed net settlement amount represents 0.000176 percent of the hospital expenditures by the

17

class members during the class period or $1 for every $5,681 spent by class members. If Plaintiffs are successful at trial, they claim that the case is a "billion-dollar" case. The Twenty-Six Objectors also argue that Blue Cross, despite being a non-profit corporation, holds massive reserves at almost $12.8 billion at the end of 2013, including $696 million in cash. They claim that any judgment against Blue Cross could be collected.

The Twenty-Six Objectors claim that this "grossly inadequate" amount suggests a "serious risk of fraud and collusion" between the Named-Class Plaintiffs and Blue Cross. The proposed four organization Named-Plaintiffs are entitled to an incentive payment of up to $50,000 and the four individual Named-Plaintiffs are entitled to $10,000 incentive payment. With the net settlement fund of $15 million, they argue that it this was solely distributed to individual class members (and not to insurers or self-insured entities), each class member would receive an average recovery of $3.00.

The Twenty-Six Objectors argue that the excessive attorneys' fees award of up to $10 million to Plaintiffs' counsel is unreasonable and points to a substantial risk of fraud and collusion. They claim that the substantial amount to be paid to class counsel, when compared to the "meager" net amount to be paid to class members, creates a substantial conflict of interest between class counsel and class members that raises a serious risk of fraud and collusion.

18

They next argue that the burdensomeness of the claims process will be a substantial deterrent to claims being filed and further suggests possible fraud or collusion. The claim form requires insurers and self-insured plans to itemize in a claims table: 1) the amount of healthcare services paid for; on 2) each date of service over the class period; for 3) each of approximately 130 hospitals in Michigan. They argue that the claims tables from insurers and self-insured are likely to be thousands of pages long. The individuals are also required to itemize their claim by amount, date and hospital during the class period. The requirement that insurers and self-insureds submit copies of supporting bills would result in submission of perhaps millions of pages of supporting documents. They claim that individuals are not required to submit supporting documents. The Twenty-Six Objectors argue that the insurers and self-insured plans should be treated the same way as individuals and not require supporting documents, unless the claim is suspect. The claimants are required to certify under penalty of perjury that their claim form is true and accurate, which should be sufficient to minimize the risk of false or inflated claims submitted. They also claim that millions of class members are either directly insured by Blue Cross or are self-insured plans administered by Blue Cross, which means that Blue Cross has superior access to the hospital payment information concerning its insureds and the self-insured plans it manages. The Twenty-Six Objectors claim that the claims

19

process can only be seen as a "cynical" attempt to discourage most class members from submitting claims in order to justify the extremely low settlement fund amount.

The Named-Class Plaintiffs respond that the Settlement creates a common fund of approximately $30,000,000, which they claim is an excellent recovery for the class since it recovers more than 25 percent of the $118 million damages estimated.  They argue that this amount of recovery and much less, have been approved in countless antitrust class actions.  *See, e.g., Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.,* No. 03-cv-4578, 2005 WL 1213926, at *9 (E.D. Pa. May 19, 2005)(11.4% of damages); *In re Linerboard Antitrust Litig.,* No. MDL 1261, 2004 WL 1221350, at *4 (E.D. Pa. June 2, 2004)(collecting cases approving anywhere from 5.35% to 28% of damages).  Named-Class Plaintiffs assert that this settlement was reached after three and a half years of hard-fought litigation, production of millions of pages of documents, depositions of 169 witnesses, analysis of many terabytes of data, expert reports submitted by the parities, and, briefing of several motions.  They claim there are no indicia of unfairness to class members and that Class Counsel's request for attorneys' fees and expenses is authorized by abundant case law.

The Named-Class Plaintiffs assert that the history of this litigation is hard-fought with extensive negotiations between the parties.  They claim the Court had ample opportunity to observe the intensely adversarial nature of this litigation during

the past few years.  They note that Blue Cross fought the class action at every turn, and Class Counsel fought back vigorously.  The Named-Class Plaintiffs submitted declarations detailing the drawn-out settlement negotiations which demonstrate the arm's-length, adversarial nature of the parties' relations.

The Named-Class Plaintiffs assert that the Settlement Agreement itself refutes the idea that there was fraud or collusion.  The Settlement Agreement provides that all awards are placed in the sole discretion of the district court.  They claim that Class Counsel's interests are fully aligned with the Settlement Class' interest, therefore, there was no self-dealing or fraud or collusion in the settlement negotiations.  The Named-Plaintiffs claim that Class Counsel include highly competent antitrust class action experts, whose records of zealous and successful representation belies any claim that they would "sell out their clients for a quick deal."  (Doc. No. 169, Pg ID 5328)  Class Counsel invested $3.5 million of their own money and over $15 million of their time, despite facing substantial risks and a formidable opponent.

Applying the first factor, the Court finds there is no indication of fraud or collusion in this case.  It is "presumed that the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands" absent "evidence of improper incentives."  *UAW,* 497 F.3d at 628.  Each party vigorously advanced and defended their arguments and positions before the

21

Court.  There were initially three cases filed relating to the instant Settlement which were later consolidated by the Court after the parties' agreed to do so.  (Doc. No. 65) Various motions were filed by the parties, including a Motion to Dismiss filed by Blue Cross, which was denied by the Court.  (Doc. No. 102) The parties engaged in extensive motion practice and discovery relating to the class certification issue and expert-related issues.  It was only after these motions were filed that the Court was informed that the parties resolved the matter after extensive negotiations.  Each time a status conference or a hearing was held before the Court, there were numerous attorneys in attendance representing each party.  The duration and complexity of the litigation and the number of parties involved undermines the Objectors' claims that fraud or collusion resulted in the Settlement Agreement.  The Court did not observe any signs that the parties were engaged in pretense and posturing during the years in litigation before the Court to mask collusion in reaching a Settlement Agreement with Blue Cross.  It is this Court's observation as to cases before this Court involving the antitrust cases filed against Blue Cross that Blue Cross defends these cases most vigorously.  Class Counsel in these consolidated cases also vigorously argued each of their positions before the Court.  All the Objectors have failed to show that the Named-Plaintiffs and Class Counsel engaged in acts of fraud or collusion in negotiating the Settlement Agreement before the Court.

## 2.      Complexity, Expense, and Likely Duration of Litigation

The Twenty-Six Objectors argue that the bulk of the work necessary to prepare the case for trial has been done.  They claim that although antitrust litigation is complex, expensive and takes time, those are largely "sunk costs" at this point.  They also claim that if Plaintiffs prevail at trial, they are entitled to treble damages and recovery of attorneys' fees and costs, which means there is substantially less risk to the Plaintiffs in continuing to litigate rather than settle.  The Twenty-Six Objectors claim it is Blue Cross who bears far greater litigation risk because of the treble damages and attorneys' fees and costs recovery it faces.

The Named-Plaintiffs respond that they have yet to complete the class certification litigation, there is expert discovery to be conducted, and summary judgment motions have not been filed.  The antitrust claims at issue involving MFNs are difficult and complicated.  Class Counsel have put millions of dollars in this case already, but more litigation is required to move the case forward.  Appeals would follow, however the case is resolved by trial.  Given the sizable hurdles in front of the Plaintiffs, any recovery outside of this Settlement would likely take years to recover and would highly be uncertain.

As to the second factor in this case, the Court finds that the antitrust MFN issues raised by the Plaintiffs are complex, very expensive to litigate and the litigation

would continue for years, including any appeals. The MFN issue is not a common issue involving antitrust cases in the healthcare arena. The Named-Plaintiffs have submitted the expenses and fees they have expended related to the consolidated cases. The litigation, contrary to the Objectors' arguments, is far from complete. The parties have yet to complete class certification motions, expert discovery, and any dispositive motion practice, even though the parties have engaged in extensive fact discovery to date. The complexity, expense and likely duration factor weighs in favor of class settlement.

### 3.   Amount of Discovery

The Twenty-Six Objectors indicate that Plaintiffs engaged in a very significant amount of discovery in this case, but because the documents have been filed under seal, it is impossible to assess the extent to which discovery has confirmed the allegations in the Complaint, enhanced or developed additional information to support the allegations in the Complaint or identified weaknesses in the allegations which might motivate settlement.

The Named-Plaintiffs agree that they have engaged in discovery of millions of pages of documents, multiple terabytes of data, 169 depositions and preparation of competing expert reports. They argue that based on all of this discovery taken, the Named-Plaintiffs and Blue Cross are well-aware of the strengths and weaknesses of

24

the case.  They argue that based on the significant discovery taken, this factor weighs heavily in favor of approval of the settlement.

There is no dispute that extensive discovery has been taken in this case, and the Objectors so concede.  In light of this extensive discovery, the Court finds that the Named-Plaintiffs and Blue Cross have been able to evaluate the propriety and fair value of the settlement.  The amount of discovery taken and considered by the parties in this case weighs in favor of approving the settlement.

### 4.    Likelihood of Success on the Merits

The Twenty-Six Objectors argue that they are unable to determine the likelihood of success on the merits since the documents are sealed in this matter.  They claim the information that is publicly available strongly suggests Plaintiffs have a substantial likelihood of success since the Department of Justice brought a federal complaint against Blue Cross.  In addition, the Michigan legislature banned the MFN Agreements by legislation passed in March 2013.  They also claim that the Court has not granted a dispositive motion in favor of Blue Cross in this suit or the related Aetna lawsuit or the original Department of Justice lawsuit.  The Objectors argue that it is obvious that the proposed settlement is grossly unreasonable, which means class members have nothing to lose, and everything to gain, by going forward with trial.

The Named-Plaintiffs argue that in this case, an expert has analyzed the

25

damages in this case, which was labor-intensive.  The analysis could reliably and manageably be measured for purchasers covered by 23 provider agreements, out of hundreds of provider agreements with MFN hospitals at 13 hospitals, out of 70 MFN hospitals.  According to the Named-Plaintiffs, this analysis projects damages that is far less than the multi-billion dollar case argued by the Objectors.  They argue that the many risks of continued litigation cast significant doubt on whether class members would receive any recovery.  The Named-Plaintiffs further argue that even though the United States and the State of Michigan obtained success, they did not have to obtain class certification or prove that the class members paid an overcharge for hospitals services, or measure the amount of the overcharge.  While the Named-Plaintiffs argue they would have succeeded at trial in this case, given the complex economic issues, a jury may not credit Plaintiffs' evidence or a jury may award less than the damages that would be sought at trial.  The Named-Plaintiffs claim they face significant risk that class members would receive nothing without a settlement, therefore the recovery of nearly $30 million reflects a substantial victory for Settlement Class members.

The main question in approving a class settlement is whether the settlement is fair in light of "plaintiff's likelihood of success on the merits." *UAW*, 497 F.3d at 631. As noted above, extensive discovery has been held in this case.  The Court has denied Blue Cross' initial Motion to Dismiss, finding at that point in the litigation that

26

Plaintiffs had stated a claim against Blue Cross. However, in light of Plaintiffs'
expert's analysis as to damages, the Court finds that the settlement amount reached
by the parties is fair in light of any success the Plaintiffs may obtain on the merits of
the case. As noted above, although significant discovery has been performed in this
case, the litigation is far from over. The Named-Plaintiffs face significant risk that the
class members could receive nothing or some negligible amount in damages at trial
or on appeal. The Court finds that the likelihood of success on the merits weighs in
favor of approving the settlement.

### 5.    Opinions of Class Counsel and Class Representatives

The Twenty-Six Objectors argue that in circumstances where class counsel and
class representatives receive preferential treatment under the terms of the settlement,
the Court should not give any weight to their opinions. They claim Class Counsel and
the Class Representatives have a conflict of interest due to their heavy financial
incentive to push for the proposed settlement.

The Named-Plaintiffs and their counsel argue that as noted previously, counsel
include leaders in complex class action litigation, particularly in the field of antitrust.
They have considered voluminous discovery, expert analysis and engaged in motion
practice before reaching the settlement. The Named-Plaintiffs claim they have
participated in the case for years and they include all segments of the Settlement

Class, including individual purchasers, institutional payors, purchasers in each of the Categories 1, 2 and 3.

"The judgment of the parties' counsel that the settlement is in the best interest of the settling parties is entitled to significant weight." *IUE-CWA v. Gen. Motors Corp.,* 238 F.R.D. 583, 597 (E.D. Mich. 2006). Courts should defer to the judgment of experienced counsel who have evaluated the strength of the proofs. *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983).

Class Counsel and the Named-Plaintiffs in this action all support the settlement in this case. Deference is given to their opinions because they have had the opportunity to review discovery and an opinion by an expert in the evaluation of the case. Although the Objectors argue that Class Counsel and the Class Representatives have a conflict of interest due to their heavy financial incentive to push for the proposed settlement, the Court must weigh this factor significantly in their favor. The Objectors have not overcome this burden in light of the discovery taken in this case and the expert analysis reviewed by Class Counsel and Named-Plaintiffs.

### 6.    Reaction of Absent Class Members

The Twenty-Six Objectors argue that Aetna's parallel lawsuit against Blue Cross provides significant evidence of the inadequacy of the proposed settlement. Aetna alleges it suffered over $600 million in damages, and with the trebled damages,

Aetna claims damages over $2 billion.  The Twenty-Six Objectors argue that the aggregate damages in this class action exceed the individual damages sought by Aetna.

The Named-Plaintiffs argue that as to Aetna's estimate of damages, such estimate is based on lost profits for Aetna's sales in the market for commercial group health insurance and diminution of business value, not overcharges for purchases of hospital services attributable to Blue Cross' conduct.  In this case, Named-Plaintiffs only sought *overcharges* in the sale of hospital services, *not total payments* for hospital services paid by class members.

The Named-Plaintiffs and Counsel assert that more than 26,000 class members had filed claims as of October 17, 2014, including the largest purchasers of hospital services in Michigan.  They claim that only 1,518 potential class members opted out, 0.02% of the class and 0.05% of those directly notified.  Out of this number, 179 requests were filed by Aetna entities, who have filed a separate lawsuit in this District. They cite cases where courts approved class action settlements with a far higher opt rate such as 0.55% in *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) and 0.4% in *Garner v. State Farm Mut. Auto. Ins.*, No. 08-cv-1365, 2010 WL 1687832, at *15 (N.D. Cal. Apr. 22, 2010).  They also argue that there were only four objections filed, representing 32 class members, one of which was later withdrawn.

29

They claim that the low number of objections favors approval of the settlement. *See, D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001)(The small number of objections weighed in favor of settlement where 27,883 notices were sent and 18 objections received.).

Based on the opt out rate at 0.02% of the class and 0.05% of those directly notified, and the few objections filed against the settlement, the Named-Plaintiffs have shown that the opt-out rate the factor as to the reaction of absent class members weighs in favor of settlement.

### 7.    The Public Interest

The Twenty-Six Objectors assert that nearly every member of the public is a class member, therefore the interests of the public are best analyzed as part of assessing the reasonableness of the settlement to the class.

The Named-Plaintiffs argue that the public interest in this case is to settle a complex litigation and class action and to conserve judicial resources. They claim that in this case, 169 depositions have been taken, including depositions of over 100 third parties (employees from dozens of hospitals), and that having a trial in this case would burden the court and place a burden on Michigan healthcare providers.

There is a strong public interest in encouraging settlement of complex litigation and class action suits because such suits are "notoriously difficult and unpredictable

and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 530 (E.D. Mich. 2003)(quoting *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). The public interest the Objectors raise is essentially a numerosity issue, which weighs in favor of a class action settlement. The public interest is strong to settle complex class action cases, such as this case. If the matter was to move forward to class action litigation, dispositive motion practice and trial, given the number of members in the class, the time to resolve this matter would be lengthy. The number of witnesses, including those in the Michigan healthcare system involved, would burden those systems. There is no guarantee at trial that the matter would be resolved in favor of class members. The public interest in settling complex class action litigation weighs in favor of settlement.

### 8. Preferential Treatment

The Twenty-Six Objectors argue that based on the Sixth Circuit decision in *Greenberg*, incentive payments to the named-Plaintiffs and Class Counsel are a disincentive for the class members to care about the adequacy of relief afforded by unnamed class members and instead encourages the class representatives to compromise the interest of the class for their personal gain. Such inequities in treatment, they argue, make a settlement unfair.

The Named-Plaintiffs assert that the incentive payments to the Named-Plaintiffs

31

are allowed and encouraged to reward their efforts in litigating the case on behalf of the class. The incentives are proportional to the time and resources each Named-Plaintiff devoted to the case. They argue that the attorneys' fees are not dependent on any award, but are subject to the Court's approval. As to absent class members, the Named-Plaintiffs argue that the settlement on their behalf is not "perfunctory." The settlement calls for a recovery of over 25 percent of the $118 million they claimed are the estimated damages in this case, which, they argue is not "perfunctory" in light of the risks, burdens and delay of continued litigation. They claim that there is no preferential treatment in favor of the Named-Plaintiffs and Class Counsel.

Courts have stressed that incentive awards are the efficient ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class. *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Depending on the circumstances, incentive awards are appropriate. *Id.* at 897-98. The Named-Plaintiffs in this case have been involved since the filing of all three consolidated cases. They have been involved in extensive discovery and any award to class representatives is proportioned to the time and effort each representative performed in this action. As to absent class members, their awards are not "perfunctory" in that the settlement is over 25 percent of the $118 million in estimated damages. The attorneys' fees requested are not contingent upon any award, but are

32

subject to the court's approval.  The Court finds that the settlement before the Court does not give preferential treatment to the Named-Plaintiffs, other than the incentives which are reasonable in light of their involvement in the case.  The Court also finds that the relief to unnamed class members is not illusory or perfunctory.  Because the settlement does not give preferential treatment to Named-Plaintiffs or perfunctory relief to unnamed class members, the Court approves the settlement in this case.

### 9.    Plan of Allocation

In addition to the above-stated factors, the Court must also determine whether the method of distributing the settlement fund is "fair and reasonable."  *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 534 (E.D. Ky. 2010).

The Named-Plaintiffs in this case have shown that an expert has analyzed the damages in this case and the effect of the MFNs on the damages.  The Plan of Allocation categorizes different claims by placing them in three categories: 23 provider agreements for which damages were able to be measured (Category 1); purchases at hospitals with an MFN agreement, but for which the plaintiff has no reliable evidence of harm or evidence of only de minimus damages (Category 2); and purchases were made when no MFN agreement was in effect (Category 3).  Category 1 is allocated to receive 78 percent of the Net Settlement Fund, Category 2 will receive 20 percent of the Net Settlement Fund, and Category 3 will receive 2 percent

33

of the Net Settlement Fund.  The Plan of Allocation is structured where the stronger claims receive more than the other claims where damages are less.  Any payments in Category 3 which are too small to distribute will instead be made to the non-profit organization Free Clinics of Michigan, a charity providing free health services throughout Michigan.  This non-profit was agreed to by the parties.

### 10.    Conclusion/Summary

Having reviewed and heard the Objections and arguments by the parties and having weighed the factors set forth above, the Court finds that the Settlement submitted to the Court is fair, reasonable and adequate and that the Plan of Allocation is also fair, reasonable and adequate.  The Court approves the Settlement and the Plan of Allocation.  The Objections are overruled for the reasons set forth above.

## IV.   ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS

### A.    Attorneys' Fees and Expenses Standard of Review

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action upon motion under Fed. R. Civ. P. 54(d)(2) and 23(h). The court engages in a two-part analysis when assessing the reasonableness of a fee petition.  *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007).  First, the court determines the method of calculating the attorneys' fees–either the percentage of the fund approach or the lodestar method.  *Id.*; *Van Horn v.*

34

*Nationwide Prop. and Cas. Inc. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). The court has the discretion to select the appropriate method for calculating attorneys fees "in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513, 516 (6th Cir. 1993). In common fund cases, the award of attorneys' fees need only "be reasonable under the circumstances." *Id.* Second, the court must then analyze and weigh the six factors described in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974). *Id.*

## B.   Percentage of the Fund Approach

Class Counsel asserts that the Court should award attorneys' fees using the percentage of the fund approach at one-third of the fund amount. Class Counsel argues that this Circuit approves and prefers the percentage of the fund approach in awarding attorneys' fees because it eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and fully aligns the interests of Class Counsel and the Class. *See, e.g., Rawlings,* 9 F.3d at 515. Class Counsel notes that the requested fee is $5.5 million less than their actual fees based on the lodestar approach. Courts in this District have approved attorneys' fees in antitrust class actions anywhere from a 30% to one-third ratio of the common fund. *See, In re Packaged Ice Antitrust Litig.*, 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich.

35

Dec. 13, 2011); *Kogan v. AIMCO Fox Chase, L.P.,* 193 F.R.D. 496, 503 (E.D. Mich. 2000).  Courts have noted that the range of reasonableness in common fund cases is from 20 to 50 percent of the common fund.  *See, In re Telectronics Pacing Sys., Inc., Accufix Atrial "J" Leads Prods. Liab. Litig.,* 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001); *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986).

Class Counsel claims that Co-Lead Counsel coordinated the efforts of all Plaintiffs' Counsel to maximize efficiency, minimize duplication of effort, and minimize any unnecessary or duplicative billing.  Class Counsel asserts the time submissions were reviewed to ensure that no person submitted time for unauthorized work.

As noted previously, this action is a complex antitrust class action.  Class Counsel submitted declarations of the various attorneys who participated in this case setting forth their attorneys' fees and expenses incurred.  Based on the submission of Class Counsel and after review of the Objections submitted, the Court finds that the percentage of the fund method is the proper measure to award attorneys' fees in this case rather than the lodestar method.  The percentage of the fund method eliminates arguments regarding the reasonableness of rates and hours incurred by the numerous counsel involved in this case and fully aligns with the interest of the Class.  *Rawlings,*

9 F.3d at 515.

The Court further finds that the requested one-third of the fund percentage at $9,996,667.00 is reasonable in light of the time and resources expended by Class Counsel in this case. Taking Class Counsel's submissions regarding the fees incurred at $15,497,960.25 under the lodestar method, the one-third ratio awards Class Counsel more than $5 million *less* if the lodestar method was instead used in this case. Even if 10% of the lodestar amount was decreased, Class Counsel's fees under the lodestar method would still be higher than the one-third amount requested by Class Counsel. The Court finds that Class Counsel properly supported the request to award one-third of the common fund as attorneys' fees.

### C.   *Ramey* Factors

The Court must also review the requested fees and weigh the factors set forth in *Ramey*: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis [the lodestar cross-check]; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey*, 508 F.2d at 1194-97. Based on the Class Counsel submissions and reviewing the Objections to the requested fees, the Court finds that each of these factors weighs

37

in favor of awarding the requested attorneys' fees.

The first factor, the value of the benefit to the Class, is that the Settlement provides cash payment of $29.99 million to the Class Members. As previously noted, this amount represents 25% of the overcharges the Class Members paid as estimated by Plaintiffs' expert. Courts have approved settlements in class action antitrust settlements anywhere between 5.35% to 28% of estimated damages in a complex antitrust class actions. *See, In re Linerboard,* 2004 WL 1221350, at *4. This amount weights in favor of approving the fee award in light of the risks of the litigation as previously addressed.

Regarding the second factor, the society's stake in rewarding attorneys as an incentive, the Court finds this weighs in favor of approving the fee request. A court is tasked with ensuring that counsel are fairly compensated for the work performed and the result achieved. *Rawlings,* 9 F.3d at 516. "Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions ... benefits society." *In re Cardizem*, 218 F.R.D. at 534. In this case, Class Counsel's work resulted in a settlement for the Class, which in light of the risk of the litigation the attorneys' fees requested are reasonable. As noted above, courts have held that the public interest is strong in encouraging settlement of complex litigation and class action suits because they are difficult and unpredictable. The settlement conserves judicial resources and

compensates class members.

The third factor, whether the services were undertaken on a contingent fee basis, weighs in favor of awarding the attorneys' fees requested. Contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery. *In re Telectronics,* 137 F. Supp. 2d at 1043. Plaintiff's Counsel prosecuted the cases on a contingent basis. They are aware that for a variety of reasons, including information revealed during discovery, court rulings on motions, and findings by a jury, Plaintiff's Counsel could recover no fee for prosecuting the cases. The nature of the contingent fee arrangement between Plaintiffs and their Counsel weighs in favor of the fees requested by Class Counsel.

As to the fourth factor, the value of the services on an hourly basis [the lodestar cross-check], as noted above, if the Court were to award the attorneys' fees based on the lodestar method, the fees would exceed by more than $5 million the requested one-third ratio. The Court finds that the requested one-third attorneys' fees amount is reasonable.

The Court has noted, and there is no real dispute that this antitrust litigation is complex. This fifth factor, the complexity of the litigation, weighs in favor of awarding the requested attorneys' fees.

The sixth factor, the professional skill and standing of counsel on both sides,

weigh in favor of awarding the attorneys' fees requested.  "The ability of Co-Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested."  *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.,* 248 F.R.D. 483, 504 (E.D. Mich. 2008).  The Court has observed counsel on all sides of this litigation.  There is no doubt that Blue Cross is a formidable opponent.  Blue Cross' counsel have zealously defended Blue Cross' position in this litigation and the related litigation before the Court.  Class Counsel and the other Plaintiffs' Counsel in this case have also vigorously prosecuted the case on behalf of the Class.  Class Counsel have submitted the lead counsels' backgrounds which indicate that each counsel have excellent standing amongst their peers and all are well-experienced in this area of litigation.

Weighing the *Ramey* factors set forth by the Sixth Circuit, for the reasons set forth above, they requested attorneys' fees of one-third of the Settlement Fund is fair and reasonable and is so awarded.

### D.    Expenses

Class Counsel asserts that they have incurred litigation expenses in the aggregate amount of $3,499,893.02 for the benefit of the Settlement Class.  They claim that a significant component of the expenses is the cost of the expert work performed on behalf of the Settlement Class.  They retained highly qualified economic

experts to analyze the impact of Blue Cross' MFN clauses on prices of acute care hospital healthcare services in Michigan, and to address other issues such as market definition and market power.  Class Counsel claims the experts' work required complex statistical analysis of extraordinarily large amounts of data.  They assert that the notice sent to the Class indicated Class Counsel would seek up to $3,500,000 in attorneys' fees.  The costs incurred by Class Counsel is in line with the notice sent to the Class.  Class Counsel indicated they will not seek reimbursement of certain expenses, including approximately $146,000 in expenses related to sending notice to an additional 500,000 names.  Class Counsel asserts that they incurred the millions of dollars of expenses in this case, without any guarantee of recovery.  Class Counsel claims the out of pocket expenses support their commitment to this case, even with the substantial risks inherent in this complex class action litigation.

Class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses.  *In re Cardizem,* 218 F.R.D. at 535.  The type of expenses compensable are the type typically billed by attorneys to paying clients in the marketplace.  *Id.*  Courts have recognized that the assistance of qualified experts is necessary and a costly expense

41

in antitrust litigation.  *See, B&H Med., L.L.C. v. ABP Admin., Inc.,* No. 02-73615, 2006 WL 123785, at *3 (E.D. Mich. Jan. 13, 2006).

Reviewing the expenses incurred by Class Counsel set forth in their declarations and after considering the Objections, the Court finds that the requested amount incurred by counsel out-of-pocket is reasonable, in light of the time, resources, expert analysis and complexity of this class action case.  The amount requested is substantial at $3,499,893.02.  However, this amount includes complicated analysis by experts as to how the MFN clauses impacted healthcare services in Michigan using extraordinarily large amount of data.  Class Counsel have shown that the experts provided significant services on behalf of the Settlement Class resulting in the settlement between the parties.

### E.    Incentive Awards

Class Counsel request $165,000 in incentive awards for each Plaintiff organization and individual Plaintiffs as follows:

- Michigan Regional Council of Carpenters Employee benefits Fund - $45,000;
- Abatement Workers National Health and Welfare Fund - $35,000;
- Monroe Plumbers & Pipefitter Local 671 Welfare Fund - $35,000
- The Shane Group, Inc. - $20,000
- Susan Baynard - $10,000
- Anne Patrice Noah - $10,000

42

- Bradley Veneberg - $5,000
- Scott Steele - $5,000

The Notice to the Settlement Class provided incentive awards for the class representatives at $240,000, which is .8% of the Settlement Fund. However, Class Counsel is only seeking a total of $165,000 in incentive awards, which is at 0.55% of the Settlement Fund, lower than the amount in the Notice.

The Sixth Circuit has noted that incentive awards are typically awarded to class representatives for their extensive involvement with a lawsuit. *Hadix*, 322 F.3d at 897. Awards encourage members of a class to become class representatives and reward their efforts taken on behalf of the class. *Id.* Payment of incentive awards to class representatives is a reasonable use of settlement funds. *Moulton v. U.S. Steel Corp.,* 581 F.3d 344, 351 (6th Cir. 2009). Courts have approved incentive awards of up to $15,000 for individual plaintiff class representatives for providing information to class counsel, receiving and approving pleadings, assisting in discovery and participating in settlement discussions. *See, In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006). Larger incentive awards than those to individual plaintiffs have been approved for organizational class representatives because of the greater burden in the course of litigation by producing greater numbers of documents and participating in Rule 30(b)(6) depositions. *See, In*

43

*re Vitamin C Antitrust Litig.*, No. 06-MD-1738, 2012 WL 5289514, at *11 (E.D. N.Y. Oct. 23, 2012).

After reviewing the request for incentive awards and the Objections thereto, the Court finds that awards requested are reasonable. The three Union self-funded organizations produced thousands of documents during discovery. The organizations shared their knowledge of the industry with Class Counsel and assisted in drafting and responding to discovery requests. The organizations' staff and agents spent time and resources during the litigation resulting in the settlement on behalf of the Class. The Shane Group was an initial filer of the lawsuit in October 2010. Its representatives worked with Class Counsel throughout the litigation locating and producing documents, responding to discovery requests and reviewing filings in the case. Based on these four groups' participation in the litigation resulting in the settlement on behalf of the Class, the incentive awards requested for each are reasonable.

As to the individual awards for Baynard and Noah, according to Class Counsel, they provided important and indispensable service to the Settlement Class. They searched their personal records multiple times to locate documents responsive to Blue Cross' discovery requests and obtained documents in the custody of third parties. Both testified via depositions, which required them to travel to Detroit from northern Michigan. The Court finds that the requested incentive awards for Noah and Baynard

44

are reasonable in light of their participation during the discovery phase of the litigation. Their participation benefitted the Class.

The individuals Veneberg and Steele filed their complaints in October 2010 and January 2011, respectively. They both participated in discovery by locating and producing documents. The Court finds that their participation in the litigation supports the requested incentive awards.

## V.    SANCTIONS

Objector Christopher Andrews field a Motion for Sanctions against Class Counsel for their filings related to their requested fees and approval of the settlement. Class Counsel responds that Andrews has not provided any basis for sanctioning Class Counsel. In turn, Class Counsel filed a Motion for Show Cause relating to sanctionable conduct by Andrews. Andrews responds that Class Counsel are the ones engaging in sanctionable conduct. Since the Fairness Hearing in this matter, Andrews has filed supplemental documents with the Court. Class Counsel has also filed supplemental documents with the Court.

Rule 11 permits sanctions if "a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Merritt v. Int'l*

*Ass'n of Mach. and Aerospace Workers,* 613 F.3d 609, 626 (6th Cir. 2010). Rule 11 sanctions are warranted if the attorney's conduct was unreasonable under the circumstances. *Andretti v. Borla Performance Indus., Inc.,* 426 F.3d 824, 833 (6th Cir. 2005). The grant of sanctions must be reviewed in the context of the litigation history of the action. *Merritt,* 613 F.3d at 627. The central purpose of Rule 11 is to deter baseless filings in the district court. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

As to Class Counsel's actions relating to this case and the responses filed to Andrews' submissions, the Court finds that their submissions have been well grounded in fact and the circumstances, made in good faith and were not filed for any improper purpose, harassment, or delay. Class Counsel's filings have been in accordance with the rules and the Court's orders regarding filings of documents related to the Class Action Settlement and Fairness Hearing.

Regarding Andrews' *pro se* submissions, the Court finds that many of the submissions are not warranted by the law and facts of the case, were not filed in good faith and were filed to harass Class Counsel. Class Counsel claims Andrews' demands for payment of a "ransom," is extortion. Rule 11 requires a *pro se* plaintiff to sign any document filed with the court as certification that the document is not being submitted for an improper purpose and that the documents' legal claims and

46

factual allegations are warranted.  Fed. R. Civ. P. 11(c); *Garrison v. Mich. Dep't of Corr.,* 333 F. App'x 914, 920 (6th Cir. 2009).  The court may impose an appropriate sanction on a party who violates the rule.  *Garrison,* 333 F. App'x at 920.  Sanctions imposed by the court require a finding of fraud or willful disobedience of a court order.  *Id.*  Here, although Andrews has submitted various documents to the Court, the Court finds he has not disobeyed any court order, nor has  Class Counsel alleged Andrews has committed fraud.   Class Counsel only argues that Andrews' communications to Class Counsel amount to "criminal extortion" in that Andrews is attempting to interfere with the Court's authority and proceedings by demanding that filed pleadings be withdrawn and that he be paid an undisclosed sum of money.  The demands by Andrews are just that, demands which the Court need not consider.

The Court is aware that other courts have noted that Andrews is known to be a "professional objector who has extorted additional fees from counsel in other cases," but this Court will not at this time sanction his conduct of filing documents with the Court.  *See, In re Nutella Marketing and Sales Practices Litig.,* No. 11-cv-01086 (D.N.J.)(7/9/12 Fairness Hearing Tr., Ex. C to Doc. No. 201).  As to Class Counsel's claim that Andrews has engaged in criminal extortion, Class Counsel is free to pursue that claim with the appropriate authorities.

## VI.    CONCLUSION

47

For the reasons set forth above, the Court finds that the Settlement and the Plan of Allocation is fair, reasonable and adequate to the interest of the Class Members.

Accordingly,

IT IS ORDERED that the Motion for Attorneys' Fees, Reimbursement of Expenses and Payment of Incentive Awards to Class Representatives **(Doc. No. 155)** is GRANTED.

IT IS FURTHER ORDERED that the Motions to Intervene for the Limited Purpose of Unsealing Records and Adjourning Fairness Hearing **(Doc. Nos. 166, 183, 185, 186, and 192**) are DENIED.

IT IS FURTHER ORDERED that the Motion for Final Approval of Settlement and Plan of Allocation **(Doc. No. 169)** is GRANTED.

IT IS FURTHER ORDERED that the Motion to Strike Sur-Reply of Objector Christopher Andrews **(Doc. No. 177)** is DENIED.

IT IS FURTHER ORDERED that the Motion for Sanctions filed by Christopher Andrews **(Doc. No. 205)** is DENIED.

IT IS FURTHER ORDERED that Class Counsels' Emergency Motion for Show Cause Order Relating to Sanctionable Conduct by Objector Christopher Andrews **(Doc. No. 206)** is DENIED.

                                                                s/Denise Page Hood
                                                               DENISE PAGE HOOD
                                                               United States District Judge

DATED: March 31, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2015, by electronic and/or ordinary mail.

                                                               s/LaShawn R. Saulsberry
                                                               Case Manager