UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THE SHANE GROUP, INC., et al.,

      Plaintiffs,

                                        Case No. 10-CV-14360

v.                                    (Class Action Matter)

                                        HON. DENISE PAGE HOOD

BLUE CROSS BLUE SHIELD OF MICHIGAN,

      Defendant.

_____/


**ORDER REGARDING VARIOUS MOTIONS TO SEAL OR REDACT**

## I.    BACKGROUND:

This matter is on remand from the Sixth Circuit Court of Appeals. *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299 (6th Cir. 2016). The Sixth Circuit ordered that on remand, this Court "must begin the Rule 23(e) process anew." *Id.* at 311. The Sixth Circuit vacated the Court's approval of the settlement and its orders sealing documents in the court record. *Id.*

On June 22, 2012, a Consolidated Class Action Amended Complaint was filed against Defendant Blue Cross Blue Shield of Michigan ("Blue Cross") alleging: Unlawful Agreement in Violation of § 1 of the Sherman Act under the Rule of Reason (Count I); Unlawful Agreements in Violation of Section 2 of the Michigan Antitrust

Reform Act, M.C.L. § 445.772 (Count II).  (Doc. No. 274)  The class action seeks to recover overcharges paid by purchasers of Hospital Healthcare Services directly to hospitals in Michigan that resulted from the anticompetitive acts of Blue Cross.  (Am. Comp., ¶ 1)  Blue Cross is a Michigan nonprofit healthcare corporation headquartered in Detroit, Michigan.  (Am. Comp., ¶ 18)  Blue Cross provides, directly and through its subsidiaries, health insurance and administrative services, including preferred provider organization ("PPO") health insurance products and health maintenance organization ("HMO") health insurance products.  (Am. Comp., ¶ 18)

On remand, the Court held a status conference in this matter.  A Scheduling Order was issued on August 25, 2016 setting dates regarding the sealed matters and setting dates for Plaintiffs' Motion for Preliminary Approval of Class Settlement. (Doc. No. 262)  After Blue Cross conferred with the Third Parties regarding the sealed documents, many of the previously sealed documents have been unsealed by agreement or with no opposition.  (See, Doc. Nos. 266, 273, 274, 275, 276, 277, 278, 279, 280, 298) Motions to remain sealed or redact certain documents were filed by Blue Cross, Spectrum Health Systems ("Spectrum"), The Dow Chemical Company ("Dow") and CIGNA Health and Life Insurance Company ("CIGNA").  Briefs have been filed and a hearing held on the matter.

## II.     MOTIONS TO SEAL OR REDACT

## A.    Ruling by the Sixth Circuit

On appeal, the Sixth Circuit ruled that the standards to seal the Court's records were not met.   *Shane Group*, 825 F.3d at 306.   The standards set forth by the Sixth Circuit are:

> By way of background, there is a stark difference between so-called "protective orders" entered pursuant to the discovery provisions of Federal Rules of Civil Procedure 26, on the one hand, and orders to seal court records, on the other. Discovery concerns the parties' exchange of information that might or might not be relevant to their case. "Secrecy is fine at the discovery stage, before the material enters the judicial record." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002). Thus, a district court may enter a protective order limiting the use or disclosure of discovery materials upon a mere showing of "good cause[.]"   Fed. R. Civ. P. 26(c)(1). These orders are often blanket in nature, and allow the parties to determine in the first instance whether particular materials fall within the order's protection. The district court entered several such orders here.

> "At the adjudication stage, however, very different considerations apply." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982). The line between these two stages, discovery and adjudicative, is crossed when the parties place material in the court record.   *Baxter*, 297 F.3d at 545. Unlike information merely exchanged between the parties, "[t]he public has a strong interest in obtaining the information contained in the court record." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983). That interest rests on several grounds.  Sometimes, the public's interest is focused primarily upon the litigation's result—whether a right does or does not exist, or

a statute is or is not constitutional. In other cases—including "antitrust" cases, *id.* at 1179—the public's interest is focused not only on the result, but also on the conduct giving rise to the case. In those cases, "secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Id*. And in any of these cases, the public is entitled to assess for itself the merits of judicial decisions. Thus, "[t]he public has an interest in ascertaining what evidence and records the District Court and this Court have relied upon in reaching our decisions." *Id*. at 1181; *see also, e.g.*, *Baxter*, 297 F.3d at 546.

The courts have long recognized, therefore a "strong presumption in favor of openness" as to court records. *Brown & Williamson*, 710 F.2d at 1179. The burden of overcoming that presumption is borne by the party that seeks to seal them. *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001). The burden is a heavy one: "Only the most compelling reasons can justify non-disclosure of judicial records." *In re Knoxville News–Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983). Moreover, the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access. *See Brown & Williamson*, 710 F.2d at 1179. For example, in class actions—where by definition "some members of the public are also parties to the [case]"—the standards for denying public access to the record "should be applied ... with particular strictness." *Cendant*, 260 F.3d at 194. And even where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason. *See, e.g.*, *Press–Enter. Co. v. Superior Court of California, Riverside Cnty.*, 464 U.S. 501, 509-11, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). The proponent of sealing therefore must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations."

*Baxter*, 297 F.3d at 548.

> In like fashion, a district court that chooses to seal court records must set forth specific findings and conclusions "which justify nondisclosure to the public." *Brown & Williamson*, 710 F.2d at 1176. That is true even if neither party objects to the motion to seal, as apparently neither did in *Brown & Williamson*. (There, our court "reach[ed] the question" of the district court's seal "on our own motion." *Id.*) As our decision there illustrates, a court's obligation to explain the basis for sealing court records is independent of whether anyone objects to it. And a court's failure to set forth those reasons—as to why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary—is itself grounds to vacate an order to seal. *Id.*; *see also United States v. Kravetz*, 706 F.3d 47, 60 (1st Cir. 2013) ("Appellate courts have on several occasions emphasized that upon entering orders which inhibit the flow of information between courts and the public, district courts should articulate on the record their reasons for doing so"); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) (reversing because "[w]e find no evidence in the record that the district court balanced the competing interests prior to sealing the final order").

*Shane Group,* 825 F.3d at 305–06. A court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody. *Id.* at 307. The standards for protective orders and sealing court records must not be conflated. *Id.* Financial and negotiating information, especially in the instant case where a practice has since been outlawed by the Michigan Legislature, is not entitled to protection as

a legitimate trade secret.  *Id.* at 308.  As to the Third Parties in the instant case, the

Sixth Circuit noted,

> Here, as to the third-party hospitals, there is no
> statutory or regulatory privilege that protects their
> information from disclosure, and the particulars of years-
> ago negotiations are unlikely to amount to a trade secret.
> Moreover, the conduct of the hospitals that agreed to MFN
> clauses with Blue Cross is intricately bound up with the
> subject of the suit; the public has a keen interest in that
> conduct; and the hospitals have a lesser privacy interest
> than did the bank customers. Finally, what little information
> there is in the record from third-party insurers is for the
> most part highly generalized (as in the expert report) or
> consists of the insurers' complaints about Blue Cross's
> MFN practices.  In any event, the parties or the third parties
> themselves remain free on remand to demonstrate—on a
> document-by-document, line-by-line basis—that specific
> information in the court record meets the demanding
> requirements for a seal.

*Id.* at 309.

In *Brown & Williamson Tobacco,* the Sixth Circuit noted that the common law,

content-based exceptions to the right of access to court proceeding were developed to

protect competing interests.  710 F.2d at 1179.  In addition to a party's right to a fair

trial, the competing interests include "certain privacy rights of participants or third

parties, trade secrets and national security."  *Id.*  Trade secrets are "a recognized

exception to the right of public access to judicial records," where the documents at

issue were not trade secrets because the movant's competitors already had access to

the documents.  *Id.* at 1180.  A movant seeking to seal court records is required to show that the information in question constitutes trade secrets, which would, if revealed, cause the movant to suffer a competitive disadvantage.  *Cinpres Gas Injection Ltd. v. Volkswagen Group of America, Inc.,* 2013 WL 11319319 at *3 (E.D. Mich. Feb. 14, 2013).  Motions to seal have been granted as to trade secrets, defined as "information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it" or to prevent dissemination of "business information that might harm a litigant's competitive standing."  *Id.* (citing, *Apple, Inc. v. Samsung Elec. Co., Ltd.,* 2012 WL 6115623, at *1 (N.D. Cal. Dec. 10, 2012)).  Motions to seal have been denied where the movants have failed to demonstrate that the information or documents in question constituted trade secrets which would, if made public, give the movants' competitors an unfair business advantage" or that the competitors already had access to the information.  *Id.*

Based on the above-cited law, the movants in this matter must overcome "the strong presumption in favor of openness," and persuade the Court to take the "drastic step" of sealing filed documents.  *Brown & Williamson Tobacco,* 710 F.2d at 1179; *Cinpres Gas,* 2013 WL 11319319 at *4.  The Court addresses each movant's motion to seal below, balancing the competing interests noted above.

**B.     Blue Cross' Motion to Seal, to Redact and Keep Under Seal Limited Information (#267)**

Blue Cross seeks redactions to portions of 12 exhibits (out of 153 exhibits) to four briefs Blue Cross previously filed under seal.  It appears that Blue Cross followed the Sixth Circuit's requirement that a movant seeking to seal or redact documents must review the documents line by line.  The Class Plaintiffs filed a response to this motion.

**1.     Letters from Joseph Aoun filed in Blue Cross' opposition to Aoun's Motion to Quash Deposition Subpoena (Filed in Doc. #110, Ex. A)**

In its opposition to Joseph Aoun's Motion to Quash Deposition Subpoena, Blue Cross attached letters from Aoun from 2006-07 to show that Aoun's deposition would be relevant.  The Court did not rule on the motion since the parties agreed to settle the case.  Blue Cross argues that the information to be redacted is unrelated to, does not mention an MFN and is not necessary for the public to understand the MFNs and their effect and would not aid absent class members in assessing the strength of the case or evaluating the fairness of the proposed settlement.  The proposed redacted information Blue Cross claims reveals information about specific rates that Blue Cross paid, and the margins that Blue Cross was willing to agree to pay at a particular hospital.  Blue Cross asserts that this type of information could be used by competitors and other

hospitals to Blue Cross' disadvantage in future negotiations. Blue Cross claims that the information has not been disclosed to other hospitals, other than their negotiating agents such as Aoun. Blue Cross claims that insurer rate information is a trade secret. *St. Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys. Ltd.,* 2015 WL 632311 (D. Idaho Feb. 13, 2015); *Queen's Mmed. Ctr. V. Kaiser Foundation Health Plan*, 2014 WL 1234506 (D. Haw. Mar. 24, 2014); *F.T.C. v. OSF Healthcare Sys.,* 2012 WL 1144620 (N.D. Ill. Apr. 5, 2012).

Mark Johnson, Blue Cross' Vice President of Provider Contracting Support, states in his affidavit that Blue Cross makes a good-faith effort to maintain the confidentiality of its contract terms and reimbursement rates at specific hospitals. If the information about Blue Cross' individually negotiated hospital rates were to become public, or the information about margins that a hospital is paid, the information could be used by other hospitals in an effort to raise their own reimbursement rates. Johnson asserts that disclosure of this information to the public would likely result in competitive harm to Blue Cross. (Johnson Aff., ¶¶ 6, 8-11)

Class Plaintiffs argue the information is a decade old and that the Sixth Circuit noted that "the particulars of years-ago negotiations are unlikely to amount to a trade secret." *Shane Group*, 825 F.2d at 308. Class Plaintiffs also argue that Blue Cross has not taken reasonable steps to keep the information confidential. The emails show

negotiations between Blue Cross and two hospitals. There is no indication that the email discussion was to be kept confidential. Class Plaintiffs assert that Blue Cross has not met its burden that the information is confidential. Class Plaintiffs do not dispute that the rate information is considered a trade secret.

This Court's review of the Aoun communications indicate that the actual rate information is a trade secret. Although the negotiations appear to be between Blue Cross and a representative from certain hospitals, the rate information and margin rate were not revealed to Blue Cross' competitors. Blue Cross has met the requirement that it has kept the rate information and margin rate confidential from its competitors. As to harm Blue Cross may suffer from the public disclosure of the rate information, Blue Cross supported the harm it would suffer by submitting Johnson's affidavit. As noted above, Johnson asserted that the information about rates and the margin would likely result in competitive harm to Blue Cross because hospitals may now seek a raise in their reimbursement rate and Blue Cross' competitors would now have knowledge of the rate and margin information. The Court agrees that the Sixth Circuit noted the particulars of years-ago negotiations are unlikely to amount to a trade secret, but the Sixth Circuit referred to this issue as to the *third-party hospitals'* information, not to Blue Cross' information and the harm Blue Cross may suffer from disclosure of this information to Blue Cross' competitors. A redaction of this specific information as

proposed by Blue Cross, does not take away from the gist of the discussions between Aoun and Blue Cross representatives. Absent class members and the public are still able to review the documents. Blue Cross has shown a compelling reason that specific portions of the Aoun communications should be redacted and the redaction is narrowly tailored to serve Blue Cross' interest in redacting its rate and margin information trade secret from the public and its competitors. Blue Cross may file the redacted version of the Aoun communications.

### 2. Plaintiffs' Motion for Class Certification (Filed in Doc. #133)

Blue Cross seeks to redact eight of the 90 exhibits which were attached to Class Plaintiffs' previously-filed Motion for Class Certification. Blue Cross asserts these redactions are limited to irrelevant information unrelated to MFNS. Blue Cross claims these redactions will protect Blue Cross' competitively-sensitive information, including pricing information and three hospital agreements which describes Blue Cross' Model Reimbursement Methodology ("MRM"). Blue Cross claims that as to the hospital agreements that isolated rates of certain hospitals do not add to the class members' ability to evaluate the settlement since the analysis of Dr. Jeffrey Leitzinger was based on aggregated rates and claims information across multiple hospitals. Blue Cross asserts that the rates in these agreements are still of value to current rates for which trade secret protection is warranted. Johnson's affidavit asserts that although

the rates discussed in the documents are dated 2006 to 2009, the rates remain commercially sensitive because the rates do not change frequently and even if the rates are not currently in effect, the rates continue to be relevant for current and future Blue Cross negotiations with the hospitals. (Johnson Aff., ¶ 12)

Class Plaintiffs argue that the contracts are old and that Blue Cross does not assert that the contracts are still in effect. Class Plaintiffs further argue that although the MFN clauses are not redacted in the contracts, other contract terms are relevant to the case. Class Plaintiffs claim that the rate information, in conjunction with the MFN clauses assist some class members in understanding the Motion for Class Certification who are then able to form an opinion of the reasonableness of the settlement.

This Court's review of the documents Blue Cross seeks to redact filed as exhibits in Class Plaintiffs' previously-filed Motion for Class Certification (Doc. No. 133; Exs. A-2 to A-9 of Johnson's Affidavit) shows that the redacted portions involve Blue Cross' rate information and reimbursement methodology which are trade secrets and have not been revealed to Blue Cross' competitors. However, certain proposed redaction the Court finds will not harm Blue Cross' competitive edge. The following exhibits (attached to the Johnson Affidavit) should not be redacted:

> 1) Ex. A-3 (Ex. U to Doc. #133, XI. Other Provision, ¶¶ D (Notification fo Charge Increases) and E (Administrative Price Adjustments));

2) Ex. A-4 (Ex. V to Doc. #133, ¶¶ 15-23 (Presumably part of Article I, Definitions), Article II (Hospital Responsibilities), ¶¶ 4-7, and Article VII (Reporting Information).

As argued by the Class Plaintiffs, although the rate information may be older, Blue Cross supported its claim that these rates do not change frequently from year to year and are relevant to current and future rate negotiations. Blue Cross has shown a compelling reason that specific portions of the exhibits to Plaintiffs' Motion for Class Certification should be redacted and the redaction be narrowly tailored to serve Blue Cross' interest in redacting its rate, margin and reimbursement methodology information trade secret from the public and its competitors.

### 3. Expert Report of Professor David S. Sibley Attached to Filings

Blue Cross seeks to redact limited information from one of three expert reports that were previously filed under seal–that of Professor David S. Sibley (Ex. A-9 to the Johnson Affidavit). Blue Cross filed a response previously opposing the Class Plaintiffs' Motion for Class Certification. Blue Cross asserts that it seeks to redact information from two paragraphs and six footnotes of the Sibley Report which reveal components of Blue Cross' hospital rates, negotiation strategies and reimbursement rates. Blue Cross claims that the redactions do not relate to an MFN.

Class Plaintiffs respond that the Sibley Report was previously prepared to

support Blue Cross' previous opposition to Class Certification and could inform class members of the risks inherent in continued litigation.

The Court's review of the proposed redaction of the Sibley Report shows that the following footnotes should NOT be redacted because they do not reveal any trade secrets: 1) footnote 51; 2) footnote 52; 3) footnote 101; and 4) footnote 184.

However, footnotes 32 and 57 refer to rates and reimbursement methodology information which are trade secrets. The proposed redactions in paragraphs 37 and 38 also refer to hospital, margin and reimbursement rates, which are also trade secrets. Blue Cross has not disclosed this information to the public or its competitors. Blue Cross has shown a compelling reason that these specific portions of the Sidley Report should be redacted. The redaction is narrowly tailored to serve Blue Cross' interest in sealing its rate, margin and reimbursement methodology information trade secret from the public and its competitors.

**4.      Blue Cross' Response to Plaintiffs' Class Certification Motion**

Blue Cross also seeks to redact another exhibit to its response to Plaintiffs' Motion for Class Certification (previously-filed in Doc. No. 139), Appendix 30, which is a three-page excerpt from the Participating Hospital Agreement covering Peer Group 5 model reimbursement method. Blue Cross claims that this PHA in Appendix 30 is a current PHA.

14

Class Plaintiffs argue that this is an excerpt from Exhibit V, shown in Exhibit A-4 to Johnson's affidavit and for the same reasons argued above, this exhibit should not be redacted.

The Court's review of the proposed redaction of Appendix 30, attached as Exhibit A-10 to the Johnson Affidavit, shows that this information includes the reimbursement rate and methodology used by Blue Cross and is trade secret information. As asserted by Johnson in his affidavit, the model reimbursement method is currently used by Blue Cross today and is among the most sensitive documents government Blue Cross' hospital contracting practices. (Johnson Aff., ¶ 16) Blue Cross has not disclosed this information to the public or its competitors. Blue Cross has shown a compelling reason that the model reimbursement is currently used by Blue Cross and should be redacted. The Court finds that the redaction is narrowly tailored to serve Blue Cross' interest in protecting its model reimbursement methodology information from the public and its competitors.

**5. Blue Cross' Motion to Exclude Leitzinger Expert Testimony (Previously filed in Doc. No. 140)**

Blue Cross seeks to redact from two out of the 33 exhibits it filed in support of its motion to exclude the expert opinion in support of class certification by Dr. Leitzinger. The Sibley Report has been discussed above. The second exhibit at issue

is Appendix 17 found in the previously-filed Doc. No. 40.  Appendix 17 is an email chain which contains internal Blue Cross discussions regarding a request from Marquette Hospital for a rate increase.  Blue Cross asserts that this request is unrelated to the MFNs.  Blue Cross proposes to redact material that reflects Blue Cross' negotiating strategy when responding to the hospital's request for additional reimbursements.

The Class Plaintiffs respond that any negotiations with hospitals during the time Blue Cross was pushing for the MFNs are inextricably intertwined with the issue of MFNs.  The question of how much of a reimbursement increase some hospitals may have gained in the absence of an MFN could be relevant to Plaintiffs' damages calculation.  This information the Class Plaintiffs assert is relevant to the class members' evaluation of the benefits of the settlement bargain.

The Court's review of Appendix 17 previously filed in Doc. No. 140 shows that the proposed redacted information does not reveal any hospital or reimbursement rates Blue Cross may have given to Marquette Hospital.  The information shows how much Marquette Hospital is over the current model used at that time.  The email discusses how Marquette Hospital can narrow the gap in reimbursement differences and the required funding requirements for the initiatives.  The email then sets forth options to Marquette Hospital's request.  The Court finds this information may be relevant to the

calculations of damages as noted by Plaintiffs with or without the MFNs. This information may also assist the class members in evaluating whether the proposed settlement is reasonable and the risks involved to opt out of the settlement. Blue Cross has not met its burden of showing that the information it seeks to redact in Appendix 17, attached to Johnson's Affidavit as Exhibit A-11, is trade secret information. Blue Cross must file Appendix 17 without redaction.

### 6. Summary of Blue Cross' Motion

After weighing the competing interests in determining whether to redact certain documents, the Court grants in part and denies in part, as more fully set forth above, Blue Cross' Motion to Redact and Keep Under Seal Limited Information.

### C. Spectrum Health Systems' Motion to Preserve Exhibits Under Seal (#282, 10/25/16)

Third-Party Spectrum Health ("Spectrum") seeks to preserve exhibits under seal based on attorney-client privilege and sensitive private information regarding the legal advice between Spectrum and its outside counsel, Joseph Aoun. Blue Cross filed a response indicating it did not oppose Spectrum's motion. The Class Plaintiffs did not file a response addressing Spectrum's motion.

The Sixth Circuit has noted that "the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the

presumption of access." *Shane Group,* 825 F.3d at 305. "In civil litigation, only trade secrets, information covered by a recognized privilege (such as attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault)" is typically enough to overcome the presumption of access. *Rudd Equipment Co., Inc., v. John Deere Construction & Forestry Co.,* 834 F.3d 589 (6th Cir. 2016) (quoting, *Baxter Int'l, Inc. v. Abbott Laboratories,* 297 F.3d 544, 546 (7th Cir. 2002)).

The burden of establishing the existence of the privilege rests with the person asserting it. *In re Grand Jury Investigation No. 83-2-35,* 723 F.2d 447, 450 (6th Cir. 1983). The "attorney/client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties." *In re Grand Jury Proceedings October 12, 1995,* 78 F.3d 251, 254 (6th Cir. 1996). A client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure. *United States v. Dakota,* 197 F.3d 821, 825 (6th Cir. 1999). In Michigan, "it is not within the power of the court or any party to waive the privilege for [the client]." *Agee v. Williams,* 17 Mich. App. 417 (1969).

Spectrum seeks to exclude documents Blue Cross attached to its Response to a Motion to Quash deposition of Joseph Aoun, Spectrum's counsel (previously filed on Doc. No. 110). The documents identified were labeled SCH-DOJ-012299, SCH-

DOJ-012300, SCH-DOJ-012379, SCH-DOJ-012380 and SCH-DOJ-015174.
Spectrum wrote a letter to the DOJ and Blue Cross' counsel on December 20, 2012
noting that it had inadvertently produced certain documents that are protected by the
attorney-client privilege, noting the above-identified documents. Spectrum is a non-
party to the pending actions involving Blue Cross and the MFN discount clauses, but
had produced a substantial volume of documents in those actions consenting to the use
of the documents in the various proceedings, subject to protective orders. However,
as to the documents noted above, Spectrum claims these were inadvertently produced.

The Court's review of the documents previously-filed in Doc. No. 110 shows
that these documents are subject to the attorney-client privilege. Spectrum owns the
privilege and it has shown that these documents were inadvertently produced.
Spectrum has not waived its privilege over these documents. None of the parties
object to Spectrum's request that these exhibits remain sealed. The Court finds that
Spectrum has established that it is entitled to the requested relief of continuing to seal
these documents. Spectrum's Motion to Preserve Exhibits Under Seal is granted.

### D. Dow Chemical Company's Motion to Seal/Motion to Redact Certain Information (#284, 10/25/16)

Dow Chemical seeks to keep sealed or redacted, Dow's information contained
in the expert report of Dr. Christopher A. Vellturo. Dow had a limited involvement

in this matter in 2012 when it responded to subpoenas from the U.S. Department of Justice, Aetna, and other parties in this case as part of discovery in the litigation arising from Blue Cross' use of MFN clauses. Dow is self-insured and spends hundreds of millions of dollars per year on healthcare for its employees. Dow acquires many of its network services through competitive bidding process and requests proposals from different network service providers. Dow reviewed the Vellturo report and seeks to retain three of the pages sealed based on confidential, proprietary trade secrets and highly confidential information which Dow claims would commercially harm Dow if made public.

Blue Cross does not oppose Dow's request. The Class Plaintiffs respond that Dow has not established that the information it seeks to protect qualifies as trade secrets or that its privacy interest outweighs the interest of the public in accessing court records. The Class Plaintiffs argue that over fifty nonparties were mentioned in the Vellturo report and that only Dow (and Aetna discussed below) sought redactions of the report. The Class Plaintiffs assert that this shows the vast majority of the other nonparties do not view the type of information in the Vellturo Report as confidential.

The Court has reviewed the paragraphs of the Vellturo Report Dow seeks to keep redacted. Paragraphs 308, 309, 310 and 311 reveal Dow's internal, confidential study regarding possible healthcare costs from different service providers and Dow's

reasons for choosing one provider over another. Pricing information based on Dow's own studies are set forth in these paragraphs. This confidential information shows how Dow makes its decision in providing healthcare service providers to its employees. Dow is self-funded and must view the costs closely when negotiating with various service providers. Dow has shown that this information is confidential and is a trade secret which goes to its ability to negotiate the costs of healthcare and its overall financial strength. Redaction of paragraphs 308, 309, 310 and 311 is narrowly tailored to serve Dow's interest in protecting its confidential information and methodology information as to how it chooses healthcare providers for its employees from the public and its competitors.

As to paragraphs 312 and 313, the Court finds these two paragraphs are relevant to the issue regarding MidMichigan's dealings with Blue Cross and Aetna. This information may assist the class members in evaluating whether the proposed class settlement is reasonable. This information shows the competition between Blue Cross and Aetna and the dynamics between the two and their relationships with the hospitals. Paragraphs 312 and 313 will not be redacted. Dow Chemical's Motion to Seal/Motion to Redact Certain Information is granted in part and denied in part as set forth above.

### E. Aetna's Motion to Redact and Keep Under Seal Limited

**Information (#286, 10/25/2016; Corrected in #300, 10/25/16)**

Aetna seeks to redact and keep under seal limited information.  Blue Cross objects to some of Aetna's request.  The Class Plaintiffs object to Aetna's request.  The Class Plaintiffs' main objection to Aetna's request is that Aetna has not provided a line by line demonstration necessary to justify the requested redactions.

As noted above, the Sixth Circuit indicated that the third-party who seeks to keep information from the public and the court's docket must demonstrate—on a document-by-document, line-by-line basis—that specific information in the court record meets the demanding requirements for a seal.  *Shane Group,* 825 F.3d at 309.  Aetna attached Exhibit B to its motion listing 18 documents without indicating the privilege or trade secret information it claims may be redacted.  Aetna did not attach the unredacted versions (under seal) so that the Court could view the documents in context.  Aetna also did not submit any support (such as affidavits) as to why the documents it seeks to be redacted are trade secrets or may harm Aetna.

At the hearing in this matter, Aetna indicated it would submit supplemental documents to support its request in the format the Sixth Circuit required.  Aetna thereafter filed the Declaration of Suzanne Hall in support of Aetna's Motion to Redact Limited Information.  (Doc. No. 311)  In this submission, Aetna listed the specific documents it wanted to remain sealed, line by line, identifying three

categories as reasons for keeping the documents sealed. Aetna also submitted a status report after it conferred with Blue Cross on the matter. Aetna noted Blue Cross' objections in its report. The Court only addresses the documents specifically identified by Aetna in its latest more specific submissions. The request to redact and/or seal the documents, without being specifically identified by Aetna is denied since Aetna did not meet its burden to redact/seal these documents. The Court addresses the more specific documents identified by Aetna below, as listed in Hall's Declaration, Doc. No. 311, Pg ID 11787-11788 and Aetna's Status Report, Doc. No. 313, Pg ID 12191-12200.

The first category, identified by Aetna as Category A, include information regarding Aetna's hospital reimbursement rates. Aetna claims that if the individually-negotiated hospital reimbursement rates became public, the disclosure would risk harm to Aetna in its negotiations with hospitals or would give an unfair advantage to its competitors. Aetna claims that some of these rates remain in effect today and its competitors do not have access to the rates in the ordinary course of business.

The second category, labeled by Aetna as Category B, includes information relating to Aetna's negotiations, business and competitive strategy. Aetna claims that these documents contain information about Aetna's approach to negotiating with hospitals, its strategies for competing for customers, its internal assessment of its own

23

business, and its strategies for competing with other managed care companies, including blue Cross. The documents contain competitively-sensitive internal strategic information. Aetna asserts that if this information was publicly released, it would likely harm Aetna by giving its competitors insight into Aetna's confidential competitive and business strategy.

The third category, Category C, involve documents and transcripts that contain information about Aetna's relationship with its customers and its customer retention and acquisition strategies, which Aetna claims it keeps confidential. Aetna asserts that the documents contain competitively-sensitive information about Aetna's customer relationships.

After reviewing the cited documents, the Court grants in part Aetna's request to redact certain passages, finding that the redaction is narrowly tailored to protect Aetna's confidential strategies and information. The Court rules as follows:

           1.    <u>Vellturo Expert Report:</u>

The following may be redacted by Aetna, the Court finding that these passages in the Vellturo Report contain information about Aetna's confidential strategies as to their customers:  page 64, ¶ 175; page 65, ¶¶ 177, 178; all of page 66; page 69, ¶ 188; page 96, last sentence of ¶ 247 and first two sentences of ¶ 248; page 101, ¶ 265; page 103, only the percentage number of Aetna in ¶ 271; page 111, ¶ 298; page 115, ¶¶ 308

and 309; page 116, first sentence of ¶ 310; page 117, page 118, ¶ 314; page 120, ¶ 319; page 32, ¶ 355; page 140, last sentence of ¶ 377 and all of ¶ 378; page 146, ¶ 392; all of page 147; page 149, ¶ 396; all of page 150; page 205, the second, third and fourth sentences of ¶ 542; pages 213 to 220; pages 233 to 237; and all of page 238 except for the Conclusion heading and ¶ 614.

Paragraphs 312 and 313 on page 118 will not be redacted because it shows the reason why and how MidMichigan dealt with both Aetna and Blue Cross. This information, and the remaining passages the Court declined to redact, may be relevant to the Class Plaintiffs' evaluation of the Settlement Agreement.

2.      October 9, 2012 Michael Winters Deposition:

Aetna seeks to redact certain passages of the October 9, 2012 Michael Winters deposition found in Doc. No. 133, Ex. HHHH, lines 45:1 to 46:8. Aetna may redact these specific lines, the Court finding that the information involves Aetna's confidential business strategies.

3.      November 13, 2012 Deborah Lantzy-Talpos Deposition:

The Court finds Aetna may redact Deborah Lantzy-Talpos' November 13, 2012 deposition found in Doc. No. 133, Ex. AA, lines 57:7 to 57:12 and lines 58:6 to 58:11. These passages include Aetna's confidential business strategies.

4.      October 29, 2012 Michael Andreshak Deposition:

Aetna seeks to redact certain passages from the October 29, 2012 Michael Andreshak deposition, found in Doc. No. 133, Exs. F and G. The Court finds that only Doc. No. 133, Ex. F, lines 197:10 to 197:25 will be redacted, because this contains Aetna's confidential business strategy. As to the remaining requested passages (Doc. No. 133, Ex. F, lines 194:1 to 194:7 and 195:21 to 197:4; Doc. No. 133, Ex. G, lines 207:14 to 208:17 and 208:22 to 209:25), the Court finds that these lines do not specifically involve Aetna's confidential business strategy.

The Court finds that Aetna may redact Doc. Nos. 292 and 294, Ex. 51, lines 80:9 to 80:12 only. This passage contains Aetna's internal strategies as to how to compete with Blue Cross. Lines 80:1 to 80:8 will not be redacted, the Court finding that this information is relevant to the Class Plaintiffs' evaluation of the Settlement Agreement. The unredacted pages 166 to 168 of Mr. Andreshak's deposition were not submitted for review. Aetna has not met its burden as to these pages as required by the Sixth Circuit; these pages 166 to 168 will not be redacted.

5.      August 21, 2012 Helen Hughes Deposition:

The redaction sought in Helen Hughes' August 21, 2012 deposition transcript, Doc. No. 133, Ex. AAAA, line 60:5 and Doc. Nos. 292 and 294, Ex. 72, lines 209:17, 209:21 and 232.1 to 232.24 involve Aetna's confidential rate information and will remain redacted as requested by Aetna.

6.    <u>March 15, 2012 Steven Leach Deposition:</u>

Steven Leach's March 15, 2012 deposition testimony found in Doc. No. 127, Ex. 18 and Doc. No. 291, Ex. 43, lines 300:13, 300:17, 300:20-21 and 301:3 sets forth confidential rate information and will remain redacted.

7.    <u>August 14, 2012 Patrick McGuire Deposition:</u>

As to Patrick McGuire's August 14, 2012 deposition, Aetna seeks to redact the testimony set forth in Doc. No. 127, Ex. 9, lines 253:21 to 253:25. Blue Cross objects arguing that this information is necessary for the Class Plaintiffs' assessment of whether the MFN-plus clause affected the hospitals in pricing its rates. The Court finds that the lines Aetna seeks to redact are relevant to the Class Plaintiffs' evaluation of the benefit they may receive under the settlement agreement. However, the Court finds that the actual rate number is not required for the Class Plaintiffs' evaluation. Aetna may redact the numbers set forth in line 25.

8.    <u>December 7, 2012 Brian Rodgers Deposition:</u>

Aetna seeks to redact certain lines from Brian Rodgers' December 7, 2012 deposition, Doc. No. 127, Ex. 17 and Doc. Nos. 291 and 294, lines 151:1 to 151:6, 168:5 to 172:15, 172:1 to 174:15, 186:8-9 and 215:3 to 216:5, arguing that these passages relate to Aetna's negotiations with the hospital and are not relevant to the Class Plaintiffs' evaluation of the Settlement Agreement. Blue Cross objects as to

lines 168:5 to 174:24, 186:5 to 186:10 claiming that the Class Plaintiffs require this information in their evaluation of the Settlement Agreement.

After reviewing these passages, the Court finds that the information in these documents is relevant to the Class Plaintiffs' evaluation of the likelihood of success on the merits and the benefits they may receive under the Settlement Agreement. However, Aetna may redact the actual confidential rate information found in lines 168:7, 168:22, 169:15 and 170:15.

9.    November 20, 2012 Timothy Susterich Deposition:

The passage in the November 20, 2012 Timothy Susterich deposition found in Doc. No. 127, Ex. 16, lines 62:13 to 62:25 may be redacted by Aetna, the Court finding that the information includes confidential customer information and Aetna's strategy as to this customer.

10.    AETNA-00226835:

Aetna seeks to redact Doc. Nos. 290 and 294, Ex. 67, pages 1, 4, 5, and 6. Aetna does not seek to redact pages 2 and 3. Aetna asserts these pages reveal Aetna's confidential internal strategic discussion and are not necessary for the Class Plaintiffs' consideration of the Settlement Agreement. Blue Cross objects arguing that the redactions Aetna seeks obscure material directly cited in the brief and may affect the Class Plaintiffs' ability to assess the Settlement Agreement.

After review of the document, the Court finds that pages 1, 4, 5 and 6 reveal Aetna's internal strategy in the Michigan market. Aetna may redact these pages, the Court finding that the redaction is narrowly tailored to protect Aetna's internal business strategy.

11.     December 17, 2012 Ross Sanders Deposition:

The December 17, 2012 Ross Sanders deposition, Doc. No. 293 and 294, Ex. 17, lines 216:1 to 216:10, may be redacted by Aetna, the Court finding that the information includes confidential internal strategy.

12.     December 3, 2012 Mark Bertolini Deposition:

Aetna may redact the March 3, 2102 Mark Bertolini deposition, Doc. Nos. 292 and 294, Ex. 52, line 232:4, the Court finding that the information includes confidential internal strategy.

13.     August 12, 2012 Paula Reichle Deposition:

The deposition testimony of Paula Reichle in Doc. Nos. 290 and 294, Ex. 20, lines 163:13, 163:17 and 163:21, includes Aetna's confidential rate information and will remain redacted.

14.     September 14, 2012 Cass Wisniewski Deposition:

The September 14, 2012 Cass Wisniewski deposition, Doc. Nos. 291 and 294, Ex. 36, lines 30:13 to 33:7 may be redacted, the Court finding that the information

relates to Aetna's confidential rates and business strategy. As to lines 34:2 to 34:6, Aetna may redact only the actual percentage rates noted in line 34:3.

As set forth above, the Court grants in part and denies in part, Aetna's request to redact the passages noted above, the Court finding that some redactions are narrowly tailored to Aetna's confidential rates, certain customer information and business strategy. Regarding the unredacted passages, the Court finds that the information in those passages is relevant to the Class Plaintiffs' evaluation of the benefits they may receive set forth in the Settlement Agreement.

### F. CIGNA Health and Life Ins. Co.'s Motion to Intervene (#287, 10/25/16) and CIGNA Health and Life Ins. Co.'s Motion to Seal (#288, 10/26/16)

#### 1. Motion to Intervene

Cigna filed this Motion to Intervene in order to file a motion to redact and seal limited portions of a document which contains highly confidential, proprietary, and competitively trade secret information. The Sixth Circuit expressly noted that third-party insurers "remain free on remand to demonstrate—on a document-by-document, line-by-line basis—that specific information in the court record meets the demanding requirements for a seal." *Id.* at 309. The Court recently issued an Order denying the Varnum Group's Motion to Intervene noting that the Sixth Circuit's ruling allowed parties to request documents to be sealed and that no intervention was required.

Cigna's Motion to Intervene is denied since it is not required to seek redaction or seal certain documents.

## 2.    Motion to Seal

Cigna seeks to redact certain portions of the November 29, 2012 Michele Hanrahan Tracy Deposition. Cigna listed in Attachment A to its motion the pages and lines to be redacted. Blue Cross does not object to Cigna's request. The Class Plaintiffs object claiming that Cigna has not provided a line by line demonstration necessary to justify the requested redactions.

As noted above, the Sixth Circuit noted that the third-party who seeks to keep information from the public and the court's docket must demonstrate—on a document-by-document, line-by-line basis—that specific information in the court record meets the demanding requirements for a seal. *Shane Group,* 825 F.3d at 309. Cigna did not attach the unredacted versions (under seal) so that the Court could view the requested documents in context. Cigna also did not submit any support (such as affidavits) as to why the requested redactions are trade secrets or may harm Aetna.

At the hearing, Cigna indicated it would supplement its motion with an affidavit and specific reasons for the requested redaction. Cigna has since supplemented its motion, including a Declaration by Chad Matteson as to its reasons for redacting information from the deposition. See. Doc. No. 312.

The Court has reviewed Cigna's affidavit in support of its motion, along with the specific reasons for each requested redaction found in Doc. No. 312-2, Pg ID 12172-12175, the proposed redacted deposition found in Doc. No. 312-3, Pg ID 12177-12188, and the unredacted deposition found in Doc. No. 294, Ex. 47. The Court finds the proposed redactions are narrowly tailored to protect Cigna's trade secrets, confidential rates, negotiating strategy, customer and competitor names. Cigna may redact Ms. Tracy's deposition as noted in Doc. No. 312-3, specifically lines: 109:11-12; 110:1; 110:5; 110:16; 110:19; 111:7; 111:9; 111:11-12; 111:17; 117:1.

## III. CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that Blue Cross Blue Shield of Michigan's Motion to Seal/Redact and Keep Under Seal Limited Information **(Doc. No. 267)** is GRANTED IN PART AND DENIED IN PART as more fully set forth above.

IT IS FURTHER ORDERED that Spectrum Health System's Motion to Preserve Exhibits Under Seal **(Doc. No. 282)** is GRANTED.

IT IS FURTHER ORDERED that The Dow Chemical Company's Motion to Seal/Redact Certain Information **(Doc. No. 284)** is GRANTED IN PART AND DENIED IN PART as more fully set forth above.

IT IS FURTHER ORDERED that Aetna, Inc.'s Motion to Seal/Redact and Keep Under Seal Limited Information **(Doc. Nos. 286 and 300)** is GRANTED IN PART AND DENIED IN PART as more fully set forth above.

IT IS FURTHER ORDERED that Cigna Health and Life Insurance Company's Motion to Intervene **(Doc. No. 287)** is DENIED.

IT IS FURTHER ORDERED that Cigna Health and Life Insurance Company's Motion to Seal/Redact **(Doc. No. 288)** is GRANTED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: April 17, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 17, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager