# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SHANE GROUP, INC. *et al*., <br><br> Plaintiffs, on behalf of themselves and all others similarly situated, <br><br> vs. <br><br> BLUE CROSS BLUE SHIELD OF MICHIGAN, <br><br> Defendant. | Civil Action No. 2:10-cv-14360-DPH-MKM <br><br><br> Judge Denise Page Hood <br> Magistrate Judge Mona K. Majzoub |

## <u>CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PAYMENT OF INCENTIVE AWARDS TO CLASS REPRESENTATIVES</u>

For the reasons set forth in the attached Brief in Support of this Motion, Class Counsel for the Settlement Class and Counsel for Plaintiffs The Shane Group, Inc., Bradley A. Veneberg, Michigan Regional Council of Carpenters Employee Benefits Fund, Abatement Workers National Health and Welfare Fund, Monroe Plumbers & Pipefitter Local 671 Welfare Fund, Scott Steele, Anne Noah, and Susan Baynard ("Plaintiffs"), submit this Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Payment of Incentive Awards to Class Representatives.

Dated:       May 17, 2018

Respectfully submitted,

/s/ Daniel E. Gustafson
Daniel E. Gustafson
Daniel C. Hedlund
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com

Daniel A. Small
Brent W. Johnson
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
dsmall@cohenmilstein.com
bjohnson@cohenmilstein.com

E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan  48307
Telephone: (248) 841-2200
epm@millerlawpc.com

Fred T. Isquith
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
270 Madison Avenue
New York, New York, 10016
Telephone: (212) 545-4690
isquith@whafh.com

Theodore B. Bell
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
70 West Madison Street, Suite 1400
Chicago, Illinois  60602
Telephone: (312) 984-0000
tbell@whafh.com

*Interim Class Counsel*

David H. Fink (P28235)
Darryl Bressack (P67820)
**FINK + ASSOCIATES LAW**
100 West Long Lake Rd, Suite 111
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkandassociateslaw.com

*Interim Liaison Counsel*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SHANE GROUP, INC. *et al.*,<br><br>Plaintiffs, on behalf of themselves and all others similarly situated<br><br>vs.<br><br>BLUE CROSS BLUE SHIELD OF MICHIGAN,<br>Defendant. | Civil Action No. 2:10-cv-14360-DPH-MKM<br><br>Judge Denise Page Hood<br>Magistrate Judge Mona K. Majzoub |

## <u>BRIEF IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PAYMENT OF INCENTIVE AWARDS TO CLASS REPRESENTATIVES</u>

## STATEMENT OF ISSUES PRESENTED

1.   Should the Court grant Class Counsel's request for award of attorneys' fees?

Class Counsel's answer: Yes.

2.   Should the Court grant Class Counsel's request for reimbursement of expenses?

Class Counsel's answer: Yes.

3.   Should the Court grant Class Counsel's request for incentive awards to the class representatives?

Class Counsel's answer: Yes.

# **CONTROLLING OR APPROPRIATE AUTHORITY FOR RELIEF SOUGHT**

**Cases**

*Blum v. Stenson*
    465 U.S. 886 (1984)

*Boeing Co. v. Van Gemert*
    444 U.S. 472 (1980)

*In re Cardizem CD Antitrust Litig.*
    218 F.R.D. 508 (E.D. Mich. 2003)

*Hensley v. Eckerhart*
    461 U.S. 424 (1983)

*Moulton v. U.S. Steel Corp.*
    581 F.3d 344 (6th Cir. 2009)

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*
    315 F.R.D. 226 (E.D. Mich. 2016)

*Rawlings v. Prudential-Bach Props., Inc.*
    9 F.3d 513 (6th Cir. 1993)

*Rodriguez v. W. Publishing Corp.*
    563 F.3d 948 (9th Cir. 2009)

*Smillie v. Park Chem. Co.*
    710 F.2d 271 (6th Cir. 1983)

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*
    19 F.3d 1291 (9th Cir. 1994).

**Rules**

Fed. R. Civ. P. 23

## I.   <u>INTRODUCTION</u>

The substantial recovery in this case, $29.99 million, was secured only through the focused and diligent advocacy and substantial investment and risk-taking of Plaintiffs' Counsel.   Plaintiffs' Counsel have worked on an entirely contingent basis for over seven years without compensation of any kind to achieve this result for the Class.   Accordingly, Class Counsel request an award of attorney fees of $8,631,628.67, or approximately 28.78% of the Settlement Fund,[1] and reimbursement of litigation expenses of $3,500,000.   In addition, Class Counsel request future authority to pay outstanding invoices from Epiq, the Claims Administrator, for administration services related to claims submitted from the prior settlement (which will be applicable to this Settlement).

The amount requested is especially warranted given the substantial recovery secured for the Settlement Class.   This recovery represents over 25% of the overcharges that Plaintiffs' expert preliminarily estimated had been paid by the litigation class that Plaintiffs sought to certify.[2]   The requested fee is also well within

---

[1] This amount constitutes one-third of the settlement fund, $9,996,666.67, less $1,365,038, the amount of prior additional notice costs and notice costs for this settlement, which Class Counsel are absorbing by a reduction in their requested fees.   Declaration of Daniel C. Hedlund in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards to the Class Representatives ("Hedlund Decl.") ¶ 22.

[2] *See* Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Settlement and Related Relief at 14, Dkt. No. 269-1 ("Prelim. Approval Br.").

the range awarded in similar complex antitrust class actions.  As detailed below, many courts have awarded similar percentage fees for recovery of *smaller* percentages of a class's estimated overcharges.  Plaintiffs' Counsel's risk-taking also justifies the fee. Plaintiffs' Counsel has advanced more than $3.5 million in expenses without any reimbursement for seven years and could have received no reimbursement if the case had failed.

The fee is also reasonable as it does not include any multiplier, but rather represents a payment of only 44 cents on the dollar when compared to Plaintiff Counsel's collective lodestar of $19,748,626.75 at current rates and 52 cents on the dollar compared to lodestar at historic rates, $16,564,710.25.  Given these factors, both the percentage fee award and the expense reimbursement requested are fair and reasonable.   Plaintiffs' Counsel also respectfully request that the Court grant incentive awards to the Class Representatives.

## II.   <u>PROCEDURAL HISTORY</u>

Class Counsel summarized the background of this case in Plaintiffs' Motion for Preliminary Approval of Settlement 3–12, Dkt. No. 269, and will therefore refrain from repeating that summary here. The Court granted that motion on April 17, 2018.  Dkt. No. 323.

## III.   <u>ARGUMENT</u>

### A.   **Plaintiffs' Counsel Should Be Awarded a Fee from the Settlement Fund**

Pursuant to Federal Rules of Civil Procedure 23(h) and the Court's April 17, 2018 preliminary approval order, Plaintiffs' Counsel request payment of attorneys' fees from the Settlement's common fund.   The Supreme Court explained the rationale for the awarding of fees from a common fund in *Boeing Co. v. Van Gemert*:

> [T]his Court has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionally among those benefitted by the suit.[3]

The common fund doctrine both prevents unjust enrichment and encourages counsel to protect the rights of those who have relatively small claims.   Federal courts, therefore, have long recognized that fee awards in successful cases promote private enforcement of, and compliance with, important areas of federal and state law, including the federal antitrust laws.

"The Sixth Circuit has held that in common fund cases, 'a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved.'"[4]   In complex antitrust class actions such as this, where there are numerous purchasers of products or services with allegedly inflated prices,

---

[3] *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).
[4] *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 242 (E.D. Mich. 2016) (quoting *Rawlings v. Prudential-Bach Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).

competent counsel for plaintiffs are frequently retained on a contingent basis. If fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the risks undertaken, and the delay before any compensation is received, much of the public would be denied a remedy for antitrust violations.

### 1.    The Court Should Award Attorney Fees Using the Percentage of the Fund Approach

Plaintiffs' Counsel's long and extensive efforts have resulted in the creation of a Settlement Fund of $29.99 million. Courts generally approve of awarding fees from a common fund based upon the percentage-of-the-fund method.[5] "The Sixth Circuit has observed a 'trend towards adoption of a percentage of the fund method in [common fund] cases."[6] This trend holds true for courts in this District, which regularly utilize the percentage-of-the-fund approach in common fund cases.[7]

---

[5] *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) ("Indeed, every Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis.").

[6] *N.Y. State Teachers' Ret. Sys.*, 315 F.R.D. at 243 (quoting *Rawlings*, 9 F.3d at 515).

[7] *See, e.g., N.Y. State Teachers' Ret. Sys.*, 315 F.R.D. at 243; *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *17 (E.D. Mich. Dec. 13, 2011) (stating that the Sixth Circuit has recognized numerous advantages of the percentage of the fund method); *In re Delphi Corp. Securities, Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502–03 (E.D. Mich. 2008); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531–32 (E.D. Mich. 2003).

A percentage of the fund approach fosters judicial economy by eliminating a detailed, cumbersome, and time-consuming lodestar analysis.[8]   Compared to the lodestar method, the percentage of the fund approach is "easy to calculate" and it "establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery."[9]

### 2. The Requested Percentage Is Appropriate When Compared to the Range of Percentage of the Fund Awards

The Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace.[10]   Here, Class Counsel's request of approximately 28.78% of the Settlement Fund for fees is below the 30–33.33% common fund percentage awards made in this District,[11] is also consistent with—or even below—awards generally

---

[8] *Rawlings*, 9 F.3d at 516–17; *Stanley v. United States Steel Co.*, No. 04-74654, 2009 WL 4646647, at *1 (E.D. Mich. Dec. 8, 2009) ("Use of the percentage method also decreases the burden imposed on the Court by eliminating a full-blown, detailed and time consuming lodestar analysis while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement."); *In re Cardizem CD*, 218 F.R.D. at 532.

[9] *Rawlings*, 9 F.3d at 516.

[10] *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).

[11] *See Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2012 WL 424878, at *12 (E.D. Mich. May 20, 2013) (preliminarily approving attorneys' fees of one-third of the settlement amount); *In re Packaged Ice*, 2011 WL 6209188, at *19 (noting that an award of "close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions").

provided in other antitrust class actions,[12] and is less than the fee Plaintiffs' Counsel requested in relation to the previous settlement, which fee this Court found "reasonable in light of the time and resources expended by Class Counsel in this case." Dkt. No. 213 at 37.

### 3. The Relevant Factors Justify an Award of 28.78%

A court is tasked with ensuring that counsel are fairly compensated for the work performed and the result achieved.[13]

> Courts in the Sixth Circuit evaluate the reasonableness of a requested fee percentage award using six factors: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.[14]

Under these factors, a fee award of $8,631,628.67—approximately 28.78% of the Settlement Amount—is fair, reasonable, and justified.

---

[12] *See, e.g., In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 WL 2155387, at *9 (E.D. Tenn. May 17, 2013) (awarding 33.33% of $158 million settlement); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB, 2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) (awarding fee of 33.33% of $18.5 million settlement fund); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, at *1 (E.D. PA. Jan. 3, 2008) (awarding 32% of $66 million settlement with three of five defendants, and awarding an additional 1/3 of a $39 million settlement with the remaining two defendants); *In re Remeron Direct Purchaser Antitrust Litig.*, No. CIV. 03-0085, 2005 WL 3008808, at *15 (D.N.J. Nov. 9, 2005) (noting that a 1/3 fee has been "typical" in common fund litigation).
[13] *Rawlings*, 9 F.3d at 516.
[14] *In re Cardizem CD*, 218 F.R.D. at 533.

### a.    The Value of the Benefit Achieved

Class Counsel have secured a settlement that provides for a substantial and certain cash payment of $29.99 million for the benefit of the Settlement Class Members.  Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award.[15]

Here, the $29.99 million Settlement Fund is an excellent result for the Settlement Class.  This recovery represents over 25% of the overcharges that Plaintiffs' expert preliminarily estimated had been paid by members of the litigation class that Plaintiffs sought to certify.[16]  This recovery compares favorably to other class action antitrust settlements which have recovered 5.35% to 28% of estimated damages.[17]  Indeed, lesser results have justified similar percentages.[18]

---

[15] *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that the "most critical factor is the degree of success obtained"); *Rawlings*, 9 F.3d at 516 (stating that a percentage of the fund will compensate counsel for the result achieved); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

[16] *See* Prelim. Approval Br. at 14.

[17] *See, e.g.*, *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 U.S. Dist. LEXIS 10532, at *15 (E.D. Pa. June 2, 2004) (collecting cases in which courts have approved settlements of 5.35% to 28% of estimated damages in complex antitrust actions).

[18] *See, e.g.*, *id. In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 4126533, at *4-5 (N.D. Cal. Aug. 3, 2016) (holding that 20 percent antitrust recovery in a megafund case warranted "a modest increase over the Ninth Circuit benchmark" of 25 percent); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (holding that "a total award of approximately 9% of the possible damages" "weighs in favor of granting the requested 28% fee."). *See also In re Med. S-Ray Film Antitrust Litig.*, No. CV-93-5904, at *7–8 (E.D.N.Y. 1998) (increasing the 25% benchmark to 33.3% where counsel recovered 17% of

As a result of this settlement, the Settlement Class will receive certain compensation for a portion of their losses and avoid the risk of no recovery.

### b.    Risks of Litigation and Contingent Nature of the Fee

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, Economic Analysis of Law §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.[19]

Plaintiff's Counsel have prosecuted this action for more than seven years on a wholly contingent basis.  There have been and will always be numerous contingent fee cases where plaintiffs' counsel receive no compensation, even after the

---

damages); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (increasing 25% benchmark to 33.8% where counsel recovered 10% of damages); *In re Gen. Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 431, 434 (E.D. Pa. 2001) (awarding one-third fee from $48 million settlement fund that was approximately 11% of the plaintiffs' estimated damages); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 489–90, 498 (E.D. Pa. 2003) (permitting one-third fee award from $48 million settlement fund which represented approximately 15% of class' total net damages); *Cullen v Whitman Med. Corp.*, 197 F.R.D. 136, 148 (E.D. Pa. 2000) (awarding one-third in fees from settlement of class consisting of defrauded vocational students that was 17% of the tuition that class members paid).
[19] *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

expenditure of thousands of hours of work. Plaintiffs' Counsel are well aware that for any number of reasons, including the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, this and similar complex antitrust cases can result in no compensation for work performed. Even plaintiffs who prevail at trial may find their judgment overturned on appeal.

Plaintiffs' Counsel overcame numerous difficulties, always assuming the risk of receiving no payment for their efforts. Moreover, as with any antitrust case, prosecution of this matter involved complex issues that necessitated significant and costly expert consultation. Plaintiffs' Counsel undertook these expert expenses, and the substantial expenses necessitated by a very large discovery program, with the risk that there may never be a recovery from which to recoup these expenses. Continued litigation of the case would also involve a significant degree of risk. *See* Dkt. No. 290. Given the nature of the contingent fee arrangement and the high risk this case presented, a 28.78% fee is reasonable.

### c.  Public Policy Considerations

Class members in complex antitrust class actions are invariably represented by class counsel who are retained on a contingent basis, largely due to the significant commitment of time and expense required. The typical class representative is unlikely to be able to pursue long and protracted litigation at his or her own expense,

particularly with the knowledge that others similarly situated will be able to "free-ride" on these efforts at no cost or risk to themselves. This is especially true where, as here, the claims are extremely complex and require expert testimony, and where the amount of individual damages may be far less than the investment of time and expense required to prosecute the action. The significant expenses, combined with the high degree of uncertainty of ultimate success, make contingent fees a virtual necessity for such cases.

Compensation in an amount appropriate to encourage attorneys to assume the risk of litigation is in the public interest. Without adequate compensation for plaintiffs' counsel, victims of antitrust violations would be essentially precluded from vindicating their rights. Thus, "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others" is an important factor.[20]

> Society's stake in rewarding attorneys who can produce such benefits in complex litigation such as in the case at bar counsels in favor of a generous fee . . . . Society also benefits from the prosecution and settlement of private antitrust litigation. . . . Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this case benefits society.[21]

---

[20] *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996); *Smillie*, 710 F.2d at 275.
[21] *In re Cardizem CD*, 218 F.R.D. at 534 (citations omitted) (quoting *F & M Distribs., Inc. Sec. Litig.*, No. 95-CV-71778, 1999 U.S. Dist. LEXIS 11090, at *18 (E.D. Mich. 1999)).

Without the willingness of Plaintiffs' Counsel to assume the risks inherent in this large, complex, case, Settlement Class Members would not have recovered anything, let alone the substantial recovery secured here.

### d.    The Value of Services on an Hourly Basis

Courts commonly use counsel lodestar as a "cross-check" to confirm the reasonableness of a percentage award. This analysis is not a precise science, but rather a tool for rough comparison among cases. "Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable."[22]

Class Counsel, together with other Plaintiffs' Counsel, spent more than 37,000 hours litigating and securing the successful recovery in this case.[23] At current hourly rates, this results in a lodestar of $19,748,626.75.[24] This lodestar represents time spent not only by Class Counsel, but also by law firms that worked at the direction and under the supervision of Class Counsel. *Id.* ¶ 6. The work performed by these other firms included essential communications with class representatives, assistance

---

[22] *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009).
[23] Should the Court request, Plaintiffs' Counsel will provide detailed time records for the Court to review in-camera.
[24] Declaration of Daniel C. Hedlund in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards to the Class Representatives ("Hedlund Decl.") ¶ 5.

with briefing, reviewing documents, performing research, and participating in depositions and is discussed in more detail in the declarations submitted on behalf of each firm. *Id.*

Pursuant to the order appointing Interim Class Counsel, Dkt. No. 69, it is their responsibility to assign work, collect time and expense reports on a periodic basis, and to allocate any fees awarded by the Court.  Class Counsel have done so; they coordinated work between firms and avoided duplication of effort.  Except as noted below, Class Counsel have not included in the aggregate lodestar time for work that was not performed at the direction of Class Counsel,[25] time without appropriate detail, duplicative time, or time spent on internal firm administrative tasks. *Id.* ¶ 6–9.  Class Counsel excluded time from any time keeper with less than 20 hours of work. *Id.* ¶ 10.  Class Counsel also excluded time spent on the preparation of this Motion for Attorney Fees, and the previous fee motion. *Id.* ¶ 11.

Courts in this Circuit also recognize that a fee award may appropriately use a "multiplier" or enhancement of counsel's lodestar.  The multiplier is the ratio of the

---

[25] Class Counsel audited Plaintiffs' Counsel's time records to identify and exclude time clearly not eligible for any compensation.  Hedlund Decl. ¶ 6.  Before Class Counsel were appointed by the Court, they could not and did not authorize their co-counsel's work.  Such pre-appointment time is therefore included in the time reported to the Court, unless it was deficient in some other respect.  Hedlund Decl. ¶ 7.  If the Court awards attorney fees, Class Counsel will consider how each firm's entire lodestar contributed to the result in allocating the award among the different firms. *See* Order for Appointment of Interim Class and Liaison Counsel ¶ 2(l), Dkt. No. 69.

fee awarded to counsel's lodestar.  Where used, "multipliers should compensate counsel for the risk they incurred in bringing a case in which their compensation was contingent on their success, should recognize any extraordinary performance by particular counsel and should encourage the filing of meritorious class actions."[26]

Here, a 28.78% fee, or $8,631,628.67, is eminently reasonable as it reflects a *reduction* of Plaintiffs' Counsel's total lodestar rather than an enhancement.  In other words, it is a negative multiplier in that Plaintiffs' Counsel requests fees that represent 43 percent of their overall lodestar of $19,748,626.75.[27]  Courts routinely approve awards that represent a substantial *increase* of counsel's actual lodestar.[28]  Where counsel's requested percentage of the fund fee is less than their lodestar, there

---

[26] *In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 131 (N.D. Ill. 1990).

[27] The lodestar number is calculated at current rates. At historic rates, Plaintiffs' lodestar is $16,564,710.25, of which the fee request is 52%.

[28] *See, e.g., In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767–68 (S.D. Ohio 2007) (awarding a multiplier of 6 and noting that "[m]ost courts agree that the typical lodestar multiplier . . . ranges from 1.3 to 4.5"); *New York State Teachers' Retirement Sys. v. General Motors Co.*, 315 F.R.D. 226, 243–44 (E.D. Mich. 2016), *appeal docketed*, No. 16-1821 (6th Cir. June 16, 2016) (noting court agreement for typical multipliers ranging from 1.3 to 4.5 and awarding multiplier of 1.9); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503–04 (E.D. Mich. 2000) (approving an effective multiplier of 2.21).

is further assurance that the request is appropriate.[29]  An expert on fees previously found Plaintiffs' Counsel's rates to be reasonable.[30]  *See* Dkt. No. 170-1.

Given that Plaintiffs' Counsel spent 37,027.96 hours litigating this case, a fee award of $8,631,628.67 represents a blended hourly rate of $233.11 for the work performed in this case, which is less than what courts in this district typically approve.[31]  This blended rate pales in comparison to top partner billing rates of national law firms, which were approaching $1,500 more than two years ago.[32]  For further comparison the Civil Division of the United States Attorney's office for the District of Columbia prepared a matrix of hourly rates intended for use in cases that

---

[29] *See Stanley*, 2009 WL 4646647, at *3 (finding support for the reasonableness of a requested fee in the fact that the fee request was a fraction of counsel's lodestar).

[30] While Mr. McGuinness was unable to conclusively say that the rates of two attorneys were reasonable, he found that they would be reasonable if reduced slightly. Reducing *all* lodestar by the largest reduction percentage considered by Mr. McGuinness (14%) results in a lodestar of $16,938,819.01 and $14,245,650.82 in current and historic lodestar, respectively. These amounts are still well above the actual fee requested.

[31] *See Doe 1-2 v. Déjà vu Servs., Inc.*, No. 2:16-cv-10877, 2017 WL 2629101, at *10 (E.D. Mich. June 19, 2017) (finding lodestar multiplier of 1.4 and blended hourly rate of $542 "reasonable given the complexity of the case [and] the results achieved"), *appeal docketed*, No.17-1827 (6th Cir. July 19, 2017); *Bourne v. Ansara Restaurant Grp., Inc.*, No. 16-10332, 2016 WL 7405804, at *3 (E.D. Mich. Dec. 22, 2016) (finding a blended average hourly rate of $409 "to be reasonable, warranted, and customary"); *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at * 13 (E.D. Mich. July 13, 2013 (finding a blended rate of $375 per hour to be "fair and reasonable").

[32] Martha Neil, *Top partner billing rates at BigLaw firms approach $1,500 per hour*, ABA Journal (Feb. 8, 2016), http://www.abajournal.com/news/article/top_partner_billing_rates_at_biglaw_firms_nudge_1500_per_hour.

14

allow statutory fee shifting that recommends a 2017-2018 rate of $302 per hour for attorneys with less than two years of experience, with increasing amounts for attorneys with additional experience.[33]

By all measures, Plaintiffs' Counsel have requested a fee that is well below their lodestar and the resulting blended rate is well below those approved in this district and rates approved in fee shifting contexts. Accordingly, the requested fee of 28.78% of the Settlement Fund is abundantly reasonable in light of the value of Plaintiffs' Counsel's time on an hourly basis.

### e.    The Complexity of the Litigation

Prosecution of any complex class action presents inherently intricate and novel issues. However, "an antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome."[34]

This factor supports awarding the requested fee. The legal and factual issues surrounding this case were extremely complex, as set forth more fully in Class

---

[33] *USAO Attorney's Fees Matrix — 2015-2018*, United States Attorney's Office, District of Columbia, available at https://www.justice.gov/usao-dc/file/796471/download.

[34] *In re Packaged Ice*, 2011 WL 6209188, at *19 (quoting *In re Cardizem CD*, 292 F. Supp. 2d at 639); *see also In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003).

Counsel's Brief in Support of Preliminary Approval. This factor strongly favors a fee award of 28.78% of the Settlement Fund.

### f. The Quality of the Representation

Class Counsel are known leaders in the fields of antitrust litigation, class actions, and complex litigation. The quality of their representation here is demonstrated by the substantial benefit achieved for the Settlement Class and the effective prosecution and resolution of the action. The quality of opposing counsel is also important when a court evaluates the services rendered by plaintiffs' counsel.[35] Nationally known, prominent, and extremely capable counsel represented Defendant and vigorously defended this action, including the current Acting Director of the Bureau of Competition of the Federal Trade Commission.[36] The ability of Class Counsel to obtain a favorable result for the Settlement Class in the face of such qualified opposition is further evidence of the quality of their work.

These factors all weigh in favor of the fee award requested. The Court should grant Plaintiffs' Counsel's request for $8,631,628.67—approximately 28.78% of the Settlement Fund.

---

[35] *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986); *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1351 (N.D. Ill. 1974).
[36] Bruce Hoffman, Federal Trade Commission, https://www.ftc.gov/about-ftc/biographies/bruce-hoffman.

**B.**   **Plaintiffs' Counsel's Litigation Expenses Were Reasonable and Should be Reimbursed**

Class Counsel also request reimbursement of expenses incurred in connection with the prosecution of this litigation.  Plaintiffs' Counsel have incurred litigation expenses in the aggregate amount of $3,562,461.81 for the benefit of the Settlement Class.[37] Hedlund Decl. ¶ 11.

> Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses.  "Expense awards are customary when litigants have created a common settlement fund for the benefit of a class."[38]

Expenses are compensable in a common fund case if the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.[39]  The categories of expenses for which counsel seek reimbursement here are the type of expenses routinely charged to hourly clients, were necessary to the prosecution of the case, and should therefore be reimbursed out of the common fund.

---

[37] The Preliminary Approval Order already authorized payment of Settlement administration expenses and notice costs up to $1,219,038.  *See* Order ¶ 18, Dkt. No. 323.  This amount has been and will be expended on implementing the Notice Plan.

[38] *In re Cardizem CD*, 218 F.R.D. at 535 (quoting *F & M Distribs., Inc. Sec. Litig.*, 1999 U.S. Dist. LEXIS 11090, at *20 (E.D. Mich. June 29, 1999)).

[39] *Id.* (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001)); *see U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989) ("[W]e have held that attorney's fee awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.").

A significant component of Plaintiffs' Counsel's expenses here is the cost of the expert work performed on behalf of the Settlement Class.  Class Counsel retained highly qualified economic experts to analyze the impact of Blue Cross's MFN clauses on prices of acute care hospital healthcare services in Michigan, and to address other issues such as market definition and market power.  This work required complex statistical analysis of extraordinarily large amounts of data.  These experts provided significant services on behalf of the Settlement Class, their expenses were necessarily incurred for the successful prosecution of this litigation, and these expenses were instrumental in procuring the Settlement.

The notice sent to Settlement Class Members will state that Plaintiffs' Counsel will seek reimbursement of litigation expenses up to $3,500,000, plus settlement-related expenses.  As set forth above, and consistent with this estimate, Plaintiffs' Counsel have incurred litigation expenses of $3,562,461.81. Accordingly, Plaintiffs' Counsel are seeking reimbursement of litigation expenses of $3,500,000 (but not the additional $62,461.81).  Because these expenses were necessary to achieve the Settlement, and because they are the types of expenses typically reimbursed in such cases, the Court should grant this request.

### C.   Unpaid Settlement-Related Expenses Should be Paid out of the Settlement Fund

The Settlement Administrator, Epiq, also has an unpaid bill for $1,365,038 related to claims processing and other settlement administration for the prior

settlement.  Claims submitted in the prior round need not be submitted again so that work will fully apply to this settlement.  Class counsel request authority to make this payment out of the Settlement Fund once it is fully funded and will seek authority to pay additional Settlement administration expenses at the end of the claims process when they file a motion to distribute the Net Settlement Fund.

### D.   The Requested Class Representative Incentive Awards Are Reasonable

Incentive awards are neither prohibited nor explicitly endorsed by the Sixth Circuit. [40]   When awarded, "[i]ncentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit."[41]  Such awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class."[42] While not expressly endorsing them, the Sixth Circuit has allowed payment of incentive awards to class representatives as a reasonable use of settlement funds.[43] Courts elsewhere routinely award incentive awards to class representatives who

---

[40] *Hadix v. Johnson*, 322 F.3d 895, 897–98 (6th Cir. 2003) ("This court has never explicitly passed judgment on the appropriateness of incentive awards.").
[41] *Id.*; at 897.
[42] *Id.*; *see also Rodriguez v. W. Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general").
[43] *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351–52 (6th Cir. 2009).

dedicate their time and energy, often risking retaliation, in order to benefit the greater good of the class they seek to represent.[44]

This Court has also granted incentive awards to compensate class representatives for incurring "significant demands on their time and expenses, including submission to depositions and responding to discovery requests for the benefit of absent class members."[45]  But it is not only time that class representatives expend on behalf of the class. Class representatives put their names on a lawsuit, endure stress, and risk retaliation and even harassment. Class representatives undertake these burdens, in addition to the demands of time, to vindicate the rights of an entire class. These concerns are particularly acute in this case, where the Plaintiffs needed courage to bring a case against the largest private health insurer in the State of Michigan.

Courts will reward class representatives varying awards based on their

---

[44] *See Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 355 (S.D.N.Y. 2005), *aff'd in relevant part*, 443 F.3d 253 (2d Cir. 2006); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775, 2015 WL 5918273, at *4 (E.D.N.Y. Oct. 9, 2015) (noting that service awards "are not uncommon and can serve an important function in promoting class action settlement.") (internal quotations and citation omitted); *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL NO. 1290, 2003 WL 22037741, at *10 (D.D.C. June 16, 2003) ("[C]ourts routinely approve incentive awards to compensate named plaintiffs for the service they provided and the risk they incurred during the course of the class action litigation.") (internal citation and quotation omitted).
[45] *In re Cardizem CD*, 218 F.R.D. at 535; *see also In re Packaged Ice*, 2012 WL 5493613, at *9.

contributions to the litigation.[46]   Accordingly, this Court has approved incentive awards of up to $15,000 for individual plaintiff class representatives for "providing information to Class Counsel, receiving and approving pleadings, assisting with discovery, preparing for and attending their depositions, and participating in settlement discussions."[47]   Other courts have approved awards of much greater value.[48]   Organization class representative plaintiffs often endure a greater burden of litigation by, in part, locating and producing greater numbers of documents and reviewing those documents for 30(b)(6) depositions.   Courts therefore have approved considerable incentive awards for organizational class representatives.[49]

---

[46] *See In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015); (stating, "[i]mportantly, a court need not award all named plaintiffs the same incentive payment"); *In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-00318 RDB, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (awarding $125,000 to one class representative and $25,000 to the other two class representatives); *see also Slipchenko v. Brunnel Energy, Inc.*, No. CIV. A. H-11-1465, 2015 WL 338358, at *15 (S.D. Tex. Jan. 23, 2015) ("Courts recognize that a differentiation among class representatives based upon the role that each played may be proper in given circumstances." (brackets and internal quotation marks omitted)).

[47] *See In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006); *see also Date*, 2013 WL 3945981, at * 13 (approving incentive payment of $7,000 for individual class representative).

[48] *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *17 (awarding one class representative $120,000 and the other four representatives $80,000 each); *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2017 WL 2423161, at *14–16 (N.D. Cal. June 5, 2017) (granting service awards of $90,000 to each named plaintiff).

[49] *See, e.g., In re Vitamin C Antitrust Litig.*, No. 06-MD-1738, 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) (approving incentive awards of $50,000 each for two organizational class representatives); *In re Titanium Dioxide Antitrust Litig.*,

The Notice will inform Settlement Class Members that Class Counsel will request incentive awards of up to $50,000 for each organizational Class Representative and up to $10,000 for each individual Class Representative. Consistent with the Notice, Class Counsel requests incentive awards of $45,000 for Michigan Regional Council of Carpenters Employee Benefits Fund ("Carpenters"), $35,000 for Abatement Workers National Health and Welfare Fund ("Abatement"), $35,000 for Monroe Plumbers & Pipefitter Local 671 Welfare Fund ("Plumbers"), and $20,000 for The Shane Group, Inc. ("Shane Group"), all of which are organizational Class Representatives.  Class Counsel also requests incentive awards of $10,000 for Susan Baynard, $10,000 for Anne Noah, $5,000 for Bradley Veneberg, and $5,000 for Scott Steele.  Class Counsel are only seeking a total of $165,000 in incentive awards, which represents only 0.55% of the Settlement Fund.

### 1. The Class Representatives Expended Considerable Time and Energy Litigating this Case on Behalf of the Class

Class Representatives Carpenters, Abatement, and Plumbers filed their initial complaint against Blue Cross over seven years ago, in December 2010.[50]  Carpenters, Abatement, and Plumbers (collectively, the "Union Health Funds"), and their third party administrators, thereafter spent extensive time and resources representing a

---

2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (awarding $125,000 to one class representative and $25,000 to the other two class representatives).

[50] Hedlund Decl, Ex. 2, Declaration of Daniel A. Small ¶ 22 ("Small Decl.").

class.  *Id.* ¶¶ 23–25.  They all lent their substantive knowledge of the industry, particularly about the experience of self-funded entities, to Plaintiffs' Counsel throughout the litigation.  *Id.* ¶ 23.  In response to broad document requests from Blue Cross, they produced thousands of documents and extensive data that involved both paper and electronic records from multiple custodians.  *Id.* ¶ 24.  Abatement produced more than 11,000 documents, Carpenters produced more than 19,000 documents, and Plumbers produced more than 30,000 documents.  *Id.*  The Union Health Funds also aided in drafting Plaintiffs' interrogatory responses—which numbered nearly 250 pages.  *Id.*  The 30(b)(6) deponent for Carpenters reviewed documents and prepared extensively for a deposition on a wide range of topics from BCBSM.  *Id.* ¶ 25.

Plaintiff The Shane Group filed its initial complaint against Blue Cross over seven years ago, in October 2010.[51]  Since then, Shane Group worked with Class Counsel to locate and produce relevant documents, respond to written discovery, and review filings.  *Id.* ¶¶ 8–9, 11–12.

Susan Baynard and Anne Noah provided important and indispensable service to the Settlement Class.  They both searched through their personal records multiple times to locate documents that were responsive to Blue Cross's discovery requests.[52]

---

[51] Hedlund Decl., Ex. 19, Declaration of Theodore B Bell ¶ 8 ("Bell Decl.").
[52] Hedlund Decl., Ex. 10, Declaration of Alyson Oliver ¶¶ 15, 17 ("Oliver Decl.").

They also worked to obtain responsive documents that were in the custody of third parties. *Id.* Plaintiffs Noah and Baynard also testified in their depositions, which required them to prepare, travel to Detroit from northern Michigan, and take time off work. *Id.* ¶¶ 16, 18.

Plaintiff Bradley Veneberg filed his initial complaint against Blue Cross over seven years ago, in October 2010.[53] Mr. Veneberg subsequently worked with Class Counsel to locate and produce relevant documents and respond to discovery requests. *Id.* ¶ 10. Mr. Veneberg was not required to testify in a deposition but would have been willing to do so. *Id.* ¶ 13.

Plaintiff Scott Steele filed his initial complaint against Blue Cross in January 2011.[54] Mr. Steele then worked with Class Counsel to identify and produce relevant documents and respond to Blue Cross's other discovery requests. *Id.*

### 2. The Proposed Incentive Awards Are Reasonable in Light of the Recovery Achieved for the Class

While the Class Representatives could have sat back and let someone else take on the task of prosecuting Defendant for its antitrust violations, they instead chose to take action—not only on their own behalf, but in order to recoup overcharges for all Class members. Each Class Representative undertook this responsibility and work without any expectation of compensation beyond their proportional share as a

---

[53] Bell Decl. ¶¶ 8–10.
[54] Oliver Decl. ¶ 14.

class member of any judgment or settlement.  They were always informed by Class Counsel that the Court alone would decide what, if any, incentive award they were entitled to for their efforts.[55]

The requested incentive awards total only 68.75% of the maximum awards that the Notice will indicate Class Counsel may request for the named Plaintiffs. The requested awards are in line with awards approved in other cases in light of each Class Representative's contributions to the case and would only begin to compensate the Class Representatives for the value of their time and resources spent on the litigation, and the risks and distractions they accepted, for the benefit of the Settlement Class.  Accordingly, Class Counsel request that the Court grant their request for incentive awards of $45,000 for Carpenters, $35,000 for Abatement, $35,000 for Plumbers, $20,000 for Shane Group, $10,000 for Susan Baynard, $10,000 for Anne Noah, $5,000 for Bradley Veneberg, and $5,000 for Scott Steele.

## IV.   **CONCLUSION**

For all the foregoing reasons, Class Counsel respectfully request that the Court approve Class Counsel's application for attorney fees, reimbursement of expenses, and payment of incentive award to the class representatives.

---

[55] Small Decl. ¶ 20; Bell Decl. ¶ 5–6; Oliver Decl. ¶ 12.

Dated: May 17, 2018                    Respectfully submitted,

/s/ Daniel E. Gustafson
Daniel E. Gustafson
Daniel C. Hedlund
Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone:  (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

Daniel A. Small
Brent W. Johnson
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
dsmall@cohenmilstein.com
bjohnson@cohenmilstein.com

E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan  48307
Telephone: (248) 841-2200
epm@millerlawpc.com

Fred T. Isquith
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
270 Madison Avenue
New York, New York, 10016
Telephone: (212) 545-4690
isquith@whafh.com

26

Theodore B. Bell
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLC**
70 West Madison Street, Suite 1400
Chicago, Illinois  60602
Telephone: (312) 984-0000
tbell@whafh.com

*Interim Class Counsel*

David H. Fink (P28235)
Darryl Bressack (P67820)
**FINK + ASSOCIATES LAW**
100 West Long Lake Rd, Suite 111
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkandassociateslaw.com

*Interim Liaison Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 17, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF, which will send notification of such filing to all parties of record. I further certify that I have caused the foregoing document to be sent electronically or via U.S. Mail to all individuals or entities who filed objections to the previous settlement agreement or, for those individuals or entities represented by counsel, their counsel.

Dated: May 17, 2018                    Respectfully submitted,

/s/ Daniel E. Gustafson
Daniel E. Gustafson
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone:  (612) 333-8844
dgustafson@gustafsongluek.com

*Attorney for Plaintiffs and the Class*