UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

THE SHANE GROUP INC.; BRADLEY
A. VENEBERG; SCOTT STEELE;
MICHIGAN REGIONAL COUNCIL OF
CARPENTERS EMPLOYEE BENEFITS
FUND; ABATEMENT WORKERS
NATIONAL HEALTH AND WELFARE
FUND; and MONROE PLUMBERS AND
PIPEFITTERS LOCAL 671 WELFARE
FUND,

Case No. 2:10-cv-14360

Honorable Denise Page Hood

**ORAL ARGUMENT REQUESTED**

     Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF
MICHIGAN,

     Defendant.

---

**MOTION FOR ATTORNEY FEES AND COSTS BY ADAC
AUTOMOTIVE, ALMA PRODUCTS COMPANY, BAKER COLLEGE,
BORROUGHS CORPORATION, EAGLE ALLOY INC., FISHER &
COMPANY INC., FOUR WINDS CASINO RESORT, FRANKENMUTH
BAVARIAN INN INC., GEMINI GROUP INC., GILL-ROY'S
HARDWARE/MORGAN PROPERTIES LLC, GRAND TRAVERSE BAND
OF OTTAWA AND CHIPPEWA INDIANS, HI-LEX CORPORATION,
HUIZENGA GROUP, KENT COMPANIES INC., LA BELLE
MANAGEMENT INC., MASTER AUTOMATIC MACHINE COMPANY
INC., MORBARK INC., PETOSKEY PLASTICS INC., SAF-HOLLAND
USA INC., STAR OF THE WEST MILLING COMPANY, TARUS
PRODUCTS INC., TERRYBERRY COMPANY LLC, THELEN INC.,
TRILLIUM STAFFING SOLUTIONS, TRUSS TECHNOLOGIES, AND
WADE TRIM GROUP INC.**

For the reasons stated in the accompanying brief, the Self-Insured Objectors ask this Court to award attorneys' fees and non-taxable costs pursuant to Federal Rules of Civil Procedure 23(h) and Rule 54(d)(2).

Pursuant to Eastern District of Michigan Local Rule 7.1(a), counsel certifies that he communicated with both Plaintiffs' counsel and Defendant's counsel regarding the nature of the motion and its legal basis. Counsel requested, but did not obtain, concurrence in the relief sought.

For the reasons set forth in the accompanying brief, the Self-Insured Objectors respectfully request that this Court award them $165,128.43 in attorneys' fees and non-taxable costs incurred in relation to the Self-Insured Objectors' September 24, 2014 Objection to the Proposed Class Action Settlement and their subsequent appeal. The Self-Insured Objectors reserve the right to seek additional costs and attorney fees related to their ongoing efforts in this case.

Respectfully submitted,

VARNUM LLP
*Counsel for Objectors*

Dated: September 14, 2018        By:   s/ Bryan R. Walters
Bryan R. Walters (P58050)
P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
brwalters@varnumlaw.com

13981260_1.docx

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

THE SHANE GROUP INC.; BRADLEY
A. VENEBERG; SCOTT STEELE;
MICHIGAN REGIONAL COUNCIL OF
CARPENTERS EMPLOYEE BENEFITS
FUND; ABATEMENT WORKERS
NATIONAL HEALTH AND WELFARE
FUND; and MONROE PLUMBERS AND
PIPEFITTERS LOCAL 671 WELFARE
FUND,

      Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF
MICHIGAN,

      Defendant.

Case No. 2:10-cv-14360

Honorable Denise Page Hood

**ORAL ARGUMENT REQUESTED**

---

## BRIEF IN SUPPORT OF MOTION FOR ATTORNEY FEES AND COSTS BY ADAC AUTOMOTIVE, ALMA PRODUCTS COMPANY, BAKER COLLEGE, BORROUGHS CORPORATION, EAGLE ALLOY INC., FISHER & COMPANY INC., FOUR WINDS CASINO RESORT, FRANKENMUTH BAVARIAN INN INC., GEMINI GROUP INC., GILL-ROY'S HARDWARE/MORGAN PROPERTIES LLC, GRAND TRAVERSE BAND OF OTTAWA AND CHIPPEWA INDIANS, HI-LEX CORPORATION, HUIZENGA GROUP, KENT COMPANIES INC., LA BELLE MANAGEMENT INC., MASTER AUTOMATIC MACHINE COMPANY INC., MORBARK INC., PETOSKEY PLASTICS INC., SAF-HOLLAND USA INC., STAR OF THE WEST MILLING COMPANY, TARUS PRODUCTS INC., TERRYBERRY COMPANY LLC, THELEN INC., TRILLIUM STAFFING SOLUTIONS, TRUSS TECHNOLOGIES, AND WADE TRIM GROUP INC.

# **TABLE OF CONTENTS**

**Page**

Table of Authorities.................................................................................ii

Question Presented ................................................................................. 1

Controlling or Most Appropriate Authority ......................................... 1

I.    Introduction ...................................................................................... 2

II.   Legal Standard ................................................................................ 3

III.  The Self-Insured Objectors Conferred A Benefit On The Class ................... 4

IV.  The Self-Insured Objectors Should Be Awarded Attorney Fees And Costs In The Amount of $165,128.43 ............................................................. 8

      A.   The Lodestar Approach Produces a Presumptively Reasonable Fee........................................................................................... 8

           1.    The amount of hours worked......................................... 9

           2.    The billing rate ........................................................... 10

      B.   Plaintiffs are also Entitled to Non-Taxable Costs ............................. 13

V.    Conclusion..................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Cases</u>

*B & G Min. Inc v. Dir., Office of Workers' Comp. Programs,*
  522 F.3d 657 (6th Cir. 2008) ............................................................ 11

*Blum v. Stenson,*
  465 U.S. 886 (1984) ......................................................................... 11

*Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview*
  *Raceway,*
  46 F.3d 1392 (6th Cir. 1995) ........................................................ 9, 10

*Cruz v. Local Union No. 3, Int'l Bd. of Elec. Workers,*
  34 F.3d 1148 (2d Cir. 1994) ............................................................. 10

*Gonter v. Hunt Valve Co.,*
  510 F.3d 610 (6th Cir. 2007) ........................................................... 11

*Gradisher v. Check Enforcement Unit Inc.,*
  2003 WL 187416 (W.D. Mich. Jan. 22, 2003) ................................. 13

*Granada Invs. Inc v. DWG Corp.,*
  962 F.2d 1203 (6th Cir. 1992) ............................................................ 8

*Hargrove v. Eaglepicher Corp.,*
  No. 2:10-cv-10946, 2012 WL 1668152 (E.D. Mich. May 10, 2012) ........... 14

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ......................................................................... 8, 9

*Howes v. Atkins,*
  668 F. Supp. 1021 (E.D. Ky. 1987) .................................................. 3, 4

*Imwalle v. Reliance Med. Prods, Inc.,*
  515 F.3d 531 (6th Cir. 2008) .............................................................. 9

*InvesSys Inc. v. McGraw-Hill Cos.,*
  369 F.3d 16 (1st Cir. 2004) .............................................................. 13

*Lonardo v. Travelers Indem. Co.*,
   706 F. Supp. 2d 766 (N.D. Ohio 2010)............................................................3

*Moore v. Menasha Corp.*,
   2013 WL 308960 (W.D. Mich. Jan. 25, 2013) ...............................................13

*Olden v. Gardner*,
   294 F. App'x 210 (6th Cir. 2008) ...............................................................1, 3

*Paeth v. Worth Twp.*,
   2010 WL 4867406 (E.D. Mich. Nov. 23, 2010) ............................................11

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986) ........................................................................................9

*Rankin v. Rots*,
   No. 02-cv-71045, 2006 WL 1791377 (E.D. Mich. June 27, 2006) ..............14

*Reed v. Rhodes*,
   179 F.3d 453 (6th Cir. 1999)...........................................................................9

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
   825 F.3d 299 (6th Cir. 2016).........................................................4, 5, 6, 7, 12

*Telluridge Mgmt. Solutions Inc. v. Telluride Inv. Grp.*,
   55 F.3d 463 (9th Cir. 1995)...........................................................................10

## **Rules**

Fed. R. Civ. P. 23(e) ..................................................................................2, 3, 6

Fed. R. Civ. P. 23(h) .....................................................................................1, 3

Fed. R. Civ. P. 54(d)(2) ....................................................................................3

## **Treatises**

Moore's Federal Practice § 54.155[1][b] ....................................................9, 11

Moore's Federal Practice § 54.190[2][b] ........................................................11

## Question Presented

Having conferred a benefit on the class, should the Self-Insured Objectors recover their costs and attorney fees related to their September 24, 2014 Objection to the Proposed Class Action Settlement and the ensuing appeal?

The Self-Insured Objectors Answer: Yes.

## Controlling or Most Appropriate Authority

1. Fed. R. Civ. P. 23(h).

2. *Olden v. Gardner*, 294 F. App'x 210, 221 (6th Cir. 2008).

## I.   __INTRODUCTION__

Without the efforts of the group of objectors represented by the Varnum law firm (the "Self-Insured Objectors"), the Proposed Class Action Settlement would have been approved despite nearly two hundred substantive exhibits being inappropriately sealed from public view (including critical expert reports bearing directly on liability and damages) and without a thorough examination of the fairness of the proposed settlement.  The Self-Insured Objectors filed an objection and then an appeal, ultimately succeeding in having the case remanded to this Court to "begin the Rule 23(e) process anew."  The Sixth Circuit vacated all orders sealing documents and instructed this Court to undertake "a careful analysis" of the fairness of the settlement.

The Self-Insured Objectors' efforts undoubtedly conferred a benefit on the class, particularly the unnamed class members, by (1) allowing them to review nearly all of these previously-sealed documents in order to determine the adequacy of the proposed class action settlement before their right to bring a separate claim was extinguished; and (2) ensuring a thorough review of any proposed settlement took place.  While the Self-Insured Objectors continue to challenge the current Proposed Class Action Settlement, at this time they seek to recover their costs and fees related only to their first objection and the subsequent appeal, reserving any claim related to their ongoing efforts for a later date.

## II.   <u>LEGAL STANDARD</u>

In class action cases, District Courts have discretion to award reasonable attorney fees, including fees for attorneys representing objectors to a proposed settlement. See FRCP 23(h) and Committee Notes to Subdivision (h) ("In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as attorneys who acted for the class before certification but were not appointed class counsel, or <u>attorneys who represented objectors to a proposed settlement</u> under Rule 23(e) or to the fee motion of class counsel.") (emphasis added). Objectors seeking attorney fees must file a motion under Rule 54(d)(2). FRCP 23(h); FRCP 54(d)(2).

The Sixth Circuit has recognized that "[f]ees and costs may be awarded to the counsel for objectors to a class action settlement if the work of the counsel produced a beneficial result for the class." *Olden v. Gardner*, 294 F. App'x 210, 221 (6th Cir. 2008); *see also Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 803-04 (N.D. Ohio 2010) ("Sixth Circuit case law recognizes that awards of attorneys' fees to objectors may be appropriate where the objector provided a benefit to the class by virtue of their objection.").

Finding a "beneficial result for the class" does not require an increase in the settlement amount. For example, in *Howes v. Atkins*, 668 F. Supp. 1021, 1027 (E.D. Ky. 1987), the District Court awarded attorney fees to counsel for objectors

because "their efforts [were] of assistance to the court," even though they not improve the terms of the settlement. The objectors in that case "made a vigorous attack on the settlement and pursued extensive discovery" and "ably performed the role of devil's advocate." *Id.* Though the terms of the settlement did not improve, the court was "much more comfortable in approving the settlement" as a result of the involvement of objectors' counsel, such than an award of attorney fees to objectors' counsel was appropriate. *Id.* (awarding fees to counsel for objectors on a percentage basis).

## III.   THE SELF-INSURED OBJECTORS CONFERRED A BENEFIT ON THE CLASS

Here, the Self-Insured Objectors have conferred substantial benefits on the class. First, dozens of critical documents have been unsealed as a result of the Self-Insured Objectors' efforts, allowing class members to better assess the merits of the case and the value of the settlement. Before the Self-Insured Objectors' objection, the Court had "sealed most of the parties' substantive filings from public view, including nearly 200 exhibits and an expert report upon which the parties based a settlement agreement that would determine the rights of those millions of citizens." *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 302 (6th Cir. 2016).

The Sixth Circuit explained why the unsealing of these documents was so critical to proper functioning of the class action settlement approval process:

In sum, the district court abused its discretion when it sealed the various filings and 194 exhibits in this case. That is most acutely true with respect to Leitzinger's report. And <u>one cannot say in any realistic sense that the error was harmless</u>. It is true, as the district court said during the fairness hearing, that the self-insured employers in the Self-Insured Objectors know the amounts they paid for health care during the periods in which the MFN and MFN-plus agreements were in effect. What those employers and other class members cannot know, however, is whether it does or does not make sense to them to accept about 12 cents on the dollar of their damages as estimated in Leitzinger's report, or less than 4 cents on the dollar of the award they might obtain at trial. To make that judgment, the class members must be able actually to read the report—for which, under the settlement agreement, the class members would be required to pay more than $2 million—along with the scores of other documents they could not read in the court record below. Only then can they assess for themselves the likelihood of success on their claims.

<u>Class members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record</u>. All of the named parties to this case signed on to the proposed settlement only after reviewing the expert report and other sealed documents in the record. The unnamed class members are entitled to do the same, subject to the rights of the parties and third parties to make the showings necessary to seal. <u>The Rule 23(e) objection process seriously malfunctioned in this case</u>, and that is reason enough to vacate the district court's approval of the settlement.

*Shane Grp.*, 825 F.3d at 308–09 (emphasis added).

On remand, this Court heard several motions regarding the sealing and redaction of documents filed in the public record, ultimately ordering the unsealing and refiling of dozens of documents. *See* April 17, 2018 Order Regarding Various Motions to Seal or Redact, Doc. #322; April 20, 2018 Notice of Supplementing the

Public Record Consistent with the Court's April 17, 2018 Order, Doc. #325. The ability of unnamed class members to review these documents is an indispensable part of the Rule 23(e) process and without the Self-Insured Objectors' efforts, this part of the process would have been eliminated entirely. By correcting this "serious[ ] malfunction[ ]," the Self-Insured Objectors undoubtedly conferred a benefit on the class, particularly the unnamed class members. *Shane Grp.*, 825 F.3d at 308–09.

In addition to unsealing dozens of documents, the Self-Insured Objectors' efforts also resulted in remand to this Court for a more thorough review of the fairness of the settlement terms, which necessarily required a much closer analysis of the merits of the underlying legal dispute. The Sixth Circuit explained the sort of review that this Court must engage in for the benefit of the class:

> [T]he district court must carefully scrutinize whether the named plaintiffs and counsel have met their fiduciary obligations to the class and whether the settlement itself is fair, reasonable, and adequate. …
> The fairness of each settlement turns in large part on the bona fides of the parties' legal dispute. Thus, a district court (like this court) cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. That means the district court cannot substitute the parties' assurances or conclusory statements for its independent analysis of the settlement terms. Nor can the court merely recite the respective arguments of the objectors and parties, and then offer up platitudes about the risks of litigation generally. Instead, the district court must specifically examine what the unnamed class members would give up in the proposed settlement, and then explain why—given their likelihood of success on the

merits—the tradeoff embodied in the settlement is fair to unnamed members of the class.

The district court did not make that examination here. The court's discussion of the plaintiffs' likelihood of success runs only a single paragraph, in which it stated that "extensive discovery has been held in this case"—which says nothing either way about the likelihood of success—and that "in light of the Plaintiff[s'] expert's analysis as to damages, the Court finds that the settlement amount reached by the parties is fair in light of any success the Plaintiffs may obtain on the merits of the case." Op. at 26–27. But the latter point is conclusory, and does not explain why it would be fair for the unnamed class members to receive only 12% of Leitzinger's estimate of their damages, and only 4% of the damages to which they would be entitled (based on that estimate) if they prevailed at trial. The district court also mentioned the "significant risk that the class members could receive nothing or some negligible amount in damages at trial or on appeal." Op. at 27. But again that statement is either conclusory, or just a statement about the risks of litigation generally. The district court's opinion thus leaves an "analytical gap" between the data on which it relies—namely the court record, much of which was sealed— and its conclusion that the settlement is fair to unnamed class members. <u>On remand, the district court needs to fill that gap with a careful analysis that acknowledges what the unnamed class members would give up in this settlement and what the named class members and class counsel would receive, and includes a reasoned explanation as to whether—in light of the merits of this case specifically—the settlement is fair.</u>

*Shane Grp.*, 825 F.3d at 309–10 (internal citations and quotations omitted, emphasis added).

Thus, the Sixth Circuit provided very clear guidelines to assist this Court in conducting a review of the merits of the underlying dispute sufficient to enable the Court to assess the fairness of the proposed settlement. Because of the Self-Insured Objectors' efforts, the class has the benefit of a renewed fairness review, this time

with clear directions from the Sixth Circuit that were designed to protect the interests of class members.

## IV. THE SELF-INSURED OBJECTORS SHOULD BE AWARDED ATTORNEY FEES AND COSTS IN THE AMOUNT OF $165,128.43.

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "All that is necessary is 'evidence supporting the hours worked and rates claimed.'" *Granada Invs. Inc v. DWG Corp.*, 962 F.2d 1203, 1208 (6th Cir. 1992) (quoting *Hensley*, 461 U.S. at 433). Here, the Self-Insured Objectors' counsel should be able to recover fees and costs incurred in furtherance of its objection to the Proposed Class Action Settlement and the subsequent appeal, which, using the lodestar approach and adding non-taxable costs, amounts to $165,128.43. These fees and non-taxable costs do not include any costs or fees related to the objectors' ongoing efforts in the case since the Sixth Circuit's decision, for which the objectors' reserve the right to seek costs and fees in the future.

### A. THE LODESTAR APPROACH PRODUCES A PRESUMPTIVELY REASONABLE FEE.

"It is well settled that the 'lodestar' approach is the proper method for determining the amount of reasonable attorneys' fees." *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401

8

(6th Cir. 1995). "There is a 'strong presumption' that this lodestar figure represents a reasonable fee." *Id.* at 1401–02 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). The district court must calculate the lodestar amount "by multiplying the reasonable number of hours billed by a reasonable billing rate." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

### 1.    The amount of hours worked

"Every court of appeals has expressed a preference that documentation of the claimed hours be in the form of contemporaneously prepared time records." Moore's Federal Practice § 54.155[1][b]. "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 433–34; *see also City of Riverside v. Rivera*, 477 U.S. 561, 579 (1986) (finding that just because the fee movant sought compensation for every hour expended did not establish that "billing judgment" had not been exercised because district court found that all hours were reasonably invested); *Imwalle v. Reliance Med. Prods, Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) ("The key requirement for an award of attorney fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine

with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.").[1]

Here, the Self-Insured Objectors seek attorney fees for 382.45 hours of work through the conclusion of their appeal to the Sixth Circuit.[2]  Declaration of P. Rynders, ¶ 14 (**Exhibit A**).  The total hours of work for which Plaintiffs' counsel seeks fees includes 267.75 hours for equity partner Bryan Walters, who performed the bulk of Varnum's work related to this case.  *See* Self-Insured Objectors' Counsels' Time Report (**Exhibit B**).  This tally of hours only includes hours that were reasonable and necessary to competently represent the objectors efforts to challenge the first Proposed Class Action Settlement.  *See* Rynders Decl. ¶¶ 12 - 14 (**Exhibit A**).

## 2.    <u>The billing rate</u>

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence in addition to the attorney's own affidavits that the requested rates are in line with those prevailing in the

---

[1] Travel time is generally properly included in the Lodestar component of hours.  *Telluridge Mgmt. Solutions Inc. v. Telluride Inv. Grp.*, 55 F.3d 463, 467 (9th Cir. 1995); *Cruz v. Local Union No. 3, Int'l Bd. of Elec. Workers*, 34 F.3d 1148, 1161 (2d Cir. 1994) (finding that the district court abused its discretion to exclude all travel time requested).

[2] Time spent on the fee issue is compensable in the fee award itself.  *See Grandview Raceway*, 46 F.3d at 1401.  Accordingly, the Self-Insured Objectors reserve the right to supplement their billing entries up to and through a hearing on this Motion.

community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (emphasis added); Moore's Federal Practice § 54.155[1][b] ("The evidentiary submissions should establish, by affidavit or otherwise, the customary rates charged by the fee movant's counsel in similar litigation."). "State Bar surveys of rates may be an appropriate guide, although they are not dispositive in establishing the market rate." *Paeth v. Worth Twp.*, 2010 WL 4867406, at *3 (E.D. Mich. Nov. 23, 2010) (citing *B & G Min. Inc v. Dir., Office of Workers' Comp. Programs*, 522 F.3d 657, 664 (6th Cir. 2008)). According to Moore's, "the most convincing evidence of the market rate is the rate that counsel charges a client in similar actions." Moore's Federal Practice § 54.190[2][b].

"The rate awarded should be the prevailing market rate in the relevant community." *Id.* § 54.155[1][b]. "All federal courts agree that the relevant community for purposes of the lodestar is the forum community. If counsel for the fee movant is from out-of-town, the prevailing market rate should therefore be that of the community in which the court is located, not the community in which the attorney actually practices." *Id.* § 54.190[2][b][D]. Either current or historical market rates may be considered. *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617 (6th Cir. 2007) ("[T]he district court has the discretion to choose either current or

historical rates so long as it explains how the decision comports with the ultimate goals of awarding reasonable fees.").

Here, Self-Insured Objectors' counsel's attorney fees request works out to an average hourly rate of $427 per hour. *See* Self-Insured Objectors Counsels' Time Report (**Exhibit B**). The bulk of the work was performed by equity partner Bryan Walters, whose hourly rate is $445.

The Self-Insured Objectors' counsel's rates are consistent with the prevailing market rates in the Eastern District of Michigan. Most on point, according to the one-year-old State Bar of Michigan 2017 Economics of Law Practice, the 25th to 95th percentile of attorneys' hourly rates in downtown Detroit (where this litigation occurred) ranges from $200 per hour to $550 per hour. State Bar of Michigan 2017 Economics of Law Practice, at 5 (**Exhibit C**). These rates substantially overlap with those of law firms with greater than 50 practitioners in a single location, with the 25th to 95th percentile ranging from $255 per hour to $573 per hour *Id.* at 4. Indeed, the rates for counsel for the self-insured objectors are far lower than the "Bentley rates" of up to $900 per hour (or more) being claimed by Plaintiffs' counsel. See *Shane Group*, 825 F.3d at 310. The Self-Insured Objectors propose that the Court use Varnum's actual average hourly rate of $427 per hour as the reasonable hourly rate for lodestar calculation.

Just as important, the rates that the Self-Insured Objectors' counsel used in this action are the rates that counsel would have charged in similar actions. Rynders Decl. ¶¶ 17 - 19. The rates at which the Self-Insured Objectors' counsel seeks to be compensated is similar to what lawyers of reasonably comparable skill, experience and reputation would charge. *Id.* The Self-Insured Objectors' counsel have excellent qualifications and significant experience in complex civil litigation. *Id.* ¶ 19. Indeed, given the Self-Insured Objectors' success, and the many other unnamed class members who will benefit from their efforts, it is difficult to conceive of an argument that the Self-Insured Objectors' counsel were not "worth" the proposed hourly rate.

This results in a lodestar calculation of $163,306.15 in attorney fees. This consists of 382.45 hours of attorney time at a billing rate of $427 per hour.

### B. PLAINTIFFS ARE ALSO ENTITLED TO NON-TAXABLE COSTS.

The non-taxable costs that the Self-Insured Objectors' attorneys incurred are recoverable as part of the attorneys' fees award. "The key question is whether . . . expenses are of a type billed separately to the client, i.e., not absorbed in the attorney's hourly rate as overhead." *Moore v. Menasha Corp.*, 2013 WL 308960, at *6 (W.D. Mich. Jan. 25, 2013); *Gradisher v. Check Enforcement Unit Inc.*, 2003 WL 187416, at *8 (W.D. Mich. Jan. 22, 2003); *InvesSys Inc. v. McGraw-Hill Cos.*, 369 F.3d 16, 22–23 (1st Cir. 2004) ("[T]he Supreme Court has endorsed the view

that *disbursements* made by an attorney and ordinarily billed directly to the client (that is, separately from the hourly or fixed fee) can properly be encompassed within the phrase 'attorney's fee.'").

Moreover, the Self-Insured Objectors are allowed to recover all of the non-taxable costs that were "reasonable and necessary expenses." *See Hargrove v Eaglepicher Corp.*, No. 2:10-cv-10946, 2012 WL 1668152, at *2 (E.D. Mich. May 10, 2012) (allowing for all of counsel's unreimbursed expenses because they were "reasonably spent and appropriately documented"); *Rankin v Rots,* No. 02-cv-71045, 2006 WL 1791377, at *3 (E.D. Mich. June 27, 2006 (allowing "photocopying, postage, travel, lodging, filing fees and Pacer expenses, long distance telephone, telecopier, computer database research, depositions expenses, and experts fees and expenses" because they were "reasonable and necessary" as shown by the plaintiffs' counsel's declaration and supporting exhibits).

Here, the Self-Insured Objectors seeks non-taxable costs in the amount of $1,822.28. *See* Self-Insured Objectors Counsel's Cost Report (**Exhibit D**) showing a detailed accounting of non-taxable costs that Plaintiffs' counsel would normally bill to the client. Partner Perrin Rynders carefully reviewed these costs to exclude any that would not have been billed to the Self-Insured Objectors, would not have normally been billed to any other client, were not reasonable, or were not necessary. Rynders Decl. ¶¶ 20 – 21 (**Exhibit A**).

14

The Self-Insured Objectors should be awarded $1,822.28 in non-taxable costs.

## V.    **CONCLUSION**

Having conferred a benefit on the class by filing its September 24, 2014 objection and pursuing a successful appeal, which resulted in remand for a closer analysis of the fairness of the settlement in light of the merits of the dispute and the unsealing of dozen of critical documents, the Self-Insured Objectors should be awarded the reasonable attorney fees and non-taxable costs in the amount of $165,128.43.    Any fees and non-taxable costs that the Self-Insured Objectors incurs in pursuing the present Motion for fees and costs should be determined and added to this amount as well.    The Self-Insured Objectors reserves the right to file a motion seeking additional costs and fees related to its ongoing efforts during the time period following remand from the Sixth Circuit Court of Appeals.

VARNUM LLP
*Counsel for Objectors*

Dated: September 14, 2018          By:    s/ Bryan R. Walters
                                                        Bryan R. Walters (P58050)
                                                        P.O. Box 352
                                                        Grand Rapids, MI 49501-0352
                                                        (616) 336-6000
                                                        brwalters@varnumlaw.com

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 14, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

By: <u>s/ Bryan R. Walters    </u>
   Bryan R. Walters (P58050)
   P.O.  Box 352
   Grand Rapids, MI  49501-0352
   (616) 336/6000
   <u>brwalters@varnumlaw.com</u>

13782828