# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| THE SHANE GROUP INC. et al. | ) | |
| | ) | |
| Plaintiffs, on behalf of themselves And all others similarly situated | ) ) | Case No. 2:10-cv-14360 |
| | ) | Judge Denise Page Hood |
| Plaintiffs, | ) | Magistrate Judge Mona K. Majzoub |
| | ) | |
| v. | ) | |
| | ) | |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, | ) ) | |
| | ) | |
| Defendant. | ) | |

# BLUE CROSS BLUE SHIELD OF MICHIGAN'S MEMORANDUM IN SUPPORT OF MOTION FOR FINAL <u>APPROVAL OF CLASS ACTION SETTLEMENT</u>

# STATEMENT OF ISSUES PRESENTED

1. Is the Settlement fair, reasonable, and adequate?

   BCBSM's answer: **Yes.**

2. Is the Plan of Allocation fair, reasonable, and adequate?

   BCBSM's answer: **Yes.**

# **CONTROLLING AUTHORITY**

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513 (6th Cir. 1993)

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT.........................................................................................................2

   A. The Varnum Objectors ignore that the factual record did not support Plaintiffs' claims and that Plaintiffs were unlikely to succeed..............................2

   B. The Varnum Objectors ignore the risk the Class faced because of BCBSM's motion to exclude Dr. Leitzinger and base their objections on an excluded portion of Dr. Vellturo's report. ........................................................6

   C. The claims process is not overly burdensome...................................................8

   D. Class Counsel's economic incentive to maximize recovery aligns with Class Members' incentives, and so suggests the Settlement is fair......................10

III. CONCLUSION ..................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                               **Page(s)**

*Aetna, Inc. v. Blue Cross Blue Shield of Michigan*,
   No. 11-15346, 2015 WL 1646464 (E.D. Mich. Apr. 14, 2015) ........................... 4

*B & H Med., L.L.C. v. ABP Admin., Inc.*,
   354 F. Supp. 2d 746 (E.D. Mich. 2005), *aff'd*, 526 F.3d 257 (6th
   Cir. 2008) .......................................................................................................... 11

*City of Pontiac v. Blue Cross Blue Shield of Michigan*,
   No. 11-10276, 2012 WL 1079895 (E.D. Mich. Mar. 30, 2012) ......................... 5

*Health Alliance Plan of Michigan v. Blue Cross Blue Shield of
Michigan Mut. Ins. Co.*,
   No. 14-13788, 2017 WL 1209099 (E.D. Mich. Mar. 31, 2017) ......................... 5

*Michel v. WM Healthcare Sols., Inc.*,
   No. 1:10-CV-638, 2014 WL 497031 (S.D. Ohio Feb. 7, 2014) ....................... 11

*Rawlings v. Prudential-Bache Props., Inc.*,
   9 F.3d 513 (6th Cir. 1993) ................................................................................ 11

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
   825 F.3d 299 (6th Cir. 2016) ....................................................................... 1, 12

*In re: Auto. Parts Antitrust Litig.*,
   No. 12-MD-02311, 2016 WL 8201483 (E.D. Mich. Dec. 28, 2016) ............... 10

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of
Am. v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) ............................................................................. 5

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
   436 Fed. App'x 496 (6th Cir. 2011) ................................................................. 10

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) ........................................................................... 10

## I. INTRODUCTION

The Amended Class Action Settlement (Dkt. 292-2) ("Settlement") is fair, reasonable, and adequate in light of the high risk of a complete loss the Class faced at each remaining stage of this case. Indeed, after full discovery, experienced Class Counsel reviewed the record and, considering the substantial litigation risk versus the amount and form of relief offered, determined that the Settlement is a fair tradeoff and beneficial to the Class Members.[1] For the reasons explained below, they made the right choice.

The only objectors to the Settlement do little to challenge Class Counsel's professional judgment. Indeed, even though the objectors had access to the unsealed record for years, all they did with it was repeat their objections from the last approval process and cherry-pick certain portions of two expert reports that were at serious risk of exclusion or already had been excluded.

Simply put, these objections ignore the record and do not seriously challenge the benefits of the Settlement compared to the risk of continued litigation. This Court should approve the Settlement.

---

[1] The Sixth Circuit instructed the Court to assess what the unnamed Class Members were giving up through this Settlement and what the named Class Members and Class Counsel would receive, including "a reasoned explanation as to whether—in light of the merits of this case specifically—the settlement is fair." *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 310 (6th Cir. 2016).

## II. ARGUMENT

### A. The Varnum Objectors ignore that the factual record did not support Plaintiffs' claims and that Plaintiffs were unlikely to succeed.[2]

Almost two years ago, BCBSM filed a detailed memorandum in support of preliminary approval demonstrating numerous reasons why the factual record did not support Plaintiffs' claims and that they faced considerable risk at each remaining stage of the litigation. (Dkt. 290).[3] As described more fully in the memorandum, the factual record did not support the claim that the MFNs caused harm to competition (antitrust injury) or any particular class member (injury-in-fact), much less common harm across the proposed class, because:

*MFNs did not cause hospitals to raise prices*

- Hospital executives, including those at some of Michigan's largest hospitals (*e.g.*, Ascension, Beaumont, Botsford), unequivocally testified that no Differential MFN ever caused them to raise, or refuse to lower, another health insurer's price, and this testimony was corroborated by contemporaneous business records. (*Id.* at 14-15).

- The Differential MFNs did not increase any pre-existing discount differential between BCBSM and other insurers, and indeed reduced the differential in many instances. Moreover, hospitals

---

[2] Mr. Andrews, in his objection (Dkt. 341), makes the same meritless arguments as the Varnum Objectors.

[3] BCBSM incorporates its October 28, 2016 Response to Plaintiffs' Motion for Preliminary Approval of Settlement (Dkt. 290) by reference. BCBSM also incorporates by reference its prior responses to the Varnum and Andrews Objectors. (Dkt. 171).

2

- had ample room to offer lower prices to other insurers if they wanted to do so. (*Id.* at 15).

- BCBSM's use of MFNs was inconsistent across Michigan, and BCBSM's hospital payments were designed to shore up the finances of hospitals that were in dire straits due to government underpayments and the financial crisis. (*Id.* at 9-13).

- The Equal-To MFNs were almost exclusively used at small PG5 hospitals and, like Differential MFNs, were designed to prevent free-riding.[4]

*MFNs did not affect other insurers' ability to compete*

- BCBSM's competitors uniformly testified that they could compete at the same, or even higher, rates than BCBSM, so the Equal-To MFNs had no effect on competition. (*Id.* at 24-26).

- Many competitors used MFNs in Michigan. (*Id.* at 31-32).

- During the period when the MFNs were in effect, BCBSM's competitors grew, and the market became more competitive—the opposite result that Plaintiffs' theory would predict. (*Id.* at 20-22).

Rather than addressing these and other significant hurdles to recovery and explaining why, in light of the record, a higher settlement was warranted, the Varnum Objectors ignore these issues and instead largely rehash their objections from 2014. These objections are unpersuasive.

---

[4] Because BCBSM was guaranteeing the hospitals a margin to help shore up their finances, the MFNs protected BCBSM's investment in the hospitals from being exploited by competing insurers, who might, without contributing, seek to free-ride on BCBSM's payments. (Dkt. 290 at 17). Put another way, hospitals are community assets that are used by customers of all commercial insurers, and the MFNs ensured that BCBSM, by investing in the hospitals, would not be put in a worse competitive position.

3

First, the Varnum Objectors rely on the existence of an abandoned Department of Justice ("DOJ") lawsuit over the MFNs without acknowledging that those allegations were never tested at summary judgment or at trial, much less proven. Dkt. 343 ("Varnum Objections") at 4-5. Moreover, the DOJ did not have to prove that it suffered antitrust injury (let alone commonly across a class), so its decision to bring a lawsuit says nothing about the likelihood of success of private class action litigation. Further, the Court, in a related case, barred from trial references to other MFN litigations and the DOJ's investigation. *Aetna, Inc. v. Blue Cross Blue Shield of Michigan*, No. 11-15346, 2015 WL 1646464, at \*11 (E.D. Mich. Apr. 14, 2015).

Second, the Varnum Objectors claim that Michigan's passage of a law banning all insurers from using MFNs in hospital contracts is "very strong evidence" that the MFNs were anticompetitive. Varnum Objections at 5. It is not. It could just as easily suggest that before Michigan passed the law, MFNs were permitted. Moreover, the Court, in a related case, excluded from trial any reference to this change in law because it was "not relevant" to whether MFNs caused an anticompetitive effect. *Aetna*, 2015 WL 1646464, at \*6.

Third, the Varnum Objectors also point to the supposed "failure" of BCBSM's dispositive motions in related litigations in support of their argument that if Plaintiffs' claims "had no likelihood of success on the merits" BCBSM's

4

dispositive motions would have been granted.[5] Varnum Objections at 11. As this Court is aware, however, the only dispositive motions upon which it has ruled are motions to dismiss (and it granted two of those: one complete dismissal and one partial dismissal).[6] The Court has not ruled on a summary judgment motion in this or any related case, and thus BCBSM's dispositive motions have not "failed," much less "failed" in a way that suggests Plaintiffs had some great chance of success on the merits.

The Varnum Objectors—even with the benefit of an unsealed record—opt for rehashed platitudes instead of any analysis of the substantial litigation risks the factual record posed to the Class Members. These objections are inadequate to overcome Class Counsel's considered judgment and the subsequent negotiated Settlement.

---

[5] The Varnum Objectors' "no likelihood of success" standard is not the standard for approving a settlement. *See Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). It is more than enough that Plaintiffs faced long odds of greater success due to, among other things, the weak factual record and risked a complete loss at each remaining stage of the litigation.

[6] *City of Pontiac v. Blue Cross Blue Shield of Michigan*, No. 11-10276, 2012 WL 1079895 (E.D. Mich. Mar. 30, 2012); *Health Alliance Plan of Michigan v. Blue Cross Blue Shield of Michigan Mut. Ins. Co.*, No. 14-13788, 2017 WL 1209099 (E.D. Mich. Mar. 31, 2017).

> **B.** **The Varnum Objectors ignore the risk Plaintiffs faced because of BCBSM's motion to exclude Dr. Leitzinger and base their objections on an excluded portion of Dr. Vellturo's report.**

The only "new" arguments the Varnum Objectors make about the supposed strength of Plaintiffs' case relate to the expert reports of Dr. Leitzinger (the Plaintiffs' expert) and Dr. Vellturo (one of Aetna's experts). Varnum Objections at 5-11. Like their other arguments, rather than confront the obvious infirmities with these experts' opinions, the Varnum Objectors ignore them and pretend that these reports were unblemished.

BCBSM filed a motion to exclude Dr. Leitzinger's report. (Dkt. 140). Dr. Leitzinger's report had a significant chance of being excluded because:

- Dr. Leitzinger admitted that he did not undertake *any* independent factual analysis of the record to determine whether any observed price increases were attributable to factors other than MFNs, and therefore his method was unreliable.[7] (*Id.* at 5-6, 19-20).

- Dr. Leitzinger attributed the entirety of any price difference to the MFNs without controlling for other factors that could have caused price differences, such as BCBSM's substantially larger patient volume or provider bargaining power. (*Id.* at 17-22).

- Dr. Leitzinger's model was riddled with disqualifying errors including that it (1) resulted in "false positives" by showing damages attributable to MFNs even at hospitals without MFNs; (2) did not use a valid benchmark to compare price differences; and (3) did not "fit" Plaintiffs' theory of damages. (*Id.* at 8-14, 22-25).

---

[7] For example, Dr. Leitzinger did not consider the testimony by the hospitals that the MFNs never caused them to increase, or refuse to lower, prices to other insurers. *See supra* § II.A.

6

After reviewing BCBSM's motion to exclude their class expert, Class Counsel did not respond. Instead, after weighing the substantial risk of loss against the amount and form of relief offered, Class Counsel chose to settle the case.

In contrast, even though the Varnum Objectors had access to BCBSM's motion to exclude, they do not mention it. Rather, the Varnum Objectors pretend that Dr. Leitzinger's report should be credited in full without weighing the risk that his exclusion would have on any possible class. Thus, the Varnum Objectors provide no basis to conclude that Class Counsel's decision to settle after reviewing BCBSM's motion was objectionable.[8]

And like Class Counsel's decision, Aetna and BCBSM settled their litigation shortly after BCBSM filed a motion to exclude one of Aetna's experts, Dr. Vellturo. (Defendant's Motion to Exclude the Expert Testimony of Dr. Christopher Vellturo, Aetna Inc., v. Blue Cross Blue Shield of Michigan, No. 11-15346 (E.D. Mich. Oct. 25, 2013), ECF No. 262). Again, the Varnum Objectors make no mention of BCBSM's motion to exclude, much less explain why Dr.

---

[8] The Varnum Objectors emphasize that the "Consolidated Amended Complaint seeks $13.7 billion in damages," but tellingly cite nothing to support of that assertion. Varnum Objections at 1. The Varnum Objectors omit the relevant record cite because such figure does not appear anywhere in the Consolidated Amended Complaint. In fact, Plaintiffs expressly plead that their damages were "presently undetermined." (Dkt. 72 ¶¶ 123, 127). And though the Sixth Circuit made reference to the amended complaint seeking $13.7 billion in damages, it too does not cite any source in support of that damages figure.

7

Vellturo's report should be relied upon here. Perhaps more importantly, however, while the Varnum Objectors stake their assertion that the Settlement is too low on Dr. Vellturo's analysis of supposed overcharges, Varnum Objections at 9, they completely ignore that the Court *already excluded that exact part of Dr. Vellturo's report as baseless* in a related litigation. *Aetna*, 2015 WL 1646464, at *13-14.

Although the Varnum Objectors professed their need to analyze the record to be able to evaluate the Settlement, their current objection is notable for how much of the record it ignores. The Varnum Objectors have done nothing to assess the risk that Dr. Leitzinger's expert report would have been excluded and fail to even acknowledge that one of the pillars of their objection was excluded. Therefore, the Varnum Objectors provide no basis to conclude that Class Counsel's assessment of the substantial risk Plaintiffs faced was wrong.

**C.    The claims process is not overly burdensome.**

The claims process for self-insured plans is designed to align with Plaintiffs' theory of harm by requiring proof of payments to (1) hospitals with MFNs where Dr. Leitzinger's model showed harm; (2) hospitals with MFNs where Dr. Leitzinger's model showed no harm; and (3) hospitals with no MFNs.[9] To qualify for payment, a Class Member need only to provide a hospital bill or "other record"

---

[9] Although Dr. Leitzinger's report faced substantial risk of exclusion, the Settlement is appropriately tied to Plaintiffs' theory of class-wide harm.

so the claims administrator can determine which of the above categories applies to the payment, when the claim took place to assess eligibility, and the amount of the payment. Some proof of payment is required, and the process implemented here requires substantially less of Class Members to receive a payment than if this case went to trial.

The Varnum Objectors' only argument that the claims process is burdensome is to point to a different process in a single settlement (Neurontin) in a different market between different parties. The Neurontin settlement is simply inapposite and the Varnum Objectors are attempting to place an obligation on BCBSM that does not exist. Indeed, by agreement in this case, BCBSM is expressly released from any such role in the Settlement administration process. Settlement ¶ 66 ("BCBSM shall have no obligation, responsibility or liability with respect to the investment, management, allocation, administration or distribution of the Settlement Fund."); *see also* Settlement ¶¶ 51, 72 ("In no event shall BCBSM be obligated to pay anything in addition to the Settlement Amount, including . . . settlement administration costs").

BCBSM waived any reversionary interest in the Settlement fund, so it will pay the same amount regardless of the number of claims that are filed. Settlement ¶ 54. Thus, BCBSM has no incentive to implement a claims process that will

9

reduce the number of claims. Moreover, Class Counsel have access to mountains of claims data if they had chosen to use it for settlement administration purposes.

### D. Class Counsel's economic incentive to maximize recovery aligns with Class Members' incentives, and so suggests the Settlement is fair.

Experienced Class Counsel engaged in extensive discovery—exchanging millions of documents, taking and defending scores of depositions, and investing millions of dollars in expert analysis—and determined the Class faced daunting odds of prevailing on the merits or achieving a larger settlement through continued litigation. Exercising their professional judgment about the risk of loss, Class Counsel did what any sensible counsel would do: they obtained the most favorable settlement they could. Such exercise of judgment is entitled to deference. *In re: Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2016 WL8201483, at *5 (E.D. Mich. Dec. 28, 2016) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." (quoting *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983))).

This is not a case in which Class Counsel is seeking payment without doing substantial work. In any event, if the Court believes Class Counsel's fee request or any incentive payment to be excessive, the Court should modify either as it sees fit. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. App'x 496, 498-499 (6th

Cir. 2011) (collecting cases); *Michel v. WM Healthcare Sols., Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *11 (S.D. Ohio Feb. 7, 2014).

  The Varnum Objectors question Class Counsel's motives for entering into this Settlement, but the fact that Class Counsel's payment is directly proportionate to the size of the Settlement dispels any notion that Class Counsel was working at cross purposes to the Class Members. The Sixth Circuit has recognized that the percent of settlement method, in most cases, best aligns plaintiff counsels' and class members' economic interest. *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Indeed, if the amount Class Counsel seeks as a percentage is converted into a lodestar multiplier, it shows that Class Counsel handled this case ***at a substantial loss***, thus confirming that this was not an early settlement designed to benefit Class Counsel. Put bluntly, Class Counsel would not settle this case at a loss if there was a material chance that continued litigation would result in a better outcome. Indeed, the Varnum Objectors' recommended strategy—that Class Counsel continue to litigate these antitrust issues even after recognizing that discovery exposed significant weaknesses in the case—could be sanctionable. *B & H Med., L.L.C. v. ABP Admin., Inc.*, 354 F. Supp. 2d 746, 750 (E.D. Mich. 2005), *aff'd*, 526 F.3d 257 (6th Cir. 2008) (awarding sanctions against plaintiff's counsel for the "press forward at all costs" litigation strategy when

discovery failed to uncover evidentiary support for the claims asserted in the complaint).

The only reasonable inference to be drawn—based on the record as a whole and the law—strongly supports the finding that Plaintiffs' odds of greater success were limited and the risks of continued litigation outweighed the benefits of a negotiated arm's length resolution. If there was more money to be had, Class Counsel had every economic incentive to have aggressively advocated for it.

## III. CONCLUSION

In its opinion remanding the Settlement for additional review, the Sixth Circuit directs this Court to "specifically examine what the unnamed class members would give up in the proposed settlement, and then explain why—given their likelihood of success on the merits—the tradeoff embodied in the settlement is fair to unnamed members of the class." *Shane Grp.*, *Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016). As demonstrated by the foregoing and described in detail in BCBSM's earlier memorandum in support of preliminary approval (Dkt. 290), the Class Members gave up very little in light of the substantial risk of recovering nothing, and the Court should grant final approval to the Settlement.

Dated: October 16, 2018

Robert A. Phillips (P58496)
BLUE CROSS BLUE SHIELD OF MICHIGAN
600 Lafayette East, MC 1925
Detroit, MI 48226
313-225-0536
rphillips@bcbsm.com

Thomas Van Dusen (P3062)
BODMAN PLC
201 West Big Beaver Road
Suite 500
Troy, MI 48084
248-743-6076
tvandusen@bodmanlaw.com

Thomas J. Rheaume, Jr.
BODMAN PLC
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226
303-259-7777
trheaume@bodmanlaw.com

Respectfully submitted,

/s/    Todd M. Stenerson
Todd M. Stenerson (P51953)
Rachel E. Mossman (Adm. E.D. MI, DC Bar 1016255)
SHEARMAN & STERLING LLP
401 9th Street NW
Suite 800
Washington, DC 20004
202-508-8000
Todd.Stenerson@shearman.com

*Attorneys for Defendants*

13

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2018, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send electronic notices of the same to all counsel of record. I further certify that I have caused the foregoing document to be sent by email to all individuals or entities who filed objections to the Settlement Agreement or, for those individuals or entities represented by counsel, their counsel.

>*/s/ Todd M. Stenerson*
>Todd M. Stenerson
>Shearman & Sterling, LLP
>401 9th Street, N.W., Suite 800
>Washington, DC 20004
>202-508-8000
>todd.stenerson@shearman.com