# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

THE SHANE GROUP, INC., et al.,

     Plaintiffs,

                                      Case No. 10-CV-14360

v.                                 (Class Action Matter)

                                      HON. DENISE PAGE HOOD

BLUE CROSS BLUE SHIELD OF MICHIGAN,

     Defendant.

_____/

## ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN ALLOCATION; GRANTING CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PAYMENT OF INCENTIVE AWARDS TO CLASS REPRESENTATIVES; AND GRANTING IN PART AND DENYING IN PART THE VARNUM GROUPS' MOTION FOR ATTORNEY FEES AND COSTS

## I.     BACKGROUND

On June 22, 2012, a Consolidated Class Action Amended Complaint was filed against Defendant Blue Cross Blue Shield of Michigan ("Blue Cross") alleging: Unlawful Agreement in Violation of § 1 of the Sherman Act under the Rule of Reason (Count I); Unlawful Agreements in Violation of Section 2 of the Michigan Antitrust Reform Act, M.C.L. § 445.772 (Count II). (Doc. No. 78) The class action seeks to recover overcharges paid by purchasers of Hospital Healthcare Services directly to hospitals in Michigan. These overcharges resulted from the anticompetitive acts by

Blue Cross. (Am. Comp., ¶ 1) Blue Cross is a Michigan nonprofit healthcare corporation headquartered in Detroit, Michigan. (Am. Comp., ¶ 18) Blue Cross provides, directly and through its subsidiaries, health insurance and administrative services, including preferred provider organization ("PPO") health insurance products and health maintenance organization ("HMO") health insurance products. (Am. Comp., ¶ 18)

After a Fairness Hearing, this Court entered an Order Approving Settlement and Final Judgment on March 31, 2015. (Doc. Nos. 213, 214, 215) Certain Objectors appealed the matter. (Doc. Nos. 216, 219, 221) On June 7, 2016, the Sixth Circuit Court of Appeals issued its opinion stating that this Court "must begin the Rule 23(e) process anew." *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, 311 (6th Cir. 2016). On appeal was the sealing of various filings by the parties from public view. The Sixth Circuit found that the unnamed class members were entitled to review the sealed documents, subject to the rights of the parties and third parties to make the showings necessary to seal, to determine the bases of the proposed settlement.

On remand, the Court entered a more specific Order Regarding Various Motions to Seal or Redact. (Doc. No. 322) The Court thereafter entered an Order Granting Preliminary Approval to Proposed Class Settlement on April 17, 2018. (Doc.

No. 323)  The Court set a date for the Fairness Hearing on November 8, 2018, 2:00 p.m.  Objections were filed by Christopher Andrews on August 22, 2018 (Doc. Nos. 341 and 344) and entities represented by the law firm of Varnum LLP on September 14, 2018 (Doc. No. 343)

## II.  FAIRNESS HEARING/MOTION FOR FINAL APPROVAL

### A.  Rule 23

Rule 23 of the Rules of Civil Procedure governs the Court's determination of whether the settlement is fair.  Pursuant to Fed. R. Civ. P. 23(e)(2), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.  The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:  If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."  The factors to be determined at the fairness hearing are:  (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (2007).

### B.    Objections Filed

#### 1.    Christopher Andrews

Andrews lists several issues including: that the settlement unfairly benefits the named plaintiffs and class counsel; the defective and unbinding preliminary approval order and amended agreement; the undocumented and excessive expenses and costs including those of the administrator; the bloated and illegal hourly rates and number of hours with lack of evidentiary proof, like time sheets and receipts; the excessive incentive awards; the low damage amount returned to the class and low claims rates; the lack of a claims administration process; the Blue Cross heavily backed cy pres designee is unacceptable; that substantial recovery of more than $30 million based on the evidence is possible against Blue Cross; that the settlement is unfair and unreasonable; that the settlement is not in the best interests of the class members; the plaintiffs lack Article III standing; the settlement is not in the public interest; that the settlement runs contrary to public policy; the settlement violates the Due Process Clause; Class Counsel has breached its fiduciary duty of the class by putting its own interests ahead of the class; the settlement provides no meaningful relief to the class; continued litigation does not pose substantial risks in establishing liability and damages.

### 2.     The Varnum Group Objections

The self-insured Objectors, represented by the Varnum firm ("Varnum Group"), filed a joint objection asserting: 1) the proposed settlement fund is woefully inadequate; 2) the attorney fees requested of class counsel are excessive and not supported by the record; 3) the proposed settlement gives an improper "bounty" to the named Plaintiffs; 4) the claims process is unnecessarily burdensome.

They argue that under the "preferential treatment" standard, although not included in the seven UAW factors in evaluating the fairness of a settlement, the Sixth Circuit also looked to whether the settlement gives preferential treatment to the named plaintiffs and class counsel, citing *Greenberg v. Procter & Gamble Co.* (*In re Dry Max Pampers Litig.*), 724 F.3d 713, 719 (6th Cir. 2013) and *Vasalle v. Midland Funding LLC,* 708 F.3d 747, 755 (6th Cir. 2013). The Objectors' arguments are addressed in the analysis below.

### C.     Factors

### 1.     Substantial Risk of Fraud or Collusion

Applying the first factor, the Court finds there is no indication of fraud or collusion in this case. The Varnum Group did not raise this issue on remand. It is "presumed that the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands" absent "evidence of

improper incentives." *UAW,* 497 F.3d at 628. Each party vigorously advanced and defended their arguments and positions before the Court. There were initially three cases filed relating to the instant Settlement which were later consolidated by the Court after the parties' agreed to do so. (Doc. No. 65) Various motions were filed by the parties, including a Motion to Dismiss filed by Blue Cross, which was denied by the Court. (Doc. No. 102) The parties engaged in extensive motion practice and discovery relating to the class certification issue and expert-related issues. It was only after these motions were filed that the Court was informed that the parties resolved the matter after extensive negotiations. Each time a status conference or a hearing was held before the Court, there were numerous attorneys in attendance representing each party.

On remand, more motions were filed regarding the document sealing issue and hearings were held on the matter. The Court did not observe any signs that the parties were engaged in pretense and posturing during the years in litigation before the Court to mask collusion in reaching a Settlement Agreement with Blue Cross. Blue Cross has defended these type of anti-trust cases before the Court most vigorously, and continues to do so in another case before this Court. Class Counsel in these consolidated cases also vigorously argued each of their positions before the Court. This factor weighs in favor of the class settlement.

### 2. Complexity, Expense, and Likely Duration of Litigation

The Court finds that the antitrust MFN issues raised by the Plaintiffs are complex, very expensive to litigate and the litigation has been ongoing for years, including appeals. The MFN issue is not a common issue involving antitrust cases in the healthcare arena. The complexity, expense and duration factor weighs in favor of class settlement.

### 3. Amount of Discovery

All parties agree that they have engaged in discovery of millions of pages of documents, multiple terabyte of data, 169 depositions and preparation of competing expert reports. They argue that based on all of this discovery taken, Plaintiffs and Blue Cross are well-aware of the strengths and weaknesses of the case. They argue that based on the significant discovery taken, this factor weighs heavily in favor of approval of the settlement.

There is no dispute that extensive discovery has been taken in this case. On remand, further discovery was provided to Class Members and the Objectors. In light of this extensive discovery, the Court finds that Plaintiffs and Blue Cross have been able to evaluate the propriety and fair value of the settlement. The amount of discovery taken and considered by the parties in this case weighs in favor of approving the settlement.

## 4.    Likelihood of Success on the Merits

The Varnum Group argues that because the Department of Justice brought a federal complaint against Blue Cross, in itself, is significant evidence that Plaintiffs have a substantial likelihood of success on the merits.  In addition, the Michigan legislature banned the MFN Agreements by legislation passed in March 2013.  They also claim that the Court has not granted a dispositive motion in favor of Blue Cross in this suit or the related Aetna lawsuit or the original Department of Justice lawsuit.  The Objectors argue that it is obvious that the proposed settlement is grossly unreasonable, which means class members have nothing to lose, and everything to gain, by going forward with trial.

Plaintiffs assert that in this case, an expert has analyzed the damages in this case, which was labor-intensive.  The analysis could reliably and manageably be measured for purchasers covered by 23 provider agreements, out of hundreds of provider agreements with MFN hospitals, at 13 hospitals, out of 70 MFN hospitals.  According to Plaintiffs, this analysis projects damages that are far less than the multi-billion dollar case argued by the Objectors.  They argue that the many risks of continued litigation cast significant doubt on whether class members would receive any recovery.  Plaintiffs further argue that even though the United States and the State of Michigan obtained success, they did not have to obtain class certification or prove

that the class members paid an overcharge for hospitals services, or measure the amount of the overcharge. While Plaintiffs argue they would have succeeded at trial in this case, given the complex economic issues, a jury may not credit Plaintiffs' evidence or a jury may award less than the damages that would be sought at trial. Plaintiffs claim they face significant risk that class members would receive nothing without a settlement, therefore the recovery of nearly $30 million reflects a substantial victory for Settlement Class members.

The main question in approving a class settlement is whether the settlement is fair in light of "plaintiff's likelihood of success on the merits." *UAW*, 497 F.3d at 631. As noted above, extensive discovery has been held in this case. The Court has denied Blue Cross' initial Motion to Dismiss, finding at that point in the litigation that Plaintiffs had stated a claim against Blue Cross. However, in light of Plaintiffs' expert's analysis as to damages, the Court finds that the settlement amount reached by the parties is fair in light of any success the Plaintiffs may obtain on the merits of the case. Dr. Leitzinger and Plaintiffs determined that damages could be reliably and manageably measured only for purchasers covered by 23 provider agreements at 13 MFN hospitals. This resulted in damages of $118 million, with one direct purchaser, HAP, incurring $58 million in damages. HAP's exclusion from the Class, the settlement recovers approximately 50% of the damages incurred by the class.

Plaintiffs face significant risk that the class members could receive nothing or some negligible amount in damages at trial or on appeal.

The Court finds that the likelihood of success on the merits weighs in favor of approving the settlement. The number of opt-outs on remand have decreased and thousands of Class Members have filed claims under the settlement.

## 5. Opinions of Class Counsel and Class Representatives

The Varnum Group argues that in circumstances where class counsel and class representatives receive preferential treatment under the terms of the settlement, the Court should not give any weight to their opinions. They claim Class Counsel and the Class Representatives have a conflict of interest due to their heavy financial incentive to push for the proposed settlement.

Plaintiffs and their counsel argue that as noted previously, counsel include leaders in complex class action litigation, particularly in the field of antitrust. They have considered voluminous discovery, expert analysis and engaged in motion practice before reaching the settlement. Plaintiffs claim they have participated in the case for years and they include all segments of the Settlement Class, including individual purchasers, institutional payors, purchasers in each of the Categories 1, 2 and 3.

"The judgment of the parties' counsel that the settlement is in the best interest

of the settling parties is entitled to significant weight." *IUE-CWA v. Gen. Motors Corp.,* 238 F.R.D. 583, 597 (E.D. Mich. 2006). Courts should defer to the judgment of experienced counsel who have evaluated the strength of the proofs. *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983).

Class Counsel and Plaintiffs in this action all support the settlement in this case. Deference is given to their opinions because they have had the opportunity to review discovery and an opinion by an expert in the evaluation of the case. Although the Objectors argue that Class Counsel and the Class Representatives have a conflict of interest due to their heavy financial incentive to push for the proposed settlement, the Court must weigh this factor significantly in their favor. The Objectors have not overcome this burden in light of the discovery taken in this case and the expert analysis reviewed by Class Counsel and Named-Plaintiffs.

## 6. Reaction of Absent Class Members

The Varnum Group argues that Aetna's parallel lawsuit against Blue Cross provides significant evidence of the inadequacy of the proposed settlement. Aetna alleges it suffered over $600 million in damages, and with the trebled damages, Aetna claims damages of over $2 billion. The Varnum Group argues that the aggregate damages in this class action exceed the individual damages sought by Aetna.

Plaintiffs assert that as to Aetna's estimate of damages, such estimate is based

on lost profits for Aetna's sales in the market for commercial group health insurance and diminution of business value, not overcharges for purchases of hospital services attributable to Blue Cross' conduct. In this case, Plaintiffs only sought *overcharges* in the sale of hospital services, *not total payments* for hospital services paid by class members.

On remand, the number of opt outs decreased by 80%, in light of the Class members' access to the unsealed record. The opt-outs only constitute about 0.005% of the Class and 0.01% of those Class members directly notified. Tens of thousands of injured Class members have filed claims, 84,094 Class Members, which includes many of the largest purchasers of hospital services in Michigan. The reaction of the absent class members weighs in favor of approval. They cite cases where courts approved class action settlements with a far higher opt out rate such as 0.55% in *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) and 0.4% in *Garner v. State Farm Mut. Auto. Ins.*, No. 08-cv-1365, 2010 WL 1687832, at *15 (N.D. Cal. Apr. 22, 2010). The low number of objections favors approval of the settlement. *See, D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001)(The small number of objections weighed in favor of settlement where 27,883 notices were sent and 18 objections received.).

Based on the opt out rate at about 0.005% of the Class and 0.01% of those Class

members directly notified, and the few objections filed against the settlement, the low opt-out rate shows that the reaction of absent class members factor weighs in favor of settlement.

### 7. The Public Interest

Plaintiffs argue that the public interest in this case is to settle a complex litigation and class action and to conserve judicial resources. They claim that in this case, 169 depositions have been taken, including depositions of over 100 third parties (employees from dozens of hospitals), and that having a trial in this case would burden the court and place a burden on Michigan healthcare providers.

There is a strong public interest in encouraging settlement of complex litigation and class action suits because such suits are "notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)(quoting *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). The public interest the Objectors raise is essentially a numerosity issue, which weighs in favor of a class action settlement. The public interest is strong to settle complex class action cases, such as this case. If the matter was to move forward to class action litigation, dispositive motion practice and trial, given the number of members in the class, the time to resolve this matter would be lengthy. The number of witnesses, including those in the Michigan healthcare system

involved, would burden those systems. There is no guarantee at trial that the matter would be resolved in favor of class members. The public interest in settling complex class action litigation weighs in favor of settlement.

### 8. Preferential Treatment/Absent Class Members

The Objectors argue that based on the Sixth Circuit decision in *Greenberg*, incentive payments to Plaintiffs and Class Counsel are a disincentive for the class members to care about the adequacy of relief afforded by unnamed class members and instead encourages the class representatives to compromise the interest of the class for their personal gain. They claim this constitutes a "bounty." Such inequities in treatment, they argue, make a settlement unfair.

Plaintiffs assert that the incentive payments to Plaintiffs are allowed and encouraged to reward their efforts in litigating the case on behalf of the class. The incentives are proportional to the time and resources each Plaintiff devoted to the case. They argue that the attorneys' fees are not dependent on any award, but are subject to the Court's approval. As to absent class members, Plaintiffs argue that the settlement on their behalf is not "perfunctory." The settlement calls for a recovery of over 25 percent of the $118 million they claimed are the estimated damages in this case, which, they argue is not "perfunctory" in light of the risks, burdens and delay of continued litigation. They claim that there is no preferential treatment in favor of the

Plaintiffs and Class Counsel.

Courts have stressed that incentive awards are the efficient ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class. *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Depending on the circumstances, incentive awards are appropriate. *Id.* at 897-98. Plaintiffs in this case have been involved since the filing of all three consolidated cases. They have been involved in extensive discovery and any award to class representatives is proportioned to the time and effort each representative performed in this action. As to absent class members, their awards are not "perfunctory" in that the settlement is over 25 percent of the $118 million in estimated damages. The attorneys' fees requested are not contingent upon any award, but are subject to the court's approval. The Court finds that the settlement before the Court does not give preferential treatment to the Plaintiffs, other than the incentives which are reasonable in light of their involvement in the case. The Court also finds that the relief to unnamed class members is not illusory or perfunctory. Because the settlement does not give preferential treatment to Plaintiffs or perfunctory relief to unnamed class members, the Court approves the settlement in this case.

### 9. Plan of Allocation

In addition to the above-stated factors, the Court must also determine whether

the method of distributing the settlement fund is "fair and reasonable." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 534 (E.D. Ky. 2010).

Plaintiffs in this case have shown that an expert has analyzed the damages in this case and the effect of the MFNs on the damages. The Plan of Allocation categorizes different claims by placing them in three categories: 23 provider agreements for which damages were able to be measured (Category 1); purchases at hospitals with an MFN agreement, but for which the plaintiff has no reliable evidence of harm or evidence of only de minimus damages (Category 2); and purchases were made when no MFN agreement was in effect (Category 3). Category 1 is allocated to receive 78 percent of the Net Settlement Fund, Category 2 will receive 20 percent of the Net Settlement Fund, and Category 3 will receive 2 percent of the Net Settlement Fund. The Plan of Allocation is structured where the stronger claims receive more than the other claims where damages are less. Any payments in Category 3 which are too small to distribute will instead be made to the non-profit organization Free Clinics of Michigan, a charity providing free health services throughout Michigan. This non-profit was agreed to by the parties.

## 10.    Conclusion/Summary

The Court has reviewed the various parties' submissions, objections and arguments. Having weighed the factors set forth above, the Court finds that the

Settlement submitted to the Court is fair, reasonable and adequate and that the Plan of Allocation is also fair, reasonable and adequate, as more fully set forth above. The Court approves the Settlement and the Plan of Allocation. The Objections are overruled for the reasons set forth above.

## IV.    ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS

### A.    Attorneys' Fees and Expenses Standard of Review

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action upon motion under Fed. R. Civ. P. 54(d)(2) and 23(h). The court engages in a two-part analysis when assessing the reasonableness of a fee petition. *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). First, the court determines the method of calculating the attorneys' fees–either the percentage of the fund approach or the lodestar method. *Id.*; *Van Horn v. Nationwide Prop. and Cas. Inc. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). The court has the discretion to select the appropriate method for calculating attorneys fees "in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513, 516 (6th Cir. 1993). In common fund cases, the award of attorneys' fees need only "be reasonable under the circumstances." *Id.* Second, the court must then analyze and weigh the six factors described in *Ramey v. Cincinnati Enquirer, Inc.*,

508 F.2d 1188 (6th Cir. 1974). *Id.*

**B.    Percentage of the Fund Approach**

Class Counsel seeks attorney fees in the amount of $8,631,628.67, or approximately 28.78% of the Settlement Fund, and reimbursement of litigation expenses of $3,500,000. The collective lodestar figure is much more in the amount of $19,748,626.75 at current rates. The requested fee is only 44 cents on the dollar compared to the lodestar figure. Courts in this District have approved attorneys' fees in antitrust class actions anywhere from a 30% to a one-third ratio of the common fund. *See, In re Packaged Ice Antitrust Litig.*, 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011); *Kogan v. AIMCO Fox Chase, L.P.,* 193 F.R.D. 496, 503 (E.D. Mich. 2000). Courts have noted that the range of reasonableness in common fund cases is from 20 to 50 percent of the common fund. *See, In re Telectronics Pacing Sys., Inc., Accufix Atrial "J" Leads Prods. Liab. Litig.,* 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001); *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986).

Class Counsel claims that Co-Lead Counsel coordinated the efforts of all Plaintiffs' Counsel to maximize efficiency, minimize duplication of effort, and minimize any unnecessary or duplicative billing. Class Counsel asserts the time submissions were reviewed to ensure that no person submitted time for unauthorized

work.

As noted previously, this action is a complex antitrust class action. Class Counsel submitted declarations of the various attorneys who participated in this case setting forth their attorneys' fees and expenses incurred. Based on the submission of Class Counsel and after review of the Objections submitted, the Court finds that the percentage of the fund method is the proper measure to award attorneys' fees in this case rather than the lodestar method. The percentage of the fund method eliminates arguments regarding the reasonableness of rates and hours incurred by the numerous counsel involved in this case and fully aligns with the interest of the Class. *Rawlings,* 9 F.3d at 515.

The Court further finds that the requested 28.78% of the fund percentage is reasonable in light of the time and resources expended by Class Counsel in this case. Taking Class Counsel's submissions regarding the fees incurred at $19,748,626.75 under the lodestar method, the 28.78% ratio awards Class Counsel more than $10 million *less* if the lodestar method was instead used in this case. Even if 10% of the lodestar amount was decreased, Class Counsel's fees under the lodestar method would still be higher than the one-third amount requested by Class Counsel. The Court finds that Class Counsel properly supported the request to award one-third of the common fund as attorneys' fees.

## C.    *Ramey* **Factors**

The Court must also review the requested fees and weigh the factors set forth in *Ramey*:  (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis [the lodestar cross-check]; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey*, 508 F.2d at 1194-97.  Based on the Class Counsel submissions and reviewing the Objections to the requested fees, the Court finds that each of these factors weighs in favor of awarding the requested attorneys' fees.

The first factor, the value of the benefit to the Class, is that the Settlement provides cash payment of $29.99 million to the Class Members.  As previously noted, this amount represents 25% of the overcharges the Class Members paid as estimated by Plaintiffs' expert.  Courts have approved settlements in class action antitrust settlements anywhere between 5.35% to 28% of estimated damages in a complex antitrust class actions. *See, In re Linerboard,* 2004 WL 1221350, at *4.  This amount weights in favor of approving the fee award in light of the risks of the litigation as previously addressed.

Regarding the second factor, the society's stake in rewarding attorneys as an

incentive, the Court finds this weighs in favor of approving the fee request. A court is tasked with ensuring that counsel are fairly compensated for the work performed and the result achieved. *Rawlings,* 9 F.3d at 516. "Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions ... benefits society." *In re Cardizem*, 218 F.R.D. at 534. In this case, Class Counsel's work resulted in a settlement for the Class, which in light of the risk of the litigation the attorneys' fees requested are reasonable. As noted above, courts have held that the public interest is strong in encouraging settlement of complex litigation and class action suits because they are difficult and unpredictable. The settlement conserves judicial resources and compensates class members.

The third factor, whether the services were undertaken on a contingent fee basis, weighs in favor of awarding the attorneys' fees requested. Contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery. *In re Telectronics,* 137 F. Supp. 2d at 1043. Plaintiff's Counsel prosecuted the cases on a contingent basis. They are aware that for a variety of reasons, including information revealed during discovery, court rulings on motions, and findings by a jury, Plaintiff's Counsel could recover no fee for prosecuting the cases. The nature of the contingent fee arrangement between Plaintiffs and their Counsel weighs in favor of the fees requested by Class Counsel.

As to the fourth factor, the value of the services on an hourly basis [the lodestar cross-check], as noted above, if the Court were to award the attorneys' fees based on the lodestar method, the fees would exceed by more than $10 million the requested 28.78% ratio. The Court finds that the requested attorneys' fees amount is reasonable.

The Court has noted, and there is no real dispute that this antitrust litigation is complex. This fifth factor, the complexity of the litigation, weighs in favor of awarding the requested attorneys' fees.

The sixth factor, the professional skill and standing of counsel on both sides, weigh in favor of awarding the attorneys' fees requested. "The ability of Co-Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.,* 248 F.R.D. 483, 504 (E.D. Mich. 2008). The Court has observed counsel on all sides of this litigation. There is no doubt that Blue Cross is a formidable opponent. Blue Cross' counsel have zealously defended Blue Cross' position in this litigation and the related litigation before the Court. Class Counsel and the other Plaintiffs' Counsel in this case have also vigorously prosecuted the case on behalf of the Class. Class Counsel have submitted the lead counsels' backgrounds which indicate that each counsel has excellent standing amongst their peers and all are well-experienced in this area of litigation.

Weighing the *Ramey* factors set forth by the Sixth Circuit, for the reasons set forth above, they requested attorneys' fees of 28.78% of the Settlement Fund is fair and reasonable and is so awarded.

**D.      Expenses**

Class Counsel asserts that they have incurred litigation expenses in the aggregate amount of $3,562,462.81 for the benefit of the Settlement Class. They claim that a significant component of the expenses is the cost of the expert work performed on behalf of the Settlement Class. They retained highly qualified economic experts to analyze the impact of Blue Cross' MFN clauses on prices of acute care hospital healthcare services in Michigan, and to address other issues such as market definition and market power. Class Counsel claims the experts' work required complex statistical analysis of extraordinarily large amounts of data. They assert that the notice sent to the Class indicated Class Counsel would seek up to $3,500,000 in litigation expenses, plus settlement-related expenses. The costs incurred by Class Counsel are in line with the notice sent to the Class. Class Counsel indicated they will seek reimbursement of $3,500,000, but not the additional $62,461.81, in line with the notice to the Class.

Plaintiffs also seek $1,365,038 in an unpaid bill to the Settlement Administrator, Epiq. This amount is related to the claims processing and other

settlement administration prior to the settlement.

Class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses. *In re Cardizem,* 218 F.R.D. at 535. The type of expenses compensable are the type typically billed by attorneys to paying clients in the marketplace. *Id.* Courts have recognized that the assistance of qualified experts is necessary and a costly expense in antitrust litigation. *See, B&H Med., L.L.C. v. ABP Admin., Inc.,* No. 02-73615, 2006 WL 123785, at *3 (E.D. Mich. Jan. 13, 2006).

Reviewing the expenses incurred by Class Counsel set forth in their declarations and after considering the Objections, the Court finds that the requested amount incurred by counsel out-of-pocket is reasonable, in light of the time, resources, expert analysis and complexity of this class action case. The amount requested is substantial at $3,500,000. However, this amount includes complicated analysis by experts as to how the MFN clauses impacted healthcare services in Michigan using extraordinarily large amount of data. Class Counsel have shown that the experts provided significant services on behalf of the Settlement Class resulting in the settlement between the parties. Class Counsel is entitled to costs in the amount of

$3,500,000 and $1,365,038 to Epiq for settlement related administration.

### E.    Incentive Awards

Class Counsel request $165,000 in incentive awards for each Plaintiff organization and individual Plaintiffs as follows:

- Michigan Regional Council of Carpenters Employee benefits Fund - $45,000;
- Abatement Workers National Health and Welfare Fund - $35,000;
- Monroe Plumbers & Pipefitter Local 671 Welfare Fund - $35,000
- The Shane Group, Inc. - $20,000
- Susan Baynard - $10,000
- Anne Patrice Noah - $10,000
- Bradley Veneberg - $5,000
- Scott Steele - $5,000

The Notice to the Settlement Class provided incentive awards for the class representatives of $240,000, which is .8% of the Settlement Fund. However, Class Counsel is only seeking a total of $165,000 in incentive awards, which is 0.55% of the Settlement Fund, lower than the amount in the Notice.

The Sixth Circuit has noted that incentive awards are typically awarded to class representatives for their extensive involvement with a lawsuit. *Hadix*, 322 F.3d at 897. Awards encourage members of a class to become class representatives and reward their efforts taken on behalf of the class. *Id.* Payment of incentive awards to class representatives is a reasonable use of settlement funds. *Moulton v. U.S. Steel*

*Corp.,* 581 F.3d 344, 351 (6th Cir. 2009). Courts have approved incentive awards of up to $15,000 for individual plaintiff class representatives for providing information to class counsel, receiving and approving pleadings, assisting in discovery and participating in settlement discussions. *See, In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006). Larger incentive awards than those to individual plaintiffs have been approved for organizational class representatives because of the greater burden in the course of litigation by producing greater numbers of documents and participating in Rule 30(b)(6) depositions. *See, In re Vitamin C Antitrust Litig.*, No. 06-MD-1738, 2012 WL 5289514, at *11 (E.D. N.Y. Oct. 23, 2012).

On remand, Plaintiffs submitted declarations by Class Counsel regarding the information and the time expended by the individual plaintiffs to validate the requested incentive awards pursuant to the Sixth Circuit's guidance. Some of these individual Plaintiffs have worked with Class Counsel since 2010.

After reviewing the request for incentive awards and the Objections thereto, the Court finds that the awards requested are reasonable. The three Union self-funded organizations produced thousands of documents during discovery. The organizations shared their knowledge of the industry with Class Counsel and assisted in drafting and responding to discovery requests. The organizations' staff and agents spent time and

resources during the litigation resulting in the settlement on behalf of the Class.  The Shane Group was an initial filer of the lawsuit in October 2010.   Its representatives worked with Class Counsel throughout the litigation locating and producing documents, responding to discovery requests and reviewing filings in the case.  Based on these four groups' participation in the litigation resulting in the settlement on behalf of the Class, the incentive awards requested for each are reasonable.

As to the individual awards for Baynard and Noah, according to Class Counsel, they provided important and indispensable service to the Settlement Class.  They searched their personal records multiple times to locate documents responsive to Blue Cross' discovery requests and obtained documents in the custody of third parties. Both testified via depositions, which required them to travel to Detroit from northern Michigan.  The Court finds that the requested incentive awards for Noah and Baynard are reasonable in light of their participation during the discovery phase of the litigation.  Their participation benefitted the Class.

The individuals Veneberg and Steele filed their complaints in October 2010 and January 2011, respectively.  They both participated in discovery by locating and producing documents.  The Court finds that their participation in the litigation supports the requested incentive awards.

## V.    THE VARNUM GROUP'S MOTION FOR ATTORNEY FEES

The Varnum Group requests attorney fees and non-taxable costs in the amount of $165,128.43 in relation to its September 24, 2014 Objection and subsequent appeal. The Varnum Group argues that its objections and subsequent appeal conferred a benefit to the class when the Sixth Circuit ruled that documents be unsealed to allow class members to better assess the merits of the case and the value of the settlement.

Plaintiffs oppose the motion arguing that the Varnum Group's motion for attorney fees is untimely because it was filed at the deadline for any objections to the proposed settlement which meant that the Class was unable to evaluate and potentially object to the Varnum Group's motion for fees and expenses. Plaintiffs also argue that the Varnum Group did not confer a benefit to the Class, but rather harmed the Class. Plaintiffs claim the Varnum Group achieved zero economic benefit for the Class through their actions and have caused substantial delay in the distribution of the settlement to Class members. Plaintiffs further claim that the settlement common fund preliminary approved on remand is the same amount as the one granted final approval in March 2015. Plaintiffs assert that the Varnum Group's actions have resulted in a four year delay and has prevented Class members from receiving the benefit of the settlement.

The Rule 23(h) commentary provides that, "there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as

... attorneys who represented objectors to a proposed settlement under Rule 23(e)." Fed. R. Civ. P. 23(h), 1998 Committee Notes to Subdivision (h); *In re Cardinal Health, Inc. Sec. Litig.*, 550 F.Supp.2d 751, 753 (S.D. Ohio 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002).

Based on the Court's review of the Varnum Group's objections relating to the sealed documents and the resulting decision by the Sixth Circuit, the Court finds that the Varnum Group's arguments regarding the sealed documents benefitted the Class. The Class was later able to review the unsealed documents to evaluate and assess the fairness of the settlement.

As to the amount, the Court does not agree that the Varnum Group is entitled to the amount requested. The Varnum Group's request to unseal was vigorously defended by Blue Cross and many entities who had numerous confidentiality and trade secret concerns. The Sixth Circuit allowed parties to demonstrate on remand on a document-by-document and line-by-line basis to meet the demanding requirements for sealing the documents. *Shane Group,* at 309. On remand, extensive review by many entities occurred. The sealed documents issue was also not the main focus of the Varnum Group's objections and appeal. A review of the time sheets so supports this Court's finding that the sealed documents issue was not the main focus of the Varnum Group's objections and appeal. The Court will reduce the time requested to

the time actually spent on the sealing the documents issue.

The lodestar method the Varnum Group urges the Court to apply was not objected to by the Plaintiffs, nor the attorney fee rates requested. The Court finds the lodestar method will be used in this instance and applied to the hours found by this Court to be related to the sealing the documents issue. The Varnum Group must resubmit the time sheets, highlighting the time spent on the sealed documents issue. The Court will further review the resubmitted time sheets and apply the lodestar method to the time the Court finds the Varnum Group spent on the sealed documents issue.

## VI.  CONCLUSION

After considering and reviewing all the arguments submitted by the parties, for the reasons set forth above, the Court finds that the Settlement and the Plan of Allocation is fair, reasonable and adequate to the interest of the Class Members. The Objections filed, specifically filed by Christopher Andrews and the Entities/Objectors represented by the Varnum Firm, are OVERRULED and DENIED.

Accordingly,

IT IS ORDERED that Class Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Payment of Incentive Awards to Class Representatives **(Doc. No. 336)** is GRANTED.

IT IS FURTHER ORDERED that the Varnum Group's Motion for Attorney Fees and Costs **(Doc. No. 342)** is GRANTED IN PART and DENIED IN PART as more fully set forth above.  The Varnum Group must resubmit the time sheets by **October 21, 2019**, highlighting the time spent on the sealed documents issue only. Any response/objections to the resubmitted time sheets must be filed by **November 4, 2019**.  Any reply to the response/objections must be filed by **November 12, 2019.** The matter will be decided by the Court without any further hearings.

IT IS FURTHER ORDERED that the Motion for Final Approval of Settlement and Plan of Allocation **(Doc. No. 351)** is GRANTED.

IT IS FURTHER ORDERED that the Motion to File Response to Defendant BCBSM's Memorandum **(Doc. No. 354)** is GRANTED.

s/Denise Page Hood
DENISE PAGE HOOD
Chief United States District Judge

DATED: September 30, 2019