UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE SHANE GROUP, INC., BRADLEY A. VENEBERG,
SCOTT STEELE, MICHIGAN REGIONAL COUNCIL of
CARPENTERS EMPLOYEE BENEFITS FUND, ABATEMENT
WORKERS NATIONAL HEALTH and WELFARE FUND,
MONROE PLUMBERS and PIPEFITTERS LOCAL 671
WELFARE FUND,

                    Plaintiffs,

v.                                          CIVIL ACTION
                                            NO. 10-14360


BLUE CROSS BLUE SHIELD OF MICHIGAN,

                    Defendant.

_____/


MOTION HEARING
BEFORE THE HONORABLE CHIEF JUDGE DENISE PAGE HOOD
United States District Judge
231 Lafayette Boulevard West
Detroit, Michigan
Thursday, November 8, 2018

CITY of PONTIAC, ALYSON OLIVER, GRATIOT COMMUNITY HOSPITAL,
METRO HEALTH, MIDMICHIGAN HEALTH, MARQUETTE GENERAL HEALTH
SYSTEM, ASCENSION HEALTH, COVENANT HEALTHCARE, SPARROW
HOSPITAL, MUNSON MEDICAL CENTER, BOTSFORD HOSPITAL, WILLIAM
BEAUMONT HOSPITALS(Royal Oak, Troy, Grosse Pointe), ST. JOHN
HOSPITAL & MEDICAL CENTER, GENESYS REGIONAL MEDICAL CENTER,
ST. MARY'S of MICHIGAN MEDICAL CENTER, ST. JOSEPH HEALTH
SYSTEM, BORGESS MEDICAL CENTER, SOUTHFIELD PROVIDENCE HOSPITAL,
PROVIDENCE PARK HOSPITAL NOVI, ST. JOHN HOSPITAL NORTH SHORE
CAMPUS, ST. JOHN MACOMB OAKLAND HOSPITAL, ST. JOHN RIVER
DISTRICT HOSPITAL EAST CHINA, UNITED STATES OF AMERICA, BRADLEY
VENEBERG, THE SHANE GROUP, INC., JEFFREY CONNOLLY, METROPOLITAN
HOSPITAL, CHE TRINITY, MICHIGAN HEALTH AND HOSPITAL
ASSOCIATION, BRONSON HEALTH CARE GROUP, INC., UNIVERSITY of
MICHIGAN HEALTH SYSTEM, PRIME HEALTHCARE SERVICES GARDEN CITY,
LLC., McLAREN HEALTH CARE CORPORATION, HEALTH ALLIANCE PLAN of
MICHIGAN, CARO COMMUNITY HOSPITAL, HENRY FORD HOSPITAL, HENRY
FORD MACOMB CORPORATION, HENRY FORD WEST BLOOMFIELD, HENRY FORD
WYANDOTTE HOSPITAL, HENRY FORD HEALTH SYSTEM, NATIONAL SURGICAL
HOSPITAL, OAKWOOD HEALTHCARE SYSTEM, OAKWOOD HEALTHCARE, INC.,
OAKWOOD ANNAPOLIS HOSPITAL, OAKWOOD HERITAGE HOSPITAL, OAKWOOD
SOUTHSHORE MEDICAL CENTER, CHARLEVOIX AREA HOSPITAL, DLP
MARQUETTE GENERAL HOSPITAL, LLC, THE DOW CHEMICAL COMPANY,

**Interested Parties.**

SCOTT MANCINELLI, ADAC AUTOMOTIVE, ALMA PRODUCTS COMPANY, BAKER
COLLEGE, BORROUGHS CORPORATION, EAGLE ALLOY, INC., FISHER &
COMPANY, INC., FOUR WINDS CASINO RESORT, FRANKENMUTH BAVARIAN
INN, INC., GEMINI GROUP, INC., GILL-ROY'S HARDWARE/MORGAN
PROPERTIES, LLC, GRAND TRAVERSE BAND OF OTTAWA AND CHIPPEWA
INDIANS, HI-LEX CORPORATION, HUIZENGA GROUP, KENT COMPANIES,
INC., LaBELLE MANAGEMENT INCORPORATED, MASTER AUTOMATIC MACHINE
COMPANY INCORPORATED, PETOSKEY PLASTICS, INC., SAF-HOLLAND USA,
STAR OF THE WEST MILLING COMPANY, TARUS PRODUCTS, INC.,
TERRYBERRY COMPANY, LLC, THELAN INC., TRILLIUM STAFFING
SOLUTIONS, TRUSS TECHNOLOGIES, WADE TRIM GROUP, INC., MORBARK,
INC., CHRISTOPHER ANDREWS, AETNA, INC., FLORACRAFT CORPORATION,
MAGNA INTERNATIONAL OF AMERICA, INCORPORATED.

**Objectors.**

PRIORITY HEALTH INSURANCE COMPANY, SPECTRUM HEALTH SYSTEMS,
HOLLAND COMMUNITY HOSPITAL, UNITEDHEALTH GROUP INCORPORATED,

**Intervenors.**

_____/

APPEARANCES:

DANIEL SMALL
Cohen, Milstein,
1100 New York Avenue, N.W.
500 West Tower
Washington, DC 20005
202-408-4600
Email: dsmall@cmht.com

E. POWELL MILLER
The Miller Law Firm
950 W. University Drive
Suite 300
Rochester, MI 48307
248-841-2200
Email: epm@millerlawpc.com

DANIEL HEDLUND
Gustafson Gluek PLLC
Canadian Pacific Plaza
120 South 6th Street
Suite 2600
Minneapolis, MN 55402
612-333-8844
Email: dhedlund@gustafsongluek.com

                On behalf of Plaintiffs.

TODD M. STENERSON
Shearman & Sterling LLP
401 9th Street, NW -- Suite 800
Washington, DC 20004-2128
202-508-8093
Email: todd.stenerson@shearman.com

ROBERT A. PHILLIPS
Blue Cross Blue Shield
600 Lafayette Boulevard -- Suite 1925
Detroit, MI 48226
313-225-0536
Email: rphillips@bcbsm.com

                On behalf of Defendants.

APPEARANCES, cont'd:

RACHEL E. MOSSMAN
Shearman & Sterling LLP
401 9th Street, NW -- Suite 800
Washington, DC 20004
202-508-8004
Email: Rachel.Mossman@Shearman.com

THOMAS J. RHEAUME, JR.
Bodman PLC
1901 St. Antoine Street -- 6th Floor
Detroit, MI 48226
313-259-7777
Email: trheaume@bodmanlaw.com

       On behalf of Defendants.

BRYAN R. WALTERS
Varnum, Riddering,
Bridgewater Place
P.O. Box 352
Grand Rapids, MI 49501
616-336-6000
Email: brwalters@varnumlaw.com

       On behalf of a group of self-insured objectors.

Christopher Andrews
P.O. Box 530394
Livonia, MI  48152-0394

       On behalf of himself.


       - - -

Andrea E. Wabeke, CSR, RMR, CRR
Official Court Reporter
www.transcriptorders.com
313.234.2603

# I N D E X

| Proceeding | Page |
|---|---|
| Argument by Mr. Andrews......................... | 10 |
| Argument by Mr. Walters......................... | 18 |
| Argument by Mr. Small........................... | 45 |
| Argument by Mr. Stenerson...................... | 58 |
| Argument by Mr. Miller......................... | 69 |
| Argument by Mr. Stenerson...................... | 78 |
| Argument by Mr. Walters......................... | 79 |
| Argument by Mr. Andrews......................... | 89 |
| Argument by Mr. Miller......................... | 96 |

# E X H I B I T S

| Exhibit No. | Offered | Received |
|---|---|---|
| Andrews Exhibit 1........................... | | 12 |

Fairness hrg.                                    11/8/2018

1                      Detroit, Michigan

2                      November 8, 2018

3                      2:01 p.m.

4                            -  -  -  -

5          THE CLERK:  Calling civil case number 10-14360, the

6   Shane Group and others versus Blue Cross Blue Shield of

7   Michigan.

8              Please state your appearances.

9          MR. MILLER:  Powell Miller for the Plaintiff class,

10  your Honor.

11         THE COURT:  Okay.  Good afternoon.

12         MR. SMALL:  Good afternoon, your Honor.  Daniel Small

13  with Cohn Milstein, for the Plaintiff class.

14         THE COURT:  Okay.  Thank you.

15         MR. HEDLUND:  Good afternoon, your Honor.  Dan

16  Hedlund, Gustafson Gluek, also for the Plaintiff class.

17         THE COURT:  All right.  Thank you.  Good afternoon.

18         MR. STENERSON:  Good afternoon, your Honor.  Todd

19  Stenerson on behalf of Blue Cross Blue Shield of Michigan.

20         MS. MOSSMAN:  Rachel Mossman on behalf of Blue Cross

21  Blue Shield of Michigan.

22         MR. RHEUME:  Thomas Rheume on behalf of Blue Cross

23  Blue Shield of Michigan.

24         MR. PHILLIPS:  Robert Phillips, in-house counsel,

25  Blue Cross.

Fairness hrg.                                    11/8/2018

1           THE COURT:  Tell me your name again.

2           MS. MOSSMAN:  Rachel Mossman.

3           THE COURT:  All right.  Okay.  Thank you.  You may be

4      seated.

5           Oh, there are more counsel here I know.  The people

6      at the tables though could be seated so I can see the rest of

7      them, okay.

8           MR. ANDREWS:  Christopher Andrews, objector.

9           THE COURT:  Okay.

10          MR. WALTERS:  Brian Walters, on behalf of a group of

11     self-insured objectors, your Honor.

12          THE COURT:  Okay.  Very well.  No one else needs to

13     put their appearance on?  No.  Okay.  All right.  Very good.

14          We're here on the class action fairness hearing and

15     the class Plaintiffs' motion for attorneys' fees, reimbursement

16     of expenses and payments of incentive awards to class

17     representatives, and also we're here on the Varnum firm's

18     motion for attorneys' fees, and also a motion for leave to file

19     a response to the Defendant Blue Cross memorandum in support of

20     motion for final approval.

21          And no objections were filed to that so does anybody

22     object to me granting it?

23          MR. MILLER:  No, your Honor.

24          THE COURT:  Okay.  So that's then granted.  I also

25     have objections filed to the settlement agreement by

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                        11/8/2018

1   Mr. Andrews and also by the entities represented by the Varnum

2   firm.  And so unless you'd like to proceed in a different way,

3   what I thought we might do, which would not be the ordinary

4   course, but I think it might be useful in this instance, would

5   be to hear from the objectors first, and then you would have an

6   opportunity to respond to the objectors and then to make your

7   argument.

8           Do you have any objection to doing it that way?

9           **MR. MILLER:**  No, your Honor.

10          **THE COURT:**  Okay.  And so I would propose that we

11  hear from Mr. Andrews first and then from Mr. Walters, and then

12  we would hear from -- I don't know what order the Plaintiffs

13  would want to go.

14          Mr. Miller, would you want to go first or Mr. Small?

15          **MR. MILLER:**  Likely Mr. Small.  He will address the

16  merits of the settlement and I will address the issues

17  regarding fees.

18          **THE COURT:**  Okay.  All right.  Very well.  And then

19  we would hear from Blue Cross Blue Shield.

20          **MR. STENERSON:**  Yes, your Honor.

21          **THE COURT:**  And that would be Mr. Stenerson?

22          **MR. STENERSON:**  Yes, your Honor.

23          **THE COURT:**  Would you be arguing and no one else?

24          **MR. STENERSON:**  I hope not.

25          **THE COURT:**  Okay.  All right.  You're not purporting

        The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                        11/8/2018

1   to be in charge of that table, are you?

2              **MR. STENERSON:**  No, ma'am.

3              **THE COURT:**  Okay.  All right.  Very good.  That's how

4   I'd like to proceed.  Do you all have any objection to that?

5              **MR. WALTERS:**  No, I don't, your Honor.

6              **THE COURT:**  If you want to move down to the first row

7   so that you can hear better, that's fine.  And let's see,

8   everyone at this table, just move down a little bit toward my

9   left, and then I can have a good view while also having a view

10  of the person at the podium.

11             Mr. Andrews, if you'd hike to go to the podium.

12             **MR. ANDREWS:**  Can I --

13             **THE COURT:**  That's fine, and state your full name and

14  make your presentation.

15             **MR. ANDREWS:**  Good afternoon, your Honor.  My name is

16  Christopher Andrews.

17             **THE COURT:**  Okay.  Move the mic a little bit toward

18  you.  You have to pull the whole thing.  Right.  Okay.  And

19  then just speak into that tip of it.

20             **MR. ANDREWS:**  Good.

21             **THE COURT:**  Yes.

22             **MR. ANDREWS:**  I'd requested ten minutes of my

23  presentation.  I'm going to cut that down to five minutes, six

24  minutes so I'm going to combine.

25             **THE COURT:**  You can take the ten minutes because I'm

          The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1   perfectly satisfied probably everyone else will take ten

2   minutes.  Am I mistaken about that?

3           **MR. ANDREWS:**  No.  I'll take the ten minutes.

4           **THE COURT:**  If you feel like you don't need to take

5   it, you don't have to, but you're invited to take it if you

6   wish to.

7           **MR. ANDREWS:**  The proposed settlement has numerous

8   fatal flaws that involve lack of standing in under Article 3,

9   issues involving due process, Rule 23 violations, a multitude

10  of errors in the amended agreement and the preliminary approval

11  order.  The inflated and undocumented fee and expense issue

12  that, separately and combined, prevent approval.

13          Next the material Rule 23 and due process law to the

14  notice program.  Notice must be given, moreover, "in a form and

15  manner that does not systematically leave an identifiable group

16  without notice."

17          *Mendoza versus Tucson School District*, 623 F.2d 1338,

18  1351 Ninth Circuit 1980, "*Mandujano versus Basic Vegetable Food*

19  *Products, Inc.*, 541 F.2d 832, 853 Ninth Circuit 1976.  In this

20  case, the lack of Spanish translation of the long notice, legal

21  notice and claim form bars 100,000 Michigan class members who

22  can't read the default English-only notice from participating

23  because they can't understand their rights, the case and

24  settlement information in the mailed notice, the legal notice

25  and that is on the class website.  They can't fill out and file

            The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                              11/8/2018

1    a claim form.  They can't fill out an opt-out form.  They can't

2    object or be heard which causes violations of Rule 23(e)(1),

3    23(e)(2), 23(c)(2), 23(c)(2)(B) and due process.  That segment

4    is forced to walk away with their rights trampled and damages

5    left to be collected by others and they don't even know it.

6           A simple tab changing the English-only notice and

7    claim form into Spanish on the website, for example, was all

8    that was needed to prevent the obvious Rule 23 and due process

9    violation, but class counsel plum forgot in their rush dash for

10   cash.

11          I do have an exhibit using U.S. Census figures.

12          THE COURT:  I'm sorry, I didn't hear your last

13   statement.

14          MR. ANDREWS:  I do have an exhibit from the U.S.

15   Census showing 100,000 number, which I leave for the Court.

16          THE COURT:  All right.  And have you given that to

17   all the other counsel?

18          MR. ANDREWS:  No, I have not.

19          THE COURT:  Okay.  Show it to them to see if they

20   have any objection.

21          MR. MILLER:  We have no objection, your Honor.

22          THE COURT:  Okay.  Hand it across the aisle.  No one

23   has it so that's why we're passing it.

24          MR. MILLER:  Understood.

25          MR. STENERSON:  No objection, your Honor.

          The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1        **THE COURT:**  Okay.  Very good.  Do you want to look at

2   it as well?

3        **MR. WALTERS:**  I'm okay, your Honor.  Thank you.

4        **THE COURT:**  Very good.  Then it's admitted.  Do you

5   have any -- you can pass it right here to Miss Daly.  Let's

6   mark it Exhibit 1 to his oral argument, okay.  All right.  Go

7   ahead.

8        **MR. ANDREWS:**  The next issue I'm bringing up, I did

9   give class counsel a head's up in two e-mails I was going to be

10  discussing this today.

11       **THE COURT:**  So is this something that you did not

12  discuss in your written objection?

13       **MR. ANDREWS:**  It was discussed but not in as much

14  detail as it is right now.

15       **THE COURT:**  Okay.

16       **MR. ANDREWS:**  Thank you.  Next, the missing invalid

17  named Plaintiffs that lack standing.

18       **THE COURT:**  The missing?

19       **MR. ANDREWS:**  The missing invalid named Plaintiffs

20  that lack standing.  Under Article 3, the standing comes first,

21  merits come second.  To establish Article 3 standing, the

22  Plaintiff must show that it has, one, suffered injury in fact;

23  two, it is fairly traceable to the challenged conduct of the

24  Defendant; and, three, that it's likely to be redressed by

25  favorable judicial decision.  *Spokeo, Inc. versus Robins*, 136

            The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                              11/8/2018

1    S.Ct. 1540, 1549, 2016, ID at 1547.  All named Plaintiffs need

2    standing, even if each presents similar legal claims,

3    regardless of the form of relief they seek.  Before they may

4    act, the courts must ensure their power to act.  I quote,

5    "Typically, however, the standing inquiry requires careful

6    judicial examination of a complainant's allegations to

7    ascertain whether the particular Plaintiff is entitled to

8    adjudication of the particular claims asserted."  ID at 752,

9    emphasis added.  *Allen versus Wright* 468 U.S. Supreme Court

10   737, 1984.

11          That is not what was done in this case.  In the

12   complaint as currently written, which this deal was based on,

13   not one of the name Plaintiffs have damages and therefore lack

14   standing under Article 3.  See Blue Cross Blue Shield of

15   Michigan document 328.  More importantly, the class should not

16   be certified because doing so would violate various provisions

17   of Rule 23 and substantive law.

18          Class counsel and the named Plaintiffs don't want

19   standing to be looked at.  A couple of law firms are sharing

20   lawyers illegally, billing the class twice just like in the

21   State Street case.  The Court should outright dismiss those

22   firms that are engaged in fraud on the class and then dismiss

23   the other firms who stood by and did nothing since they were

24   made aware of this four-and-a-half years ago.

25          It is well-known that under Article 3 of the United

Fairness hrg.                                   11/8/2018

1   States Constitution federal courts only have jurisdiction over,

2   quote, "live cases in controversy," See e.g. -- excuse me.

3           I can hear you.  Would you please be quiet?

4           **THE COURT:**  Okay.  You should address that,

5   Mr. Andrews, to the Court not to the parties directly, okay?

6           **MR. ANDREWS:**  Oh, sorry.

7           **THE COURT:**  But we can hear you.  If you'd be a

8   little quieter, that would be helpful.

9           **MR. MILLER:**  We apologize, your Honor.

10          **THE COURT:**  It's okay, you might want to do something

11  with the mic like turn it.

12          **MR. ANDREWS:**  See e.g. *Spencer versus Kemna* 523 U.S.

13  Supreme Court 1, 7, 1998, *AM versus Butler* 360 F.3d 787-790

14  Seventh Circuit 2004.

15          **THE COURT:**  Are those cases cited in your objection?

16          **MR. ANDREWS:**  No, they're not.

17          **THE COURT:**  So the cases that you're referring to

18  were not cited in your objections --

19          **MR. ANDREWS:**  One of them -- two of them.

20          **THE COURT:**  Let me finish my statement, please.

21          **MR. ANDREWS:**  Oh, sorry.

22          **THE COURT:**  The cases that you cite to that were not

23  cited in your objection, you need to provide the Court with a

24  written citation of them, okay?

25          **MR. ANDREWS:**  Sure.  I'll get it in the mail

Fairness hrg.                                11/8/2018

1    Saturday, if that's okay, or do you want copies of this?

2            **THE COURT:**  If you can make a copy of that, if it has

3    your citations on it, that's fine.  It's just that they're read

4    into the record.  I haven't had a chance to look at them.  I'm

5    not aware of them if somebody else didn't cite them.

6            **MR. ANDREWS:**  Sure.

7            **THE COURT:**  And so if you're going to cite them

8    orally, you need to give them to me in writing.

9            **MR. ANDREWS:**  Yes, ma'am.

10           **THE COURT:**  Okay.  All right.  You may proceed.

11           **MR. ANDREWS:**  The cases in controversy requirement

12   demands that parties in a federal case always maintain a

13   personal stake in the outcome of litigation.  See *United States*

14   *Juvenile Male* 131 Supreme Court 2860-2864 2011.  Spencer, 523

15   U.S. at 7.  In 2010, in *Wal-Mart Stores versus Duke,* the

16   Supreme Court breathed new life into Rule 23's stringent

17   requirements.  *Duke*, 131 Supreme Court at 2561.  Plaintiffs in

18   that case, like in this case, can't prove that they can satisfy

19   each element of Rule 23.  So the class can't be certified.

20           The Ninth Circuit's decision in *Hyundai versus Kia*

21   *Fuel Economy Litigation*, Number 15-56014, 2018 by, let's see,

22   Ninth Circuit, January 23rd, 2018, supports decertification in

23   this case as well because the plaintiff's purported evidence of

24   damages is not sufficient to prove class-wide damages because

25   damages vary from class member to class member and many don't

         The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1    have damages at all.

2           Federal courts, it bears repeating, are "courts of

3    limited jurisdiction." *Kokkonen versus Guardian Life Insurance*

4    *Company of America*, 511 U.S. Supreme Court 375-377, 1994.

5    "Article 3 requires federal courts to satisfy itself to its

6    jurisdiction over the subject matter before it considers the

7    merits of the case."

8           *Ruhrgas Ag versus Marathon Oil* 526 U.S. Supreme Court

9    574-583, 1999.  "A failure of standing is a jurisdictional

10   defect that prevents a court from adjudicating the merits of

11   the case." *Whitmore versus Arkansas* 495 U.S. Supreme Court

12   149-154 1990.  *Allen versus Wright* 468 U.S. 737, 750-754 1984.

13   The Court may not be able to make a ruling in this case based

14   on lack of jurisdiction.

15          I'd like to touch on the fee issue.

16          In the Sixth Circuit's reversal of this case, the

17   panel criticized the partner fees of $700 an hour that rewarded

18   as "Bentley" rates.  When the maximum rate in this area is $425

19   an hour, that assumes a lawyer has 25 years of experience and

20   is in the top five percent of all lawyers in the area.

21          The last 2,657 hours of "inflated work" that lawyers

22   charged to the class, after the appeal reversal came down,

23   totals an astounding $4,250,000 in fees.  Broken down, this is

24   a "Bugati" hourly rate of $1,600 an hour.  It's clearly a

25   fraudulent, inflated rate.  Class counsels' claimed blended

            The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                          11/8/2018

1    rate in this case that they demand is clearly fraudulent and

2    can't be used as the basis for any award calculation, Lodestar,

3    or percent of fund.

4            On October 1st of 2018, a federal judge in Illinois

5    in a case titled *Ocwen Loan Servicing* denied a

6    $17.5 million-dollar TCPA settlement over excessive attorney

7    fees, and the Courts reject this deal here as well.

8            Based on the evidence -- my summary.  Based on the

9    evidence in the record, the proposed settlement is still not

10   fair, reasonable and adequate under Rule 23(e).  So the Court

11   should reject this deal and order class counsel to reimburse

12   the Defendant for all of its fees and costs it incurred as the

13   Defendant requested.

14           The right and lawful thing to do in this case is to

15   decertify the class based on the lack of jurisdiction or

16   dismiss the action with prejudice.  That ends my presentation.

17           **THE COURT:**  Okay.  Thank you very much.

18           **MR. ANDREWS:**  Thank you for your time.

19           **THE COURT:**  Do you have another copy of it that has

20   the citations in it?

21           **MR. ANDREWS:**  The citations is what I just read off.

22           **THE COURT:**  Your case citations, are they in your

23   document?

24           **MR. ANDREWS:**  Yes, that I just read off, correct.

25   I'll leave copies for the young lady here.

         The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1           **THE COURT:**  That would be great.

2           **MR. ANDREWS:**  Okay.  Thank you.

3           **THE COURT:**  Thank you very much.  Okay.  On behalf of

4    the 26 companies represented by the Varnum firm, Mr. Walters,

5    are you going to argue for them?

6           **MR. WALTERS:**  Yes, I am, your Honor.  Thank you.

7           **THE COURT:**  All right.  Very good.

8           **MR. WALTERS:**  Good afternoon.  May it please the

9    Court.  As the Court is aware, the settling parties here,

10   Plaintiffs and Blue Cross, have the burden of proving that the

11   proposed settlement for just under $30 million, of which a net

12   amount of less than $15 million would actually be distributed

13   to the class, is fair, reasonable, and adequate to the

14   approximately seven million potential class members affected by

15   this case.  It is not the objectors' duty to prove that the

16   settlement is unfair, it is the Plaintiffs and Blue Cross' duty

17   to prove --

18           **THE COURT:**  I understand who has the burden of proof.

19   I just had you all go first because I thought it would be

20   easier to set forth, since there are only two objections, so

21   that they could respond to them -- those arguments and then

22   they could also make their case.

23           **MR. WALTERS:**  I appreciate that, your Honor, and I

24   think that process makes sense.  So I wasn't trying to indicate

25   otherwise.

          The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1          We've now had the opportunity to review the record or

2   at least the bulk of the record.  There are still some

3   redactions based on the Court's decisions with regards to

4   particular documents.  It's about --

5          **THE COURT:**  Tell me that again.  You haven't had an

6   opportunity to review all the documents that the Court ordered

7   could be unsealed?

8          **MR. WALTERS:**  We have had the opportunity to review

9   the record, other than portions of certain documents that the

10  Court allowed to remain redacted.  The Court went through it, a

11  document-by-document process.  There were certain documents

12  where third parties, for example, said hey, there's portions of

13  this that we think are still confidential, and so the current

14  record does have some blackouts, some strikeouts.  We've had a

15  chance to review everything other than those --

16         **THE COURT:**  That the Court allowed.

17         **MR. WALTERS:**  That's correct, your Honor.  It's about

18  19,000 pages, and the reason why I point that out, your Honor,

19  is that it's still, just for context here, is really a tiny

20  fraction of the millions of pages of documents that were

21  produced in discovery, the hundreds of thousands of pages of

22  deposition testimony, the terabytes of electronic data that

23  were exchanged in discovery.  What's in the court record, which

24  is of course what we're -- we have the ability to look at, and

25  it's what the Court must base its decision on, what's in the

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1   court record is really only a tiny sliver of the entirety of

2   the case, and that's largely because there wasn't a trial,

3   there wasn't a final pretrial.  There's not been summary

4   judgment briefing.  So there hasn't been a reason, in the

5   course of the case, for the parties to really put all of that

6   substantive evidence before the Court before the course of the

7   settlement.

8          So the main substantive documents, the main

9   information in the record that really tells us anything about

10  the merits of the case are the expert reports because we had

11  expert reports that were challenged under the *Daubert* standard,

12  and so there was both submission of the reports and briefing

13  around the reports, both in this class action case, and also,

14  importantly, in the related Aetna standalone lawsuit involved

15  expert reports that were unsealed that relate very much to the

16  MFN agreements.

17         So we did not have the ability to go through the

18  millions of pages of the record in terms of what was produced

19  in discovery.  What we did have the ability to do is look at

20  what the expert said.  The expert did that work.  The expert

21  spent thousands of hours most likely reviewing all that

22  information, analyzing it, coming up with their conclusions and

23  opinions, which were then set forth in these expert reports.

24  So that's why there's a criticism in the, particularly I think,

25  the Plaintiffs' response in particular calls the objectors to

Fairness hrg.                                    11/8/2018

 1   task for why aren't you actually citing the deposition

 2   testimony?  Why aren't you actually citing the underlying

 3   documents in the case?  Those are not part of the court record.

 4   Those are not available to us.  We cited what was available to

 5   us, which is the expert reports, your Honor.

 6            There are two basic conclusions that can be drawn

 7   from the expert reports, two key conclusions, one, that there

 8   is substantial evidence supporting the Plaintiffs' claims that

 9   the Most Favored Nation agreements did in fact increase the

10   amount paid by class members for hospital services.

11            **THE COURT:**  Okay.  So before you get to that, so I

12   clearly understand your argument, your argument is that you did

13   not have an opportunity to view any of the things that were

14   ultimately unsealed?

15            **MR. WALTERS:**  That's not what I'm saying, your Honor.

16   What I'm saying, your Honor, is that the totality of what was

17   ever filed with the Court in this case, when you look at the

18   Page ID number, the consecutive, you know, numbering system

19   that the ECF system has, totals just under 19,000 pages.  We've

20   had the opportunity to see all of that 19,000 pages.  Some of

21   those pages still have portions that are blacked out, but we've

22   had a chance to see those 19,000 pages.  What we haven't had a

23   chance to see and what we haven't even asked to see, but I'm

24   just putting it in context, are the millions of pages of the

25   record in terms of what was actually exchanged during

        The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                        11/8/2018

1  discovery, 169 --

2          **THE COURT:**  That's my concern.  When you say of the

3  record.  It's not of the record --

4          **MR. WALTERS:**  That -- that --

5          **THE COURT:**  It's not of the record, it's not filed

6  with the Court.

7          **MR. WALTERS:**  That's correct.  My verbiage is

8  probably not accurate.

9          **THE COURT:**  Well, I don't want it to be misunderstood

10 by the Court of Appeals so that they think that I should have,

11 because something was -- sounded like it was in the record,

12 have opened that up if it was never filed with the Court.

13         **MR. WALTERS:**  Okay.

14         **THE COURT:**  Everything that was ever filed with the

15 Court, that remains -- that's not redacted, you've had an

16 opportunity to look at?

17         **MR. WALTERS:**  Yes, just like every other member.

18         **THE COURT:**  And your argument is that there's lots

19 more discovery that was exchanged that was never filed.

20         **MR. WALTERS:**  That's correct, your Honor.

21         **THE COURT:**  And you haven't asked for that either, is

22 that also your understanding?

23         **MR. WALTERS:**  I -- we have not.  We did, if the Court

24 may recall, back after the Sixth Circuit's decision, file a

25 motion to intervene as an interested party in the case, which

Fairness hrg.                                    11/8/2018

 1   would have potentially given us the ability to see that, based

 2   on further decisions.  The Court denied our motion to intervene

 3   and indicated that our opportunity to participate was through

 4   this objection and fairness hearing process.

 5              **THE COURT:**  Okay.

 6              **MR. WALTERS:**  So the first conclusion that can be

 7   drawn from the record, in terms of the expert reports being the

 8   main substantive evidence in the record, is that there is

 9   significant evidence supporting the merits of the Plaintiffs'

10   claims.

11         The second thing that can be gleaned from the record

12   from those expert reports is that none of the experts have

13   offered the opinion or conclusion that the most that the class

14   could recover in trial on the merits is $118 million.

15         The premise for the settlement, in evaluating the

16   fairness of the settlement, has been consistently framed by the

17   Plaintiffs and Blue Cross as well, the most the class could

18   ever recover is $118 million and, therefore, this settlement is

19   reasonable as a percentage of that $118 million recovery.

20         The actual evidence that I'll point to in just a

21   minute from those expert reports, there is no opinion, there is

22   no conclusion from any expert that says that $118 million is

23   the damage number, is the maximum recovery.  In fact,

24   Dr. Leitzinger, the Plaintiffs' expert explicitly says exactly

25   the opposite and I'll get to that in just a minute.

         The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1              I want to first talk about the evidence that does

2    support the merits of Plaintiffs' claims.  First, and very

3    significantly, I want to remind the Court that the Sixth

4    Circuit, in its opinion at least to some extent, indicated that

5    it already examined the record and already found that Blue

6    Cross' Most Favored Nation scheme raised hospital costs for

7    Blue Cross customers and for everybody else.

8              At Page 303 of the Sixth Circuit's opinion, there's a

9    paragraph that starts as follows, and from the Sixth Circuit,

10   the opinion states, "The record in this case also reflects that

11   the greater the spread between Blue Cross' rates and the

12   minimum rates for other insurers, the higher the rates that

13   Blue Cross was willing to pay.  For example, Blue Cross would

14   agree to pay a certain rate if a hospital agreed to charge

15   other insurers 10 percent more than Blue Cross, but if the

16   hospital agreed to charge other insurers even more, say 20 or

17   30 percent higher rates than Blue Cross, then Blue Cross would

18   agree to pay even higher rates.  Thus, the effect of Blue

19   Cross' market power was not to lower its customer's rates, as

20   typically advertised, instead, the effect was to raise them for

21   Blue Cross' customers and everyone else while preserving or

22   expanding Blue Cross' market share."

23             Notably, your Honor, this is not the Sixth Circuit

24   saying, well, this is what the complaint says or this is

25   Plaintiffs' theory of the case.  The Sixth Circuit says the

              The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                   11/8/2018

1   record in this case also reflects these findings.  I think

2   that's very important, your Honor.  The Sixth Circuit, while

3   vacating the decision to approve the initial settlement and

4   sending it back to the Court to start the process anew, gave

5   some pretty strong hints to the Court on this issue and on a

6   number of other issues as to what the Sixth Circuit was

7   thinking and to what some of the Sixth Circuit's concerns were.

8   And unfortunately here, the Plaintiffs and Blue Cross

9   essentially ignored those hints and decided to plow forward

10  with essentially the same settlement agreement that was

11  presented to the Court the first time.

12          So I'm going to point to the Sixth Circuit's opinion

13  a few different times, mostly just to indicate that there's

14  already been some degree of direction, whether you might say

15  it's dicta because there wasn't final holdings on that, but

16  Sixth Circuit has given some guidance here as to real concerns

17  with the settlement.

18          Turning now to the two expert reports that are

19  discussed in our objection.  First is Dr. Leitzinger's report,

20  the Plaintiffs' expert here in this case.  He and his research

21  team were paid more than two-and-a-half million dollars to

22  analyze these millions of pages of documents produced in

23  discovery, the tens of thousands of pages of deposition

24  testimony, the terabytes of data, and to analyze and summarize

25  those and offer an opinion in support of class certification.

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1    And that's really important that the Court be reminded of the

2    context of what that report was for.

3              Dr. Leitzinger's report was not a final report in

4    support of whether there was an antitrust violation, not a

5    final liability report, and it was not a final damages report.

6    This is at the class certification stage of the case.  His was

7    a report on whether the Rule 23 factors for certifying a class

8    were met, the numerosity, commonality, typicality, those

9    factors that I'm sure the Court is very familiar with.  That

10   was the purpose of Dr. Leitzinger's report, not to offer a

11   final damages number as to the most that the Plaintiffs could

12   recover -- or the class rather could recover at trial.

13             The report had four specific purposes that are

14   described on Page 4 of the report on Paragraph 9.  First was to

15   analyze the impact of the Most Favored Nation agreements on the

16   amounts paid for hospital services.  Second was to determine

17   whether all or virtually all of the class members paid some

18   overcharge, that kind of commonality function.  Number three,

19   determine whether the total overcharges incurred by the class

20   as a whole could be calculated on a class-wide basis.  And

21   number four, to determine whether economic issues associated

22   with proving the antitrust violation would involve evidence

23   that's common to the proposed class members.

24             So Dr. Leitzinger's analysis is all about whether or

25   not this should be a class case or whether it should be

          The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1   thousands of individual cases that are pursued separately.

2   That was the purpose of Dr. Leitzinger's report.

3            Dr. Leitzinger and his staff spent thousands of hours

4   on his work.  He put together a 137-page report.  We did not

5   attempt to regurgitate that whole report in our objections.  We

6   did attach it to our objection to make sure that it was

7   included in the record.  And Dr. Leitzinger reached four key

8   conclusions that are in Paragraph 11 of his report at Pages 4

9   through 6:

10           That the Most Favored Nation scheme did in fact

11  increase the amount paid by class members for hospital

12  services; that all or virtually all of the class members likely

13  paid at least some additional amount as a result; that the

14  total amount of overcharges could be calculated on a class-wide

15  basis and didn't just have to be calculated on an individual by

16  individual basis; and that much of the evidence relevant to

17  proving that the Most Favored Nation scheme violated antitrust

18  laws was common to the class as a whole.

19           Those were his conclusions.

20           Notably missing here is any conclusion that the class

21  suffered $118 million in damages.  That was not one of

22  Dr. Leitzinger's conclusions.

23           Our objection pointed to just a few specific examples

24  where Dr. Leitzinger cited specific documentary and deposition

25  evidence to support his conclusion.  So Dr. Leitzinger's report

Fairness hrg.                                    11/8/2018

1   does not attach as exhibits to it those millions of pages of

2   documents produced in discovery.  He references by Bates number

3   those documents produced in discovery.  He references by page

4   number those depositions, but all of the backup is not attached

5   to Dr. Leitzinger's report and all of this backup, as a result,

6   is not part of the court record.

7           But we did point out a few examples of specific

8   examples from Dr. Leitzinger's report, that the Most Favored

9   Nation scheme resulted in an additional $1.5 million being paid

10  for hospital services at the Sparrow Health Ionia; that it

11  resulted in additional $7 million being paid for hospital

12  services at Ascension Health, that it resulted in an additional

13  $25 million being paid for services at Beaumont.  These are

14  just a few of the examples that were called in our objection,

15  just as examples from Dr. Leitzinger's report.

16          The last thing I want to leave the Court with

17  from Dr. Leitzinger's report is his conclusion with regard to

18  damages, because he did not and was very explicit in saying

19  that he was not offering a final report on damages.  He was,

20  instead, illustrating that damages were capable of being

21  calculated class wide.  Paragraph 76 of Dr. Leitzinger's report

22  makes this extremely clear and this is what he says in

23  Paragraph 76, he says the following:

24          "In total, the aggregate overcharges shown in by

25  illustration for all affected combinations is approximately

        The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                        11/8/2018

1    $118 million.  This illustration does not represent a final

2    opinion on my part regarding the amount of overcharges."

3              I'll read it again:  "This illustration does not

4    represent a final opinion on my part regarding the amount of

5    overcharges.  Rather, it demonstrates the basis for my

6    conclusion that those overcharges can be calculated in a

7    class-wide formulaic basis."

8              Again, going back to the purpose of the report.  The

9    purpose is to show that this can be a class action.  The

10   purpose was not to show how much damages the class suffered.

11             Turning now to the Aetna lawsuit.  The Court's orders

12   after the remand from the Sixth Circuit also allowed us to

13   examine previously sealed documents in the standalone separate

14   litigation, and there is an even more extensive expert report

15   prepared by Aetna by Dr. Christopher Vellturo.  It's 244 pages

16   with more than 1,100 footnotes in Dr. Vellturo's reports and

17   his conclusions are similar to Dr. Leitzinger's.  He and his

18   process is the same, but again, it cites by Bates number, the

19   underlying documents.  It cites by page number the deposition

20   testimony, but it doesn't attach all of that to the record.

21             Dr. Vellturo concluded that Blue Cross paid more to

22   hospitals in exchange for the Most Favored Nation agreements,

23   and, importantly, that these higher costs for hospital services

24   were then passed on by Blue Cross to its customers in the form

25   of either a direct passthrough for the self-insured customers,

Fairness hrg.                              11/8/2018

1   like my client, for whom Blue Cross just acts as a claims

2   administrator but the client, our businesses, actually pay the

3   bill, or in the form of higher premiums for fully insured

4   individuals.  Blue Cross was not just eating these additional

5   costs themselves, it was passing them onto its customers.

6          And of course the reason in the market that Blue

7   Cross could actually pass those onto its customers is because

8   those same costs were also being passed on to HAP and Aetna and

9   Priority Health, et cetera, so Blue Cross could say it wasn't

10  putting itself in a competitive disadvantage by eating those

11  costs itself, it was fully able in the market to be able to

12  pass on those costs to others.

13         Dr. Vellturo's report described more than a dozen

14  examples where there were hospital rates with Blue Cross that

15  increased as a result of the Most Favored Nation scheme.  Some

16  of those are the same examples noted by Dr. Leitzinger, which

17  is no surprise; they're looking at the same set of underlying

18  documents.  Our report -- our objection noted just one

19  additional example from Dr. Vellturo at Marquette General

20  Hospital, where Marquette General Hospital ended up with a

21  15-percent rate hike for hospital services explicitly tied to

22  the Most Favored Nation between Blue Cross and Marquette

23  General Hospital.

24         Dr. Vellturo's conclusion was that in total, he had

25  determined that Blue Cross had paid hospitals over $100 million

         The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1   more in exchange for the Most Favored Nation agreements, and

2   that that $100 million or more in additional hospital costs

3   were passed on by Blue Cross to its self-insured customers and

4   fully insured individuals, namely, the class members.

5         The Court has accepted -- has granted the motion to

6   respond to Blue Cross' brief on the issue of the final

7   approval.  I don't know if the Court has read that brief or

8   not, but there was an issue in that brief about Dr. Vellturo's

9   testimony and whether or not it had been excluded previously in

10  the Aetna decision.  I don't want -- our brief on that issue is

11  very short.  It's only about two-and-a-half pages.  I'd be

12  happy to just say, "please read the brief," but if you'd like

13  me to summarize the argument on that issue, I'll do it.

14        **THE COURT:**  That's up to you, sir.

15        **MR. WALTERS:**  Okay.  Well, I guess I'll go ahead and

16  very briefly summarize that then.

17        Blue Cross argued in its brief that the testimony

18  from Dr. Vellturo, the opinions from Dr. Vellturo that I just

19  talked to the Court about, the over $100 million in additional

20  hospital costs as a result of the Most Favored Nation agreement

21  being passed on, that this opinion had been excluded by this

22  Court on a motion in limine in the underlying Aetna case, and

23  that's just flatly incorrect.  It's not true.

24        What the Court did in the Aetna case, and this is at

25  Page 14 of its opinion, is the Court excluded some 30(b)(6)

The Shane Group v BCBS-MI, Case No. 10-14360

1  deposition testimony from Dr. Vellturo regarding the economic

2  impact on Aetna, not on the class members, not on self-insured

3  customers or fully insured individuals, they impact on Aetna in

4  Aetna setting its premiums as a result of the Most Favored

5  Nation scheme, and the reason why your Honor excluded that

6  testimony is because it wasn't in Dr. Vellturo's expert report

7  and it wasn't based on documents that had been exchanged in the

8  course of discovery.

9        By direct contrast, what we are relying on, what we

10  are citing to the Court are portions of Dr. Vellturo's expert

11  testimony -- expert opinions in his expert report disclosed in

12  that case, relating specifically to his findings concerning the

13  additional hospital costs that Blue Cross paid and then in turn

14  passed onto its customer base of over $100 million.

15        So there's two conclusions to draw from the expert

16  reports, one, there's substantial evidence that the Most

17  Favored Nation agreements harmed the marketplace and caused

18  class members to pay for more hospital services; and, two, that

19  there is initial damages analysis that suggests well in excess

20  of $100 million of damages, but there is no final damage

21  analysis for the class because the experts weren't asked to do

22  that and the case wasn't at that stage of the proceedings.

23        One last point on damages, your Honor.

24        The experts did not include any multiplication, any

25  treble damages or attorneys' fees that the Plaintiffs would be

Fairness hrg.                          11/8/2018

1   awarded if they were successful at trial.  The Sixth Circuit,

2   in its opinion, strongly suggested at two different points of

3   its opinion that an assessment of the reasonableness of the

4   settlement should consider the treble damages that the class

5   would receive if successful at trial.  At Page 304 and at Page

6   308 of the Sixth Circuit's opinion, the Court both times framed

7   the analysis of the fairness and reasonableness of the

8   settlement in terms of evaluating the treble damages award that

9   the Plaintiffs could recover if successful against the amount

10  of the actual settlement.

11          And of course this makes sense to consider that.

12  What is the Plaintiffs' best case day?  It's a treble damages

13  award if they're successful at trial, and that treble damages

14  award is mandatory, not discretionary.  So it's not a situation

15  where you would have to discount in kind of an evaluating what

16  might happen if the Plaintiffs are successful, that you'd have

17  to discount for a possibility that the Court could choose not

18  to give treble damages.  Treble damages are mandatory if the

19  Plaintiffs are successful.  So in evaluating what the

20  Plaintiffs damages are, the Court should be considering those

21  treble damages.

22          So the real ceiling for the maximum recovery that the

23  class could obtain is unknown.  It hasn't been determined yet.

24  There's nothing in the record that would tell us what that is,

25  but it's certainly several hundred millions of dollars, not the

        The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1    $118 million that is being argued somehow is the maximum that

2    the class could possibly recover.

3            So we have what's been presented in the objection,

4    what's been presented in the expert report, substantial

5    evidence -- what's been noted by the Sixth Circuit in the

6    record, substantial evidence that the Most Favored Nation

7    agreements did in fact cause harm to the class.

8            Plaintiffs and Blue Cross, in their presentations to

9    the Court, in their papers filed in the Court, still have not

10   presented substantial evidence on their side showing why the

11   settlement is reasonable and fair.  The closest that they come

12   would be in Blue Cross' brief -- final brief in support of the

13   settlement.  Blue Cross, for example, cites to the testimony of

14   several hospital executives, who said during their deposition

15   that hospital rates did not increase as a result of the Most

16   Favored Nation agreements.  They don't actually, you know,

17   quote to the deposition testimony.  They don't go into detail

18   about it, but they say, oh, don't worry, the executive said

19   this didn't actually cause any harm here.

20           Frankly, your Honor, I think that's hardly

21   persuasive.  I mean these are people who of course are trying

22   to avoid any potential liability on their part for agreeing to

23   this -- be a part of the scheme.  It's directly contrary to the

24   evidence, as described in Dr. Leitzinger's and Dr. Vellturo's

25   report.  It's contrary to the Sixth Circuit's view of the

         The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1   record, and it's completely counterintuitive in terms of the

2   just common sense view that a trier of fact would understand

3   that when Blue Cross is coming to you as a hospital and saying,

4   hey, we will pay you 15 percent more on hospital services --

5   using the example of Marquette General Hospital -- as long as

6   you guarantee that you are also going to make Priority Health

7   and Health Alliance Plan and Aetna and whoever else also pay a

8   rate that matches or is even higher than Blue Cross.  It's

9   counterintuitive to think that that would not have the impact

10  of raising hospital rates.

11          Blue Cross' other arguments are, frankly, baffling.

12  They offer some other arguments as to why we're not --

13  Plaintiffs are not likely to succeed on the merits.  They say

14  that Blue Cross' use of the Most Favored Nation clauses was

15  inconsistent and, therefore, you know, didn't show an intent to

16  control the market.  Well, yeah, they did only have them at

17  half of the hospitals in the state of Michigan.  They did

18  sometimes only require a match for Most Favored Nation, and

19  sometimes they had Most Favored Nation plus 10 percent.

20  Sometimes they had Most Favored Nation plus 20 or 30 percent,

21  but that's hardly an indication that there wasn't an antitrust

22  violation here to say, well, we didn't do it at every hospital

23  in the state.

24          Blue Cross also argues they use these Most Favored

25  Nation clauses to prop up smaller hospitals and to prevent free

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                   11/8/2018

1   riders.  That's just lawyer talk for saying, yeah, we used to

2   pay more to smaller hospitals, and by preventing free riders,

3   making sure that other insurers also paid more.  It's just a

4   simple way of characterizing that they were manipulating the

5   market.  They were increasing costs for hospital services and,

6   of course, the critical component of that was those costs were

7   ultimately being borne by Blue Cross' customers.

8          They also point out that other insurers were also

9   using Most Favored Nation agreements.  Well, maybe there's

10  other antitrust claims to be pursued out there.  Although, none

11  of those other insurers have the same type of market power of

12  course that Blue Cross does, but that's hardly an excuse for

13  Blue Cross' actions.

14         The Plaintiffs' arguments in many ways are even

15  worse, are even thinner than this in terms of trying to justify

16  this settlement.  Most of what the Plaintiffs do is repackage

17  the same generic litigation risk that they cited to this Court

18  last time, but not explaining why those risks are significant

19  in this case, drilling down to what are the specific facts and

20  issues in this case that make these significant risks.

21         They put out a litany of potential risks.  The expert

22  testimony could be excluded, because the *Daubert* motion was

23  pending at the time of the settlement.  The final damages

24  report might show a smaller number of damages.  The case could

25  get dismissed on summary judgment because there hasn't been

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                        11/8/2018

1  summary judgment briefing yet.  The trial could be complicated,

2  because there's different geographic markets potentially that

3  would be involved, almost sub trials within a trial as to

4  different geographic markets.  The Plaintiffs could lose at

5  trial.  The Plaintiffs could be awarded less than their entire

6  damages at trial.  The Sixth Circuit could reverse because

7  antitrust cases are complicated and often get reversed on

8  appeal.

9          But all of these arguments are thrown out there as

10  generics, not with any sort of discussion of how significant

11  those risks are in the context of this case, in the context of

12  the record before the Court in this case.  There's no deeper

13  dive to explain why those risks are so significant in this case

14  to justify what we believe is an artificially low settlement

15  amount.

16          Plaintiffs' other justification that they rely on

17  pretty heavily in their last round of briefing is that because

18  Health Alliance Plan opted out of the class and pursued its own

19  claim, that that means that the settlement is now even more

20  fair or even more reasonable as a result, but that's not

21  persuasive, your Honor.  As both Dr. Leitzinger and

22  Dr. Vellturo noted, whatever amounts HAP paid -- when HAP ends

23  up paying more for hospital services because there's a Most

24  Favored Nation agreement where Blue Cross raises costs and

25  therefore their costs get raised as well.  When HAP ends up

        The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1    paying more, HAP is also passing those on to its customers.

2    It's passing it on to its self-insured customers as a direct

3    passthrough.  It's passing it on to its fully insured customers

4    through higher premiums.  HAP's opt-out doesn't bar the claims

5    of class members, who were insured by HAP, who then paid more

6    for hospital services.

7              So out of that seven million potential class members,

8    there are presumably hundreds of thousands of them who are with

9    HAP, and their claims are not barred because HAP itself opted

10   out.  Put another way, HAP, in its litigation, was not under

11   any obligation in terms of -- I believe in terms of any, you

12   know, settlement that it received or judgment that it received.

13   HAP was not under an obligation to turn around and refund that

14   to all of its customers.  HAP was pursuing its own business

15   claims.  The individualized harm to the self-insured customers

16   and fully insured customers of HAP are still part of this class

17   action and are still part of that recovery.

18             Ultimately, your Honor, a net settlement of less than

19   $15 million for seven million potential class members is

20   unreasonable.  It's roughly $2 per potential class member.  On

21   its face, given the state of the facts before the Court, given

22   the fact that there are multibillion dollars spent a year on

23   hospital care in the state of Michigan, it's not, on its face,

24   a reasonable amount.

25             The parties try justify that number by saying well,

Fairness hrg.                                   11/8/2018

1    it doesn't matter that are there are seven million potential

2    class members because the money is distributed to all the class

3    members, right?  You know, you have to file a claim to get a

4    distribution and there have been approximately 84,000 claims

5    filed, according to the most recent filings by the Plaintiffs.

6    And if you took 84,000 claims filed and you divided up that

7    roughly $15 million pot, you'd end up with about $175 per

8    claimant and, on its face, well, that sounds a little bit

9    better.  $175, that's real money.  I can, you know, have a nice

10   dinner.  You know, I could do something with that.  It's more

11   than $2 for a settlement.

12           But we would submit, your Honor, that it is

13   inappropriate to justify the meager settlement amount based on

14   the fact that so few potential class members filed claims.

15   84,000 claims is just over one percent of that seven million

16   potential class members.  Respectfully, your Honor, that is a

17   pathetic participation rate in the class settlement, and it

18   strongly suggests that one or both of two things is going on,

19   either, one, that the claims process is too burdensome so a few

20   people are filing claims because of that; and/or, two, that the

21   settlement amount is too minimal for most class members to

22   bother filing claims.

23           At the end of the day, the flip side of, well,

24   there's 84,000 claims filed is that over 6.9 million potential

25   class members will get nothing under this settlement if it is

                 The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1   approved today.  Nothing.  We would respectfully say that is

2   compelling prima facie evidence that this settlement is

3   unreasonable.

4          The other objections that we make to the settlement,

5   besides the settlement amount compared to the likelihood of

6   success, are well-documented in our brief and I'll touch on

7   them only very briefly.

8          The attorney's fee award to the Plaintiffs' counsel

9   is based on unreasonable hourly rates.  They're described as

10  Bentley rates by the Sixth Circuit, and there's no backup

11  support presented for the work done by Plaintiffs' counsel to

12  justify the massive number of hours that were expended in the

13  case.  By contrast, your Honor, in our motion for attorneys'

14  fees, which will be discussed later, we attach the backup.  We

15  attach the contemporaneous time records showing for each day,

16  each entry describing what we did and we received no objection

17  to any of those time entries in terms of what was presented to

18  the Court for approval.  We don't have that here in this case,

19  your Honor.

20         The Plaintiffs' counsel really tries to excuse that

21  by saying, well, we're really trying to present this more as a

22  percentage of the fund case.  It's not so much about a Lodestar

23  calculation and an hourly rate times number of hours worked,

24  this is a percentage of the fund case.

25         Your Honor, we would submit that the attorney fee and

       The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1   expert cost being requested by Plaintiff are out of proportion

2   to the overall settlement of the case.  When you look at the

3   fact that more than half of the $30 million settlement is going

4   to Plaintiffs' counsel, either in attorneys' fees or in

5   reimbursing their costs, reimbursing expert fees, or in class

6   administration fees in terms of giving notice.  The fact that

7   less than half of the settlement amount is being paid to class

8   members is unreasonable, even under a percentage of the fund

9   theory for recovery.

10       We also touched very briefly on the incentive awards,

11  which the Sixth Circuit described as bounties of up to $50,000

12  per Plaintiff.  Those are grossly excessive and create an

13  improper incentive for the Plaintiffs to accept settlement and

14  to sell out the rest of the interests of the class.

15       The Sixth Circuit noticed very serious concerns about

16  these awards and essentially said the burden was on the

17  Plaintiffs to demonstrate with evidence the amount of time that

18  the Plaintiffs actually spent on this case.  The Sixth Circuit

19  acknowledged that it might be reasonable to reimburse the

20  Plaintiffs some sort of hourly rate for the time that the

21  Plaintiffs actually spent sitting in at a deposition, answering

22  interrogatories, you know, participating in the case.

23  Plaintiffs have not done that.  Plaintiffs have not presented

24  any information or evidence that would allow this court, or the

25  Sixth Circuit on appeal, either to look at the record and say,

Fairness hrg.                                    11/8/2018

1   okay, you know, this Plaintiff spent 500 hours on the

2   litigation of their time and they should be reimbursed, you

3   know, $100 an hour and so that calculates out to $5,000 or

4   $50,000 whatever the math is.  I apologize.  But you understand

5   what I'm saying, your Honor.  None of that -- none of that is

6   in the record here.

7        Finally, back to the claims process itself being unduly

8   burdensome.  We objected to this before, and we continue to

9   object to this now.  The claims process for self-insured plans

10  like my clients require them to submit electronic -- require

11  them to submit claims data for all of their tens or hundreds of

12  employees of what day they were in the hospital, what hospital

13  they were at, the whole list of information that's required in

14  the claims form.

15       The problem with this, your Honor, is that if you're a

16  self-insured customer whose claims are being administered by a

17  third-party administrator like Blue Cross, Blue Cross is the

18  party who has that information, and we cited an example of this

19  in our objection and in our prior objection with regard to one

20  of our clients, Petoskey Plastics.  Petoskey Plastics, one of

21  our clients, was interested in submitting a claims form.  They

22  didn't have the electronic claims information needed to submit

23  to the claims administrator on the class action settlement.

24  What do they do?  They go to Blue Cross.  Blue Cross is their

25  administrator for hospital claims.  They spent five hours

Fairness hrg.                                    11/8/2018

1   wrangling back and forth with Blue Cross in e-mails, phone

2   calls, et cetera, to finally get the data from Blue Cross to

3   then submit to the class action claims administrator.

4        That's absurd.  Blue Cross is a party to the settlement.

5   Blue Cross has absolutely full access to all of the information

6   necessary for its customers, whether they're self-insured

7   customers or whether they're individual insureds, to go into

8   its records and say, okay, this person was in the hospital on

9   this date for this service and, therefore, they have a valid

10  claim in the class action settlement.  Blue Cross should be

11  made to do that as part of the claims process.  It's

12  unreasonable to put that burden on the class members.

13       Blue Cross argues in its briefing that the settlement

14  doesn't require them to do that and it expressly excludes any

15  obligation by Blue Cross to do that.  That's precisely why the

16  settlement should be rejected.  Blue Cross should not be able

17  to rely on the fact that the settlement let them out of this

18  obligation.  The settlement should be rejected because Blue

19  Cross has every ability to do this as part of the claims

20  process.

21       Again, the extremely small number of claims here, really,

22  84,000 out of seven million people itself demonstrates that the

23  claims process is unreasonable and that the settlement is

24  unfair.

25       So many of these concerns that I just got done mentioning

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1   with the attorneys' fees award, with the incentive payments,

2   with the claims process were hinted at, were discussed at some

3   level in the Sixth Circuit's opinion.

4          **THE COURT:**  How much weight do you think I should

5   give to that?

6          **MR. WALTERS:**  I think it is persuasive but not

7   binding, your Honor.  In other words, I mean I think it is

8   dicta.  It was not strictly necessary for the Court's decision

9   because the Court vacated fundamentally based on the records --

10  the access to the records issue.  However, I think it's a

11  pretty strong hint, nudge, wink, what have you, that these are

12  the concerns that the Sixth Circuit would like to see addressed

13  the second time around.

14         I think the Sixth Circuit was appropriately careful

15  to say, look, we're not going to take over the Rule 23 process

16  from the trial court.  The trial court has that obligation to

17  do that, but we are going to give some indication as to what

18  some of our concerns are to help give some guidance to the

19  process and to really help the Plaintiffs and Blue Cross out

20  the second time around.  And they didn't do you any favors,

21  your Honor, they just came back with the exact same deal

22  instead of actually taking to heart what the Sixth Circuit had

23  to say and reevaluating what the settlement would include, and

24  it put you in a very difficult place as a result.

25         Frankly, I think given those indications from the

Fairness hrg.                                  11/8/2018

1   Sixth Circuit, it is highly likely, nearly inevitable, that if

2   this settlement as-is is approved and goes up, it's going to be

3   vacated again.  It's going to be vacated on attorneys' fees or

4   it's going to get vacated on incentive awards, or it's going to

5   get vacated on the claims process, or it's going to get vacated

6   just on whether or not the settlement itself, the dollar

7   amount, is fair and reasonable.  But there are so many hints

8   and indications in the Sixth Circuit's opinion that it had real

9   concerns about the substance of what was presented in that

10  first round of settlement, that just sending up the same

11  settlement, to me, seems foolhardy.

12          At the end of the day, the Plaintiffs and Blue Cross

13  have not come remotely close to meeting their burden of proving

14  that the proposed settlement is fair, reasonable and adequate

15  to the class and, therefore, the settlement should be rejected.

16          Unless the Court has any other questions, that's the

17  conclusion of my comments.

18          **THE COURT:**  I do not.  Thank you.

19          **MR. WALTERS:**  Thank you, your Honor.

20          **MR. SMALL:**  Good afternoon, your Honor.  Dan Small

21  for the Plaintiff class.

22          **THE COURT:**  Okay.  Thank you.

23          **MR. SMALL:**  Thank you, your Honor.  Let me depart

24  from the presentation that I had planned to address one thing

25  at the very outset in response to Mr. Walters' argument.  He is

Fairness hrg.                              11/8/2018

1    attempting to convince the Court that Dr. Leitzinger's estimate
2    of damages is not really a damages estimate, and he bases that
3    on some language in Dr. Leitzinger's report about his opinion
4    not being final as to the amount of damages.  That language,
5    your Honor, is routine in every report I've ever seen done by
6    an expert in support of class certification, for the very
7    simple reason, your Honor, that that report is done for class
8    early in the case where there may be more discovery.  There may
9    be more data.  There will be responses to the expert report
10   from the other sides' experts.  So of course, an expert is
11   going to reserve his or her right to modify his opinion or her
12   opinion as appropriate if more evidence comes out.

13          But the really important point now, your Honor, is
14   that was clearly Dr. Leitzinger's best effort to estimate
15   damages in the case.  No one, your Honor, does two-and-a-half
16   million dollars of work in a case, reviews and works with and
17   analyzes terabytes of data involving 60-million claims spanning
18   seven years, does a sophisticated difference and differences
19   regression analysis, and comes up with a conclusion that's
20   detailed and well-articulated in his report, analyzing hospital
21   by hospital and provider agreement by provider agreement what
22   the damages are in this case.

23          Your Honor, it is one of the most sophisticated
24   damages analysis I've seen.  It involves a historically large
25   data set that Dr. Leitzinger worked with.  He did not hold back

Fairness hrg.                                    11/8/2018

1   in any way, your Honor.  That is a good, sophisticated,

2   accurate estimate of the damages in this case.

3           So what we have now, your Honor, and this was never

4   mentioned by any objector, is a settlement for about

5   $30 million that is equal to about 50 percent of the class's

6   damages, and that is in part, as was mentioned, because HAP,

7   the largest member of the class opted out and filed its own

8   case.

9           Now, Dr. Leitzinger calculated $118 million in

10  damages, but he also calculated that HAP had $58 million of the

11  $118 million, leaving $60 million for the remaining class

12  members as their damages.  So when HAP opted out it, in effect,

13  doubled the value of the settlement for the remaining class

14  members.  And that happened, your Honor, not by happenstance,

15  but by the fact that class counsel negotiated a settlement that

16  did not include an opt-out reduction provision, which is

17  actually quite typical in a class action settlement where the

18  Plaintiff class has to refund to the Defendant amounts in

19  proportion to the amount of opt-outs.

20          We don't have that in this settlement.  That is

21  actually a highly valuable provision in the settlement that has

22  now effectively doubled the value of the settlement, and, I

23  might add, even net of fees and expenses in this case, your

24  Honor, the settlement now is about 25 percent of the class's

25  damages.  So any way you look at is, this is an excellent

        The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1   recovery for the class.

2       Now, the size of the recovery speaks for itself, your

3   Honor, but I can give the Court the additional assurance that

4   the settlement was negotiated by experienced class counsel,

5   with long-standing reputations as zealous and effective

6   advocates, who would never sell out the class, your Honor.

7   Moreover, class counsel's interests have been fully aligned

8   with the interests of the class.  We get paid as a percentage

9   or we are requesting to get paid as a percentage of the

10  recovery.  So the more the class recovers, the more the

11  attorneys stand to recover, and because of that and because --

12  frankly, because of our professional obligation to the class

13  and our concern for our reputation, we negotiated hard for

14  every dollar we could get from Blue Cross.

15      The settlement gives no special treatment to Plaintiffs or

16  their counsel.  None.  We are guaranteed nothing under the

17  settlement.  We will get attorneys' fees and the Plaintiffs

18  will get incentive awards only to the extent the Court awards

19  them in its discretion, in its sole discretion.  Thus, your

20  Honor, there's no reason in this case to doubt the judgment of

21  class counsel that this settlement is in the best interests of

22  class.

23      Now, because Dr. Leitzinger's damages estimate clearly

24  shows that the settlement amount is reasonable in this case, an

25  objector challenging the reasonableness of the settlement would

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1   presumably want to show a mistake in Dr. Leitzinger's work or

2   would offer a competing damage analysis that it claims was

3   better or showed a larger recovery.  The objectors here do

4   neither of those things and, as I've mentioned, your Honor,

5   there's every reason to believe that Dr. Leitzinger's estimate

6   is accurate and it's the only estimate of the class's damages

7   in this case.

8       Now, the Varnum objectors attempt to challenge the

9   $118 million number indirectly.  They do it by suggesting it's

10  implausibly low because there are millions of class members who

11  purchased expensive hospital care over eight-and-a-half years.

12  Your Honor, there is nothing implausible about the $118 million

13  number.  Here's why.  Nearly half -- nearly half of Michigan's

14  general acute care hospitals had no MFN agreement with Blue

15  Cross.  The half that did typically had an MFN agreement for

16  three or four years, not eight-and-a-half years, and for the

17  MFN agreements that did exist -- and this is important, your

18  Honor -- the Plaintiffs' burden was to prove causation; that

19  is, to prove that the existence of an MFN agreement caused

20  reimbursement rates to increase.

21      In fact, after two-and-a-half million dollars of work,

22  your Honor, Dr. Leitzinger's work, the only one who's done

23  this, shows that many of the MFN agreements did not cause

24  reimbursement rates to go up.  Here's why.  Many of the

25  agreements were with hospitals whose reimbursement rates

            The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                              11/8/2018

1   already complied with the MFN provision.  They didn't have to

2   raise rates at all to be in compliance with the MFN provision,

3   had no effect on their reimbursement rates.

4        There were hospitals with reimbursement rates that were

5   not raised to come into compliance with the MFN provision.  So

6   the MFN provision had no effect on their reimbursement rates.

7   There were hospitals with reimbursement rates that were raised

8   substantially more than was required by the MFN provision.  So

9   there's no ability, when they're raising rates more than

10  required, to believe that the MFN provision had any effect on

11  that increase.

12       So the fact is, your Honor, that many of the MFNs

13  simply had no effect on reimbursement rates.  That's the

14  reality that the Plaintiffs are confronting and had to confront

15  in this case and justifies this settlement and shows in fact

16  that this settlement is an excellent result.

17       Now, this $85 billion number, which actually we didn't

18  hear in the presentation today, but which features still

19  prominently in the Varnum objectors' brief, is wildly

20  over-inclusive.  There are -- most of those purchases have

21  nothing to do with this case.  It includes purchases in the

22  commercial segment from all general acute care hospitals in

23  Michigan.  So that's purchases from hospitals with no MFN

24  agreement, nearly half of the general acute care hospitals in

25  Michigan.

          The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                11/8/2018

1          It includes purchases by Blue Cross, the Defendant in this

2    case, who is excluded from the class.  It includes purchases by

3    HAP, who has opted out of the class and is not part of it

4    anymore.  It includes purchases by Aetna, another major insurer

5    which is excluded from the class definition, and, as I've

6    mentioned, it includes purchases for every day of

7    eight-and-a-half years, even though the MFN agreements

8    generally lasted for only three or four years.

9          Then I want to talk about the one other effort that the

10   Varnum group makes to show that damages are bigger than

11   $118 million and that is the Varnum group's reliance on the

12   Vellturo report in the Aetna case.

13         First of all, that report is talking about a $100 million

14   number or some others.  It's not talking about billions of

15   dollars, your Honor.  So I don't know whether the Varnum

16   group's view is that this is a billion-dollar case or

17   $100 million case or something else.  They have not told us.

18         The other important thing to know, your Honor, is that

19   Dr. Vellturo was not a damages expert.  He was Aetna's

20   liability expert.  He didn't measure Aetna's damages, let alone

21   the class's damages.  And his $100 million number, that was the

22   amount that Blue Cross allegedly overpaid for MFN provisions.

23   That number is not the result of any damages model by

24   Dr. Vellturo.  There is no benchmark group that he compared the

25   reimbursement rates to that Blue Cross agreed to pay.  There's

          The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1   no regression analysis, your Honor.  There's no empirical

2   analysis.  What he did was conclude that the entire Blue Cross

3   reimbursement rate increase was due to a payment for the MFN

4   provision.

5       That estimate may well be overstated, but regardless, the

6   more important point, your Honor, is that is Blue Cross'

7   alleged overpayments, not the class members.  It's not an

8   estimate of any class members overpayments.  Blue Cross did not

9   pass on those overpayments to customers.  That's not how it

10  works, your Honor.  These are payments that Blue Cross made as

11  an insurer.  It doesn't get reimbursed, it doesn't pass it on,

12  with the possible exception that maybe the Varnum group is

13  referring to the fact -- and I did hear something about this --

14  that they were passed on in the form of higher insurance

15  premiums.

16      I don't have an opinion on that, but I do know this, this

17  case, your Honor, is not about an inflated insurance premium.

18  This is a case about overpayments for hospital services made by

19  direct purchasers to hospitals, and that's the other point,

20  your Honor.  Even if this was passed on in the form of higher

21  premiums and even if this case had something to do with

22  premiums, this is a direct purchaser case.  This is not about

23  the indirect effects of anything.

24      Let me move on, your Honor, unless you have any questions

25  to the claims process.

        The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1       So the main argument that the Varnum group is making about

2   the claims process is that it's too burdensome for insurers and

3   self-insureds.  Your Honor, that is not correct, okay.

4   Self-insured companies and insurance companies either

5   themselves or through their administrator keep databases of

6   insurance claims.  Everyone -- every commercial insurer,

7   self-insurer does that.  So what's involved here is simply

8   querying a database, downloading the relevant data and

9   submitting it with their claim.  That is not unusually

10  burdensome.  That kind of thing is done all the time and, in

11  fact, here, your Honor, 616 insurers or self-insured entities

12  to date have submitted claims.  None of them found it too

13  burdensome to do so.

14      Now, the other argument is, well, what about when Blue

15  Cross is the administrator?  When it's the one that administers

16  a self-funded class member's health plan and, in that

17  situation, it would normally be Blue Cross that would keep the

18  database of the class member's insurance claims.  They are

19  arguing, the Varnum group, that in that situation, Blue Cross

20  should have to automatically, I guess, file a claim for that

21  class member to share in the settlement.

22      So there are a couple problems with that, your Honor.

23  Number one, that would give preferential treatment to one

24  segment of the class, the class that the -- the part of the

25  class that happened to be customers of Blue Cross.  And I can

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                           11/8/2018

1   imagine the objections the Court would have seen had Blue Cross

2   customers in the class and only Blue Cross customers gotten

3   their claims filed automatically and everyone else had to

4   submit their own claims.

5          **THE COURT:**  But you don't dispute that if they are

6   the administrator that they would, upon request, have to supply

7   such data?  You just are asserting they shouldn't have to

8   automatically do it?

9          **MR. SMALL:**  Your Honor, so let me say what the

10  obligation is and then what the practice has been.  So it is

11  correct that the settlement agreement places no obligation on

12  Blue Cross to submit claims for a class member.  And by the

13  way, I should mention that that would be a significant

14  commitment on Blue Cross' part.  They were the dominant insurer

15  in Michigan.  They have plenty of self-funded customers, and if

16  they had to do their database queries and productions for every

17  one of them, that would be no minor undertaking.  And our view,

18  your Honor, as class counsel, was do we want to maximize the

19  dollars that we can get from Blue Cross in our negotiation, or

20  do we want to add burden to Blue Cross to participate in the

21  claim process in this way, which would be expensive to it, and

22  would therefore presumably mean less dollars they would be

23  willing to pay the whole class, and we made the judgment that

24  it was best to maximize the dollars.

25          But putting the obligation aside, the practice in

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                          11/8/2018

1   this case, and I'm sure Mr. Stenerson can speak to this more

2   directly, my understanding, your Honor, is that every time a

3   self-funded customer of Blue Cross has requested that Blue

4   Cross provide the data that it needs to file a claim, Blue

5   Cross has done so.

6           And let me quickly, your Honor, just address a few of

7   the points that -- few of the other points that Mr. Walters

8   made.

9           You know, the last time I looked, your Honor,

10  appellate courts, especially before the district court has done

11  so, does not make findings of fact.  There are no findings of

12  fact in the Sixth Circuit's opinion, and while Varnum

13  apparently understands that opinion to be a strong endorsement

14  of the liability case here, the Varnum group, after the record

15  was unsealed, had access to the same record the Sixth Circuit

16  did.  Where were all the great documents in the objection that

17  Varnum submitted if they existed and supported findings by the

18  Sixth Circuit?

19          And they talk about, you know, the increases that the

20  Sixth Circuit noted in reimbursement rates caused by the MFN

21  provision for class members.  Well, there's not evidence in

22  this record in this case of increased reimbursement rate for

23  all class members for this settlement class, your Honor.  The

24  problem that was -- the missing part of the analysis is the

25  increased reimbursement rates were for the litigation class

Fairness hrg.                                    11/8/2018

1    that Dr. Leitzinger analyzed, and yes, that litigation class's

2    reimbursement rates went up, but this settlement class includes

3    many, millions of additional class members for which

4    Dr. Leitzinger found no damages whatsoever.

5          Two last points, your Honor.  Apparently the Varnum

6    group believes that we should come into court as class counsel

7    and lay bare how this case has huge weaknesses and just lay it

8    out.

9          **THE COURT:**  How it has what?

10         **MR. SMALL:**  Huge weakness, your Honor, and lay out

11   all the reasons we might lose this case.  There are good

12   reasons not to do that, and I'm not aware, your Honor, of that

13   kind of representation being made by class counsel.  Maybe Blue

14   Cross will have more to say about that.

15         But we come at it primarily from a different angle,

16   your Honor.  We come at it primarily from the benefits that are

17   generated by this settlement, which we believe would support

18   virtually any case, even one that didn't have serious

19   weaknesses.  Although, we believe this one does have some real

20   weaknesses.  When we are able to recover 50 percent of the

21   damages that have been measured in this case, that would

22   support as reasonable a settlement in almost any case, your

23   Honor, even a quite strong one.  So we believe that there is no

24   need here to delve deeply into the weaknesses when you have

25   50 percent of the damages recovered in the case.

          The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

 1           So your Honor, I think I just want to make sure I

 2   cover one point, which we submitted a separate letter on.  It

 3   came to our attention fairly recently that in one place on the

 4   settlement website, it gave the wrong date for the claims

 5   deadline in this case.  It said November 8th, when the actual

 6   date is November 3rd, and the correct date appears in every

 7   other place, I think three other places in the website looked

 8   at.  One place had the wrong date and we, therefore, sent a

 9   letter to the Court when we learned that and said that we would

10   be requesting here, and we do now request, that the Court deem

11   timely any claim that is either postmarked November 8th or

12   submitted electronically by that date.  It's only five days

13   later than the claims date and it would avoid any possible

14   prejudice to class members.

15           Unless your Honor has any questions, that's my

16   presentation.

17           **THE COURT:**  Okay.  And does that mean Mr. Miller is

18   going to argue as well?

19           **MR. SMALL:**  Attorney fees, your Honor, and incentive.

20           **THE COURT:**  Is anybody going to respond to

21   Mr. Andrews' objections?

22           **MR. SMALL:**  I mean we're happy to rest on our papers

23   on that, your Honor, or if you have any specific questions, of

24   course I'll be happy to try and answer them.

25           **THE COURT:**  Okay.  No, I don't have any specific

         The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1    questions.  I just didn't know whether or not you were going to

2    argue anything in response to his objection?

3          **MR. SMALL:**  Well, I'll say one thing, your Honor, on

4    the standing argument.  That was actually addressed by your

5    Honor in the motion to dismiss in this case early on, and the

6    Court did conclude as alleged that the Plaintiffs have

7    standing, and in fact, your Honor, we are alleging under the

8    antitrust laws that we overpaid for hospital services as a

9    result of any competitive conduct.  If that doesn't give

10   standing under the antitrust laws, your Honor, I don't know

11   what does.

12         **THE COURT:**  Okay.

13         **MR. SMALL:**  Thank you.

14         **THE COURT:**  All right.  Thank you.  I actually think

15   that now that I'm listening to it, you're going to argue

16   everything but attorneys' fees?

17         **MR. STENERSON:**  Yes, your Honor.

18         **THE COURT:**  Why don't I hear that now.

19         **MR. MILLER:**  Sure, your Honor.  Understood.

20         **MR. STENERSON:**  Thank you, your Honor.  Todd

21   Stenerson on behalf of Blue Cross Blue Shield of Michigan, and

22   I'll try to go in somewhat of the same order as the objectors

23   and address any other issues, and of course if the Court has

24   questions, please let me know at any time.

25         With regard to Mr. Andrews --

        The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1          **THE COURT:**  Yeah, let's start with how much weight

2   you think I ought to give to the Court of Appeals' decision,

3   which the objector says directly points the Court to certain

4   findings it ought to make or consider and perhaps adjust it to

5   both sides that they might want to do something different than

6   what they had done before in making a presentation to the

7   Court.

8          **MR. STENERSON:**  Yes, I will try to address all of

9   that, your Honor.  And first, I think Mr. Andrews' last comment

10  was the case should be dismissed with prejudice.  Blue Cross

11  would object to that of course.  But seriously, taken as a

12  whole, Mr. Andrews I feel is making a lot of objections about

13  all the ways the Plaintiffs could lose, and to that extent, I

14  agree with that and I think the way to respond on behalf of

15  Blue Cross is to inform this Court of the procedural posture of

16  this case at the time of settlement.  I think that's critically

17  important.

18         Merits discovery had gone on for several years, as

19  your Honor knows, as a combined discovery period with the

20  Department of Justice lawyers representing Aetna in a

21  competitor case, and the class action counsel essentially

22  ganging up on Blue Cross three to one.  There were hundreds of

23  depositions taken, et cetera, and so that record in merits

24  discovery was essentially complete at the time discovery -- I'm

25  sorry, at the time of settlement, your Honor.

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1          But at the time of settlement the, Plaintiffs had not

2    filed a response to Blue Cross' *Daubert* motion on

3    Dr. Leitzinger.  There have been no decision on that motion for

4    Dr. Leitzinger.  The Plaintiffs had not filed a reply brief on

5    class certification, and there was no decision by this Court on

6    certification of the litigation class.  There have been no

7    summary judgment motions filed or ruled upon by Blue Cross.

8    There are no merits expert reports or *Daubert*s filed or ruled

9    upon by the Court.  There have been no motions in limine filed

10   or ruled upon by the Court.  There have been no trial.  There

11   have been no post trial motions filed or ruled upon by the

12   Court, and there have been no appeal of the merits filed or

13   decided.

14          And my point, your Honor, is at every turn in that

15   series, Plaintiffs risked a complete loss and they, on behalf

16   of the class, made the decision they made, and from Blue Cross'

17   perspective, the deal that they got was the best deal that was

18   available to them.

19          And so that's how I would respond to Mr. Andrews,

20   your Honor.

21          **THE COURT:**  Okay.  Thank you.

22          **MR. STENERSON:**  As it relates to the Varnum

23   objectors, I would -- while I hesitate to suggest what the

24   Sixth Circuit was saying, I must sort of point out that the

25   Sixth Circuit in Section IA of its opinion, begins the second

Fairness hrg.                                      11/8/2018

1    paragraph by stating, "Beginning no later than 2007, according

2    to a complaint filed in federal court by the United States

3    Department of Justice, Blue Cross used that power for worse,"

4    and then the Court goes on to talk about what was in the

5    complaint of the Department of Justice.

6              And in Section 2B, the Sixth Circuit again begins

7    that -- I'm sorry IB, your Honor -- Roman IB, again, begins

8    that section with an introductory sentence, "The Department of

9    Justice filed its complaint in 2010," and then goes on.  In

10   other words, my suggestion, your Honor, is the Sixth Circuit

11   had at the time of the appeal essentially the DOJ complaint

12   and, as you know, those were allegations that were never

13   proven, were not subject to summary judgment, and ultimately

14   were dismissed before they were proven.

15             So I think that's important to point out, and in that

16   regard to the extent the Sixth Circuit had a record that it was

17   relying upon, that's the same record that the Varnum objectors

18   now have available to it.  So if there was something to be

19   found there, I would have expected the Varnum objectors to have

20   pointed it out to us.

21             So then what do the Varnum objectors really say?  I

22   think what he says is, well, all I have are the two expert

23   reports.  I have Dr. Leitzinger for the class and I have

24   Dr. Vellturo for the Aetna plaintiffs.

25             But before I get into that in detail, I want to point

                  The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1    out one mistaken belief that Varnum had, and they said that

2    Blue Cross didn't submit any evidence of the risk of loss in

3    this case.  However, to the contrary, taking the direction of

4    the Sixth Circuit, Blue Cross filed a brief, Docket Number 290,

5    in support of preliminary approval on remand, and detailed in

6    excruciating way evidence of the total record and what the

7    record evidence was in the case.

8            And Mr. Walters referred to the Blue Cross brief in

9    support of final approval, the brief -- Docket Number 352 --

10   where he says, all we do is say that the hospitals testified

11   that there was no impact by the MFN, but what was overlooked,

12   your Honor, is that that final approval brief actually

13   incorporates by reference the original brief, 290, that does

14   detail an exhibits -- with exhibits supported evidence from the

15   record of that testimony.  And your Honor, if you look at

16   counsel's table, there is about almost a foot of documents.

17   This is the evidence in the record supporting Blue Cross' brief

18   about why there was a risk of litigation loss for the

19   Plaintiffs, and that includes the testimony of the hospital

20   executives, and that includes -- and this is at Docket Number

21   331, your Honor.  It includes the unsealed record that your

22   Honor ordered to happen on remand.

23           So we believe this Court painstakingly took the

24   instructions of the Sixth Circuit to heart, unsealed the

25   record, and that evidence, 1,200 pages of it roughly, was

Fairness hrg.                                      11/8/2018

1   available for review.  And again, if your Honor looks at the

2   brief at 331 and the supporting documents, you will see

3   citations after citations after citations to evidence,

4   documents, sworn testimony, all supporting the view that

5   Plaintiffs' case was weak and that the MFNs, if anything, did

6   not harm anyone.

7              In fact, on Page 14 of that original brief --

8         **THE COURT:**  Is that 352?

9         **MR. STENERSON:**  It's --

10        **THE COURT:**  No, I mean 290.

11        **MR. STENERSON:**  290, your Honor.

12        **THE COURT:**  Page what?

13        **MR. STENERSON:**  Page 14.

14        **THE COURT:**  Okay.

15        **MR. STENERSON:**  You will see the citations on the

16  first bullet, hospital executives who negotiated prices with

17  health insurers unanimously, in over 65 hours of testimony,

18  were unequivocal on this point.  No differential MFN ever

19  caused a hospital to raise or refuse to lower another health

20  insurer's prices.  And that's supported in footnote 49, your

21  Honor, with the testimony of the hospital negotiators, who were

22  the counter-parties to the MFN differentials, who were deposed

23  for 65 hours.  They were deposed by myself.  They were deposed

24  by Department of Justice lawyers, by Aetna lawyers, and class

25  lawyers.  If there was evidence to find, it would have been

            The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                   11/8/2018

1    found.  That testimony, it was unsealed, is attached to Docket

2    331, but the Varnum objectors don't mention it.

3            So what about the Leitzinger report?  Again, the

4    Leitzinger report was subject to a *Daubert* motion.  That

5    *Daubert* motion was not responded to by the Plaintiffs because

6    after receiving the motion, they settled the case.  Now, I

7    won't draw any inferences from that, other than to say that we

8    thought that we had a strong motion, and the details of that

9    motion are at Docket 140, your Honor, and we reference that in

10   our brief in support of final approval, which is Docket Number

11   352 on Page 6, and we bullet the arguments that we made in the

12   *Daubert* motion.  Again, all of this is unsealed record that the

13   Varnum Plaintiffs could have reviewed and commented but did

14   not.

15           Then the other thing that the Varnum Plaintiffs do

16   not mention is in the record was Blue Cross' expert,

17   Dr. Sibley, and Dr. Sibley's report was attached to Defendant's

18   Exhibit 25 of, again, our brief in support of approval at

19   Docket 290 and Docket 331, virtually the entirety of that

20   report was unsealed.  It sets forth a counterview of the facts

21   here and that was not mentioned by the Varnum objectors.

22           So what about Dr. Vellturo?  So a few things, your

23   Honor, about Dr. Vellturo.  First, I'd like to address the sur

24   reply filed by Varnum on the so-called $100 million.  Blue

25   Cross consented to Varnum filing that brief.  We did not know

                The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1    what was going to be in it before it was filed.  After

2    reviewing it, we agree that the $100 million exclusion that we

3    referenced in our brief in support of final approval is a

4    different portion of the record than what Varnum was referring

5    to.  And so we do want to correct the record in that regard and

6    withdraw that statement, but we did not, your Honor, make that

7    mistake intentionally; that was inadvertent.  So we do want

8    to --

9              THE COURT:  You're withdrawing what statement?

10             MR. STENERSON:  The statement that the $100 million

11   payment to hospitals that Varnum references in its brief was

12   previously excluded by this Court in a motion in limine.

13             THE COURT:  Okay.  All right.

14             MR. STENERSON:  But what the Varnum objectors fail to

15   appreciate, your Honor, is the testimony that would be referred

16   to that was excluded.  The reason we misinterpreted it is it

17   was critical to the theory of the case, and that is this Court

18   excluded testimony about prices impacting Aetna's rate.  And in

19   fact, if you look through the Vellturo report, there is scant

20   evidence that there was any impact on Aetna because of the

21   MFNs, much for the same reason I spoke to a minute ago.

22             But shifting gears slightly to the argument that

23   Varnum does make now, that I understand what they're saying

24   about the $100 million section in Dr. Vellturo's report.  I

25   would make three points, your Honor.

         The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1              First, Dr. Vellturo is not an expert in this case and

2      the Court did rule in the Aetna case that Dr. Vellturo's report

3      itself was not evidence and was not admissible, and even in the

4      Aetna case.  So I would submit to you that report certainly is

5      not evidence in the Shane case, the case that it was not even

6      procured in.

7              Second, much like Dr. Leitzinger, in the Aetna case,

8      Blue Cross filed a motion to exclude Dr. Vellturo's testimony

9      at trial, not just his report, but his actual testimony, and

10     that motion, your Honor, was pending at the time that Aetna

11     settled its case.  So the admissibility of any testimony of

12     Dr. Vellturo -- of Dr. Vellturo at all was still at issue, and

13     Blue Cross is confident that it would have succeeded in

14     excluding some or all of that testimony, including the portions

15     that Plaintiffs now try -- or that the Varnum objectors now are

16     trying to rely upon.

17             And then third, your Honor, to the extent Varnum is

18     complaining that Blue Cross paid hospitals more money in

19     reimbursements, that is not an antitrust injury.  Blue Cross

20     pays hospitals lots of money every year to provide quality care

21     to its insureds, and if in fact Blue Cross paid more money to

22     hospitals, hospitals use that money to increase the quality of

23     care it provided to Blue Cross and other patients, not the

24     inverse.  So it's simply not part of any antitrust injury or

25     antitrust violation.

           The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                               11/8/2018

1          And then your Honor, lastly, I would like to address

2     the claims issue if I could.  First, I think I heard Varnum

3     objectors' counsel admit that Blue Cross itself is under no

4     obligation under the settlement agreement to submit claims, and

5     he's exactly right.  I would specifically direct you to the

6     settlement agreement at Paragraphs 66, 51 and 72.  This is of

7     the amended settlement agreement, your Honor.  Those three

8     paragraphs of the settlement agreement, read individually and

9     collectively, made clear that there is no obligation and that

10    was a negotiated point.

11         And perhaps more importantly, in Paragraph 73 of the

12    amended settlement agreement, if this Court were to find and

13    provide for a material change in Blue Cross' obligations under

14    the settlement agreement, that would be grounds for Blue Cross

15    to set aside the deal, for many of the reasons Mr. Small

16    described.  The idea that Blue Cross would have to prepopulate

17    these claims is excruciatingly burdensome and was something

18    that was not negotiated for and not promised.

19         That said, your Honor the claims process in this case

20    was not designed or pushed by Blue Cross.  It was a function of

21    the theory of Plaintiffs' case.  In other words, the fact that

22    there are three types of claims being made to MFN hospitals

23    where there was, in effect, MFN hospitals where Plaintiffs did

24    not have an effect and then all other hospitals, is a function

25    of Plaintiffs' theory and the settlement, not a function of how

Fairness hrg.                                11/8/2018

1   Blue Cross holds its data.  And we, in fact, do not hold our

2   data in that fashion.  So this would be a customized report for

3   every class member.

4            That said, your Honor, I can tell you, as an officer

5   of the Court, Blue Cross has responded to every request that

6   I'm aware of from any class member that wanted their data, Blue

7   Cross has provided it to them at no cost, despite that lack of

8   obligation.  So I am not aware of any class member who has

9   sought information from Blue Cross and it was not provided to

10  them.

11           And I guess the last point, your Honor, on the claims

12  process, I mean I think the Varnum objectors suggest there are

13  84,000 claims made.  That actually suggests to me the exact

14  opposite.  If 84,000 class members found a way to file a claim,

15  this process is not burdensome, and the proper inference to

16  draw from that, your Honor, is that it is a fair process, and

17  it should be approved.

18           Unless the Court has any further questions, I have

19  nothing further.

20           **THE COURT:**  I do not have any at this time, thank

21  you.

22           **MR. STENERSON:**  Thank you.

23           **THE COURT:**  Let's take five minutes, okay.  We'll

24  take a break for five minutes.

25           (Recess taken 3:42 p.m. until 3:54 p.m.)

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                        11/8/2018

1            **THE COURT:**  I'm sorry I took a little longer, but I'm

2    ready to proceed.  Mr. Miller, are you going next?

3            **MR. MILLER:**  Yes, your Honor.

4            May it please the Court.  This is our motion for

5    attorneys' fees, reimbursement of expenses and incentive fee

6    awards for the named Plaintiffs.  All of these are requests of

7    the Court, none of them are tied to the settlement and all of

8    them are at your Honor's discretion.

9            Your Honor four years ago approved our request for

10   fees, reimbursement of expenses, and incentive fee awards in

11   full.  In the last four years, nothing has happened that should

12   change your mind.  If anything, the equities are even more in

13   favor of the judgment your Honor exercised four years ago.

14   Class counsel has performed a lot of work over the last four

15   years.  We're not seeking one additional nickel of compensation

16   for that work.  We have waited four more years for payment.  We

17   have now gone seven years without any compensation for this

18   case.  We have expended more than $3.5 million out of our own

19   pockets, and we have lost the use of those monies for four more

20   years.

21           The Varnum objectors' arguments against our fees are

22   misplaced.  They primarily rely on dicta from the Sixth Circuit

23   opinion about rates, but that dicta is irrelevant to our case.

24   The Sixth Circuit never got to the fees issue.  It was not even

25   squarely before the Court, because the Court rendered its

              The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1   decision based upon ceiling.

2           We do not seek fees based upon a statutory fee shift

3   or an hourly rate.  Our fees are based upon a percentage of the

4   common fund, which has been explicitly authorized by the Sixth

5   Circuit in the *Prudential* opinion and has been the trend in

6   district courts in the Eastern District of Michigan and

7   throughout the Sixth Circuit for at least 20 years.  Our

8   request of 28.78 percent is below the customary award of 30 to

9   33.3 percent in this district.

10          Clear and simple, we are not seeking a fee based upon

11  hourly rates or any statute.  The only reason we provided the

12  Court with our hourly rates is for a high level cross check so

13  that the fee percentage is shown as reasonable.  Just

14  yesterday, Judge Battani, in the *Auto Parts* antitrust MDL,

15  noted that defense attorneys in antitrust class actions

16  frequently charge more than $1,000 per hour with no contingent

17  fee risk and no risk of delay.  Our request, your Honor, is for

18  an effective hourly rate of $266 per hour, well below -- far

19  below the standard for cases of this type.

20          It is ironic, your Honor, that the Varnum firm

21  requests an attorney fee award of $427 per hour, but the Varnum

22  firm recovered zero for the class, yet the Varnum firm seeks a

23  much higher effective hourly rate for recovering zero, for

24  causing class members to wait four more years for their

25  compensation, and if they are successful in blowing this

        The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                      11/8/2018

1   settlement, which I don't think they will be, I certainly hope

2   not in this court and I don't believe that it'll be successful

3   a second round in the Sixth Circuit.  They put in jeopardy

4   $30 million for the class and would likely create an enormous

5   windfall for Blue Cross.

6            Our rates, which are only a cross check, are

7   supported by 19 declarations with summaries of the work

8   performed.  In 30 years of practicing plaintiff class action

9   work, I have never seen time records produced to support a

10  cross check, and that's the whole point of the percentage of

11  the benefit method so that we don't clog the courts with reames

12  of paper, with thousands and thousands of individual time

13  entries.

14            Now, as it relates to Varnum's motion for fees, it

15  should be denied.  The law is clear and overwhelming, that

16  these four objectors are the exception and not the rule.  There

17  are two ways to get paid, your Honor.  One is -- really, three

18  ways.  Is there a contract that says you have a right to get

19  paid?  Well, we don't have that here.  A statute?  No statute.

20  The third way is the *Boeing Vandemoer* case that says where you

21  create a common fund you have an equitable lien on the fund.

22  That's how we get paid in this case.

23            But they have not created any fund, and they have

24  done next to nothing with the unsealed record.  They have built

25  no case.  They have hired no experts.  They have offered no

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                              11/8/2018

1   affidavits.  Had they done real work and persuaded Blue Cross

2   Blue Shield to increase the amount of settlement, I would join

3   in their fee request, your Honor.  I would applaud them.  In

4   fact, in the *Mercury Interactive* case, which I'll talk a little

5   bit about later, an objector against us, I supported their fee

6   application in the Ninth Circuit, because I thought they did a

7   great job and what the objectors did in that case was change

8   the law to require -- in fact, I'll deal with it now.

9          What *Mercury Interactive* did, your Honor, was change

10  the law in 2010 so that class action practitioners must advise

11  the class of their motion.  The motion for fees must be filed

12  before the date to object so that class members can weigh in on

13  the class counsel's request for fees.  Well, in this case, they

14  kept that secret from the class.  They never told the class

15  that they seek fees, and I think there's some real irony

16  here --

17          **THE COURT:**  That the Varnum groups -- the groups

18  represented by Varnum, you're claiming they didn't let their

19  fee motion be known before the period of time that you had to?

20          **MR. MILLER:**  Correct.

21          **THE COURT:**  Okay.

22          **MR. MILLER:**  So the class is in the dark.  The class

23  has no idea that Varnum wants to be paid from the pot that they

24  did not contribute to and that the lawyers who caused the class

25  members to wait for four more years, that they want to charge

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                          11/8/2018

1    the class for that delay.  That has been kept secret from the

2    class.

3             And in their papers -- and I think this is a bit

4    ironic too, your Honor, they tout that it was, quote, error to

5    have the record sealed.  I disagree.  That was the practice of

6    every district court in the Eastern District of Michigan for 30

7    years and elsewhere, to have confidentiality, sealed records.

8    This case changed the law, and it's changed the practice

9    throughout the Eastern District of Michigan, and I respect the

10   Sixth Circuit's ruling, but let's be clear, that's a change in

11   the law.  The practice was exactly the way it was done in this

12   court for decades.

13            But it's ironic for them, your Honor, to tout some

14   major victory to unseal these records when they have

15   effectively sealed their own request for attorneys' fees from

16   the class.  And the authorities they cite are even weaker.

17   They only cite two cases.  We cite many cases as to why the

18   objectors should not get any fees.  They cite *Leonardo versus*

19   *Travelers* from the Northern District of Ohio.  Well, that case

20   harms them because the Court held in that case that even where

21   the objector arguably increased the settlement fund by

22   $2 million, the Court declined in its discretion to award the

23   objector any fees, and that's a case they rely on.

24            They don't even allege in this case that they've

25   created one penny of value for the class.

         The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1           The other case they rely on out of the Eastern

2    District of Kentucky, the *Howes V Atkins* case, is a 31-year-old

3    outlier where the Court awarded class counsel 40 percent of the

4    common fund, even with the objection, and I don't think Varnum

5    is saying that we should have a 40-percent award, and to be

6    sure, we are of course not saying that we should have a

7    40-percent award.  If they had done something that helped the

8    class instead of harm the class, which is what they've done,

9    they've harmed the class, we would be in support of a fee award

10   for the Varnum firm.

11           As it relates to the incentive fee awards, like our

12   fee requests, they are at your discretion, and the Sixth

13   Circuit did suggest that there should be time record or

14   something of the like to support incentive fee awards.  Well,

15   it's impossible to do that now because they were not done

16   contemporaneously, and we will never make something out of

17   whole cloth.  That's something that cannot be done.  But there

18   are plenty of cases that have awarded incentive fees much

19   higher than we are seeking for these good people, your Honor,

20   who took time out of their lives, who took time off work, who

21   produced thousands of pages of documents, many of them sat for

22   depositions, and I think in the exercise of your sound

23   discretion, you should do what you did last time and grant the

24   relief that we request.  But again, it's not tethered to the

25   settlement.  So whatever happens on that in this Court or in

        The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                       11/8/2018

 1   the Sixth Circuit would not link to the settlement.  It would
 2   not impact the settlement.
 3           As to the expenses.  It's really disappointing to
 4   hear criticism that we went out of pocket $3.5 million.  Your
 5   Honor, those checks were very painful to write.  We wrote them
 6   at our risk because of the case that we believed in, and if we
 7   didn't do it, the class would have gotten nothing.  We had
 8   every incentive to reduce the expenses, but we don't cut
 9   corners.  If you're going to be an antitrust class action
10   lawyer, you have to hire experts to have a chance to win, and
11   you have to spend the money.  We wish it was a lot less, but
12   without those expenditures, there would not be any recovery in
13   this case.
14           I'd like to say just a little bit about Mr. Andrews'
15   objection, and I appreciate that in court today he was a
16   gentleman, and I really do appreciate that, your Honor, because
17   he has put us through a lot over many years.  This process
18   started with Mr. Andrews, before he filed any objection,
19   demanding that we cut our fees by about $900,000 and cut him a
20   check for something over $100,000.  It was in the six figures.
21   We refused to pay a ransom, and then he went on a multiyear
22   campaign, continuing through 2018, to threaten us with bar
23   grievances, with letters to federal judges, to get publicity
24   against us over and over again, and that's part of the tough
25   work that we've done in this case, to stand up to that abuse

Fairness hrg.                                    11/8/2018

 1    and to fight for this settlement and not do the easy thing.  It

 2    would have been a lot less expensive for us to have cut him

 3    that check, but it would have been the wrong thing to do, and

 4    that's not the kind of lawyers that we are.

 5            Which gets to, your Honor, what I really think is the

 6    key to this motion, and the key to this motion is the judgment

 7    of experienced class counsel.  You have 19 experienced class

 8    action firms that have litigated hundreds of complex class

 9    actions and antitrust class actions that support this

10    settlement.  This group of lawyers, Mr. Small, Cohn Milstein is

11    one of the best plaintiff class action firms in the United

12    States.  They have gotten many settlements, many in the

13    hundreds of millions of dollars.  I was fortunate to have one

14    against AIG, where the Government decided not to prosecute,

15    just like here, the DOJ decided to stop.  We kept going.  In

16    AIG we got a $970 million settlement.  We would not have

17    accepted a $30 million settlement at AIG, because it was our

18    judgment that the settlement value far exceeded $30 million.

19    So we fought for years until we got the settlement number that

20    we thought was fair and equitable.

21            Likewise, here, your Honor, if these 19 firms, myself

22    included, believe this case had more settlement value than

23    $30 million, of course we would have continued to litigate it,

24    and the law is very clear that there should be deference to

25    non-conflicted, experienced class counsel where the settlement

           The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1   is at arm's length, which is undisputed in this case.

2          Mr. Walters is a very good commercial litigator, and

3   I respect him, your Honor, but he doesn't have antitrust

4   experience.  He doesn't have class action experience.  They've

5   had years to try to build a case, four years to try to build a

6   case as to why this settlement is inadequate.  They have not

7   one expert, not one affidavit from an experienced antitrust or

8   class action attorney to suggest that this settlement is

9   unreasonable or inadequate.

10         But the pursuit of this objection has caused harm to

11  the class.  It has achieved no benefit.  I'm proud of the hard

12  work that we've done.  It hasn't been fun with the kind of

13  abuse we've suffered from Mr. Andrews, but we will never give

14  in to that.  I respect the professionalism of the Blue Cross

15  lawyers.  And I believe that Varnum has litigated with us in a

16  civil and professional way, but they have come up with nothing

17  that should disturb the judgment of 19 class action firms who

18  have put their heart and soul into this case, your Honor.

19  Thank you.

20         **THE COURT:**  Okay.  Thank you, Mr. Miller.

21         Mr. Stenerson, will you be responding to this?

22         **MR. STENERSON:**  Just a very few comments, your Honor.

23         **THE COURT:**  You may.  Mr. Miller took the opportunity

24  to have his response I think to the requests of the parties

25  represented by Varnum, wouldn't you agree that you did kind of

Fairness hrg.                                  11/8/2018

1  respond to --

2           **MR. MILLER:**  I sure did, your Honor.

3           **THE COURT:**  -- yet to be made.

4           **MR. WALTERS:**  And I hope I can be heard on that.

5           **THE COURT:**  I am, but I just -- I want to make sure

6  where we are so that I don't duplicate it.  So if you were

7  going to respond to them, you should make that part of the

8  points you'll make now too.

9           **MR. STENERSON:**  Yes, your Honor.  Todd Stenerson on

10  behalf of Blue Cross Blue Shield of Michigan, and really, your

11  Honor, I just want to make three points.  The first is I want

12  to echo Mr. Miller, that we believe the decision on the

13  attorneys' fees of the class, attorney fees of Varnum, and the

14  incentive award fall squarely within this Court's discretion

15  and that's solely within your jurisdiction to decide and we

16  know your Honor will exercise that discretion wisely.

17           I do also want to echo point number two that

18  Mr. Miller made, and that those decisions by this Court,

19  whether to accept or reject any or all of the fee applications

20  incentive award or making any modifications to any of those do

21  not affect the finality of the settlement.  And just so your

22  Honor knows that's specifically Paragraph 78 of the amended

23  settlement agreement that makes clear that the exercise of this

24  Court's discretion in this area will not impact the finality of

25  the settlement agreement and it is separate.

         The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

 1          Then my last point, your Honor, is just that, as this

 2   Court knows, I can say as an officer of the Court, this case

 3   was vigorously litigated.  It was expensive.  It was

 4   excruciatingly time consuming, and all the lawyers involved in

 5   the merits performed at the highest levels of the profession

 6   and worked hard.  Thank you, your Honor.

 7          **THE COURT:**  All right.  Thank you.  Okay.  I think

 8   you get to argue your motion next.  You didn't respond to --

 9   well, maybe you sort of responded to it?

10          You can just stand at this other podium for just a

11   second -- well if you want to make any response to Varnum's

12   request?

13          **MR. STENERSON:**  Blue Cross takes no position on

14   Varnum's request.

15          **THE COURT:**  Okay.  All right.  Thank you.  Now you

16   can go to the main podium.

17          **MR. WALTERS:**  First, thanks for that, not making me

18   stand there too long.  I appreciate that.

19          Your Honor, I already spoke on the objections as to

20   any concerns that we have with the incentive fees and the

21   motion for attorneys' fees by class counsel.  So I'm not going

22   to readdress those issues.  I'm only going to limit my comments

23   to my firm's motion for attorney fees and costs in a total of

24   $165,128.43.  While on one hand, that's real money to us, I

25   certainly hope the Court will grant this motion.  It's also a

Fairness hrg.                                    11/8/2018

 1   relatively modest amount in the scope of what we're talking

 2   about in this case.

 3          Mr. Miller, at the conclusion of his argument, made

 4   the point that if Varnum had done something that helped the

 5   class, he would be first in line to support our fee petition.

 6   But in his mind, we harmed the class because by the fact we

 7   made an objection to the process below, which was agreed to by

 8   the Sixth Circuit, we have delayed the process, which actually

 9   somehow has harmed the class, and that's just not a fair

10   reading or assessment as to what's happened here, your Honor.

11          The Sixth Circuit has been very clear that this Court

12   has discretion to award fees and costs to counsel for objectors

13   if the work of counsel produced a beneficial result for the

14   class.  That's the language the Sixth Circuit used in the older

15   case 294 Federal Appendix 210 Sixth Circuit in 2008.

16          The Sixth Circuit has not defined further what

17   constitutes a beneficial result to the class.  It's not kind of

18   drilled down to say these are an exclusive list of the types of

19   things that are benefits to the class or not benefits to the

20   class.  What's important, your Honor, is that no court that I

21   am aware of in our research has ever said that the only kind of

22   benefit to the class that can be a basis for a fee award is a

23   financial benefit or as a result of the objection the amount

24   paid to the class increased.  I'm aware of no cases from any

25   jurisdiction that have held that.

          The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1           Of course there are lots of cases that talk about

2    factual circumstances where the benefit that the objector

3    gained for the class was some sort of change in the settlement

4    amount.

5           Here, we had no role in the settlement process.

6    We -- again, we attempted to intervene as a party in the case

7    where we might be able to have some sort of role in that.  The

8    Court chose to deny our motion to intervene and Plaintiffs'

9    counsel made the choice to charge forward with the same

10   settlement that was proposed previously in terms of the dollar

11   amount that Blue Cross would pay in this case.  So this was not

12   a circumstances where the objectors even had any opportunity to

13   potentially participate in a renewed settlement process.  We

14   certainly would have loved to, but that was not invited by the

15   parties.

16          We've cited cases that have held that a beneficial

17   result to the class can occur in circumstances where there are

18   not financial benefits to the class, where there were some

19   other sort of benefit to the class as a result of the

20   objection.  And we cited the *Howes* case from the Eastern

21   District of Kentucky as one example to that, and while that

22   might be described as an outlier by Mr. Miller, that is in fact

23   a case arising from the district court in this jurisdiction.

24   It was not overturned on appeal.  It remains good law.  It's

25   not binding of course; it's a fellow district court, but it's

              The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1  persuasive authority this court can look to within this

2  circuit.

3         I think the Sixth Circuit in its opinion really

4  answered the question already as to whether or not the

5  objection that was filed by my clients provided a benefit to

6  the class.  And it did so at Pages 308 and 309 of its opinion,

7  in which the Sixth Circuit made very clear that the class

8  members were harmed by not being able to fully participate in

9  the Rule 23 process because they did not have access to the

10 record, because of the Court's decision based on the stipulated

11 motions of the parties to seal such a substantial part of the

12 record.

13        I'm going to read just a few key portions of the

14 Sixth Circuit's opinion in this regard --

15        **THE COURT:**  You may, but I probably know them by

16 heart.

17        **MR. WALTERS:**  And I don't do this for any reason

18 other than to make sure that --

19        **THE COURT:**  Okay.  Maybe not everybody knows them by

20 heart.

21        **MR. WALTERS:**  Certainly.  The Court found the

22 following:  "Class members cannot participate meaningfully in

23 the process contemplated by Federal Rule of Civil Procedure

24 23(e) unless they can review the basis of the proposed

25 settlement and the other documents in the court record.  All of

            The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

 1  the named parties to this case signed on to the proposed

 2  settlement only after reviewing the expert report and other

 3  sealed documents in the record.  The unnamed class members are

 4  entitled to do the same, subject to the rights of the parties

 5  and third parties to make the showings necessary to seal.  The

 6  Rule 23 objection process seriously malfunctioned in this case

 7  and that is reason enough to vacate the district court's

 8  approval of the settlement."

 9          The Court elsewhere, the prior page of the opinion,

10  noted that this issue of the sealing of the records, the Court

11  said the following:  "And one cannot say in any realistic sense

12  that this error was harmless.  What those employers and other

13  class members cannot know, however, whether it does or does not

14  make sense for them to accept about 12 cents on the dollar of

15  their damages, as estimated in Leitzinger's report, or less

16  than 4 cents on the dollar of the award they might obtain at

17  trial."

18          Again, that reference to treble damages in terms of

19  what might be obtained at trial.

20          "To make that judgment, the class members must be

21  able to read the report, for which under the settlement

22  agreement, the class members would be required to pay more than

23  $2 million, along with the scores of other documents they could

24  not read in the court record below.  Only then can they assess

25  for themselves the likelihood of success on their claims."

        The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                        11/8/2018

1          There's simply no question, your Honor, that our

2   objection, my client's objection provided a substantial benefit

3   to the class by allowing them to meaningfully participate in

4   the Rule 23 process.  There's no question, based on the Sixth

5   Circuit's analysis, that that was correcting a significant harm

6   to the class as a result of the objection.

7          And we were very clear, your Honor, in terms of the

8   scope of our motion for attorneys' fees, we are only requesting

9   attorneys' fees and costs up to the point where this case came

10  back on remand.  We are not requesting at this point costs and

11  attorneys' fees for being here today or for our other objection

12  to the second settlement.  We are only requesting those

13  attorneys' fees and costs related to our first objection, which

14  was upheld on appeal with regards to the issues that the Court

15  is extremely well familiar with.

16         So we cut off our request and separated what we're

17  doing today, because the Court might find that what we're doing

18  today is not beneficial to the class.  If the Court were to

19  affirm the award as-is, or the proposed settlement as-is, the

20  Court might claim, well, today, Mr. Walters, you didn't add any

21  value to the class, any benefit to the class and therefore I'm

22  not giving you your attorneys' fees for what you've done today

23  or what you did in filing the objection here this past

24  September, two months ago.

25         Of course we think we are adding benefit, but that's

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

 1   to be determined.  Our motion is about what we did back the

 2   first time around and our costs and fees incurred in doing so,

 3   which are very modest in the scope of what's been involved in

 4   this case.

 5          There are no objections here from anyone from either

 6   the Plaintiffs or Blue Cross as to the Lodestar method that we

 7   presented for calculating those fees.  We have not attempted to

 8   present our attorneys' fees request as on a percentage of the

 9   common fund basis.  I agree with Mr. Miller that because we

10   weren't involved in negotiating the amount of that common fund,

11   that probably would not be the appropriate way to look at the

12   objectors' fees.  The objectors' fees are more properly looked

13   at in a traditional Lodestar method.  We presented that

14   methodology.

15          We presented the number of hours worked.  We

16   presented the average -- or our hourly rates.  We presented the

17   average hourly rates within the state of Michigan with the

18   evidence that was presented in the Court.  We actually even

19   turned over all the contemporaneous time records related to our

20   work so that anybody who is questioning these could look in

21   detail at those and say, oh, wait a minute, what were you doing

22   on Thursday, March 2nd of 2015?  I don't think you should get

23   paid for this.  We've had no indication that -- this has been

24   on file since September.  We've had Plaintiffs' counsel, class

25   counsel able to look at that.  Blue Cross has been able to look

Fairness hrg.                                          11/8/2018

 1   at that.  Anybody looking at the court records have been able

 2   to look at that.  We've not had a single indication of a single

 3   entry in there that is somehow improper.

 4              We did not file this in September of this year, our

 5   motion for attorneys' fees in September of this year in some

 6   attempt to hide or obfuscate our process, not at all.  The

 7   timing of that is very much related to the timing in which

 8   we're involved with our clients and the objection process of

 9   saying, okay, what's going to happen here?  Are we going to

10   continue to object to this renewed settlement, based on what

11   we've now seen in the record?  Or are we satisfied that now

12   that we've had the opportunity to review the record, that the

13   settlement that's being proposed is in fact fair, reasonable

14   and appropriate?

15              We didn't think it was appropriate to come running to

16   court before we had made that assessment.  We did make that

17   assessment.  We spoke with our clients about that assessment,

18   and we made the determination that we would in fact be filing

19   an objection to the renewed settlement the second time around.

20              **THE COURT:**  Okay.  But let me just flesh that out a

21   little bit.  So I think what you said was none of -- none of

22   your fees relate to this round of objections, is that what you

23   said?

24              **MR. WALTERS:**  That's true, yes.

25              **THE COURT:**  So they were all fess that you knew you

                The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1   were going to ask for anyway despite whether or not you filed

2   an objection?

3          **MR. WALTERS:**  I don't know about that, your Honor --

4          **THE COURT:**  But if they were, they would have been

5   fees that would not have been related to this so that you could

6   have filed that earlier so that everyone so could have seen

7   them the --

8          **MR. WALTERS:**  We could have filed our motion for

9   attorneys' fees earlier.  We were not required --

10         **THE COURT:**  No, you weren't, but you could have.

11         **MR. WALTERS:**  I agree with that, your Honor.  We

12  could have filed that motion earlier in the process.  I would

13  submit that there's a logical ex -- first of all, I submit

14  there's a logical explanation for why we didn't.  That had

15  nothing to do with an attempt to hide things from any party --

16         **THE COURT:**  I didn't suggest you were hiding.

17         **MR. WALTERS:**  I know.

18         **THE COURT:**  But I can understand the argument that is

19  made by Mr. Miller in a different way as a result of how --

20  what the attorneys' fees that you're speaking to.  I just

21  wanted to be sure.

22         **MR. WALTERS:**  Fair enough, your Honor.  I appreciate

23  that clarification.

24         And the court rules on this are very clear, that the

25  motion for attorneys' fees is proper under the Federal Rules of

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                        11/8/2018

1  Civil Procedure even 14 days after the final judgment enters,

2  unless the Court has entered an order saying you have to file

3  your motion sooner than that, and that is what the Court did

4  here.  The Court entered an order that said that class counsel

5  needs to file its motion for attorneys' fees sooner, earlier in

6  the process so that the class members would have the

7  opportunity to look at that and be heard beforehand.  The Court

8  did not -- the Court specifically in its order directed that to

9  class counsel.  The Court did not enter an order that said any

10 request for attorneys' fees --

11        **THE COURT:**  No, I didn't suggest that.  I did do

12 that.

13        **MR. WALTERS:**  Sure.  And again, I'm just clarifying

14 the scope of what the order says.  So under the rules, there's

15 no question that we were within our rights to do that, and

16 there's no prejudice to the class here either, not only because

17 nobody has made any objections to what's been presented, but

18 because, your Honor, our expectation is that any fee award to

19 my firm would come not from the net settlement amount but

20 rather would come from any amount awarded to class counsel as

21 attorneys' fees, and the reason why is that our objection, in

22 my humble opinion, our objection was making up for a gap or

23 deficiency in class counsels' efforts the first time around in

24 the settlement, that in our opinion, class counsel, in

25 representing the interests of the class, should have made sure

Fairness hrg.                                    11/8/2018

 1  that the key documents in the court record that were the basis

 2  for the settlement were available for inspection and

 3  consideration by the upwards of seven million potential class

 4  members impacted by the settlement.

 5         So we're not asking that any money be taken away from

 6  the class in terms of the settlement amount.  We're asking our

 7  attorneys' fees be awarded out of -- essentially as a deduction

 8  to any amount that the Court would choose to award class

 9  counsel in this case.

10         **THE COURT:**  Okay.  Thank you.

11         **MR. WALTERS:**  Unless the Court has any other

12  questions.

13         **THE COURT:**  I don't.

14         **MR. WALTERS:**  Those were my points.

15         **THE COURT:**  Thank you.  I know Mr. Miller you want to

16  stand up, but Mr. Andrews has had his hand up for a really long

17  time, and so do you want to respond is to something?  Okay.

18  You may.

19         **MR. ANDREWS:**  I apologize for being premature.

20         **THE COURT:**  That's okay.  You're going to address

21  your comments to the Court of course?

22         **MR. ANDREWS:**  Of course, your Honor.  This is going

23  to be short and sweet.  This is two, three minutes tops.

24         Okay.  Let me touch on --

25         **THE COURT:**  Let me just say that contrary to what you

       The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1   all may think, I am listening to your arguments and taking

2   notes and so you don't have to repeat your prior argument as I

3   am paying attention to them.

4           **MR. ANDREWS:**  Agreed.

5           **THE COURT:**  Okay.  That goes for everybody.

6           **MR. ANDREWS:**  Let me address the attorney fee issue

7   for a second related to Varnum group's request.  Number one, I

8   don't think they should be entitled to any attorney fee

9   reimbursement from the class fund.  They should certainly be

10  entitled to a fee from the attorney fees, if any of the

11  attorneys behind me get any fees.

12          The reason they're entitled to the fees is, number

13  one, when this got sent up to the appeals court, there were

14  41,000 claims filed; today there's 84,000.  So double, 41,000

15  more claims were filed, which was a result of the Varnum group

16  and myself appealing the issues.  So I think they're entitled

17  to a fee based on those doubling of claims that those people

18  would not have gotten anything.  At this point, we don't even

19  know what they're going to get.  So that's as far as my two

20  cents as far as what they're entitled to.

21          Let's see here.  Relating to Mr. Miller's

22  presentation.  He left out something by direct omission.  Let

23  me step back.  They should not have raised this issue today,

24  but I'll respond to it.  I filed a I guess what you would call

25  a predraft objection that I sent to Mr. Miller.  They then

            The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1    suggested we get together on a conference call and everything

2    was supposed to be confidential.  As it turns out, that was a

3    double cross.

4           If Mr. Miller had not double crossed me back

5    four-and-a-half years ago, along with the other gentlemen

6    sitting behind me, the only issue in front of the appeals court

7    would have been this sealed record issue.  I brought up five

8    issues.  All five were brought up and raised by the Sixth

9    Circuit for your Honor to relook at.

10          So this four-year delay that I'm being blamed for,

11   along with the Varnum group, is the sole result of class

12   counsel double crossing me and also putting together a

13   settlement that's still not valid today.  Eight years later,

14   they still can't put together a valid settlement release.

15   There's 22 major errors I pointed out in that release.  I'm a

16   class member.  I am not -- I am not agreeing to be locked into

17   that agreement at all.

18          When we had this conference call as a result of my

19   pre-objection draft, class counsel, Mr. Miller in particular,

20   offered to drop their attorney fee from $10 million at that

21   time to $7.5 million if I would endorse the settlement.  I told

22   him I'd be happy to endorse the settlement, but $900,000 giving

23   up in attorneys' fees seemed to be more fair than the

24   difference between $7.5 and $10 million.

25          So they're not as self-righteous as they try and

Fairness hrg.                                    11/8/2018

1    claim in front of the Court that they -- let me give you

2    another example.  Mr. Miller did --

3            **THE COURT:**  This is for the purpose of saying that

4    they should not get their amount of attorneys' fees or just

5    responding to his allegations against you?

6            **MR. ANDREWS:**  Both.  As far as if you were to award

7    attorney fees to them, which I don't think we should even --

8    we're not even at that point, instead of giving them their

9    $8.8 million, we start at $7.5 million, which is what they

10   agreed to give up for me to endorse it four-and-a-half years

11   ago.  You then subtract the $1.3 million that I told them

12   four-and-a-half years ago they were going to be paying for the

13   second notice, which they did.  They come back and say, well,

14   we would have done that anyhow.  No, they wouldn't have.

15   That's being facetious.

16           They did it because they know I would object today,

17   but the client shouldn't have to pay for their mistakes, and

18   then subtract out $700,000 that the firm from the city of

19   Pontiac is requesting.  They did not help get that $30 million.

20   They had nothing do with it.  This Court dismissed that case

21   back in 2012.  They're not entitled to a penny.  That brings it

22   down to $5.5 million.

23           I can also give the Court a cross check on the

24   $5.5 million.  Based on all the errors that class counsel has

25   caused in this litigation -- and they're extensively listed in

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                11/8/2018

1   my objection, the 84-page objection and the 500 pages of

2   exhibits.

3           I'm going to bypass that.

4           Let me talk about one other issue here.  The last

5   issue is I'm going back to the named Plaintiffs.  I don't

6   believe the named Plaintiffs adequately represented the class.

7   According to Blue Cross' Document 328, Carpenter's, which is

8   one of the name Plaintiffs, have plead facts in the current

9   complaint that are not true, making them a defective named

10  Plaintiff.  They lack injuries.  They lack standing.

11          The other Plaintiffs apparently want out of the case

12  but apparently class counsel won't let them, but they're going

13  to keep them in the case to give them $165,000 so they can get

14  the $12.5 million in fees and expenses they want.  Mr. Miller

15  touched on his AIG settlement for $975 million.

16  Mr. Christopherson [sic.] here has got a pending case of

17  $1.1 billion.  Cohn Milstein, hundreds of millions dollars

18  here.  These people -- this isn't about money, this is about

19  them -- about me bruising their egos.  No one has ever spoken

20  to them and written to them like I have, and it's all true.  I

21  would never say one word that's negative about anybody.  I'm --

22  I call it as I see it.

23          I believe the named Plaintiffs are invalid.  They're

24  defective, and they do not have standing.  They could not have

25  represented the class over the past eight years.  They're being

            The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                              11/8/2018

 1    used as puppets by the named Plaintiffs so class counsel can

 2    bill out large numbers of attorneys' fees and then also that

 3    allows the Defense counsel to bill out these too.

 4            If you want to do a double check, and I think you can

 5    get the answer today before we leave here, is class counsels'

 6    claim, without a shred of evidence, that they put in 34,000

 7    hours worth of work.  If you want to see if that's too high,

 8    you should ask Blue Cross' outside counsel how many hours

 9    they've billed.  That's not confidential.  It's not -- not the

10    amount, the number of hours they've billed, and then compare

11    the two and see if that's within reason.

12            All of the named Plaintiffs appear to claim damages

13    at hospitals that do not have either -- let me rephrase that.

14    Some of the named Plaintiffs appear to claim damages on a

15    hospital that does not have an MFN agreement.  Others claim

16    damages for treatment at hospitals that did have a -- that

17    didn't have an MFN agreement clause, but the damages can't be

18    proven, even with a clause in effect at dozens of hospitals.

19            Mr. Small mentioned two or three times that these MFN

20    agreements were only in effect for three and four years at many

21    hospitals and not eight years.  Well, that claim backs up what

22    I'm about to say.  So I thank him for that information.  In

23    October 15th, 2018, *Asacol Antitrust Litigation*, the First

24    Circuit clarified its position on a predominance issue, which

25    is also applicable in this case.  Can a district court judge

            The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                              11/8/2018

1   certify class actions in which not every class member suffered

2   injury?  No.  The First Circuit panel sided with the Third and

3   Fifth and the District of Columbia Circuits to hold that the

4   predominance requirement in the Federal Rules of Civil

5   Procedure for class actions precludes class certification if

6   more than a minimum number of prospective class members haven't

7   been injured.  In this case, large numbers, 22 percent minimum

8   of the class in categories two and three are uninjured, because

9   class members can't prove damages at a large percentage of

10  those hospitals even though they had a MFN agreement in effect.

11          **THE COURT:**  Okay.  This is far beyond the amount of

12  the time you told me you were going to take.  Tell me how much

13  longer are you going to be.

14          **MR. ANDREWS:**  Thirty seconds.

15          **THE COURT:**  Okay.

16          **MR. ANDREWS:**  Under Rule 23(a)(4) the representative

17  parties, including class counsel named Plaintiffs have to

18  valiantly adequately protect the interests of the class.  They

19  did not do that in this litigation.  I've reviewed 250 class

20  action settlements over the past eight years.  This is the

21  second worst one I've ever seen.  They've done nothing to

22  change the issue, except for unsealing the documents.  All the

23  other issues I've raised are still there and now the new

24  standing issue I'm raising.  This is not going to get by the

25  Sixth Circuit, absolutely won't do it.  I would like to win at

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                11/8/2018

1   the Sixth Circuit in front of them doing oral argument.  I

2   don't need the Varnum group or Mr. Walters to do that, with all

3   respect to him.  I can do it on my own because this is so bad.

4   I thank you very much for your time and patience.

5           THE COURT:  Okay.  Thank you.  Mr. Miller, if any of

6   your argument is going to be something that you already argued,

7   I don't think it's necessary, and if any of your argument is

8   going to be to respond to Mr. Andrews response to your

9   allegations relative to him, I don't think it advances

10  anybody's argument.

11          MR. MILLER:  I won't do that, your Honor, and I will

12  be succinct and I'll try very hard not to repeat anything I

13  already said.

14          THE COURT:  So how long are you going to take?

15          MR. MILLER:  I'm hoping about three minutes; no more

16  than five.

17          THE COURT:  All right.

18          MR. MILLER:  Mr. Walters acknowledges that there's no

19  economic benefit, but he claims that class members benefited

20  because they had the opportunity to participate because of

21  unsealing.  He has no proof of that, and the objective evidence

22  is the opposite.  We have no new objectors and we have one less

23  objector.  So there's no evidence of any benefit.

24          Second, he makes an argument that I believe is very

25  unfair to the Court and to us, that they were deprived of

          The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

 1   information they needed to evaluate the settlement and work up

 2   an objection because their motion to intervene was denied.

 3   After the Sixth Circuit's ruling, they never once asked the

 4   Court for any discovery.  They never once asked us for any more

 5   information and, your Honor, we met with them twice.  Prior to

 6   the final approval hearing, class counsel met with Mr. Rynders.

 7   We said we're here to work with you.  We think this is an

 8   excellent settlement.  Let us know if you need anything more to

 9   evaluate.

10        After the final approval hearing, we met again with

11   him, me personally.  I told him I thought it was a good

12   settlement, that if he could get more money out of Blue Cross

13   Blue Shield that would be wonderful, but I didn't believe that

14   he could and we hope that he doesn't object again, but we want

15   dialogue to be open.  We got nothing.  They have no answer to

16   my argument that the only recent case they relied on, the

17   *Leonardo* case, denied the request for objector fees even where

18   the objector arguably increased the value of the settlement.

19        Now, as it relates to their obligation to inform the

20   class.  They are functionally acting as class counsel because

21   the only way they are entitled to fees is if they created a

22   class benefit.  Therefore, they are bound by the practice,

23   since the Ninth Circuit's opinion in *Mercury Interactive*, to

24   let the class weigh in on a fee request that ostensibly

25   benefits the class.

        The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1            And this is my last point, your Honor.  They're good

2    lawyers.  I like the Varnum lawyers, I really do, but they're

3    noting do the right thing here.  This is not their area of

4    expertise and they are unwittingly causing harm.

5            **THE COURT:**  Okay.  So that argument you made earlier.

6            **MR. MILLER:**  And I'm done.  I did pretty good not

7    duplicating.

8            **THE COURT:**  You did.

9            **MR. MILLER:**  I tried.

10            **THE COURT:**  Does Blue Cross want to add anything?

11            **MR. STENERSON:**  No, your Honor.

12            **THE COURT:**  Okay.  Then I think I've heard everything

13    I need to hear, right -- and you have something more?

14            **MR. WALTERS:**  No, I --

15            **THE COURT:**  If you stated it prior to this time, I am

16    listening and you do see that Mr. Miller knew that I was

17    getting ready to cut him off.

18            **MR. WALTERS:**  I do, your Honor.  I think it's my

19    instinct to stand up because it was our motion for attorneys'

20    fees.  So I always feel like as our motion I should be heard

21    last, but I'm going to take the strong vibes I'm getting from

22    the Court that, your Honor, you're on top of it.

23            **THE COURT:**  If you're going to raise something new,

24    I'm happy to hear it, but if you're just going to reiterate to

25    Mr. Miller's argument because he took the liberty, which you

          The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                          11/8/2018

1   did not object to, of bringing up his response to your argument

2   before you had made it, which puts us kind of out of order, I'm

3   happy to hear it, but if it's not new.

4          **MR. WALTERS:**  I think it ends up getting into side

5   track issues.  I could have things that I could talk about

6   what -- you know Mr. Miller referenced a couple of different

7   discussions that we had over the course of the last few years.

8   I don't think those are things that are going to be driving the

9   Court's decision on attorneys' fees.

10         **THE COURT:**  No, nor are there going to be any of the

11  compromises that you all attempted to make, they're not the

12  issue for the Court to decide.

13         **MR. WALTERS:**  So with that, I will sit down, your

14  Honor.

15         **THE COURT:**  Okay.  Anything else we need to hear

16  today?  Okay.  Then I thank you very much for your arguments

17  and I'm required to give you a written order and I'll do that,

18  all right.

19         **MR. MILLER:**  Thank you, your Honor.

20         **MR. STENERSON:**  Thank you, Your Honor.  Thank you

21  very much have a good evening.

22             (Proceedings concluded 4:44 p.m.)

23                         - - -

24

25

The Shane Group v BCBS-MI, Case No. 10-14360

Fairness hrg.                                    11/8/2018

1                    **C E R T I F I C A T I O N**

2              I, Andrea E. Wabeke, official court reporter for the

3    United States District Court, Eastern District of Michigan,

4    Southern Division, appointed pursuant to the provisions of

5    Title 28, United States Code, Section 753, do hereby certify

6    that the foregoing is a correct transcript of the proceedings

7    in the above-entitled cause on the date hereinbefore set forth.

8    I do further certify that the foregoing transcript has been

9    prepared by me or under my direction.

10

11   /s/Andrea E. Wabeke                    October 10, 2019

12   Official Court Reporter                Date
     RMR, CRR, CSR
13                                - - -

14

15

16

17

18

19

20

21

22

23

24

25

                The Shane Group v BCBS-MI, Case No. 10-14360