UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SHANE GROUP, INC., *et al.*, <br><br> Plaintiffs, on behalf of themselves and all others similarly situated, <br><br> v. <br><br> BLUE CROSS BLUE SHIELD OF MICHIGAN, <br><br> Defendant. | Case No. 2:10-cv-14360-DPH <br><br> Judge Denise Page Hood <br><br> **CLASS ACTION** |

**PLAINTIFFS' MOTION TO
DISTRIBUTE SETTLEMENT FUNDS AND PAY FINAL EXPENSES**

For the reasons set forth in the attached Memorandum of Law in support of this Motion, Plaintiffs The Shane Group, Inc., Bradley A. Veneberg, Michigan Regional Council of Carpenters Employee Benefits Fund, Abatement Workers National Health and Welfare Fund, Monroe Plumbers & Pipefitter Local 671 Welfare Fund, Scott Steele, Anne Patrice Noah, and Susan Baynard submit this Motion for Approval of Distribution of Settlement Funds, and respectfully request that the Court enter the Proposed Order attached as Exhibit A.

On November 2, 2023, Counsel for Plaintiffs sought concurrence in the relief requested by this Motion from Counsel for Defendant, and, on November 7, 2023, Defendant stated that it does not oppose the Motion.

1

Dated: November 7, 2023                Respectfully submitted,

/s/ *E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
epm@millerlawpc.com

Daniel A. Small
**COHEN MILSTEIN SELLERS &
   TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
dsmall@cohenmilstein.com

Daniel E. Gustafson
Daniel C. Hedlund
Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

Mark C. Rifkin
**WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLC**
270 Madison Avenue
New York, New York, 10016
Telephone: (212) 545-4690
rifkin@whafh.com

*Class Counsel*

        David H. Fink (P28235)
        **FINK BRESSACK**
        38500 Woodward Ave., Suite 350
        Bloomfield Hills, MI 48304
        Telephone: (248) 971-2500
        dfink@finkbressack.com

*Liaison Counsel*

Case 2:10-cv-14360-DPH-MKM   ECF No. 414, PageID.19372   Filed 11/07/23   Page 4 of 20

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SHANE GROUP, INC., *et al.*, <br><br> Plaintiffs, on behalf of themselves and all others similarly situated, <br><br> v. <br><br> BLUE CROSS BLUE SHIELD OF MICHIGAN, <br><br> Defendant. | Case No. 2:10-cv-14360-DPH <br><br> Judge Denise Page Hood <br><br> **CLASS ACTION** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISTRIBUTE SETTLEMENT FUNDS AND PAY FINAL EXPENSES


## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ i

STATEMENT OF ISSUES PRESENTED .................................................................... ii

I. INTRODUCTION ............................................................................................... 1

II. STATEMENT OF FACTS .................................................................................. 2

    A. Proceedings Prior to Settlement ............................................................... 2

    B. Initial Settlement Agreement ................................................................... 2

    C. Operative Settlement Agreement ............................................................. 4

    D. Settlement Administration Costs ............................................................. 6

    E. Claims Processing .................................................................................... 8

    F. Inclusion of Late But Otherwise Eligible Claims ................................... 10

    G. Distribution of Settlement Funds ........................................................... 10

III. CONCLUSION .................................................................................................. 11

## **STATEMENT OF ISSUES PRESENTED**

1. Should the Court approve distribution of the net settlement funds?

    Class Counsel's answer: **Yes.**

2. Should the Court approve payment of expenses associated with the settlement administration process?

    Class Counsel's answer: **Yes.**

## I. INTRODUCTION

In June 2014, Plaintiffs[1] and Blue Cross Blue Shield of Michigan ("BCBSM") first entered into a settlement agreement (the "Initial Settlement") to resolve allegations that BCBSM violated antitrust laws. Almost nine years after the Initial Settlement,[2] the Settlement Administrator is prepared to distribute settlement funds to members of the class. The Settlement Administrator is also owed payment for the considerable work it has performed processing many thousands of class member claims. Because payment for the Settlement Administrator's work and distribution to the class members is consistent with the Plan of Allocation approved by this Court, Plaintiffs move this Court for entry of the accompanying Distribution Order (attached hereto as Exhibit A) and request that the Court:

- Approve the procedures used and actions taken by Epiq ("Epiq" or the "Settlement Administrator") and Class Counsel for the administration of the Settlement.

---

[1] Plaintiffs are The Shane Group, Inc., Michigan Regional Council of Carpenters Employee Benefits Fund, Abatement Workers National Health and Welfare Fund, Monroe Plumbers & Pipefitter Local 671 Welfare Fund, Susan Baynard, Anne Patrice Noah, Bradley Veneberg, and Scott Steele.

[2] Approval of the Initial Settlement was reversed by the Sixth Circuit for reasons unrelated to the merits of that settlement, and the interim time period included the appeals process for that settlement, negotiating a new settlement, engaging in a process to unseal various pleadings, obtaining this Court's approval of the new settlement and defending it on appeal, negotiating a resolution of the Varnum Group's objection, and processing many thousands of complex claims.

1

- Approve disbursement of $1,526,737.52 in addition to previous sums authorized from the Settlement Fund to pay Epiq for its services and expenses administering the Settlement and the claims process, and for its anticipated future services and expenses to complete the claims process, as described in the Declaration of Michelle La Count ("La Count Declaration") (attached hereto as Exhibit B).

- Authorize Epiq to distribute the Settlement Funds, net of any expenses authorized by this Court pursuant to this motion (hereinafter the "Net Settlement Fund"), as described in the La Count Declaration.

## II. STATEMENT OF FACTS

### A. Proceedings Prior to Settlement

Proceedings prior to settlement in this case are recounted in Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and will not be repeated here. Mem. Supp. Pls.' Mot. Final Approval Settlement, ECF No. 351, PageID.18669-18673 ("Final Approval Motion").

### B. Initial Settlement Agreement

The Initial Settlement created a common fund of $29,990,000 for the benefit of the Class. The Initial Settlement included a Plan of Allocation that reflected Class Counsel's and Dr. Leitzinger's best estimate of the relative likelihood that purchasers of a given hospital's services would be able to prove measurable damages

2

at trial. *See* ECF No. 148, PageID.4216-4218. The largest portion of the settlement fund was reserved for "Category 1" claims, corresponding to Class members who made purchases subject to the 23 provider agreements for which Dr. Leitzinger had measured damages. *Id.* at PageID.4215-4216. Category 1 claims were entitled to a $25 minimum amount such that all valid Category 1 claims would pay at least $25. ECF No. 148-1, PageID.4222. A smaller share of the settlement fund was reserved for "Category 2" claims, allocated to Class members who made purchases under agreements subject to an MFN clause, but where Dr. Leitzinger's analysis did not show measurable damages. ECF No. 148, PageID.4222. Valid Category 2 claims would pay at least $15. ECF No. 148-1, PageID.4223. Finally, the smallest share of the settlement fund was reserved for "Category 3" claims, comprised of Class members who made purchases from hospitals not subject to an MFN clause and who therefore were unlikely to be able to prove any damages. ECF No. 148, PageID.4222. Awards in the third category that were too small to justify the cost of distribution to the class member would be distributed instead to the health care charity Free Clinics of Michigan. *Id.*, PageID.4217. However, if the claimant was also receiving a payment under Category 1 and/or Category 2, any valid Category 3 claim payment, even if de minimis, would be added to the payment amount.

On June 26, 2014, the Court preliminarily approved the Initial Settlement and Plan of Allocation, including payment of up to $1 million from the Settlement Fund

to cover costs including implementing the notice plan. ECF No. 151. In addition to a publication notice plan, the settlement administrator Epiq subsequently mailed out nearly three million notices to individuals insured by Michigan health plans and to third-party payors. ECF No. 162-1, PageID.4740 at ¶ 4. As authorized by the Court, Epiq was paid $702,115.40 for the cost of sending out this notice. ECF No. 170-1, PageID.5785 at ¶ 5. Over 23,000 individuals and over 80 insurers and self-insured entities submitted claims either electronically or via paper claim forms. ECF No. 169-4, PageID.5418 at ¶¶ 8-9. On March 31, 2015, the Court granted final approval of the Initial Settlement. ECF No. 213.

Following appeals by objectors, the Sixth Circuit vacated the Court's approval of the Initial Settlement—not for reasons directly related to the merits of the settlement itself, but rather because it was necessary to re-evaluate whether certain records which had been filed under seal should remain under seal. *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 307-09 (6th Cir. 2016). In response to the Sixth Circuit's opinion, and with the input of the parties and third parties, this Court unsealed nearly all the sealed documents. ECF No. 322.

C.    **Operative Settlement Agreement**

After remand, the parties negotiated a few minor revisions to the Initial Settlement agreement. The substance remained the same, as did the Settlement Amount of $29,990,000. This amended settlement is the operative settlement and is

4

therefore referred to herein as the "Settlement."

On April 17, 2018, after most of the previously sealed court records had been unsealed, the Court preliminarily approved the Settlement and a Notice Plan for dissemination of revised Notices and Claim Forms, including payment of up to $1,219,038 to cover expenses including implementation of the notice plan.[3] ECF No. 323. In addition to a publication notice plan, Settlement administrator Epiq mailed out nearly three million revised notices to Class members. As authorized by the Court, Epiq was paid $892,734.97 for the cost of sending out this notice. ECF No. 336-1, PageID.17086 at ¶¶ 19-20. Any class member who filed a claim pursuant to the Initial settlement was not required to file another claim to receive their share of the Settlement. During the claims period for the Settlement, the Settlement Administrator received over 4,650 paper individual claim forms and 35 paper insurer/self-insured claim forms and 34,732 individual electronic claims and 34 insurer/self-insured electronic claims. ECF No. 351-5, PageID.18740 at ¶ 9-10. Some of these claims were duplicates of claims filed for the Initial Settlement, and some were new. On September 30, 2019, the Court granted final approval of the Settlement. ECF No. 364.

---

[3] Class Counsel reduced Plaintiffs' Counsel's overall fee request by $1,365,038 to account for some additional 2014 direct notice costs and to cover the amount of the 2018 notice prepayment, thus ensuring that these costs did not reduce the Settlement Fund. ECF No. 336-1, PageID.17086 at ¶ 22.

5

Objectors once again appealed. One group of objectors subsequently settled their objection and dismissed their appeal. ECF No. 396. On January 14, 2021, The Sixth Circuit rejected the remaining objector's arguments and affirmed the Court's approval of the Settlement. ECF No. 403. The Settlement became final in July 2021 when the deadline passed for that objector to file a petition for writ of certiorari with the United States Supreme Court.

## D. Settlement Administration Costs

To avoid incurring wasted expense in the event the Settlement did not become final, Class Counsel instructed the Settlement Administrator to refrain from processing claims until the Settlement had become final. However, during the unusually long period between the Initial Settlement and the Settlement becoming final, the Settlement Administrator still incurred necessary expenses for storing documents, maintaining the settlement website, performing necessary intake processing of paper claims, mailing paper claim forms upon request, maintaining and staffing a partially automated telephone help line, and otherwise responding to class member inquiries.

As appeals of the Settlement were unfolding, Class Counsel engaged in discussions with the Settlement Administrator regarding the amount of expense currently incurred and the additional expense the Settlement Administrator estimated would be necessary to process claims through completion. As of

December 31, 2019, Epiq had incurred a total of $2,624,460.87 in unreimbursed fees and costs, primarily due to handling initial intake of claims, fulfilling requests for long form notices and paper claims packets, some residual notice costs, and responding to numerous class member communications and questions regarding the claims process, prior to processing any claims. At the final approval stage, the Court approved a $1,365,038 payment to the Settlement Administrator. ECF No. 364, PageID.18890-18891. In other words, after deducting the amount approved by the Court, the Settlement Administrator was owed an additional $1,259,422.87 for its work through 2019, before the Settlement Administrator had processed any of the myriad complex claims in this case.

In their motion for fees and expenses, Class Counsel indicated they would "seek authority to pay additional Settlement administration expenses at the end of the claims process when they file a motion to distribute the Net Settlement Fund." ECF No. 336, PageID.17071. However, Class Counsel wanted to control such costs to maximize the recovery of Class members. Class Counsel therefore engaged in extensive negotiations with the Settlement Administrator to ensure that the complex and numerous claims would be processed without unduly increasing costs to the Class. After months of negotiations, Class Counsel and the Settlement Administrator reached an agreement wherein Class Counsel would agree to request an additional $1,401,737.52 payment to the Settlement Administrator as payment for services

already performed *and* for the processing of claims. This represented a significant benefit to the Class considering the Settlement Administrator had $1,259,422.87 in unpaid invoices prior to conducting any claims processing. As Epiq was processing claims, it predicted that it would end up expending approximately $125,000 in out-of-pocket expenses for postage and print. La Count Decl. ¶ 41. Upon Epiq's request, Class Counsel agreed to request that an additional $125,000 be paid to Epiq to cover these out of pocket costs. *Id.* This brings the total additional payment for Epiq to complete all claims processing to $1,526,737.52.

**E.     Claims Processing**

Before processing claims, Epiq first conferred with Plaintiffs' Counsel to define the project guidelines for processing claims. La Count Decl. ¶ 7. Epiq then created a database to input and store claim forms and supporting documentation, trained staff on how to properly process claims, developed a process for reconciling duplicate claims, and developed an algorithm to calculate each claimant's "recognized loss" pursuant to the Plan of Allocation. *Id.*

Epiq received 25,958 paper consumer claim forms, 60,291 online consumer claim forms, 617 paper insurer claim forms, and 318 online insurer claim forms from unique filers. *Id.* ¶ 9. Intake of paper claim forms was laborious and time intensive as it involved unfolding documents, removing staples, copying differently sized documents, and sorting documents before they could be scanned. *Id.*

8

In processing the claims, Epiq classified deficiency or ineligibility conditions according to internal codes. *Id.* ¶ 11. Some codes signified a claim ineligible to receive any payment, and other codes indicated a partially invalid claim. Examples of claims that are entirely ineligible are those that duplicate another claim, that did not include a valid signature, or that did not provide needed documentation upon request. *Id.* Because claim forms allowed claimants to list multiple payments to hospitals, some of those payments could be coded as ineligible while the rest remained valid. This could happen for multiple reasons, including: a payment did not list a year, the given year was outside the Class Period, or a payment was missing an inpatient/outpatient designation. *Id.* ¶ 12. Because insurers may need to submit hundreds or thousands of payment records, claimants were allowed to submit such records in electronic form. Epiq's Complex Claims Team analyzed and validated each such electronic dataset and notified the sender of any issues or inconsistencies identified. *Id.* ¶ 14. In this process, Epiq identified a number of deficient and "non-conforming" claims that required additional processing and corresponding with claimants. *Id.* ¶¶ 18-19.

Epiq undertook a "Deficiency Process" that provided claimants with an opportunity to cure any deficiencies in their claim. *Id.* ¶ 20. If a claim was determined to be defective or ineligible, a defect notice was sent to the claimant describing the issues and what was necessary to rectify those issues and indicated

9

the claimant had 30 days to take action. *Id.* ¶ 21.

Epiq also employed a quality assurance review in its processing of claims. *Id.* ¶ 26. Part of this involved the development of programs to automate the processing of data. *Id.* ¶ 27. Epiq also performed final quality control checks once all of the accepted claims were processed. *Id.* ¶ 28-29.

### F. Inclusion of Late But Otherwise Eligible Claims

As of September 12, 2023, Epiq received 818 claims that were postmarked or received after the final January 29, 2021 claim submission deadline established by the Court. *Id.* ¶ 24. Of these, Epiq found 676 to be otherwise eligible in whole or in part. *Id.* To ensure that the greatest number of Class members are able to participate in the settlement as possible, Class Counsel and Epiq recommend that all valid claims received by September 12, 2023 be accepted. *Id.*

### G. Distribution of Settlement Funds

The funds provided under the Settlement totaled $29,990,000. A total of $15,880,704.67 has been spent on notice costs, attorneys' fees, litigation expenses, service awards, and early settlement administration costs. *See* ECF No. 151, PageID.4425 (notice costs); ECF No. 323, PageID.12307 (notice costs); ECF No. 364, PageID.1884, 1889, 1891, 1896 (attorneys' fees, litigation expenses, service awards, early settlement administration costs). With interest earned on the balance, there is approximately $14,286,216.63 remaining in the settlement fund. After the

requested $1,526,737.52 payment to Epiq for claims processing and related services, and a requested $15,000 holdback for taxes and to address any claims disputes[4], there remains approximately $12,759,479.11 to distribute to the Class as the Net Settlement Fund. La Count Decl. ¶ 37.

Of the 95,659 claim forms received through September 12, 2023, Epiq determined that 80,934 are acceptable at least in part. *Id.* ¶ 30. Of these, 27,986 are eligible for direct payments to class members and 52,939 are solely Category 3 claims that do not meet the minimum payment threshold and will therefore be part of the *cy pres* distribution to the Free Clinics of Michigan. *Id.* ¶ 34. Subject to Court approval, a total of $9,952.393.42 will be paid for valid Category 1 claims, $2,551,892.44 will be paid for valid Category 2 claims, $255,185.98 will be paid to Class members for valid Category 3 claims that meet the minimum payment threshold, and $1,839.41 will be paid *cy pres* to the Free Clinics of Michigan for valid Category 3 claims that did not meet the minimum payment threshold. *Id.* ¶ 35.

### III. CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that this Court approve the procedures used and actions taken by Epiq and Class Counsel for the

---

[4] Class counsel propose that any portion of the holdback not needed to pay taxes or resolve any disputes be added to the *cy pres* contribution to Free Clinics of Michigan.

11

administration of the Settlement and approve the distribution of the Settlement Funds as set forth in this Motion and the accompanying proposed Distribution Order.

Dated: November 7, 2023　　　　　　　Respectfully submitted,

/s/ *E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
epm@millerlawpc.com

Daniel A. Small
**COHEN MILSTEIN SELLERS &
　TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
dsmall@cohenmilstein.com

Daniel E. Gustafson
Daniel C. Hedlund
Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

Mark C. Rifkin
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
270 Madison Avenue
New York, New York, 10016
Telephone: (212) 545-4690
rifkin@whafh.com

*Class Counsel*

David H. Fink (P28235)
**FINK BRESSACK**
38500 Woodward Ave., Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkbressack.com

*Liaison Counsel*

13

## CERTIFICATE OF SERVICE

I hereby certify that, on November 7, 2023 I electronically filed the foregoing with the Clerk of the Court using the ECF system which will notify all counsel of record authorized to receive such filings.

**THE MILLER LAW FIRM, P.C.**

By   */s/ E. Powell Miller*
E. Powell Miller (P39487)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com